IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECOND AMENDMENT ARMS, | ) | |
| (a d/b/a of R. Joseph Franzese), | ) | |
| R. JOSEPH FRANZESE, individually | ) | |
| and d/b/a SECOND AMENDMENT ARMS, | ) | |
| ROBERT M. ZIEMAN, SR., ICARRY, | ) | |
| an unincorporated Association | ) | |
| a d/b/a of Shaun Kranish), and | ) | |
| SHAUN A. KRANISH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Case No: 1:10-cv-4257 |
| | ) | |
| CITY OF CHICAGO, a municipal | ) | Hon. Robert M. Dow, Jr. |
| corporation, RICHARD M. DALEY, | ) | U.S. District Court Judge |
| individually and as the Mayor | ) | |
| of the City of Chicago, JODY | ) | Hon. Sheila M. Finnegan |
| P. WEIS, Superintendent of | ) | U.S. Magistrate Judge |
| Police of the City of Chicago, | ) | |
| MIGUEL DEL VALLE, City Clerk | ) | |
| of the City of Chicago, and | ) | |
| MARA GEORGES, individually and | ) | |
| as Corporation Counsel of the | ) | |
| City of Chicago, | ) | |
| | ) | |
| Defendants. | ) | |

<u>FIRST AMENDED COMPLAINT</u>

NOW COME Plaintiffs, R. JOSEPH FRANZESE, d/b/a/ SECOND AMENDMENT ARMS, ROBERT M. ZIEMAN, SR., ICARRY, and SHAUN A. KRANISH, by and through their undersigned counsel, WALTER MAKSYM, and complaining of and seeking relief from Defendants, CITY OF CHICAGO, RICHARD M. DALEY, JODY P. WEIS, MIGUEL DEL VALLE and MARA GEORGES, state as follows:

<u>THE PARTIES</u>

1.  SECOND AMENDMENT ARMS, being Plaintiff R. JOSEPH FRANZESE d/b/a/ SECOND AMENDMENT ARMS ("SECOND AMENDMENT") and the President of ICARRY, a natural person and a citizen of the United States, who resides and does business in Lake Villa,

Illinois as a duly licensed federal firearms dealer.

2. Plaintiff ROBER M. ZIEMAN, SR. ("ZIEMAN") is a natural person, a citizen of the United States, a law-abiding, life-long resident and long-time employee of the City of Chicago, who, as such, and is legally required to reside in said City by its ordinance. He is an and is a honorably discharged veteran of the United States Marine Corps (the "Marine Corps"), who is well and extensively trained and experienced in the safety and use of various firearms, including but not limited to side-arms, and has also been trained and designated by the Marine Corps in special weapons safety and usage.

3. Plaintiff ICARRY ("ICARRY") is an unincorporated Second Amendment rights education, advocacy and membership association, and a d/b/a/ of SHAUN A. KRANISH ("KRANISH"), its founder, member, chief executive manager, a natural person and a citizen of the United States, who resides and does business in Rockford, Illinois.

4. Defendant CITY OF CHICAGO ("CHICAGO" or the "CITY") is a municipal corporation organized under the laws of the State of Illinois. CHICAGO is the largest city in both Illinois and the Midwestern United States and the third most populous city in the United States, with over 2.8 million people living within the city limits, 75.8% of which, approximately 2.07 million, are 18 years of age or older. The CITY'S area covers approximately 228 square miles (591 square km).

5. Defendant RICHARD M. DALEY ("MAYOR DALEY"), is, and was at all times relevant, the Mayor of the City of Chicago, and as such is responsible for executing, and administering its laws, customs, practices, and policies. In that capacity, he presently enforces the laws, customs, practices and policies complained of in this action. He is sued in both his individual and official capacities.

6. Defendant JODY P. WEIS (the "SUPERINTENDENT"), is, and was at all times relevant, the Superintendent of Police of CHICAGO, and as such is responsible for executing, and administering its laws, customs, practices, and policies. In that capacity, he also presently enforces the laws, customs, practices and policies complained of in this action. He is sued in both his individual and official capacities.

7. Defendant MIGUEL DEL VALLE (the "CITY CLERK"), is, and was at all times relevant, the City Clerk of the City of Chicago, and as such is responsible for executing, and administering its laws, customs, practices, and policies. In that capacity, he also presently enforces the laws, customs, practices and policies complained of in this action. He is sued in both his individual and official capacities.

8. Defendant MARA GEORGES (the "Corporation Counsel"), is, and was at all times relevant, the chief legal counsel for the City of Chicago, and as such has been and is responsible for executing, and prosecuting its laws, customs, practices, and policies and collecting sums that may be claimed, due or owing under the CITY'S ordinances. In that capacity, she also presently drafts, defends, enforces the laws, customs, practices and policies complained of in this action. She is sued in both his individual and official capacities.

<u>JURISDICTION</u>

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, 42 U.S.C. § 1983 and 28 U.S.C. § 1367.

<u>VENUE</u>

10. Venue lies and is proper the in Eastern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1391(a) because all Plaintiffs reside within this District within and their claims all arise of conduct of the Defendants, as herein

complained of, that occurred in and about the City of Chicago, County of Cook, State of Illinois, as is hereinafter more particularly alleged, and all of the Defendants reside and do business within this District.

## NATURE OF THE ACTION

11. Plaintiffs bring their claims against the Defendants damages, equitable, declaratory, and other relief under 18 U.S.C. § 1983 et. seq., the First, Second, Fourth, and Fourteenth Amendments to the U.S. Constitution, the Illinois Constitution and Illinois law.

## FACTS COMMON TO All COUNTS

12. On June 28, 2010 the U.S. Supreme Court rendered its landmark decision in *McDonald v. City of Chicago*, ___ U.S. ___ (Slip. Opin. June 28, 2010) *("McDonald v. Chicago"),* brought by lead Plaintiff, Ottis McDonald ("Mr. McDonald"), a resident of the City of Chicago, wherein it found that the Second Amendment to the United States is incorporated in the Fourteenth Amendment and therefore guarantees a fundamental personal right of the people to keep and bear arms made applicable to the states and their political subdivisions, officers and employees, such as the Defendants hereto.

13. In *McDonald v. Chicago* the Supreme Court, by reversal and remandment to the Seventh Circuit, paved the way for Chicago Municipal Code § 8-20-040(a) et. seq. that was enacted approximately 28 years ago and became effective on or about March 19, 1982 (the "Old Gun Ban Ordinance", a copy which is attached hereto as Exhibit "A"), and that banned handguns by making them "unregisterable" by law-abiding citizens, and thereby prohibited and was designed to render their ownership, transfer, and possession illegal, to be inevitably struck down and declared unconstitutional upon remand to the United States Court of Appeals for the Seventh Circuit.

4

14. Thereafter, on or about June 30, 2010 and July 2, 2010 SECOND AMENDMENT caused to be filed and submitted two applications with the CITY CLERK'S office in accordance with and pursuant to Title 4 Businesses, Occupations and Consumer Protection Chapter 4-144 Weapons (the "Weapons Dealer Ordinance", a copy which is attached hereto as Exhibit "B" seeking to obtain weapons dealer business licenses to permit him, as an experienced and as a duly licensed federal firearms dealer, to open and operate two gun shops at two separate locations within CHICAGO, and who also planned and intended to submit additional applications to apply for and open other gun shops, firing and training ranges at other locations within and throughout CHICAGO.

15. On or about July 1, 2010, in response to *McDonald v. Chicago,* MAYOR DALEY, a long time fervent opponent of the right of others, than himself, to keep and bear arms, publicly announced at a press conference, "It's clear to all that our current handgun ordinance will soon be struck down by the Seventh Circuit Court of Appeals," and therefore he would immediately propose the immediate adoption of an ordinance that would have among its key provisions, *inter alia*, the following:

a. Limiting registration of no more than one handgun per month in the home per adult or applicant and generally prohibiting the possession of a handgun by any person except in the person's home.

b. Establishing a two-step process to own and register a handgun. First, an applicant must obtain a city firearms permit, which requires having a valid State of Illinois Firearm Owner's Identification ("FOID") Card, and then an applicant must register the gun with the Chicago Police Department.

c. Prohibiting handgun ownership by anyone who has been convicted of any violent crime, has two or more offenses for driving under the influence of alcohol or drugs and under state law has been convicted of domestic violence.

d. Banning "assault weapons" and providing for mandatory jail time beginning in 2011 for anyone who is caught with one.

e. Arbitrarily and capriciously requiring firearms safety training, both in a classroom and on a firing range but illogically imposing a total ban on all firearms training and firing rages within the CITY.

f. Arbitrarily and capriciously imposing a total ban on all gun shops and sales within the CITY.

g. Including "severe" penalties for violating the ordinance, including hefty fines and jail time.

h. Arbitrarily and capriciously banning the gifting of firearms by residents and non-residents to residents of the CITY.

i. Arbitrarily and capriciously prohibiting weapons from being sold, purchased, possessed, used, or transfer that can hold more than ten (10) rounds/cartridges/bullets thereby creating a *de facto* bans on widely and normally used and owned and commercially sold type of handguns.

16. Thereafter, on the next day, July 2, 2010, and without seeking or allowing public comment or input or review, and in order to circumvent the Supreme Court ruling in *McDonald v. Chicago* and deliberately deny CHICAGO'S law-abiding residents and others wishing to purchase or use lawful firearms in the CITY the ability to acquire, obtain, keep and bear arms, i.e., legal handguns and other weapons, CHICAGO adopted a more sweeping ordinance hurriedly proposed by MAYOR DALEY to become effective on July 12, 2010 (the "New Gun Ban Ordinance", a copy which is attached hereto as Exhibit "C").

17. That ICARRY regularly gifts handguns to qualified, law abiding Illinois citizens and desires and plans to gift handgun to Mr. McDonald in the City of Chicago to honor, commemorate and acknowledge his commitment, efforts and stand for fundamental Second Amendment rights that lead to the U.S. Supreme Court

landmark ruling in *McDonald v. Chicago.* ICARRY regularly gifts handguns to other qualified, law-abiding citizens, especially, minorities, the poor, infirm, disabled and elderly who are often the most vulnerable targets of urban crime, but cannot afford or have difficulty obtaining handguns for the protect their homes, person, family and property. Plaintiffs fear prosecution under the New Gun Ban Ordinance by the Defendants, should they undertake such conduct in and about Chicago or with respect to its residents.

FIRST CLAIM FOR RELIEF
CHICAGO'S TOTAL BAN AND RESTRICTIONS
ON WEAPONS DEALERS, GUN STORES, FIRING RANGES
AND, *INTER ALIA*, THE TRANSFER, GIFTING, ADVERTISING
AND SALES AND USE OF HANDGUNS INFRINGES ON THE RIGHT TO
KEEP AND BEAR ARMS, AND OTHER FUNDAMENTAL RIGHTS GURANTEED
BY U.S. CONST. AMENDS. I, II, IV AND XIV - 42 U.S.C. § 1983

18. SECOND AMENDMENT, ZIEMAN ICARRY and KRANISH (Plaintiffs"), complaining of all Defendants, reallege and incorporate the foregoing paragraphs 1 through 17 as if fully stated herein.

19. On information and belief, the New Gun-Ban Ordinance provides in pertinent part with respect to weapons dealers and gun shops and sales:

SECTION 2. Chapter 2-84 of the Municipal Code of Chicago is hereby amended by adding a new section 2-84-075, as follows:

2-84-075 Sale of firearms and ammunition authorized by the superintendent.

Notwithstanding any other provision of this code to the contrary, the superintendent may authorize the sale of firearms or ammunition by a person issued a federal firearms license to a member of the police department, if that member is authorized to carry such firearm or ammunition. Such sales shall be conducted at department of police facilities.

SECTION 3. Title 4 of the Municipal Code of Chicago is

hereby amended by adding a new section 4-144-065, by adding the language underscored, and by deleting the language struck through, as follows:

4-144-010 License — Required.
It shall be unlawful for any person to engage in the business of selling, or to sell, ~~or~~ give away <u>or otherwise transfer,</u> any ~~pistol, revolver or other~~ firearm, dagger, stiletto, billie, derringer, bowie knife, dirk, stun gun or taser, as defined in Section 24-1 of the Illinois Criminal Code, 720 ILCS 5/24-1, or other deadly weapon which can be carried or concealed on the person, <u>or any ammunition, as that term is defined in Section 8-20-010,</u> without securing a weapons dealer license. The license required by this chapter shall be in addition to any other license required by law. <u>It shall be unlawful for any person licensed under this chapter to engage in the business of selling, or to sell, give away or otherwise transfer, any firearm as that term is defined in Section 8-20-010.</u> (Emphasis supplied)

20. The Fourteenth Amendment to the United States Constitution provides, in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

21. Under the Fourteenth Amendment to the United States Constitution the New Gun Ban Ordinance deprives, or as applied, may deprive, law abiding persons and their families and loved ones as well as those engaged in gifting commerce, commerce or operating businesses, life, liberty, or property, without due process of law; or deny them equal protection of the laws.

22. Pursuant to *McDonald v. Chicago,* the Second Amendment right to keep and bear arms is a fundamental individual right and a privilege and immunity of United States citizenship pursuant to its incorporation under the Due Process Clause of the Fourteenth Amendment, that applies to and may not be

8

infringed by the states and their political subdivisions, officers and employees, such as the Defendants herein.

23. Pursuant to *McDonald v. Chicago*, handguns, as a class of weapons, are "arms", the possession, carry and gifting of which by law-abiding adult citizens is protected by the Second Amendment right to keep and bear arms and may not be infringed.

24. The New Gun Ban Ordinance, *inter alia*, bans gun shops and the commercial and individual sales, transfer and gifting of and/or the acquisition of firearms by persons within the CITY. Plaintiffs maintain that the New Gun Ban Ordinance is vague, arbitrary, capricious, overly broad, and infringes the fundamental right of the law-abiding people within the CITY of CHICAGO to and keep and bear arms, as is guaranteed by the Second Amendment of the Constitution of the United States, in that it contains, *inter alia,* the following unconstitutional prohibitions and restrictions on the sale, possession and use of firearms within said CITY that are designed and intended not to reasonably regulate but to infringe on and unduly burden the free exercise of the fundamental right guaranteed by the Second Amendment of law-abiding citizens to keep and bear arms within the CITY of CHICAGO, to wit:

A. it arbitrarily and capriciously prohibits deadly weapons dealers and other persons from selling or otherwise transferring firearms, in the CITY, except through inheritance.

B. it arbitrarily and capriciously limits registration of no more than one handgun per month in the home per adult or applicant and generally prohibiting the possession of a handgun by any person except only within the person's home.

C. it arbitrarily and capriciously prohibits the possession of a handgun by any person, except within in the person's home, excluding porches, yards and garages. However, Illinois law (720 ILCS 5/24 – the Illinois Unlawful Use of Weapons ["UUW"] statute), specifically permits, makes exempt from prosecution and perfectly lawful the right of law-abiding Illinois law citizens' to transport, carry and possess

firearms in public in Illinois by declaring, to wit: *"nothing in this Article shall prohibit, apply to, or affect the transportation, carrying, or possession of any pistol, … or other firearm* [in Illinois] *\*\*\* which is unloaded and enclosed in a case, firearm carrying box, shipping box, or other container, by the possessor of a valid Firearms Owners Identification Card."* (Emphasis supplied) Recently, the Illinois Supreme Court held in *People v. Diggings*, 235 Ill. 2d 48 (2009) (*"Diggins"*), that for purposes of the statutory exemption unloaded weapons enclosed in a "case, a firearm carrying box, shipping box or other container," the center console of an automobile was a "case." Thus, Illinois' highest court gave the term "case" its plain and ordinary meaning, which includes any portable or nonportable receptacle and need not be interpreted only in reference to firearms. Because the center console of a vehicle is a receptacle that contains or holds something, the center console of a vehicle falls within the ordinary definition of "case".

D. it arbitrarily and capriciously prohibits a person from possessing a long gun, except when in the person's home, or fixed place of business.

E. it arbitrarily and capriciously provides for the same exceptions as above for the possession of handguns, with an additional exception for hunters where hunting is lawful.

F. it arbitrarily and capriciously prohibits the possession of "assault weapons" and "other firearms that are unregisterable".

G. it arbitrarily and capriciously requires each person who keeps or possesses a firearm in his or her home must keep no more than one firearm in his home that is assembled and operable, and further unconstitutionally requires all other firearms possessed in the home be broken down in a nonfunctioning state or shall have trigger lock or other mechanism making the firearm temporarily inoperable.

H. it arbitrarily and capriciously requires that no person may keep or possess any firearm or ammunition in his home if the person knows or has reason to believe that a minor under 18 years old is likely to gain access to the firearm or ammunition, unless: (i) the person is physically present in the home and the firearm is either being held by the person or is physically secured on the person's body; (ii) the firearm is secured by a trigger lock or similar mechanism;

or (iii) the firearm and ammunition are placed in a securely locked box or container (when Illinois statutory and case law permits transportation of firearms in a "case" or "container"). However, no person may be punished under said provision if the minor uses the firearm for self-defense, or gains access to the firearm through unlawful entry.

I. it arbitrarily and capriciously prohibits the possession or transfer of, *inter alia,* any laser-sight accessory, when such accessories assist and improve accuracy in life or death situations.

J. it arbitrarily and capriciously requires the registered owner of a vehicle that contains a firearm registered to a person who is not the driver or occupant of the vehicle, an "unregistered" firearm, a firearm that is not being lawfully transported, an "unregisterable" firearm, *inter alia,* a laser-sight accessory, shall be subject to an administrative penalty of $1,000.00 plus any towing and storage fees.

K. it arbitrarily and capriciously prohibits the possession of ammunition by any person is prohibited unless the person has a valid owner's permit (a/k/a CHICAGO FIREARMS PERMIT ["CFP"]), and registration certificate for a firearm of the same caliber as the ammunition possessed.

L. it arbitrarily and capriciously prohibits gifting of handguns by residents and non-residents, such as ICARRY, to residents of the CITY such as Mr. McDonald.

M. it arbitrarily and capriciously exempts MAYOR DALEY and the CITY'S aldermen and women from its provisions and prohibitions, and penalties.

N. on information, and belief in connection with SECOND AMENDMENT'S applications to the CITY for such business and weapons dealer's licenses, and with the intent and purpose of denying and interfering with the exercise of SECOND AMENDMENT'S fundamental Constitutional rights and federal firearm's dealer's licensure, under the direction of MAYOR DALEY and GEORGES, its agent have informed the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the licensing authority for SECOND AMENDMENT'S federal firearms dealer's license that such license will never be issued and has refused to process SECOND AMENDMENT'S applications therefore,

O. it also arbitrarily and capriciously requires permits for

11

firearms owners and the registration of firearms permit to carry or possess a firearm CFP by requiring that, in order to qualify therefore, persons:

1. must be 21 years of age, or 18-20 with parent's permission and no misdemeanor conviction;

2. must possess a valid Illinois FOID card;

3. must not have been convicted of (i) a violent crime, (ii) two or more offenses for driving under the influence of alcohol or other drugs; or (iii) an unlawful use of a weapon that is a firearm;

4. must arbitrarily and illogically have vision sufficient for a drivers' license, when lesser vision is sufficient to use a firearm to defend one's life, home, loved ones and property or engage in other lawful uses and the collection and ownership of firearms;

5. must not be otherwise ineligible to possess a firearm under any law;

6. must not have violated Municipal Code provisions prohibiting possession of a laser-sight accessory, firearm silencer or muffler, or unlawful sales of firearms;

7. a CFP card shall expire 3 years after the date of issuance; with an unreasonable fee of $100.00 per weapon, a overly burdensome sum equivalent to a substantial percentage of if not the full the value of the average price of a new or pre-owned firearm and denies equal protection of the laws and the privileges and immunities by waived such fees for retired CPD officers);

8. requires applicants for a CFP to have completed a firearm safety and training course with at least one hour of range training and four hours of classroom instruction when no gun training or shooting ranges are not permitted within the CITY, and submission for unnecessary fingerprinting of law-abiding citizen and FOID Card holders who have passed background checks that unduly burdens applicants, infringes their Second Amendment right to keep and bear arms and invades their privacy;

9. provides that the Superintendent must process applications within an unreasonably burdensome 45 days (120 days for applications submitted within 180 days after passage of the ordinance), unless good cause is shown without providing sufficient guidelines or standards therefore.

