IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SECOND AMENDMENT ARMS, (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a SECOND AMENDMENT ARMS, ROBERT M. ZIEMAN, SR., ICARRY, an unincorporated Association a d/b/a of Shaun Kranish), and SHAUN A. KRANISH,

Plaintiffs,

v.

CITY OF CHICAGO, a municipal corporation, RICHARD M. DALEY, individually and as the Mayor of the City of Chicago, JODY P. WEIS, Superintendent of Police of the City of Chicago, MIGUEL DEL VALLE, City Clerk of the City of Chicago, and MARA GEORGES, individually and as Corporation Counsel of the City of Chicago,

Defendants.

Civil Case No: 1:10-cv-4257

Hon. Robert M. Dow, Jr.
U.S. District Court Judge

Hon. Sheila M. Finnegan
U.S. Magistrate Judge

PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

NOW COMES Plaintiffs, by and through their attorney, Walter P. Maksym, Jr., and submit the following argument and authorities in opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Defendants' Motion"):

THE RULE 12 (B)(6) DISMISSAL STANDARD

Rule 12(b)(6) allows a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). At the pleading stage, the Court must accept as true all well plead facts, construing all such allegations in the light most favorable to a plaintiff and drawing all reasonable inferences in their favor. *See Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008); *London v. RBS Citizens N.A.,* 600 F.3d 742 (7th Cir. 2010). Importantly, a court does not weigh evidence in a motion to dismiss. Recently, in *Aguila Records, Inc. v. Federico,* Case No. 07 C 3993, Slip Op. (N.D. Ill. Oct. 10, 2007) a defendants' Rule 12(b)(6) motion was denied holding that a such motion was not the appropriate vehicle for evaluating the strength of the evidence.

To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concenlra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). Allegations need only provide the defendant with "fair notice of what the ... claim is and the grounds upon which it rests. *Bell Atl. Corp. v.*

*Twombly, 550* U.S. 544, 555 (2007) (citing *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). A plaintiff need not plead particularized facts, but the factual allegations in the complaint must be sufficient to "state a claim to relief that is plausible on its face[.]" *Id* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1940 (citing *Twombly,* 550 U.S. at 556). See also *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir. 1998) (reversing 12(b)(6) dismissal for want of discretion, holding that confusion or ambiguity "[is] a poor ground for rejecting meritorious claims . . .[and can be dealt with] by means other than dismissal").

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal,* 129 S. Ct. at 1949, Complaints "must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." ... The Court further stated, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ... The Court described the plausibility standard as something less than the "probability standard," but stated that there must be "more than a sheer possibility that a defendant has acted unlawfully." A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Legal conclusions and naked assertions are "not entitled to the assumption of truth" and must be disregarded. *Iqbal,* 129 S. Ct. at 1950; *Twombly,* 550 US. 544, 555, 557; *Brooks, supra* (the complaint must put defendants on notice of what exactly they might have done to violate a plaintiff's rights under the Constitution, federal or state law.) Court must assess the well-pleaded, nonconclusory factual allegations. *Iqbal,* 129 S. Ct. at 1950; *Twombly,* 550 US. at 565. "Determining whether a complaint states a plausible claim for relief," the majority held, "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" when deciding whether a plaintiff's complaint advances a plausible claim for relief. *Id.*

In *Twombly*, the Supreme Court interpreted Rule 8(a)(2) as requiring complaints to contain sufficient factual allegations to permit a district court to find that the claim is facially plausible. *See* 550 U.S. at 556. The Seventh Circuit has since adopted a limited plausibility standard concluding that *Twombly* only requires a plausibility standard in certain kinds of cases, in, for example, onerous discovery intensive litigation. See *Limestone* at 802-03 where Judge Posner wrote that *Twombly* teaches "a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case." Because *Limestone* failed to provide enough information, so the District and Circuit courts dismissed the case for failure to state a claim. In *Smith*, for example, Judge Posner recently suggested in dicta that *Twombly* may be limited to complex cases and *Iqbal* may be limited to government official immunity cases. 576 F.3d 336, 339–40

(7th Cir. 2009):

> In our initial thinking about the case, however, we were reluctant to endorse the district court's citation of the Supreme Court's decision in *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007), fast becoming the citation du jour in Rule 12(b)(6) cases, as authority for the dismissal of this suit. The Court held that in complex litigation (the case itself was an antitrust suit) the defendant is not to be put to the cost of pretrial discovery - a cost that in complex litigation can be so steep as to coerce a settlement on terms favorable to the plaintiff even when his claim is very weak - unless the complaint says enough about the case to permit an inference that it may well have real merit. The present case, however, is not complex. Were this suit to survive dismissal and proceed to the summary judgment stage, it would be unlikely to place on the defendants a heavy burden of compliance with demands for pretrial discovery.

See also *United States ex rel. Lusby v. Rolls-Royce Corp.,* 570 F. 3d 849 (7th Cir. 2009)

*Apropos* to a fair disposition of this case is the following scholarly observation of the relatively new *Twombly* "plausibility standard" recently described by Judge Posner in *Smith v. Duffy*[1] as "fast becoming the citation *du jour* in Rule 12(b)(6) cases": "The 'plausibility' standard injects too much subjectivity into the ruling, and the very word 'plausible' implies a value judgment on the merits of the case at the pleadings stage." Hatamyar, *The Tao of Pleading: Do Twombly and Iqbal Matter Empirically?* 59 Am. U. L. Rev. 553 (2010)

Under Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concenlra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). A complaint is sufficient if it includes enough factual content to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)) That standard is met when the factual content allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 821 (7th Cir. 2009) The allegations must provide the defendant with "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (citing *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be sufficient to "state a claim to relief that is plausible on its face[.]" Id at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1940 (citing *Twombly,* 550 U.S. at 556) See also *Brooks v. Ross,* 578 *F.3d* 574 (7th Cir. 2009) (discussing *Iqbal* and *Twombly*).

In analyzing a Rule 12(b)(6) motion, the factual universe generally is defined by and restricted to the Plaintiff's complaint: the Court accepts as true all of the well-pleaded facts alleged by the Plaintiff and all reasonable inferences that can be drawn from those facts. See *Barnes v. Brimley,* 420 F.3d 673, 677

[1] 576 F.3d 336, 339–40 (7th Cir. 2009)

(7th Cir. 2005) To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Svcs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 550 U.S. at 563. The pleading principles that *Twombly* clarified, like the Federal Rules of Civil Procedure in general, apply "in all civil actions." Fed. R. Civ. P. 1; *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1953.

