IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECOND AMENDMENT ARMS, (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a SECOND AMENDMENT ARMS, ROBERT M. ZIEMAN, SR., ICARRY, an unincorporated Association a (and d/b/a of Shaun Kranish), SHAUN KRANISH, individually and d/b/a ICARRY, and TONY KOLE, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, a municipal corporation, RAHM EMANUEL, in his official capacity as Mayor of the City of Chicago, GARRY McCARTHY, Superintendent of Police of the City of Chicago, and SUSANA MENDOZA, City Clerk of the City of Chicago, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Case No: 1:10-cv-4257 <br><br> Hon. Robert M. Dow, Jr. U.S. District Court Judge <br><br> Hon. Sheila M. Finnegan U.S. Magistrate Judge |

SECOND AMENDED COMPLAINT

NOW COME Plaintiffs, R. JOSEPH FRANZESE, d/b/a/ SECOND AMENDMENT ARMS, ROBERT M. ZIEMAN, SR., SHAUN A. KRANISH, d/b/a ICARRY, and TONY KOLE, by and through their undersigned counsel, WALTER MAKSYM, complaining of and seeking relief from Defendants, CITY OF CHICAGO, RAHM EMANUEL, GARRY McCARTHY, and SUSANA MENDOZA, and state as follows:

THE PARTIES

1. Plaintiff R. JOSEPH FRANZESE, d/b/a/ SECOND AMENDMENT ARMS ("FRANZESE" or "SECOND AMENDMENT ARMS"), is a citizen of the United States who resides and does business in Lake Villa, Illinois, as a licensed federal firearms dealer ("FFL").

2. Plaintiff ROBERT M. ZIEMAN, SR. ("ZIEMAN") is a citizen of the United States, and a life-long resident and long-time

employee of the City of Chicago. As an employee, he is legally required by its ordinances to reside in the City. He is an honorably discharged veteran of the United States Marine Corps, who is extensively trained and experienced in the safety and use of various firearms, including but not limited to side-arms, and has also been trained and designated by the Marine Corps in special weapons safety and usage.

3. Plaintiff SHAUN A. KRANISH, d/b/a ICARRY ("KRANISH" or "ICARRY"), is a citizen of the United States who resides and does business in Rockford, Illinois. ICARRY is an unincorporated Second Amendment rights education, advocacy and membership association, and is a d/b/a/ of KRANISH who is its founder and chief executive manager, and a member thereof.

4. Plaintiff TONY KOLE ("KOLE") is a citizen of the United States who resides in the City of Chicago. Plaintiff KOLE currently owns and possesses several firearms at his Chicago residence, pursuant to a Chicago firearms permit ("CFP") and firearm registration certificates ("FRC") for which has paid the CITY required fees. He is the President, Manager, and sole owner of Ghost Industries LLC, which is a federally licensed firearms dealer with its principal place of business in Norridge, Illinois.

5. Defendant CITY OF CHICAGO ("CHICAGO" or the "CITY") is a municipal corporation organized under the laws of the State of Illinois.

6. Defendant RAHM EMANUEL ("MAYOR EMANUEL"/"MAYOR) is the Mayor of CHICAGO and as such is responsible for executing, and administering its laws, customs, practices, and policies. In that capacity, he also presently enforces the laws, customs, practices and policies complained of in this action. He is sued in official capacity as Mayor.

2

7.    Defendant GARRY McCARTHY (the "SUPERINTENDENT") is the Superintendent of Police of CHICAGO, and as such is responsible for executing, and administering its laws, customs, practices, and policies. In that capacity, he also presently enforces the laws, customs, practices and policies complained of in this action. Among other duties, he is responsible for determining what constitutes an "unsafe handgun", and promulgating the roster of "unsafe handguns", administering the firearms registration and permitting system in the CITY, and enforcing the ordinances of the CITY relating to possession, sale, transfer, transportation, and carrying of firearms. He is sued in his official capacity as Superintendent.

8.    Defendant SUSANA MENDOZA (the "CITY CLERK") is the CITY CLERK of CHICAGO, and as such is responsible for executing, and administering its laws, customs, practices, and policies. In that capacity, she is responsible for the issuance of business licenses and enforcing the laws, customs, practices and policies complained of in this action in connection therewith. She is sued in her official capacity as CITY CLERK.

<u>JURISDICTION</u>

9.    This Court has subject matter jurisdiction of Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. §§ 1331, 1343, 2201, 2202, 42 U.S.C. § 1983, 15 U.S.C. § 1, and 15 U.S.C. § 152 in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of Illinois and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress. Pendent jurisdiction exists pursuant to 28 U.S.C. § 1367.

3

## VENUE

10.    Venue lies and is proper in the Eastern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(a) because all of the Defendants reside and do business within this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in and about CHICAGO, and within this District and Division.

## NATURE OF THE ACTION

11.    Plaintiffs bring their claims against the Defendants for injunctive, declaratory, damages and other relief pursuant to 42 U.S.C. § 1983, 28 U.S.C. §§ 2201 and 2202, the Second and Fourteenth Amendments to the United States Constitution, and Article VI, Clause 2 of the United States Constitution.

## FACTS COMMON TO All COUNTS

12.    On or about March 19, 1982, the CITY enacted an ordinance that banned possession of handguns within CHICAGO, and imposed restrictive requirements on firearms ownership, possession, and use within the City ("OLD GUN BAN ORDINANCE"), a copy of which is attached as "Exhibit A".

13.    On June 28, 2010, the United States Supreme Court decided the landmark case of *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010). In *McDonald*, the plaintiffs challenged the constitutionality under the Second Amendment of the CITY'S ban on handgun possession. The question presented by *McDonald* was whether the Second Amendment is incorporated by the Fourteenth Amendment, and thus applies to states and municipalities such as CHICAGO. The Supreme Court held that the protections of the Second Amendment are fundamental rights, and that those protections are incorporated and do apply to states and municipalities by virtue of the Fourteenth Amendment.

14.    Recognizing that its handgun ban could not withstand Second Amendment scrutiny under *McDonald* and *District of*

4

*Columbia v. Heller*, 554 U.S. 570 (2008), the Chicago City Council passed a revised ordinance on July 2, 2010 (the "NEW GUN BAN ORDINANCE"). Despite the Seventh Circuit's rulings in *National Rifle Association of America, Inc., et. al., v. City of Chicago, et. al.,* ___ F.3d ___ (Slip. Opin. June 2, 2011) *("N.R.A")* and *Ezell v. City of Chicago*, Appeal No. 10-3525, ___ F.3d ___ (Slip Opin. July 6, 2011)(*"Ezell"*) the Defendants have in, deliberate, derisive defiance thereof, continued to persist in their administration and enforcement of the NEW GUN BAN ORDINANCE, a copy of which is attached as "Exhibit B".

15. The NEW GUN BAN ORDINANCE removed the complete ban on possession of handguns, but limited possession to one operable firearm, and only in the home. It also imposed or continued numerous restrictions that severely burden or eliminate the Second Amendment rights of law-abiding CHICAGO residents to acquire, own, possess, transport, and transfer firearms and associated lawful products, such as laser sight accessories, within the City.

16. The NEW GUN BAN ORDINANCE became effective on July 12, 2010.

17. The NEW GUN BAN ORDINANCE prohibits the operation of any firearm stores or dealers in the CITY. MCC § 4-144-010 requires that any person who engages in the business of selling certain weapons, including any "deadly weapon which can be carried or concealed on the person," which would include any ordinary firearm, must obtain a "weapons dealer license." Exhibit B at 3. Under the prior version of § 4-144-010, a person who obtained a weapons dealer license could sell firearms. Title 4, Businesses, Occupations and Consumer Protection, Chapter 4-144 Weapons (the "Weapons Dealer Ordinance"), a copy of which is attached hereto as "Exhibit C". Under the revised § 4-144-010, it is unlawful for persons licensed as weapons dealers to

"engage in the business of selling, or to sell, give away or otherwise transfer, any firearm...." Exhibit B at 3. Thus, it is now impossible to sell firearms at wholesale or retail in CHICAGO.

18. Furthermore, § 8-20-100 provides that "no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm." *See* Exhibit B, generally, for text of §§ 8-10-010 *et seq.* There are exceptions for transfers to police officers, which much take place at police department facilities, and for officers to sell firearms to each other. § 8-20-100(e); § 2-84-075. § 8-20-100 operates as a ban on gun stores, but also operates to ban all sales, acquisitions, and transfers of firearms between law-abiding citizens outside of commercial channels as well.

19. Taken together, these provisions operate as a complete ban on gun stores within the CITY; as a complete ban on firearms dealers operating within the CITY; and as a complete ban on the sale, gift, purchase, acquisition, or other transfer of any firearm by any person within the city (except to police or by inheritance). In short, firearms cannot legally be sold or obtained within CHICAGO.

20. It is not apparent that CHICAGO'S zoning ordinance specifically allows or forbids gun shops, except that "the sale of firearms or ammunition" is forbidden as a "home occupation" pursuant to § 17-9-0202-C (11)(q). On information and belief, CHICAGO will not issue a zoning permit for any use it deems may violate the penal ordinances of the CITY.

21. § 8-20-020 of the NEW GUN BAN ORDINANCE states that "[i]t is unlawful for any person to carry or possess a handgun, except within the person's home." There are a number of extremely narrow exceptions, mostly for government employees and security personnel. There is no provision for the ordinary, law-

6

abiding citizen to possess, carry, or transport a functioning handgun any place outside the home. Subject to basically the same exceptions, long guns may only be possessed in the home or in the person's "fixed place of business." § 8-20-030.

22. In addition, § 8-20-140(a) makes it "unlawful for any person to carry or possess a firearm without a firearm registration certificate." The application for a registration certificate must state "the address at which the firearm will be located." § 8-20-140(c)(5). Pursuant to § 8-20-180(c), a "registration certificate shall only be valid for the address on the registration certificate. Except in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate."

23. The only exception to § 8-20-020, § 8-20-030 (except for hunting inside the CITY with long guns) and § 8-20-180(c) that applies to the ordinary citizen is for "a person while engaged in the lawful transportation of a firearm." *See* § 8-20-020(b)(17). "Lawful transportation" is defined in § 8-20-010 as transportation by a person 1) in compliance with § 8-20-090 (which references a federal statute, 18 U.S.C. §926A), or 2) "who has a valid FOID card, a CFP and firearm registration certificate, if applicable, and the firearm is (1) broken down in a non-functioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case.

24. 18 U.S.C. §926A, which is referenced in § 8-20-090, allows any person, who is not prohibited by federal law from transporting, shipping or receiving a firearm, to transport a firearm from any place that he may lawfully possess and carry it, to any other place he may lawfully possess and carry it, provided it is unloaded and not readily accessible as specifically described in that statute.

7

25. § 8-20-090 adds two additional requirements to the federal statute: 1) that the person must be "engaged in interstate travel"; and 2) that there is a presumption that "any person within the city for more than 24 hours is not engaged in interstate travel...."

26. "Firearm case" is defined in § 8-20-010 as "any firearm case, carrying box, shipping box or other similar container that is designed for the safe transportation of the firearm." It is unclear from this definition whether the container must be hard-sided or can be soft-sided; whether the container must be locked, or be capable of being locked, or whether an unlocked case is sufficient; whether the case must be specifically designed only for transportation of firearms, or whether any secure box or container that is adequate for transportation of firearms will suffice; and whether "safe" means safe for the person transporting it, safe insofar as the firearm cannot be quickly accessed, or safe in the sense of protecting the firearm from damage. Many cases specifically designed for firearms are designed to carry an intact, assembled firearm rather than a one that is "broken down" into multiple parts.

27. Many firearms cannot be "broken down in a nonfunctioning state" without specialized tools, skills, and/or knowledge. The cylinders for most revolvers, for example, cannot be removed and replaced without the services of a gunsmith or of a highly skilled individual using tools. Removal of slides on semi-automatic handguns may require specialized tools, and/or considerable knowledge, hand-strength or dexterity, depending on make and model. Some rifles can be easily broken down (removal of bolt on some bolt actions) but others cannot (*e.g.,* most lever actions). The same is true of shotguns.

8

28.   Thus, depending on the firearm and the skills, tools, knowledge, and strength possessed by a firearm owner, it may be literally impossible for the individual to "break down" the firearm into a nonfunctioning state before transporting it, and in most cases even more difficult to properly reassemble it.

29.   § 8-20-040 mandates that "every person who keeps or possesses a firearm in his home shall keep no more than one firearm in his home assembled and operable." Each person in the home with a valid CFP may keep one assembled and operable firearm.  All other firearms "shall be broken down in a nonfunctioning state or shall have a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render the firearm temporarily inoperable."

30.   As described above, § 8-20-020 and § 8-20-030, with extremely limited exceptions, ban possession of handguns and long guns outside the home.  § 8-20-010 defines "home" restrictively, to include only the inside of a person's dwelling unit, and to exclude "(i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas; or (iii) any dormitory, hotel, or group living, as that term is defined in § 17-17-0102-A."

31.   Pursuant to § 8-20-170, "no registration certificate shall be approved for any of the following types of firearms... (b)an unsafe handgun;".  § 8-20-010 declares that "unsafe handgun" means "any handgun that is listed on the superintendent's roster of unsafe handguns because, in the determination of the superintendent, the handgun is unsafe due to its size, ability to be concealed, detectability, quality of manufacturing, quality of materials, ballistic accuracy, weight, reliability, caliber, or other factors which makes [sic] the design or operation of the handgun otherwise inappropriate for

9

lawful use." The SUPERINTENDENT has promulgated a roster pursuant to this section, a copy of which is attached as Exhibit D.

32. § 8-20-060(a) makes it "unlawful for any person to carry, possess, display for sale, or otherwise transfer any laser sight accessory...." Laser sight accessory is defined by § 8-20-010 to mean "a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm." Laser sight accessories are declared contraband, and "shall be seized by and forfeited to the city" pursuant to § 8-20-060(c). The owner of record of any vehicle containing a laser sight accessory, is subject to a penalty of $1,000, and the vehicle is subject to seizure and impoundment. § 8-20-070.

33. On or about June 30, 2010, and July 2, 2010, SECOND AMENDMENT ARMS caused to be filed and submitted two applications with the CITY CLERK'S office in accordance with and pursuant the Weapons Dealer Ordinance and paid the required fees therefore. The applications sought to obtain weapons dealer business licenses to permit FRANZESE, as a licensed federal firearms dealer, to open and operate two gun shops at two separate locations within CHICAGO. The CITY accepted and retained the fees paid for said applications, but rejected and refused to process or grant them because of the prohibition on gun shops in the NEW GUN BAN ORDINANCE. FRANZESE has suffered damages and lost profits as a result and still desires, plans and intends to submit additional applications to open gun shops at locations within CHICAGO, and would open such shops, except that he, like all other ordinary citizens, is barred from selling firearms within the CITY by the provisions of the NEW GUN BAN ORDINANCE.

34. Even if Plaintiff FRANZESE were permitted by the terms of the Weapons Dealer Ordinance to open a gun shop in CHICAGO, establishment of such a shop would be obstructed or made

impossible by the provisions of §§ 8-20-020, 8-20-30, 8-20-180(c), and the definition of "lawful transportation" of a firearm in § 8-20-010, which make it illegal to possess a firearm outside the home (or fixed place of business, in the case of long guns), limit possession of firearms to the address listed on the registration certificate, and contain a restrictive and vague definition of "lawful transportation." Such provisions, as written, would prohibit FRANZESE from possessing handguns, at least, at his gun shop. They would also prevent prospective customers from having firearms in their possession at his gun shop, and in many cases would make it difficult and perhaps impossible for customers who wish to purchase or sell firearms to FRANZESE to transport firearms to and from the shop, due to the "lawful transportation" provision requiring guns to be transported in a "broken down" condition.

35. Plaintiffs ZIEMAN and KOLE desire to purchase firearms within the CITY where they are residents, but are prohibited from doing so by the ban on the selling of firearms by weapons dealers imposed by § 4-144-010, and the complete ban on selling, acquiring, or transferring firearms within the CITY imposed by § 8-20-100.

36. Were firearms stores and transfers legal in CHICAGO, plaintiffs ZIEMAN and KOLE would travel to and from a firearms store in the CITY to purchase a firearm, and thus possess firearms outside the home, either at the store, on the way to or from the store or gun ranges, etc., or both, were they not prohibited from doing so by the provisions of §§ 8-20-020, 8-20-30, 8-20-180(c), and/or the definition of "lawful transportation" of a firearm in § 8-20-010.

37. Plaintiff ICARRY regularly gifts handguns to qualified, law abiding Illinois citizens and desires and plans to gift a handgun to Mr. McDonald in CHICAGO to honor,

commemorate and acknowledge his commitment, efforts and stand for fundamental Second Amendment rights that led to the U.S. Supreme Court landmark ruling in *McDonald*. ICARRY regularly gifts handguns to other qualified, law-abiding citizens, especially, minorities, the poor, infirm, disabled and elderly who are often the most vulnerable targets of urban crime, but cannot afford or have difficulty obtaining handguns for the protect their homes, person, family and property. Plaintiff KRANISH d/b/a ICARRY fears prosecution under the NEW GUN BAN ORDINANCE by the Defendants, should they undertake such conduct in CHICAGO or with respect to its residents, particularly, but not limited to, prosecution under § 8-20-100.

38. Plaintiff KOLE wishes to maintain more than one operable firearm in his CHICAGO home for purposes of self-defense, and would do so were it not for the provisions of § 8-20-040. Plaintiff KOLE lives in a four room apartment that has two entrances and windows in every room. An intruder could therefore attack Plaintiff KOLE in his home without KOLE having access to an operable firearm, thereby depriving him of his Second Amendment right to defend himself with a firearm within the home.

39. Plaintiff KOLE desires to exercise his right to use a firearm to defend himself on property and structures that are on the lot on which is apartment is situated, including stairs, porches, back, side, or front yard space, and/or common areas. He would do so except that he is prohibited from possessing an operable firearm for purposes of defense in those areas by §§ 8-20-10, 8-20-020, and 8-20-030.

40. Plaintiff KOLE rents a garage on private property approximately a block from his apartment. Like many Chicagoans, he does not live in a dwelling that has an attached garage. He has spent many hundreds of hours working on his vehicle or the

12

vehicles of friends within that garage. Most of the time, weather conditions require that he work with the garage door open, thereby exposing to view valuable tools, which are a popular item for thieves. For this reason, Plaintiff KOLE believes that he may be targeted for robbery while within his rented garage. His garage has been burglarized and a 50 gallon air compressor stolen. Further, a home for troubled teenage girls is located on the same block that attracts gangs of male youths, who have threatened him with bodily harm on one occasion. Plaintiff KOLE wishes to be able to legally possess a firearm at his private rented garage for purposes of defense, and would do so were such conduct not made illegal by §§ 8-20-10, 8-20-020, and 8-20-030, prohibiting possession outside the home.

41. As part of his proposed gun shop, FRANZESE intends to possess and offer for sale in CHICAGO handguns that are listed on the Superintendent's roster of unsafe handguns, and laser sighting devices, but is prohibited from doing so by §§ 8-20-60, 8-20-170, the definitions of "unsafe handgun" and "laser sighting device" in § 8-20-010, and the arbitrary inclusion of certain handguns on the roster.

42. Plaintiffs ZIEMAN and KOLE desire to purchase within CHICAGO a laser sighting device, either separately or as an integral part of a firearm, and would do so but for the prohibitions in § 8-20-060.

43. Plaintiffs ZIEMAN and KOLE desire to purchase one or more firearms from the so-called "unsafe gun roster," and would do so absent the prohibitions imposed by § 8-20-170, the definition of "unsafe gun" in § 8-20-010, and the inclusion of such firearms on the roster.

44. Plaintiffs have a fundamental constitutional right under the Second Amendment to the United States Constitution to

13

keep and bear arms, and Defendants have infringed on those rights, or burdened or prevented the exercise of those rights, under color of the CITY'S laws, ordinances, regulations, customs and usages, by enacting, enforcing and threatening to enforce the ordinance provisions described above. Said ordinance provisions, and the enforcement or threatened enforcement of them, are a proximate cause of injury to Plaintiffs, and have caused and will continue to cause Plaintiffs to suffer irreparable harm.

COUNT I
BAN ON GUN STORES
<u>(U.S. CONST. AMENDS. II & XIV)</u>

45. The allegations contained in paragraphs 1 through 44 are realleged and incorporated by reference herein.

46. § 4-144-010 of the Municipal Code of Chicago requires any person who engages in the business of selling any "deadly weapon which can be carried or concealed on the person," which would include any ordinary firearm, to obtain a weapons dealer license. At the same time, that section forbids any person holding a weapons dealer license to "engage in the business of selling, or to sell, give away or otherwise transfer, any firearm...." § 4-144-010 therefore prohibits all commercial sales of firearms in CHICAGO.

47. § 4-144-010 unduly burdens, impedes, and infringes on the constitutional right of the people, including Plaintiffs FRANZESE, ZIEMAN, and KOLE, to keep and bear arms under the Second and Fourteenth Amendments, by prohibiting Plaintiffs from offering for sale, selling, purchasing, and otherwise acquiring and possessing firearms ordinarily possessed by law abiding citizens within the CITY. That section is therefore unconstitutional and void *ab initio*.

14

48. To the extent that the zoning ordinances of the CITY are construed to prohibit the reasonable availability of firearms through commercial firearms dealers, said zoning ordinances are also unconstitutional and void *ab initio*.

COUNT II
BAN ON TRANSFERS AND SALES
(U.S. CONST. AMENDS. II & XIV)

49. The allegations contained in paragraphs 1 through 44 are realleged and incorporated by reference herein.

50. § 8-20-100, which provides that "no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm," prevents Plaintiffs ZIEMAN and KOLE from acquiring firearms for lawful uses within the CITY, either commercially or in private transactions, and therefore unduly burdens, impedes, and infringes upon Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendments.

51. § 8-20-100 also prevents firearms dealers and gun shops from selling or transferring within the CITY any firearms ordinarily possessed by law abiding citizens, which is necessary for citizens to exercise their right to keep and bear arms, and therefore unduly burdens, impedes, and infringes upon the rights of Plaintiffs FRANZESE, ZIEMAN, and KOLE under the Second and Fourteenth Amendments.

