# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **SECOND AMENDMENT ARMS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **No. 10-CV-4257** |
| | ) | **Judge Robert M. Dow, Jr.** |
| **CITY OF CHICAGO, et al.,** | ) | **Magistrate Judge Sheila M. Finnegan** |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS I, III, AND VIII-XVIII OF PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants City of Chicago (the "City"), Mayor Rahm Emanuel, Superintendent of Police Garry McCarthy, and Susana Mendoza (collectively, "Defendants"), by their counsel, Stephen R. Patton, Corporation Counsel of the City of Chicago, hereby file this memorandum in support of their Motion to Dismiss Counts I, III, and VIII-XVIII of the Second Amended Complaint ("Complaint" or "Compl.") filed by Plaintiffs Second Amendment Arms ("SAA"), R. Joseph Franzese, Robert M. Zieman, Sr., ICarry, and Shaun A. Kranish, and Tony Kole (collectively, "Plaintiffs").

## INTRODUCTION

In their eighteen-count Complaint, Plaintiffs challenge every provision of the City's Responsible Gun Owners' Ordinance (the "Ordinance"). Their Complaint is long and confusing; it brings claims under myriad provisions of the United States Constitution and the Illinois Constitution and various federal and state laws. For the reasons set forth below, Defendants move to dismiss that portion of Count I which challenges the City's Zoning Ordinance and Counts III and VIII-XVIII in their entirety.

## LEGAL STANDARDS

Rule 12(b)(6) permits dismissal when the plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). On a motion to dismiss, the Court accepts as true all well-pleaded allegations, construing all such allegations in the light most favorable to the plaintiff and drawing all reasonable inferences in favor of the plaintiff. *See, e.g., Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In other words, where the well-pleaded facts just infer the "mere possibility of misconduct," the plaintiff has failed to demonstrate that he or she is entitled to relief. *Id.* at 1950. Moreover, allegations that are mere conclusions are not entitled to the presumption of truth. *See id.*

Federal Rule of Civil Procedure 12(b)(1) allows dismissal when the Court lacks subject matter jurisdiction over a plaintiff's claim due to a lack of standing. *See* Fed. R. Civ. P. 12(b)(1); *Am. Fed'n of Gov't Employees, Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999) ("Obviously, if a plaintiff cannot establish standing to sue, relief from this court is not possible, and dismissal under 12(b)(1) [for lack of subject matter jurisdiction] is the appropriate disposition."). As is true in considering a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Transit Exp., Inc.*

*v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing that the Court has subject matter jurisdiction, and when such jurisdiction is challenged, the plaintiff must provide competent proof of jurisdictional facts to support its allegations. *See Thomas v. Gaskill*, 315 U.S. 442, 446 (1942); *Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

## ARGUMENT

**A.      Any Challenge to the Chicago Zoning Ordinance in Count I Should Be Dismissed.**

In Count I, Plaintiffs challenge the constitutionality of section 4-144-010 of the Municipal Code of Chicago, which makes it unlawful to "engage in the business of selling, or to sell, give away or otherwise transfer, any firearm as that term is defined in Section 8-20-010," Mun. Code of Chicago, § 4-144-010, under the Second and Fourteenth Amendments. *See* Compl. ¶¶ 45-48. Plaintiffs also challenge in paragraph 48 the City's Zoning Ordinance "to the extent that [it is] construed to prohibit the reasonable availability of firearms through commercial firearms dealers . . . ." *Id.* ¶ 48. Defendants move to dismiss any claim in Count I that the City's Zoning Ordinance prohibits the commercial sale of firearms for two reasons. First, Plaintiffs fail to identify in their Complaint any provision of the Chicago Zoning Ordinance that would prohibit commercial sales of firearms. Indeed, Plaintiffs state that "[i]t is not apparent that Chicago's zoning ordinance specifically allows or forbids gun shops . . ." *Id.* ¶ 20. Defendants are therefore not on notice as to which provision of the Chicago Zoning Ordinance they are called upon to defend, in violation of Fed. R. Civ. P. 8(a)(2), which states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Second, there is no provision of the Chicago Zoning Ordinance that prohibits the commercial sale of firearms. Any such claim, to the

extent it is contained in Count I, should therefore be dismissed pursuant to Rule 12(b)(6).

**B.**    **Plaintiffs' Claim in Count III that Section 8-20-090 Violates the Supremacy Clause Fails and Should Be Dismissed.**

Although Plaintiffs' allegations in Count III are confusingly presented, it appears that Plaintiffs are claiming that sections 8-20-020, 8-20-030, and 8-20-180(c) are invalid under the Second and Fourteenth Amendments because: (i) those sections prohibit law-abiding citizens from possessing handguns outside their home and from possessing long guns outside their home or fixed place of business; and (ii) there is no exception for "lawful possession of a stock of firearms in a place of business for purposes of commercial sale and purchase of firearms." Compl. ¶¶ 54-56. Plaintiffs also allege that sections 8-20-020(b)(17) and 8-20-030, which allow a person to possess a firearm outside the home or fixed place of business if engaged in the "lawful transportation" of a firearm, and the definition of "lawful transportation" contained in section 8-20-010, are unconstitutional because of various infirmities with that definition.[1] *Id.* ¶ 57. They identify the following deficiencies with the definition of "lawful transportation": (i) the impossibility of complying with the requirement that a firearm be broken down in a non-functioning state; and (ii) the vagueness of what constitutes a "firearm case," which is defined in section 8-20-010. *See* Compl. ¶ 57a-b.

Plaintiffs also identify a third alleged deficiency with the definition of "lawful transportation" to the extent a person is in compliance with it by virtue of being in compliance with section 8-20-090, which provides:

---

[1] "Lawful transportation" is defined as the "transportation of a firearm by a person: (1) in compliance with section 8-20-090; or (2) who has a valid FOID card, a CFP and firearm registration certificate, if applicable, and the firearm is: (i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case." Mun. Code of Chicago, § 8-20-010.

> It shall not be a violation of this chapter if a person transporting a firearm or ammunition while engaged in interstate travel is in compliance with 18 U.S.C. § 926A. There shall be a rebuttable presumption that any person within the city for more than 24 hours is not engaged in interstate travel, and is subject to the provisions of this chapter.