25. The New Gun Ban Ordinance requirement for firearm registration certificate(s) and the provisions thereof are arbitrary, capricious, unreasonably burdensome, vague, overly broad or narrow and therefore infringe on the right of law-abiding people in the CITY of CHICAGO to keep and bear arms and is unconstitutional for one or more of the following reasons:

a. it arbitrarily and capriciously requires a registration certificate to be carried or possessed with each firearm;

b. it arbitrarily and capriciously requires that a certificate expire at the time of the CFP, but an annual registration report is required and an application fee is $15.00 for each firearm registered;

c. it arbitrarily and capriciously requires that each applicant be issued only one registration certificate per month for a handgun for the home in which the applicant resides;

d. it arbitrarily, capriciously and vaguely classifies firearms as "unregisterable" without providing sufficient guidelines or standards therefore, but only stating that handguns are defined as "unsafe" i.e. that do not meet "safety standards" or "otherwise inappropriate for lawful use";

e. it arbitrarily and capriciously provides that firearms that become "unregisterable" as to a person for violations of the Municipal Code thereby denying property without due process of law;

f. it arbitrarily, capriciously and vaguely defines firearms as "assault weapons", with certain exceptions;

g. it arbitrarily, capriciously and vaguely requires only that "lost or stolen" firearms and not other property must be reported immediately to the superintendent;

h. it arbitrarily, capriciously and vaguely alludes that "procedures are established for application denials, and revocations of CFP and registration certificates" without providing sufficient guidelines or standards therefore;

i. it arbitrarily and capriciously provides unreasonable and excessive penalties include fines of $1,000.00-$5,000.00, incarceration for not less than 20 days or more than 90 days, or both with any subsequent conviction to be punishable by a fine of $5,000.00 – $10,000.00, and by incarceration for not less than 30 days, nor more than six months;

j. it arbitrarily, capriciously and vaguely establishes procedures for hearing for denials and revocations of a CFP and registration certificate without providing sufficient guidelines or standards therefore;

k. it arbitrarily, capriciously and vaguely delegates unbridled discretion and power to the Superintendent to develop a roster of "safe handguns" and "assault weapons" that will be posted on the [police] dept.'s web site without providing any sufficient guidelines or standards therefore;

l. it arbitrarily, capriciously and vaguely similarly provides that only handguns that are listed on the "roster" are permissible and that "assault weapons" listed on the list of banned "assault weapons" that is designed and intended not to reasonably regulate but to infringe on and burden the fundamental and guaranteed right to keep and bear arms;

m. it arbitrarily, capriciously and vaguely authorizes the seizure, forfeiture and destruction of weapons, firearms, and laser-sight accessories kept in violation of the chapter;

n. it arbitrarily, capriciously and vaguely delegates unbridled discretion and power to unidentified persons by broadly providing that rules and regulations pertaining to the chapter will be posted on the police department's web site without providing any sufficient guidelines or standards;

o. it arbitrarily, capriciously, vaguely, irrationally, and illogically prohibits shooting galleries and firing and

14

target ranges (other than for law enforcement) in CHICAGO, when the same ordinance mandates all applicants complete a four hour firearm safety and training course with at least one hour of range training and four hours of classroom instruction, when no gun training or shooting ranges are permitted to do business within the CITY thereby attempting to render illusory, undermine and defeat Plaintiff and the CITY's residents Second Amendment fundamental rights by making complying with its requirements impossible to fulfill within the CITY and unduly burdensome, inconvenient, time-consuming, and expensive to full by requiring multiple travels outside of the CITY;

p. it arbitrarily and capriciously establishes a range of unreasonable penalties for violations of thereof that are designed and intended to deter law-abiding citizen's exercise of their fundamental Second Amendment right to keep and bear arms;

q. it amends § 8-24-010 of CHICAGO'S Old Gun Ban Ordinance to arbitrarily and capriciously limit the discharge of a firearm in the CITY only within one's home in the lawful self-defense or self-defense of another;

r. it arbitrarily and capriciously makes what brands, models and types of handguns illegal, and has the effect of devaluing and/or taking them without just compensation;

s. its it arbitrary, capricious, combined and cumulative effect is to illegally limit, infringe, burden, ration, and endeavor to unconstitutionally ban and or severely ration firearms and the free exercise of the fundamental right guaranteed by the Second Amendment of law-abiding citizens to keep and bear arms within and about CHICAGO;

t. it otherwise infringes the right of law-abiding citizen's exercise of their fundamental Second Amendment right to keep and bear arms and denies due process by interfering with and depriving them of their property rights, value, and usage;

u. it imposes unreasonable and excessive fees not reasonably related to the actual costs incurred by the regulation that are imposed to raise revenue and tax, burden and infringe Plaintiffs' fundamental Second Amendment rights;

u. it is arbitrary and capricious, and infringes Plaintiffs' fundamental constitutional rights, and must be held invalid because Defendants can demonstrate no compelling interest to justify it, and

v. it otherwise, burdens and defeats and infringes upon Plaintiffs' fundamental rights guaranteed under the U.S. Constitution rights, impermissibly burdens interstate commerce, and/or conflicts with federal and/or state law.

26. Pursuant to the holding *McDonald v. Chicago*, the Second Amendment, incorporated and made applicable by the Fourteenth Amendment to the states and these Defendants, guarantees individuals a fundamental right to keep and bear functional, personal firearms, including handguns, within the home. Moreover, under Illinois statutory and case law all persons possessed of a valid Illinois FOID Card may acquire by any lawful means as many firearms as they wish and may freely possess and transport them throughout Illinois, including CHICAGO, for self-protection and other lawful purposes, along with ammunition, provided they are unloaded and in a case or container, exempted by the Illinois Legislature as law conduct under 720 ILCS 5/24 and the Illinois Supreme Court in *Diggins*, as aforesaid.

27. By imposing a total ban on, *inter alia,* gun shops and the sale handguns, as aforesaid, CHICAGO and MAYOR DALEY currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, and engage in commerce by selling, transferring, possessing, using and dealing them, lawful products for protected purposes, in violation of the Second and Fourteenth Amendments to the United States Constitution.

28. By reason of the CITY'S adoption of its New Gun Ban Ordinance outlawing any and all gun shops within the CITY, any further effort, request or demand by SECOND AMENDMENT pursue or

its applications or obtain issuance of Weapons Dealers licenses from the CHICAGO by MAYOR DALEY and/or the CITY CLERK would be futile.

29. As a result of the foregoing infringement, Plaintiffs have been and will continue to be damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

30. As a result and consequence of CHICAGO and DALEY'S total ban on the sales of a lawful products, i.e., firearms and related accessories, in the CITY and their defiance and circumvention of the Supreme Court's ruling in *McDonald v. Chicago*, SECOND AMENDMENT will suffer damages including but not limited to a loss of profits, goodwill, and other general and economic damages as the proofs will show at trial.

WHEREFORE PLAINTIFFS PRAY:

That judgment be entered in their favor Plaintiffs and against Defendants:

A. permanently enjoining and restraining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing or prosecuting all of the provisions of the Old Gun Ban Ordinance and New Gun Ban Ordinance; including, but not limited to requiring the annual renewal of firearms registrations, daily reporting of sales, fingerprinting, signage and advertising; conducting forced credit reports as a condition of submitting an application for any city license, mandating that registration certificates for firearms be obtained prior to taking possession of a firearm: as applied to prohibiting possession of an unregistered firearm within a period of time reasonably necessary to obtain

registration; and any custom, policy, or practice of deeming a firearm "unregisterable" for the sole reason that it has previously been not validly registered.

B. awarding Plaintiffs declaratory relief consistent with the injunction and declaring that CHICAGO'S above-referenced ordinances be adjudged and decreed, *inter alia*, that the above-referenced ordinances not to constitute reasonable or permissible regulations, but rather violate Amendments I, II, IV, XIV and the Due Process and takings clauses of the United States Constitution, thus rendering them unconstitutional, null and void *ab initio*, and unenforcible.

C. awarding Plaintiffs damages including but not limited to SECOND AMENDMENT'S loss of profits, goodwill, and other general and economic damages, as their respective proofs will justify at trial

D. awarding Plaintiffs attorney fees and costs pursuant to 42 U.S.C. § 1988; and

E. granting Plaintiffs such other and further relief as this Court may deem just and proper in the premises.

SECOND CLAIM FOR RELIEF
ZIEMAN'S INDIVIDUAL ACTION FOR RESTITUTION,
DECLARATORY AND OTHER RELIEF – INFRINGEMENT OF FUNDAMENTAL
RIGHTS TO ACQUIRE, USE, GIFT, KEEP AND BEAR ARMS AND ASSOCIATE
UNDER U.S. CONST., AMENDS. I, II AND XIV, 42 U.S.C. § 1983

31. Plaintiff ZIEMAN, complaining of all Defendants, realleges and incorporates paragraphs 1 through 30 as though fully stated herein.

32. Pursuant to CHICAGO'S unconstitutional Old Gun Ban Ordinance, ZIEMAN'S home was invaded and searched by the CHICAGO Police and numerous valuable handguns and rifles that he possessed therein and maintained in a safe as FOID Card holder were seized, confiscated and/or destroyed, and he was thereafter found guilty and fined for failing to register them thereunder.

33. ZEIMAN desires to purchase and replace his

18

unconstitutionally seized, confiscated firearms by promptly purchasing from a weapons dealer which CHICAGO'S New Gun Ban Ordinance purports to prohibit.

34. ZIEMAN maintains that requiring he and other law-abiding citizens and CHICAGO residents to annually re-register each firearm and the other above-referenced and complained of limitations, prohibitions, restrictions and requirements imposed upon him and weapons dealers such as SECOND AMENDMENT ARMS, that Defendants currently maintain and actively enforce are a set of laws, customs, practices, and policies under color of state law that deprive Plaintiffs and other individuals, their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983.

35. ZIEMAN therefore maintains that he is thus entitled to the return and restitution of his said firearms in kind or the fair market value thereof, vacation and expungment of his conviction for failure to register his weapons, a refund of any fines, court costs, expenses, legal fees incurred as a result thereof, damages, declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices along with his attorneys fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE PLAINTIFF ZIEMAN PRAYS:

That judgment be entered in their favor ZIEMAN and against Defendants:

A. permanently enjoining and restraining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing or enforcing all of the provisions of the Old Gun Ban Ordinance and New Gun Ban Ordinance; including, but not limited to requiring the annual

renewal of firearms registrations, daily reporting of sales, fingerprinting, signage and advertising; mandating that registration certificates for firearms be obtained prior to taking possession of a firearm: as applied to prohibiting possession of an unregistered firearm within a period of time reasonably necessary to obtain registration; and any custom, policy, or practice of deeming a firearm "unregisterable" for the sole reason that it has previously been not validly registered.

B. awarding declaratory relief consistent with the injunction and declaring, inter alia, that the above-referenced ordinances do not constitute reasonable or permissible regulations but, rather, violate he First, Second, Fourth, Fourteenth Amendments and Due Process and takings clauses of the of the taking clause of the United States Constitution rendering them unconstitutional, void *ab initio*, and unenforecible.

C. awarding him general, compensatory and punitive damages as the proofs will show at trial;

D. awarding him attorney fees and costs pursuant to 42 U.S.C. § 1988; and

E. granting him such other and further relief as this Court may deem just and proper in the premises.

THIRD CLAIM FOR RELIEF
CLASS ACTION FOR RESTITUTION AND OTHER RELIEF
INFRINGEMENT OF RIGHT TO KEEP AND BEAR ARMS
U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

36. Plaintiff ZIEMAN, complaining of all of the Defendants, realleges and incorporates paragraphs 29 through 35 as if fully stated herein and states individually and as class representative:

37. By requiring law-abiding citizens and resident, including Plaintiff and his fellow class members, to register all firearms prior to their acquisition, Defendants currently

maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiff and the class are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs and the class are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

38. The class on whose behalf this action is brought on behalf of ZIEMAN individually, and all natural citizens and corporations and other entities having lived in, living in, having done business in, doing business in CHICAGO, State of Illinois including all those persons who have been charged and/or prosecuted under or who have plead or been found guilty under CHICAGO'S Old Gun Ban Ordinance that have had any of their firearms confiscated and or destroyed, incurred or paid fines, penalties, court costs as a result of any plea or conviction under said unconstitutional ordinance, or incurred or paid any witness, expert, attorneys or other fees in connection with the defense of any such charge or prosecution by the CHICAGO, its attorneys, officers, agents or employees, over and during the period 28 years that said unconstitutional ordinance has been enacted, i.e., since March 19, 1982, and thereafter.

39. That ZIEMAN, as class representative, will adequately represent the claims of each of these natural citizens.

40. That a class action may be maintained in this action because:

(a) the class is so numerous that joinder of all members is impractical. While the exact number and identities of the class members are unknown at this time, ZIEMAN believes the

number to be substantial and that they can be determine through discovery and full disclosure and accounting of CHICAGO'S, MAYOR DALEY'S, SUPERINTENDENT WEIS', the CITY CLERK'S and court records, that are solely within their possession and control.

(b) there are questions of fact or law, including but not limited to the above issues of constitutionality of said ordinances that are common to the class. Such questions predominate over any questions affecting only individual class members.

(c) ZIEMAN is best situated to, and will, fairly and adequately represent the interest of the class and other members, who like them, have been intimidated, and may, like them, be fearful of retaliation so as to step forward to vindicate and protect their rights.

(d) a class action is an appropriate method for the fair and efficient adjudication of the controversy and will serve the interests of judicial economy.

WHEREFORE, Plaintiff ZIEMAN, individually and as class representative, prays for judgment against the CHICAGO, MAYOR DALEY, the SUPERINTENDENT and the CITY CLERK as follows:

A. certifying the class and declaring that the CITY'S above-referenced ordinances be found, declared, adjudged, and decreed to be unconstitutional and null and void, *ab initio*, as a result of the United States Supreme Court's recent ruling in *McDonald v. Chic*ago;

B. ordering Defendants, their predecessors, officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to account for, refund and pay over and back to them any and all moneys, fines, penalties, payments, costs, expenses and fees found due, paid, owing or recovered thereunder by or on their behalf or as a

result of the actions of any of the turn over and refund to ZIEMAN and the Class;

C. awarding ZIEMAN, as class representative, and the class and general, compensatory and punitive damages against said Defendants, their predecessors, officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, for their unlawful enforcement and application and prosecution of said ordinances.

D. awarding the class representative and the class equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, declaring their pleas an convictions under said unconstitutional ordinances void and expunged and removed all related government records and files, that this Court declare all said sums to be accounted for, disgorged and refunded to the class representative and class with prejudgment interest thereon;

E. ordering said Defendants, their predecessors, officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to turnover and return all weapons any other property seized, impounded or confiscated by them from the ZIEMAN and the Class members under its said unconstitutional ordinances, or in the alternative, if such weapons or other property have been destroyed, damaged or cannot be found or located, the fair market value thereof be determined and order paid them plus prejudgment interest;

F. awarding the class representative and the class civil and equitable appropriate remedies including an equitable accounting;

G. awarding the class representative, fair and appropriate other compensation for serving as class representative, class costs, disbursements and reasonable attorneys fees; and

H. awarded the class representative and the class such other and further relief, as may be appropriate, necessary, just and proper in the premises.

SECOND AMENDMENT ARMS'
PENDANT STATE CLAIM FOR MANDAMUS

41. Plaintiff SECOND AMENDMENT, complaining of all of the Defendants, realleges and incorporates paragraphs 1 through 30 as if fully stated herein and states individually and as class representative:

42. As a law—abiding citizen and a person qualified and licensed as to sell weapons as a federally licensed firearms dealer, SECOND AMENDMENT is entitled pursuant to the above stated and Illinois law, to have Defendants CHICAGO, MAYOR DALEY and the CITY CLERK issue him, in performance of their nondiscretionary and ministerial acts, the Weapons Dealer business licenses applied for as aforesaid upon payment of a reasonable fee therefore.

WHEREFORE PLAINTIFF SECOND AMENDMENT ARMS PRAYS:

That judgment be entered in their favor SECOND AMENDMENT ARMS and against Defendants:

A. issuing a writ of mandamus ordering, directing, compelling Defendants CHICAGO, MAYOR DALEY and the CITY CLERK perform their nondiscretionary and ministerial acts, and issue him the Weapons Dealer business licenses he applied for as aforesaid, upon payment of a reasonable application/processing fee therefore;

B. awarding attorney fees and costs; and

C. granting such other and further relief as this Court may deem just and proper in the premises.

ZIEMAN'S PENDANT INDIVIDUAL AND CLASS ACTION –
STATE LAW CLAIM FOR RESTITUTION – UNJUST ENRICHMENT

43. Plaintiff ZIEMAN, complaining of CHICAGO, realleges and incorporates paragraphs 29 through 40 as if fully stated herein and states individually and as class representative:

44. That as a result of the foregoing and said ordinances violating of Illinois Constitution, Article I. §§ 1, 2, 4, 6, 12, 22 and 24, CHICAGO has been unjustly enriched and therefore ZIEMAN is entitled to restitution.

WHEREFORE, Plaintiff ZIEMAN, individually and as class representative, prays for judgment against the CHICAGO, MAYOR DALEY, the SUPERINTENDENT and the CITY CLERK as follows:

A. certifying the class and declaring that the CITY'S above-referenced ordinances be found, declared, adjudged, and decreed to be unconstitutional and null and void, *ab initio*, as a result of the United States Supreme Court's recent ruling in *McDonald v. Chic*ago;

B. ordering Defendants, their predecessors, officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to account for, refund and pay over and back to them any and all moneys, fines, penalties, payments, costs, expenses and fees found due, paid, owing or recovered thereunder by or on their behalf or as a result of the actions of any of the turn over and refund to ZIEMAN and the Class;

C. awarding ZIEMAN, as class representative, and the class and general, compensatory and punitive damages against said Defendants, their predecessors, officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, for their unlawful enforcement and application and prosecution of said ordinances.