In interpreting the effect of *Twombly* and *Iqbal,* the Seventh Circuit has emphasized the Supreme Court's admonition that plausible claims are not the stuff of probabilistic reasoning: "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable * * * [And the 'plausibility' requirement] simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations. *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (quotation marks omitted) (quoting *Twombly,* 550 U.S. at 556) In other words, a plaintiff need not allege specific facts unless the factual detail is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Brooks,* 578 F.3d at 581 (discussing the Seventh Circuit's interpretation of *Twombly, Iqbal*, *supra*, and *Erickson, infra.*). Nothing in the authorities cited by the parties, nor the Court's reading of *Iqbal*, supports the "right legal theory" requirement that Defendants seek to establish. Recently, Judge Virginia Kendall applied *Iqbal* and noted that the "level of facts required varies with the type of claims asserted." *Mounts v. United States Parcel Service of America,* 2009 WL 2778004, at *5 (N.D. Ill. Aug. 31, 2009) As shown even more recently in *Wessel v Village of Monee*, Case No. 1:04-cv-03246 Doc. 75 p. 8 (N.D. Ill. June 14, 2010 - Joan B. Gottschall, Judge) Plaintiffs' extensive and detailed allegations are enough to put Defendants on notice of their constitutional and other claims.

The *Twombly* decision should not be interpreted to require fact pleading. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'") (omission in original) Also, a litigant who invokes the wrong legal theory but pleads the right facts survives a motion to dismiss brought pursuant to Rule 12(b)(6). *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1135 (7th Cir. 1992) In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in a light favorable to the plaintiff.

*Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (2007) "A complaint must always, . . . allege 'enough facts to state a claim to relief that is plausible on its face,' " *Limestone Development Corp. v. Village of Lemont,* 520 F.3d 797, 803 (7th Cir. 2008) (quoting *Bell Atlantic*, 127 S.Ct. at 1974) To avoid dismissal, the "allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic,* 127 S. Ct. at 1965)

PLAINTIFFS' COMPLAINT GIVES FAIR NOTICE OF PLAUSIBLE FEDERAL AND STATE CLAIMS

Plaintiffs' Count I sufficiently places the Defendants on notice of the constitutional shortcomings of their Ordinances. Loss of the exercise of a fundamental right as law abiding citizens, not to mention the right to engage in commerce regarding its exercise are actionable. See *Libertad v. Welch*, 53 F.3d 428, 438 n.6 (1st Cir. 1995) (noting that "the intangible right to freely conduct one's lawful business constitutes 'property'" The concept of property under has not been limited to physical or tangible 'things.' *United States v. Zemek*, 634 F.2d 1159, 1174 (9th Cir. 1980) The right to make personal and business decisions about one's own business also fits this definition of "property."

Recently, in *Taylor v. Pittsburgh Mercy Health System, Inc.,* the district court denied a defendant's motion to dismiss and their motion for a more definite statement. 2009 WL 2992606 (W.D. Pa. Sept. 17, 2009) *Taylor* held: "*Twombly* and *Iqbal* notwithstanding, the notice pleading standard still applies in federal court. All plaintiffs must do is allege sufficient 'factual content [to] allow the Court to draw the reasonable inference that . . . [the] defendant[s are] liable for the Plaintiffs' Count II sufficiently alleged that all Defendants combined and conspired together· to commit the illegal acts alleged in Count I. They alleged an action distinct from Count I. Plaintiffs have pled a plausible claims that should not have been dismissed at such an early stage of the proceedings.

PLAINTIFFS' COMPLAINT COMPLIES WITH FED. R. CIV. P. 10(B)

Plaintiffs' Complaint comports with the requirements of Fed. R. Civ. P. 10(b). In this instance, each count of Plaintiffs' Complaint challenges the constitutionality a plethora of deficient provisions the city's Ordinances under multiple Constitutional provisions. Defendants' "head-in-the-sand" approach utterly ignores repeated references in Plaintiffs Complaint to not only the Second Amendment, but other Constitutional Amendments. Defendants have therefore been put on fair notice as to the fact that their Ordinance is challenged under the First, Second, Fourth, and/or Fourteenth Amendments. Plaintiffs ask this Court to enjoin enforcement of the Ordinance as well as its predecessor ordinance, which though repealed continues, in substance, to be enforced by the Defendants.

In *Andrews v. State,* 50 Tenn. 165, 178, 8 Am. Rep. 8, 13 (1871), in striking down a pistol carrying statute as too restrictive, the Tennessee Supreme Court held and stated the obvious, that "the right to keep arms for this purpose involves the right to practice their use.... The right to keep arms

necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair." *Andrews* also held that "the right to *keep* them [arms], with all that is implied fairly as an incident to this right, is a private individual right, guaranteed to the citizen, not the soldier." 50 Tenn. at 182. *Andrews* horse-sense ruling was cited several times in *District of Columbia v. Heller,* 128 S.Ct. 2783, 2806, 2809, 2818 (2008).

COUNT I SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM

SAA (Franzese) and icarry (Kranish) both have Second Amendment rights and their necessarily lengthy Complaint[2] contains specific allegations that belie Defendants' position that they are insufficient. See *Wessel supra.* Because Franzese d/b/a "SAA" and Kranish d/b/a "icarry" possess fundamental rights clearly protected by the Second Amendment, they can bring a Second Amendment challenge to any provision of the Ordinance. In *Heller*, 128 S. Ct. at 2799, the Court held the Second Amendment protects such individual rights. Because they are all individuals, their Second Amendment claims should not be dismissed. Franzese and Zieman clearly assert injuries that give them standing to challenge the provisions set forth in subsections A and L of Paragraph 24.

FRANZESE, ZIEMAN, AND KRANISH HAVE STATED A CLAIM REGARDING ALL OF THE PROVISIONS OF THE ORDINANCE CHALLENGED IN COUNT I

Franzese, Zieman, and Kranish all have standing to challenge the constitutionality of the provisions of the Ordinance listed in Count I they ask the Court to declare unconstitutional. They satisfy all three *Lujan* elements raised by Defendants: (1) an invasion of a legally recognized interest which is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal link between that injury and the defendants' actions, such that the injury is fairly traceable to the action complained of; and (3) that a favorable decision will likely redress the injury.