52. § 8-20-100 also prevents the transfer of firearms by gift within the CITY, and therefore unduly burdens, impedes, and infringes the Second Amendment rights of plaintiff ICARRY to make what would otherwise be lawful transfers of firearms to residents of CHICAGO, and of the proposed recipients of those gifts to receive them.

53. Accordingly, § 8-20-100 is unconstitutional and void *ab initio*.

15

COUNT III
BAN ON POSSESSION OUTSIDE HOME
(U.S. CONST. ART. VI, CL. 2, AMENDS. II & XIV)

54.  The allegations contained in paragraphs 1 through 44 are realleged and incorporated by reference herein.

55.  §§ 8-20-10, 8-20-020, 8-20-030, and 8-20-180(c) make it unlawful for ordinary, law-abiding citizens to possess or carry a firearm outside the home or (in the case of long guns) fixed place of business, and further prohibit possession or carry at any place other than the address listed on the registration certificate. Because the Second Amendment guarantees the right of the people to bear arms as well as keep them, and such right to keep and bear arms extends outside the home for lawful purposes such as self-defense and maintenance of proficiency in the use of arms, §§ 8-20-020, 8-20-030, and 8-20-180(c) unduly burden, impede, and infringe upon the rights of Plaintiffs ZIEMAN and KOLE to keep and bear arms under the Second and Fourteenth Amendments.

56.  §§ 8-20-020, 8-20-030, and 8-20-180(c) also unduly burden, impede, and infringe upon the Second Amendment rights of Plaintiffs KRANISH and FRANZESE, as they do not contain any exceptions for lawful possession of a stock of firearms in a place of business for purposes of commercial sale and purchase of firearms, or for lawful possession by a non-resident who does not have a home within the CITY for purposes of making a gift or transfer of a firearm to a resident.

57.  The exception for "lawful transportation" pursuant to § 8-20-020(b)(17) and § 8-20-30, as defined in § 8-20-010, unduly burdens, impedes, and infringes upon the Second Amendment rights of Plaintiffs FRANZESE, ZIEMAN, KOLE, and KRANISH because:

16

a.    the requirement that the firearm be "broken down in a non-functioning state" will frequently be difficult or impossible to comply with, for many common makes and models of firearms;

b.    the definition of "firearm case" in § 8-20-010 is vague, not narrowly tailored, and unsupported by any sufficient compelling governmental interest.

c.    § 8-20-090 impermissibly engrafts upon the federal transportation exception set forth in 18 U.S.C. § 926A two additional requirements not contained in the federal law:  1) that the transportation be by a person "engaged in interstate travel"; and 2) that there is a presumption that "any person within the city for more than 24 hours is not engaged in interstate travel...." Those two additional requirements are contrary to 18 U.S.C. § 926A, and are therefore invalid under Article VI, Clause 2 (Supremacy Clause) of the Constitution of the United States.

58.    Accordingly, the definitions referenced in this Count in § 8-20-010, and the provisions of §§ 8-20-020, 8-20-020(b)(17), 8-20-030, 8-20-090 and 8-20-180(c), are unconstitutional and void *ab initio*.

COUNT IV
BANS ON MORE THAN ONE OPERABLE FIREARM
AND MORE THAN ONE FIREARM REGISTRATION PER MONTH
<u>(U.S. CONST. AMENDS. II & XIV)</u>

59.    The allegations contained in paragraphs 1 through 44 are realleged and incorporated by reference herein.

60.    Since it protects "the right of the people to keep and bear *arms*," the Second Amendment is not limited to possession of a single operable firearm, and there is no constitutionally sufficient compelling governmental interest in arbitrarily rationing the number of operable firearms a law-abiding citizen

17

may acquire or possess in his own home for defense or other lawful purposes or.

61. § 8-20-040, which provides that a CFP holder is arbitrarily limited to having only one operable firearm in the home, and § 8-20-160 that arbitrarily makes it unlawful to obtain more than one firearm registration certificate per person for a handgun during any 30-day period therefore unduly burden, impede, and infringe upon the Second Amendment rights of Plaintiffs ZIEMAN and KOLE as residents of CHICAGO.

COUNT V
BAN ON POSSESSION IN PARTS OF HOME AND CURTILAGE
(<u>U.S. CONST. AMENDS. II & XIV</u>)

62. The allegations contained in paragraphs 1 through 44 are realleged and incorporated by reference herein.

63. §§ 8-20-020 and 8-20-030, with extremely limited exceptions, ban possession of handguns and long guns outside the home. § 8-20-010 defines "home" to include only the inside of a person's dwelling unit, and to exclude, *inter alia*, curtilage, "(i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas...."

64. The Second Amendment guarantees the right of the people to bear arms as well as keep them, and such right to keep and bear arms extends both inside and outside the home for lawful purposes such as self-defense. Law abiding citizens have a Second Amendment right to keep, carry, or bear arms in their own garage, whether attached on the lot or rented nearby, and on their own property outside the walls of the dwelling unit, including stairs, porches, and back, side, or front yard space, and common areas, for such lawful purposes, regardless of whether those areas are considered inside or outside the home.

65.  The definition of "home" in § 8-20-010, read together with the provisions of §§ 8-20-020 and 8-20-030, therefore unduly burdens, impedes, and infringes upon the rights of Plaintiffs ZIEMAN and KOLE to keep and bear arms under the Second and Fourteenth Amendments, and is unconstitutional and void *ab initio*.

COUNT VI
BAN ON SALE AND POSSESSION OF ORDINARY HANDGUNS
(U.S. CONST. AMENDS. II & XIV)

66.  The allegations contained in paragraphs 1 through 44 are realleged and incorporated by reference herein.

67.  The United States Supreme Court in *Heller* held that the Second Amendment protects firearms that are "typically possessed by law-abiding citizens for lawful purposes...."

68.  § 8-20-170 provides that no registration certificate shall be approved for any "unsafe handgun," and § 8-20-010 defines "unsafe handgun" as listed by the Superintendent on a roster of "unsafe handguns."

69.  Many if not all of the handguns on the roster (Exhibit D) are firearms that are typically possessed by law-abiding citizens for lawful purposes, and are therefore protected by the Second Amendment from being banned by the CITY. The "criteria" in § 8-20-010 by which the Superintendent is supposed to compile the roster are also so vague, arbitrary, conflicting, irrational, and uncertain that they cannot conceivably be considered to be narrowly tailored and to survive heightened scrutiny under the Second Amendment.

70.  The roster includes firearms that Plaintiff FRANZESE wishes to offer for sale and to sell at his proposed gun stores, and that Plaintiffs ZIEMAN and KOLE wish to purchase. Accordingly, § 8-20-170, the criteria for defining "unsafe handgun" under § 8-20-010, and the roster as published unduly

burden, impede, and infringe upon the rights of Plaintiffs FRANZESE, ZIEMAN and KOLE to keep and bear arms under the Second and Fourteenth Amendments, and are unconstitutional and void *ab initio*.

COUNT VII
**BAN ON SALE AND POSSESSION OF LASER SIGHTING DEVICES**
<u>(U.S. CONST. AMENDS. II & XIV)</u>

71. The allegations contained in paragraphs 1 through 44 are realleged and incorporated by reference herein.

72. Laser sighting devices as defined in § 8-20-010 may either be "integrated into a firearm or capable of being attached to a firearm." Firearms equipped with laser sighting devices, either as part of the firearm itself, or added to a firearm, are "typically possessed by law-abiding citizens for lawful purposes," and are thus protected by the Second Amendment under *Heller.* Indeed, laser sighting devices are designed to facilitate the Second Amendment's core purpose of self-defense by increasing the practical accuracy of a firearm for defensive purposes, especially in low light conditions.

73. The ban in § 8-20-060(a) on carrying, possessing, displaying for sale, or otherwise transferring any laser sight unduly burdens, impedes, and infringes upon the Second Amendment rights of Plaintiff FRANZESE, who wishes to display for sale, sell, and transfer such laser sighting devices. § 8-20-060(a), and the seizure, forfeiture, penalty, and impoundment provisions of § 8-20-060(c) and § 8-20-070, unduly burden, impede, and infringe upon the Second Amendment rights of Plaintiffs ZIEMAN and KOLE, who wish to purchase and possess laser sighting devices.

74. Accordingly, §§ 8-20-060(a), 8-20-060(c) and 8-20-070 are unconstitutional and void *ab initio*.

COUNT VIII
PHYSICAL PRESENCE, SECURITY,
TRIGGER LOCK AND LOCK BOX REQUIREMENTS
(U.S. CONST. AMENDS. II & XIV)

75. The allegations contained in paragraphs 1 through 44 are realleged and incorporated by reference herein.

76. The requirements of §8-20-050(1) the ZIEMAN and KOLE be physically present in the home and the firearm is either being held by them or is physically secured on their body; (2) that a firearm be secured by a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render a firearm temporarily inoperable; or (3) the firearm and ammunition are placed in a securely locked box or container makes it impractical and impossible for them or other citizens to use arms for the core lawful purpose of self-defense.

77. Accordingly, §8-20-050 is unconstitutional and void *ab initio*.

COUNT IX
SECOND AMENDMENT ARMS' CLAIM —
UNLAWFUL BURDEN ON INTERSTATE COMMERCE —
(U.S. CONST. ART. I, § 8, CL. 3, ART. VI &
AMENDS. II & XIV — 18 U.S.C. Ch. 44 & 15 U.S.C. § 7901)

78. Plaintiff, SECOND AMENDMENT ARMS, complaining of all Defendants, reallege and incorporate paragraphs 1 through 44 of their, as though fully stated herein.

79. Defendant's NEW GUN BAN ORDINANCE, limitations and policies as aforesaid affect interstate commerce however, they do not pursue and are not rationally related to a legitimate governmental concern and create an undue and unreasonable burden on interstate commerce and their objectives could be achieved by less restrictive means and the regulatory burden imposed on the interstate commerce are not outweighed by a legitimate interest in enforcing its regulation of SECOND AMENDMENT ARMS' rights to do business under their federal firearms license and be

encouraged to participate in free market interstate commerce.

80. The NEW GUN BAN ORDINANCE further conflict, interfere with, and/or are preempted by federal law, i.e. Federal Firearms Act of 1938, as amended, [Ch. 850, 52 Stat. 1252], 18 U.S.C. Ch. 44, and 15 U.S.C. § 7901 and otherwise impedes the objectives of federal law and violates the Dormant Commerce Clause of the United States Constitution.

81. Pursuant to CITY'S unconstitutional NEW GUN BAN ORDINANCE SECOND AMENDMENT ARMS was and continues to be denied the right to act and do business as an FFL under federal law and sell and market firearms and related lawful products and accessories within the CITY.

82. SECOND AMENDMENT ARMS maintains that requiring compliance with the NEW GUN BAN ORDINANCE limitations, obligations, prohibitions, restrictions and requirements are a set of laws, customs, practices, and policies under color of state law that deprive SECOND AMENDMENT ARMS and others, their right to keep and bear arms, in violation of, *inter alia*, the First, Second, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, said federal law and 42 U.S.C. § 1983 thus causing SECOND AMENDMENT ARMS damages and lost profits and good will.

83. PSECOND AMENDMENT ARMS therefore claims lost profits, damages, declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

COUNT X
MONELL CLAIM
(42 U.S.C. § 1983)

84. Plaintiffs, complaining of all Defendants, reallege and incorporate paragraphs 1 through 44, as though fully stated herein.

85. On information and belief, the MAYOR, CITY CLERK and

22

SUPERINTENDENT were, by operation of law and as a matter of fact, the final decision makers with regard to actions and decisions that they made and/or participated in by them as hereinabove alleged.

86. That said acts and decisions administering and enforcing sais policies, practices, and customs directly and proximately caused the constitutional violations of Plaintiff's rights, deprivation of SECOND AMENDMENT ARMS' full use of the FFL, lost profits, loss of good will, and other injuries and damages as hereinabove alleged which are therefore directly chargeable to CITY.

PRAYER FOR RELIEF
(COUNTS I THROUGH X)

WHEREFORE, PLAINTIFFS PRAY that this Court:

A. enter a declaratory judgment that the sections, subsections and definitions identified in Counts I through X of this Complaint violate the Second Amendment, as applied to the CITY by the Fourteenth Amendment, on their face or as applied; are otherwise unconstitutional or invalid as described in each Count; and are therefore void *ab initio*, unenforceable, and of no effect;

B. issue a preliminary and permanent injunction enjoining the Defendants, their officers, agents, and employees, their successors, and all persons acting in concert with them, from enforcing, administering, or otherwise relying on said provisions, and from enacting or enforcing any zoning, land use, or similar provisions that would have the effect of prohibiting or unreasonably restricting transfer and commercial trade in firearms; and

C. award Plaintiffs damages including lost profits to SECOND AMENDMENT ARMS (FRANZESE);

23

D.  award Plaintiffs their costs and reasonable attorney's pursuant to 42 U.S.C. § 1988; and

E.  award Plaintiffs such other and further relief as may be just and proper in the premises.

COUNT XI
PLAINTIFFS' ANTI-TRUST
RESTRAINT OF TRADE CLAIM
(15 U.S.C. § 1, et. seq.)

87.  Plaintiffs, complaining of all Defendants, reallege and incorporate paragraphs 1 through 44, as though fully stated herein.

88.  At all times relevant 15 U.S.C. § 1, et. seq. (the "Sherman Antitrust Act") prohibited "[e]very …, combination or conspiracy in restraint of trade or commerce among the several States…"

89.  The Sherman Antitrust Act, is applicable not only to the activities of private industry and individuals, but also, under the facts set forth above, to those in government, such as the Defendants, who by unconstitutional economic regulation, as alleged herein, have and continue to unreasonably restrain competition and trade that affects interstate commerce.

90.  The foregoing acts and decisions constitute a scheme that through concerted action, combination, and/or conspiracy in restraint of trade and commerce among the several States by produced and imposing the NEW GUN BAN ORDINANCE on the Plaintiffs that constituted and continue to constitute ongoing violations of the Sherman Antitrust Act that directly interfered with and continue to interfere SECOND AMENDMENT ARMS' full lawful FFL rights and privileges and has caused and continues to cause lost profits, loss of good will, loss of freedom and liberty and other injuries and damages as hereinabove alleged and deny the other Plaintiffs herein to engage in trade and

24

commerce as above stated.

91. As a result of the foregoing, Plaintiffs have been and will continue to be damaged in violation of Sherman Antitrust Act, and are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional NEW GUN BAN ORDINANCE and related illegal customs, policies, practices, and the.

WHEREFORE, PLAINTIFFS PRAY that this Court enter a judgment:

A. enjoining and restraining *pendent lite* and permanently, Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the provisions of the NEW GUN BAN ORDINANCE;

B. awarding declaratory relief against Defendants consistent with the injunction and declaring, *inter alia*, that the NEW GUN BAN ORDINANCE does not constitute reasonable or permissible lawful regulation but, rather, is violative of the Sherman Antitrust Act, is against public policy thus illegal; void *ab initio*, and unenforceable.

C. granting Plaintiffs such other and further relief against Defendants as this Court may deem just and proper in the premises.

COUNT XII
PLAINTIFF KOLES'S INDIVIDUAL AND CLASS ACTION
CLAIM FOR RESTITUTION UNDER THE NEW GUN BAN ORDINANCE
(U.S. CONST., AMENDS. II & XIV, 42 U.S.C. § 1983)

92. Plaintiff KOLE, complaining of all of the Defendants, realleges and incorporates paragraphs 1 through 44 as if fully stated herein and states individually and as class representative:

25

93. By requiring law-abiding citizens and residents, including KOLE and his fellow class members, to register all firearms prior to their acquisition under the unconstitutional NEW GUN BAN ORDINANCE, Defendants under color of law have unlawfully deprived them monies by having and continuing to wrongfully charge and collect fees thereunder to obtain firearms permits and firearm registration certificates in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiff and the class are thus damaged and are therefore entitled to declaratory relief and restitution of all such fees.

94. The class on whose behalf this action is brought on behalf of KOLE individually, and all other citizens and residents and other entities who have paid fees to the CITY for to obtain firearms permits and firearm registration certificates under the NEW GUN BAN ORDINANCE since the date of its adoption.

95. KOLE, as class representative, will adequately represent the claims of each of these natural citizens.

96. A class action may be maintained in this action because:

(a) the class is so numerous that joinder of all members is impractical. While the exact number and identities of the class members are unknown at this time, KOLE believes the number to be substantial and that they can be determine through discovery and full disclosure and accounting of Defendants and their legal counsel's records, that are within their possession and control;

(b) there are questions of fact or law, including but not limited to the above issues of constitutionality of said ordinances that are common to the class. Such questions predominate over any questions affecting only individual class members.

(c) KOLE is best situated to, and will, fairly and

26

adequately represent the interest of the class and other members, who like them, have been intimidated, and may, like them, be fearful of retaliation so as to step forward to vindicate and protect their right.

(d) a class action is an appropriate method for the fair and efficient adjudication of the controversy and will serve the interests of judicial economy.

WHEREFORE, Plaintiff KOLE, individually and as class representative, prays for judgment against the Defendants:

A. certifying the class and declaring that the upon the CITY'S above-referenced ordinances be found, declared, adjudged, an decreed to be unconstitutional and null and void, *ab initio*, as a result of the United States Supreme Court's recent ruling in *McDonald* and the Seventh Circuit's decision in *Ezell*;

B. ordering Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to account for, refund and pay over any and all moneys and fees paid or collected by the CITY to obtain firearms permits and firearm registration certificates under the NEW GUN BAN ORDINANCE since its date of adoption to KOLE and the Class;

C. awarding KOLE, as class representative, and the class damages against said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, for their unlawful enforcement and application and prosecution of NEW GUN BAN ORDINANCE.

D. awarding the class representative and the class equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, declaring all said sums to be accounted for, disgorged and refunded to the class

27

representative and class with prejudgment interest thereon;

E. awarding the class representative and the class civil and equitable appropriate remedies including an equitable accounting;

F. awarding the class representative, fair and appropriate other compensation for serving as class representative, class costs, disbursements and reasonable attorneys fees; and

G. awarded the class representative and the class such other and further relief, as may be appropriate, necessary, just and proper in the premises.

COUNT XIII
PLAINTIFF ZIEMAN'S INDIVIDUAL AND CLASS
ACTION CLAIM FOR RESTITUTION UNDER
UNCONSTITUTIONAL OLD GUN BAN ORDINANCE
(U.S. CONST., AMENDS. II & XIV, 42 U.S.C. § 1983)

97. Plaintiff ZIEMAN, complaining of all Defendants, realleges and incorporates paragraphs 1 through 13 as though fully stated herein.

98. Pursuant to CHICAGO'S unconstitutional OLD GUN BAN ORDINANCE, ZIEMAN'S home was invaded and searched by the CHICAGO Police and numerous valuable handguns and rifles that he possessed therein and maintained in a safe as FOID Card holder were seized, confiscated and/or destroyed, and he was thereafter found guilty and fined for failing to register them thereunder.

99. ZIEMAN maintains that he is thus entitled to the return and restitution of his said firearms in kind or the fair market value thereof, vacation and expungment of his conviction for failure to register his weapons, a refund of any fines, court costs, expenses, legal fees incurred as a result thereof, damages, declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices along with his

28

reasonable attorneys fees and costs pursuant to 42 U.S.C. § 1988.

100. Plaintiff ZIEMAN also seeks to represent others similarly situated and aggrieved as their class representative.

101. The class on whose behalf his action is brought on behalf of ZIEMAN individually, and all natural citizens and corporations and other entities having lived in, living in, having done business in, doing business in CHICAGO, State of Illinois including all those persons who have been charged and/or prosecuted under or who have plead or been found guilty under CHICAGO'S OLD GUN BAN ORDINANCE that have had any of their firearms confiscated and or destroyed, incurred or paid fines, penalties, court costs as a result of any plea or conviction under said unconstitutional ordinance, or incurred or paid any witness, expert, attorneys or other fees in connection with the defense of any such charge or prosecution by the CHICAGO, its attorneys, officers, agents or employees, over and during the 28 year period that said unconstitutional ordinance has been enacted and in force, i.e., since March 19, 1982, and thereafter.

102. ZIEMAN, as class representative, will adequately represent the claims of each of these natural citizens.

103. A class action may be maintained in this action because:

(a) the class is so numerous that joinder of all members is impractical. While the exact number and identities of the class members are unknown at this time, ZIEMAN believes the number to be substantial and that they can be determine through discovery and full disclosure and accounting of Defendants and their legal counsel's records, that are within their possession and control.

(b) there are questions of fact or law, including but not limited to the above issues of constitutionality of said

ordinances that are common to the class. Such questions predominate over any questions affecting only individual class members.

(c) ZIEMAN is best situated to, and will, fairly and adequately represent the interest of the class and other members, who like them, have been intimidated, and may, like them, be fearful of retaliation so as to step forward to vindicate and protect their rights.

(d) a class action is an appropriate method for the fair and efficient adjudication of the controversy and will serve the interests of judicial economy.

WHEREFORE, Plaintiff ZIEMAN, individually and as class representative, prays for judgment against the Defendants:

A. certifying the class and declaring that the CITY'S OLD GUN BAN ORDINANCE unconstitutional and null and void, *ab initio*, as a result of the United States Supreme Court's recent ruling in *McDonald* and the Seventh Circuit's decisions in *N.R.A.* and *Ezell*;

B. ordering Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to account for, refund and pay over and back to them any and all moneys, fines, penalties, payments, costs, expenses and fees found due, paid, owing or recovered thereunder by or on their behalf or as a result of the actions of any of the turn over and refund to ZIEMAN and the Class;

C. awarding ZIEMAN, as class representative, and the class damages against said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, for their unlawful enforcement and application and prosecution of said ordinances.