Mun. Code of Chicago, § 8-20-090. They claim that section 8-20-090 is unconstitutional under the Supremacy Clause of Article VI, clause 2 of the United States Constitution because it "engrafts" onto 18 U.S.C. § 926A two requirements not contained therein: (i) that the transportation be interstate; and (ii) that there is a rebuttable presumption that any person within the City for more than 24 hours is not engaged in interstate travel.[2] Compl. ¶ 57c.[3]

Plaintiffs' challenge to section 8-20-090 under the Supremacy Clause fails as a matter of law and should be dismissed. The Supremacy Clause provides, in pertinent part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Under the Supremacy Clause, state or local legislation is preempted and invalidated by federal law under one

---

[2] Section 926A of Title 18 of the United States Code provides: "Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: *Provided*, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console." 18 U.S.C. § 926A.

[3] Plaintiffs' challenge to section 8-20-090 under the Supremacy Clause is really a separate claim and should have been stated in a separate count pursuant to Fed. R. Civ. P. 10(b). Instead, Plaintiffs improperly buried it in a single paragraph of a count containing other claims.

of three situations: (1) express preemption, which occurs "when a federal statute explicitly states that it overrides state or local law;" (2) field preemption, which exists "when federal law so thoroughly occupies a legislative field as to make it reasonable to infer that Congress left no room for the states to act;" or (3) conflict preemption, in which it is impossible to comply with both federal and state law. *Aux Sable Liquid Products v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008) (internal quotation marks and citations omitted). Two principles guide the courts in determining whether preemption exists. First, "'the purpose of Congress is the ultimate touchstone in every pre-emption case.'" *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Second, "[i]n all pre-emption cases . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.*

Section 926A does not preempt section 8-20-090. There is no language in section 926A whatsoever expressly preempting state or local law. Indeed, section 927 of Title 18 of the United States Code states: "No provision of this chapter shall be construed as indicating an intent on the part of Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together." 18 U.S.C. § 927. Section 927's plain language also defeats any claim that Congress occupied the field so as to preclude state or local action. Finally, there is no conflict preemption because compliance with 8-20-090 and 18 U.S.C. § 926A is entirely possible. Section 8-20-090 specifically provides that if an individual is in compliance with section 926A, that individual is also in compliance with section 8-20-090. Plaintiffs allege that the City's ordinance improperly adds the requirement that

6

the individual must be traveling interstate, but that is already required by section 926A, which is titled "*Interstate* transportation of firearms." 18 U.S.C. § 926A (emphasis added). *See also Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 132 (2d Cir. 2010) (section 926A "allows individuals to transport firearms from one state in which they are legal, through another state in which they are illegal, to a third state in which they are legal, provided that several conditions are met, without incurring criminal liability under local gun laws"); *Revell v. Port Auth. of New York & New Jersey*, 598 F.3d 128, 132 (3d Cir. 2010) (section 926A "allows a person to transport a firearm and ammunition from one state through a second state to a third state, without regard to the second state's gun laws, provided that the traveler is licensed to carry a firearm in both the state of origin and the state of destination and that firearm is not readily accessible during the transportation"), *cert. denied*, 131 S.Ct. 995 (2011); *Coalition of New Jersey Sportsmen v. Florio*, 744 F. Supp. 602, 609 (D.N.J. 1990). And the second deficiency that Plaintiffs identify in their complaint – that 8-20-090 creates a rebuttal presumption that interstate travel has not occurred if the person is within the City for more than 24 hours – fails because section 8-20-090 does not forbid an individual from traveling interstate with a firearm. It instead creates a presumption – which is rebuttable – that interstate travel has ceased if the individual remains within Chicago for more than 24 hours. If the individual demonstrates that interstate travel is indeed ongoing despite being in Chicago for more than 24 hours and otherwise is in compliance with section 926A, there is no violation of section 8-20-090.

For these reasons, Plaintiffs' challenge to section 8-20-090 under the Supremacy Clause fails as a matter of law and should be dismissed for failure to state a claim under Rule 12(b)(6).

**C.     Count VIII Fails Because Plaintiffs Do Not Have Standing and Otherwise Fail to State a Claim.**

In Count VIII, Plaintiffs challenge under the Second and Fourteenth Amendments the constitutionality of section 8-20-050, which prohibits a person from keeping or possessing a firearm or ammunition in the home if that

> person knows or has reason to believe that a minor under the age of 18 years is likely to gain access to the firearm or ammunition, unless (1) the person is physically present in the home and the firearm is either being held by the person or is physically secured on the person's body; (2) the firearm is secured by a trigger lock or other mechanism, other than the firearm safety mechanism, deigned to render a firearm temporarily inoperable; or (3) the firearm and ammunition are placed in a securely locked box or container.

Mun. Code of Chicago, § 8-20-050. Plaintiffs, however, plead no facts demonstrating that section 8-20-050 applies to them by virtue of the presence of a minor or that they have suffered --or even are in imminent danger of suffering -- an injury as a result of section 8-20-050. They therefore lack standing to challenge section 8-20-050. To have standing, a plaintiff must demonstrate three elements: (1) an invasion of a legally recognized interest which is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal link between that injury and the defendant's action, such that the injury is fairly traceable to the action complained of; and (3) that a favorable decision will likely redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In this instance, Plaintiffs make no allegation whatsoever that they have minor children in their homes and that the minor children are likely to gain access to their firearms.[4]

---

[4] Section 8-20-050(b) provides that no person shall be punished for violating it if: (1) the minor gains access to the firearm and uses it in a lawful act of self-defense or defense of another; or (2) the minor gains access to the firearm because the minor or another gained unlawful entry to the premises. Mun. Code of Chicago, § 8-20-050(b).

Absent such allegations, Plaintiffs have not identified any injury, actual or imminent, that they are likely to suffer as a result of section 8-20-050, and the claim should be dismissed for lack of standing pursuant to Rule 12(b)(1).[5] *See Am. Fed'n of Gov't Employees, Local 2119*, 171 F.3d at 465.

Plaintiffs also plead no facts supporting their claim that the requirements of section 8-20-050 interfere with their Second Amendment rights. Instead, Plaintiffs state nothing more than their bald allegation that section 8-20-050 "makes it impracticable and impossible for them or other citizens to use arms for the core lawful purpose of self-defense." Compl. ¶ 76. This sole allegation is insufficient to meet the Supreme Court's statement in *Iqbal* that a complaint must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Absent *some* facts demonstrating that they have been or will be impacted by section 8-20-050, they have not stated "'a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). *See also E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). For this reason, Count VIII fails to state a claim and should be dismissed under Rule 12(b)(6).