D. awarding the class representative and the class equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, declaring their pleas an convictions under said unconstitutional ordinances void and expunged and removed all related government records and files, that this Court declare all said sums to be accounted for, disgorged and refunded to the class representative and class with prejudgment interest thereon;

E. ordering said Defendants, their predecessors, officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to turnover and return all weapons any other property seized, impounded or confiscated by them from the ZIEMAN and the Class members under its said unconstitutional ordinances, or in the alternative, if such weapons or other property have been destroyed, damaged or cannot be found or located, the fair market value thereof be determined and order paid them plus prejudgment interest;

F. awarding the class representative and the class civil and equitable appropriate remedies including an equitable accounting;

G. awarding the class representative, fair and appropriate other compensation for serving as class representative, class costs, disbursements and reasonable attorneys fees; and

H. awarded the class representative and the class such other and further relief, as may be appropriate, necessary, just and proper in the premises.

PENDANT STATE CLAIM FOR
DECLARATORY JUDGMENT (735 ILCS 5/2-701)

45. Plaintiffs incorporate paragraphs 39 through 42 by reference as if fully set forth herein.

46. That by reason of the foregoing Plaintiffs are entitled to a judicial declaration of his rights pursuant to 735 ILCS 5/2-701 and declaratory relief in connection therewith.

WHEREFORE, PLAINTIFFS PRAYS that this Court enter a declaratory judgment in his favor against Defendants pursuant to 735 ILCS 5/2-701, as follows:

A. declaring that CHICAGO'S above referenced ordinances be adjudged and decreed, *inter alia*, not to constitute reasonable or permissible regulations, but rather, violate Article I. §§ 1, 2, 4, 6, 12, 22, 24, and Due Process and takings clauses of the Illinois Constitution, thus rendering them unconstitutional, null and void *ab initio*, and unenforceable;

B. awarding them general, compensatory and punitive damages as the proofs will show at trial;

C. awarding them attorney fees and costs; and

D. granting them such other and further relief as this Court may deem just and proper in the premises.

JURY TRIAL DEMANDED

Plaintiffs hereby requests a trial by jury of all issues that may be so triable.

Dated and filed electronically using the United States District Court for Northern District of Illinois "CM/ECF System" this 22nd day of September 2010.

Respectfully submitted,

R. JOSEPH FRANZESE d/b/a/ SECOND AMENDMENT ARMS, ROBERT M. ZIEMAN, SR., ICARRY and SHAUN A. KRANISH, Plaintiffs,

By */s/ Walter Maksym*
WALTER MAKSYM, their attorney

### PLAINTIFF'S RULE 11 CERTIFICATION

The undersigned certifies that they are Plaintiffs in that above-captioned cause, that they have read the foregoing complaint, that to the best of their knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact the same is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation and that the exhibits attached, if any are true and correct copies of the documents they purport to be.

*/s/ R. Joseph Franzese*
R. JOSEPH FRANZESE, d/b/a/ SECOND
AMENDMENT ARMS, and as President
of ICARRY, Plaintiffs

*/s/ Robert M. Zieman, Sr.*
ROBERT M. ZIEMAN, SR., Plaintiff

*/s/ Shaun A. Kranish*
Shaun A. Kranish, Plaintiff

### ATTORNEY'S RULE 11 CERTIFICATION

The undersigned attorney certifies that he has read the foregoing complaint, that to the best of his knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact the same is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

*/s/ Walter Maksym*
WALTER MAKSYM, Plaintiffs' attorney

Walter Maksym
Attorney for Plaintiffs
2056 N. Lincoln Avenue
Chicago, IL 60614-4525
Telephone: (312) 218-4475
e-mail: wmaksym@gmail.com

EXHIBIT "A"

http://www.amlegal.com/nxt/gateway.dll/Illinois/chicago_il/municipalcodeofchicago?f=templates$fn=default.htm$3.0$vid=amlegal:chicago_il

| Municipal Code of Chicago |
|---|
| TITLE 8 OFFENSES AFFECTING PUBLIC PEACE, MORALS AND WELFARE |
| CHAPTER 8-20 WEAPONS |

# CHAPTER 8-20
# WEAPONS

Article I.  Possession of Firearms

8-20-010    Unlawful to carry – Exceptions.
8-20-015    Unlawful firearm or laser sight accessory in motor vehicle – Impoundment.
8-20-020    Violation – Penalty.
Article II.  Registration of Firearms
8-20-030    Definitions.
8-20-040    Registration of firearms.
8-20-050    Unregisterable firearms.
8-20-060    Prerequisites to registration – Application for registration.
8-20-070    Fingerprints.
8-20-080    Application fees.
8-20-090    Filing time.
8-20-100    Investigations.
8-20-110    Issuance of registration certificate.
8-20-120    Revocation – Denial.
8-20-130    Procedures for denial or revocation.
8-20-140    Additional duties of registrant.
8-20-150    Exhibition of registration.
8-20-160    Possession of ammunition.
8-20-165    Possession of laser sight accessories.
8-20-170    Permissible sales and transfers of firearms and ammunition.
8-20-175    Firearm Owners Identification Card Act – Compliance required.
8-20-180    False information – Forgery – Alteration.
8-20-190    Voluntary surrender – Immunity.
8-20-195    Voluntary surrender of laser sight accessory – Immunity.
8-20-200    Renewal of registration.
8-20-210    Notice.
8-20-220    Destruction of weapons confiscated.
8-20-230    Authority of the superintendent.
8-20-240    Acquisition or possession prohibited by law.
8-20-241    Firearm used illegally – Penalty.
8-20-250    Violation – Penalty.
8-20-260    Severability.

# ARTICLE I.  POSSESSION OF FIREARMS

**8-20-010  Unlawful to carry – Exceptions.**

It shall be unlawful for any person to carry or maintain in any vehicle or about his or her person except when on his or her property or in his or her residence or fixed place of business, any rifle, shotgun, or other firearm; provided, that this section shall not apply to:

(1)    Peace officers or any person summoned by any such officers to assist in making arrests or preserving the peace while he is actually engaged in assisting such officer;

(2)    Wardens, superintendents and keepers of prisons, penitentiaries, jails, and other institutions for the detention of persons accused or convicted of an offense, while in the performance of their official duty or commuting between their homes and places of employment;

(3)    Members of the Armed Services or Reserve Forces of the United States or the Illinois National Guard or the Reserve Officers Training Corps, while in the performance of their official duty;

(4)    Special agents employed by a railroad to perform police functions, or employees of a detective agency, watchman-guard or patrolman agency, licensed by the State of Illinois, while actually engaged in the performance of the duties of their employment or commuting between their homes and places of employment;

(5)    Agents and investigators of the Illinois Crime Investigating Commission authorized by the Commission to carry weapons, while on duty in the course of any investigation for the Commission;

(6)    Manufacture, transportation when the weapons are not immediately accessible to any person, or sale of weapons to persons authorized under law to possess them;

(7)    Members of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while such members are using their firearms on such target ranges;

(8)    Duly authorized military or civil organizations while parading, with the special permission of the Governor;

(9)    Licensed hunters or fishermen while engaged in hunting or fishing;

(10)    Transportation of weapons broken down in a nonfunctioning state.

(Prior code § 11.2-1; Amend Coun. J. 7-7-92, p. 19196)

**8-20-015  Unlawful firearm or laser sight accessory in motor vehicle – Impoundment.**

(a)    The owner of record of any motor vehicle that contains an unregistered firearm, a firearm that is not broken down in a nonfunctioning state, or a laser sight accessory shall be liable to the city for an administrative penalty of $1,000.00 plus any towing and storage fees applicable under Section 9-92-080. Any such vehicle shall be subject to seizure and impoundment pursuant to this section.

(b)    Whenever a police officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the police officer shall provide for the towing of the vehicle to a facility controlled by the city or its agents. Before or at the time the vehicle is towed, the police officer shall notify any person identifying himself as the owner of the vehicle at the time of the alleged violation, of the fact of the seizure and of the vehicle owner's right to request a vehicle impoundment hearing to be conducted under Section 2-14-132 of this Code.

(c)    The provisions of Section 2-14-132 shall apply whenever a motor vehicle is seized and impounded pursuant to this section.

(Added Coun. J. 7-7-92, p. 19196; Amend Coun. J. 7-14-93, p. 35530; Amend Coun. J. 7-10-96, p. 24982; Amend Coun. J. 4-29-98, p. 66564; Amend Coun. J. 3-10-99, p. 91066; Amend Coun. J. 4-29-98, p. 66564, § 2; Amend Coun. J. 3-10-99, p. 91066; Amend Coun. J. 12-15-04, p. 39840, § 1)

**Editor's note –** Subsections (d) through (f) were deleted by Coun. J. 4-29-98, p. 66564; therefore, the subsequent amendments to subsections (d) through (f) set forth in Coun. J. 3-10-99, p. 91066, have not been included herein.

**8-20-020  Violation – Penalty.**

Any person violating the provisions of Section 8-20-010 shall be fined $500.00.

(Prior code § 11.2-2)

# ARTICLE II.  REGISTRATION OF FIREARMS

**8-20-030  Definitions.**

As used in this Title 8:

(a)    "Ammunition" means cartridge cases, shells, projectiles (including shot), primers, bullets, propellant powder, or other devices or materials designed, or intended for use in a firearm or destructive device.

(b)    "Antique firearms" means any firearm, including, but not limited to, any firearm with a matchlock, flintlock, percussion cap or similar type of ignition system, which is incapable of being fired or discharged; or any firearm manufactured before 1898 for which cartridge ammunition is not commercially available and is possessed as a curiosity or ornament or for its historical significance or value.

(c)    "Corrections officer" means wardens, superintendents and keepers of prisons, penitentiaries, jails or other institutions for the detention of persons accused or convicted of an offense.

(d)    "Crime of violence" is defined as any felony committed while armed with a weapon as defined in Chapter 38, Section 33 A-1 of Illinois Revised Statutes, as amended.

(e)    "Duty-related firearm" shall mean any weapon which is authorized by any law enforcement agency to be utilized by their personnel in the performance of their official duties.

(f)    "Firearm" means any weapon which will, or is designed to or restored to, expel a projectile or projectiles by the action of any explosive; the frame or receiver of any such device; or any firearm muffler or silencer. Provided, that such term shall not include:

(1)    antique firearm;

(2)    any device used exclusively for line- throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or

(3)    any device used exclusively for firing explosives, rivets, stud cartridges, or any similar industrial ammunition incapable of use as a weapon.

(g)    "Fragmenting bullet" means a bullet that is designed or modified to shatter on impact, or any other bullet that is designed or modified so that more than 50 percent of the mass of the bullet is likely to fragment inside a human or animal target.

(h)    "Assault weapon" means any of the following weapons:

(1)    Assault Rifles

AK 47 type

AK 47S type

AK 74 type

AKS type

AKM type

AKMS type

84S1 type

Arm type

84S1 type

84S3 type

HK91 type

HK93 type

HK94 type

G3SA type

K1 type

K2 type

AR100 type

M24S type

SIG 550SP type

SIG 551SP type

Australian Automatic Arms

SAR type

SKS type with detachable magazine

Colt AR-15

Springfield Armory SAR-48

Springfield Armory BM-59

Bushmaster Auto Rifle

Auto-Ordinance Thompson M1

Ruger Mini 14/5F

Federal XC-900 and XC-450

Feather AT-9 Auto Carbine

Goncz High Tech Carbine

Auto-Ordinance Thompson 1927A1

Iver Johnson PM30 P Paratrooper

86S type

86S7 type

87S type

Galil type

Type 56 type

Type 565 type

Valmet M76 type

Valmet M78 type

M76 counter sniper type

FAL type

L1A1A type

SAR 48 type

> AUG type
> FNC type
> Uzi carbine
> Algimec AGMI type
> AR180 type
> MAS 223 type
> Beretta BM59 type
> Beretta AR70 type
> CIS SR88 type
>
> (2) Assault Pistols
> Uzi type
> Heckler & Koch Sp-89 type
> Australian Automatic Arms SAP type
> Spectre Auto type
> Sterling Mark 7 type; and

(3) Any weapon that the superintendent of police defines by regulation as an assault weapon because the design or operation of such weapon is inappropriate for lawful use.

(i) "Assault ammunition" means any ammunition magazine having a capacity of more than twelve (12) rounds of ammunition.

(j) "Disc projectile ammunition" means any ammunition which is composed of multiple disc shaped objects stacked together to form a single round of ammunition, including but not limited to the following types of ammunition: (i) Magdisc type; and (ii) Shatterdisc type.

(k) "Handgun" means a firearm designed to be held and fired by the use of a single hand, and includes a combination of parts from which such firearm can be assembled.

(l) "Machine gun" means any firearm from which eight or more shots or bullets may be discharged by a single function of the firing device.

(m) "Mayor" means the mayor of the City of Chicago or his or her designee.

(n) "Metal piercing bullet" means any bullet that is manufactured with other than a lead or lead alloy core, or ammunition of which the bullet itself is wholly composed of, or machined from, a metal or metal alloy other than lead, or any other bullet that is manufactured to defeat or penetrate bullet resistant properties of soft body armor or any other type of bullet resistant clothing which meets the minimum requirements of the current National Institute for Justice Standards for "Ballistic Resistance of Police Body Armor".

(o) "Organization" means partnership, company, corporation or other business entity, or any group or association of two or more persons united for a common purpose.

(p) "Peace officer" means any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses.

(q) "Person" shall mean any individual, corporation, company, association, firm, partnership, society, joint stock company or organization of any kind.

(r) "Sawed-off shotgun" means a shotgun having a barrel of less than 18 inches in length or a firearm made from a shotgun if such firearm is modified and has an overall length of less than 26 inches or a barrel of less than 18 inches in length.

(s) "Security personnel" means special agents employed by a railroad or public utility to perform police functions: guards of armored car companies, watchmen, security guards and persons regularly employed in a commercial or industrial operation for the protection of persons employed by or property related to such commercial or industrial operation.

(t) "Short-barreled rifle" means a rifle having any barrel less than 16 inches in length, or a modified firearm if such firearm as modified has an overall length of less than 26 inches or any barrel of less than 16 inches.

(u) "Superintendent" means the superintendent of the Chicago Police Department or his designated representative.

(v) "Safety mechanism" means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun by other than the owner of the handgun and those specifically authorized by the owner to use the handgun.

(w) "Trigger lock" means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the handgun without first removing the trigger lock by use of the trigger lock's key.

(x)    "Combination handle lock" means a device that is part of the handgun which precludes the use of the handgun unless the combination tumblers are properly aligned.

(y)    "Solenoid use-limitation device" means a device which precludes, by use of solenoid, the firing of the handgun unless a magnet of the appropriate strength is placed in proximity to the handle of the weapon.

(z)    "Load indicator" means a device which plainly indicates that a bullet is placed in the handgun in a way that pulling the trigger or otherwise handling the handgun may result in detonation.

(aa)    "Laser sight accessory" means a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm.

(Prior code § 11.1-1; Amend Coun. J. 7-7-92, p. 19196; Amend Coun. J. 2-8-95, p. 65436; Amend Coun. J. 8-2-95, p. 5626; Amend Coun. J. 2-7-97, p. 38729; Amend Coun. J. 3-10-99, p. 91066)

**8-20-040  Registration of firearms.**

(a)    All firearms in the City of Chicago shall be registered in accordance with the provisions of this chapter. It shall be the duty of a person owning or possessing a firearm to cause such firearm to be registered. No person shall within the City of Chicago, possess, harbor, have under his control, transfer, offer for sale, sell, give, deliver, or accept any firearm unless such person is the holder of a valid registration certificate for such firearm. No person shall, within the City of Chicago, possess, harbor, have under his control, transfer, offer for sale, sell, give, deliver, or accept any firearm which is unregisterable under the provisions of this chapter.

(b)    This section shall not apply to:

(1)    Firearms owned or under the direct control or custody of any federal, state or local governmental authority maintained in the course of its official duties;

(2)    Duty-related firearms owned and possessed by peace officers who are not residents of the City of Chicago;

(3)    Duty-related firearms owned or possessed by corrections officers; provided, that such corrections officers are not residents of the City of Chicago;

(4)    Firearms owned, manufactured or processed by licensed manufacturers of firearms, bulk transporters or licensed sellers of firearms at wholesale or retail, provided that such persons have, in addition to any other license required by law, a valid deadly weapons dealer license issued under Chapter 4-144 of this Code;

(5)    Any nonresident of the City of Chicago participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided, that such weapon shall be unloaded and securely wrapped and that his possession or control of such firearm is lawful in the jurisdiction in which he resides;

(6)    Peace officers, while in the course of their official duties, who possess and control any firearm or ammunition issued by their department, bureau or agency in the normal course of business;

(7)    Private security personnel who possess or control any firearm or ammunition within the City of Chicago; provided, that such firearms shall be owned and maintained by the security firm employing such personnel and shall be registered by the security firm in accordance with this chapter;

(8)    Those persons summoned by a peace officer to assist in making an arrest or preserving the peace while actually engaged in assisting the peace officer.

(Prior code § 11.1-2; Amend Coun. J. 7-7-92, p. 19196)

**8-20-050  Unregisterable firearms.**

No registration certificate shall be issued for any of the following types of firearms:

(a)    Sawed-off shotgun, machine gun, or short- barreled rifle;

(b)    Firearms other than handguns, owned or possessed by any person in the City of Chicago prior to the effective date of this chapter which are not validly registered prior to the effective date of this chapter;

(c)    Handguns, except:

(1)    Those validly registered to a current owner in the City of Chicago prior to the effective date of this chapter, and which contain each of the following:

(i)    A safety mechanism to hinder the use of the handgun by unauthorized users. Such devices shall include, but shall not be limited to, trigger locks, combination handle locks, and solenoid use-limitation devices; and

(ii)    A load indicator device that provides reasonable warning to potential users such that even users unfamiliar with the weapon would be forewarned and would understand the nature of the warning;

(2)    Those owned by peace officers, or retired peace officers who are in compliance with the federal "Law Enforcement Officers Safety Act of 2004",  who are residents of the City of Chicago,

(3)    Those owned by security personnel,

(4)    Those owned by private detective agencies licensed under Chapter 111.2601, et seq., Illinois Revised Statutes;

(d)     Firearm muffler or silencer;

(e)     Assault weapons, as defined in Section 8-20-030, unless they are owned by a person who is entitled to own them under Section 8-24-025.

Any person who receives through inheritance any firearm validly registered pursuant to this chapter will be eligible to reregister such firearm within 60 days after obtaining possession or title, provided such person shall be qualified to do so in accordance with this chapter.

(Prior code § 11.1-3; Amend Coun. J. 7-7-92, p. 19196; Amend Coun. J. 2-7-97, p. 38729; Amend Coun. J. 10-8-08, p. 40100, § 1)

**8-20-060  Prerequisites to registration – Application for registration.**

(a)     No registration certificate shall be issued to any person unless such person:

(1)     Shall possess a valid Illinois Firearm Owner's Identification Card in accordance with Chapter 38 Section 83-4 of the Illinois Revised Statutes as amended;

(2)     Has not been convicted of a crime of violence, as defined herein as weapons offense, or a violation of this chapter; and

(3)     Has not been convicted within the five years prior to the application of any:

(i)     Violation of any law relating to the use, possession or sale of any narcotic or dangerous drug, or

(ii)    Violation of Chapter 38 Section 12-2(a)(1) of the Illinois Revised Statutes, as amended, for aggravated assault or any similar provision of the law of any other jurisdiction; and

(4)     Has vision better than or equal to that required to obtain a valid driver's license under the standards established by the Illinois Vehicle Code Chapter 95-1/2, Section 506-4 Illinois Revised Statutes, as amended; and

(5)     Is not otherwise ineligible to possess a firearm under any federal, state or local law, statute or ordinance.