The Plaintiffs interests are directly affected by the ordinance, which gives them standing to attack it. *Buckley v. Valeo,* 424 U.S. 1, 11-12 & n. 1046 (1976). There is no need to invoke the special standing rules applicable to overbroad laws that affect fundamental rights, see *Schad v. Borough of Mount Ephraim,* 452 U.S. 61 (1981); Henry P. Monaghan, *Overbreadth,* 1981 Sup. Ct. Rev. 1. In the instant case, Franzese, Kranish and Zieman clearly identify constitutional and financial injuries that they have suffered, are suffering, or may well suffer from the enactment the Ordinance set forth in subsections B-K and M-O of Paragraph 24 and all subsections of Paragraph 25. With respect to subsections A and L of Paragraph 24 that challenge the City's absolute ban on gun dealers and, *inter alia,* the sale, purchase, transfer and gifting of firearms, Kranish assert a correlate injury - not being able to buy, sell or gift

[2] Unfortunately, Plaintiffs cannot control the extent Defendants were and evidently remain quite willing to deliberately ignore and trample upon the U.S. and Illinois Constitutions.

firearms which grants them standing to bring those claims. Given their cognizable injuries, Franzese, Kranish and Zieman have sufficiently stated claims that their constitutional rights have been violated.

THE SECOND AMENDMENT PROTECTS A RIGHT TO SELL AND TRANSFER FIREARMS

Franzese, Kranish and Zieman have asserted injuries sufficient to establish standing to challenge the City's prohibition on the sale, purchase, transfer and gifting of firearms as well as practice their use, and their claims are actionable because there is, necessarily, the right to sell, purchase, transfer and gift firearms Second Amendment. In *Andrews v. State,* 50 Tenn. 165, 178, 8 Am. Rep. 8, 13 (1871), in striking down a pistol carrying statute as too restrictive, the Tennessee Supreme Court held that "the right to keep arms for this purpose *involves the right to practice their use*.... The right to keep arms *necessarily involves the right to purchase them*, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair." (Emphasis supplied) *Andrews* also held that "the right to *keep* them [arms], *with all that is implied fairly as an incident to this right*, is a private individual right, guaranteed to the citizen, not the soldier." (Emphasis supplied) 50 Tenn. at 182. *Andrews* was cited several times in *District of Columbia v. Heller,* 128 S.Ct. 2783, 2806, 2809, 2818 (2008).

The Second Amendment, as construed in *Heller*, protects "the right to possess a handgun in the home for the purpose of self-defense." *McDonald*, 130 S. Ct. at 3050 (2010). Defendants *advance the illogical notion that the* right to "keep[] operable handguns at home for self-defense", that they must acknowledge exists, nevertheless claiming that *Heller* "established no more than this", can not be realistically exercised and are therefore infringed if firearms cannot be sold, purchased, transferred or gifted. Defendants position that "there is no Second Amendment right to sell or transfer a firearm" is, given *McDonald*, disingenuous, if not nonsensical, or preposterous. Moreover, this dispute lies at the heart of the instant case. Defendants should most certainly learned by now from not only their recent loss in *McDonald,* but their resounding defeat in *City of Chicago v. Beretta U.S.A. Corporation*, 213 Ill. 2d 351 (2005) (noting firearms are clearly lawful products an therefore can be manufactured and sold).

Defendants Ordinance once again attempts to bar firearms and its citizens and others their exercise of their Second Amendment rights by maneuvering to attempt to accomplish though subterfuge what it was told by the Supreme Court in *McDonald* it could achieve by a total ban making firearms "unregisterable". It approach, argument and another total-ban, knee-jerk Ordinance that simply lacks constitutional common sense. *McDonald* held that because the right is fundamental, it applies to the states. Accordingly, this Court should deny Defendants' request for dismissal. As is hereafter shown, the holding in *McDonald* that the right is fundamental signifies that strict scrutiny is the standard of review and that the right applies to the states according to the same common-use test for firearms as applies to the United States. Plaintiffs plausible claims based on the right to keep and bear arms, vagueness, due

process, and equal protection should all be allowed to proceed.

SECOND AMENDMENT RIGHTS ARE FUNDAMENTAL - THEIR REGULATION REQUIRE STRICT SCRUTINY

*McDonald* repeatedly characterized the right as fundamental in holding that the Second Amendment is incorporated through the Due Process Clause of the Fourteenth Amendment because "the right to keep and bear arms is fundamental to our scheme of ordered liberty," and is "deeply rooted in this Nation's history and tradition . . . ." 130 S.Ct. at 3036.

Blackstone's view that the arms right was fundamental was "shared by the American colonists." Id. at 3037. "The right to keep and bear arms was considered no less fundamental by those who drafted and ratified the Bill of Rights." Id. Its inclusion in the Bill of Rights "is surely powerful evidence that the right was regarded as fundamental in the sense relevant here." Id. The efforts of the Reconstruction Congress, *McDonald* continued, "to safeguard the right to keep and bear arms demonstrate that the right was still recognized to be fundamental." Id. at 3040. "[T]he Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." Id. at 3042. *McDonald* concluded that the Second Amendment is "a provision of the Bill of Rights that protects a right that is fundamental from an American perspective" and thus "applies equally to the Federal Government and the States." Id. at 3050. Just as *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), rejected rational-basis standard of review, *McDonald* rejected the power "to allow state and local governments any gun control law that they deem to be reasonable . . ." 130 S.Ct. at 3046. It further "Obviously, the same [rational basis] test could not be used to evaluate the extent which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms." 128 S.Ct. at 28118 n. 27. rejected the argument of municipalities that: [a]lthough most state constitutions protect firearms rights, state courts have held that these rights are subject to "interest-balancing" and have sustained a variety of restrictions. . . . In *Heller* , however, we expressly rejected the argument that the scope of the Second Amendment right should be determined by judicial interest balancing . . . . Id. at 3047, citing *Heller*, 128 S.Ct. at 2820-2821. Justice Breyer suggested that the *Heller* majority "implicitly" rejected strict scrutiny based on *dictum* about "presumptively lawful" restrictions on possession by felons and the mentally ill, possession in sensitive locales, and commercial sales. *Heller*, 128 S.Ct. at 2851 (Breyer, J., dissenting). Yet a compelling state interest for narrowly tailored restrictions of these types may be easily articulated. The existence of exceptions to a right hardly disqualifies strict scrutiny. See *Heller*, 128 S. Ct. at 2821 (noting First Amendment exceptions and stating that "[t]he Second Amendment is no different.").

Since the Second Amendment recognizes an explicitly protected, fundamental right, restrictions thereon are subject to strict scrutiny. A right is "fundamental" if it is "explicitly or implicitly protected by

the Constitution, thereby requiring strict judicial scrutiny." *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 17, 33(1973). "[C]lassifications affecting fundamental rights . . . are given the most exacting. "No fundamental right – not even the First Amendment – is absolute. The traditional restrictions go to show the scope of the right, not its lack of fundamental character." *McDonald*, 130 S. Ct. at 3056. Recognition of the right still allows "limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms . . . ." *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001), *cert. denied*, 536 U.S. 907 (2002)

"Under the strict-scrutiny test," the government [here the City – not Plaintiffs as Defendants would have this Court believe] has the burden to prove that a restriction "is (1) narrowly tailored, to serve (2) a compelling state interest." *Republican Party of Minnesota v. White*, 536 U.S. 765, 774-75 (2002) See also *Clark v. Jeter*, 486 U.S. 456, 461 (1988). See *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983) ("strict scrutiny [is] applied when government action impinges upon a fundamental right protected by the Constitution").