30

D. awarding the class representative and the class equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, declaring their pleas an convictions under said unconstitutional ordinances void and expunged and removed all related government records and files, that this Court declare all said sums to be accounted for, disgorged and refunded to the class representative and class with prejudgment interest thereon;

E. ordering said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to turnover and return all weapons any other property seized, impounded or confiscated by them from the ZIEMAN and the Class members under its said unconstitutional ordinances, or in the alternative, if such weapons or other property have been destroyed, damaged or cannot be found or located, the fair market value thereof be determined and order paid them plus prejudgment interest;

F. awarding the class representative and the class civil and equitable appropriate remedies including an equitable accounting;

G. awarding the class representative, fair and appropriate other compensation for serving as class representative, class costs, disbursements and reasonable attorneys fees; and

H. awarded the class representative and the class such other and further relief, as may be appropriate, necessary, just and proper in the premises.

COUNT XIV
PENDANT STATE CLAIM
FOR DECLARATORY JUDGMENT
(735 ILCS 5/2-701)

31

104. Plaintiffs incorporate paragraphs 1 through 44 by reference as if fully set forth herein.

105. That by reason of the foregoing Plaintiffs are entitled to a judicial declaration of his rights pursuant to 735 ILCS 5/2-701 and declaratory relief in connection therewith.

WHEREFORE, PLAINTIFFS PRAYS that this Court enter a declaratory judgment in his favor against Defendants pursuant to 735 ILCS 5/2-701, as follows:

A. declaring that CHICAGO'S above referenced ordinances be adjudged and decreed, *inter alia*, not to constitute reasonable or permissible regulations, but rather, violate Article I. §§ 1, 2, 4, 6, 12, 22, 24, and Due Process and takings clauses of the Illinois Constitution, thus rendering them unconstitutional, null and void *ab initio*, and unenforceable;

B. awarding them damages as the proofs will show at trial;

C. awarding them reasonable attorney fees and costs; and

D. granting them such other and further relief as this Court may deem just and proper in the premises.

COUNT XV
SECOND PENDANT STATE CLAIM
BY SECOND AMENDMENT ARMS FOR MANDAMUS

106. Plaintiff SECOND AMENDMENT ARMS, complaining of all of the Defendants, realleges and incorporates paragraphs 1 through 44 as if fully stated herein and states individually and as class representative:

107. As a law—abiding citizen and a person qualified and licensed as to sell weapons as a federally licensed firearms dealer, SECOND AMENDMENT ARMS is entitled pursuant to the above stated and Illinois law, to have Defendants issue him, in performance of their nondiscretionary and ministerial acts, the Weapons Dealer business licenses applied for as aforesaid upon

32

payment of a reasonable fee therefore.

WHEREFORE PLAINTIFF SECOND AMENDMENT ARMS PRAYS that judgment be entered in his favor and against Defendants:

A. issuing a writ of mandamus ordering, directing, compelling Defendants to perform their nondiscretionary and ministerial acts, and issue FRANZESE the Weapons Dealer business licenses he applied for as aforesaid, upon payment of a reasonable application/processing fee therefore;

B. awarding reasonable attorney fees and costs; and

C. granting such other and further relief as this Court may deem just and proper in the premises.

COUNT XVI
PENDANT CLAIM
BY SECOND AMENDMENT ARMS
FOR TORTIOUS INTERFERENCE
<u>WITH PROSPECTIVE ECONOMIC ADVANTAGE</u>

108. SECOND AMENDMENT ARMS incorporates paragraphs 1 through 44 by reference, as if fully set forth herein.

109. At all times relevant, SECOND AMENDMENT ARMS had a reasonable expectancy of entering into a valid business relationships with qualified prospective customers in and about the CITY eligible to buy lawful firearms and related products and accessories (the "Expectancy").

110. At all times relevant, Defendants knew or should have known that SECOND AMENDMENT ARMS possessed such expectancy and prospective business relationships in and about the CITY.

111. Defendants intentionally and with willful disregard for SECOND AMENDMENT ARMS'S rights and expectancy, purposefully interfered and continue to interfere with such rights and legitimate expectancy for the prospective transfer, sale of such lawful products to qualified individuals and business relationships such that were never able to be materialized due to the unconstitutional NEW HANDGUN BAN ORDINANCE and their

33

police, practices and procedures as aforesaid.

112. The Defendants' conduct as alleged above constituted and continues to constitute a willful and intentional interference with their ability to conduct their lawful business and engage interstate commerce thereby causing them to have lost and continue to lose customers, sales, and the opportunity to expand and grow their business and suffer lost profits and other injuries and damages resulting from said interference.

113. The Defendants' actions constitute tortious interference with prospective economic advantages that Plaintiffs would have otherwise enjoyed, and their actions have caused and will continue to cause damage as above described, and continues to cause irreparable harm for which there is no adequate remedy at law.

WHEREFORE, SECOND AMENDMENT ARMS PRAYS that this Court enter a judgment:

A. finding the Defendants have willfully interfered with Plaintiffs economic advantage under Illinois law;

B. issuing a preliminary and permanent injunction, enjoining and prohibiting each of the Defendants and their agents, servants, employees, officers, attorneys, successors and assigns from any such further tortious interference;

C. awarding SECOND AMENDMENT ARMS' (FRANZESE'S) lost profits, loss of good will, damages against the Defendants as the proofs will show at trial;

D. awarding reasonable attorney fees and costs; and

E. granting such other and further relief as this Court may deem just and proper in the premises.

COUNT XVII
PLAINTIFF KOLE'S PENDANT
INDIVIDUAL AND CLASS ACTION STATE LAW
CLAIM FOR RESTITUTION – UNJUST ENRICHMENT

114. Plaintiff KOLE, complaining of CHICAGO, realleges and

incorporates paragraphs 92 through 96 as if fully stated herein and states individually and as class representative:

115. That as a result of the foregoing and said ordinances violating of Illinois Constitution, Article I. §§ 1, 2, 4, 6, 12, 22 and 24, CHICAGO has been unjustly enriched and therefore KOLE and the Class are entitled to restitution.

WHEREFORE, Plaintiff KOLE, individually and as class representative, prays for judgment against the Defendants:

A. certifying the class and declaring that the upon the CITY'S above-referenced ordinances be found, declared, adjudged, an decreed to be unconstitutional and null and void, *ab initio*, as a result of the United States Supreme Court's recent ruling in *McDonald* and the Seventh Circuit's decision in *Ezell*;

B. ordering Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to account for, refund and pay over any and all moneys and fees paid or collected by the CITY to obtain firearms permits and firearm registration certificates under the NEW GUN BAN ORDINANCE since its date of adoption to KOLE and the Class;

C. awarding KOLE, as class representative, and the class damages against said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, for their unlawful enforcement and application and prosecution of NEW GUN BAN ORDINANCE.

D. awarding the class representative and the class equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, declaring all said sums to be accounted for, disgorged and refunded to the class representative and class with prejudgment interest thereon;

35

E. awarding the class representative and the class civil and equitable appropriate remedies including an equitable accounting;

F. awarding the class representative, fair and appropriate other compensation for serving as class representative, class costs, disbursements and reasonable attorneys fees; and

G. awarded the class representative and the class such other and further relief, as may be appropriate, necessary, just and proper in the premises.

COUNT VXIII
PLAINTIFF ZIEMAN'S PENDANT
INDIVIDUAL AND CLASS ACTION STATE LAW
CLAIM FOR RESTITUTION - UNJUST ENRICHMENT

116. Plaintiff ZIEMAN, complaining of CHICAGO, realleges and incorporates paragraphs 97 through 103 as if fully stated herein and states individually and as class representative:

117. That as a result of the foregoing and said OLD HANDGUN BAN ORDINANCE violates of Illinois Constitution, Article I. §§ 1, 2, 4, 6, 12, 22 and 24, and CHICAGO has been unjustly enriched and therefore ZIEMAN is entitled to restitution.

WHEREFORE, Plaintiff ZIEMAN, individually and as class representative, prays for judgment against the Defendants:

A. certifying the class and declaring that the CITY'S OLD GUN BAN ORDINANCE unconstitutional and null and void, *ab initio*, as a result of the United States Supreme Court's recent ruling in *McDonald* and the Seventh Circuit's decisions in *N.R.A.* and *Ezell*;

B. ordering Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to account for, refund and pay over and back to them any and all moneys, fines, penalties, payments, costs, expenses and fees found due, paid, owing or recovered thereunder

36

by or on their behalf or as a result of the actions of any of the turn over and refund to ZIEMAN and the Class;

C. awarding ZIEMAN, as class representative, and the class damages against said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, for their unlawful enforcement and application and prosecution of said ordinances.

D. awarding the class representative and the class equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, declaring their pleas an convictions under said unconstitutional ordinances void and expunged and removed all related government records and files, that this Court declare all said sums to be accounted for, disgorged and refunded to the class representative and class with prejudgment interest thereon;

E. ordering said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to turnover and return all weapons any other property seized, impounded or confiscated by them from the ZIEMAN and the Class members under its said unconstitutional ordinances, or in the alternative, if such weapons or other property have been destroyed, damaged or cannot be found or located, the fair market value thereof be determined and order paid them plus prejudgment interest;

F. awarding the class representative and the class civil and equitable appropriate remedies including an equitable accounting;

G. awarding the class representative, fair and appropriate other compensation for serving as class representative, class

37

costs, disbursements and reasonable attorneys fees; and

H. awarded the class representative and the class such other and further relief, as may be appropriate, necessary, just and proper in the premises.

JURY TRIAL DEMANDED

Plaintiffs hereby request a trial by jury of all issues that may be so triable.

Dated and filed electronically using the United States District Court for Northern District of Illinois "CM/ECF System" this 7th day of September, 2011.

Respectfully submitted,

R. JOSEPH FRANZESE d/b/a/ SECOND AMENDMENT ARMS, ROBERT M. ZIEMAN, SR., SHAUN A. KRANISH d/b/a ICARRY, and TONY KOLE, Plaintiffs,

By _/s/ Walter Maksym_____
    WALTER MAKSYM, their attorney

Walter Maksym
Attorney for Plaintiffs
2056 N. Lincoln Avenue
Chicago, IL 60614-4525
Telephone: (312) 218-4475
e-mail: wmaksym@gmail.com

## PLAINTIFF'S RULE 11 CERTIFICATION

The undersigned certifies that they are Plaintiffs in that above-captioned cause, that they have read the foregoing complaint, that to the best of their knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact the same is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation and that the exhibits attached, if any are true and correct copies of the documents they purport to be.

*/s/ R. Joseph Franzese*
R. JOSEPH FRANZESE, d/b/a/ SECOND
AMENDMENT ARMS, Plaintiff

*/s/ Robert M. Zieman, Sr.*
ROBERT M. ZIEMAN, SR., Plaintiff

*/s/ Shaun A. Kranish*
SHAUN A. KRANISH, d/b/a ICARRY,
Plaintiff

*/s/ Tony Kole*
TONY KOLE, Plaintiff

## ATTORNEY'S RULE 11 CERTIFICATION

The undersigned attorney certifies that he has read the foregoing complaint, that to the best of his knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact the same is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

*/s/ Walter Maksym*
WALTER MAKSYM, Plaintiffs' attorney

Walter Maksym
Attorney for Plaintiffs
2056 N. Lincoln Avenue
Chicago, IL 60614-4525
Telephone: (312) 218-4475
e-mail: wmaksym@gmail.com

EXHIBIT "A"

| Municipal Code of Chicago |
|---|
| TITLE 8 OFFENSES AFFECTING PUBLIC PEACE, MORALS AND WELFARE |
|   CHAPTER 8-20 WEAPONS |

# CHAPTER 8-20 WEAPONS

Article I.  Possession of Firearms

8-20-010    Unlawful to carry – Exceptions.
8-20-015    Unlawful firearm or laser sight accessory in motor vehicle – Impoundment.
8-20-020    Violation – Penalty.

Article II.  Registration of Firearms

8-20-030    Definitions.
8-20-040    Registration of firearms.
8-20-050    Unregisterable firearms.
8-20-060    Prerequisites to registration – Application for registration.
8-20-070    Fingerprints.
8-20-080    Application fees.
8-20-090    Filing time.
8-20-100    Investigations.
8-20-110    Issuance of registration certificate.
8-20-120    Revocation – Denial.
8-20-130    Procedures for denial or revocation.
8-20-140    Additional duties of registrant.
8-20-150    Exhibition of registration.
8-20-160    Possession of ammunition.
8-20-165    Possession of laser sight accessories.
8-20-170    Permissible sales and transfers of firearms and ammunition.
8-20-175    Firearm Owners Identification Card Act – Compliance required.
8-20-180    False information – Forgery – Alteration.
8-20-190    Voluntary surrender – Immunity.
8-20-195    Voluntary surrender of laser sight accessory – Immunity.
8-20-200    Renewal of registration.
8-20-210    Notice.
8-20-220    Destruction of weapons confiscated.
8-20-230    Authority of the superintendent.
8-20-240    Acquisition or possession prohibited by law.
8-20-241    Firearm used illegally – Penalty.
8-20-250    Violation – Penalty.
8-20-260    Severability.

# ARTICLE I.  POSSESSION OF FIREARMS

**8-20-010  Unlawful to carry – Exceptions.**

   It shall be unlawful for any person to carry or maintain in any vehicle or about his or her person except when on his or her property or in his or her residence or fixed place of business, any rifle, shotgun, or other firearm; provided, that this section shall not apply to:

   (1)    Peace officers or any person summoned by any such officers to assist in making arrests or preserving the peace while he is actually engaged in assisting such officer;

   (2)    Wardens, superintendents and keepers of prisons, penitentiaries, jails, and other institutions for the detention of persons accused or convicted of an offense, while in the performance of their official duty or commuting between their homes and places of employment;

   (3)    Members of the Armed Services or Reserve Forces of the United States or the Illinois National Guard or the Reserve Officers Training Corps, while in the performance of their official duty;

(4)    Special agents employed by a railroad to perform police functions, or employees of a detective agency, watchman-guard or patrolman agency, licensed by the State of Illinois, while actually engaged in the performance of the duties of their employment or commuting between their homes and places of employment;

(5)    Agents and investigators of the Illinois Crime Investigating Commission authorized by the Commission to carry weapons, while on duty in the course of any investigation for the Commission;

(6)    Manufacture, transportation when the weapons are not immediately accessible to any person, or sale of weapons to persons authorized under law to possess them;

(7)    Members of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while such members are using their firearms on such target ranges;

(8)    Duly authorized military or civil organizations while parading, with the special permission of the Governor;

(9)    Licensed hunters or fishermen while engaged in hunting or fishing;

(10)    Transportation of weapons broken down in a nonfunctioning state.

(Prior code § 11.2-1; Amend Coun. J. 7-7-92, p. 19196)

**8-20-015  Unlawful firearm or laser sight accessory in motor vehicle – Impoundment.**

(a)    The owner of record of any motor vehicle that contains an unregistered firearm, a firearm that is not broken down in a nonfunctioning state, or a laser sight accessory shall be liable to the city for an administrative penalty of $1,000.00 plus any towing and storage fees applicable under Section 9-92-080. Any such vehicle shall be subject to seizure and impoundment pursuant to this section.

(b)    Whenever a police officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the police officer shall provide for the towing of the vehicle to a facility controlled by the city or its agents. Before or at the time the vehicle is towed, the police officer shall notify any person identifying himself as the owner of the vehicle at the time of the alleged violation, of the fact of the seizure and of the vehicle owner's right to request a vehicle impoundment hearing to be conducted under Section 2-14-132 of this Code.

(c)    The provisions of Section 2-14-132 shall apply whenever a motor vehicle is seized and impounded pursuant to this section.

(Added Coun. J. 7-7-92, p. 19196; Amend Coun. J. 7-14-93, p. 35530; Amend Coun. J. 7-10-96, p. 24982; Amend Coun. J. 4-29-98, p. 66564; Amend Coun. J. 3-10-99, p. 91066; Amend Coun. J. 4-29-98, p. 66564, § 2; Amend Coun. J. 3-10-99, p. 91066; Amend Coun. J. 12-15-04, p. 39840, § 1)

**Editor's note –** Subsections (d) through (f) were deleted by Coun. J. 4-29-98, p. 66564; therefore, the subsequent amendments to subsections (d) through (f) set forth in Coun. J. 3-10-99, p. 91066, have not been included herein.

**8-20-020  Violation – Penalty.**

Any person violating the provisions of Section 8-20-010 shall be fined $500.00.

(Prior code § 11.2-2)

# ARTICLE II.  REGISTRATION OF FIREARMS

**8-20-030  Definitions.**

As used in this Title 8:

(a)    "Ammunition" means cartridge cases, shells, projectiles (including shot), primers, bullets, propellant powder, or other devices or materials designed, or intended for use in a firearm or destructive device.

(b)    "Antique firearms" means any firearm, including, but not limited to, any firearm with a matchlock, flintlock, percussion cap or similar type of ignition system, which is incapable of being fired or discharged; or any firearm manufactured before 1898 for which cartridge ammunition is not commercially available and is possessed as a curiosity or ornament or for its historical significance or value.

(c)    "Corrections officer" means wardens, superintendents and keepers of prisons, penitentiaries, jails or other institutions for the detention of persons accused or convicted of an offense.

(d)    "Crime of violence" is defined as any felony committed while armed with a weapon as defined in Chapter 38, Section 33 A-1 of Illinois Revised Statutes, as amended.

(e)    "Duty-related firearm" shall mean any weapon which is authorized by any law enforcement agency to be utilized by their personnel in the performance of their official duties.

(f)    "Firearm" means any weapon which will, or is designed to or restored to, expel a projectile or projectiles by the action of any explosive; the frame or receiver of any such device; or any firearm muffler or silencer. Provided, that such term shall not include:

(1)    antique firearm;

(2)  any device used exclusively for line- throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or

(3)  any device used exclusively for firing explosives, rivets, stud cartridges, or any similar industrial ammunition incapable of use as a weapon.

(g)  "Fragmenting bullet" means a bullet that is designed or modified to shatter on impact, or any other bullet that is designed or modified so that more than 50 percent of the mass of the bullet is likely to fragment inside a human or animal target.

(h)  "Assault weapon" means any of the following weapons:

(1)  Assault Rifles

AK 47 type
AK 47S type
AK 74 type
AKS type
AKM type
AKMS type
84S1 type
Arm type
84S1 type
84S3 type
HK91 type
HK93 type
HK94 type
G3SA type
K1 type
K2 type
AR100 type
M24S type
SIG 550SP type
SIG 551SP type
Australian Automatic Arms
SAR type
SKS type with detachable magazine
Colt AR-15
Springfield Armory SAR-48
Springfield Armory BM-59
Bushmaster Auto Rifle
Auto-Ordinance Thompson M1
Ruger Mini 14/5F
Federal XC-900 and XC-450
Feather AT-9 Auto Carbine
Goncz High Tech Carbine
Auto-Ordinance Thompson 1927A1
Iver Johnson PM30 P Paratrooper
86S type
86S7 type
87S type
Galil type
Type 56 type
Type 565 type
Valmet M76 type
Valmet M78 type
M76 counter sniper type
FAL type
L1A1A type
SAR 48 type

        AUG type
        FNC type
        Uzi carbine
        Algimec AGMI type
        AR180 type
        MAS 223 type
        Beretta BM59 type
        Beretta AR70 type
        CIS SR88 type

(2)    Assault Pistols
        Uzi type
        Heckler & Koch Sp-89 type
        Australian Automatic Arms SAP type
        Spectre Auto type
        Sterling Mark 7 type; and

(3)    Any weapon that the superintendent of police defines by regulation as an assault weapon because the design or operation of such weapon is inappropriate for lawful use.

(i)    "Assault ammunition" means any ammunition magazine having a capacity of more than twelve (12) rounds of ammunition.

(j)    "Disc projectile ammunition" means any ammunition which is composed of multiple disc shaped objects stacked together to form a single round of ammunition, including but not limited to the following types of ammunition: (i) Magdisc type; and (ii) Shatterdisc type.

(k)    "Handgun" means a firearm designed to be held and fired by the use of a single hand, and includes a combination of parts from which such firearm can be assembled.

(l)    "Machine gun" means any firearm from which eight or more shots or bullets may be discharged by a single function of the firing device.

(m)    "Mayor" means the mayor of the City of Chicago or his or her designee.

(n)    "Metal piercing bullet" means any bullet that is manufactured with other than a lead or lead alloy core, or ammunition of which the bullet itself is wholly composed of, or machined from, a metal or metal alloy other than lead, or any other bullet that is manufactured to defeat or penetrate bullet resistant properties of soft body armor or any other type of bullet resistant clothing which meets the minimum requirements of the current National Institute for Justice Standards for "Ballistic Resistance of Police Body Armor".

(o)    "Organization" means partnership, company, corporation or other business entity, or any group or association of two or more persons united for a common purpose.

(p)    "Peace officer" means any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses.

(q)    "Person" shall mean any individual, corporation, company, association, firm, partnership, society, joint stock company or organization of any kind.

(r)    "Sawed-off shotgun" means a shotgun having a barrel of less than 18 inches in length or a firearm made from a shotgun if such firearm is modified and has an overall length of less than 26 inches or a barrel of less than 18 inches in length.

(s)    "Security personnel" means special agents employed by a railroad or public utility to perform police functions: guards of armored car companies, watchmen, security guards and persons regularly employed in a commercial or industrial operation for the protection of persons employed by or property related to such commercial or industrial operation.

(t)    "Short-barreled rifle" means a rifle having any barrel less than 16 inches in length, or a modified firearm if such firearm as modified has an overall length of less than 26 inches or any barrel of less than 16 inches.

(u)    "Superintendent" means the superintendent of the Chicago Police Department or his designated representative.

(v)    "Safety mechanism" means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun by other than the owner of the handgun and those specifically authorized by the owner to use the handgun.

(w)    "Trigger lock" means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the handgun without first removing the trigger lock by use of the trigger lock's key.

(x)   "Combination handle lock" means a device that is part of the handgun which precludes the use of the handgun unless the combination tumblers are properly aligned.

(y)   "Solenoid use-limitation device" means a device which precludes, by use of solenoid, the firing of the handgun unless a magnet of the appropriate strength is placed in proximity to the handle of the weapon.

(z)   "Load indicator" means a device which plainly indicates that a bullet is placed in the handgun in a way that pulling the trigger or otherwise handling the handgun may result in detonation.