---

[5] Plaintiffs also lack standing because even if the Court ruled in their favor on the merits of their claim, it would not entirely redress their purported injury. The redressability requirement ensures that the litigation is not fruitless; in other words, "that the legal questions presented to the court will be resolved. . . in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian College v. Americans United For Separation of Church and State*, 454 U.S. 464, 472 (1982) (citation omitted); *Harp Advertising Illinois, Inc. v. Village of Chicago Ridge*, 9 F.3d 1290, 1292 (7th Cir. 1993) (key ingredient of standing is demonstration by plaintiff that injury will likely be redressed by favorable decision). In this instance, Illinois law requires storage of firearms in a manner like that required by the City if a fourteen year old is likely to gain access to a firearm. *See* 720 ILCS 5/24-9(a)(1)-(3). Plaintiffs have not challenged the constitutionality of 720 ILCS 5/24-9(a)(3); as a result, even if Plaintiffs achieved total success on the merits, the Court could not fashion relief that would redress their alleged injuries.

**D.** **Count IX Fails To Comply With Rules 8(a)(2) and 10(b), or in the Alternative, Various Claims Contained Therein Fail to State a Claim.**

    **1.** **Count IX Violates Fed. R. Civ. P. 10(b) and 8(a)(2).**

At the outset, Count IX should be dismissed because it does not comply with the requirements of Fed. R. Civ. P. 10(b). Rule 10(b) provides:

> A party must state its claims or defenses in numbered paragraphs, *each limited as far as practicable to a single set of circumstances.* A later pleading may refer by number to a paragraph in an earlier pleading. *If doing so would promote clarity, each claim founded on a separate transaction or occurrence -- and each defense other than a denial -- must be stated in a separate count or defense.*

Fed. R. Civ. P. 10(b) (emphasis added). Failure to comply with the requirements of Rule 10(b) is grounds for dismissal. *See Stanard v. Nygren*, --- F3d ---, No. 09-1487, 2011 WL 4346715 (7th Cir. Sept. 19, 2011) (affirming dismissal of the plaintiff's complaint because the plaintiffs' counsel, who represents Plaintiffs here, did not comply with Rule 10(b), *inter alia*); *Frederiksen v. City of Lockport*, 384 F.3d 437 (7th Cir. 2004) (upholding dismissal of the plaintiff's complaint for failure to comply with the requirements of Rule 10(b)).

In Count IX, Plaintiff SAA challenges the City's Ordinance, *in its entirety*, as violating not only its "right to act and do business as an FFL [federal firearms license]" under the Second and Fourteenth Amendments, but also: (i) Article I, section 8, clause 3 of the United States Constitution; (ii) Article VI of the United States Constitution; (iii) the Federal Firearms Act of 1938; (iv) 18 U.S.C. Chapter 44; and (v) 15 U.S.C. § 7901. Compl. ¶¶ 78-83. SAA therefore has not brought a separate claim for each provision of the Ordinance it challenges, and Defendants would be at a loss if required to answer Count IX in its current form. Dismissal of Count IX is appropriate for SAA's failure to comply with Rule 10(b).

Moreover, SAA fails to identify in Count IX how each and every provision of the Ordinance violates each of the aforementioned constitutional and statutory provisions, in violation of Rule 8(a)(2), which requires the plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Count IX should also be dismissed for this reason. *See Stanard*, 2011 WL 4346715 at *4.

### 2. No Claim Exists Under 15 U.S.C. § 7901

Although SAA alleges that the entire Ordinance conflicts with and is pre-empted by 15 U.S.C. § 7901, an examination of that provision demonstrates that SAA's claim fails on its face. Section 7901, which is titled "Findings; purposes," is included within Chapter 105 of Title 15 of the United States Code, which is titled "Protection of Lawful Commerce in Arms." Based on the findings and purposes codified by Congress in section 7901, Chapter 105 was enacted to protect gun manufacturers, distributors, dealers, and importers from lawsuits attempting to impose liability on them for harm caused by others while using firearms they manufacture and distribute. *See* 15 U.S.C. § 7901(a)(6), (b)(1). To effect that purpose, Congress enacted section 7902, which generally prohibits the filing of any civil liability action against a manufacturer or seller of a firearm for damages or any other relief resulting from the criminal or unlawful misuse of a firearm by a third party. *Id.* § 7902. There is no provision in the Ordinance that seeks to impose any liability which Congress precluded by virtue of Chapter 105, and SAA identifies no such provision in Count IX or anywhere else in Plaintiffs' Complaint. For this reason, SAA has not stated a claim under section 7901 -- or any part of Chapter 105, for that matter -- and that claim should be dismissed pursuant to Rule 12(b)(6).

11

3. **No Claim Exists Under the Federal Firearms Act of 1938**.

SAA also fails to state a claim under the Federal Firearms Act of 1938 (the "FFA"), a copy of which is attached hereto as Exhibit A. SAA baldly asserts that the entire Ordinance is preempted by the FFA, but it does not allege which provisions of the Ordinance are preempted by which provisions of the FFA. For the reasons set forth above in Part D.1, SAA's allegations are insufficient under the Federal Rules of Civil Procedure, and the claim fails for this reason alone. But the claim also fails because the FFA does not preempt any state action. As discussed above in Part B, federal preemption only exists if Congress expressly states that it is preempting state and local law, occupies the entire field, or federal and state or local law are in such conflict that compliance with both is impossible. In this instance, the FFA contains no provision evidencing an express preemption by Congress nor does it have any language suggesting that Congress has occupied the field so as to preempt state action. And there is no conflict between the FFA and the City's Ordinance -- and SAA certainly identifies no such conflict in Count IX -- which would make it impossible to comply with both laws. The FFA places restrictions on the sale of firearms in interstate commerce, and the Seventh Circuit recently described the FFA as an enactment by Congress "'to prevent the crook and gangster, racketeer and fugitive from justice from being able to purchase or in any way come in contact with firearms of any kind.'" *United States v. Jackson*, 598 F.3d 340, 351 (7th Cir.) (quoting *United States v. Lane*, 267 F.3d 715, 718 (7th Cir. 2001)), *cert. denied*, 131 S.Ct. 435 (2010). There simply is no conflict here. For these reasons, SAA's claim under the FFA fails and should be dismissed pursuant to Rule 12(b)(6).