(b)     All applicants for a registration certificate under this chapter shall file with the superintendent on a form provided, a sworn application in writing. The application shall include the following:

(1)     Name, social security number, residential and business address and telephone number of the applicant;

(2)     The applicant's age, sex and citizenship;

(3)     The applicant's Illinois firearm owner's identification number;

(4)     The name of manufacturer, the caliber or gauge, the model, type and the serial number identification of the firearm to be registered;

(5)     The source from which the firearm was obtained;

(6)     Evidence that the applicant meets the criteria of Section 8-20-060(a) of this chapter;

(7)     Two photographs of the applicant taken within 30 days immediately prior to the date of filing the application equivalent to passport size showing the full face, head and shoulders of the applicant in a clear and distinguishing manner;

(8)     Such other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination whether the terms of this ordinance have been complied with.

(c)     The superintendent shall be the custodian of all applications for registration under this chapter.

(Prior code § 11.1-4)

**8-20-070  Fingerprints.**

When necessary to establish the identity of any applicant or registrant, such applicant or registrant shall be required to submit to fingerprinting in accordance with procedures and regulations prescribed by the superintendent.

(Prior code § 11.1-5)

**8-20-080  Application fees.**

(a)     A nonrefundable fee in the amount indicated in subsection (d) of this section shall accompany each initial registration.

(b)     A nonrefundable fee in the amount indicated in subsection (d) of this section shall accompany each reregistration application.

(c)     The registration fee shall not be applicable to (1) any duty-related handgun of a peace officer domiciled in the City of Chicago, or (2) to any duty- related handgun(s) owned by a resident of the City of Chicago who retired from the Chicago Police Department in good standing and without any disciplinary charges pending, and who is, or is eligible to become, an annuitant of the Policemen's Annuity and Benefit Fund of the City of Chicago, but only if the handgun(s) is registered in that person's name at the time of separation from active duty in the Chicago Police Department.

(d)     Registration fees for firearms shall be as follows:

1 firearm     $20.00

2 - 10 firearms     25.00

More than ten firearms     35.00

(Prior code § 11.1-6; Amend Coun. J. 7-7-92, p. 19196; Amend Coun. J. 11-10-94, p. 59125; Amend Coun. J. 4-9-03, p. 106640, § 1)

**8-20-090  Filing time.**

(a)    A registration certificate shall be obtained prior to any person taking possession of a firearm from any source.

(b)    Any firearm currently registered must be reregistered pursuant to this chapter and in accordance with rules, regulations and procedures prescribed by the superintendent. An application to reregister such firearm shall be filed within 180 days from the effective date of this chapter; provided, however, that this section shall not apply to law enforcement officers during their tenure of continuous active duty.

(Prior code § 11.1-7; Amend Coun. J. 2-4-85, p. 13404; Amend Coun. J. 3-25-86, p. 28873)

**8-20-100  Investigations.**

Upon receipt of an application for registration of a firearm, the superintendent of police shall investigate the information contained in said application to determine whether the application and firearm meet the requirements for registration under this chapter. Failure by the applicant or registrant to respond to investigation inquiries shall be sufficient grounds for denial or revocation.

(Prior code § 11.1-8)

**8-20-110  Issuance of registration certificate.**

(a)    Upon receipt of a properly executed application for a registration certificate and the report of the superintendent, the mayor, upon determining that the applicant has complied with the provisions of this chapter, shall authorize the issuance of the registration certificate. Each registration certificate shall be in triplicate and bear a unique registration certificate number and contain such other information as may be necessary to identify the applicant and the firearm registered. The original of the registration certificate shall be retained by the superintendent; the mayor and applicant shall each receive a copy.

(b)    The mayor shall approve or deny any application for a registration certificate within a 120-day period beginning on the date the superintendent receives the application unless good cause is shown. In the case of an application to reregister a firearm currently registered, the mayor shall have 365 days after receipt of such application to approve or deny such application unless good cause is shown.

(c)    Any application for registration or renewal shall be held in abeyance when there is a criminal proceeding for a crime of violence, or an offense involving a weapon, or a proceeding to revoke firearm registration pending against the applicant until such proceeding has terminated. In the case of a renewal of registration the then-current registration shall be deemed continuing until the termination of such proceedings.

(d)    Upon receipt of a registration certificate, each applicant shall examine the same to insure that the information thereon is correct. If the registration certificate is incorrect in any respect, the registrant thereon shall return it to the superintendent with a signed statement showing the nature of the error. The superintendent shall correct the error, if it occurred through administrative error.

In the event that the error resulted from incorrect information contained in the application, the applicant shall be required to file an amended application setting forth the correct information and a statement explaining the error in the original application. Each amended application shall be accompanied by a fee of $2.00.

(e)    Each registration certificate authorized to be issued by the mayor shall be accompanied by a statement setting forth the registrant's duties under this chapter.

(Prior code § 11.1-9)

**8-20-120  Revocation – Denial.**

A registration certificate shall be revoked or an application for registration or reregistration shall be denied by the mayor when she finds that:

(a)    Any of the criteria in Section 8-20-060(a) of this chapter are not currently met; or

(b)    The registered firearm is or has become an unregisterable firearm under the terms of Section 8-20-050 of this chapter; or

(c)    The information furnished to the superintendent on the application for registration certificate proves to be false; or

(d)    The applicant or registrant has violated any of the provisions of this chapter.

(Prior code § 11.1-10)

**8-20-130  Procedures for denial or revocation.**

(a)    If it is determined that an application for registration or reregistration should be denied or that a registration certificate should be revoked, the mayor shall notify the applicant or registrant in writing of the proposed denial or revocation, briefly stating the reason or reasons therefore.

(b)     The applicant or registrant, within ten days after receiving notice of the proposed denial or revocation, may file with the department of administrative hearings a written request for a hearing before the department of administrative hearings.

(c)     Within ten days of receipt of a request for hearing, the department of administrative hearings shall give notice of a hearing to be held not less than five days after service of the notice on the person requesting the hearing.

At the hearing, the applicant or registrant may submit further evidence in support of the application for initial registration or to continue to hold a registration certificate as the case may be.

The department of administrative hearings shall issue a written finding stating the reasons for denial or revocation thereof and shall serve a copy of said findings upon the applicant or registrant and all parties appearing or represented at the hearing.

(d)     If the applicant or registrant does not request a hearing or submit further evidence within ten days after receiving notification of the proposed denial or revocation, it shall be deemed that the applicant or registrant has conceded the validity of the reason or reasons stated in the notice and the denial or revocation shall become final.

(e)     Within three days after notification of a decision unfavorable to the applicant or registrant and all time for appeal in accordance with paragraph 8-20-130(a) through (d) having expired, the applicant or registrant shall:

(1)     Peaceably surrender to the Chicago Police Department the firearm for which the applicant was denied or the registration certificate was revoked; or

(2)     Remove such firearm from the City of Chicago; or

(3)     Otherwise lawfully dispose of his interest in such firearm.

(f)     The applicant or registrant shall submit to the superintendent evidence of the disposition of nonregisterable firearms in accordance with paragraph 8-20-130(e)(2) and (3). Such evidence shall be submitted on forms and in the manner prescribed by the superintendent.

(Prior code § 11.1-11; Amend Coun. J. 7-27-05, p. 53211, § 1)

**8-20-140  Additional duties of registrant.**

Each person holding a registration certificate shall:

(a)     Immediately notify the Chicago Police Department on a form prescribed by the superintendent of:

(1)     The loss, theft or destruction of the registration certificate or of a registered firearm immediately upon discovery of such loss, theft, or destruction;

(2)     A change in any of the information appearing on the registration certificate;

(3)     The sale, transfer or other disposition of the firearm not less than 48 hours prior to delivery.

(b)     Immediately return to the superintendent his copy of the registration certificate for any firearm which is lost, stolen, destroyed or otherwise disposed of.

(c)     Each registrant shall keep any firearm in his possession unloaded and disassembled or bound by a trigger lock or similar device, unless such firearm is in his possession at his place of residence or business or while being used for lawful recreational purposes within the City of Chicago; provided, this paragraph shall not apply to law enforcement personnel as defined in paragraph 8-20-030(k)* and provided further this paragraph shall not apply to security personnel as defined in paragraph 8-20-030(n),* while in the course of their employment.

(Prior code § 11.1-12)

**\* Editor's note –** Note that § 8-20-030(k) defines the term "handgun"; although § 8-20-030 does not provide a definition of "law enforcement personnel" per se, the term "peace officer" is defined in § 8-20-030(p). Note also that the term "security personnel" is defined in § 8-20-030(s), not § 8-20-030(n), which defines the term "metal piercing bullet".

**8-20-150  Exhibition of registration.**

Any person carrying or having in his possession or under his custody or control any firearm, shall have on his person or within his immediate custody a valid registration certificate for such firearm issued hereunder, which shall be exhibited for inspection to any peace officer upon demand. Failure of any such person to so exhibit his registration certificate shall be presumptive evidence that he is not authorized to possess such firearm.

Failure of any person to exhibit a registration certificate for any firearm in his possession, custody or control shall also be cause for the confiscation of such firearms and revocation of any registration certificates issued therefore under this chapter.

(Prior code § 11.1-13)

**8-20-160  Possession of ammunition.**

No person shall possess ammunition in the City of Chicago unless:

(a)     He is a person exempted pursuant to Section 8-20-040 of this chapter; or

(b)    He is the holder of a valid registration certificate for a firearm of the same gauge or caliber as the ammunition possessed, and has the registration certificate in his possession while in possession of the ammunition; or

(c)    He is a licensed weapons dealer pursuant to Chapter 4-144 or a licensed shooting gallery or gun club pursuant to Chapter 4-149 of this Code.

(Prior code § 11.1-14; Amend Coun. J. 9-14-94, p. 56287)

**8-20-165  Possession of laser sight accessories.**

No person shall sell, offer, or display for sale, give, lend, transfer ownership of, acquire or possess any laser sight accessory in the City of Chicago provided, that this section shall not apply to any members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess a laser sight accessory and is acting within the scope of his or her duties.

(Added Coun. J. 3-10-99, p. 91066)

**8-20-170  Permissible sales and transfers of firearms and ammunition.**

(a)    No firearm may be sold or otherwise transferred within the City of Chicago except through a licensed weapons dealer as defined in Chapter 4-144 of the Municipal Code of the City of Chicago.

(b)    No ammunition may be sold or otherwise transferred within the City of Chicago except through a licensed shooting gallery or gun club as defined in Chapter 4-149, a licensed weapons dealer as defined in Chapter 4-144 or as otherwise allowed by the Municipal Code of the City of Chicago.

(c)    No firearm or ammunition shall be security for, or be taken or received by way of any mortgage, deposit, pledge or pawn.

(d)    No person may loan, borrow, give or rent to or from another person, any firearm or ammunition except in accordance with this chapter.

(e)    A peace officer may additionally sell or transfer any lawfully held firearm or ammunition to another peace officer in accordance with the other provisions of this chapter.

(f)    Except as allowed by subsection (e) of this section, no person may sell, offer for sale, barter or transfer within the city any ammunition listed in Section 4-144-061 of this Code.

(Prior code § 11.1-15; Amend Coun. J. 9-14-94, p. 56287)

**8-20-175  Firearm Owners Identification Card Act – Compliance required.**

No person shall sell, give away or otherwise transfer any firearm, as defined in Section 8-20-030, without complying with Sections 3 and 3.1 of the Firearm Owners Identification Card Act, Illinois Revised Statutes, Chapter 38, paragraphs 83-3 and 83-3.1.

(Added Coun. J. 7-7-92, p. 19196)

**8-20-180  False information – Forgery – Alteration.**

(a)    It shall be unlawful for any person purchasing any firearm or ammunition, or applying for any registration certificate under this chapter, or, in giving any information pursuant to the requirements of this chapter, to knowingly give false information or offer false evidence of identity.

(b)    It shall be unlawful for anyone to forge or alter any application or registration certificate submitted, retained or issued under this chapter.

(Prior code § 11.1-16)

**8-20-190  Voluntary surrender – Immunity.**

(a)    Within 90 days from the effective date of this ordinance, a person within the City of Chicago may voluntarily and peaceably deliver and abandon to the superintendent any firearm or ammunition prior to any arrest and prosecution of such person on a charge of violating any provisions of this chapter with respect to the firearm or ammunition voluntarily delivered.

(b)    Delivery under this section may be made at any police district, area or central headquarters or by summoning a police officer to the person's residence or place of business. Any firearm or ammunition to be delivered and abandoned to the superintendent under this section shall be unloaded and securely wrapped in a package carried in open view.

(c)    The voluntary delivery or abandonment of any firearm or ammunition after an arrest or charge for violation of any provision of this chapter shall not moot or in any manner invalidate said arrest or charge.

(Prior code § 11.1-17)

**8-20-195  Voluntary surrender of laser sight accessory – Immunity.**

(a)    Within 14 days of the effective date of this ordinance, a person within the City of Chicago may voluntarily and peaceably deliver and abandon to the superintendent any laser sight accessory prior to any arrest and prosecution of such person on a charge of violating any provision of this chapter with respect to the laser sight accessory voluntarily delivered.

(b)    Delivery under this section may be made at any police district, area or central headquarters or by summoning a police officer to the person's residence or place of business.

(c)    The voluntary delivery or abandonment of any laser sight accessory after an arrest or charge for violation of any provision of this chapter shall not moot or in any manner invalidate said arrest or charge.

(Added Coun. J. 3-10-99, p. 91066)

**8-20-200  Renewal of registration.**

(a)    Every registrant must renew his registration certificate annually. Applications for renewal shall be made by such registrants 60 days prior to the expiration of the current registration certificate.

(b)    The application for renewal shall include the payment of a renewal fee as follows:

1 firearm      $20.00

2 - 10 firearms      25.00

More than ten firearms      35.00

(c)    Failure to comply with the requirement for renewal of registration of a firearm shall cause that firearm to become unregisterable.

(d)    All terms, conditions and requirements of this chapter for registration of firearms shall be applicable to renewal or registration of such firearms.

(e)    The renewal fee shall not be applicable to duty-related handguns of peace officers domiciled in the City of Chicago.

(Prior code § 11.1-18; Amend Coun. J. 7-7-92, p. 19196; Amend Coun. J. 11-10-94, p. 59125)

**8-20-210  Notice.**

For the purposes of this chapter, service of any notice, finding or decision upon an applicant or registrant shall be completed by any of the following methods:

(1)    Personal delivery of a copy of such notice, finding or decision to the applicant or registrant; or

(2)    By leaving a copy of such notice, finding or decision at the address identified on the application for registration or renewal; or

(3)    By mailing a copy of the notice, finding or decision by certified mail with return receipt to the address identified on the application for registration or renewal; in which case service shall be complete as of the date the return receipt was signed.

(Prior code § 11.1-19)

**8-20-220  Destruction of weapons confiscated.**

Whenever any firearm or ammunition is surrendered or confiscated pursuant to the terms of this chapter, the superintendent shall ascertain whether such firearm or ammunition is needed as evidence in any matter.

If such firearm or ammunition is not required for evidence it shall be destroyed at the direction of the superintendent. A record of the date and method of destruction and an inventory of the firearm or ammunition so destroyed shall be maintained.

(Prior code § 11.1-20)

**8-20-230  Authority of the superintendent.**

The superintendent shall have the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required thereon.

(Prior code § 11.1-21)

**8-20-240  Acquisition or possession prohibited by law.**

Nothing in this chapter shall make lawful the acquisition or possession of firearms or firearm ammunition which is otherwise prohibited by law.

(Prior code § 11.1-22)

**8-20-241  Firearm used illegally – Penalty.**

The owner of an unregistered firearm that is used in any criminal act shall be subject to a fine of $500.00 for each such use, regardless of whether the owner participated in, aided or abetted the criminal act. A fine under this section shall be in addition to any other penalty imposed on the criminal act or use of the firearm.

(Added Coun. J. 11-10-94, p. 59125)

**8-20-250  Violation – Penalty.**

Any person who violates any provision of this chapter, where no other penalty is specifically provided, shall upon conviction for the first time, be fined not less than $300.00, nor more than $500.00; or be incarcerated for not less than ten days nor more than 90 days or both. Any subsequent conviction for a violation of this chapter shall be punishable by a fine of $500.00 and by incarceration for a term of not less than 90 days, nor more than six months.

(Prior code § 11.1-23; Amend Coun. J. 11-10-94, p. 59125)

**8-20-260  Severability.**

    If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which reasonably can be given effect without the invalid provision or term for the application thereof.

(Prior code § 11.1-24)

**Disclaimer:**

This Code of Ordinances and/or any other documents that appear on this site may not reflect the most current legislation adopted by the Municipality. American Legal Publishing Corporation provides these documents for informational purposes only. These documents should not be relied upon as the definitive authority for local legislation. Additionally, the formatting and pagination of the posted documents varies from the formatting and pagination of the official copy. The official printed copy of a Code of Ordinances should be consulted prior to any action being taken.

For further information regarding the official version of any of this Code of Ordinances or other documents posted on this site, please contact the Municipality directly or contact American Legal Publishing toll-free at 800-445-5588.

© 2010 American Legal Publishing Corporation
techsupport@amlegal.com

EXHIBIT "B"

http://www.amlegal.com/nxt/gateway.dll/Illinois/chicago_il/municipalcodeofchicago?f=templates$fn=default.htm$3
.0$vid=amlegal:chicago_il

| Municipal Code of Chicago |
|---|
| TITLE 4 BUSINESSES, OCCUPATIONS AND CONSUMER PROTECTION |
| CHAPTER 4-144 WEAPONS |

# CHAPTER 4-144 WEAPONS

**Article I.  Deadly Weapons**

4-144-010    License – Required.
4-144-020    License – Application.
4-144-030    License – Fee.
4-144-040    Daily Report Required – Sales or Gifts.
4-144-050    Register required.
4-144-060    Restrictions on sales or gifts.
4-144-061    Sale of certain handgun ammunition prohibited.
4-144-062    Sale of handguns without childproofing or safety devices prohibited.
4-144-070    Permit required when – Issuance conditions.
4-144-080    Sales display restrictions.
4-144-090    Reserved.

**Article II.  Gunsmiths**

4-144-100    License – Required.
4-144-110    Reserved.
4-144-120    Reserved.
4-144-130    Daily report required – Repairs.

**Article III.  Air Rifles and Toy Weapons**

4-144-140    License required when.
4-144-145    Replica air guns – Sale or transfer prohibited.
4-144-150    Reserved.
4-144-160    Reserved.
4-144-170    Daily report required.
4-144-180    Permit – Required.
4-144-190    Replica firearms and pellet guns.
4-144-195    Replica military style weapons.
4-144-200    Granting of permit – Conditions.
4-144-210    Sale or transfer to minors prohibited.
4-144-220    Sales display restrictions.
4-144-230    Alteration restricted.
4-144-240    License – Revocation conditions.

**Article IV.  Violation of Chapter Provisions**

4-144-250    Violation – Penalties.
4-144-260    License – Revocation.
4-144-270    Severability.