THE CONSTITUTION PROTECTS EVERY AMERICAN'S RIGHT TO KEEP AND BEAR ARMS *INCLUDING* THE RIGHT TO SELL, PURCHASE AND GIFT THEM BY PROTECTING INDIVIDUAL LIBERTY FROM INTRUSION BY FEDERAL, STATE AND LOCAL GOVERNMENT

The Supreme Court recognized an individual right to keep and bear arms in *Heller*. *See* 128 S. Ct. 2783 and shortly thereafter incorporated the Second Amendment in the Bill of Rights and declared it to be a fundamental right. *McDonald.* Since the right has been held to be fundamental and incorporated, the proper standard of review for a fundamental right incorporated against the states is strict scrutiny. Though *Heller* did not come out and flatly say that courts must apply "strict scrutiny" to laws that infringe upon the rights protected by the Second Amendment. *McDonald* eliminated any question on this front.[3]

When a law, such as the City's Ordinance, interferes with "fundamental constitutional rights," it is subject to "strict judicial scrutiny." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16 (1973) *See also id.* at 17 (if a law "impinges upon a fundamental right explicitly or implicitly protected by the Constitution, [it] thereby requir[es] strict judicial scrutiny"); *Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("classifications affecting fundamental rights … are given the most exacting scrutiny"); *Zauderer v. Office of Disciplinary Counsel of Supreme Court*, 471 U.S. 626, 651 n.14 (1985) ("As a general matter, governments are entitled to attack problems piecemeal, save where their policies implicate rights so fundamental that strict scrutiny must be applied."); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,

[3] *McDonald* clearly established that the Second Amendment secures a fundamental right, noting that Blackstone "cited the arms provision of the [English] Bill of Rights as one of the fundamental rights of Englishmen," and that "[b]y the time of the founding, the right to have arms had become fundamental for English subjects." 128 S. Ct. at 2798. See also id. at 2797 ("[T]he Second Amendment, like the First and Fourth Amendments, codified a pre-existing right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that the pre-existing right 'shall not be infringed.'"). Accordingly, regulatory burdens on the fundamental rights secured by the Second Amendment are subject to strict scrutiny.

460 U.S. 37, 54 (1983) ("strict scrutiny [is] applied when government action impinges upon a fundamental right protected by the Constitution").

The Supreme Court was explicit that it could resolve *Heller* and invalidate the challenged District of Columbia laws without definitively fixing a methodology for review. As *Heller* states:

> The handgun ban *amounts to* a prohibition of an entire class of "arms" that is overwhelmingly chosen by American society *for that lawful purpose*. The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute. Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," … would fail constitutional muster. *Heller,* 128 S. Ct. at 2817-18. (Emphasis supplied)

Likewise, as maintained in Plaintiffs Complaint, under *McDonald* Defendants Ordinance at issue bans from the entire City, *inter alia*, the sale, purchase and gifting and practice of the use of firearms by its residents and nonresidents, and thus fails constitutional muster.

Plaintiffs' facially plausible Federal claims should not be dismissed because they plead factual content that allowed this court to draw the reasonable inference that the Defendants could be liable under §1983. Count III sufficiently pleads that Defendants deprived plaintiffs of their Constitutional rights and seeks redress for the violations pursuant to 42 U.S.C. § 1983. They allege Defendants violated the First, Fourth, Fifth and Fourteenth Amendments. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amends XIV. "[T]he Due Process Clause was intended to prevent government officials from abusing [their] power, or employing it as an instrument of oppression." *County of Sacramento v Lewis,* 523 U.S. 833, 840 (1988): "To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest." *County Concrete*, 319 F.3d at 575 (quoting *Taylor Inv.,* 983 F.2d at 1292) Plaintiffs have so alleged. Moreover, the Fourteenth Amendment prohibits a state pr municipality from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Plaintiffs' complaint shows that Defendants abused their office to deprive them of the lawful use of their property. So, they could seek relief under the substantive due process guarantee of the Fourteenth Amendment. See *Schaefer v. Goch,* 153 F.3d 793, 797 (7th Cir.1998)

Just two elements are necessary to state a cause of action under 42 U.S.C. § 1983: the plaintiff must plead (1) that some person has deprived him of a federal right, and (2) that the person has done so under color of state law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970) Plaintiffs have done both. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins,* 487 U.S. 42, 49 (1988) At the same time, however, the Supreme Court has made clear that even the "[m]isuse of power" possessed by virtue of

state law is action taken "under color of state law." *Classic,* 313 U.S. at 326. Thus, "under 'color' of law" means "under 'pretense' of law," and "[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. United States,* 325 U.S. 91, 111 (1945)

In the instant case, Plaintiffs make out plausible procedural due process claims in that the deprivation of their fundamental rights, livelihoods and property has not been pursuant to any formally established procedure but abuses of office, indeed, outrageous illegal if not criminal conduct effecting the deprivation arguably is in violation of or contrary to formally enacted state procedures. *See Easter House v. Felder*, 910 F.2d 1387, 1410-13 (7th Cir. 1990) (*en banc*) (Cudahy, J., joined by Cummings, J., and Posner, J., dissenting). *See also Summers v. State of Utah*, 927 F.2d 1165, 1170 (10th Cir. 1991) (due process claim may exist against individual officer who had effected deprivation in manner inconsistent with law). The Fourteenth Amendment prohibits states and municipalities from depriving a person of "life, liberty, or property, without due process of law." See *Home Tel. & Tel. Co. v. City of Los Angeles*, 227 U.S. 278 (1913) A two-step approach to procedural due process claims: first, whether the plaintiff has been deprived of a protected liberty or property interest; if so, whether the deprivation occurred without due process. *Doe v. Heck*, 327 F.3d 492, 526 (7th Cir. 2003) In the instant case Plaintiffs have alleged a plausible claim that their fundamental rights, livelihoods and property were deprived without due process.