(aa)   "Laser sight accessory" means a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm.

(Prior code § 11.1-1; Amend Coun. J. 7-7-92, p. 19196; Amend Coun. J. 2-8-95, p. 65436; Amend Coun. J. 8-2-95, p. 5626; Amend Coun. J. 2-7-97, p. 38729; Amend Coun. J. 3-10-99, p. 91066)

**8-20-040  Registration of firearms.**

(a)   All firearms in the City of Chicago shall be registered in accordance with the provisions of this chapter. It shall be the duty of a person owning or possessing a firearm to cause such firearm to be registered. No person shall within the City of Chicago, possess, harbor, have under his control, transfer, offer for sale, sell, give, deliver, or accept any firearm unless such person is the holder of a valid registration certificate for such firearm. No person shall, within the City of Chicago, possess, harbor, have under his control, transfer, offer for sale, sell, give, deliver, or accept any firearm which is unregisterable under the provisions of this chapter.

(b)   This section shall not apply to:

(1)   Firearms owned or under the direct control or custody of any federal, state or local governmental authority maintained in the course of its official duties;

(2)   Duty-related firearms owned and possessed by peace officers who are not residents of the City of Chicago;

(3)   Duty-related firearms owned or possessed by corrections officers; provided, that such corrections officers are not residents of the City of Chicago;

(4)   Firearms owned, manufactured or processed by licensed manufacturers of firearms, bulk transporters or licensed sellers of firearms at wholesale or retail, provided that such persons have, in addition to any other license required by law, a valid deadly weapons dealer license issued under Chapter 4-144 of this Code;

(5)   Any nonresident of the City of Chicago participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided, that such weapon shall be unloaded and securely wrapped and that his possession or control of such firearm is lawful in the jurisdiction in which he resides;

(6)   Peace officers, while in the course of their official duties, who possess and control any firearm or ammunition issued by their department, bureau or agency in the normal course of business;

(7)   Private security personnel who possess or control any firearm or ammunition within the City of Chicago; provided, that such firearms shall be owned and maintained by the security firm employing such personnel and shall be registered by the security firm in accordance with this chapter;

(8)   Those persons summoned by a peace officer to assist in making an arrest or preserving the peace while actually engaged in assisting the peace officer.

(Prior code § 11.1-2; Amend Coun. J. 7-7-92, p. 19196)

**8-20-050  Unregisterable firearms.**

No registration certificate shall be issued for any of the following types of firearms:

(a)   Sawed-off shotgun, machine gun, or short- barreled rifle;

(b)   Firearms other than handguns, owned or possessed by any person in the City of Chicago prior to the effective date of this chapter which are not validly registered prior to the effective date of this chapter;

(c)   Handguns, except:

(1)   Those validly registered to a current owner in the City of Chicago prior to the effective date of this chapter, and which contain each of the following:

(i)   A safety mechanism to hinder the use of the handgun by unauthorized users. Such devices shall include, but shall not be limited to, trigger locks, combination handle locks, and solenoid use-limitation devices; and

(ii)   A load indicator device that provides reasonable warning to potential users such that even users unfamiliar with the weapon would be forewarned and would understand the nature of the warning;

(2)   Those owned by peace officers, or retired peace officers who are in compliance with the federal "Law Enforcement Officers Safety Act of 2004",  who are residents of the City of Chicago,

(3)   Those owned by security personnel,

(4)   Those owned by private detective agencies licensed under Chapter 111.2601, et seq., Illinois Revised Statutes;

(d)    Firearm muffler or silencer;

(e)    Assault weapons, as defined in Section 8-20-030, unless they are owned by a person who is entitled to own them under Section 8-24-025.

Any person who receives through inheritance any firearm validly registered pursuant to this chapter will be eligible to reregister such firearm within 60 days after obtaining possession or title, provided such person shall be qualified to do so in accordance with this chapter.

(Prior code § 11.1-3; Amend Coun. J. 7-7-92, p. 19196; Amend Coun. J. 2-7-97, p. 38729; Amend Coun. J. 10-8-08, p. 40100, § 1)

**8-20-060  Prerequisites to registration – Application for registration.**

(a)    No registration certificate shall be issued to any person unless such person:

(1)    Shall possess a valid Illinois Firearm Owner's Identification Card in accordance with Chapter 38 Section 83-4 of the Illinois Revised Statutes as amended;

(2)    Has not been convicted of a crime of violence, as defined herein as weapons offense, or a violation of this chapter; and

(3)    Has not been convicted within the five years prior to the application of any:

(i)    Violation of any law relating to the use, possession or sale of any narcotic or dangerous drug, or

(ii)    Violation of Chapter 38 Section 12-2(a)(1) of the Illinois Revised Statutes, as amended, for aggravated assault or any similar provision of the law of any other jurisdiction; and

(4)    Has vision better than or equal to that required to obtain a valid driver's license under the standards established by the Illinois Vehicle Code Chapter 95-1/2, Section 506-4 Illinois Revised Statutes, as amended; and

(5)    Is not otherwise ineligible to possess a firearm under any federal, state or local law, statute or ordinance.

(b)    All applicants for a registration certificate under this chapter shall file with the superintendent on a form provided, a sworn application in writing. The application shall include the following:

(1)    Name, social security number, residential and business address and telephone number of the applicant;

(2)    The applicant's age, sex and citizenship;

(3)    The applicant's Illinois firearm owner's identification number;

(4)    The name of manufacturer, the caliber or gauge, the model, type and the serial number identification of the firearm to be registered;

(5)    The source from which the firearm was obtained;

(6)    Evidence that the applicant meets the criteria of Section 8-20-060(a) of this chapter;

(7)    Two photographs of the applicant taken within 30 days immediately prior to the date of filing the application equivalent to passport size showing the full face, head and shoulders of the applicant in a clear and distinguishing manner;

(8)    Such other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination whether the terms of this ordinance have been complied with.

(c)    The superintendent shall be the custodian of all applications for registration under this chapter.

(Prior code § 11.1-4)

**8-20-070  Fingerprints.**

When necessary to establish the identity of any applicant or registrant, such applicant or registrant shall be required to submit to fingerprinting in accordance with procedures and regulations prescribed by the superintendent.

(Prior code § 11.1-5)

**8-20-080  Application fees.**

(a)    A nonrefundable fee in the amount indicated in subsection (d) of this section shall accompany each initial registration.

(b)    A nonrefundable fee in the amount indicated in subsection (d) of this section shall accompany each reregistration application.

(c)    The registration fee shall not be applicable to (1) any duty-related handgun of a peace officer domiciled in the City of Chicago, or (2) to any duty- related handgun(s) owned by a resident of the City of Chicago who retired from the Chicago Police Department in good standing and without any disciplinary charges pending, and who is, or is eligible to become, an annuitant of the Policemen's Annuity and Benefit Fund of the City of Chicago, but only if the handgun(s) is registered in that person's name at the time of separation from active duty in the Chicago Police Department.

(d)    Registration fees for firearms shall be as follows:

1 firearm      $20.00

2 - 10 firearms     25.00

More than ten firearms     35.00

(Prior code § 11.1-6; Amend Coun. J. 7-7-92, p. 19196; Amend Coun. J. 11-10-94, p. 59125; Amend Coun. J. 4-9-03, p. 106640, § 1)

**8-20-090  Filing time.**

(a)    A registration certificate shall be obtained prior to any person taking possession of a firearm from any source.

(b)    Any firearm currently registered must be reregistered pursuant to this chapter and in accordance with rules, regulations and procedures prescribed by the superintendent. An application to reregister such firearm shall be filed within 180 days from the effective date of this chapter; provided, however, that this section shall not apply to law enforcement officers during their tenure of continuous active duty.

(Prior code § 11.1-7; Amend Coun. J. 2-4-85, p. 13404; Amend Coun. J. 3-25-86, p. 28873)

**8-20-100  Investigations.**

Upon receipt of an application for registration of a firearm, the superintendent of police shall investigate the information contained in said application to determine whether the application and firearm meet the requirements for registration under this chapter. Failure by the applicant or registrant to respond to investigation inquiries shall be sufficient grounds for denial or revocation.

(Prior code § 11.1-8)

**8-20-110  Issuance of registration certificate.**

(a)    Upon receipt of a properly executed application for a registration certificate and the report of the superintendent, the mayor, upon determining that the applicant has complied with the provisions of this chapter, shall authorize the issuance of the registration certificate. Each registration certificate shall be in triplicate and bear a unique registration certificate number and contain such other information as may be necessary to identify the applicant and the firearm registered. The original of the registration certificate shall be retained by the superintendent; the mayor and applicant shall each receive a copy.

(b)    The mayor shall approve or deny any application for a registration certificate within a 120-day period beginning on the date the superintendent receives the application unless good cause is shown. In the case of an application to reregister a firearm currently registered, the mayor shall have 365 days after receipt of such application to approve or deny such application unless good cause is shown.

(c)    Any application for registration or renewal shall be held in abeyance when there is a criminal proceeding for a crime of violence, or an offense involving a weapon, or a proceeding to revoke firearm registration pending against the applicant until such proceeding has terminated. In the case of a renewal of registration the then-current registration shall be deemed continuing until the termination of such proceedings.

(d)    Upon receipt of a registration certificate, each applicant shall examine the same to insure that the information thereon is correct. If the registration certificate is incorrect in any respect, the registrant thereon shall return it to the superintendent with a signed statement showing the nature of the error. The superintendent shall correct the error, if it occurred through administrative error.

In the event the error resulted from incorrect information contained in the application, the applicant shall be required to file an amended application setting forth the correct information and a statement explaining the error in the original application. Each amended application shall be accompanied by a fee of $2.00.

(e)    Each registration certificate authorized to be issued by the mayor shall be accompanied by a statement setting forth the registrant's duties under this chapter.

(Prior code § 11.1-9)

**8-20-120  Revocation – Denial.**

A registration certificate shall be revoked or an application for registration or reregistration shall be denied by the mayor when she finds that:

(a)    Any of the criteria in Section 8-20-060(a) of this chapter are not currently met; or

(b)    The registered firearm is or has become an unregisterable firearm under the terms of Section 8-20-050 of this chapter; or

(c)    The information furnished to the superintendent on the application for registration certificate proves to be false; or

(d)    The applicant or registrant has violated any of the provisions of this chapter.

(Prior code § 11.1-10)

**8-20-130  Procedures for denial or revocation.**

(a)    If it is determined that an application for registration or reregistration should be denied or that a registration certificate should be revoked, the mayor shall notify the applicant or registrant in writing of the proposed denial or revocation, briefly stating the reason or reasons therefore.

(b)    The applicant or registrant, within ten days after receiving notice of the proposed denial or revocation, may file with the department of administrative hearings a written request for a hearing before the department of administrative hearings.

(c)    Within ten days of receipt of a request for hearing, the department of administrative hearings shall give notice of a hearing to be held not less than five days after service of the notice on the person requesting the hearing.

At the hearing, the applicant or registrant may submit further evidence in support of the application for initial registration or to continue to hold a registration certificate as the case may be.

The department of administrative hearings shall issue a written finding stating the reasons for denial or revocation thereof and shall serve a copy of said findings upon the applicant or registrant and all parties appearing or represented at the hearing.

(d)    If the applicant or registrant does not request a hearing or submit further evidence within ten days after receiving notification of the proposed denial or revocation, it shall be deemed that the applicant or registrant has conceded the validity of the reason or reasons stated in the notice and the denial or revocation shall become final.

(e)    Within three days after notification of a decision unfavorable to the applicant or registrant and all time for appeal in accordance with paragraph 8-20-130(a) through (d) having expired, the applicant or registrant shall:

(1)    Peaceably surrender to the Chicago Police Department the firearm for which the applicant was denied or the registration certificate was revoked; or

(2)    Remove such firearm from the City of Chicago; or

(3)    Otherwise lawfully dispose of his interest in such firearm.

(f)    The applicant or registrant shall submit to the superintendent evidence of the disposition of nonregisterable firearms in accordance with paragraph 8-20-130(e)(2) and (3). Such evidence shall be submitted on forms and in the manner prescribed by the superintendent.

(Prior code § 11.1-11; Amend Coun. J. 7-27-05, p. 53211, § 1)

**8-20-140  Additional duties of registrant.**

Each person holding a registration certificate shall:

(a)    Immediately notify the Chicago Police Department on a form prescribed by the superintendent of:

(1)    The loss, theft or destruction of the registration certificate or of a registered firearm immediately upon discovery of such loss, theft, or destruction;

(2)    A change in any of the information appearing on the registration certificate;

(3)    The sale, transfer or other disposition of the firearm not less than 48 hours prior to delivery.

(b)    Immediately return to the superintendent his copy of the registration certificate for any firearm which is lost, stolen, destroyed or otherwise disposed of.

(c)    Each registrant shall keep any firearm in his possession unloaded and disassembled or bound by a trigger lock or similar device, unless such firearm is in his possession at his place of residence or business or while being used for lawful recreational purposes within the City of Chicago; provided, this paragraph shall not apply to law enforcement personnel as defined in paragraph 8-20-030(k)* and provided further this paragraph shall not apply to security personnel as defined in paragraph 8-20-030(n),* while in the course of their employment.

(Prior code § 11.1-12)

**\* Editor's note –** Note that § 8-20-030(k) defines the term "handgun"; although § 8-20-030 does not provide a definition of "law enforcement personnel" per se, the term "peace officer" is defined in § 8-20-030(p). Note also that the term "security personnel" is defined in § 8-20-030(s), not § 8-20-030(n), which defines the term "metal piercing bullet".

**8-20-150  Exhibition of registration.**

Any person carrying or having in his possession or under his custody or control any firearm, shall have on his person or within his immediate custody a valid registration certificate for such firearm issued hereunder, which shall be exhibited for inspection to any peace officer upon demand. Failure of any such person to so exhibit his registration certificate shall be presumptive evidence that he is not authorized to possess such firearm.

Failure of any person to exhibit a registration certificate for any firearm in his possession, custody or control shall also be cause for the confiscation of such firearms and revocation of any registration certificates issued therefore under this chapter.

(Prior code § 11.1-13)

**8-20-160  Possession of ammunition.**

No person shall possess ammunition in the City of Chicago unless:

(a)    He is a person exempted pursuant to Section 8-20-040 of this chapter; or

(b)    He is the holder of a valid registration certificate for a firearm of the same gauge or caliber as the ammunition possessed, and has the registration certificate in his possession while in possession of the ammunition; or

(c)    He is a licensed weapons dealer pursuant to Chapter 4-144 or a licensed shooting gallery or gun club pursuant to Chapter 4-149 of this Code.

(Prior code § 11.1-14; Amend Coun. J. 9-14-94, p. 56287)

**8-20-165  Possession of laser sight accessories.**

No person shall sell, offer, or display for sale, give, lend, transfer ownership of, acquire or possess any laser sight accessory in the City of Chicago provided, that this section shall not apply to any members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess a laser sight accessory and is acting within the scope of his or her duties.

(Added Coun. J. 3-10-99, p. 91066)

**8-20-170  Permissible sales and transfers of firearms and ammunition.**

(a)    No firearm may be sold or otherwise transferred within the City of Chicago except through a licensed weapons dealer as defined in Chapter 4-144 of the Municipal Code of the City of Chicago.

(b)    No ammunition may be sold or otherwise transferred within the City of Chicago except through a licensed shooting gallery or gun club as defined in Chapter 4-149, a licensed weapons dealer as defined in Chapter 4-144 or as otherwise allowed by the Municipal Code of the City of Chicago.

(c)    No firearm or ammunition shall be security for, or be taken or received by way of any mortgage, deposit, pledge or pawn.

(d)    No person may loan, borrow, give or rent to or from another person, any firearm or ammunition except in accordance with this chapter.

(e)    A peace officer may additionally sell or transfer any lawfully held firearm or ammunition to another peace officer in accordance with the other provisions of this chapter.

(f)    Except as allowed by subsection (e) of this section, no person may sell, offer for sale, barter or transfer within the city any ammunition listed in Section 4-144-061 of this Code.

(Prior code § 11.1-15; Amend Coun. J. 9-14-94, p. 56287)

**8-20-175  Firearm Owners Identification Card Act – Compliance required.**

No person shall sell, give away or otherwise transfer any firearm, as defined in Section 8-20-030, without complying with Sections 3 and 3.1 of the Firearm Owners Identification Card Act, Illinois Revised Statutes, Chapter 38, paragraphs 83-3 and 83-3.1.

(Added Coun. J. 7-7-92, p. 19196)

**8-20-180  False information – Forgery – Alteration.**

(a)    It shall be unlawful for any person purchasing any firearm or ammunition, or applying for any registration certificate under this chapter, or, in giving any information pursuant to the requirements of this chapter, to knowingly give false information or offer false evidence of identity.

(b)    It shall be unlawful for anyone to forge or alter any application or registration certificate submitted, retained or issued under this chapter.

(Prior code § 11.1-16)

**8-20-190  Voluntary surrender – Immunity.**

(a)    Within 90 days from the effective date of this ordinance, a person within the City of Chicago may voluntarily and peaceably deliver and abandon to the superintendent any firearm or ammunition prior to any arrest and prosecution of such person on a charge of violating any provisions of this chapter with respect to the firearm or ammunition voluntarily delivered.

(b)    Delivery under this section may be made at any police district, area or central headquarters or by summoning a police officer to the person's residence or place of business. Any firearm or ammunition to be delivered and abandoned to the superintendent under this section shall be unloaded and securely wrapped in a package carried in open view.

(c)    The voluntary delivery or abandonment of any firearm or ammunition after an arrest or charge for violation of any provision of this chapter shall not moot or in any manner invalidate said arrest or charge.

(Prior code § 11.1-17)

**8-20-195  Voluntary surrender of laser sight accessory – Immunity.**

(a)    Within 14 days of the effective date of this ordinance, a person within the City of Chicago may voluntarily and peaceably deliver and abandon to the superintendent any laser sight accessory prior to any arrest and prosecution of such person on a charge of violating any provision of this chapter with respect to the laser sight accessory voluntarily delivered.

(b)    Delivery under this section may be made at any police district, area or central headquarters or by summoning a police officer to the person's residence or place of business.

(c)    The voluntary delivery or abandonment of any laser sight accessory after an arrest or charge for violation of any provision of this chapter shall not moot or in any manner invalidate said arrest or charge.

(Added Coun. J. 3-10-99, p. 91066)

**8-20-200  Renewal of registration.**

(a)    Every registrant must renew his registration certificate annually. Applications for renewal shall be made by such registrants 60 days prior to the expiration of the current registration certificate.

(b)    The application for renewal shall include the payment of a renewal fee as follows:

1 firearm      $20.00

2 - 10 firearms     25.00

More than ten firearms      35.00

(c)    Failure to comply with the requirement for renewal of registration of a firearm shall cause that firearm to become unregisterable.

(d)    All terms, conditions and requirements of this chapter for registration of firearms shall be applicable to renewal or registration of such firearms.

(e)    The renewal fee shall not be applicable to duty-related handguns of peace officers domiciled in the City of Chicago.

(Prior code § 11.1-18; Amend Coun. J. 7-7-92, p. 19196; Amend Coun. J. 11-10-94, p. 59125)

**8-20-210  Notice.**

For the purposes of this chapter, service of any notice, finding or decision upon an applicant or registrant shall be completed by any of the following methods:

(1)    Personal delivery of a copy of such notice, finding or decision to the applicant or registrant; or

(2)    By leaving a copy of such notice, finding or decision at the address identified on the application for registration or renewal; or

(3)    By mailing a copy of the notice, finding or decision by certified mail with return receipt to the address identified on the application for registration or renewal; in which case service shall be complete as of the date the return receipt was signed.

(Prior code § 11.1-19)

**8-20-220  Destruction of weapons confiscated.**

Whenever any firearm or ammunition is surrendered or confiscated pursuant to the terms of this chapter, the superintendent shall ascertain whether such firearm or ammunition is needed as evidence in any matter.

If such firearm or ammunition is not required for evidence it shall be destroyed at the direction of the superintendent. A record of the date and method of destruction and an inventory of the firearm or ammunition so destroyed shall be maintained.

(Prior code § 11.1-20)

**8-20-230  Authority of the superintendent.**

The superintendent shall have the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required thereon.

(Prior code § 11.1-21)

**8-20-240  Acquisition or possession prohibited by law.**

Nothing in this chapter shall make lawful the acquisition or possession of firearms or firearm ammunition which is otherwise prohibited by law.

(Prior code § 11.1-22)

**8-20-241  Firearm used illegally – Penalty.**

The owner of an unregistered firearm that is used in any criminal act shall be subject to a fine of $500.00 for each such use, regardless of whether the owner participated in, aided or abetted the criminal act. A fine under this section shall be in addition to any other penalty imposed on the criminal act or use of the firearm.

(Added Coun. J. 11-10-94, p. 59125)

**8-20-250  Violation – Penalty.**

Any person who violates any provision of this chapter, where no other penalty is specifically provided, shall upon conviction for the first time, be fined not less than $300.00, nor more than $500.00; or be incarcerated for not less than ten days nor more than 90 days or both. Any subsequent conviction for a violation of this chapter shall be punishable by a fine of $500.00 and by incarceration for a term of not less than 90 days, nor more than six months.

(Prior code § 11.1-23; Amend Coun. J. 11-10-94, p. 59125)

**8-20-260  Severability.**

If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which reasonably can be given effect without the invalid provision or term for the application thereof.

(Prior code § 11.1-24)

**Disclaimer:**

This Code of Ordinances and/or any other documents that appear on this site may not reflect the most current legislation adopted by the Municipality. American Legal Publishing Corporation provides these documents for informational purposes only. These documents should not be relied upon as the definitive authority for local legislation. Additionally, the formatting and pagination of the posted documents varies from the formatting and pagination of the official copy. The official printed copy of a Code of Ordinances should be consulted prior to any action being taken.

For further information regarding the official version of any of this Code of Ordinances or other documents posted on this site, please contact the Municipality directly or contact American Legal Publishing toll-free at 800-445-5588.