4. **SAA's Claim Under Chapter 44 of Title 18 of the United States Code Fails.**

As with its other claims in Count IX, SAA simply asserts that the entire Ordinance violates

18 U.S.C. Chapter 44, which is titled "Firearms" and has multiple provisions, without informing

Defendants which provisions of the Ordinance supposedly violate and/or are preempted by which

of the provisions of Chapter 44. For the reasons stated above in Part D.1, this claim fails for this

reason alone. Moreover, Chapter 44 is the part of the federal criminal code that governs firearms.

As explained in Part B, *supra*, it explicitly provides that it does not occupy the field or preempt state

law unless there is a direct conflict. See 18 U.S.C. § 927. And Plaintiff have not identified any

direct conflict. As a result, nothing contained in Chapter 44 preempts or otherwise invalidates any

provision of the Ordinance, and this claim should therefore be dismissed pursuant to Rule 12(b)(6).

### 5.   No Claim Lies Under the Dormant Commerce Clause.

SAA's assertion that the entire Ordinance violates the dormant Commerce Clause contained

in Article I, section 8, clause 3 of the United States Constitution similarly fails. SAA fails to identify

which provision of the Ordinance runs afoul of the dormant Commerce Clause or how that provision

does so, in violation of Rule 8(a)(2). Moreover, any such claim fails on the merits. The United

States Constitution delegates to Congress the power to "regulate Commerce with foreign Nations,

and among the several States." U.S. Const. Art. I, § 8. This grant of authority "'contains a further,

negative command, known as the dormant Commerce Clause,'" which "'prevents a State from

jeopardizing the welfare of the Nation as a whole by plac[ing] burdens on the flow of commerce

across its borders that commerce wholly within those borders would not bear.'" *American Trucking*

*Ass'ns, Inc. v. Michigan Pub. Serv. Comm'n*, 545 U.S. 429, 433 (2005) (quoting *Oklahoma Tax*

*Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179, 180 (1995)). Its essential role is to prevent

states and localities from insulating their markets from outside competition by enacting protectionist

legislation. *See CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 87 (1987).

A *per se* violation of the dormant Commerce Clause exists if a state or local law directly regulates interstate commerce or treats local economic interests differently from out-of-state interests in a manner "that benefits the former and burdens the latter." *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994). The Ordinance does not cause a *per se* violation because it does not directly regulate interstate commerce nor does it favor local interests over out-of-state interests in any way, and Plaintiffs provide no allegations to the contrary.

A state or local law may still violate the dormant commerce clause if it causes a burden on interstate commerce that is clearly excessive in relation to the putative local benefits. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). The Seventh Circuit has explained that under *Pike*, no balancing test is required "[u]nless the law discriminates against interstate commerce expressly or in practical effect." *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1131 (7th Cir. 1995). A law discriminates against interstate commerce if it "cause[s] local goods to constitute a larger share, and goods with an out of state source to constitute a smaller share, of the total shares in the market." *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 126 n.16 (1978). *See also Oregon Waste Sys.*, 511 U.S. at 99. No part of the Ordinance, including the ban of the sale or transfer of firearms in the City, discriminates in this manner. Because no firearms, whether manufactured in Illinois or elsewhere, may be sold in Chicago, there is no discrimination.[6] Indeed,

---

[6] Even if the ban on the sale of firearms did have some practical effect on interstate commerce and the *Pike* analysis applied, the ban would easily survive that inquiry. It serves several legitimate government interests, such as, *inter alia*: (i) protecting public health, safety, and welfare; (ii) limiting or reducing the theft of firearms by eliminating a location where numerous firearms are stored for sale and the commission of other crimes or injury against those who visit gun stores; (iii) limiting or reducing the introduction of firearms into the illegal market, whether via theft, illegal trafficking, straw purchases, or legitimate purposes. The burden on interstate commerce, in contrast, is minimal, because there are numerous gun stores in the suburbs surrounding Chicago and individuals who meet the Ordinance's requirements are free to possess firearms in their homes for self-defense, which is the right recognized by the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008).

14

the City's ban on the sale of firearms is no different than the City's ban on the sale of spray paints and detergents containing phosphates, which were upheld under the commerce clause by the Seventh Circuit. *See National Paint*, 45 F.3d at 1131-32; *Procter & Gamble Co. v. City of Chicago*, 509 F.2d 69, 78 (7th Cir. 1975).

For these reasons, SAA fails to state a claim under the dormant Commerce Clause, and the claim should be dismissed pursuant to Rule 12(b)(6).

**E.     Count X Fails Because No Claim Exists for Violating *Monell*.**

In Count X, titled "Monell Claim," Plaintiffs allege that Mayor Emanuel, Superintendent McCarthy, and Mendoza "were, by operation of law and as a matter of fact, the final decision makers with regard to actions and decisions that they made and/or participated in by them" as alleged in the Complaint. Compl. ¶ 85. Count X fails on its face because the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), does not create an independent cause of action for challenging municipal action. In *Monell*, the Supreme Court held that a unit of local government can only be held liable under section 1983 if the plaintiff establishes that the allegedly unconstitutional act was committed pursuant to an express municipal policy, a widespread municipal practice "so permanent and well settled as to constitute a custom or usage with the force of law," or the action of a person with "final policymaking authority." *See Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998). In other words, under section 1983, a municipality may not be held vicariously liable under a *respondeat superior* theory for the acts of its employees, but, instead, may only be liable for its own policies. *See Monell*, 436 U.S. at 691. Thus, *Monell* simply clarifies under which circumstances a municipality may be held liable under section 1983; it does not create a cause of action. Count X should therefore be dismissed pursuant to Rule 12(b)(6).

15

**F.** **Count XI Should Be Dismissed Because the Ordinance Does Not Violate the Sherman Antitrust Act.**

In Count XI, Plaintiffs assert that the Ordinance violates the Sherman Antitrust Act, 15 U.S.C. § 1. At the outset, Count XI should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs do not identify in the Complaint which provisions of the Ordinance violate section 1 of the Sherman Antitrust Act, in violation of Rule 8(a)(2). Absent such information, Defendants are left guessing exactly which provisions of the Ordinance they are being called upon to defend.