# ARTICLE I.  DEADLY WEAPONS

**4-144-010  License – Required.**

It shall be unlawful for any person to engage in the business of selling, or to sell or give away, any pistol, revolver or other firearm, dagger, stiletto, billie, derringer, bowie knife, dirk, stun gun or taser, as defined in Section 24-1 of the Illinois Criminal Code, 720 ILCS 5/24-1, or other deadly weapon which can be carried or concealed on the person, without securing a weapons dealer license. The license required by this chapter shall be in addition to any other license required by law.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588)

**4-144-020  License – Application.**

An application for a weapons dealer license shall be made in conformity with the general requirements of this Code relating to applications for licenses.  The commissioner of business affairs and consumer protection shall approve said application before a license shall be issued.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588; Amend Coun. J. 5-9-07, p. 105047, § 8; Amend Coun. J. 11-19-08, p. 47220, Art. V, § 5)

**4-144-030  License – Fee.**

The fee for a weapons dealer license shall be as set forth in Section 4-5-010.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588; Amend Coun. J. 11-15-06, p. 92532, § 1; Amend Coun. J. 1-13-10, p. 83191, § 1)

**4-144-040  Daily report required – Sales or gifts.**

Every person dealing in the aforementioned deadly weapons shall make out and deliver to the superintendent of police every day before the hour of twelve noon, a legible and correct report of every sale or gift made under authority of his license during the preceding 24 hours, which report shall contain the date of such sale or gift, the name of the purchaser or donee with his or her address and age, the number, kind, description and price of such weapon, the number of the purchaser's permit, and the purpose given by such person for the purchase of such weapon, which report shall be substantially in the following form:

    Number of permit
    Number of weapon
    Name of purchaser
    Address of purchaser
    Age of purchaser
    Kind or description of weapon
    For what purpose purchased
    Price

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588)

**4-144-050  Register required.**

Every person dealing in the aforementioned deadly weapons or ammunition at retail, within the city, shall keep a register of all such weapons and ammunition sold, loaned, rented or given away by him. Such register shall contain the date of the sale, loaning, renting or gift, the number of the permit, the number of the weapon, the name and age of the person to whom the weapon or ammunition is sold, loaned, rented or given, the quantity of ammunition, the price of each item, and the purpose for which it is purchased or obtained. The said register shall be in the following form (see diagram for Section 4-144-050). Such register shall be kept open for the inspection of the police at all reasonable times during business hours.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 9-14-94, p. 56287)

Diagram for Section 4-144-050

| Date of sale | Number of superintendent of police permit | Number of weapon | To whom sold, loaned, rented, or given | Age of purchaser or person obtaining weapon | Kind and description of weapon or ammunition |
|---|---|---|---|---|---|
| | | | | | |

**4-144-060  Restrictions on sales or gifts.**

It shall be unlawful for any person to sell, barter or give away to any person within the city, any deadly weapon mentioned in Section 4-144-010, except to licensed dealers and to persons who have secured a permit for the purchase of such articles from the superintendent of police as hereinafter required. This section shall not apply to sales made of such articles which are to be delivered or furnished outside the city.

(Added Coun. J. 12-9-92, p. 25465)

**4-144-061  Sale of certain handgun ammunition prohibited.**

Except as allowed by subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, offer for sale, expose for sale, barter or give away to any person within the city, any ammunition of the following calibers and types:

    .45 automatic
    .380 automatic
    .38 special
    .357 magnum
    .25 caliber
    .22 caliber, including .22 long
    9 millimeter

Any other ammunition, regardless of the designation by the manufacturer, distributor or seller, that is capable of being used as a substitute for any of the foregoing.
(Added Coun. J. 9-14-94, p. 56287)

**4-144-062  Sale of handguns without childproofing or safety devices prohibited.**

Except as allowed by subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, barter or give away to any person any handgun which does not contain:

(1)    A safety mechanism to hinder the use of the handgun by unauthorized users. Such devices shall include, but shall not be limited to, trigger locks, combination handle locks, and solenoid use-limitation devices, and

(2)    A load indicator device that provides reasonable warning to potential users such that users even unfamiliar with the weapon would be forewarned and would understand the nature of the warning.

Safety mechanism means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun by other than the owner of the handgun and those specifically authorized by the owner to use the handgun.

A trigger lock means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the handgun without first removing the trigger lock by use of the trigger lock's key.

A combination handle lock means a device that is part of the handgun which precludes the use of the handgun unless the combination tumblers are properly aligned.

A solenoid use-limitation device means a device which precludes, by use of a solenoid, the firing of the handgun unless a magnet of the appropriate strength is placed in proximity to the handle of the weapon.

A load indicator means a device which plainly indicates that a bullet is placed in the handgun in a way that pulling the trigger or otherwise handling the handgun may result in detonation.
(Amend Coun. J. 2-7-97, p. 38729)

**4-144-070  Permit required when – Issuance conditions.**

It shall be unlawful for any person to purchase any deadly weapon mentioned in Section 4-144-010 which can be concealed on the person, without first securing from the superintendent of police a permit so to do. Before any such permit is granted, an application in writing shall be made therefor, setting forth in such application the name, address, age, height, weight, complexion, nationality and other elements of identification of the person desiring such permit, and the applicant shall present such evidence of good character as the superintendent of police at his discretion may require.

The superintendent of police shall refuse such permit to any person under 18 years of age, any narcotic addict, any person who has been convicted of a felony under the laws of this state or any other jurisdiction within five years from release from penitentiary or within five years of conviction if penitentiary sentence has not been imposed, and any person who has been released from a mental institution or from the custody of the Illinois Youth Commission within the last five years, or is mentally retarded. Otherwise, in case he shall be satisfied that the applicant is of good moral character, it shall be the duty of the superintendent of police to grant such permit.
(Added Coun. J. 12-9-92, p. 25465)

**4-144-080  Sales display restrictions.**

It shall be unlawful for any person to exhibit for sale in show cases or show windows, on counters or in any other public manner, any deadly weapon mentioned in Section 4-144-010, or to display any signs, posters, cartoons, or display cards suggesting the sale of any such deadly weapons, or any ammunition whose sale is prohibited pursuant to Section 4-144-061 of this Code.
(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 9-14-94, p. 56287)

**4-144-090  Reserved.**

**Editor's note –** Coun. J. 4-16-97, p. 42588, amended and renumbered this section as § 4-144-260.

# ARTICLE II.  GUNSMITHS

**4-144-100  License – Required.**

It shall be unlawful for any person to engage in the business of repairing any pistol, revolver, derringer or other firearm which can be concealed on the person without securing a weapons dealer license so to do.
(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588)

**4-144-110  Reserved.**

**Editor's note –** Coun. J. 4-16-97, p. 42612, repealed § 4-144-110, which pertained to license and application.

**4-144-120  Reserved.**

**Editor's note –** Coun. J. 4-16-97, p. 42612, as corrected by Coun. J. 9-14-05, p. 55282, repealed § 4-144-120, which pertained to license and application.

**4-144-130  Daily report required – Repairs.**

Every person licensed under this chapter shall make out and submit to the superintendent of police every day, before twelve noon, a legible and correct report of each firearm received for repair during the preceding 24 hours,

which report shall contain the date, name, physical description, age, address and occupation of the owner of such firearm, the type of weapon, its make, and the serial number and bore length of such weapon, which report shall be substantially in the following form:

    Date
    Name of owner
    Physical description of owner
    Age of owner
    Address of owner
    Occupation of owner
    Type of weapon
    Make of weapon
    Serial number
    Bore and length of weapon

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588)

# ARTICLE III.  AIR RIFLES AND TOY WEAPONS

**4-144-140  License required when.**

It shall be unlawful for any person to engage in the business of selling or to sell or to give away any air rifle or air gun, or any toy firearms or other toy in the nature of a firearm in which any explosive substance can be used, without securing a weapons dealer license, and no person having secured such license shall sell or give away any such weapon to any person within the city who has not secured a permit from the superintendent of police to purchase such weapon in the manner hereinafter provided.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588)

**4-144-145  Replica air guns – Sale or transfer prohibited.**

(a)    It shall be unlawful for any person to engage in the business of selling or to sell, exhibit for sale, give away or otherwise transfer any replica air gun in the city of Chicago. For purposes of this article, "replica air gun" means and includes any air gun, air pistol, air rifle, spring gun, spring pistol, BB gun, pellet gun or any other implement that a person could reasonably perceive as an actual firearm but that is not a firearm, and that is capable of firing or discharging a projectile constructed of hard plastic, steel, lead or other hard materials with a force that reasonably is expected to cause bodily harm.

(Added Coun. J. 10-4-06, p. 87431, § 1)

**4-144-150  Reserved.**

**Editor's note** – Coun. J. 4-16-97, p. 42588, as corrected by Coun. J. 9-14-05, p. 55267, repealed § 4-144-150, which pertained to license – application.

**4-144-160  Reserved.**

**Editor's note** – Coun. J. 4-16-97, p. 42588, as corrected by Coun. J. 9-14-05, p. 55267, repealed § 4-144-160, which pertained to license – fee.

**4-144-170  Daily report required.**

Every person licensed under this chapter shall make out and deliver to the superintendent of police every day, before the hour of twelve noon, a legible and correct report of every sale or gift made under authority of said license to sell the kind of weapons or other articles named in Section 4-144-140 during the preceding 24 hours, which report shall contain the date of such sale or gift, the name of the purchaser or donee with his or her address and age, the number, kind, description and price of such weapon or other article, the number of the purchaser's permit, and the purpose for the purchase of such weapon or other article, which report shall be substantially in the following form:

    Number of permit
    Number of weapon or article
    Name of purchaser
    Address of purchaser
    Age of purchaser
    Kind or description of weapon or other article
    For what purpose purchased
    Price

(Added Coun. J. 12-9-92, p. 25465)

**4-144-180  Permit – Required.**

It shall be unlawful for any person to purchase any air rifle or air gun, or any toy firearms or other toy in the nature of a firearm in which any explosive substance can be used, without first securing from the superintendent of police a permit so to do. Before any such permit is granted, an application in writing shall be made therefor, setting

forth in such application, the name, address, age, height, weight, complexion, nationality and other elements of identification of such person desiring such permit. Such application shall also contain a recommendation from two persons who shall appear to be taxpayers residing within the city that the permit shall issue.
(Added Coun. J. 12-9-92, p. 25465)

**4-144-190  Replica firearms and pellet guns.**

(a)     It shall be unlawful for any person to purchase, possess, use, sell, give away or otherwise transfer, or to engage in the business of selling or to exhibit for sale, a replica firearm, paint pellet or paint pellet gun in the City of Chicago, except as provided in subsection (c) of this section.

(b)     For the purposes of this chapter, the following terms shall have the following meanings:

"Paint pellet" means a pellet or projectile of paint which explodes upon impact.

"Paint pellet gun" means any firearm, toy firearm or toy in the nature of a firearm which is powered by compressed gas and which fires paint pellets.

"Replica firearm" means any device, object or facsimile made of plastic, wood, metal or any other material, that a person could reasonably perceive as an actual firearm but that is incapable of being fired or discharged, except that the term will not include any replica of an antique firearm, as defined in Section 8-20-030(b) of this Code. Each such replica firearm shall have as an integral part, permanently affixed, a blaze orange plug inserted in the barrel of such replica firearm. Such plug shall be recessed no more than six millimeters from the muzzle end of the barrel of such firearm.

(c)     The manufacture, marketing, distribution, sale and possession of replica firearms are permitted if the devices are manufactured, marketed, distributed, sold or held (1) solely for subsequent transportation in intrastate, interstate or foreign commerce, or (2) solely for use in theatrical productions, including motion picture, television and stage productions. Such devices shall not be displayed to the general public or sold for other use in the city. The use or possession of a paint pellet or paint pellet gun is permitted if the use or possession is solely within premises licensed as a public place of amusement; or if the use or possession is solely for the purpose of transporting the paint pellet or paint pellet gun to or from those premises by the licensee or agent or employee of the licensee, or by a common carrier, for purposes of initial delivery, repair or disposal of the paint pellet or paint pellet gun.

(d)     Any person who violates the provisions of this section, upon conviction thereof, shall be fined not less than $100.00 nor more than $500.00 for each offense. Any such violation may also be punishable as a misdemeanor by incarceration in a penal institution other than a penitentiary for up to six months under the procedures set forth in Section 1-2-1.1 of the Illinois Municipal Code as amended, and in the Illinois Code of Criminal Procedure, Illinois Revised Statutes, Chapter 38, Sections 100-1 et seq. (1985), as amended, in a separate proceeding. All actions seeking the imposition of fines only shall be filed as quasi-criminal actions subject to the provisions of the Illinois Code of Civil Procedure, Illinois Revised Statutes, Chapter 110, Section 1-101, et seq. (1985), as amended. Each purchase, use, sale, gift or transfer of any such replica firearm, paint pellet or paint pellet gun shall be deemed a separate and distinct offense, and each day a person unlawfully engages in the business of selling or exhibits for sale any such replica firearm, paint pellet or paint pellet gun shall be deemed a separate and distinct offense.
(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 11-2-94, p. 58607)

**4-144-195  Replica military style weapons.**

It shall be unlawful for any person to purchase, possess, use, sell, give away or otherwise transfer, or to engage in the business of selling or to exhibit for sale, any replica rocket propelled grenade launcher, bazooka, artillery piece, grenade, mine, bomb, or items similar to weapons designed and manufactured for military purposes or replicas thereof, in the City of Chicago.

Any person who violates this section shall be fined not less than $100.00 nor more than $500.00 for each offense.
(Added Coun. J. 7-27-05, p. 54335, § 2)

**4-144-200  Granting of permit – Conditions.**

It shall be the duty of the superintendent of police to refuse such permit to any person having been convicted of any crime, and any minor. Otherwise, if the applicant is of good moral character, the superintendent of police shall grant such permit upon the payment of a fee of $1.00.
(Added Coun. J. 12-9-92, p. 25465)

**4-144-210  Sale or transfer to minors prohibited.**

It is unlawful for any dealer to sell, lend, rent, give or otherwise transfer an air rifle to any person under the age of 18 years where the dealer knows the person to be under 18 years of age, or where such dealer has failed to make reasonable inquiry relative to the age of such person and such person is under 18 years of age.

It is unlawful for any person to sell, lend or otherwise transfer any air rifle to any person under 18 years of age.
(Added Coun. J. 12-9-92, p. 25465)

**4-144-220  Sales display restrictions.**

It shall be unlawful for any person to exhibit for sale in show cases, or show windows, on counters, or in any public manner, any air rifle or air gun, or any toy firearm or other toy in the nature of a firearm in which any explosive substance can be used, or to display any signs, posters, cartoons or display cards suggesting the sale of any such weapon or firearm.

(Added Coun. J. 12-9-92, p. 25465)

**4-144-230  Alteration restricted.**

No person shall alter any air rifle, air gun, toy firearm or toy in the nature of a firearm in such a way that it can fire any type of projectile other than that which it was designed by its manufacturer to fire.

(Added Coun. J. 12-9-92, p. 25465)

**4-144-240  License – Revocation conditions.**

When the license of any said licensee shall be revoked, no other such license shall be issued to such licensee for a period of three years thereafter.

(Added Coun. J. 12-9-92, p. 25465)

# ARTICLE IV.  VIOLATION OF CHAPTER PROVISIONS

**4-144-250  Violation – Penalties.**

Any person violating Section 4-144-010 or Section 4-144-060 or Section 4-144-061 of this chapter shall be fined not less than $500.00 nor more than $1,000.00 for a first offense and $1,000.00 for each subsequent offense. Any person violating any other provision of this chapter shall be fined not less than $250.00 nor more than $500.00 for a first offense and not less than $500.00 nor more than $1,000.00 for each subsequent offense. Each purchase, sale or gift of any weapon or article mentioned in this chapter shall be deemed a separate offense.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 9-14-94, p. 56287)

**4-144-260  License – Revocation.**

In case the mayor shall determine that a licensee has violated any provision of this chapter, he shall revoke the weapons dealer license issued to such person, and the money paid for such license shall be forfeited to the city. No other such license shall be issued to such licensee for a period of three years thereafter.

(Amend Coun. J. 4-16-97, p. 42588)

**4-144-270  Severability.**

If any section, subsection, paragraph, or part of this ordinance is for any reason held to be unconstitutional or invalid by any final court of competent jurisdiction, such decision shall not affect the validity or effectiveness of the remaining portions of this ordinance.

(Added Coun. J. 7-27-05, p. 54335, § 2)

Disclaimer:

This Code of Ordinances and/or any other documents that appear on this site may not reflect the most current legislation adopted by the Municipality. American Legal Publishing Corporation provides these documents for informational purposes only. These documents should not be relied upon as the definitive authority for local legislation. Additionally, the formatting and pagination of the posted documents varies from the formatting and pagination of the official copy. The official printed copy of a Code of Ordinances should be consulted prior to any action being taken.

For further information regarding the official version of any of this Code of Ordinances or other documents posted on this site, please contact the Municipality directly or contact American Legal Publishing toll-free at 800-445-5588.

© 2010 American Legal Publishing Corporation
techsupport@amlegal.com
1.800.445.5588.