THE CITY'S ORDINANCES "PLAUSIBLY" RUN AFOUL OF THE SECOND AMENDMENT

The Ordinances are not narrowly tailored: The *Heller* Court stated in *dicta* that "forbidding the carrying of firearms in sensitive places such as schools and government buildings" is a "presumptively lawful regulatory measure." 128 S. Ct. at 2817. This reference was unnecessary to the holding of the case, and "cannot be read to relieve the government of its burden of justifying laws that restrict Second Amendment rights." *United States v. Skoien*, 587 F.3d 803, 805 (7th Cir. 2009), *reh'g granted by United States v. Skoien*, No. 08-3770, 2010 WL 1267262 (7th Cir. Feb. 22, 2010). Moreover, it is clear that college buildings are not the kind of specialized government buildings, such as the Governor's mansion or the state legislative chambers, to which the *dictum* refers.

In this case, the question is essentially one of law: whether the City's proscriptions are unconstitutionally vague or overly broad. In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, the plaintiffs brought a pre-enforcement challenge to a local ordinance that stated that a business must obtain a license before it could sell any items that were designed or marketed for use with illegal cannabis or drugs. 455 U.S. 489 (1982) (holding that ordinance was not void for vagueness or overbreadth). One provision of the ordinance required businesses that sold these items to keep a record of each sale of a regulated item, including the name and address of the purchaser, which would be open to police inspection. The Court of Appeals had expressed concern about potential Fourth Amendment

problems resulting from this provision because customers could be subjected to police scrutiny on the basis of the purchase of a legal item. The Supreme Court elected not to address the Fourth Amendment issues that had been raised, stating: "In a pre-enforcement challenge it is difficult to determine whether Fourth Amendment rights are seriously threatened. [Plaintiff] offered no evidence of a concrete threat below." *Id.* at 504 n.22. Though the *Hoffman Estates* Court reasoning opened the possibility that a plaintiff could offer evidence of a concrete threat of enforcement and could bring a pre-enforcement constitutional challenge to a statute. In this case, the legality of the City's Ordinance is ripe for decision.

To establish standing to challenge a statute, a plaintiff only need show "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); that is "pegged to a sufficiently fixed period of time" *ACLU of Florida, Inc. v. Miami-Dade County School Bd.*, 557 F.3d 1177, 1194 (11th Cir. 2009); and which is not "merely hypothetical or conjectural," *Florida State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008). The individual plaintiffs, have all established standing because they have been, are or may well be deprived of or may well incur penalties under the Ordinance. See *State of Florida, et. al. v. United States Department of Health and Human Services, et. al.,* Case No. 3:10-cv-00091-RV -EMT Doc. 150 (U.S. District Ct., N.D. FL, Roger Vinson, Senior Judge Jan. 31, 2011); *Virginia v. Sebelius*, 702 F. Supp. 2d 598, 602-07 (E.D. Va. 2010) (both declaring the Health Care and Education Reconciliation Act of 2010 unconstitutional). Plaintiffs have put Defendants on fair notice of their claims, standing to assert them and the conduct underlying them.

PLAINTIFFS' PLAUSIBLY ALLEGE THAT THE ORDINANCES DO NOT USE THE LEAST RESTRICTIVE MEANS NECESSARY TO ACHIEVE ANY COMPELLING PURPOSE

In applying the strict scrutiny standard, "the court should ask whether the challenged regulation is the least restrictive means among available, effective alternatives." Clearly, the Ordinances at issue plausibly fail this test and City bears the burden of proof to show that the interests are compelling and that the law is narrowly tailored. *Miller v. Johnson*, 515 U.S. 900, 920 (1995) The Ordinance is also overbroad and not narrowly tailored for the reasons explained, *supra*, in explaining that it fails to comply with the state constitution. "When a plausible, less restrictive alternative is offered … it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals." *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 816 (2000)

Here, the City could draft an ordinance that serves the compelling governmental interest of public safety and general welfare, without so bluntly and broadly infringing on law-abiding citizens' right to, *inter alia*, sell, purchase, gift or otherwise bear arms for self-defense. Rather than totally prohibiting all sales, purchases, gifts and any other carry in the City, it could outlaw carrying a weapon for the purpose of menacing, threatening, or intimidating a specific person or group of people.

Besides being overly restrictive, the City's Ordinance actually decreases public safety by attempt to once again create another essentially city-wide gun-free zone by banning the sales, purchases, transfers, gifting and practice use required in order to obtain and use the instrumentality whose use and possession is the object of the protected right, not to mention to qualify to register it. See *McDonald.* There is nothing unusual about the instant case. There are scores of reported cases where, in addition to *McDonald* and *Heller*, a law has been found to violate the right to arms. S*tate ex rel. City of Princeton v. Buckner*, 180 W.Va. 457, 377 S.E.2d 139 (1988) (gun carrying law); *Barnett v. State*, 72 Or. App. 585, 695 P.2d 991 (1985) (prohibition on black jacks); *State v. Delgado*, 298 Or. 395, 692 P.2d 610 (1984) (prohibition on switchblade knives; *State v. Blocker*, 291 Or. 255, 630 P.2d 824 (1981) (prohibition on carrying a club); *State v. Kessler*, 289 Or. 359, 614 P.2d 94 (1980) (prohibition on possessing a club); *Junction City v. Mevis*, *supra* (Kan. 1979) (gun carrying ordinance was too broad); *City of Lakewood v. Pillow*, 180 Colo. 20, 501 P.2d 744 (1972) (restrictions on firearms sale, possession, and carrying were too broad); *City of Las Vegas v. Moberg*, 82 N.M. 626, 485 P.2d 737 (Ct. App. 1971) (gun carrying ordinance); *People v. Nakamura*, 99 Colo. 262, 62 P.2d 246 (1936) (prohibition of firearm possession by lawful aliens); *Glasscock v. City of Chattanooga*, 157 Tenn. 518, 11 S.W.2d 678 (1928) (gun carrying); *People v. Zerillo*, 219 Mich. 635, 189 N.W. 927 (1922) (prohibiting possession of a firearm); *State v. Kerner* , *supra*, (N.C. 1921) (pistol carrying license and bond requirement); *In re Reilly*, 31 Ohio Dec. 364 (C.P. 1919) (ordinance forbidding hiring armed guard to protect property); *State v. Rosenthal*, *supra* (Vt. 1903) (pistol carrying); *In re Brickey*, 8 Ida. 597, 70 P. 609 (1902)(gun carrying); *Jennings v. State*, 5 Tex. App. 298 (1878) (statute requiring forfeiture of pistol after misdemeanor conviction); *Wilson v. State*, *supra* (Ark. 1878) (pistol carrying); *Andrews v. State*, *supra* (Tenn. 1871) (pistol carrying); *Smith v. Ishenhour*, 43 Tenn. (3 Cold.) 214 (1866) (gun confiscation); *Nunn v. State*, *supra* (Ga. 1846) (handgun ban); *Bliss v. Commonwealth*, 12 Ky. (2 Litt.) 90, 13 Am.Dec. 251 (1822) (gun carrying).