© 2010 American Legal Publishing Corporation
techsupport@amlegal.com

EXHIBIT "B"

**O R D I N A N C E**

**WHEREAS**, A recent study by the Centers for Disease Control and Prevention found that in the United States there were 30,896 deaths from firearms in 2006, making firearms one of the top ten causes of death in the country; and

**WHEREAS**, Annually, more than 100,000 people in our nation are shot or killed with a firearm, with more than 3,000 of these victims being children or teenagers; and

**WHEREAS**, The United States is one of the few remaining developed nations that places only a minimal restrictions on the sale or possession of firearms; and

**WHEREAS**, Firearm-related injuries and deaths are the cause of significant social and economic costs to the City and our communities and have a severe impact on our criminal justice and health care systems; and

**WHEREAS**, In 2009, in the City there were 1,815 aggravated batteries with a firearm, of which 83 were shootings inside a residence, and there were 379 murders with a firearm, of which 34 were murders involving a firearm inside a home; and

**WHEREAS**, Between the beginning of this year and June, 15, 2010, there were 742 aggravated batteries with a firearm, of which 36 took place inside a residence, and 152 murders with a firearm, of which 19 were inside a residence; and

**WHEREAS**, Given the dangerous and deadly nature of handguns, in 1982 the City of Chicago enacted a ban on registering handguns as a method to protect public safety and the health and welfare of its residents; and

**WHEREAS**, In 2008, the Supreme Court of the United States decided the case of *District of Columbia v. Heller*, which held that the Second Amendment to the United States Constitution protects an individual right to possess a firearm unconnected with service in the militia; and

**WHEREAS**, After the *Heller* decision, the City's handgun registration ban was challenged in the case of *McDonald v. the City of Chicago*; and

**WHEREAS**, On June 28, 2010, the Supreme Court issued its opinion in the *McDonald* case and ruled that the Second Amendment's right to possess a handgun for self-defense in the home also applied to the states; and

**WHEREAS**, Although the State of Illinois has already enacted several laws to regulate the sale and possession of firearms, these laws are not sufficient to protect the City from the unique and heightened risk of firearm violence, especially handgun violence, endemic in densely populated urban areas, and

**WHEREAS**, In order to provide for the ongoing protection of the public welfare and safety, it is essential for the City Council of the City of Chicago to promptly pass an ordinance that provides for reasonable regulation of firearms in compliance with the rulings of the United States Supreme Court, but still is effective in protecting the public from the potentially deadly consequences of gun violence in our City; and

**WHEREAS**, When a gun is registered with the City, certain personal identifying information, such as the registrant's address, is obtained so that a first responder can be advised that a gun is present in that home.  In order to protect the privacy and safety of people registering guns, any information provided in the registration procedure should not be available to the public.  The City is requesting that Illinois Attorney General Lisa Madigan issue an opinion, as expeditiously as possible, on whether the information provided to the City for gun registration is exempt from disclosure under the Illinois Freedom of Information Act, 5 ILCS 140, et seq.; and

**WHEREAS**, As a consequence of the United States Supreme Court decisions in *Heller* and *McDonald*, it is anticipated that gun ownership in many communities, including large urban areas, will increase. To ensure public safety and the welfare of a community, it is essential that local law enforcement agencies be made aware of any gun brought into their jurisdictions. Therefore, the United States Congress must pass a law mandating that the Bureau of Alcohol, Tobacco, Firearms and Explosives timely notify a local law enforcement agency of any purchase or sale of a firearm by a resident of that community; and

**WHEREAS**, In addition, the ability to have handguns in a home will expose taxpayers to greater costs and expenses associated with the increased number of incidents involving a first responder entering a home where a gun is present.  In order to minimize the impact of these costs to the taxpayers, the United States Congress and the State of Illinois must pass laws that grant immunity for the City and its first responders from any civil liability for any accidental or lawfully intentional actions by the first responders in responding to a situation in a home where a gun is present and the first responder perceives a danger caused by the presence of the gun; now, therefore,

## BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF CHICAGO:

**SECTION 1.**  Chapter 2-14 of the Municipal Code of Chicago is hereby amended by deleting the language struck through, and by adding the language underscored, as follows:

### 2-14-132  Impoundment.

(1)     Whenever the owner of a vehicle seized and impounded pursuant to Sections 3-46-076, 3-56-155, 4-68-195, 9-80-220 or 9-112-555 of this Code (for purposes of this section, the "status-related offense sections"), or Sections 7-24-225, 7-24-226, 7-28-390, 7-28-440, 7-38-115(c-5), 8-4-130, 8-8-060, 8-20-015, 8-20-070, 9-12-090, 9-76-145, 9-80-240, 9-92-035, 11-4-1410, 11-4-1500 or 15-20-270 of this Code (for purposes of this section, the "use-related offense sections") requests a preliminary hearing in person and in writing at the department of administrative hearings, within 15 days after the vehicle is seized and impounded, an administrative law officer of the department of administrative hearings shall conduct such preliminary hearing within 48 hours of request, excluding Saturdays, Sundays and legal holidays, unless the vehicle was seized and impounded pursuant to Section 7-24-225 and the department of police determines that it must retain custody of the vehicle under the applicable state or federal forfeiture law. If, after the hearing, the administrative law officer determines that there is probable cause to believe that the vehicle was used in a violation of this Code for which seizure and impoundment applies, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle is eligible for impoundment under that section, the administrative law officer shall order the continued impoundment of the vehicle as provided in this section unless the owner of the vehicle pays to the city the amount of the administrative penalty prescribed for the code violation plus fees for towing and storing the vehicle. If the vehicle is also sub ject to immobilization for unpaid parking and/or compliance violations, the owner of the vehicle must also pay the amounts due for all such outstanding violations prior to the release of the vehicle. If the administrative law officer determines there is no such probable cause, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle has previously been

determined not to be eligible for impoundment under that section, the vehicle will be returned without penalty or other fees.

*(omitted text is unaffected by this ordinance)*

**2-14-190  Municipal hearings division – Jurisdiction.**

(a)  The department of administrative hearings is authorized to establish a system of administrative adjudication for the enforcement of all provisions of the Municipal Code that are not adjudicated by the vehicle, buildings, environmental safety or consumer affairs hearings divisions, except that it shall not adjudicate violations of the following chapters and sections: chapter 4-92 (Massage Establishments and Massage Services); chapter 4-144 (Weapons); and Section 7-28-190 (Health Nuisances – Throwing Objects into Roadways); chapter 8-20 (Weapons), other than Section 8-20-015 (Unlawful Firearm in Motor Vehicle – Impoundment); and chapter 8-24 (Firearms and Other Weapons).

*(omitted text is unaffected by this ordinance)*

**SECTION 2.**  Chapter 2-84 of the Municipal Code of Chicago is hereby amended by adding a new section 2-84-075, as follows:

**2-84-075 Sale of firearms and ammunition authorized by the superintendent.**

Notwithstanding any other provision of this code to the contrary, the superintendent may authorize the sale of firearms or ammunition by a person issued a federal firearms license to a member of the police department, if that member is authorized to carry such firearm or ammunition. Such sales shall be conducted at department of police facilities.

**SECTION 3.**  Title 4 of the Municipal Code of Chicago is hereby amended by adding a new section 4-144-065, by adding the language underscored, and by deleting the language struck through, as follows:

**4-144-010  License – Required.**

It shall be unlawful for any person to engage in the business of selling, or to sell, or give away or otherwise transfer, any pistol, revolver or other firearm, dagger, stiletto, billie, derringer, bowie knife, dirk, stun gun or taser, as defined in Section 24-1 of the Illinois Criminal Code, 720 ILCS 5/24-1, or other deadly weapon which can be carried or concealed on the person, or any ammunition, as that term is defined in Section 8-20-010, without securing a weapons dealer license. The license required by this chapter shall be in addition to any other license required by law.  It shall be unlawful for any person licensed under this chapter to engage in the business of selling, or to sell, give away or otherwise transfer, any firearm as that term is defined in Section 8-20-010.

**4-144-061  Sale of certain handgun ammunition prohibited.**

Except as allowed by section 8-20-100(e) subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, offer for sale, expose for sale, barter or give away to any person within the city, any armor piercing or .50 caliber ammunition of the following calibers and types:

> .45 automatic
> .380 automatic
> .38 special
> .357 magnum

~~.25 caliber~~
~~.22 caliber, including .22 long~~
~~9 millimeter~~
~~Any other ammunition, regardless of the designation by the manufacturer, distributor or seller, that is capable of being used as a substitute for any of the foregoing.~~

**4-144-062  Sale of <u>ammunition to minors-prohibited.</u> ~~handguns without childproofing or safety devices prohibited.~~**

<u>No person licensed under this chapter shall sell or otherwise transfer any ammunition to a person who is under the age of 18.</u>

~~Except as allowed by subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, barter or give away to any person any handgun which does not contain:~~

~~(1)     A safety mechanism to hinder the use of the handgun by unauthorized users. Such devices shall include, but shall not be limited to, trigger locks, combination handle locks, and solenoid use-limitation devices, and~~

~~(2)     A load indicator device that provides reasonable warning to potential users such that users even unfamiliar with the weapon would be forewarned and would understand the nature of the warning.~~

~~Safety mechanism means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun by other than the owner of the handgun and those specifically authorized by the owner to use the handgun.~~

~~A trigger lock means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the handgun without first removing the trigger lock by use of the trigger lock's key.~~

~~A combination handle lock means a device that is part of the handgun which precludes the use of the handgun unless the combination tumblers are properly aligned.~~

~~A solenoid use-limitation device means a device which precludes, by use of a solenoid, the firing of the handgun unless a magnet of the appropriate strength is placed in proximity to the handle of the weapon.~~

~~A load indicator means a device which plainly indicates that a bullet is placed in the handgun in a way that pulling the trigger or otherwise handling the handgun may result in detonation.~~

**<u>4-144-065 Sale of metal piercing bullets.</u>**

<u>No person licensed under this chapter shall sell, offer for sale, expose for sale, barter, give away or otherwise transfer any metal piercing bullets, as that term is defined in section 8-20-010.</u>

**SECTION 4.**   Chapter 8-20, Articles I and II, section 8-20-010 through and including section 8-20-260 of the Municipal Code of Chicago are deleted in their entirety and replaced with the following language;

**ARTICLE I.  DEFINITIONS.**

**8-20-010 Definitions:**

For purposes of this chapter the following terms shall apply:

"The Act" means the Illinois Firearm Owners Identification Card Act, 430 ILCS 65/1 et seq., as amended.

"Ammunition" means any self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable to use in a firearm; excluding however;

(1) any ammunition used exclusively for line-throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or

(2) any ammunition designed exclusively for use with a stud or rivet driver or other similar industrial ammunition.

"Antique firearm" has the same meaning ascribed to that term in 18 U.S.C. § 921(a)(16).

"Assault weapon" means:

(1) A semiautomatic rifle that has the ability to accept a detachable magazine and has one or more of the following:

(i) a folding or telescoping stock

(ii) a handgun grip which protrudes conspicuously beneath the action

(iii) a bayonet mount

(iv) a flash suppressor or a barrel having a threaded muzzle

(v) a grenade launcher; or

(2) A semiautomatic shotgun that has one or more of the following:

(i) a folding or telescoping stock

(ii) a handgun grip which protrudes conspicuously beneath the action

(iii) a fixed magazine capacity in excess of 5 rounds

(iv) an ability to accept a detachable magazine; or

(3) A semiautomatic handgun that has an ability to accept a detachable magazine and has one or more of the following:

(i) an ammunition magazine that attaches to thehandgun outside thehandgun grip

(ii) a barrel having a threaded muzzle

(iii) a shroud that is attached to, or partially or completely encircles the barrel, and permits the shooter to hold the firearm with the non-trigger hand without being burned;

(iv) a manufactured weight of 50 ounces or more when the handgun is unloaded

(v) a semiautomatic version of an automatic firearm.

"Chicago Firearm Permit" or "CFP" means the permit issued by the City which allows a person to possess a firearm.

"Corrections officer" means wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of an offense.

"Department" means the department of police.

"Dwelling unit" has the same meaning ascribed to that term in section 17-17-0248.

"Duty-related firearm" shall mean any firearm which is authorized by any law enforcement agency or employer to be utilized by their personnel in the performance of their official duties.

"Firearm" means any device, by whatever name known, which is designed or restored to expel a projectile or projectiles by the action of any explosive, expansion of gas or escape of gas. Provided, that such term shall not include:

(1)  any pneumatic gun, spring gun, paint ball gun or B-B gun which either expels a single globular projectile not exceeding .18 inch in diameter and which has a maximum muzzle velocity of less than 700 feet per second or breakable paint balls containing washable marking colors;

(2)  any device used exclusively for line-throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or

(3)  any device used exclusively for firing explosives, rivets, stud cartridges, or any similar industrial ammunition.

"Firearm case" means any firearm case, carrying box, shipping box or other similar container that is designed for the safe transportation of the firearm.

"FOID" means the Firearm Owner's Identification Card issued pursuant to the Act.

"Handgun" means a firearm designed to be held and fired by the use of a single hand, and includes a combination of parts from which such firearm can be assembled.

"High capacity magazine" means any ammunition magazine having a capacity of more than  12 rounds of ammunition.

"Home" means the inside of a  person's dwelling unit which is traditionally used for living purposes, including the basement and attic.  A "home" does not include: (i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas; or (iii) any dormitory, hotel, or group living, as that term is defined in section 17-17-0102-A.

"Laser sight accessory" means a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm.

"Lawful transportation" means the transportation of a firearm by a person:

(1) in compliance with section 8-20-090; or

(2) who has a valid FOID card, a CFP and firearm registration certificate, if applicable, and the firearm is: (i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case.

"Long gun" means any firearm, other than a handgun.

"Machine gun" means any firearm which can fire multiple rounds of ammunition by a single function of the firing device or one press of the trigger.

"Metal piercing bullet" means any bullet that is manufactured with other than a lead or lead alloy core, or ammunition of which the bullet itself is wholly composed of, or machined from, a metal or metal alloy other than lead, or any other bullet that is manufactured to defeat or penetrate bullet resistant properties of soft body armor or any other type of bullet resistant clothing which meets the minimum requirements of the current National Institute for Justice Standards for "Ballistic Resistance of Police Body Armor."

"Organization" means partnership, company, corporation or other business entity, or any group or association of two or more persons united for a common purpose.

"Peace officer" means any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses.

"Retired department police officer" means a person who is retired from the department in good standing and without any disciplinary charges pending, and who is, or is eligible to become, an annuitant of the Policemen's Annuity and Benefit Fund of the City of Chicago.

"Sawed-off shotgun" means a shotgun having one or more barrels less than18 inches in length and any weapon made from a shotgun, whether by alteration, modification or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Security personnel" means special agents employed by a railroad or public utility to perform police functions, guards of armored car companies, watchmen, security guards or persons regularly employed in a commercial or industrial operation for the protection of persons employed by, or property related to, such commercial or industrial operation; and watchmen while in the performance of the duties of their employment.

"Short-barreled rifle" means a rifle having one or more barrels less than 16 inches in length, and any weapon made from a rifle, whether by alteration, modification, or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Superintendent" means the superintendent of the department or his designated representative.

"Safety mechanism" means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun.

"Trigger lock" means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the firearm without first removing the trigger lock by use of the trigger lock's key.

"Unregisterable firearm" means any firearm listed in section 8-20-170.

"Unsafe handgun" means any handgun that is listed on the superintendent's roster of unsafe handguns because, in the determination of the superintendent, the handgun is unsafe due to its size, ability to be concealed, detectability, quality of manufacturing, quality of materials, ballistic accuracy, weight, reliability, caliber, or other factors which makes the design or operation of the handgun otherwise inappropriate for lawful use.

"Violent crime" has the same meaning ascribed to that term in the Rights of Crime Victims and Witnesses Act, 725 ILCS 120/1, et seq., as amended.

## ARTICLE II. POSSESSION OF FIREARMS

**8-20-020 Unlawful possession of handguns.**

(a) It is unlawful for any person to carry or possess a handgun, except when in the person's home.

(b) The provisions of this section shall not apply to:

(1) peace officers, and any person summoned by a peace officer to assist in making arrests or preserving the peace, while assisting such officer;

(2) corrections officers while in the performance of their official duty, or while commuting between their homes and places of employment;

(3) members of the Armed Services or Reserve Forces of the United States or the Illinois National Guard or the Reserve Officers Training Corps, while in the performance of their official duty;

(4) security personnel;

(5) persons licensed as private security contractors, private detectives, or private alarm contractors, or employed by an agency certified by the Illinois Department of Professional Regulation;

(6) persons regularly employed in a commercial or industrial operation as a security guard for the protection of persons employed and private property related to such commercial or industrial operation, while in the performance of their duties or traveling between sites or properties belonging to the employer, and who, as a security guard, is registered with the Illinois Department of Professional Regulation;

(7) persons employed by a financial institution for the protection of other employees and property related to such financial institution, while in the performance of their duties, commuting between their homes and places of employment, or traveling between sites or properties owned or operated by such financial institution;

(8) persons employed by an armored car company to drive an armored car, while in the performance of their duties;

(9) persons who have been classified as peace officers pursuant to the Peace Officer Fire Investigation Act;

(10) investigators of the Office of the State's Attorneys Appellate Prosecutor authorized by the board of governors of the Office of the State's Attorneys Appellate Prosecutor to carry weapons pursuant to Section 7.06 of the State's Attorneys Appellate Prosecutor's Act;

- 8 -

(11) special investigators appointed by a State's Attorney under Section 3-9005 of the Counties Code;

(12) probation officers while in the performance of their duties, or while commuting between their homes, places of employment or specific locations that are part of their assigned duties, with the consent of the chief judge of the circuit for which they are employed;

(13) court security officers while in the performance of their official duties, or while commuting between their homes and places of employment, with the consent of the sheriff;

(14) persons employed as an armed security guard at a nuclear energy, storage, weapons or development site or facility regulated by the Nuclear Regulatory Commission who have completed the background screening and training mandated by the rules and regulations of the Nuclear Regulatory Commission;

(15) duly authorized military or civil organizations while parading, with the special permission of the Governor;

(16) persons engaged in the manufacture, transportation, or sale of firearms to persons authorized under this subsection to possess those firearms;

(17) a person while engaged in the lawful transportation of a firearm.

**8-20-030 Unlawful possession of long guns.**
(a) It is unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business.

(b)  The provisions of this section shall not apply to:
(1) any person listed in section 8-20-020(b); or
(2) any duly licensed hunter who has a valid FOID card, a CFP and firearm registration certificate, while engaged in hunting in an area where hunting is permitted.

**8-20-035 Unlawful possession of unregisterable firearms**.
(a) It is unlawful for any person to carry or posses any unregisterable firearm.

(b)  The provisions of this section shall not apply to corrections officers, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers, to the extent that any such person is otherwise authorized to acquire or possess assault weapons, and is acting within the scope of his duties, or to any person while engaged in the manufacturing, transportation or sale of assault weapons to people authorized to possess them under this section.

(c) Notwithstanding the provisions of subsection (a), those firearms listed in section 8-20-170(a) may be possessed and used by the department for training and tactical operation, as authorized by the superintendent.

(d) Any firearm carried or possessed in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-040 Firearms kept or maintained in a home.**

Subject to section 8-20-050, every person who keeps or possesses a firearm in his home shall keep no more than one firearm in his home assembled and operable. If more than one person in the home has a valid CFP and registration certificate, each person with a valid CFP and registration certificate is entitled to have one such firearm assembled and operable in the home. All other firearms kept or possessed by that person in his home shall be broken down in a nonfunctioning state or shall have a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render the firearm temporarily inoperable.

The provisions of this section shall not apply to peace officers.

**8-20-050 Firearms- Protection of minors.**

(a) It is unlawful for any person to keep or possess any firearm or ammunition in his home if the person knows or has reason to believe that a minor under the age of 18 years is likely to gain access to the firearm or ammunition, unless:

(1) the person is physically present in the home and the firearm is either being held by the person or is physically secured on the person's body;

(2) the firearm is secured by a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render a firearm temporarily inoperable; or

(3) the firearm and ammunition are placed in a securely locked box or container.

(b) No person shall be punished for a violation of this section under the following circumstances:

(1) if the minor gains access to the firearm and uses it in a lawful act of self-defense or defense of another; or

(2) if the minor gains access to the firearm because of an unlawful entry of the premises by the minor or another person.

The provisions of this section shall not apply to peace officers.

**8-20-060  Possession of a laser sight accessory, firearm silencer or muffler.**

(a) It is unlawful for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory, or a firearm silencer or muffler.

(b) The provisions of this section shall not apply to any members of the armed forces of the United States, or the organized militia of this or any other state, or peace officers, to the extent that any such person is otherwise authorized to acquire or possess a laser sight accessory, or firearm silencer or muffler, and is acting within the scope of his duties.

(c) Any laser sight accessory, or firearm silencer or muffler, carried, possessed, displayed or sold in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-070 Unlawful firearm, laser sight accessory, or firearm silencer or muffler in a motor vehicle – Impoundment.**

(a)   The owner of record of any motor vehicle that contains a firearm registered to a person who is not the driver or occupant of the vehicle, an unregistered firearm, a firearm that is not being lawfully transported, an unregisterable firearm, a laser sight accessory, or a firearm silencer or muffler, shall be liable to the city for an administrative penalty of $1,000.00 plus any towing and storage fees applicable under Section 9-92-080. Any such vehicle shall be subject to seizure and impoundment pursuant to this section.

(b)   Whenever a police officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the police officer shall provide for the towing of the vehicle to a facility controlled by the city or its agents. Before or at the time the vehicle is towed, the police officer shall notify any person identifying himself as the owner of the vehicle at the time of the alleged violation, of the fact of the seizure and of the vehicle owner's right to request a vehicle impoundment hearing to be conducted under Section 2-14-132 of this Code.

(c)   The provisions of Section 2-14-132 shall apply whenever a motor vehicle is seized and impounded pursuant to this section.