Count XI also fails because Plaintiffs have not stated a claim under section 1 of the Sherman Antitrust Act, which makes illegal "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States or with foreign Nations . . . ." 15 U.S.C. § 1. To state a claim under section 1, a plaintiff must allege: "'(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market' and (3) an accompanying injury.'" *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 972 n.7 (7th Cir. 1995) (quoting *Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1220 (7th Cir. 1993)). The Supreme Court has held that there must be some form of agreement between persons or entities for liability under section 1 to exist. *See Fisher v. City of Berkeley*, 475 U.S. 260, 266-67 (1986). Plaintiffs do not identify in their Complaint any "contract, combination, or conspiracy" or any other agreement entered into or engaged in by Defendants which resulted in an unreasonable restraint of trade. The only action identified in Plaintiffs' Complaint is the passage of the Ordinance, which, among other things, prohibits the sale of firearms in the City. Moreover, Plaintiffs fail to allege in their Complaint how any provision of the Ordinance actually restrains trade in such a way that it violates section 1 of the Sherman Antitrust Act. Absent such allegations,

Plaintiffs have not stated a claim, and it should be dismissed pursuant to Rule 12(b)(6).

**G.      Count XII Should Be Dismissed Because It Does Not Comply With Rule 8(a)(2).**

In Count XII, Plaintiff Kole brings individual and class claims for restitution, asserting that because the Ordinance is unconstitutional, the registration fees charged by the City for firearm permits and firearm registration certificates violate the Second and Fourteenth Amendments. Compl. ¶¶ 92-96. This claim should be dismissed because it does not comport with the requirements of Rule 8(a)(2) in that it fails to identify what provisions of the Ordinance are being challenged and what relation those provisions have to the payment of the aforementioned registration fees. Neither Kole nor any other Plaintiff alleges in Count XII or anywhere else in the Complaint that either the registration requirement or the registration fees, set forth in sections 8-20-140 and 8-20-150 of the Municipal Code of Chicago, violate their rights under the Constitution. As a result, Defendants are again left guessing as to which provision of the Ordinance forms the basis of Kole's claim for restitution of firearm registration fees. Count XII should therefore be dismissed pursuant to Rule 12(b)(6).

**H.      Zieman's Individual and Class Claims in Count XIII Fail and Should Be Dismissed.**

Plaintiff Zieman alleges in Count XIII that he was found guilty of violating the City's former handgun ban and that certain handguns and rifles were confiscated by the City and destroyed. Compl. ¶ 98. He asks the Court, under the Second and Fourteenth Amendments and the Supreme Court's decision in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), to declare the now-repealed handgun ban to be unconstitutional and to order Defendants, *inter alia*, to pay restitution for the value of the seized and destroyed firearms. Compl. p.30. He seeks relief not only for himself but also on behalf of a putative class. *Id.*

17

At the outset, Zieman does not state in the Complaint when his firearms were supposedly seized and destroyed. Depending upon when the seizure and destruction occurred, Zieman's claim for restitution could be time-barred. Certainly, Zieman's attempt to represent a putative class dating back to 1982 fails on its face because there is a two year statute of limitation on claims brought under 42 U.S.C. § 1983. *See Ashafa v. City of Chicago*, 146 F.3d 459, 461-62 (7th Cir. 1998).

Even assuming that Zieman's claim is not time-barred, his claim-- and necessarily that of the putative class -- still fails because it requires the Court to decide a moot issue. On July 2, 2010, the City repealed the handgun ban and enacted the Ordinance, which expressly allows citizens to possess handguns in the home for the purpose of self-defense. Zieman did not file his claim until July 9, 2010 – seven days later. Because the handgun ban was no longer in effect at the time Zieman filed his claim, Zieman is asking the Court to determine the constitutionality of an ordinance that has been repealed. The Court should decline to do so and instead dismiss Count XIII as moot.[7] *See Rembert v. Sheahan*, 62 F.3d 937, 940 (7th Cir. 1995). But even if the Court were to consider the constitutionality of the now-repealed handgun ban, that ban was clearly valid whenever Zieman's firearms were seized and destroyed. Before the Court decided *McDonald*, the Second Amendment did not apply to state and local governments. *See District of Columbia v. Heller*, 554 U.S. 570, 620 n.23 (2008). Zieman (and the purported class) therefore cannot maintain a claim for restitution for seizure and destruction of his firearms under an ordinance that was valid at the time.

---

[7] To the extent Zieman is asserting in Count XIII that the Supreme Court already declared the former handgun ban to be unconstitutional in *McDonald*, that is incorrect. In *McDonald*, 130 S. Ct. at 3050, the Supreme Court did not invalidate the City's ordinance; instead, it remanded the matter for further proceedings. *Id.* at 3050. Before the lower courts could determine the constitutionality of the City's ordinance, the City repealed the ban and enacted the Ordinance on July 2, 2010, and *McDonald* was dismissed as moot. *See* Order dated October 12, 2010, a copy of which is attached hereto as Exhibit B.

For these reasons, Count XIII should be dismissed pursuant to Rule 12(b)(6).

**I.      Count XIV Violates Rule 10(b)(6).**

In Count XIV, Plaintiffs ask this Court to declare all of the provisions of the Ordinance mentioned in paragraphs 1-44 of the Complaint to be invalid under Article I, sections 1, 2, 4, 6, 12, 22, and 24 of the Illinois Constitution, as well as the "Due Process and Takings Clauses" of the Illinois Constitution. Compl. p. 32. Plaintiffs' claim should be dismissed pursuant to Rule 12(b)(6) because it fails to comply with Rule 10(b). Plaintiffs challenge in Count XIV the constitutionality of myriad provisions of the Ordinance and do so under multiple provisions of the Illinois Constitution. Plaintiffs therefore have not brought a separate claim for each provision of the Ordinance they challenge, and Defendants would be at a loss if required to answer Count XIV in its current form. Count XIV should therefore be dismissed pursuant to Rule 12(b)(6).