EXHIBIT "C"

# O R D I N A N C E

**WHEREAS**, A recent study by the Centers for Disease Control and Prevention found that in the United States there were 30,896 deaths from firearms in 2006, making firearms one of the top ten causes of death in the country; and

**WHEREAS**, Annually, more than 100,000 people in our nation are shot or killed with a firearm, with more than 3,000 of these victims being children or teenagers; and

**WHEREAS**, The United States is one of the few remaining developed nations that places only a minimal restrictions on the sale or possession of firearms; and

**WHEREAS**, Firearm-related injuries and deaths are the cause of significant social and economic costs to the City and our communities and have a severe impact on our criminal justice and health care systems; and

**WHEREAS**, In 2009, in the City there were 1,815 aggravated batteries with a firearm, of which 83 were shootings inside a residence, and there were 379 murders with a firearm, of which 34 were murders involving a firearm inside a home; and

**WHEREAS**, Between the beginning of this year and June, 15, 2010, there were 742 aggravated batteries with a firearm, of which 36 took place inside a residence, and 152 murders with a firearm, of which 19 were inside a residence; and

**WHEREAS**, Given the dangerous and deadly nature of handguns, in 1982 the City of Chicago enacted a ban on registering handguns as a method to protect public safety and the health and welfare of its residents; and

**WHEREAS**, In 2008, the Supreme Court of the United States decided the case of *District of Columbia v. Heller*, which held that the Second Amendment to the United States Constitution protects an individual right to possess a firearm unconnected with service in the militia; and

**WHEREAS**, After the *Heller* decision, the City's handgun registration ban was challenged in the case of *McDonald v. the City of Chicago*; and

**WHEREAS**, On June 28, 2010, the Supreme Court issued its opinion in the *McDonald* case and ruled that the Second Amendment's right to possess a handgun for self-defense in the home also applied to the states; and

**WHEREAS**, Although the State of Illinois has already enacted several laws to regulate the sale and possession of firearms, these laws are not sufficient to protect the City from the unique and heightened risk of firearm violence, especially handgun violence, endemic in densely populated urban areas, and

**WHEREAS**, In order to provide for the ongoing protection of the public welfare and safety, it is essential for the City Council of the City of Chicago to promptly pass an ordinance that provides for reasonable regulation of firearms in compliance with the rulings of the United States Supreme Court, but still is effective in protecting the public from the potentially deadly consequences of gun violence in our City; and

**WHEREAS**, When a gun is registered with the City, certain personal identifying information, such as the registrant's address, is obtained so that a first responder can be advised that a gun is present in that home. In order to protect the privacy and safety of people registering guns, any information provided in the registration procedure should not be available to the public. The City is requesting that Illinois Attorney General Lisa Madigan issue an opinion, as expeditiously as possible, on whether the information provided to the City for gun registration is exempt from disclosure under the Illinois Freedom of Information Act, 5 ILCS 140, et seq.; and

**WHEREAS**, As a consequence of the United States Supreme Court decisions in *Heller* and *McDonald*, it is anticipated that gun ownership in many communities, including large urban areas, will increase. To ensure public safety and the welfare of a community, it is essential that local law enforcement agencies be made aware of any gun brought into their jurisdictions. Therefore, the United States Congress must pass a law mandating that the Bureau of Alcohol, Tobacco, Firearms and Explosives timely notify a local law enforcement agency of any purchase or sale of a firearm by a resident of that community; and

**WHEREAS**, In addition, the ability to have handguns in a home will expose taxpayers to greater costs and expenses associated with the increased number of incidents involving a first responder entering a home where a gun is present. In order to minimize the impact of these costs to the taxpayers, the United States Congress and the State of Illinois must pass laws that grant immunity for the City and its first responders from any civil liability for any accidental or lawfully intentional actions by the first responders in responding to a situation in a home where a gun is present and the first responder perceives a danger caused by the presence of the gun; now, therefore,

## BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF CHICAGO:

**SECTION 1.** Chapter 2-14 of the Municipal Code of Chicago is hereby amended by deleting the language struck through, and by adding the language underscored, as follows:

**2-14-132 Impoundment.**

(1) Whenever the owner of a vehicle seized and impounded pursuant to Sections 3-46-076, 3-56-155, 4-68-195, 9-80-220 or 9-112-555 of this Code (for purposes of this section, the "status-related offense sections"), or Sections 7-24-225, 7-24-226, 7-28-390, 7-28-440, 7-38-115(c-5), 8-4-130, 8-8-060, 8-20-015, 8-20-070, 9-12-090, 9-76-145, 9-80-240, 9-92-035, 11-4-1410, 11-4-1500 or 15-20-270 of this Code (for purposes of this section, the "use-related offense sections") requests a preliminary hearing in person and in writing at the department of administrative hearings, within 15 days after the vehicle is seized and impounded, an administrative law officer of the department of administrative hearings shall conduct such preliminary hearing within 48 hours of request, excluding Saturdays, Sundays and legal holidays, unless the vehicle was seized and impounded pursuant to Section 7-24-225 and the department of police determines that it must retain custody of the vehicle under the applicable state or federal forfeiture law. If, after the hearing, the administrative law officer determines that there is probable cause to believe that the vehicle was used in a violation of this Code for which seizure and impoundment applies, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle is eligible for impoundment under that section, the administrative law officer shall order the continued impoundment of the vehicle as provided in this section unless the owner of the vehicle pays to the city the amount of the administrative penalty prescribed for the code violation plus fees for towing and storing the vehicle. If the vehicle is also sub ject to immobilization for unpaid parking and/or compliance violations, the owner of the vehicle must also pay the amounts due for all such outstanding violations prior to the release of the vehicle. If the administrative law officer determines there is no such probable cause, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle has previously been

determined not to be eligible for impoundment under that section, the vehicle will be returned without penalty or other fees.

*(omitted text is unaffected by this ordinance)*

**2-14-190  Municipal hearings division – Jurisdiction.**

(a)      The department of administrative hearings is authorized to establish a system of administrative adjudication for the enforcement of all provisions of the Municipal Code that are not adjudicated by the vehicle, buildings, environmental safety or consumer affairs hearings divisions, except that it shall not adjudicate violations of the following chapters and sections: chapter 4-92 (Massage Establishments and Massage Services); chapter 4-144 (Weapons); and Section 7-28-190 (Health Nuisances – Throwing Objects into Roadways); chapter 8-20 (Weapons), other than Section 8-20-015 (Unlawful Firearm in Motor Vehicle – Impoundment); and chapter 8-24 (Firearms and Other Weapons).

*(omitted text is unaffected by this ordinance)*

**SECTION 2.**  Chapter 2-84 of the Municipal Code of Chicago is hereby amended by adding a new section 2-84-075, as follows:

**2-84-075 Sale of firearms and ammunition authorized by the superintendent.**

Notwithstanding any other provision of this code to the contrary, the superintendent may authorize the sale of firearms or ammunition by a person issued a federal firearms license to a member of the police department, if that member is authorized to carry such firearm or ammunition. Such sales shall be conducted at department of police facilities.

**SECTION 3.**  Title 4 of the Municipal Code of Chicago is hereby amended by adding a new section 4-144-065, by adding the language underscored, and by deleting the language struck through, as follows:

**4-144-010  License – Required.**

It shall be unlawful for any person to engage in the business of selling, or to sell, or give away or otherwise transfer, any pistol, revolver or other firearm, dagger, stiletto, billie, derringer, bowie knife, dirk, stun gun or taser, as defined in Section 24-1 of the Illinois Criminal Code, 720 ILCS 5/24-1, or other deadly weapon which can be carried or concealed on the person, or any ammunition, as that term is defined in Section 8-20-010, without securing a weapons dealer license. The license required by this chapter shall be in addition to any other license required by law.  It shall be unlawful for any person licensed under this chapter to engage in the business of selling, or to sell, give away or otherwise transfer, any firearm as that term is defined in Section 8-20-010.

**4-144-061  Sale of certain handgun ammunition prohibited.**

Except as allowed by section 8-20-100(e) subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, offer for sale, expose for sale, barter or give away to any person within the city, any armor piercing or .50 caliber ammunition of the following calibers and types:

.45 automatic
.380 automatic
.38 special
.357 magnum

~~.25 caliber~~
~~.22 caliber, including .22 long~~
~~9 millimeter~~
~~Any other ammunition, regardless of the designation by the manufacturer, distributor or seller, that is capable of being used as a substitute for any of the foregoing.~~

**4-144-062  Sale of <u>ammunition to minors-prohibited.</u> ~~handguns without childproofing or safety devices prohibited.~~**

<u>No person licensed under this chapter shall sell or otherwise transfer any ammunition to a person who is under the age of 18.</u>

~~Except as allowed by subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, barter or give away to any person any handgun which does not contain:~~

~~(1)    A safety mechanism to hinder the use of the handgun by unauthorized users. Such devices shall include, but shall not be limited to, trigger locks, combination handle locks, and solenoid use-limitation devices, and~~

~~(2)    A load indicator device that provides reasonable warning to potential users such that users even unfamiliar with the weapon would be forewarned and would understand the nature of the warning.~~

~~Safety mechanism means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun by other than the owner of the handgun and those specifically authorized by the owner to use the handgun.~~

~~A trigger lock means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the handgun without first removing the trigger lock by use of the trigger lock's key.~~

~~A combination handle lock means a device that is part of the handgun which precludes the use of the handgun unless the combination tumblers are properly aligned.~~

~~A solenoid use-limitation device means a device which precludes, by use of a solenoid, the firing of the handgun unless a magnet of the appropriate strength is placed in proximity to the handle of the weapon.~~

~~A load indicator means a device which plainly indicates that a bullet is placed in the handgun in a way that pulling the trigger or otherwise handling the handgun may result in detonation.~~

**<u>4-144-065 Sale of metal piercing bullets.</u>**

<u>No person licensed under this chapter shall sell, offer for sale, expose for sale, barter, give away or otherwise transfer any metal piercing bullets, as that term is defined in section 8-20-010.</u>

**SECTION 4.**   Chapter 8-20, Articles I and II, section 8-20-010 through and including section 8-20-260 of the Municipal Code of Chicago are deleted in their entirety and replaced with the following language;

**ARTICLE I.  DEFINITIONS.**

**8-20-010 Definitions:**

For purposes of this chapter the following terms shall apply:

"The Act" means the Illinois Firearm Owners Identification Card Act, 430 ILCS 65/1 et seq., as amended.

"Ammunition" means any self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable to use in a firearm; excluding however;

(1) any ammunition used exclusively for line-throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or

(2) any ammunition designed exclusively for use with a stud or rivet driver or other similar industrial ammunition.

"Antique firearm" has the same meaning ascribed to that term in 18 U.S.C. § 921(a)(16).

"Assault weapon" means:

(1) A semiautomatic rifle that has the ability to accept a detachable magazine and has one or more of the following:

(i)  a folding or telescoping stock

(ii)  a handgun grip which protrudes conspicuously beneath the action

(iii) a bayonet mount

(iv) a flash suppressor or a barrel having a threaded muzzle

(v)  a grenade launcher; or

(2) A semiautomatic shotgun that has one or more of the following:

(i)  a folding or telescoping stock

(ii)  a handgun grip which protrudes conspicuously beneath the action

(iii) a fixed magazine capacity in excess of 5 rounds

(iv) an ability to accept a detachable magazine; or

(3)  A semiautomatic handgun that has an ability to accept a detachable magazine and has one or more of the following:

(i)  an ammunition magazine that attaches to thehandgun outside thehandgun grip

(ii)  a barrel having a threaded muzzle

(iii) a shroud that is attached to, or partially or completely encircles the barrel, and permits the shooter to hold the firearm with the non-trigger hand without being burned;

(iv) a manufactured weight of 50 ounces or more when the handgun is unloaded

(v) a semiautomatic version of an automatic firearm.

"Chicago Firearm Permit" or "CFP" means the permit issued by the City which allows a person to possess a firearm.

"Corrections officer" means wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of an offense.

"Department" means the department of police.

"Dwelling unit" has the same meaning ascribed to that term in section 17-17-0248.

"Duty-related firearm" shall mean any firearm which is authorized by any law enforcement agency or employer to be utilized by their personnel in the performance of their official duties.

"Firearm" means any device, by whatever name known, which is designed or restored to expel a projectile or projectiles by the action of any explosive, expansion of gas or escape of gas. Provided, that such term shall not include:

> (1) any pneumatic gun, spring gun, paint ball gun or B-B gun which either expels a single globular projectile not exceeding .18 inch in diameter and which has a maximum muzzle velocity of less than 700 feet per second or breakable paint balls containing washable marking colors;
> (2) any device used exclusively for line-throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or
> (3) any device used exclusively for firing explosives, rivets, stud cartridges, or any similar industrial ammunition.

"Firearm case" means any firearm case, carrying box, shipping box or other similar container that is designed for the safe transportation of the firearm.

"FOID" means the Firearm Owner's Identification Card issued pursuant to the Act.

"Handgun" means a firearm designed to be held and fired by the use of a single hand, and includes a combination of parts from which such firearm can be assembled.

"High capacity magazine" means any ammunition magazine having a capacity of more than 12 rounds of ammunition.

"Home" means the inside of a person's dwelling unit which is traditionally used for living purposes, including the basement and attic. A "home" does not include: (i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas; or (iii) any dormitory, hotel, or group living, as that term is defined in section 17-17-0102-A.

"Laser sight accessory" means a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm.

"Lawful transportation" means the transportation of a firearm by a person:

> (1) in compliance with section 8-20-090; or
> (2) who has a valid FOID card, a CFP and firearm registration certificate, if applicable, and the firearm is: (i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case.

"Long gun" means any firearm, other than a handgun.

"Machine gun" means any firearm which can fire multiple rounds of ammunition by a single function of the firing device or one press of the trigger.

"Metal piercing bullet" means any bullet that is manufactured with other than a lead or lead alloy core, or ammunition of which the bullet itself is wholly composed of, or machined from, a metal or metal alloy other than lead, or any other bullet that is manufactured to defeat or penetrate bullet resistant properties of soft body armor or any other type of bullet resistant clothing which meets the minimum requirements of the current National Institute for Justice Standards for "Ballistic Resistance of Police Body Armor."

"Organization" means partnership, company, corporation or other business entity, or any group or association of two or more persons united for a common purpose.

"Peace officer" means any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses.

"Retired department police officer" means a person who is retired from the department in good standing and without any disciplinary charges pending, and who is, or is eligible to become, an annuitant of the Policemen's Annuity and Benefit Fund of the City of Chicago.

"Sawed-off shotgun" means a shotgun having one or more barrels less than 18 inches in length and any weapon made from a shotgun, whether by alteration, modification or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Security personnel" means special agents employed by a railroad or public utility to perform police functions, guards of armored car companies, watchmen, security guards or persons regularly employed in a commercial or industrial operation for the protection of persons employed by, or property related to, such commercial or industrial operation; and watchmen while in the performance of the duties of their employment.

"Short-barreled rifle" means a rifle having one or more barrels less than 16 inches in length, and any weapon made from a rifle, whether by alteration, modification, or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Superintendent" means the superintendent of the department or his designated representative.

"Safety mechanism" means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun.

"Trigger lock" means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the firearm without first removing the trigger lock by use of the trigger lock's key.

"Unregisterable firearm" means any firearm listed in section 8-20-170.

"Unsafe handgun" means any handgun that is listed on the superintendent's roster of unsafe handguns because, in the determination of the superintendent, the handgun is unsafe due to its size, ability to be concealed, detectability, quality of manufacturing, quality of materials, ballistic accuracy, weight, reliability, caliber, or other factors which makes the design or operation of the handgun otherwise inappropriate for lawful use.

"Violent crime" has the same meaning ascribed to that term in the Rights of Crime Victims and Witnesses Act, 725 ILCS 120/1, et seq., as amended.

## ARTICLE II.  POSSESSION OF FIREARMS

**8-20-020 Unlawful possession of handguns.**

(a) It is unlawful for any person to carry or possess a handgun, except when in the person's home.

(b) The provisions of this section shall not apply to:

(1) peace officers, and any person summoned by a peace officer to assist in making arrests or preserving the peace, while assisting such officer;

(2) corrections officers while in the performance of their official duty, or while commuting between their homes and places of employment;

(3) members of the Armed Services or Reserve Forces of the United States or the Illinois National Guard or the Reserve Officers Training Corps, while in the performance of their official duty;

(4) security personnel;

(5) persons licensed as private security contractors, private detectives, or private alarm contractors, or employed by an agency certified by the Illinois Department of Professional Regulation;

(6) persons regularly employed in a commercial or industrial operation as a security guard for the protection of persons employed and private property related to such commercial or industrial operation, while in the performance of their duties or traveling between sites or properties belonging to the employer, and who, as a security guard, is registered with the Illinois Department of Professional Regulation;

(7) persons employed by a financial institution for the protection of other employees and property related to such financial institution, while in the performance of their duties, commuting between their homes and places of employment, or traveling between sites or properties owned or operated by such financial institution;

(8) persons employed by an armored car company to drive an armored car, while in the performance of their duties;

(9) persons who have been classified as peace officers pursuant to the Peace Officer Fire Investigation Act;

(10) investigators of the Office of the State's Attorneys Appellate Prosecutor authorized by the board of governors of the Office of the State's Attorneys Appellate Prosecutor to carry weapons pursuant to Section 7.06 of the State's Attorneys Appellate Prosecutor's Act;

- 8 -

(11) special investigators appointed by a State's Attorney under Section 3-9005 of the Counties Code;

(12) probation officers while in the performance of their duties, or while commuting between their homes, places of employment or specific locations that are part of their assigned duties, with the consent of the chief judge of the circuit for which they are employed;

(13) court security officers while in the performance of their official duties, or while commuting between their homes and places of employment, with the consent of the sheriff;

(14) persons employed as an armed security guard at a nuclear energy, storage, weapons or development site or facility regulated by the Nuclear Regulatory Commission who have completed the background screening and training mandated by the rules and regulations of the Nuclear Regulatory Commission;

(15) duly authorized military or civil organizations while parading, with the special permission of the Governor;

(16) persons engaged in the manufacture, transportation, or sale of firearms to persons authorized under this subsection to possess those firearms;

(17) a person while engaged in the lawful transportation of a firearm.

**8-20-030 Unlawful possession of long guns.**
(a) It is unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business.

(b)  The provisions of this section shall not apply to:
(1) any person listed in section 8-20-020(b); or
(2) any duly licensed hunter who has a valid FOID card, a CFP and firearm registration certificate, while engaged in hunting in an area where hunting is permitted.

**8-20-035 Unlawful possession of unregisterable firearms**.
(a) It is unlawful for any person to carry or posses any unregisterable firearm.

(b)  The provisions of this section shall not apply to corrections officers, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers, to the extent that any such person is otherwise authorized to acquire or possess assault weapons, and is acting within the scope of his duties, or to any person while engaged in the manufacturing, transportation or sale of assault weapons to people authorized to possess them under this section.

(c) Notwithstanding the provisions of subsection (a), those firearms listed in section 8-20-170(a) may be possessed and used by the department for training and tactical operation, as authorized by the superintendent.

(d) Any firearm carried or possessed in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-040 Firearms kept or maintained in a home.**

Subject to section 8-20-050, every person who keeps or possesses a firearm in his home shall keep no more than one firearm in his home assembled and operable. If more than one person in the home has a valid CFP and registration certificate, each person with a valid CFP and registration certificate is entitled to have one such firearm assembled and operable in the home. All other firearms kept or possessed by that person in his home shall be broken down in a nonfunctioning state or shall have a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render the firearm temporarily inoperable.

The provisions of this section shall not apply to peace officers.

**8-20-050 Firearms- Protection of minors.**

(a) It is unlawful for any person to keep or possess any firearm or ammunition in his home if the person knows or has reason to believe that a minor under the age of 18 years is likely to gain access to the firearm or ammunition, unless:

(1) the person is physically present in the home and the firearm is either being held by the person or is physically secured on the person's body;

(2) the firearm is secured by a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render a firearm temporarily inoperable; or

(3) the firearm and ammunition are placed in a securely locked box or container.

(b) No person shall be punished for a violation of this section under the following circumstances:

(1) if the minor gains access to the firearm and uses it in a lawful act of self-defense or defense of another; or

(2) if the minor gains access to the firearm because of an unlawful entry of the premises by the minor or another person.

The provisions of this section shall not apply to peace officers.

**8-20-060 Possession of a laser sight accessory, firearm silencer or muffler.**

(a) It is unlawful for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory, or a firearm silencer or muffler.

(b) The provisions of this section shall not apply to any members of the armed forces of the United States, or the organized militia of this or any other state, or peace officers, to the extent that any such person is otherwise authorized to acquire or possess a laser sight accessory, or firearm silencer or muffler, and is acting within the scope of his duties.

(c) Any laser sight accessory, or firearm silencer or muffler, carried, possessed, displayed or sold in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-070 Unlawful firearm, laser sight accessory, or firearm silencer or muffler in a motor vehicle – Impoundment.**

(a)  The owner of record of any motor vehicle that contains a firearm registered to a person who is not the driver or occupant of the vehicle, an unregistered firearm, a firearm that is not being lawfully transported, an unregisterable firearm, a laser sight accessory, or a firearm silencer or muffler, shall be liable to the city for an administrative penalty of $1,000.00 plus any towing and storage fees applicable under Section 9-92-080. Any such vehicle shall be subject to seizure and impoundment pursuant to this section.

(b)  Whenever a police officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the police officer shall provide for the towing of the vehicle to a facility controlled by the city or its agents. Before or at the time the vehicle is towed, the police officer shall notify any person identifying himself as the owner of the vehicle at the time of the alleged violation, of the fact of the seizure and of the vehicle owner's right to request a vehicle impoundment hearing to be conducted under Section 2-14-132 of this Code.