Counts II and III do not violate Rule 10(b). In Count II, Zeiman seeks restitution for the seizure of his firearms under the City's repealed former ordinance and states that the "limitations, prohibitions, restrictions and requirements imposed upon him and weapons dealers" listed in paragraph 24 and 25 violate the Second and Fourteenth Amendments. *Id.* ¶¶ 32-34. He also asks the Court, like Plaintiffs do in Count I, to enjoin enforcement of the entire Ordinance as well as its now-repealed predecessor. *Id.* at p. 19. Count III is a class action not a mere "mirror" of Count II, with Zieman acting as class representative. *Id.* ¶¶ 36-40. Counts II and III -- like Count I -- Defendants are given notice as to on what grounds each provision is challenged.

Plaintiffs' state law claims, which appear on pages 24 through 27 of their Complaint, plausibly challenge to the Ordinance under articles 1, 2, 4, 6, 12, 22, and 24 of the Illinois Constitution, and the "third" claim is Plaintiffs' request for a declaration that the Ordinance violates the aforementioned

provisions of the Illinois Constitution. Compl. pp. 25-27. Plaintiffs give fair notice as to which of the provisions of the Ordinance violate which articles of the Illinois Constitution upon which they base their claim. Therefore, Defendants can determine the exact nature and the basis are of Plaintiffs' claims. It is not impossible for Defendants to determine which provisions of the Ordinance are at issue and under what constitutional provisions Plaintiffs' challenges lie. Therefore, Plaintiffs have complied with Rule 10(b), and their Complaint should not be dismissed.

Count VIII alleged a Fed. R. Civ. Pro. 23 class action on behalf of a class of persons doing business in Chicago who were similarly victimized by Defendants' ordinances and their enforcement. Common questions of law or fact to the class are quite obvious. Plaintiffs respectfully submit that a review of their Complaint will reveal that stated and gave fair notice of plausible claims upon which relief may be granted.

In the matter at bar, Plaintiffs have also sufficiently pled their standing by pleading: (1) constitutional violations of their fundamental rights; (2) injury to business or property, and (3) causation of the injury by Defendants Ordinance and refusal to issue a business license, etc. When even one individual plaintiff has standing, this eliminates the need to discuss the standing issue with respect to the other state plaintiffs, or the other asserted bases for standing. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp*., 429 U.S. 252 (1977) ("Because of the presence of this plaintiff, we need not consider whether the other individual and corporate plaintiffs have standing to maintain this suit.")

The City's argument is further at odds with the Supreme Court's repeated pronouncements that, "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972); *Steffel v. Thompson*, 415 U.S. 452 (1974). It should be remembered that Defendants' Ordinance contains and subjects Plaintiffs to substantial penalties. The City's approach would have Plaintiffs discover the meaning of its Ordinance only under continual threat of fine or imprisonment. Such an exercise is not reasonably necessary. See *Grayned.*

A typical vagueness challenge is brought as a defense to a criminal charge, and can only be raised by a defendant whose own conduct arguably did not fall within the terms of the statute, thus allowing the defendant to claim that the lack of fair notice led to a deprivation of liberty without due process of law. See, e.g., *United States v. National Dairy Prods. Corp.*, 372 U.S. 29, 32-33 (1963) ("Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. In determining the sufficiency of the notice a statute must of necessity be examined in light of the conduct with which a defendant is charged." (citations omitted)).

A defendant whose conduct is at the "core" of the activities clearly covered by the statute's terms may only raise a vagueness defense if the statute is one that is likely to chill the exercise of

constitutionally protected conduct. See *Kolender v. Lawson*, 461 U.S. 352, 359 n.8 (1983) (holding that facial vagueness challenges are permissible where "a law reaches a substantial amount of constitutionally protected conduct" (citation omitted)); *Hoffman Estates v. Flip-side, Hoffman Estates, Inc*., 455 U.S. 489, 494-95 (1982) (noting that, if a statute "implicates no constitutionally protected conduct," a preenforcement challenge can succeed on vagueness grounds only if the statute is "impermissibly vague in all of its applications"); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 59-60 (1976) ("[I]f the statute's deterrent effect on legitimate expression" is "real and substantial," parties may challenge the statute "even though there is no uncertainty about the impact... on their own rights.").

PLAINTIFFS HAVE STATED A FIRST AND FOURTH AMENDMENT CLAIM

Plaintiffs have stated a claim that the Ordinance violates the First and Fourth Amendments by denying them the right to engage in the bearing, sale, purchase, transfer, gifting and practice use of a lawful product in Chicago. Those claims should not be dismissed.

PLAINTIFFS HAVE STATED A CLAIM THAT THE ORDINANCE IS VAGUE OR OVERLY BROAD

Plaintiffs claim that various provisions of the Ordinance is vague or overly broad, as they state in paragraph 24 of Count I. Plaintiffs give fair notice as to which provisions of the Ordinance are unconstitutionally vague or overly broad and identify how such provisions are vague or overly broad. The Defendants, with, assumably, a straight face, maintain that their total prohibition of, *inter alia*, any sale, purchase and gifting of firearms should not be subjected to any judicial scrutiny. They vague, standardless and overly broad Ordinance that total bans and outlaws any and all and all sales, purchases and giftings, etc. of firearms within Chicago is not a reasonable or permissible “regulation” but, rather, constitute prohibitions tantamount to the one declared unconstitutional just last year by the Supreme Court that violate the Second Amendment. See *Heller* and *McDonald*. All the City has done its to substitute such arbitrary total bans for its nonregisterabilty policy in order to achieve the same unconstitutional result – to render second amendment rights, as a practical matter, unexerciseable within Chicago. Thus, (1) there exits "case or controversy" jurisdiction; (2) the issues are essentially legal ones; (3) and the defendant will experience a constitutional deprivation and hardship if this Court does not resolve the issues;

The constitutional requirement that laws be reasonably precise as to the scope of prohibited conduct serves three distinct purposes: First, because the law assumes that man is free to steer between lawful and unlawful conduct, the law insists that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he or she may act accordingly.... Second,... [a] vague law impermissibly delegates basic policy matters to bureaucrats, policemen, judges, and juries for resolution on an *ad hoc* and subjective basis.... Third... where a vague law abuts upon sensitive areas of basic fundamental freedoms, it operates to inhibit the exercise of [those] freedoms. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (internal citations and quotation marks omitted). A law violates

due process of law if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926); see also *United States v. Pungitore et al.,* 910 F.2d 1084, 1104 (3rd Cir. 1990). Because Plaintiffs have stated a claim that provisions of the Ordinance are vague or overly broad, their claims should not be dismissed

COUNTS II AND III STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

Count II is a claim by Zieman for restitution for the seizure and destruction of his firearms under the City's former firearms ordinance and a broad constitutional challenge to the Ordinance and its now-repealed predecessor. Count III is a class action that dos not merely "mirror" Count II, but properly sets forth Zieman claim as a class representative by referring to common allegations contained in a prior count to the extent practical pursuant to Fed. R. Civ. P. 10(b)**.** See *Wessel, supra,* Both Counts II and III state a claim, however, and should not be dismissed.