### 8-20-080 Possession of ammunition.
(a) It is unlawful for any person to carry or possess any ammunition in the city, unless the person:

(1)   has a valid CFP and registration certificate for a firearm of the same gauge or caliber as the ammunition possessed, and while in possession of the ammunition, has the CFP and registration certificate in his possession when he is not in his home, or, when he is in his home, has the CFP and registration certificate readily available in his home; or

(2) is a licensed weapons dealer; or

(3) is a person listed in section 8-20-020(b).

(b) Any ammunition carried or possessed in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

### 8-20-085   High capacity magazines and metal piercing bullets – Sale and possession prohibited – Exceptions.
(a) It is unlawful for any person to carry, possess, sell, offer or display for sale, or otherwise transfer any high capacity magazine or metal piercing bullets.  This section shall not apply to corrections officers, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers, to the extent that any such person is otherwise authorized to acquire or possess metal piercing bullets, and is acting within the scope of his duties, or to any person while in the manufacturing, transportation or sale of high capacity magazines or metal piercing bullets to people authorized to possess them under this section.

(b)    Any high capacity magazine or metal piercing bullets carried, possessed, displayed, sold or otherwise transferred in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

### 8-20-090 Interstate transportation of firearms.
It shall not be a violation of this chapter if a person transporting a firearm or ammunition while engaged in interstate travel is in compliance with 18 U.S.C.A. §926A.  There shall be a

rebuttable presumption that any person within the city for more than 24 hours is not engaged in interstate travel, and is subject to the provisions of this chapter.

**8-20-100 Permissible sales and transfers of firearms and ammunition.**

(a)   Except as authorized by subsection (e) and section 2-84-075, no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm.

(b)  No ammunition may be sold or otherwise transferred within the city, except through a licensed weapons dealer, or as otherwise allowed by this code.

(c)  No firearm or ammunition shall be security for, or be taken or received by way of any mortgage, deposit, pledge or pawn.

(d)  No person may loan, borrow, give or rent to or from another person, any firearm or ammunition except in accordance with this chapter.

(e)   Notwithstanding any other provision of this section, a peace officer may sell or transfer any lawfully held firearm or ammunition to another peace officer in accordance with the other provisions of this chapter.

**ARTICLE III.  PERMITS FOR AND REGISTRATION OF FIREARMS**.

**8-20-110 CFP-Required**

(a) Subject to subsection (d), it is unlawful for any person to carry or possess a firearm without a CFP.

(b) No CFP application shall be approved unless the applicant:

(1) is 21 years of age or older; provided that an application of a person 18 years or older but less than 21 may be approved if the person has the written consent of his parent or legal guardian to possess and acquire a firearm or firearm ammunition and that he has never been convicted of a misdemeanor, other than a traffic offense or adjudged a delinquent; provided that such parent or legal guardian is not an individual prohibited from having a FOID or CFP, and that the parent files an affidavit with the department attesting that the parent is not an individual prohibited from having a FOID or CFP;

(2) possesses a valid Illinois FOID;

(3) has not been convicted by a court in any jurisdiction of:
(i)   a violent crime,
(ii)   two or more offenses for driving under the influence of alcohol or other drugs; or
(iii) an unlawful use of a weapon that is a firearm;

(4) has vision better than or equal to that required to obtain a valid driver's license under the standards established by the Illinois Vehicle Code;

(5) is not otherwise ineligible to possess a firearm under any federal, state or local law, statute or ordinance; and

(6) has not been convicted, adjudicated, admitted to, or found liable for a violation of section 8-20-060 or 8-20-100.

(c)  Each CFP issued shall be accompanied by a copy of this ordinance.

(d)  Any person who has a valid firearm registration certificate issued before the effective date of this 2010 ordinance shall be exempted from acquiring a CFP until the expiration of the registration certificate; provided that upon the expiration of the registration certificate, the person shall be required to obtain a CFP.  Any such person who has submitted an application for a CFP prior to or on the date of the expiration of his current registration certificate shall be deemed to be in compliance with the requirement for a CFP while his application is pending.

(e) The provisions of this section shall not apply to any person listed in section 8-20-020(b)(1)-(16) or a person engaged in interstate travel in compliance with section 8-20-100.

**8-20-120  CFP-application**
(a)  An applicant for a CFP shall submit an application to the superintendent on a form or in a manner prescribed by the superintendent. The application shall include the following:

(1)  name, residential address and telephone number of the applicant;

(2)  the applicant's date of birth and sex;

(3)  the applicant's Illinois firearm owner's identification number and a copy of the applicant's FOID card;

(4)  evidence that the applicant meets the criteria of section 8-20-110;

(5)  two identical photographs of the applicant taken within 30 days immediately prior to the date of filing the application, equivalent to passport size, showing the full face, head and shoulders of the applicant in a clear and distinguishing manner;

(6)  the applicant's Illinois driver's license number and a copy of the applicant's driver's license or Illinois identification card;

(7)  an affidavit signed by a firearm instructor certified by the State of Illinois to provide firearm training courses attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training and four hours of classroom instruction that is in compliance with the requirements of the classroom instruction course, as established in rules and regulations; and

(8) any other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination as to whether the terms of this chapter have been complied with.

The superintendent shall be the custodian of all applications for CFPs under this chapter.

(b) The applicant shall submit to fingerprinting in accordance with procedures established in rules and regulations promulgated by the superintendent.

(c)   For an application for a CFP submitted within 180 days of the effective date of this 2010 ordinance, the superintendent shall either approve or deny such application no later than 120 days after the date the application is submitted, unless good cause is shown.   For an application for a CFP submitted thereafter, the superintendent shall either approve or deny an application within 45 days from the date the application is submitted, unless good cause is shown.  An application shall not be deemed submitted until the applicant provides all the required information or documentation.

(d) All CFPs issued by the superintendent shall contain the applicant's name, date of birth, sex, and signature.  Each CFP shall have the expiration date boldly and conspicuously displayed on the face of the CFP.

### 8-20-130   CFP card-fee and expiration.
(a) A CFP card shall expire 3 years after the date of issuance.

(b) The fee shall be $100.00.

(c) The CFP fee shall not be applicable to any resident of the city who is a retired department police officer.

### 8-20-140   Firearm registration certificate-required
(a) Subject to subsection (d), it is unlawful for any person to carry or possess a firearm without a firearm registration certificate.

(b) No application for a registration certificate shall be approved unless the applicant has been issued a valid CFP; provided no CFP shall be required for the issuance of a registration certificate if the person is an exempt person pursuant to section 8-20-110(e).

(c)   An applicant for a registration certificate shall submit an application to the superintendent on a form or in a manner prescribed by the superintendent. The application shall include the following:

> (1) name, telephone number and the address at which the firearm shall be located;
>
> (2) a copy of the applicant's CFP and Illinois FOID card;
>
> (3) the name of the manufacturer, the caliber or gauge, the model, type and the serial number identification of the firearm to be registered;
>
> (4) the source from which the firearm was obtained;
>
> (5) the address at which the firearm will be located;
>
> (6) if an antique firearm, the year of manufacture of the firearm;
>
> (7) the date the firearm was acquired; and

(8) any other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination as to whether the terms of this chapter have been complied with.

The superintendent shall be the custodian of all applications for registration certificates under this chapter.

(d)  (1) Subject to subsection (d)(2), an application for a registration certificate shall be submitted no later than 5 business days after a person takes possession within the city of a firearm from any source; provided that any applicant who has submitted a complete application within the required 5 business days shall be considered in compliance with this subsection until his registration certificate is either approved or denied.

(2) Notwithstanding any provision of this chapter to the contrary, a person has 90 days after the effective date of this 2010 ordinance to register a firearm, including a handgun, which had not been previously registered; provided that the person and firearm meet all the requirements of this ordinance.

(e)  For an application for a firearm registration certificate submitted within 180 days after the effective date of this 2010 ordinance, the superintendent shall either approve or deny such application no later than 45 days after the date the application is submitted.  For an application for a firearm registration certificate submitted thereafter, the superintendent shall either approve or deny the application within 21 days of the submission of the application, unless good cause is shown.  An application shall not be deemed submitted until the applicant provides all the required information or documentation.

(f) The provisions of this section shall not apply to:
(1)  firearms owned or under the direct control or custody of any federal, state or local governmental authority maintained in the course of its official duties;

(2)  duty-related firearms owned and possessed by peace officers who are not residents of the city;

(3) duty-related firearms owned or possessed by corrections officers and who are not residents of the city;

(4) firearms owned, manufactured or possessed by licensed manufacturers of firearms, bulk transporters or licensed sellers of firearms at wholesale or retail, provided that such persons have federal firearms license;

(5) any nonresident of the city participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided that such firearm shall be (i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case;

(6)  persons licensed as private security contractors, security guards, private detectives, or private alarm contractors, or employed by an agency certified as such by the Department of Professional Regulation;

(7) duty-related firearms of investigators of the Office of the State's Attorneys Appellate Prosecutor authorized by the board of governors of the Office of the State's Attorneys Appellate Prosecutor to carry weapons pursuant to Section 7.06 of the State's Attorneys Appellate Prosecutor's Act;

(8) duty-related firearms of special investigators appointed by a State's Attorney under Section 3-9005 of the Counties Code;

(9) firearms being transported by a person engaged in interstate travel in compliance with section 8-20-100; or

(10) those persons summoned by a peace officer to assist in making an arrest or preserving the peace while actually engaged in assisting the peace officer.

(g) Each registration certificate issued shall contain a unique registration certificate number, the person's name, the address at which the firearm will be located, and any other information the superintendent deems necessary to identify the person and the firearm.

**8-20-145 Registration certificates- expiration**.
(a) A registration certificate issued prior to the effective date of this 2010 ordinance shall remain in effect until its expiration.

(b) For registration certificates issued after the effective date of this 2010 ordinance, a registration certificate shall expire on the same date as the date of the expiration of the CFP issued to that person.

(c) A person shall file an annual registration report with the superintendent on a form, and in a manner, prescribed by the superintendent. The annual registration report shall set forth such information as required by the superintendent in rules and regulations. If a person has multiple registration certificates, the superintendent may align the dates for the annual registration reports to the same reporting date and combine such annual registration reports into one report.
Failure to file an annual registration report may result in revocation of a person's CFP or registration certificate, and may cause that firearm to become unregisterable to that person.

**8-20-150 Application fees.**
(a) A nonrefundable application fee of $15.00 shall be payable for each firearm registered. The fee shall accompany each initial application for a registration certificate.

(b) Any person who files an annual registration report late shall pay a late filing fee of $60.00.

(c) The application fee shall not be applicable to: (1) any duty-related firearm of a peace officer domiciled in the city, or (2) any duty-related firearm that was registered to that retired department police officer at the time of the his separation from active duty in the department.

**8-20-160 Restrictions on issuance of registration certificates.**
(a) Subject to subsections(b) and (c), the superintendent shall issue no more than one firearm registration certificate to a person for a handgun during any 30-day period; provided that the superintendent may permit a person first becoming a city resident to register more than one

handgun if those handguns were lawfully owned in another jurisdiction for a period of 6 months prior to the date of application.

(b)   In addition to a registration certificate for a handgun pursuant to subsection (a), an applicant may be issued a registration certificate for:

(1)  any firearm possessed by an applicant that was lawfully registered on the date of the enactment of this ordinance;

(2) any long gun which is eligible to be registered; or

(3) any antique firearm, including antique handguns.

The burden of proving that a firearm is an antique firearm shall be on the applicant.

(c) In addition to a registration certificate for a handgun pursuant to subsection (a), a retired department police officer may be issued a registration certificate for each duty-related handgun that was registered to that retired department police officer at the time of the his separation from active duty in the department.

**8-20-170  Unregisterable firearms.**

No registration certificate shall be approved for any of the following types of firearms:

(a) a sawed-off shotgun, .50 caliber rifle, machine gun, or short-barreled rifle;

(b) an unsafe handgun;

(c) a firearm that becomes unregisterable under the provisions of this chapter; provided that it shall only be unregistrerable for that person; or

(d)   assault weapons, unless they are owned by a person who is entitled to carry or possess them pursuant to section 8-20-035.

**8-20-180 CFP and registration certificate-General provisions.**

(a)    After issuance of a CFP or a registration certificate to a person, the person shall examine the CFP or registration certificate to insure that the information thereon is correct. If the information is incorrect in any respect, the person shall return it to the superintendent with a signed statement showing the nature of the error. The superintendent shall correct the error if it occurred as a result of the superintendent's administrative process.

In the event that the error resulted from incorrect information contained in the application, the person shall submit an amended application setting forth the correct information and a statement explaining the error in the original application.

(b) A CFP and the registration certificate shall be valid only for the person to whom it was issued.

(c) A registration certificate shall only be valid for the address on the registration certificate.  Except in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate.

(d) A CFP or registration certificate shall not be subject to sale, assignment, or transfer, voluntary or involuntary.

(e) Any application for a CFP or a registration certificate shall be held in abeyance when there is a criminal proceeding for a violent crime, or an offense involving a weapon, or a proceeding to deny or revoke a CFP or firearm registration certificate pending against the person, until such proceeding has terminated.

**8-20-185 Additional duties**.
(a) Every person issued a CFP or a firearm registration certificate, in addition to any other requirements of this code, shall immediately notify the department in a manner prescribed by the superintendent of:

> (1) the destruction of his firearm, or when the person knows, or should have known, that his firearm is lost, stolen or otherwise missing;

> (2) the loss, theft or destruction of the CFP or registration certificate within 72 hours of the discovery of such loss, theft, or destruction;

> (3) a change in any of the information appearing on the CFP or firearm registration certificate;

> (4) the sale, transfer, inheritance, or other disposition of the firearm not less than 48 hours prior to delivery.

(b) Every person issued a CFP or a firearm registration certificate, in addition to any other requirements of this code, shall:

> (1) immediately return to the superintendent his copy of the registration certificate for any firearm which is lost, stolen, destroyed or otherwise disposed of; and

> (2) keep all information current. Any change in required information shall be reported, on a form and in manner prescribed by the superintendent, within 24 hours after the change.

**8-20-190 Denials and revocations.**
(a) An application for a CFP or a registration certificate shall be denied for any of the following reasons:

> (1) any of the eligibility criteria of this chapter are not currently met;

> (2) the firearm is an unregisterable firearm;

> (3) the information furnished on or in connection with the application for a CFP or a registration certificate is false or misleading; or

> (4) the person fails to respond to any additional information, or investigation inquiries, requested by the superintendent regarding any application.

(b) A registration certificate shall be revoked:

(1) when the firearm becomes an unregisterable firearm; or

(2) if the CFP of the person was revoked.

(c) A CFP shall be revoked if any of the eligibility criteria of this chapter are not currently met.

(d) A CFP or registration certificate may be denied or revoked for a violation of this chapter, or any rules or regulations promulgated hereunder.

(e) The CFP and all registration certificates of any person convicted of a felony after the issuance of a CFP or registration certificate to that person shall be automatically revoked by operation of law, without a further hearing. The person shall immediately dispose of all firearms by:

(i) peaceably surrendering to the department all firearms for which a registration certificate was issued;

(ii) removing such firearm from the city; or

(iii) otherwise lawfully disposing of his interest in such firearm.

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

**8-20-200  Procedure for denial.**
(a)  If an application for a CFP or a registration certificate is denied by the superintendent, the superintendent shall notify the person making such application, in writing, of the denial.  The notice of denial shall:

(1) set forth the basis of the denial;

(2) include a statement that within ten days of the notice of denial, the person is entitled to request a hearing, in person and in writing, at the department of administrative hearings;

(3) include a statement that the person is entitled to appear at the hearing to testify, present documents, including affidavits, and any other evidence to contest the denial;

(4) include a statement that if the person fails to request a hearing within ten days, the person is deemed to have conceded the validity of the reason stated in the notice and the denial shall become final;

(5) include a certificate of service; and

(6) include an oath or affirmation by the superintendent certifying the correctness of the facts set forth in the notice of denial.

(b)  The person, within ten days after notice is sent of the denial, may file with the department of administrative hearings a request for a hearing. Such hearing request shall be

made in person, and in writing, at the department of administrative hearings.  An administrative law officer of the department of administrative hearings shall conduct such hearing within 72 hours of the request, excluding Saturdays, Sundays, and legal holidays.

(c) The department of administrative hearings shall conclude the hearing no later than 7 days after the commencement of the hearing.

(d) Based upon the evidence contained in the record, an administrative law officer of the department of administrative hearings shall, within 5 days of the conclusion of the hearing, issue written findings and enter an order granting or denying the application.  A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

(e)  If the person does not request a hearing within ten days after the notification of the denial is sent, the person shall be deemed to have conceded the validity of the reason stated in the notice and the denial shall become final.

(f)  Within three days after all the time for hearings or appeals has expired, the person shall:

(1) peaceably surrender to the department the firearm for which the registration certificate was denied;

(2)  remove such firearm from the city; or

(3)  otherwise lawfully dispose of his interest in such firearm.

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

**8-20-205  Procedure for revocation**.

(a) Except in cases where a CFP or registration certificate is automatically revoked pursuant to section 8-20-190(e), if, in the determination of the superintendent, a CFP or a registration certificate  should be revoked, he shall notify the person whose CFP or registration certificate is the subject of such revocation, in writing, of the proposed revocation. The notice shall:

(1) set forth the basis for the revocation;

(2) specify the location, date, and time for a hearing on the revocation;

(3 include a statement that the person is entitled to appear at the hearing to testify, present documents, including affidavits, and any other evidence to contest the proposed revocation;

(4) include a statement that failure of the person to appear at the hearing may include an entry of an order revoking the person's CFP or registration certificate;

(5) include a certificate of service; and

(6) include an oath or affirmation by the superintendent certifying the correctness of the facts set forth in the notice.

(b) The department of administrative hearings shall convene the hearing at the location and on the date and time specified in the revocation notice.

(c) Based upon the evidence contained in the record, an administrative law officer of the department of administrative hearings shall, within 5 days of the conclusion of the hearing, issue written findings and enter an order granting or denying the proposed revocation. A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

(d)  Within three days after notification of a decision unfavorable to the person, and all time for appeals has expired, the person shall:

(1) for revocation of a registration certificate:
(i) peaceably surrender to the department the firearm for which the registration certificate was revoked;

(ii)  remove such firearm from the city; or

(iii)  otherwise lawfully dispose of his interest in such firearm.

(2) for revocation of a CFP, dispose of all firearms in accordance with subsection (d)(1).

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

(e) In cases where a CFP or registration certificate is automatically revoked pursuant to section 8-20-190(e), the superintendent shall notify the person of the automatic revocation of the person's CFP or registration certificate. Within three days after notification of the automatic revocation, the person may file with the department of administrative hearings a request, in writing, for a hearing on the sole issue of identity and whether he was the person so convicted. It shall be a rebuttable presumption that the person whose CFP or registration certificate was automatically revoked is the same person who was convicted of a felony.

An administrative law officer of the department of administrative hearings shall conduct such hearing within 5 days of the request for a hearing.

Based upon the evidence contained in the record, an administrative law officer of the department of hearings shall, within 5 days of the conclusion of the hearing, issue written findings as to sole issue of the identity of the person. A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

If the person does not request a hearing within three days after the notification, the person shall be deemed to have conceded the validity of the identification.

**8-20-210 Automatic revocation of registration certificates.**
If, after a hearing, a CFP issued to a person is revoked, all firearm registration certificates issued to that person shall automatically be revoked and the person shall comply with section 8-20-205(d) for disposition of the firearms.

**ARTICLE IV.  Miscellaneous Provisions.**

**8-20-220  False information – Forgery – Alteration.**
(a) It is unlawful for any person purchasing any firearm or ammunition, or applying for any CFP or registration certificate, or, in giving any information pursuant to the requirements of this chapter, to knowingly give false information or offer false information or evidence of identity.

(b) It is unlawful for any person to forge or materially alter any application for a CFP or firearm registration certificate.

(c) It is unlawful for any person to forge or materially alter a CFP or a firearm registration certificate.

(d) It is unlawful for any person to knowingly possess a forged or materially altered CFP or firearm registration certificate.

(f)  It is unlawful for any person to knowingly make any false statement, submit any false information or misrepresent any information required in this chapter.

**8-20-230  Notice.**
For the purposes of this chapter, service of any notice, finding or decision upon a person shall be completed by any of the following methods by:

(a) personal delivery of a copy of such notice, finding or decision to the person;

(b) leaving a copy of such notice, finding or decision at the address identified on the application for a CFP or registration certificate; or

(c)  mailing, by first class mail, a copy of the notice, finding or decision to the address identified on the application for a CFP or registration certificate, in which case service shall be complete as of the date the notice was mailed.

**8-20-240 Posting of  unsafe handguns.**
(a)  The superintendent shall post on the department's web site the roster of unsafe handguns.

(b)  No less than 10 days prior to placing any handgun on the roster of unsafe handguns, the superintendent shall post on the department's  web site the type or model of the handgun that will be placed on the roster.

**8-20-250 Seizure and   forfeiture of firearms, ammunition, laser sight accessories and firearm silencers and mufflers-Authority and destruction.**
The superintendent has the authority to seize any firearm, assault weapon, ammunition, laser sight accessories, or firearm silencer or muffler carried or possessed in violation of this chapter or any applicable state or federal law.  Such items are hereby declared contraband and shall be seized by and forfeited to the city.

Whenever any firearm, ammunition, laser sight accessories, or firearm silencer or muffler is surrendered or forfeited pursuant to the terms of this chapter, or any applicable state or federal law, the superintendent shall ascertain whether such firearm, ammunition, assault weapon, laser sight accessories, or firearm silencer or muffler is needed as evidence in any matter.  All such

items which are not required for evidence shall be destroyed at the direction of the superintendent; provided that those firearms and ammunition that the superintendent shall deem to be of use to the department may be retained for the use of the department. A record of the date and method of destruction and an inventory of the firearm or ammunition so destroyed shall be maintained.

### 8-20-260   Rules and regulations.

The superintendent has the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required. All rules and regulations promulgated by the superintendent pursuant to this chapter shall be posted on the department's web site.

### 8-20-270   Acquisition or possession prohibited by law.

Nothing in this chapter shall make lawful the acquisition or possession of firearms or ammunition which is otherwise prohibited by law.