**J.      SAA Is Not Entitled To a Mandamus as Claimed in Count XV.**

SAA brings in Count XV a state law claim for mandamus which, if issued, would direct the City to issue SAA a license to operate as a gun store. Compl. ¶¶ 106-07. Under well-established Illinois law, a "writ of mandamus is a remedy at law to command a public official to perform *some ministerial, non-discretionary duty* in which the party seeking such relief has established *a clear right to have it performed* and a corresponding duty on the part of the official to act." *People ex rel. Ryan v. Retirement Board, Fireman's Annuity & Ben. Fund of Chicago*, 136 Ill. App. 3d 818, 820, 483 N.E.2d 1037, 1039 (1st Dist. 1985) (emphasis added). Mandamus is "an extraordinary remedy," and even if the petitioner establishes a clear right to it, the court may deny it "in the exercise of sound judicial discretion because of the consequences accompanying its issuance." *Lenit v. Powers*, 120 Ill. App. 2d 411, 418-19, 257 N.E.2d 142, 146 (1st Dist. 1969). A writ of mandamus will not issue

"where the right of the petitioner must first be established or the duty of the officer sought to be coerced must first be determined." *Machinis v. Board of Elec. Comm'nrs*, 164 Ill. App. 3d 763, 767, 518 N.E.2d 270, 273-74 (1st Dist. 1987).

SAA's claim fails initially because the Second Amendment does not protect the right to sell or transfer a firearm. The Second Amendment, as construed in *Heller*, protects "the right to possess a handgun in the home for the purpose of self-defense." *McDonald*, 130 S. Ct. at 3050 (2010). *See also United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (*en banc*) (right to "keep[] operable handguns at home for self-defense"). *Heller* established no more than this. Indeed, *Heller* "warns readers not to treat [it] as containing broader holdings than the Court set out to establish." *Skoien*, 614 F.3d at 640 (quoting *Heller*, 128 S. Ct. at 626 & n.26 (cautioning that opinion should not be read to "cast doubt" on various "presumptively lawful" restrictions on arms use)). *See also McDonald*, 130 S. Ct. at 3047 (plurality opinion) ("repeat[ing]" *Heller*'s "assurances"). As a result, there is no Second Amendment right to sell or transfer a firearm, and any such claim by SAA fails.

Even if the right to sell firearms is protected under the Second Amendment, SAA cannot demonstrate that the issuance of a weapons license is a ministerial act. Indeed, the Ordinance currently does not allow for the issuance of a license to sell firearms. *See* Mun. Code of Chicago, § 4-144-010. As a result, there is no process in place for the issuance of such a license, so there can be no ministerial act to perform. Moreover, even if there were such a process, SAA has not demonstrated that it has complied with all of its provisions and therefore cannot show a clear right to its issuance. For these reasons, Count XV fails and should be dismissed.

**K.      SAA Has Not Stated a Claim for Tortious Interference with Prospective Business Advantage in Count XVI.**

SAA raises in Count XVI a claim under Illinois law for tortious interference with prospective economic advantage. It asserts that it had a reasonable expectancy of entering into valid business relationships for the sale of firearms to customers in the City and that Defendants, who knew or should have known about SAA's business expectancy, intentionally and willfully interfered with that expectancy by banning gun sales within the City. *See* Compl. ¶¶ 108-113. SAA fails to state such a claim, however. "To state a cause of action for intentional interference with prospective business advantage, a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 406-07, 667 N.E.2d 1296, 1299 (1996) (citing *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 511, 568 N.E.2d 870, 878 (1991)).

In this instance, SAA's conclusory allegations are insufficient to state a claim for intentional interference with prospective business advantage. *See Iqbal*, 129 S.Ct. at 1949. For example, SAA baldly asserts that "Defendants knew or should have known that [SAA] possessed such expectancy and prospective business relationships" in Chicago, Compl. ¶ 110, but it makes no allegation of how Defendants knew of SAA's expectancy. Moreover, SAA fails to allege how Defendants' actions in enacting the Ordinance constitute an "unjustified" interference with its expectancy.

Even if SAA has properly alleged its claim, SAA would not be entitled to any damages because the City is immune from liability pursuant to 745 ILCS 10/2-103, which states that "[a] local

public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-103. The other defendants are similarly immune under 745 ILCS 10/2-205, which extends such immunity to public employees. *See id.* 10/2-205. Thus, Plaintiffs cannot obtain the relief they seek, and Count XVI should be dismissed.

**L.    Count XVII Fails to State a Claim.**

In Count XVII, Plaintiff Kole, by incorporation of the allegations contained in Count XII of the Complaint, again seeks restitution on behalf of both himself and a putative class for the payment of registration fees charged by the City.[8] *See* Compl. ¶ 114. His claims this time arise under Article I, sections 1, 2, 4, 6, 12, 22, and 24 of the Illinois Constitution, as well as the "Due Process and Takings Clauses" of the Illinois Constitution. *Id.* ¶ 115. Count XVII violates Rule 8(a)(2) and should be dismissed because it suffers from the same deficiencies identified in Part G of this Memorandum, which, for the sake of judicial economy, Defendants incorporate as if set forth fully herein. Defendants further assert that this claim fails because it does not comply with Rule 10(b) for the very same reasons identified in Part I of this Memorandum, which Defendants also incorporate as if set forth herein. Thus, Count XVII should be dismissed pursuant to Rule 12(b)(6).

**M.    Count XVIII Fails to State a Claim.**

In Count XVIII, Plaintiff Zieman, by incorporation of the allegations of Count XIII of the Complaint, again seeks restitution on behalf of both himself and a putative class for the seizure and destruction of firearms by the City under the now-repealed handgun ban. *See* Compl. ¶ 116. His

---

[8] Defendants presume that because Count XVII seeks the same relief as that in Count XII, Plaintiff Kole pleads Count XVII and Count XII in the alternative. Similarly, Defendants presume that Counts XVIII and XIII, which are brought by Plaintiff Zieman for restitution based on the destruction of his firearms under the City's now-repealed handgun ban, are also alternates of one another.

claims this time arise under Article I, sections 1, 2, 4, 6, 12, 22, and 24 of the Illinois Constitution, as well as the "Due Process and Takings Clauses" of the Illinois Constitution. *Id.* ¶ 115. Count XVIII fails and should be dismissed because it suffers from the same deficiencies identified in Part H of this Memorandum, which, for the sake of judicial economy, Defendants incorporate as if set forth fully herein. Defendants further assert that this claim fails because it does not comply with Rule 10(b) for the very same reasons identified in Part I of this Memorandum, which Defendants also incorporate as if set forth herein. Thus, Count XVIII should be dismissed pursuant to Rule 12(b)(6).