(c)  The provisions of Section 2-14-132 shall apply whenever a motor vehicle is seized and impounded pursuant to this section.

### 8-20-080 Possession of ammunition.

(a) It is unlawful for any person to carry or possess any ammunition in the city, unless the person:

(1) has a valid CFP and registration certificate for a firearm of the same gauge or caliber as the ammunition possessed, and while in possession of the ammunition, has the CFP and registration certificate in his possession when he is not in his home, or, when he is in his home, has the CFP and registration certificate readily available in his home; or

(2) is a licensed weapons dealer; or

(3) is a person listed in section 8-20-020(b).

(b) Any ammunition carried or possessed in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

### 8-20-085  High capacity magazines and metal piercing bullets – Sale and possession prohibited – Exceptions.

(a) It is unlawful for any person to carry, possess, sell, offer or display for sale, or otherwise transfer any high capacity magazine or metal piercing bullets.  This section shall not apply to corrections officers, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers, to the extent that any such person is otherwise authorized to acquire or possess metal piercing bullets, and is acting within the scope of his duties, or to any person while in the manufacturing, transportation or sale of high capacity magazines or metal piercing bullets to people authorized to possess them under this section.

(b)  Any high capacity magazine or metal piercing bullets carried, possessed, displayed, sold or otherwise transferred in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

### 8-20-090 Interstate transportation of firearms.

It shall not be a violation of this chapter if a person transporting a firearm or ammunition while engaged in interstate travel is in compliance with 18 U.S.C.A. §926A.  There shall be a

rebuttable presumption that any person within the city for more than 24 hours is not engaged in interstate travel, and is subject to the provisions of this chapter.

**8-20-100 Permissible sales and transfers of firearms and ammunition.**

(a)   Except as authorized by subsection (e) and section 2-84-075, no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm.

(b)  No ammunition may be sold or otherwise transferred within the city, except through a licensed weapons dealer, or as otherwise allowed by this code.

(c)  No firearm or ammunition shall be security for, or be taken or received by way of any mortgage, deposit, pledge or pawn.

(d)  No person may loan, borrow, give or rent to or from another person, any firearm or ammunition except in accordance with this chapter.

(e)   Notwithstanding any other provision of this section, a peace officer may sell or transfer any lawfully held firearm or ammunition to another peace officer in accordance with the other provisions of this chapter.

**ARTICLE III.  PERMITS FOR AND REGISTRATION OF FIREARMS**.

**8-20-110 CFP-Required**

(a) Subject to subsection (d), it is unlawful for any person to carry or possess a firearm without a CFP.

(b) No CFP application shall be approved unless the applicant:

(1) is 21 years of age or older; provided that an application of a person 18 years or older but less than 21 may be approved if the person has the written consent of his parent or legal guardian to possess and acquire a firearm or firearm ammunition and that he has never been convicted of a misdemeanor, other than a traffic offense or adjudged a delinquent; provided that such parent or legal guardian is not an individual prohibited from having a FOID or CFP, and that the parent files an affidavit with the department attesting that the parent is not an individual prohibited from having a FOID or CFP;

(2) possesses a valid Illinois FOID;

(3) has not been convicted by a court in any jurisdiction of:
(i)   a violent crime,
(ii)   two or more offenses for driving under the influence of alcohol or other drugs; or
(iii) an unlawful use of a weapon that is a firearm;

(4) has vision better than or equal to that required to obtain a valid driver's license under the standards established by the Illinois Vehicle Code;

(5) is not otherwise ineligible to possess a firearm under any federal, state or local law, statute or ordinance; and

(6) has not been convicted, adjudicated, admitted to, or found liable for a violation of section 8-20-060 or 8-20-100.

(c)  Each CFP issued shall be accompanied by a copy of this ordinance.

(d)  Any person who has a valid firearm registration certificate issued before the effective date of this 2010 ordinance shall be exempted from acquiring a CFP until the expiration of the registration certificate; provided that upon the expiration of the registration certificate, the person shall be required to obtain a CFP.  Any such person who has submitted an application for a CFP prior to or on the date of the expiration of his current registration certificate shall be deemed to be in compliance with the requirement for a CFP while his application is pending.

(e) The provisions of this section shall not apply to any person listed in section 8-20-020(b)(1)-(16) or a person engaged in interstate travel in compliance with section 8-20-100.

**8-20-120  CFP-application**
(a)  An applicant for a CFP shall submit an application to the superintendent on a form or in a manner prescribed by the superintendent. The application shall include the following:

(1)  name, residential address and telephone number of the applicant;

(2)  the applicant's date of birth and sex;

(3)  the applicant's Illinois firearm owner's identification number and a copy of the applicant's FOID card;

(4)  evidence that the applicant meets the criteria of section 8-20-110;

(5)  two identical photographs of the applicant taken within 30 days immediately prior to the date of filing the application, equivalent to passport size, showing the full face, head and shoulders of the applicant in a clear and distinguishing manner;

(6) the applicant's Illinois driver's license number and a copy of the applicant's driver's license or Illinois identification card;

(7) an affidavit signed by a firearm instructor certified by the State of Illinois to provide firearm training courses attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training and four hours of classroom instruction that is in compliance with the requirements of the classroom instruction course, as established in rules and regulations; and

(8) any other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination as to whether the terms of this chapter have been complied with.

The superintendent shall be the custodian of all applications for CFPs under this chapter.

(b) The applicant shall submit to fingerprinting in accordance with procedures established in rules and regulations promulgated by the superintendent.

(c)   For an application for a CFP submitted within 180 days of the effective date of this 2010 ordinance, the superintendent shall either approve or deny such application no later than 120 days after the date the application is submitted, unless good cause is shown.  For an application for a CFP submitted thereafter, the superintendent shall either approve or deny an application within 45 days from the date the application is submitted, unless good cause is shown.  An application shall not be deemed submitted until the applicant provides all the required information or documentation.

(d) All CFPs issued by the superintendent shall contain the applicant's name, date of birth, sex, and signature.  Each CFP shall have the expiration date boldly and conspicuously displayed on the face of the CFP.

**8-20-130   CFP card-fee and expiration.**
(a) A CFP card shall expire 3 years after the date of issuance.

(b) The fee shall be $100.00.

(c) The CFP fee shall not be applicable to any resident of the city who is a retired department police officer.

**8-20-140   Firearm registration certificate-required**
(a) Subject to subsection (d), it is unlawful for any person to carry or possess a firearm without a firearm registration certificate.

(b) No application for a registration certificate shall be approved unless the applicant has been issued a valid CFP; provided no CFP shall be required for the issuance of a registration certificate if the person is an exempt person pursuant to section 8-20-110(e).

(c)   An applicant for a registration certificate shall submit an application to the superintendent on a form or in a manner prescribed by the superintendent. The application shall include the following:

> (1) name, telephone number and the address at which the firearm shall be located;
>
> (2) a copy of the applicant's CFP and Illinois FOID card;
>
> (3) the name of the manufacturer, the caliber or gauge, the model, type and the serial number identification of the firearm to be registered;
>
> (4) the source from which the firearm was obtained;
>
> (5) the address at which the firearm will be located;
>
> (6) if an antique firearm, the year of manufacture of the firearm;
>
> (7) the date the firearm was acquired; and

(8) any other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination as to whether the terms of this chapter have been complied with.

The superintendent shall be the custodian of all applications for registration certificates under this chapter.

(d)     (1) Subject to subsection (d)(2), an application for a registration certificate shall be submitted no later than 5 business days after a person takes possession within the city of a firearm from any source; provided that any applicant who has submitted a complete application within the required 5 business days shall be considered in compliance with this subsection until his registration certificate is either approved or denied.

(2) Notwithstanding any provision of this chapter to the contrary, a person has 90 days after the effective date of this 2010 ordinance to register a firearm, including a handgun, which had not been previously registered; provided that the person and firearm meet all the requirements of this ordinance.

(e)   For an application for a firearm registration certificate submitted within 180 days after the effective date of this 2010 ordinance, the superintendent shall either approve or deny such application no later than 45 days after the date the application is submitted.  For an application for a firearm registration certificate submitted thereafter, the superintendent shall either approve or deny the application within 21 days of the submission of the application, unless good cause is shown.  An application shall not be deemed submitted until the applicant provides all the required information or documentation.

(f) The provisions of this section shall not apply to:
(1)  firearms owned or under the direct control or custody of any federal, state or local governmental authority maintained in the course of its official duties;

(2)  duty-related firearms owned and possessed by peace officers who are not residents of the city;

(3) duty-related firearms owned or possessed by corrections officers and who are not residents of the city;

(4) firearms owned, manufactured or possessed by licensed manufacturers of firearms, bulk transporters or licensed sellers of firearms at wholesale or retail, provided that such persons have federal firearms license;

(5) any nonresident of the city participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided that such firearm shall be (i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case;

(6)  persons licensed as private security contractors, security guards, private detectives, or private alarm contractors, or employed by an agency certified as such by the Department of Professional Regulation;

(7) duty-related firearms of investigators of the Office of the State's Attorneys Appellate Prosecutor authorized by the board of governors of the Office of the State's Attorneys Appellate Prosecutor to carry weapons pursuant to Section 7.06 of the State's Attorneys Appellate Prosecutor's Act;

(8) duty-related firearms of special investigators appointed by a State's Attorney under Section 3-9005 of the Counties Code;

(9) firearms being transported by a person engaged in interstate travel in compliance with section 8-20-100; or

(10) those persons summoned by a peace officer to assist in making an arrest or preserving the peace while actually engaged in assisting the peace officer.

(g) Each registration certificate issued shall contain a unique registration certificate number, the person's name, the address at which the firearm will be located, and any other information the superintendent deems necessary to identify the person and the firearm.

**8-20-145 Registration certificates- expiration**.
(a) A registration certificate issued prior to the effective date of this 2010 ordinance shall remain in effect until its expiration.

(b) For registration certificates issued after the effective date of this 2010 ordinance, a registration certificate shall expire on the same date as the date of the expiration of the CFP issued to that person.

(c) A person shall file an annual registration report with the superintendent on a form, and in a manner, prescribed by the superintendent. The annual registration report shall set forth such information as required by the superintendent in rules and regulations. If a person has multiple registration certificates, the superintendent may align the dates for the annual registration reports to the same reporting date and combine such annual registration reports into one report.
Failure to file an annual registration report may result in revocation of a person's CFP or registration certificate, and may cause that firearm to become unregisterable to that person.

**8-20-150 Application fees.**
(a) A nonrefundable application fee of $15.00 shall be payable for each firearm registered. The fee shall accompany each initial application for a registration certificate.

(b) Any person who files an annual registration report late shall pay a late filing fee of $60.00.

(c) The application fee shall not be applicable to: (1) any duty-related firearm of a peace officer domiciled in the city, or (2) any duty-related firearm that was registered to that retired department police officer at the time of the his separation from active duty in the department.

**8-20-160 Restrictions on issuance of registration certificates.**
(a) Subject to subsections(b) and (c), the superintendent shall issue no more than one firearm registration certificate to a person for a handgun during any 30-day period; provided that the superintendent may permit a person first becoming a city resident to register more than one

handgun if those handguns were lawfully owned in another jurisdiction for a period of 6 months prior to the date of application.

(b)   In addition to a registration certificate for a handgun pursuant to subsection (a), an applicant may be issued a registration certificate for:

> (1)  any firearm possessed by an applicant that was lawfully registered on the date of the enactment of this ordinance;

> (2) any long gun which is eligible to be registered; or

> (3) any antique firearm, including antique handguns.

The burden of proving that a firearm is an antique firearm shall be on the applicant.

(c) In addition to a registration certificate for a handgun pursuant to subsection (a), a retired department police officer may be issued a registration certificate for each duty-related handgun that was registered to that retired department police officer at the time of the his separation from active duty in the department.

**8-20-170  Unregisterable firearms.**
No registration certificate shall be approved for any of the following types of firearms:

(a) a sawed-off shotgun, .50 caliber rifle, machine gun, or short-barreled rifle;

(b) an unsafe handgun;

(c) a firearm that becomes unregisterable under the provisions of this chapter; provided that it shall only be unregistrerable for that person; or

(d)   assault weapons, unless they are owned by a person who is entitled to carry or possess them pursuant to section 8-20-035.

**8-20-180 CFP and registration certificate-General provisions.**
(a)    After issuance of a CFP or a registration certificate to a person, the person shall examine the CFP or registration certificate to insure that the information thereon is correct. If the information is incorrect in any respect, the person shall return it to the superintendent with a signed statement showing the nature of the error. The superintendent shall correct the error if it occurred as a result of the superintendent's administrative process.

In the event that the error resulted from incorrect information contained in the application, the person shall submit an amended application setting forth the correct information and a statement explaining the error in the original application.

(b) A CFP and the registration certificate shall be valid only for the person to whom it was issued.

(c) A registration certificate shall only be valid for the address on the registration certificate.  Except in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate.

(d) A CFP or registration certificate shall not be subject to sale, assignment, or transfer, voluntary or involuntary.

(e)  Any application for a CFP or a registration certificate shall be held in abeyance when there is a criminal proceeding for a violent crime, or an offense involving a weapon, or a proceeding to deny or revoke a CFP or firearm registration certificate pending against the person, until such proceeding has terminated.

**8-20-185 Additional duties**.
(a) Every person issued a CFP or a firearm registration certificate, in addition to any other requirements of this code, shall immediately notify the department in a manner prescribed by the superintendent of:

(1) the destruction of his firearm, or when the person knows, or should have known, that his firearm is lost, stolen or otherwise missing;

(2) the loss, theft or destruction of the CFP or registration certificate within 72 hours of the discovery of such loss, theft, or destruction;

(3) a change in any of the information appearing on the CFP or firearm registration certificate;

(4) the sale, transfer, inheritance, or other disposition of the firearm not less than 48 hours prior to delivery.

(b) Every person issued a CFP or a firearm registration certificate, in addition to any other requirements of this code, shall:

(1) immediately return to the superintendent his copy of the registration certificate for any firearm which is lost, stolen, destroyed or otherwise disposed of; and

(2)  keep all information current.  Any change in required information shall be reported, on a form and in manner prescribed by the superintendent, within 24 hours after the change.

**8-20-190 Denials and revocations.**
(a) An application for a CFP or a registration certificate shall be denied for any of the following reasons:

(1) any of the eligibility criteria of this chapter are not currently met;

(2) the firearm is an unregisterable firearm;

(3) the information furnished on or in connection with the application for a CFP or a registration certificate is false or misleading; or

(4) the person fails to respond to any additional information, or investigation inquiries, requested by the superintendent regarding any application.

(b) A registration certificate shall be revoked:

(1) when the firearm becomes an unregisterable firearm; or

(2) if the CFP of the person was revoked.

(c) A CFP shall be revoked if any of the eligibility criteria of this chapter are not currently met.

(d) A CFP or registration certificate may be denied or revoked for a violation of this chapter, or any rules or regulations promulgated hereunder.

(e) The CFP and all registration certificates of any person convicted of a felony after the issuance of a CFP or registration certificate to that person shall be automatically revoked by operation of law, without a further hearing. The person shall immediately dispose of all firearms by:

(i) peaceably surrendering to the department all firearms for which a registration certificate was issued;

(ii) removing such firearm from the city; or

(iii) otherwise lawfully disposing of his interest in such firearm.

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

**8-20-200 Procedure for denial.**
(a) If an application for a CFP or a registration certificate is denied by the superintendent, the superintendent shall notify the person making such application, in writing, of the denial. The notice of denial shall:

(1) set forth the basis of the denial;

(2) include a statement that within ten days of the notice of denial, the person is entitled to request a hearing, in person and in writing, at the department of administrative hearings;

(3) include a statement that the person is entitled to appear at the hearing to testify, present documents, including affidavits, and any other evidence to contest the denial;

(4) include a statement that if the person fails to request a hearing within ten days, the person is deemed to have conceded the validity of the reason stated in the notice and the denial shall become final;

(5) include a certificate of service; and

(6) include an oath or affirmation by the superintendent certifying the correctness of the facts set forth in the notice of denial.

(b) The person, within ten days after notice is sent of the denial, may file with the department of administrative hearings a request for a hearing. Such hearing request shall be

made in person, and in writing, at the department of administrative hearings. An administrative law officer of the department of administrative hearings shall conduct such hearing within 72 hours of the request, excluding Saturdays, Sundays, and legal holidays.

(c) The department of administrative hearings shall conclude the hearing no later than 7 days after the commencement of the hearing.

(d) Based upon the evidence contained in the record, an administrative law officer of the department of administrative hearings shall, within 5 days of the conclusion of the hearing, issue written findings and enter an order granting or denying the application. A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

(e) If the person does not request a hearing within ten days after the notification of the denial is sent, the person shall be deemed to have conceded the validity of the reason stated in the notice and the denial shall become final.

(f) Within three days after all the time for hearings or appeals has expired, the person shall:

> (1) peaceably surrender to the department the firearm for which the registration certificate was denied;

> (2) remove such firearm from the city; or

> (3) otherwise lawfully dispose of his interest in such firearm.

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

**8-20-205  Procedure for revocation**.

(a) Except in cases where a CFP or registration certificate is automatically revoked pursuant to section 8-20-190(e), if, in the determination of the superintendent, a CFP or a registration certificate  should be revoked, he shall notify the person whose CFP or registration certificate is the subject of such revocation, in writing, of the proposed revocation. The notice shall:

> (1) set forth the basis for the revocation;

> (2) specify the location, date, and time for a hearing on the revocation;

> (3 include a statement that the person is entitled to appear at the hearing to testify, present documents, including affidavits, and any other evidence to contest the proposed revocation;

> (4) include a statement that failure of the person to appear at the hearing may include an entry of an order revoking the person's CFP or registration certificate;

> (5) include a certificate of service; and

> (6) include an oath or affirmation by the superintendent certifying the correctness of the facts set forth in the notice.

(b) The department of administrative hearings shall convene the hearing at the location and on the date and time specified in the revocation notice.

(c) Based upon the evidence contained in the record, an administrative law officer of the department of administrative hearings shall, within 5 days of the conclusion of the hearing, issue written findings and enter an order granting or denying the proposed revocation. A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

(d) Within three days after notification of a decision unfavorable to the person, and all time for appeals has expired, the person shall:

    (1) for revocation of a registration certificate:
        (i) peaceably surrender to the department the firearm for which the registration certificate was revoked;

        (ii) remove such firearm from the city; or

        (iii) otherwise lawfully dispose of his interest in such firearm.

    (2) for revocation of a CFP, dispose of all firearms in accordance with subsection (d)(1).

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

(e) In cases where a CFP or registration certificate is automatically revoked pursuant to section 8-20-190(e), the superintendent shall notify the person of the automatic revocation of the person's CFP or registration certificate. Within three days after notification of the automatic revocation, the person may file with the department of administrative hearings a request, in writing, for a hearing on the sole issue of identity and whether he was the person so convicted. It shall be a rebuttable presumption that the person whose CFP or registration certificate was automatically revoked is the same person who was convicted of a felony.

An administrative law officer of the department of administrative hearings shall conduct such hearing within 5 days of the request for a hearing.

Based upon the evidence contained in the record, an administrative law officer of the department of hearings shall, within 5 days of the conclusion of the hearing, issue written findings as to sole issue of the identity of the person. A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

If the person does not request a hearing within three days after the notification, the person shall be deemed to have conceded the validity of the identification.