Zieman's claim for restitution and that of the class are plausible because he pleads that his firearms were seized and destroyed pursuant to the City's prior firearms ordinance. Contrary to Defendants' assertions, the Supreme Court held its prior firearms ordinance unconstitutional. Defendants attempts to "spilt hairs" by arguing that the *McDonald*, "did not invalidate the City's ordinance; instead, it remanded the matter for further proceedings". However, in substance, it is obvious to all that, in order to avoid an inevitable result - a *feta compli*, the inevitable formal invalidation of their infirm "Predecessor Ordinance" the City seeing "the handwriting on the wall" folded, repealed its first ban and enacted the current suppressive Ordinance resulting *McDonald's* dismissal as moot.

Count III, which plausibly seeks to certify a class would not "fail" since it is brought within less than one year of the *McDonald* decisions declaring Chicago's ban unconstitutional and thus within the § 1983 and applicable Illinois statutes of limitations. Because the City's prior firearms ordinance was unconstitutional at *all* times prior to its repeal -- and thus was invalid when Zieman's was convicted and his firearms were seized and destroyed – he (and the class) can maintain a claim for restitution for seizure and destruction of his firearms based on the invalidity of the ordinance. This claims contained in Counts II and III should not be dismissed. The other claim contained within Counts II and III -- Zieman's detailed challenge to the Ordinance – does not "fail". He asks this Court to declare invalid the Ordinance and articulates how it has injured him. As the City concedes, Zieman states that he cannot purchase new firearms because the City prohibits gun stores within its borders. Compl. ¶ 33. This alone is sufficient to demonstrate a constitutional deprivation necessary to confer standing to challenge the ban on gun stores. Zieman, a Chicago resident, does not need to plead that he is "without the ability to purchase firearms outside of the City". His claim, and that of the purported class, must therefore be allowed to proceed.

PLAINTIFFS' STATE LAW CLAIMS SHOULD NOT BE DISMISSED

Each of Plaintiffs' three state law claims are sufficiently pled. SAA (Franzese) asks this Court to issue a mandamus directing the City to issue it a license to operate as a gun store. This claim has merit because a mandamus can issue when the Court declares the City's total ban on gun stores unconstitutional. Defendants argument that an Ordinance is somehow constitutional is unsupported by any citation to authority and is irrational. SAA most certainly has a Second Amendment rights to bring such a claim since the Second Amendment guarantees, expressly or impliedly, the right to sell, purchase, transfer, gift or practice the use of their firearm in the City under its overly burdensome, if not the schizophrenic, ordinance the residents who wish to be licensed to own a firearm must first practice and be trained in their use (necessarily outside the City).

In *Freitag v. Carter*, 489 F.2d 1377 (7th Cir. 1973) (class action § 1983 action and judicial remedy of mandamus both readily available for an improper denial of a license and to challenge City of Chicago ordinance and denial of due process by, as here, refusal to issue a license.) A governmental licensing body that judges the fitness of an applicant must afford that applicant adequate notice and a hearing. See, e.g., *Willer v. Committee on Character and Fitness,* 373 U.S. 96 (1963); *Schware v. Board of Bar Examiners*, 353 U.S. 232 (1957); *Goldsmith v. United States Board of Tax Appeals*, 270 U.S. 117 (1926). In *Goldsmith*, the Court held that the Board, although vested with the discretion to deny Goldsmith admission, could exercise that discretion only 'after fair investigation, with such a notice, hearing and opportunity to answer for the applicant as would constitute due process.' 270 U.S. at 123. Zieman's second state-law claim, brought individually and on behalf of a class, and even if they are the state-law equivalent of Counts II and III. Compl. ¶ 43, it does not "fail".

THE ILLINOIS CONSTITUTION HAS LONG GUARANTEED A RIGHT TO KEEP AND BEAR ARMS

Since at least 1870, the people of Illinois have chosen to add a right to arms to their state constitution, to re-adopt the right to arms in their 1970 Constitution, or to strengthen an existing right. While some aspects of Article I, § 22 are nearly as old as the State itself, effective 1970, the soverign people of Illinois unambiguous guaranteed that, "the right of the people to keep and bear arms shall not be infringed." The people secured this right for themselves by their affirmative vote.

A right is enshrined in the constitution for two major reasons: the right is considered fundamental and it must be jealously protected from infringement**.** "[A] fundamental right is one explicitly or implicitly guaranteed by the Constitution." Because the Second Amendment rights asserted in this case are plausibly and implicitly guaranteed by the Constitution, a strict scrutiny test must be used. Under strict scrutiny, a statute or regulation "will be deemed constitutional only if it is narrowly drawn to further a compelling state interest." *Jaynes v. Commonwealth*, 276 Va. 443, 666 S.E.2d 303, 313 (2008), *cert. denied*, 129 S.Ct. 1670 (2009).

This court's interpretation of the Illinois Constitution need not be limited by the protections for

the right to keep and bear arms conveyed by the Second Amendment as interpreted by the U.S. Supreme Court. *See, e.g., District of Columbia v. Heller*, __ U.S.__, 128 S. Ct. 2783, 171 L.Ed.2d 637 (2008). Rights guaranteed by the federal constitution are a floor, not a ceiling; a state may choose to provide greater protection to its citizens. This was dramatically illustrated by *Opperman v. South Dakota,* 428 U.S. 364 (1976). State courts have a tradition of using their independence to provide greater protection for individual rights. In *Pruneyard Shopping Center v. Robins*, 447 U.S. 74 (1980), the Supreme Court agreed that a state's constitution may guarantee broader rights than the federal Constitution. This has occurred with the right to keep and bear arms pre-*Heller*, e.g., *State ex rel. City of Princeton v. Buckner,* 180 W.Va. 457, 377 S.E.2d 139 (1988) (striking down gun carrying law as too restrictive). The restrictions under review sweep too broadly. They can be more narrowly tailored. For example, persons with Illinois Firearm Owner's Identification Cards - "FOID" Cards – could and should be exempted. They have already been scrutinized for their trustworthiness and ability to own a firearm. *See Cf. Students for Concealed Carry v. Regents of the University of Colorado*, No. 09CA1230, 2010 WL 1492308 (Colo. App. April 15, 2010).