### 8-20-280 Prohibition on shooting galleries and target ranges.

Shooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited; provided that this provision shall not apply to any governmental agency. The discharge of a firearm in an area where hunting is permitted shall not be a violation of this section.

### 8-20-290 Severability.

If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which reasonably can be given effect without the invalid provision or term for the application thereof.

### ARTICLE V.  VIOLATION OF CHAPTER PROVISIONS.

### 8-20-300   Violation – Penalty.

(a) Any person who violates section 8-20-020, 8-20-030, 8-20-035, 8-20-060, 8-20-080 or 8-20-110 shall upon conviction be fined not less than $1,000.00 nor more than $5000.00 and be incarcerated for a term not less than 20 days nor more than 90 days. Each day that such violation exists shall constitute a separate and distinct offense.

(b) Unless another fine or penalty is specifically provided, any person who violates any provision of this chapter, or any rule or regulation promulgated hereunder, shall upon conviction or a finding of liability for the first offense, be fined not less than $1,000.00, nor more than $5,000.00, or be incarcerated for not less than 20 days nor more than 90 days, or both. Any subsequent conviction for a violation of this chapter shall be punishable by a fine of not less than $5,000.00 and not more than $10,000.00, and by incarceration for a term of not less than 30 days, nor more than six months. Each day that such violation exists shall constitute a separate and distinct offense.

(c) In addition to any other fine or penalty provided in this chapter, the CFP or registration certificate of any person who violates any provision of this chapter, or rule or regulation promulgated hereunder, may be revoked. Any person whose CFP is revoked shall not be eligible for a CFP for 5 years from the date of the revocation; provided that the superintendent may waive this restriction if, in the determination of the superintendent, the applicant has demonstrated that the applicant has good reason to fear injury to his person or property.

(d)   Upon the determination that a person has violated any provision of this chapter or any rule or regulation promulgated hereunder, the superintendent may institute an administrative adjudication proceeding with the department of administrative hearings by forwarding a copy of a notice of violation or a notice of hearing, which has been properly served, to the department of administrative hearings.

**SECTION 5.**  The renumbering and amending of the sections in Chapter 8-20 are not intended to invalidate, alter, or otherwise affect in any way any action taken, or could have been taken, based upon those sections, nor shall it be construed to affect any offense or act committed,  action or claim arising under those sections, penalty, forfeiture, or punishment incurred, except that any proceedings after the effective date of this 2010 ordinance shall conform, insofar as practicable, to the ordinance in effect at the time of the proceedings.

**SECTION 6.**  Title 8 of the Municipal Code of Chicago is hereby amended by adding a new section 8-24-005, by deleting sections 8-24-025 and 8-24-026, by deleting the language struck through, and by adding the language underscored, as follows:

## 8-16-090  Firearms for minors.

No person shall sell, loan, or furnish to any minor any ~~gun, pistol or other firearm, or~~ any toy gun, toy pistol, or other toy firearm in which any explosive substance can be used~~, within the city; except that minors may be permitted, with the consent of their parents or guardians, to use firearms on the premises of a duly licensed shooting gallery, gun club, or rifle club, or to shoot game birds in accordance with the provisions of Section 8-24-050 of this Code~~.

## 8-24-005 Definitions

For the purposes of this Chapter, the following definitions apply:

"Corrections officers," "firearm" and "peace officer" have the meaning ascribed to those terms in section 8-20-010.

## 8-24-010  Discharging firearms.

No person shall fire or discharge any ~~gun, pistol, or other~~ firearm within the city, except in the lawful self-defense or defense of another ~~upon premises used by a duly licensed shooting gallery, gun club, or rifle club~~, or in accordance with the provisions of Section 8-24-050 of this Code.

No cannon or piece of artillery shall be discharged or fired off in any public way or other public place within the city, except upon the express permission of the city council.

Any person violating any of the provisions of this section shall be fined not less than $~~250.00~~ 500.00 nor more than $~~500.00~~ 1,000.00 for each offense.

The provisions of this section shall not apply to persons listed in section 8-20-020 (b)(1)-(15). ~~sheriffs, coroners, constables, members of the police force, or other peace officers engaged in the discharge of their official duties, or to any person summoned by any of such officers to assist in making arrests or preserving the peace while such person so summoned is engaged in assisting such officer~~.

## 8-24-020  Carrying dangerous weapons.

(a) No person shall sell, offer for sale, keep, possess, loan or give to any person any knife, the blade of which is released by a spring mechanism, including knives known as "switch-

blades", any blackjack, slingshot, sandclub, sandbag, metal knuckles or bludgeon. No person shall sell, offer for sale, loan or give to any person 18 years of age or under any type or kind of knife, any blade of which is two inches in length or longer.

(b) [Reserved] ~~No person shall sell, manufacture, purchase, possess or carry any weapon from which eight or more shots or bullets may be discharged by a single function of the firing device~~.

(c) No person shall carry or possess any knife, the blade of which is released by a spring mechanism, including knives known as "switch-blades", any blackjack, slingshot, sandclub, sandbag, metal knuckles or bludgeon. No person 18 years of age or under shall carry or possess any knife, the blade of which is two inches in length or longer.

(d) No person shall carry or possess with intent to use same unlawfully against another a dagger, dirk, billy, dangerous knife, razor, stiletto or other dangerous or deadly weapon.

(e) [Reserved] ~~No person shall carry concealed on or about his person a pistol, revolver, derringer or other firearm. Provided, however, that this provision shall not apply to the following officers while engaged in the discharge of their official duties: sheriffs, coroners, constables, policemen or other duly constituted police officers and wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime; nor to the following employees or agents while engaged in the discharge of the duties of their employment: conductors, baggagemen, messengers, drivers, watchmen, special agents and policemen employed by railroads or express companies; nor to persons lawfully summoned by an officer to assist in making arrests or preserving the peace, while so engaged in assisting such officer.~~

(f) No person shall carry concealed on or about his person a or dagger, dirk, stiletto, bowie knife, commando knife, any blade of which is released by a spring mechanism, including knives known as "switch-blades" or any other type or kind of knife, any blade of which is more than two and one-half inches in length, ordinary razor or other dangerous weapon except that no person 18 years of age or under shall carry concealed on or about his person, any knife, the blade of which is two inches in length or longer. Provided, however, that this provision shall not apply to the following officers while engaged in the discharge of their official duties: sheriffs, coroners, <u>peace officers</u> ~~constables, policemen or other duly constituted police officers~~ and <u>corrections officers</u> ~~wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime~~; nor to the following employees or agents while engaged in the discharge of the duties of their employment: conductors, baggagemen, messengers, drivers, watchmen, special agents and policemen employed by railroads or express companies; nor to persons lawfully summoned by an officer to assist in making arrests or preserving the peace, while so engaged in assisting such officer.

(g) Any person violating the provisions of subsections (a), (c), (d) or (f) of this section shall be fined $200.00 for each offense, or shall be punished by imprisonment for a period not to exceed six months, or by both such fine and imprisonment. ~~Any person violating the provisions of subsections (b) or (e) of this section shall be subject to a fine of $300.00 for each offense, and a mandatory minimum sentence of not less than five days imprisonment nor more than six months imprisonment for a first offense; a mandatory minimum sentence of not less than fifteen days imprisonment nor more than six months imprisonment for a second offense; and a mandatory minimum sentence of not less than thirty days imprisonment nor more than six months imprisonment for a third or subsequent offense.~~

(h)     ~~In addition to all other penalties, weapons~~ Any weapons used in violation of this section are hereby declared contraband and shall be seized by and forfeited to~~, and confiscated by,~~ the city.

## 8-24-021  Sale, display and use of utility knives.

(a)     As used in this section, a "utility knife" is a knife consisting of a grip and single-edged sharp blade of the type typically used to cut such resistant surfaces as rugs, cardboard boxes, linoleum flooring and the like.

(b)     No person shall display or offer for sale any utility knife except by placing the knife either (1) in an area immediately accessible only to an employee of the establishment, and beyond the reach of any customer less than seven feet tall; or (~~b~~ 2) in a locked display cabinet, which can only be opened by an employee of the establishment.

*(omitted text is unaffected by this ordinance)*

## ~~8-24-025  Assault weapons or ammunition – Sale prohibited – Exceptions.~~

~~(a)     No person shall sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or assault ammunition, as those terms are defined in Chapter 8-20 of this Code. This section shall not apply to any officer, agent, or employee of this or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess an assault weapon or assault ammunition and is acting within the scope of his or her duties. In addition, this section shall not apply to the acquisition or possession of assault ammunition by persons employed to provide security for armored carriers or mobile check cashing services while in the course of such duties, while commuting directly to or from the person's place of employment, and while at the person's home, if the assault  ammunition (1) is acquired or possessed for use with a weapon that the person has been authorized to carry under Section 28 of the Illinois Private Detective, Private Alarm and Private Security Act of 1983; and (2) consists of an ammunition magazine that has a capacity of 15 or fewer rounds of ammunition.~~

~~(b)     Any assault weapon or assault ammunition possessed, sold or transferred in violation of subsection (a) is hereby declared to be contraband and shall be seized,and disposed of in accordance with the provisions of Section 8-20-220.~~

~~(c)     Any person found in violation of this section shall be subject to a fine of not less than $500.00 nor more than $1,000.00 for each offense, and a mandatory minimum sentence of not less than five days imprisonment nor more than six months imprisonment for a first offense;  a mandatory minimum sentence of not less than fifteen days imprisonment nor more than six months imprisonment for a second offense; and a mandatory minimum sentence of not less than thirty days imprisonment nor more than six months imprisonment for a third or subsequent offense.~~

~~(d)     Any person who, prior to the effective date of the ordinance codified in this section, was legally in possession of an assault weapon or assault ammunition prohibited by this section shall have 14 days from the effective date of the ordinance codified in this section to do any of the following without being subject to prosecution hereunder:~~

~~(1)  To remove the assault weapon or ammunition from within the limits of the City of Chicago; or~~

~~(2)   To modify the assault weapon either to render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon; or~~

~~(3)   To surrender the assault weapon or ammunition to the superintendent of police or his designee for disposal in accordance with Section 8-20-220.~~

~~**8-24-026  Fragmenting bullets and metal piercing bullets – Sale prohibited – Exceptions.**~~
~~(a)   No person shall manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any fragmenting bullets, metal piercing bullets, or disc projectile ammunition. This section shall not apply to any officer, agent, or employee of this or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess fragmenting bullets, metal piercing bullets, or disc projectile ammunition and is acting within the scope of his or her duties.~~

~~(b)   Any fragmenting bullets, metal piercing bullets, or disc projectile ammunition manufactured, possessed, sold or transferred in violation of subsection (a) are hereby declared to be contraband and shall be seized and disposed of in accordance with the provisions of Section 8-20-220.~~

~~(c)   Any person found in violation of this section shall be sentenced to not more than six months imprisonment or fined $500.00, or both.~~

**8-24-027  Disguised firearms prohibited.**
(a)   No person shall purchase, acquire, sell, offer or expose for sale, or possess any firearm that is designed, constructed, modified or disguised to resemble any other object.

(b)   Any person who violates subsection (a) of this section ~~shall be guilty of a misdemeanor, and~~ shall be <u>incarcerated</u> ~~subject to incarceration~~ for not less than 30 days and not more than 180 days for each offense. Each day of a continuing violation, and each purchase, acquisition, sale, offering or exposing for sale, or possession of a different firearm described in subsection (a) shall constitute a separate and distinct offense.

(c)   Nothing in this section suspends, repeals or alters any other provision of this Code which limits, restricts or prohibits the purchase, acquisition, sale, offering or exposure for sale, or possession of a firearm.

**SECTION 7.** The Municipal Code of Chicago is hereby amended by adding a new chapter 8-26, as follows:

**Chapter 8-26 Gun Offender Registration Ordinance**

**8-26-010  Definitions:**
For purposes of this chapter, the following definitions apply:

"Corrections facility" has the same meaning ascribed to that term in 720 ILCS 5/3-1-2.

"Conviction" or "convicted" means an adjudication by a court of competent jurisdiction that a person is guilty, and includes the sentence by the court, of the gun offense.

"Gun offender" or "offender" means any person convicted of a gun offense that is subject to the provisions of this chapter.

"Gun offense" means a criminal conviction of an offense for an unlawful use of a weapon that included a firearm under 720 ILCS 5/24, or criminal possession of a firearm in violation of any federal, state or local law.

"Department," "firearm," and "superintendent" have the meaning ascribed to those terms in section 8-20-010.

**8-26-020 Duty to register and to verity.**
(a) A gun offender who resides within the city, or remains in the city to work or attend school, shall register with the superintendent within 48 hours of either: (1) release, if the gun offender receives a sentence of imprisonment; or (2) the time sentence is imposed, if the sentence does not include imprisonment.

(b) The form and manner of registration shall be as provided in rules and regulations.

(c) The registration shall include the following information;
        (1) the person's name, date of birth, and sex;
        (2) the address where the gun offender resides, works, or attends school;
        (3) any other legal name;
        (4) copy of a driver's license or non-driver's photo identification card;
        (5) a photograph of the gun offender;
        (6) a description of the offense for which the offender was convicted;
        (7) the name and address of the offender's place of work, or expected place of work, including the name and phone number of his supervisor;
        (8) the name and address of any educational institution which the offender attends or expects to attend; and
        (9) any other information that the superintendent shall find reasonably necessary to effect the purpose of this chapter.

The gun offender shall sign a statement under oath attesting to the accuracy of the information required in this subsection.

(d) The superintendent may photograph the gun offender and require the gun offender to provide such documentation as the superintendent considers acceptable to verify any information required pursuant to this chapter.

(d) The gun offender shall submit to fingerprinting in accordance with rules and regulations promulgated by the superintendent.

**8-26-030 Initial and annual registration.**
(a) For the initial registration, a gun offender shall personally appear to register at such office of the police that the superintendent may direct.

(b) No later than 20 days after the one-year anniversary of the gun offender's initial registration, the gun offender shall personally appear at such office of the police that the superintendent may direct for the purpose of verifying the information required in this chapter.

(c) If a gun offender required to register under this chapter is confined to any federal, state or local correctional center, residential treatment center, hospital, or institution throughout

the 20-day period set forth in subsection (b), the gun offender shall personally appear as required by this subsection within 48 hours of release.

**8-26-040 Registration period.**

A gun offender shall comply with the requirements of this chapter for a period beginning when he is required to register and continuing until 4 years from the date of conviction, or 4 years after the expiration of any time being served on probation, parole, supervised release, or conditional release, or 4 years after the gun offender is unconditionally released from a correctional facility, prison, hospital or other place of confinement, whichever is last. The registration period is tolled any time the gun offender fails to register or otherwise fails to comply with the requirements of this chapter.

**8-26-050 Duty to report.**

A gun offender shall report any change in information required by this chapter with 48 hours of such change, in a manner and in a form prescribed by the superintendent.

**8-26-060 Creation of gun offender registry.**

(a) The superintendent is authorized to collect and maintain gun offender information obtained pursuant to this chapter.

(b) The superintendent shall create and maintain a registry of gun offenders registered pursuant to the provisions of this chapter.

(c) The superintendent is authorized to make the gun offender registry available to any other city sister agencies or any regional or national government-established gun offender registry and may accept files from such registries.

**8-26-070 Cooperation with other agencies.**

The superintendent is authorized to cooperate with the judiciary and state and other city sister agencies to facilitate the implementation of this chapter. Assistance and cooperation in the implementation of this chapter shall be provided by other city departments upon the request of the superintendent.

**8-26-080 Gun offender community notification.**

The superintendent shall post the gun offender registry on the department's web site, and must make the information contained in the registry database searchable with a mapping system which identifies registered gun offenders within 5 miles of an identified address. The information shall be updated as deemed necessary by the superintendent.

**8-26-090   Rules and regulations.**

The superintendent has the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required.

**8-26-100 Violation-Penalty.**

Any person who violates any provision of this chapter, or rule or regulation promulgated hereunder, shall, upon conviction, be fined not less than $300.00 nor more than $500.00 or be incarcerated for a term not to exceed six months, or both. Each day that such violation exists shall constitute a separate and distinct offense.

**8-26-110 Severability.**

If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which reasonably can be given effect without the invalid provision or term for the application thereof.

**SECTION 8.** This ordinance shall take effect 10 days after its passage and approval.

EXHIBIT "C"

http://www.amlegal.com/nxt/gateway.dll/Illinois/chicago_il/municipalcodeofchicago?f=templates$fn=default.htm$3.0$vid=amlegal:chicago_il

| Municipal Code of Chicago |
|---|
| TITLE 4 BUSINESSES, OCCUPATIONS AND CONSUMER PROTECTION |
| CHAPTER 4-144 WEAPONS |

# CHAPTER 4-144 WEAPONS

**Article I.  Deadly Weapons**

4-144-010    License – Required.
4-144-020    License – Application.
4-144-030    License – Fee.
4-144-040    Daily Report Required – Sales or Gifts.
4-144-050    Register required.
4-144-060    Restrictions on sales or gifts.
4-144-061    Sale of certain handgun ammunition prohibited.
4-144-062    Sale of handguns without childproofing or safety devices prohibited.
4-144-070    Permit required when – Issuance conditions.
4-144-080    Sales display restrictions.
4-144-090    Reserved.

**Article II.  Gunsmiths**

4-144-100    License – Required.
4-144-110    Reserved.
4-144-120    Reserved.
4-144-130    Daily report required – Repairs.

**Article III.  Air Rifles and Toy Weapons**

4-144-140    License required when.
4-144-145    Replica air guns – Sale or transfer prohibited.
4-144-150    Reserved.
4-144-160    Reserved.
4-144-170    Daily report required.
4-144-180    Permit – Required.
4-144-190    Replica firearms and pellet guns.
4-144-195    Replica military style weapons.
4-144-200    Granting of permit – Conditions.
4-144-210    Sale or transfer to minors prohibited.
4-144-220    Sales display restrictions.
4-144-230    Alteration restricted.
4-144-240    License – Revocation conditions.

**Article IV.  Violation of Chapter Provisions**

4-144-250    Violation – Penalties.
4-144-260    License – Revocation.
4-144-270    Severability.

# ARTICLE I.  DEADLY WEAPONS

**4-144-010  License – Required.**

It shall be unlawful for any person to engage in the business of selling, or to sell or give away, any pistol, revolver or other firearm, dagger, stiletto, billie, derringer, bowie knife, dirk, stun gun or taser, as defined in Section 24-1 of the Illinois Criminal Code, 720 ILCS 5/24-1, or other deadly weapon which can be carried or concealed on the person, without securing a weapons dealer license. The license required by this chapter shall be in addition to any other license required by law.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588)

**4-144-020  License – Application.**

An application for a weapons dealer license shall be made in conformity with the general requirements of this Code relating to applications for licenses.  The commissioner of business affairs and consumer protection shall approve said application before a license shall be issued.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588; Amend Coun. J. 5-9-07, p. 105047, § 8; Amend Coun. J. 11-19-08, p. 47220, Art. V, § 5)

**4-144-030  License – Fee.**

The fee for a weapons dealer license shall be as set forth in Section 4-5-010.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588; Amend Coun. J. 11-15-06, p. 92532, § 1; Amend Coun. J. 1-13-10, p. 83191, § 1)

**4-144-040  Daily report required – Sales or gifts.**

Every person dealing in the aforementioned deadly weapons shall make out and deliver to the superintendent of police every day before the hour of twelve noon, a legible and correct report of every sale or gift made under authority of his license during the preceding 24 hours, which report shall contain the date of such sale or gift, the name of the purchaser or donee with his or her address and age, the number, kind, description and price of such weapon, the number of the purchaser's permit, and the purpose given by such person for the purchase of such weapon, which report shall be substantially in the following form:

  Number of permit
  Number of weapon
  Name of purchaser
  Address of purchaser
  Age of purchaser
  Kind or description of weapon
  For what purpose purchased
  Price

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588)

**4-144-050  Register required.**

Every person dealing in the aforementioned deadly weapons or ammunition at retail, within the city, shall keep a register of all such weapons and ammunition sold, loaned, rented or given away by him. Such register shall contain the date of the sale, loaning, renting or gift, the number of the permit, the number of the weapon, the name and age of the person to whom the weapon or ammunition is sold, loaned, rented or given, the quantity of ammunition, the price of each item, and the purpose for which it is purchased or obtained. The said register shall be in the following form (see diagram for Section 4-144-050). Such register shall be kept open for the inspection of the police at all reasonable times during business hours.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 9-14-94, p. 56287)

Diagram for Section 4-144-050

| Date of sale | Number of superintendent of police permit | Number of weapon | To whom sold, loaned, rented, or given | Age of purchaser or person obtaining weapon | Kind and description of weapon or ammunition |
| --- | --- | --- | --- | --- | --- |

**4-144-060  Restrictions on sales or gifts.**

It shall be unlawful for any person to sell, barter or give away to any person within the city, any deadly weapon mentioned in Section 4-144-010, except to licensed dealers and to persons who have secured a permit for the purchase of such articles from the superintendent of police as hereinafter required. This section shall not apply to sales made of such articles which are to be delivered or furnished outside the city.

(Added Coun. J. 12-9-92, p. 25465)

**4-144-061  Sale of certain handgun ammunition prohibited.**

Except as allowed by subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, offer for sale, expose for sale, barter or give away to any person within the city, any ammunition of the following calibers and types:

  .45 automatic
  .380 automatic
  .38 special
  .357 magnum
  .25 caliber
  .22 caliber, including .22 long
  9 millimeter

EXHIBIT "D"

# Chicago Police Department Roster of "Unsafe Handguns"

**I. PURPOSE**

The following handguns have been specifically disapproved by the Superintendent as unsafe handguns and therefore cannot be registered within the City of Chicago.

**II. ROSTER OF UNSAFE HANDGUNS AS DESIGNATED BY THE SUPERINTENDENT**

**Where a model or type is not specifically referenced, all models from the listed manufacturer are designated unsafe.**

Acme

Acme Arms

Aetna

Aetna Arms

Afflerbach, William H.

Ajax Army

Alaska

Alday & Gabilondo

Alert

Alexia

Alexis

All Right Firearms Company

Allen

Allen, W. C.