**N.     Mayor Emanuel, Superintendent McCarthy, and Mendoza Should Be Dismissed as Defendants.**

The Court should dismiss Mayor Emanuel, Superintendent McCarthy, and Mendoza as defendants because they are sued in their official capacities. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (official capacity suits against public officials are suits against government entity); *Schmidling v. City of Chicago*, 1 F.3d 494, 495 (7th Cir. 1993) (court properly dismissed mayor from lawsuit seeking to enjoin City from enforcing ordinance); *Graff v. City of Chicago*, 9 F.3d 1309, 1311 (7th Cir. 1993) (affirming dismissal of mayor sued only in official capacity); *St. John's United Church of Christ v. City of Chicago*, 401 F.Supp.2d 887, 896 (N.D. Ill. 2005) (claims against Mayor Daley in official capacity duplicative of claims against City and thus dismissed); *Borromeo v. City of Chicago*, No. 04 C 4078, 2004 WL 2966925, *3-4 (N.D. Ill. Nov. 16, 2004) (dismissing claims against Executive Director of City's Department of Construction and Permits because "where the plaintiff also names the local governmental unit as a defendant in the suit, the claim against the individual in his official capacity is redundant.").

The City is already a defendant in this case, and, as pled by Plaintiffs, Mayor Emanuel, Superintendent McCarthy, and Mendoza are officers and agents of the City. Compl. ¶¶ 6-8. As a result, the claims against them in their official capacity are duplicative of claims against the City, and Mayor Emanuel, Superintendent McCarthy, and Mendoza should be dismissed as defendants.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss that part of Count I that challenges the City's Zoning Ordinance, Count III, and Counts VIII-XVIII of Plaintiffs' Second Amended Complaint and grant Defendants such further relief as this Court deems just and appropriate.

Date: November 4, 2011

Respectfully submitted,

STEPHEN R. PATTON,
Corporation Counsel for the City of Chicago

By:    /s/William Macy Aguiar
        Assistant Corporation Counsel

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-9018 / 6975 / 7129 / 4216

Attorneys for Defendants

# EXHIBIT A

# UNITED STATES
# STATUTES AT LARGE

CONTAINING THE

LAWS AND CONCURRENT RESOLUTIONS
ENACTED DURING THE THIRD SESSION OF THE
SEVENTY-FIFTH CONGRESS
OF THE UNITED STATES OF AMERICA

## 1938

AND

TREATIES, INTERNATIONAL AGREEMENTS OTHER
THAN TREATIES, AND PROCLAMATIONS

---

COMPILED, EDITED, INDEXED, AND PUBLISHED BY AUTHORITY OF CONGRESS
UNDER THE DIRECTION OF THE SECRETARY OF STATE

---

## VOLUME 52



UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1938

1250        PUBLIC LAWS—CH. 850—JUNE 30, 1938      [52 STAT.

[CHAPTER 850]

AN ACT

To regulate commerce in firearms.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That as used in this Act—

(1) The term "person" includes an individual, partnership, association, or corporation.

(2) The term "interstate or foreign commerce" means commerce between any State, Territory, or possession (including the Philippine Islands but not including the Canal Zone), or the District of Columbia, and any place outside thereof; or between points within the same State, Territory, or possession (including the Philippine Islands but not including the Canal Zone), or the District of Columbia, but through any place outside thereof; or within any Territory or possession or the District of Columbia.

(3) The term "firearm" means any weapon, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosive and a firearm muffler or firearm silencer, or any part or parts of such weapon.

(4) The term "manufacturer" means any person engaged in the manufacture or importation of firearms, or ammunition or cartridge cases, primers, bullets, or propellent powder for purposes of sale or distribution; and the term "licensed manufacturer" means any such person licensed under the provisions of this Act.

(5) The term "dealer" means any person engaged in the business of selling firearms or ammunition or cartridge cases, primers, bullets or propellent powder, at wholesale or retail, or any person engaged in the business of repairing such firearms or of manufacturing or fitting special barrels, stocks, trigger mechanisms, or breach [1] mechanisms to firearms, and the term "licensed dealer" means any such person licensed under the provisions of this Act.

(6) The term "crime of violence" means murder, manslaughter, rape, mayhem, kidnaping, burglary, housebreaking; assault with intent to kill, commit rape, or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year.

(7) The term "fugitive from justice" means any person who has fled from any State, Territory, the District of Columbia, or possession of the United States to avoid prosecution for a crime of violence or to avoid giving testimony in any criminal proceeding.

(8) The term "ammunition" shall include all pistol or revolver ammunition except .22-caliber rim-fire ammunition.

SEC. 2. (a) It shall be unlawful for any manufacturer or dealer, except a manufacturer or dealer having a license issued under the provisions of this Act, to transport, ship, or receive any firearm or ammunition in interstate or foreign commerce.

(b) It shall be unlawful for any person to receive any firearm or ammunition transported or shipped in interstate or foreign commerce in violation of subdivision (a) of this section, knowing or having reasonable cause to believe such firearms or ammunition to have been transported or shipped in violation of subdivision (a) of this section.

(c) It shall be unlawful for any licensed manufacturer or dealer to transport or ship any firearm in interstate or foreign commerce to any person other than a licensed manufacturer or dealer in any State the laws of which require that a license be obtained for the purchase of such firearm, unless such license is exhibited to such manufacturer or dealer by the prospective purchaser.

*Margin notes:*
June 30, 1938
[S. 3]
[Public, No. 785]

Federal Firearms Act.
Definitions.
"Person."

"Interstate or foreign commerce."

"Firearm."

"Manufacturer."

"Dealer."

"Licensed dealer."

"Crime of violence."

"Fugitive from justice."

"Ammunition."

Unlawful acts.
Transportation, etc., of firearms or ammunition without license.

Knowingly receiving same.

Transportation, etc., to other than licensed manufacturer or dealer.

---

[1] So in original.