**8-20-210 Automatic revocation of registration certificates.**
If, after a hearing, a CFP issued to a person is revoked, all firearm registration certificates issued to that person shall automatically be revoked and the person shall comply with section 8-20-205(d) for disposition of the firearms.

**ARTICLE IV.  Miscellaneous Provisions.**

**8-20-220  False information – Forgery – Alteration.**
(a) It is unlawful for any person purchasing any firearm or ammunition, or applying for any CFP or registration certificate, or, in giving any information pursuant to the requirements of this chapter, to knowingly give false information or offer false information or evidence of identity.

(b) It is unlawful for any person to forge or materially alter any application for a CFP or firearm registration certificate.

(c) It is unlawful for any person to forge or materially alter a CFP or a firearm registration certificate.

(d) It is unlawful for any person to knowingly possess a forged or materially altered CFP or firearm registration certificate.

(f)  It is unlawful for any person to knowingly make any false statement, submit any false information or misrepresent any information required in this chapter.

**8-20-230  Notice.**
For the purposes of this chapter, service of any notice, finding or decision upon a person shall be completed by any of the following methods by:

(a) personal delivery of a copy of such notice, finding or decision to the person;

(b) leaving a copy of such notice, finding or decision at the address identified on the application for a CFP or registration certificate; or

(c)  mailing, by first class mail, a copy of the notice, finding or decision to the address identified on the application for a CFP or registration certificate, in which case service shall be complete as of the date the notice was mailed.

**8-20-240 Posting of  unsafe handguns.**
(a) The superintendent shall post on the department's web site the roster of unsafe handguns.

(b) No less than 10 days prior to placing any handgun on the roster of unsafe handguns, the superintendent shall post on the department's  web site the type or model of the handgun that will be placed on the roster.

**8-20-250 Seizure and  forfeiture of firearms, ammunition, laser sight accessories and firearm silencers and mufflers-Authority and destruction.**
The superintendent has the authority to seize any firearm, assault weapon, ammunition, laser sight accessories, or firearm silencer or muffler carried or possessed in violation of this chapter or any applicable state or federal law.  Such items are hereby declared contraband and shall be seized by and forfeited to the city.

Whenever any firearm, ammunition, laser sight accessories, or firearm silencer or muffler is surrendered or forfeited pursuant to the terms of this chapter, or any applicable state or federal law, the superintendent shall ascertain whether such firearm, ammunition, assault weapon, laser sight accessories, or firearm silencer or muffler is needed as evidence in any matter.  All such

items which are not required for evidence shall be destroyed at the direction of the superintendent; provided that those firearms and ammunition that the superintendent shall deem to be of use to the department may be retained for the use of the department. A record of the date and method of destruction and an inventory of the firearm or ammunition so destroyed shall be maintained.

### 8-20-260   Rules and regulations.

The superintendent has the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required. All rules and regulations promulgated by the superintendent pursuant to this chapter shall be posted on the department's web site.

### 8-20-270   Acquisition or possession prohibited by law.

Nothing in this chapter shall make lawful the acquisition or possession of firearms or ammunition which is otherwise prohibited by law.

### 8-20-280 Prohibition on shooting galleries and target ranges.

Shooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited; provided that this provision shall not apply to any governmental agency. The discharge of a firearm in an area where hunting is permitted shall not be a violation of this section.

### 8-20-290 Severability.

If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which reasonably can be given effect without the invalid provision or term for the application thereof.

### ARTICLE V.  VIOLATION OF CHAPTER PROVISIONS.

### 8-20-300   Violation – Penalty.

(a) Any person who violates section 8-20-020, 8-20-030, 8-20-035, 8-20-060, 8-20-080 or 8-20-110 shall upon conviction be fined not less than $1,000.00 nor more than $5000.00 and be incarcerated for a term not less than 20 days nor more than 90 days. Each day that such violation exists shall constitute a separate and distinct offense.

(b) Unless another fine or penalty is specifically provided, any person who violates any provision of this chapter, or any rule or regulation promulgated hereunder, shall upon conviction or a finding of liability for the first offense, be fined not less than $1,000.00, nor more than $5,000.00, or be incarcerated for not less than 20 days nor more than 90 days, or both. Any subsequent conviction for a violation of this chapter shall be punishable by a fine of not less than $5,000.00 and not more than $10,000.00, and by incarceration for a term of not less than 30 days, nor more than six months. Each day that such violation exists shall constitute a separate and distinct offense.

(c) In addition to any other fine or penalty provided in this chapter, the CFP or registration certificate of any person who violates any provision of this chapter, or rule or regulation promulgated hereunder, may be revoked. Any person whose CFP is revoked shall not be eligible for a CFP for 5 years from the date of the revocation; provided that the superintendent may waive this restriction if, in the determination of the superintendent, the applicant has demonstrated that the applicant has good reason to fear injury to his person or property.

(d)   Upon the determination that a person has violated any provision of this chapter or any rule or regulation promulgated hereunder, the superintendent may institute an administrative adjudication proceeding with the department of administrative hearings by forwarding a copy of a notice of violation or a notice of hearing, which has been properly served, to the department of administrative hearings.

**SECTION 5.** The renumbering and amending of the sections in Chapter 8-20 are not intended to invalidate, alter, or otherwise affect in any way any action taken, or could have been taken, based upon those sections, nor shall it be construed to affect any offense or act committed,  action or claim arising under those sections, penalty, forfeiture, or punishment incurred, except that any proceedings after the effective date of this 2010 ordinance shall conform, insofar as practicable, to the ordinance in effect at the time of the proceedings.

**SECTION 6.**  Title 8 of the Municipal Code of Chicago is hereby amended by adding a new section 8-24-005, by deleting sections 8-24-025 and 8-24-026, by deleting the language struck through, and by adding the language underscored, as follows:

### 8-16-090  Firearms for minors.

No person shall sell, loan, or furnish to any minor any ~~gun, pistol or other firearm, or~~ any toy gun, toy pistol, or other toy firearm in which any explosive substance can be used~~, within the city; except that minors may be permitted, with the consent of their parents or guardians, to use firearms on the premises of a duly licensed shooting gallery, gun club, or rifle club, or to shoot game birds in accordance with the provisions of Section 8-24-050 of this Code~~.

### 8-24-005 Definitions

For the purposes of this Chapter, the following definitions apply:

"Corrections officers," "firearm" and "peace officer" have the meaning ascribed to those terms in section 8-20-010.

### 8-24-010  Discharging firearms.

No person shall fire or discharge any ~~gun, pistol, or other~~ firearm within the city, except in the lawful self-defense or defense of another ~~upon premises used by a duly licensed shooting gallery, gun club, or rifle club~~, or in accordance with the provisions of Section 8-24-050 of this Code.

No cannon or piece of artillery shall be discharged or fired off in any public way or other public place within the city, except upon the express permission of the city council.

Any person violating any of the provisions of this section shall be fined not less than $~~250.00~~ 500.00 nor more than $~~500.00~~ 1,000.00 for each offense.

The provisions of this section shall not apply to persons listed in section 8-20-020 (b)(1)-(15). ~~sheriffs, coroners, constables, members of the police force, or other peace officers engaged in the discharge of their official duties, or to any person summoned by any of such officers to assist in making arrests or preserving the peace while such person so summoned is engaged in assisting such officer~~.

### 8-24-020  Carrying dangerous weapons.

(a) No person shall sell, offer for sale, keep, possess, loan or give to any person any knife, the blade of which is released by a spring mechanism, including knives known as "switch-

blades", any blackjack, slingshot, sandclub, sandbag, metal knuckles or bludgeon. No person shall sell, offer for sale, loan or give to any person 18 years of age or under any type or kind of knife, any blade of which is two inches in length or longer.

(b) [Reserved] ~~No person shall sell, manufacture, purchase, possess or carry any weapon from which eight or more shots or bullets may be discharged by a single function of the firing device~~.

(c) No person shall carry or possess any knife, the blade of which is released by a spring mechanism, including knives known as "switch-blades", any blackjack, slingshot, sandclub, sandbag, metal knuckles or bludgeon. No person 18 years of age or under shall carry or possess any knife, the blade of which is two inches in length or longer.

(d) No person shall carry or possess with intent to use same unlawfully against another a dagger, dirk, billy, dangerous knife, razor, stiletto or other dangerous or deadly weapon.

(e) [Reserved] ~~No person shall carry concealed on or about his person a pistol, revolver, derringer or other firearm. Provided, however, that this provision shall not apply to the following officers while engaged in the discharge of their official duties: sheriffs, coroners, constables, policemen or other duly constituted police officers and wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime; nor to the following employees or agents while engaged in the discharge of the duties of their employment: conductors, baggagemen, messengers, drivers, watchmen, special agents and policemen employed by railroads or express companies; nor to persons lawfully summoned by an officer to assist in making arrests or preserving the peace, while so engaged in assisting such officer.~~

(f) No person shall carry concealed on or about his person a or dagger, dirk, stiletto, bowie knife, commando knife, any blade of which is released by a spring mechanism, including knives known as "switch-blades" or any other type or kind of knife, any blade of which is more than two and one-half inches in length, ordinary razor or other dangerous weapon except that no person 18 years of age or under shall carry concealed on or about his person, any knife, the blade of which is two inches in length or longer. Provided, however, that this provision shall not apply to the following officers while engaged in the discharge of their official duties: sheriffs, coroners, <u>peace officers</u> ~~constables, policemen or other duly constituted police officers~~ and <u>corrections officers</u> ~~wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime~~; nor to the following employees or agents while engaged in the discharge of the duties of their employment: conductors, baggagemen, messengers, drivers, watchmen, special agents and policemen employed by railroads or express companies; nor to persons lawfully summoned by an officer to assist in making arrests or preserving the peace, while so engaged in assisting such officer.

(g) Any person violating the provisions of subsections (a), (c), (d) or (f) of this section shall be fined $200.00 for each offense, or shall be punished by imprisonment for a period not to exceed six months, or by both such fine and imprisonment. ~~Any person violating the provisions of subsections (b) or (e) of this section shall be subject to a fine of $300.00 for each offense, and a mandatory minimum sentence of not less than five days imprisonment nor more than six months imprisonment for a first offense; a mandatory minimum sentence of not less than fifteen days imprisonment nor more than six months imprisonment for a second offense; and a mandatory minimum sentence of not less than thirty days imprisonment nor more than six months imprisonment for a third or subsequent offense.~~

(h)     ~~In addition to all other penalties, weapons~~ Any weapons used in violation of this section are hereby declared contraband and shall be seized by and forfeited to~~, and confiscated by,~~ the city.

## 8-24-021  Sale, display and use of utility knives.

(a)     As used in this section, a "utility knife" is a knife consisting of a grip and single-edged sharp blade of the type typically used to cut such resistant surfaces as rugs, cardboard boxes, linoleum flooring and the like.

(b)     No person shall display or offer for sale any utility knife except by placing the knife either (1) in an area immediately accessible only to an employee of the establishment, and beyond the reach of any customer less than seven feet tall; or (~~b~~ 2) in a locked display cabinet, which can only be opened by an employee of the establishment.

*(omitted text is unaffected by this ordinance)*

~~**8-24-025  Assault weapons or ammunition – Sale prohibited – Exceptions.**~~

~~(a)     No person shall sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or assault ammunition, as those terms are defined in Chapter 8-20 of this Code. This section shall not apply to any officer, agent, or employee of this or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess an assault weapon or assault ammunition and is acting within the scope of his or her duties. In addition, this section shall not apply to the acquisition or possession of assault ammunition by persons employed to provide security for armored carriers or mobile check cashing services while in the course of such duties, while commuting directly to or from the person's place of employment, and while at the person's home, if the assault  ammunition (1) is acquired or possessed for use with a weapon that the person has been authorized to carry under Section 28 of the Illinois Private Detective, Private Alarm and Private Security Act of 1983; and (2) consists of an ammunition magazine that has a capacity of 15 or fewer rounds of ammunition.~~

~~(b)     Any assault weapon or assault ammunition possessed, sold or transferred in violation of subsection (a) is hereby declared to be contraband and shall be seized,and disposed of in accordance with the provisions of Section 8-20-220.~~

~~(c)     Any person found in violation of this section shall be subject to a fine of not less than $500.00 nor more than $1,000.00 for each offense, and a mandatory minimum sentence of not less than five days imprisonment nor more than six months imprisonment for a first offense;  a mandatory minimum sentence of not less than fifteen days imprisonment nor more than six months imprisonment for a second offense; and a mandatory minimum sentence of not less than thirty days imprisonment nor more than six months imprisonment for a third or subsequent offense.~~

~~(d)     Any person who, prior to the effective date of the ordinance codified in this section, was legally in possession of an assault weapon or assault ammunition prohibited by this section shall have 14 days from the effective date of the ordinance codified in this section to do any of the following without being subject to prosecution hereunder:~~

~~(1)  To remove the assault weapon or ammunition from within the limits of the City of Chicago; or~~

~~(2) To modify the assault weapon either to render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon; or~~

~~(3) To surrender the assault weapon or ammunition to the superintendent of police or his designee for disposal in accordance with Section 8-20-220.~~

**~~8-24-026 Fragmenting bullets and metal piercing bullets – Sale prohibited – Exceptions.~~**

~~(a) No person shall manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any fragmenting bullets, metal piercing bullets, or disc projectile ammunition. This section shall not apply to any officer, agent, or employee of this or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess fragmenting bullets, metal piercing bullets, or disc projectile ammunition and is acting within the scope of his or her duties.~~

~~(b) Any fragmenting bullets, metal piercing bullets, or disc projectile ammunition manufactured, possessed, sold or transferred in violation of subsection (a) are hereby declared to be contraband and shall be seized and disposed of in accordance with the provisions of Section 8-20-220.~~

~~(c) Any person found in violation of this section shall be sentenced to not more than six months imprisonment or fined $500.00, or both.~~

**8-24-027  Disguised firearms prohibited.**

(a)     No person shall purchase, acquire, sell, offer or expose for sale, or possess any firearm that is designed, constructed, modified or disguised to resemble any other object.

(b)     Any person who violates subsection (a) of this section ~~shall be guilty of a misdemeanor, and~~ shall be <u>incarcerated</u> ~~subject to incarceration~~ for not less than 30 days and not more than 180 days for each offense. Each day of a continuing violation, and each purchase, acquisition, sale, offering or exposing for sale, or possession of a different firearm described in subsection (a) shall constitute a separate and distinct offense.

(c)     Nothing in this section suspends, repeals or alters any other provision of this Code which limits, restricts or prohibits the purchase, acquisition, sale, offering or exposure for sale, or possession of a firearm.

**SECTION 7.** The Municipal Code of Chicago is hereby amended by adding a new chapter 8-26, as follows:

**Chapter 8-26 Gun Offender Registration Ordinance**

**8-26-010   Definitions:**

For purposes of this chapter, the following definitions apply:

"Corrections facility" has the same meaning ascribed to that term in 720 ILCS 5/3-1-2.

"Conviction" or "convicted" means an adjudication by a court of competent jurisdiction that a person is guilty, and includes the sentence by the court, of the gun offense.

"Gun offender" or "offender" means any person convicted of a gun offense that is subject to the provisions of this chapter.

"Gun offense" means a criminal conviction of an offense for an unlawful use of a weapon that included a firearm under 720 ILCS 5/24, or criminal possession of a firearm in violation of any federal, state or local law.

"Department," "firearm," and "superintendent" have the meaning ascribed to those terms in section 8-20-010.

**8-26-020 Duty to register and to verity.**
(a) A gun offender who resides within the city, or remains in the city to work or attend school, shall register with the superintendent within 48 hours of either: (1) release, if the gun offender receives a sentence of imprisonment; or (2) the time sentence is imposed, if the sentence does not include imprisonment.

(b) The form and manner of registration shall be as provided in rules and regulations.

(c) The registration shall include the following information;
> (1) the person's name, date of birth, and sex;
> (2) the address where the gun offender resides, works, or attends school;
> (3) any other legal name;
> (4) copy of a driver's license or non-driver's photo identification card;
> (5) a photograph of the gun offender;
> (6) a description of the offense for which the offender was convicted;
> (7) the name and address of the offender's place of work, or expected place of work, including the name and phone number of his supervisor;
> (8) the name and address of any educational institution which the offender attends or expects to attend; and
> (9) any other information that the superintendent shall find reasonably necessary to effect the purpose of this chapter.

The gun offender shall sign a statement under oath attesting to the accuracy of the information required in this subsection.

(d) The superintendent may photograph the gun offender and require the gun offender to provide such documentation as the superintendent considers acceptable to verify any information required pursuant to this chapter.

(d) The gun offender shall submit to fingerprinting in accordance with rules and regulations promulgated by the superintendent.

**8-26-030 Initial and annual registration.**
(a) For the initial registration, a gun offender shall personally appear to register at such office of the police that the superintendent may direct.

(b) No later than 20 days after the one-year anniversary of the gun offender's initial registration, the gun offender shall personally appear at such office of the police that the superintendent may direct for the purpose of verifying the information required in this chapter.

(c) If a gun offender required to register under this chapter is confined to any federal, state or local correctional center, residential treatment center, hospital, or institution throughout

the 20-day period set forth in subsection (b), the gun offender shall personally appear as required by this subsection within 48 hours of release.

**8-26-040 Registration period.**

A gun offender shall comply with the requirements of this chapter for a period beginning when he is required to register and continuing until 4 years from the date of conviction, or 4 years after the expiration of any time being served on probation, parole, supervised release, or conditional release, or 4 years after the gun offender is unconditionally released from a correctional facility, prison, hospital or other place of confinement, whichever is last. The registration period is tolled any time the gun offender fails to register or otherwise fails to comply with the requirements of this chapter.

**8-26-050 Duty to report.**

A gun offender shall report any change in information required by this chapter with 48 hours of such change, in a manner and in a form prescribed by the superintendent.

**8-26-060 Creation of gun offender registry.**

(a) The superintendent is authorized to collect and maintain gun offender information obtained pursuant to this chapter.

(b) The superintendent shall create and maintain a registry of gun offenders registered pursuant to the provisions of this chapter.

(c) The superintendent is authorized to make the gun offender registry available to any other city sister agencies or any regional or national government-established gun offender registry and may accept files from such registries.

**8-26-070 Cooperation with other agencies.**

The superintendent is authorized to cooperate with the judiciary and state and other city sister agencies to facilitate the implementation of this chapter. Assistance and cooperation in the implementation of this chapter shall be provided by other city departments upon the request of the superintendent.

**8-26-080 Gun offender community notification.**

The superintendent shall post the gun offender registry on the department's web site, and must make the information contained in the registry database searchable with a mapping system which identifies registered gun offenders within 5 miles of an identified address. The information shall be updated as deemed necessary by the superintendent.

**8-26-090   Rules and regulations.**

The superintendent has the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required.

**8-26-100 Violation-Penalty.**

Any person who violates any provision of this chapter, or rule or regulation promulgated hereunder, shall, upon conviction, be fined not less than $300.00 nor more than $500.00 or be incarcerated for a term not to exceed six months, or both. Each day that such violation exists shall constitute a separate and distinct offense.

**8-26-110 Severability.**

If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which reasonably can be given effect without the invalid provision or term for the application thereof.

**SECTION 8.** This ordinance shall take effect 10 days after its passage and approval.