Once again, decisions from the several states provide guidance. Finding an arms law to sweep too broadly is not an uncommon occurrence. Accordingly, in *State v. Blocker*, 291 Or. 255, 261, 630 P.2d 824, 827 (1981), the Supreme Court of Oregon held:

> An "overbroad" law, as that term has been developed by the United States Supreme Court, is not vague, or need not be. Its vice is not failure to communicate. Its vice may be clarity. For a law is overbroad to the extent that it announces a prohibition that reaches conduct which may not be prohibited. A legislature can make as law as "broad" and inclusive as it chooses unless it reaches into constitutionally protected ground. The clearer an "overbroad" statute is, the harder it is to confine it by interpretation within its constitutionally permissible reach. [An overbroad statute] impinges on some constitutionally protected right other than fair notice or "due process." Unlike "vagueness," the vice of "overbreadth" is not necessarily limited to penal laws, and to the extent that an overbroad law forbids what may not constitutionally be forbidden, it is invalid as such without regard to the facts in the individual case.

The *Blocker* court found the arms law to be overbroad because it reached beyond permissible limits to impinge on a constitutionally protected right - the right to bear arms. *Id.* at 261-62. The Supreme Court of Appeals of West Virginia found that the statute at issue swept so broadly as to infringe a right that it cannot permissibly reach, in this case, the constitutional right of a person to keep and bear arms in defense of self, family, home and state. Accordingly, ... the City's Ordinances' proscription against carrying a firearm outside the home. See *Buckner*, 180 W.Va. at 462, 377 S.E.2d at 144. Its severability clause is useless.[4]

---

[4] If this Court could simply parse it to save what it could by surgical excision, this might be possible. However, a this court may not completely reconstruct a local ordinance, and it should conclude that nothing short of

Holding a firearms ordinance unconstitutionally overbroad, the Supreme Court of Colorado held in *City of Lakewood v. Pillow*, 180 Colo. 20, 23, 501 P.2d 744, 745 (1972):

> A governmental purpose to control or prevent certain activities, which may be constitutionally subject to state or municipal regulation under the police power, may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.... Even though the governmental purpose may be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.

In determining the scope of Illinois's constitutional guarantee of the right to keep and bear arms, this court should rule that the regulation at issue is unconstitutionally overbroad, and not narrowly drawn to further the compelling state interest. As shown next, the same result is dictated by the Second Amendment as incorporated against the states. Nonetheless, this court may want to rest its decision exclusively on the state constitution, and could also take this opportunity to make clear that Illinois' citizens enjoy greater protection for individual liberties than they enjoy under the federal Constitution.

Plaintiffs state law declaratory judgment does not fail, because, as shown above, have not demonstrated an injury sufficient to confer standing and a "case in controversy".

PLAINTIFFS' CHALLENGE TO THE "PREDECESSOR" ORDINANCE ARE NOT "MOOT"

Although Plaintiffs ask the Court in each claim for relief to invalidate the City's prior firearms ordinance, that claim is moot because the ordinance has been repealed. Defendants miss the point. Plaintiffs were denied rights existence and enforcement of its unconstitutional "Predecessor Ordinance" when Zieman, a ex-Marine, City worker, and law-abiding FOID Card holder, was convicted and his firearms were confiscated under the City's unconstitutional ordinance and Franzese' applications for a business license applications were, in point of time, not only denied by the Defendants under the "Predecessor Ordinance" - without a hearing – but he was informed that under the new Ordinance the Defendants told said Plaintiff that he would never get a license. Public officials can be held individually liable for actions taken while holding and misusing of their public office. *See, e.g., United States v. Warner,* 498 F.3d 666, 696 (7th Cir. 2007) (affirming conviction of former Illinois governor based on his misconduct committed as Illinois Secretary of State and Governor); *accord United States v. Emond*, 935 F.2d 1511, 1512 (7th Cir. 1991)

DEFENDANTS DALEY, WEIS, DEL VALLE, AND GEORGES SHOULD NOT BE DISMISSED

*Defendants' Official Capacities:* The Court should not dismiss Daley, Wies, Del Valle, and Georges as defendants to the extent they are sued in their official capacity. "Official-capacity suits . . .

---

rewriting could save anything. *Zbaraz v. Hartigan,* 763 F.2d 1532, 1545 (7th Cir. 1985) Even the broadest severability clause does not permit a federal court to rewrite as opposed to excise. Rewriting in this case is work to be left to the City Council. *Cf. Stanton v. Stanton,* 421 U.S. 7 (1975); *Califano v. Westcott,* 443 U.S. 76 (1979)

'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" None of cases cited by Defendants deal with situation where, as here, a Plaintiff seeks *inter alia*, the performance of ministerial acts the issuance of business licenses. The claims against Del Valle, and Georges in their official capacity are duplicative of claims against Del Valle is obligated by law to issue and Daley is obligated by law – in their official capacities - to sign and issue business licenses as ministerial acts, and Daley, Wies, Del Valle and Georges should to be barred in their individual and official from enforcing the Ordinances in question, one of which – the ban - they deliberately continued to enforce against SAA well after they knew of and publically ignored and defied the Supreme Court's ruling in *McDonald* that had held in unconstitutional.

*Defendants' Individual Capacities:* For the reasons stated above and in their Complaint, Plaintiffs' individual claims against Mayor Daley, Wies, Del Valle, and Georges are viable. As Defendants concede, a defendant is "personally responsible for the deprivation of a constitutional right" under §1983. Under the facts pled findings may be had that Defendants caused deprivations at issue. Therefore, Plaintiffs' individual claims against Mayor Daley, Wies, Del Valle, and Georges should not be dismissed. Mayor Daley's defiant and contemptuous statement so disrespectful of the Supreme Court's McDonald set forth in the Complaint constitute an executive action that inevitably led to the deprivation Plaintiffs of a constitutional rights.

CONCLUSION

Based on the foregoing argument and authorities, this Court deny Defendants' Motion to Dismiss their First Amended Complaint and grant them such other and further relief as it may deem just and proper in the premises.

Respectfully submitted,

R. JOSEPH FRANZESE d/b/a/ SECOND AMENDMENT ARMS, ROBERT M. ZIEMAN, SR., ICARRY and SHAUN A. KRANISH, Plaintiffs,

By */s/ Walter P. Maksym, Jr.*
Walter P. Maksym, Jr., their attorney

Walter P. Maksym, Jr.
Attorney at Law
2056 N. Lincoln Avenue
Chicago, IL 60614-4525
Telephone: (312) 218-4475
e-mail: wmaksym@gmail.com