Alsop, Charles H.

America

American Arms Co.

American Boy

American Bulldog

American Derringer Corp. — all spur trigger models, derringers, and pen guns

American Eagle

American Standard Tool Co.

Americus

AMES Sword Company

Andrews Ferry & Co.

ARES/ARES Defense Systems — all flashlight gun models

Aristocrat

Avenger

Babcock

Bacon Arms

Bacon Mfg. Co.

Baford Arms — all derringers

Ballard, C. H.

Bang-Up

Beemiller, Inc.

Big Bonanza

Billings

Bismarck

Bliss, Frank D.

Bloodhound

Blue Jacket

Blue Whistler

Bodeo

Bonanza

Bond Arms — all models without trigger guards

Boss

Boy's Choice

Brooklyn Arms

Brown Mfg. Co.

Bruff, Richard P.

Brutus

Bryco Arms

Buffalo Bill

Bull Dozer

Bulldog

Bulls Eye

C.S. Shatuck Arms Co.

Captain Jack

Catello Tribuzio — LAMPO model

Centennial

Challenge

Champion

Charles E. Billings — all knife guns or guns with knife attachments

Chase, Anson

Chicago Firearms Company — Chicago Protector and Protector models

Chichester

Chieftain

Christy, William J.

Clerke Products

Clipper

Cobra Ent.

Colt — all derringers

Cone, D. D.

Connecticut Arms & Mfg. Co.

Conqueror

Continental

Continental Arms Co.

Copeland, Frank

Covert Arms — all pen guns

Cowles & Smith

Cowles & Son

Creedmore

Crescent

Crescent Firearms Co. — all spur trigger models

Crispin, Silas

Crowell, George G.

Crown Jewel

CSG — all flashlight gun models

Cummings, O. S.

Czar

D. Debouxtay

Daily Arms Co.

Daisy

Daniel Werner — all knife guns or guns with knife attachments

Davis Ind.

Dead Shot

Defender

Defiance

Delhaxhe — Knuckleduster model

Deringer Rifle & Pistol Works

Dickinson, E. L. & J.

Dictator

Dreadnaught

Driscoll, J. B.

Eagle

Earlhood

Earthquake

Eclipse

Edward Boardman and Andrew Peavey — Little All Right models

Elector

Electric

Empire

Empress

Encore

Enterprise Gun Works

Ernst Schmidt & Co.

Esprin Brothers

Ethan Allen

Eureka

Evans, James E.

Evans, W. S.

Excelsior

Express

Favorite

Firearms Import Export (F.I.E.)

Fish, Daniel

Folsom Bros. & Co.

Forehand & Wadsworth — all spur and sheathed trigger models

Forehand Arms Co. — all spur and sheathed trigger models

Frank Copeland

Frank Wesson Arms

Freedom Arms — all sheathed trigger models

Frontier

Fryberg, Andrew

G.R.A.D. — all knife guns or guns with knife attachments

Garate Brothers

Garbi, Moretti, Y, CIA, (GMC)

Garrison

Gem

Genez, August G.

German Resel — all knife guns or guns with knife attachments

Governor

Great Western Gun Works

Gross Arms Co.

Guardian

Half-Breed

Hard Pan

Harrington & Richardson (H&R) — all spur, stud, and sheathed trigger models

Harrington and Richardson — all knife guns or guns with knife attachments

Hartford Arms Co.

Hartley and Graham — Squeezer and Protector models

Haskell Mfg., Inc.

Henrion, Dassy, & Heuschen, (HDH)

Hi-Point Firearms

HJS Arms, Inc.

Hood Firearms Co.

Hopkins & Allen — all sheathed trigger models

Horseman's — all knife guns or guns with knife attachments

Hungarian — Mini Max – 9 model

Hyde & Shattuck

Iberia Firearms, Inc.

Imperial Arms

International

Irving, William

Iver Johnson — all sheathed trigger and 'knuckle' attachment models

J. Ductworth — Protector model

J. P. Sauer and Sons of Suhl — Bar Pistol model

J. Stevens — all sheathed trigger models

J.H. Johnson

James Reid Revolvers — Friend, My Friend, Model #2 Knuckle-Duster, New Model Knuckle-Duster, and New Model My Friend models

James Rodgers — all knife guns or guns with knife attachments

James Turbiaux — Le Protector model

Jennings, Inc.

Jewel

Jimenez Arms, Inc.

John Vittie — all pen gun models

Johnson Bye & Co.

Jose Aldazabal & Sons

Joseph Rodgers & Sons — all knife guns or guns with knife attachments

Jules Bertrand

Keno

Kittemaug

L. Dolne Invur — Apache Knuckleduster model

L.E. Polhemus Manufacturing Company — all knife guns or guns with knife attachments
	and all pen gun models

Le Francais — Gaulois model

Leader

Lee Arms Co.

Liberty

Lion

Little All Right Firearms Co.

Little Giant

Little John

Little Joker

Lombard, H.C. & Co.

Lorcin Engineering Co., Inc.

Louis Chobert

Louis Dolne — APACHE model

Lowell Arms Co.

Maltby-Curtis — all spur trigger models

Maltby-Henly

Manufrance — Gaulois and Mitrailleuse models

Marlin

Marquis of Lorne

Merrimack Arms

Merveilleux — Repeating Pistol model

Merwin & Bray

Minneapolis Firearms Company — Protector model

Mohegan

Monarch

Monitor

Moore's Patent Firearms Company — all derringers

Morai

Morgan & Clapp

Mountain Eagle

Napoleon

National

National Arms Co.

Nero

New York Pistol Co.

Nonpareil

North American Arms, (NAA) Mini-Series — all spur trigger models

Norwich Arms Co.

Norwich Falls Pistol Co.

Norwich Pistol Co.

Old Hickory

Osgood Gun Works

Paragon

Parole

Patriot

Peavey — all knife guns or guns with knife attachments

Penetrator

Phoenix Arms

Pickert — all folding trigger models

Pinafore

Pioneer

Pittson Arms Co.

Pointer

Praga — all folding trigger models

Prarie King

Premier

Prescott — all sheathed trigger models

Princess

Protector

Queen

R. J. Braveman Corporation — all pen gun models

Ranger

Raven Arms

Reck

Regnum — Repeating Pistol model

Reid — all sheathed trigger models

Remington — all sheathed trigger models

Retolaza — all revolvers

Retriever

Rigby — Knuckleduster and Stricker models

Rob Roy

Robin Hood

Rocky Mountain Arms Corp — all Mini-Revolver spur trigger models

Rodier, Louis C.

Rohm/RG Industries

Rollin White — all spur trigger models

Rome Revolver & Novelty Works

Rouchouse — French Squeezer model

Royal

Royal Small Arms Factory

Rupertus

Ryan Mfg. Co.

S.P. Cottrell and Son — all flashlight gun models

Sailors — all knife guns or guns with knife attachments

Scott Arms Co.

Scout

Senator

Shatuck — UNIQUE model

Sig Sauer — Mosquito only

Smith & Wesson — all spur trigger models

Smith, Otis

Smoker

Sneider, Charles E.

Southerner

Spy

Stafford, T. J.

Stallard Arms

Standard Arms

Standard Tool Co.

Stans Gunsmithing — all pen gun models

Stinger Manufacturer Corporation — all pen gun models

Sundance Industries

Swamp Angel

Taylor, L. B.

Terrier

Terror

Terry, J. C.

Thomas J. Ryan

Tiger

Tower's Police Safety

Tramp's Terror

True Blue

Turner & Ross

Two Unwin & Rodgers — all knife guns or guns with knife attachments

Tycoon

U.M.C. Arms Co.

U.S. Arms Co.

Uhlinger, W.L.& Co.

Uhlinger, William P.

Union

Union Jack

Union Revolver

Unique

United States Small Arms Company — all knife guns or guns with knife attachments

Unwin & Rodgers of Sheffield — all knife guns or guns with knife attachments

Veiled Prophets

Veteran

Veto

Victor

Victoria

Waffen-Glaser — all pen gun models

Walther — P22 only

Webber Pistol — Squeezer model

Wesson & Harrington

Wesson Frank — Large Frame Superposed pistol

Wesson, Frank

Western Arms Co.

White Jacket

White Star

Whitney Arms Co.

Wide Awake

Wilhelm Decker

William and John Rigby — Striking Weapon Pistol model

William Irving

William W. Marston — all knife guns or guns with knife attachments

Winfield Arms Co. — all spur trigger models

XL

Xpert

You Bet

Any other ammunition, regardless of the designation by the manufacturer, distributor or seller, that is capable of being used as a substitute for any of the foregoing.

(Added Coun. J. 9-14-94, p. 56287)

**4-144-062  Sale of handguns without childproofing or safety devices prohibited.**

Except as allowed by subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, barter or give away to any person any handgun which does not contain:

(1)    A safety mechanism to hinder the use of the handgun by unauthorized users. Such devices shall include, but shall not be limited to, trigger locks, combination handle locks, and solenoid use-limitation devices, and

(2)    A load indicator device that provides reasonable warning to potential users such that users even unfamiliar with the weapon would be forewarned and would understand the nature of the warning.

Safety mechanism means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun by other than the owner of the handgun and those specifically authorized by the owner to use the handgun.

A trigger lock means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the handgun without first removing the trigger lock by use of the trigger lock's key.

A combination handle lock means a device that is part of the handgun which precludes the use of the handgun unless the combination tumblers are properly aligned.

A solenoid use-limitation device means a device which precludes, by use of a solenoid, the firing of the handgun unless a magnet of the appropriate strength is placed in proximity to the handle of the weapon.

A load indicator means a device which plainly indicates that a bullet is placed in the handgun in a way that pulling the trigger or otherwise handling the handgun may result in detonation.

(Amend Coun. J. 2-7-97, p. 38729)

**4-144-070  Permit required when – Issuance conditions.**

It shall be unlawful for any person to purchase any deadly weapon mentioned in Section 4-144-010 which can be concealed on the person, without first securing from the superintendent of police a permit so to do. Before any such permit is granted, an application in writing shall be made therefor, setting forth in such application the name, address, age, height, weight, complexion, nationality and other elements of identification of the person desiring such permit, and the applicant shall present such evidence of good character as the superintendent of police at his discretion may require.

The superintendent of police shall refuse such permit to any person under 18 years of age, any narcotic addict, any person who has been convicted of a felony under the laws of this state or any other jurisdiction within five years from release from penitentiary or within five years of conviction if penitentiary sentence has not been imposed, and any person who has been released from a mental institution or from the custody of the Illinois Youth Commission within the last five years, or is mentally retarded. Otherwise, in case he shall be satisfied that the applicant is of good moral character, it shall be the duty of the superintendent of police to grant such permit.

(Added Coun. J. 12-9-92, p. 25465)

**4-144-080  Sales display restrictions.**

It shall be unlawful for any person to exhibit for sale in show cases or show windows, on counters or in any other public manner, any deadly weapon mentioned in Section 4-144-010, or to display any signs, posters, cartoons, or display cards suggesting the sale of any such deadly weapons, or any ammunition whose sale is prohibited pursuant to Section 4-144-061 of this Code.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 9-14-94, p. 56287)

**4-144-090  Reserved.**

**Editor's note –** Coun. J. 4-16-97, p. 42588, amended and renumbered this section as § 4-144-260.

# ARTICLE II.  GUNSMITHS

**4-144-100  License – Required.**

It shall be unlawful for any person to engage in the business of repairing any pistol, revolver, derringer or other firearm which can be concealed on the person without securing a weapons dealer license so to do.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588)

**4-144-110  Reserved.**

**Editor's note –** Coun. J. 4-16-97, p. 42612, repealed § 4-144-110, which pertained to license and application.

**4-144-120  Reserved.**

**Editor's note –** Coun. J. 4-16-97, p. 42612, as corrected by Coun. J. 9-14-05, p. 55282, repealed § 4-144-120, which pertained to license and application.

**4-144-130  Daily report required – Repairs.**

Every person licensed under this chapter shall make out and submit to the superintendent of police every day, before twelve noon, a legible and correct report of each firearm received for repair during the preceding 24 hours,

which report shall contain the date, name, physical description, age, address and occupation of the owner of such firearm, the type of weapon, its make, and the serial number and bore length of such weapon, which report shall be substantially in the following form:

    Date
    Name of owner
    Physical description of owner
    Age of owner
    Address of owner
    Occupation of owner
    Type of weapon
    Make of weapon
    Serial number
    Bore and length of weapon

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588)

# ARTICLE III.  AIR RIFLES AND TOY WEAPONS

**4-144-140  License required when.**

It shall be unlawful for any person to engage in the business of selling or to sell or to give away any air rifle or air gun, or any toy firearms or other toy in the nature of a firearm in which any explosive substance can be used, without securing a weapons dealer license, and no person having secured such license shall sell or give away any such weapon to any person within the city who has not secured a permit from the superintendent of police to purchase such weapon in the manner hereinafter provided.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 4-16-97, p. 42588)

**4-144-145  Replica air guns – Sale or transfer prohibited.**

(a)     It shall be unlawful for any person to engage in the business of selling or to sell, exhibit for sale, give away or otherwise transfer any replica air gun in the city of Chicago. For purposes of this article, "replica air gun" means and includes any air gun, air pistol, air rifle, spring gun, spring pistol, BB gun, pellet gun or any other implement that a person could reasonably perceive as an actual firearm but that is not a firearm, and that is capable of firing or discharging a projectile constructed of hard plastic, steel, lead or other hard materials with a force that reasonably is expected to cause bodily harm.

(Added Coun. J. 10-4-06, p. 87431, § 1)

**4-144-150  Reserved.**

**Editor's note** – Coun. J. 4-16-97, p. 42588, as corrected by Coun. J. 9-14-05, p. 55267, repealed § 4-144-150, which pertained to license – application.

**4-144-160  Reserved.**

**Editor's note** – Coun. J. 4-16-97, p. 42588, as corrected by Coun. J. 9-14-05, p. 55267, repealed § 4-144-160, which pertained to license – fee.

**4-144-170  Daily report required.**

Every person licensed under this chapter shall make out and deliver to the superintendent of police every day, before the hour of twelve noon, a legible and correct report of every sale or gift made under authority of said license to sell the kind of weapons or other articles named in Section 4-144-140 during the preceding 24 hours, which report shall contain the date of such sale or gift, the name of the purchaser or donee with his or her address and age, the number, kind, description and price of such weapon or other article, the number of the purchaser's permit, and the purpose for the purchase of such weapon or other article, which report shall be substantially in the following form:

    Number of permit
    Number of weapon or article
    Name of purchaser
    Address of purchaser
    Age of purchaser
    Kind or description of weapon or other article
    For what purpose purchased
    Price

(Added Coun. J. 12-9-92, p. 25465)

**4-144-180  Permit – Required.**

It shall be unlawful for any person to purchase any air rifle or air gun, or any toy firearms or other toy in the nature of a firearm in which any explosive substance can be used, without first securing from the superintendent of police a permit so to do. Before any such permit is granted, an application in writing shall be made therefor, setting

forth in such application, the name, address, age, height, weight, complexion, nationality and other elements of identification of such person desiring such permit. Such application shall also contain a recommendation from two persons who shall appear to be taxpayers residing within the city that the permit shall issue.
(Added Coun. J. 12-9-92, p. 25465)
**4-144-190  Replica firearms and pellet guns.**
(a)     It shall be unlawful for any person to purchase, possess, use, sell, give away or otherwise transfer, or to engage in the business of selling or to exhibit for sale, a replica firearm, paint pellet or paint pellet gun in the City of Chicago, except as provided in subsection (c) of this section.

(b)     For the purposes of this chapter, the following terms shall have the following meanings:
"Paint pellet" means a pellet or projectile of paint which explodes upon impact.
"Paint pellet gun" means any firearm, toy firearm or toy in the nature of a firearm which is powered by compressed gas and which fires paint pellets.
"Replica firearm" means any device, object or facsimile made of plastic, wood, metal or any other material, that a person could reasonably perceive as an actual firearm but that is incapable of being fired or discharged, except that the term will not include any replica of an antique firearm, as defined in Section 8-20-030(b) of this Code. Each such replica firearm shall have as an integral part, permanently affixed, a blaze orange plug inserted in the barrel of such replica firearm. Such plug shall be recessed no more than six millimeters from the muzzle end of the barrel of such firearm.

(c)     The manufacture, marketing, distribution, sale and possession of replica firearms are permitted if the devices are manufactured, marketed, distributed, sold or held (1) solely for subsequent transportation in intrastate, interstate or foreign commerce, or (2) solely for use in theatrical productions, including motion picture, television and stage productions. Such devices shall not be displayed to the general public or sold for other use in the city. The use or possession of a paint pellet or paint pellet gun is permitted if the use or possession is solely within premises licensed as a public place of amusement; or if the use or possession is solely for the purpose of transporting the paint pellet or paint pellet gun to or from those premises by the licensee or agent or employee of the licensee, or by a common carrier, for purposes of initial delivery, repair or disposal of the paint pellet or paint pellet gun.

(d)     Any person who violates the provisions of this section, upon conviction thereof, shall be fined not less than $100.00 nor more than $500.00 for each offense. Any such violation may also be punishable as a misdemeanor by incarceration in a penal institution other than a penitentiary for up to six months under the procedures set forth in Section 1-2-1.1 of the Illinois Municipal Code as amended, and in the Illinois Code of Criminal Procedure, Illinois Revised Statutes, Chapter 38, Sections 100-1 et seq. (1985), as amended, in a separate proceeding. All actions seeking the imposition of fines only shall be filed as quasi-criminal actions subject to the provisions of the Illinois Code of Civil Procedure, Illinois Revised Statutes, Chapter 110, Section 1-101, et seq. (1985), as amended. Each purchase, use, sale, gift or transfer of any such replica firearm, paint pellet or paint pellet gun shall be deemed a separate and distinct offense, and each day a person unlawfully engages in the business of selling or exhibits for sale any such replica firearm, paint pellet or paint pellet gun shall be deemed a separate and distinct offense.
(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 11-2-94, p. 58607)
**4-144-195  Replica military style weapons.**
It shall be unlawful for any person to purchase, possess, use, sell, give away or otherwise transfer, or to engage in the business of selling or to exhibit for sale, any replica rocket propelled grenade launcher, bazooka, artillery piece, grenade, mine, bomb, or items similar to weapons designed and manufactured for military purposes or replicas thereof, in the City of Chicago.

Any person who violates this section shall be fined not less than $100.00 nor more than $500.00 for each offense.
(Added Coun. J. 7-27-05, p. 54335, § 2)
**4-144-200  Granting of permit – Conditions.**
It shall be the duty of the superintendent of police to refuse such permit to any person having been convicted of any crime, and any minor. Otherwise, if the applicant is of good moral character, the superintendent of police shall grant such permit upon the payment of a fee of $1.00.
(Added Coun. J. 12-9-92, p. 25465)
**4-144-210  Sale or transfer to minors prohibited.**
It is unlawful for any dealer to sell, lend, rent, give or otherwise transfer an air rifle to any person under the age of 18 years where the dealer knows the person to be under 18 years of age, or where such dealer has failed to make reasonable inquiry relative to the age of such person and such person is under 18 years of age.

It is unlawful for any person to sell, lend or otherwise transfer any air rifle to any person under 18 years of age.
(Added Coun. J. 12-9-92, p. 25465)
**4-144-220  Sales display restrictions.**

It shall be unlawful for any person to exhibit for sale in show cases, or show windows, on counters, or in any public manner, any air rifle or air gun, or any toy firearm or other toy in the nature of a firearm in which any explosive substance can be used, or to display any signs, posters, cartoons or display cards suggesting the sale of any such weapon or firearm.

(Added Coun. J. 12-9-92, p. 25465)

**4-144-230  Alteration restricted.**

No person shall alter any air rifle, air gun, toy firearm or toy in the nature of a firearm in such a way that it can fire any type of projectile other than that which it was designed by its manufacturer to fire.

(Added Coun. J. 12-9-92, p. 25465)

**4-144-240  License – Revocation conditions.**

When the license of any said licensee shall be revoked, no other such license shall be issued to such licensee for a period of three years thereafter.

(Added Coun. J. 12-9-92, p. 25465)

# ARTICLE IV.  VIOLATION OF CHAPTER PROVISIONS

**4-144-250  Violation – Penalties.**

Any person violating Section 4-144-010 or Section 4-144-060 or Section 4-144-061 of this chapter shall be fined not less than $500.00 nor more than $1,000.00 for a first offense and $1,000.00 for each subsequent offense. Any person violating any other provision of this chapter shall be fined not less than $250.00 nor more than $500.00 for a first offense and not less than $500.00 nor more than $1,000.00 for each subsequent offense. Each purchase, sale or gift of any weapon or article mentioned in this chapter shall be deemed a separate offense.

(Added Coun. J. 12-9-92, p. 25465; Amend Coun. J. 9-14-94, p. 56287)

**4-144-260  License – Revocation.**

In case the mayor shall determine that a licensee has violated any provision of this chapter, he shall revoke the weapons dealer license issued to such person, and the money paid for such license shall be forfeited to the city. No other such license shall be issued to such licensee for a period of three years thereafter.

(Amend Coun. J. 4-16-97, p. 42588)

**4-144-270  Severability.**

If any section, subsection, paragraph, or part of this ordinance is for any reason held to be unconstitutional or invalid by any final court of competent jurisdiction, such decision shall not affect the validity or effectiveness of the remaining portions of this ordinance.

(Added Coun. J. 7-27-05, p. 54335, § 2)

Disclaimer:

This Code of Ordinances and/or any other documents that appear on this site may not reflect the most current legislation adopted by the Municipality. American Legal Publishing Corporation provides these documents for informational purposes only. These documents should not be relied upon as the definitive authority for local legislation. Additionally, the formatting and pagination of the posted documents varies from the formatting and pagination of the official copy. The official printed copy of a Code of Ordinances should be consulted prior to any action being taken.

For further information regarding the official version of any of this Code of Ordinances or other documents posted on this site, please contact the Municipality directly or contact American Legal Publishing toll-free at 800-445-5588.

© 2010 American Legal Publishing Corporation
techsupport@amlegal.com
1.800.445.5588.