52 Stat.]    75th CONG., 3d SESS.—CH. 850—JUNE 30, 1938                                1251

(d) It shall be unlawful for any person to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition to any person knowing or having reasonable cause to believe that such person is under indictment or has been convicted in any court of the United States, the several States, Territories, possessions (including the Philippine Islands), or the District of Columbia of a crime of violence or is a fugitive [1] from justice. *Shipment to person under indictment, etc.*

(e) It shall be unlawful for any person who is under indictment or who has been convicted of a crime of violence or who is a fugitive [1] from justice to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition. *Shipment by person under indictment, etc.*

(f) It shall be unlawful for any person who has been convicted of a crime of violence or is a fugitive [1] from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this Act. *Receipt by person convicted of crime of violence, etc.*

(g) It shall be unlawful for any person to transport or ship or cause to be transported or shipped in interstate or foreign commerce any stolen firearm or ammunition, knowing, or having reasonable cause to believe, same to have been stolen. *Transportation of stolen firearms, etc.*

(h) It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any firearm or ammunition or to pledge or accept as security for a loan any firearm or ammunition moving in or which is a part of interstate or foreign commerce, and which while so moving or constituting such part has been stolen, knowing, or having reasonable cause to believe the same to have been stolen. *Traffic in stolen firearms.*

(i) It shall be unlawful for any person to transport, ship, or knowingly receive in interstate or foreign commerce any firearm from which the manufacturer's serial number has been removed, obliterated, or altered, and the possession of any such firearm shall be presumptive evidence that such firearm was transported, shipped, or received, as the case may be, by the possessor in violation of this Act. *Transportation of firearms from which serial number has been removed.*

Sec. 3. (a) Any manufacturer or dealer desiring a license to transport, ship, or receive firearms or ammunition in interstate or foreign commerce shall make application to the Secretary of the Treasury, who shall prescribe by rules and regulations the information to be contained in such application. The applicant shall, if a manufacturer, pay a fee of $25 per annum and, if a dealer, shall pay a fee of $1 per annum. *Licenses, application, fee.*

(b) Upon payment of the prescribed fee, the Secretary of the Treasury shall issue to such applicant a license which shall entitle the licensee to transport, ship, and receive firearms and ammunition in interstate and foreign commerce unless and until the license is suspended or revoked in accordance with the provisions of this Act: *Provided,* That no license shall be issued to any applicant within two years after the revocation of a previous license. *Issuance. Proviso. Issuance after revocation.*

(c) Whenever any licensee is convicted of a violation of any of the provisions of this Act, it shall be the duty of the clerk of the court to notify the Secretary of the Treasury within forty-eight hours after such conviction and said Secretary shall revoke such license: *Provided,* That in the case of appeal from such conviction the licensee may furnish a bond in the amount of $1,000, and upon receipt of such bond acceptable to the Secretary of the Treasury he may permit the licensee to continue business during the period of the appeal, or should the licensee refuse or neglect to furnish such bond, the Secre- *Revocation on conviction of licensee. Proviso. Temporary continuance; bond.*

---

[1] So in original.

tary of the Treasury shall suspend such license until he is notified by the clerk of the court of last appeal as to the final disposition of the case.

*Dealers' records.*     (d) Licensed dealers shall maintain such permanent records of importation, shipment, and other disposal of firearms and ammunition as the Secretary of the Treasury shall prescribe.

*Exemptions.*     SEC. 4. The provisions of this Act shall not apply with respect to the transportation, shipment, receipt, or importation of any firearm, or ammunition, sold or shipped to, or issued for the use of, (1) the *Federal, State governments, agencies, etc.* United States or any department, independent establishment, or agency thereof; (2) any State, Territory, or possession, or the District of Columbia, or any department, independent establishment, agency, or any political subdivision thereof; (3) any duly commissioned officer or agent of the United States, a State, Territory, or possession, or the District of Columbia, or any political subdivision *Banks, carriers, etc.* thereof; (4) or to any bank, public carrier, express, or armored-truck company organized and operating in good faith for the transportation of money and valuables; (5) or to any research laboratory *Research laboratories.* designated by the Secretary of the Treasury: *Provided*, That such *Proviso.* *Exemptions granted by Secretary of Treasury.* bank, public carriers, express, and armored-truck companies are granted exemption by the Secretary of the Treasury; nor to the *Antiques, curios, etc.* transportation, shipment, or receipt of any antique or unserviceable firearms, or ammunition, possessed and held as curios or museum pieces: *Provided*, That nothing herein contained shall be construed to *Shipments to designated institutions or persons.* prevent shipments of firearms and ammunition to institutions, organizations, or persons to whom such firearms and ammunition may be lawfully delivered by the Secretary of War, nor to prevent the trans-*Military training, etc.* portation of such firearms and ammunition so delivered by their lawful possessors while they are engaged in military training or in competitions.

*Penalty provisions.*     SEC. 5. Any person violating any of the provisions of this Act or any rules and regulations promulgated hereunder, or who makes any statement in applying for the license or exemption provided for in this Act, knowing such statement to be false, shall, upon conviction thereof, be fined not more than $2,000, or imprisoned for not more than five years, or both.

*Effective date.*     SEC. 6. This Act shall take effect thirty days after its enactment.
*Rules and regulations.*     SEC. 7. The Secretary of the Treasury may prescribe such rules and regulations as he deems necessary to carry out the provisions of this Act.

*Separability of provisions.*     SEC. 8. Should any section or subsection of this Act be declared unconstitutional, the remaining portion of the Act shall remain in full force and effect.

*Short title.*     SEC. 9. This Act may be cited as the Federal Firearms Act.
Approved, June 30, 1938.

---

[CHAPTER 851]

## AN ACT

*June 30, 1938 [S. 1131] [Public, No. 786]*

To amend the part of the Act entitled "An Act making appropriations for the naval service for the fiscal year ending June 30, 1921, and for other purposes", approved June 4, 1920, relating to the conservation, care, custody, protection, and operation of the naval petroleum and oil-shale reserves.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the part of the Act entitled "An Act making appropriations for the naval service for the fiscal year ending June 30, 1921, and for other purposes", approved June 4, 1920 (41 Stat. 813), relating to the conservation, care, custody, protection, and operation of the naval petroleum and

*Naval petroleum reserves.* *41 Stat. 813.* *34 U. S. C. § 524.*

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 4.1.1
### Eastern Division

Otis McDonald, et al.

Plaintiff,

v.

Case No.: 1:08−cv−03645
Honorable Milton I. Shadur

City of Chicago, et al.

Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, October 12, 2010:

     MINUTE entry before Honorable Milton I. Shadur:This action is hereby dismissed as moot. Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.