**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SECOND AMENDMENT ARMS, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     CASE NO.: 10-cv-4257 |
| | ) |
| CITY OF CHICAGO et al., | )     Judge Robert M. Dow, Jr. |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Second Amendment Arms, R. Joseph Franzese, Robert M. Zieman, Sr., ICarry, Shaun A. Kranish, and Tony Kole (collectively "Plaintiffs") filed a Second Amended Complaint [51] alleging various constitutional and other legal infirmities in Chicago's Responsible Gun Owners' Ordinance ("the Ordinance"). Defendants the City of Chicago, Chicago Mayor Rahm Emanuel in his official capacity, Superintendent of the Chicago Police Department Garry McCarthy in his official capacity, and Chicago City Clerk Susana Mendoza in her official capacity (collectively "Defendants") have moved to dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [58]. They seek to dismiss all eighteen counts against official capacity defendants Emanuel, McCarthy, and Mendoza, and all or part of thirteen of the eighteen counts against the City of Chicago. For the reasons stated below, the motion to dismiss [58] is granted in part and denied in part. Plaintiffs are given 21 days to file a third amended complaint if they believe that they can cure any of the pleading deficiencies identified below.

## I.    Background[1]

In March 1982, the City of Chicago ("the City") enacted an ordinance restricting the possession, ownership, and use of firearms within its borders. [51 at ¶ 12]. The provisions of this 1982 ordinance were codified, as updated and amended, in sections 8-20-010 through 8-20-260 of the Municipal Code of Chicago ("Municipal Code"). See [51 Ex. A]. The Supreme Court held, in *McDonald v. City of Chicago*, --- U.S. ---, 130 S. Ct. 3020 (June 28, 2010), that the Second Amendment right to keep and bear arms is fully applicable to the states by virtue of the Fourteenth Amendment. [51 at ¶ 13]. The City responded to this ruling on July 2, 2010, by passing the thirty-page Ordinance, [51 ¶ 14], which deleted and replaced sections 8-20-010 to 8-20-260 of the Municipal Code in their entirety. See [51 Ex. B at 4]. The Ordinance also amended several other related provisions of the Municipal Code, see [51 Ex. B at 2-4], including section 4-144-010. See [51 ¶¶ 17, 33]. The Ordinance became effective on July 12, 2010. [51 ¶ 16; Ex. B at 30.]

Plaintiffs allege that their rights protected by the Second Amendment and other constitutional provisions have been or will be infringed by the Ordinance in a variety of ways. Plaintiff Franzese, a federally licensed firearms dealer and principal of Plaintiff Second Amendment Arms [51 ¶ 1], desires to open two gun shops in the City but has been unable to do so because the City rejected his applications for weapons dealer business licenses. [51 at ¶ 33]. Even if he were able to obtain these licenses, he asserts, the Ordinance would impermissibly burden his businesses because he and his customers would be unable to transport or store firearms, and he would be unable to sell certain types of firearms and firearm accessories. [51 ¶¶ 34, 41]. Plaintiffs Zieman and Kole are Chicago residents who have been unable to purchase and

---

[1]  On a motion to dismiss, the Court accepts as true all well-pleaded facts alleged by the plaintiffs and all reasonable inferences that can be drawn from them. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

transport firearms and firearm accessories in the City [51 ¶¶ 35-36, 42-43], and plaintiff Kole has been unable to maintain more than one operable firearm in his home [51 ¶ 38], or possess a firearm within the curtilage of his home or in his rented garage [51 ¶¶ 39-40].  Plaintiff Kranish, d/b/a Icarry, resides and does business in Rockford, Illinois. [51 ¶ 3].  He and Icarry want to gift handguns to qualified, law-abiding Chicago residents but fear prosecution under the Ordinance. [51 ¶ 37].  Plaintiffs seek a full panoply of relief, including declaratory judgments, preliminary and permanent injunctive relief, damages, costs, and attorneys' fees.  See [51 ¶¶ 86, 91, 96, 103, 105, 107, 113, 115, 117].

The Second Amended Complaint presently before the Court represents Plaintiffs' fourth attempt to crystallize their allegations and coherently frame their challenges to the Ordinance. See [1], [4], [6], [51].[2]  On July 27, 2011, with Defendants' Motion to Dismiss and the jumbled allegations set forth in Plaintiffs' First Amended Complaint pending before it, see [6], [18], the Court instructed Plaintiffs to clearly and intelligibly set forth their claims, in individual numbered counts, so as to enable Defendants and the Court to understand and address their allegations.  See [41]; see also [73-1 at 12] ("This Court asked Plaintiffs in open court to amend and simplify the Complaint.").  It appears that Plaintiffs have made some effort to comply with these instructions in the Second Amended Complaint.  They follow up their more clearly articulated facts and allegations with eighteen numbered counts' worth of claims enumerating dozens of legal theories.  Yet several of their claims remain difficult to decipher.

As the Court understands the Second Amended Complaint, all Plaintiffs allege in Counts I-VII that various provisions of the Ordinance violate their rights under the Second Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment.  They further

---

[2] Plaintiffs filed an original complaint on July 9, 2010 [1], an "amended" complaint on September 21, 2010 [4], a "first amended" complaint on October 1, 2010 [6], and a "second amended" complaint on September 9, 2011 [51].

allege in Count I that unspecified portions of Chicago's zoning ordinance are construed to restrict the availability of firearms, in Count III that Section 8-20-090 of the Ordinance violates the Supremacy Clause, and in Counts III and VI that certain portions of the Ordinance are unconstitutionally vague. All Plaintiffs seek in Count X relief under 42 U.S.C. § 1983 and *Monell v. City of New York Department of Social Services*, 436 U.S. 658 (1978); claim in Count XI that the Defendants violated the Sherman Antitrust Act, 15 U.S.C. § 1; and invoke Illinois state law in Count XIV to seek a declaratory judgment that the Ordinance violates nine clauses of the Illinois Constitution. Plaintiffs Zieman and Kole allege in Count VIII that section 8-20-050 of the Ordinance violates their Second Amendment rights by making it impractical and impossible for them and other Chicagoans to use firearms in self defense. Plaintiff Second Amendment Arms alleges in Count IX that the Ordinance impermissibly burdens interstate commerce; violates the Dormant Commerce Clause; violates the First, Second, Fourth, Fifth, and Fourteenth Amendments; and conflicts with various federal laws in violation of the Supremacy Clause. In Count XV, Second Amendment Arms seeks a writ of mandamus directing Defendants to issue the weapons dealer licenses for which Franzese applied. In Count XVI, Second Amendment Arms asserts a state law claim for tortious interference with prospective economic advantage. In Counts XII and XVII, Plaintiff Kole seeks restitution of the fees that he and a similarly situated class of individuals and entities paid the City to obtain firearms permits and registration certificates pursuant to the Ordinance. And in Counts XIII and XVIII, Plaintiff Zieman seeks a declaration that the 1982 ordinance was unconstitutional (under the United States and Illinois Constitutions), expungement of his and all others' convictions under the 1982 ordinance, recompense of various fees and expenditures that he and others incurred as a result of

the City's enforcement of the 1982 ordinance, and the return of all firearms seized from him and others pursuant to the 1982 ordinance.

Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) all of Plaintiffs' claims against official capacity Defendants Emanuel, McCarthy, and Mendoza. [58]. Defendants also have moved to dismiss, under Rules 12(b)(1) and 12(b)(6), Counts VIII-XVIII of the Second Amended Complaint in their entirety and Counts I and III in part. [58].[3]

## II.    Legal Standard

The purpose of a Rule 12(b) motion to dismiss is not to decide the merits of the case. A Rule 12(b)(6) motion tests the sufficiency of the complaint, *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir.1990), while a Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). In reviewing a motion to dismiss under either rule, the Court takes as true all factual allegations in Plaintiffs' complaint and draws all reasonable inferences in their favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Long*, 182 F.3d at 554. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir.2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions'

---

[3] After briefing of the motion to dismiss concluded, Plaintiffs filed a motion for leave to cite new supplemental case authorities in opposition to Defendants' motion to dismiss. [79]. The Court grants this motion.

or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original).

### III.    Analysis

#### A.    Plaintiffs' Representation

The Court notes at the outset that there is some confusion in its records as to which Plaintiffs are represented by counsel and which are not. According to the docket, no attorney appearance form has been filed on behalf of any of the Plaintiffs, notwithstanding Local Rule 83.16's requirement that attorney appearance forms must be filed "prior to or simultaneously with the filing of any motion, brief or other document in a proceeding before a judge or magistrate judge of this Court, or at the attorney's initial appearance before a judge or magistrate judge of this Court, whichever occurs first." The Second Amended Complaint was filed by an attorney, purportedly on behalf of all Plaintiffs, yet all Plaintiffs also signed the Second Amended Complaint in an apparent attempt to comply with Federal Rule of Civil Procedure 11(a), and several are listed as *pro se* on the docket. In short, the Court is not certain at this time which Plaintiffs are represented and which are not. The Court instructs counsel for Plaintiffs and any Plaintiffs who are not represented by counsel to be prepared to address this issue at the next status hearing.

#### B.    Official Capacity Defendants

Defendants move to dismiss all counts to the extent that they name as Defendants Mayor Emanuel, Chief McCarthy, and Clerk Mendoza in their official capacities. They argue that the

claims against these Defendants are duplicative of those against the City of Chicago. [60-1 at 23-24]. Plaintiffs disagree. Rather than refuting Defendants' argument, however, Plaintiffs respond with an *ad hominem* attack on the official-capacity Defendants. [73-1 at 24.] They also contend that "continued inclusion [of the official-capacity Defendants] is necessary, to hold them accountable, and to render them subject to mandamus and the other relief that may be granted should Plaintiffs prevail." [73-1 at 24.]

The Court agrees with Defendants to the extent that they seek to dismiss Plaintiffs' § 1983 claims against the official-capacity Defendants. Section 1983 creates a cause of action against "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Generally, an official capacity suit is brought against a high-ranking official as a means of challenging an unconstitutional policy, practice, or custom. *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). But suing a government employee in his official capacity is akin to suing the entity that employs him and the standard for liability is the same. See, e.g., *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). Thus, Defendants are correct that naming the official capacity defendants in addition to the City, the true party in interest, is redundant and fails to state a separate claim for relief. See *Harris v. Denver Health Med. Ctr.*, No. 11-cv-01868, 2012 WL 1676590, at *7 (D. Colo. May 10, 2012) ("A § 1983 claim is properly plead against a municipality either by naming the municipality itself or by naming a municipal official in his or her official capacity. Naming either is sufficient. Naming both is redundant." (quotations and citation omitted)). The Court therefore grants Defendants' motion to dismiss the Counts

sounding under § 1983, Counts I-X, XII, and XIII, against official-capacity Defendants Emanuel, McCarthy, and Mendoza. Notwithstanding the lack of reasoned argument from Plaintiffs, the Court denies Defendants' motion to dismiss Counts XI and XIV-XVIII against the official-capacity Defendants. These claims also remain pending against Defendant City of Chicago. Defendants have not pointed to any authority demonstrating that the same rule of party equivalence applies in non-§ 1983 actions brought against official-capacity defendants, so the Court declines to dismiss the claims on this basis at this time. For simplicity's sake, the Court will continue to use the collective term "Defendants" in its discussion of these counts.

### C. Count I : "Ban on Gun Stores (U.S. Const. Amends. II & XIV)"

Plaintiffs raise two conceptually related but legally distinct claims in Count I. First, they allege that section 4-144-010 of the Municipal Code, as amended by the Ordinance, unduly burdens, impedes, and infringes upon their Second and Fourteenth Amendment rights by restricting weapons dealers' ability to "engage in the business of selling, or to sell, give away, or otherwise transfer, any firearm." [51 ¶¶ 46-47]. Second, they allege that, "[t]o the extent that the zoning ordinances of the City are construed to prohibit the reasonable availability of firearms through commercial firearms dealers, said zoning ordinances are also unconstitutional and void *ab initio*." [51 ¶ 48].

Defendants seek to dismiss under Rule 12(b)(6) only the latter portion of Count I. They assert that the claim does not comply with Federal Rule of Civil Procedure 8(a)(2) because "Plaintiffs fail to identify in their Complaint any provision of the Chicago Zoning Ordinance that would prohibit commercial sales of firearms." [60-1 at 3]. Plaintiffs respond by pointing to ¶ 20 of the Second Amended Complaint, in which they allege that "It is not apparent that Chicago's zoning ordinance specifically allows or forbids gun shops, except that 'the sale of firearms or

ammunition' is forbidden as a 'home occupation' pursuant to § 17-9-0202-C (11)(q). On information and belief, Chicago will not issue a zoning permit for any use it deems may violate the penal ordinances of the City."

The Court agrees with Plaintiffs that this allegation, which Plaintiffs incorporated into Count I, adequately places Defendants on notice that Section 17-9-0202-C(11)(q) is being challenged on Second and Fourteenth Amendment grounds to the extent that it may impede Plaintiffs from opening gun stores. The Court therefore denies in part Defendants' motion to dismiss Count I. To the extent that Plaintiffs may take issue with other zoning provisions, however, the Court agrees with Defendants that the Second Amended Complaint in its current state is insufficient to apprise Defendants of any specific zoning provisions that they may be called upon to defend and accordingly grants in part the motion to dismiss Count I as it pertains to all other provisions of the zoning ordinance that Plaintiffs have failed to specifically identify.

### D. Count III: "Ban on Possession Outside Home (U.S. Const. Art. VI, cl. 2; Amends. II & XIV)"

Defendants move to dismiss under Rule 12(b)(6) the portion of Count III alleging that Section 8-20-090 of the Ordinance is invalid under the Supremacy Clause because it adds additional requirements to 18 U.S.C. § 926A that are "contrary to" the federal statute. [51 ¶ 57(c)]. Defendants argue that this Supremacy Clause theory necessarily fails as a matter of law because § 926A does not preempt Section 8-20-090. The Court agrees.

The basic principles of preemption law are both relatively straightforward and well-established. The Supremacy Clause of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; * * * any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Since *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819), it has been settled that state law that conflicts

with federal law is "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746 (1981). When determining if such a conflict exists, the "purpose of Congress" is the ultimate touchstone. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).

In general, there are three settings in which a state law conflicts with, and hence is preempted by, federal law: (1) express preemption, in which Congress "define[s] explicitly the extent to which its enactments pre-empt state law;" (2) field preemption, in which state law is pre-empted because "it regulates conduct in a field that Congress intended the federal government to occupy exclusively;" and (3) conflict preemption, in which, for example, complying with both federal and state law is a physical impossibility. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 & n. 5 (1990) (explaining that the three categories are not "rigidly distinct"); see also *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 576 (7th Cir. 2012). Defendants argue persuasively that no preemption of any type is present here. See [60-1 at 5-7].

Section 926A, "Interstate transportation of firearms," is part of 18 U.S.C. Chapter 44, which regulates firearms more broadly. Section 926A provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

Section 8-20-090 of the Ordinance, also entitled "Interstate transportation of firearms," provides:

> It shall not be a violation of this chapter if a person transporting a firearm or ammunition while engaged in interstate travel is in compliance with 18 U.S.C.A. § 926A. There shall be a rebuttable presumption that any person within the city for more than 24 hours is not engaged in interstate travel, and is subject to the provisions of this chapter.

Nothing in § 926A suggests an intention by Congress to expressly preempt laws such as Section 8-20-090. An express preemption must be explicit. See, *e.g.*, 15 U.S.C. § 7707(b)(1); 29 U.S.C. § 1144(a). Section 926A merely "provide[s] that *conflicting* state provisions affecting the transportation of firearms will be preempted." *City of Camden v. Beretta U.S.A. Corp.*, 81 F. Supp. 2d 541, 549 (D.N.J. 2000).

There likewise is no field preemption present here. 18 U.S.C. § 927 precludes any such conclusion. It explicitly states that "No provision of this chapter" – including § 926A – "shall be construed as indicating an intent on the part of Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together." See *Fletcher v. Haas*, 851 F. Supp. 2d 287, 305 (D. Mass. 2012); *cf. McDonald v. City of Chi.*, 130 S. Ct. at 3047 ("[S]tate and local experimentation with reasonable firearms regulations will continue under the Second Amendment." (quotation omitted)).

Conflict preemption also is absent. Conflict preemption exists where either "(1) 'it is impossible for a private party to comply with both state and federal requirements,' or (2) 'where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Wigod*, 673 F.3d at 578 (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)). Section 8-20-090 presents neither problem. To the contrary, it specifically provides that "[i]t shall not be a violation of this chapter if a person transporting a firearm or ammunition while engaged in interstate travel is in compliance with 18 U.S.C.A. §

926A." Plaintiffs' arguments concerning the "emasculation" [73-1 at 10] of Plaintiff Franzese's federal license to deal firearms and the Commerce and Dormant Commerce Clauses [73-1 at 10-11] cannot overcome the straightforward language of the Ordinance and §§ 926A and 927. Defendant's motion to dismiss in part Count III is therefore granted.

> ### E. Count VIII: "Physical Presence, Security, Trigger Lock & Lock Box Requirements (U.S. Const. Amends. II & XIV)"

In Count VIII, Plaintiffs Zieman and Kole allege that Section 8-20-050 of the Ordinance, which requires persons keeping or possessing a firearm or ammunition in their homes to secure or carry on their person such items when they know or have reason to believe that a minor under the age of eighteen is likely to gain access to these items, "makes it impractical and impossible for them or other citizens to use arms for the core lawful purpose of self-defense." [51 ¶ 76]. Defendants move to dismiss Count VIII under Rule 12(b)(1), arguing that Plaintiffs Zieman and Kole lack standing to challenge section 8-20-050 because they have not pleaded facts demonstrating that the section applies to them or that they have suffered or will suffer any redressable injury as a result of it. [60-1 at 8-9 & n.5]. Defendants also move to dismiss Count VIII under Rule 12(b)(6) for essentially the same infirmity: "Plaintiffs also plead no facts supporting their claim that the requirements of section 8-20-050 interfere with their Second Amendment rights." [60-1 at 9].

This Court has jurisdiction over Count VIII only if Plaintiffs demonstrate that (1) they suffered an injury in fact, (2) the Defendants' actions caused the injury, and (3) the remedy they seek would redress the injury. *Bell v. Keating*, --- F.3d ---, No. 11-2408, 2012 WL 3892506, at *2 (7th Cir. Sept. 10, 2012). When a plaintiff seeks prospective relief against a harm not yet suffered, he must establish that he "is immediately in danger of sustaining some direct injury as the result of the challenged official conduct[,] and [that] the injury or threat of injury [is] both

real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation omitted). Otherwise, he fails to allege an actual case or controversy before the court. See U.S. Const. art. III, § 2, cl. 1.

As a general matter, a plaintiff who wishes to engage in conduct arguably protected by the Constitution, but proscribed by a statute or ordinance, successfully demonstrates an immediate risk of injury. The existence of the ordinance constitutes the government's commitment to prosecute in accordance with it and, thus, a concrete prospect of future harm for anyone who would flout it. *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 590-91 (7th Cir. 2012); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003). Consequently, when a plaintiff expresses a credible intention to disobey a statute, a sufficient likelihood of injury exists, and a pre-enforcement challenge is appropriate. See *Alvarez,* 679 F.3d at 591 ("To satisfy the injury-in-fact requirement in a preenforcement action, the plaintiff must show an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder." (quotation omitted)). He need not wait to be arrested to bring suit for injunctive relief. *Cf. Ezell v. City of Chi.*, 651 F.3d 684, 695-96 (7th Cir. 2011) (explaining in dicta that plaintiffs' injuries "easily support[ed] Article III standing" where plaintiffs challenging the Ordinance's provisions relating to firing ranges alleged that they owned firearms and wanted to maintain their proficiency or store the firearms within the city but were unable to do so because they feared prosecution under the Ordinance).

Plaintiffs Zieman and Kole fall short of alleging any such "intention to engage in a course of conduct * * * proscribed by" Section 8-20-050. They allege that they both desire to purchase firearms and banned accessories within Chicago [51 ¶¶ 35, 42-43] and travel with these items

within Chicago [51 ¶ 36]. They also allege that Plaintiff Kole would like to maintain more than one operable firearm in his home [51 ¶ 38], and exercise his right to use a firearm to defend himself outside the confines of his home [51 ¶¶ 39-40]. It is reasonable to infer from these allegations that Zieman and Kole desire to maintain firearms and ammunition unsecured in their homes. But it would stretch the bounds of reasonableness to infer, on these allegations alone, that Zieman or Kole knows or has reason to believe that a minor under the age of eighteen is likely to gain access to his firearms or ammunition.

In their brief opposing the motion to dismiss, Plaintiffs assert that Plaintiff Zieman "has five (5) minor children." [73-1 at 11 n.3]. This allegation, which is properly considered at the motion to dismiss stage inasmuch as it is consistent with those contained in the Second Amended Complaint, see *Evans v. U.S. Postal Serv.*, 428 F. Supp. 2d 802, 805 (N.D.Ill. 2006), coupled with all reasonable inferences in Zieman's favor, shows that Plaintiff Zieman faces a probability of future injury under Section 8-20-050. See *Alvarez*, 679 F.3d at 591. Defendants argue that any injury is not redressable because an Illinois statute, 720 ILCS 5/24-9, subjects Chicago residents to the same requirements to the extent that they know or have reason to believe that a minor under the age of fourteen is likely to gain access to an unsecured firearm. Because Plaintiffs are not challenging that statute, Defendants reason, "the Court could not fashion relief that would redress their alleged injuries." [60-1 at 9 n.5]. The Court is not persuaded by this argument. The requirements imposed by the state statute are not identical to those imposed by the Ordinance such that a result in Plaintiff Zieman's favor here would not ameliorate his alleged injuries. The Court finds that Plaintiff Zieman has alleged facts sufficient to state a claim and establish his standing to bring it. The Court therefore denies Defendants' motion to dismiss Count VIII as to Plaintiff Zieman.

The Court grants Defendants' motion to dismiss Count VIII as to Plaintiff Kole, who at this juncture has not alleged facts sufficient to support standing or state a claim for relief. This dismissal is without prejudice; Plaintiffs may amend their complaint to allege facts in support of Plaintiff Kole's standing (and claim) should they be able to do so consistent with Federal Rule of Civil Procedure 11.

**F.      Count IX: "Second Amendment Arms' Claims – Unlawful Burden on Interstate Commerce (U.S. Const. Art. I, § 8, Cl. 3, Art. VI & Amends. II & XIV – 18 U.S.C. Ch. 44 & 15 U.S.C. § 7901)"**

Plaintiff Second Amendment Arms alleges in Count IX that the Ordinance impermissibly burdens interstate commerce, violates the Dormant Commerce Clause, violates the First, Second, Fourth, Fifth, and Fourteenth Amendments, and conflicts with various federal laws in violation of the Supremacy Clause. [51 ¶¶ 79-82]. Defendants move to dismiss Count IX arguing that it fails to comply with the pleading requirements set forth in Rules 10(b) and 8(a)(2), that the Ordinance is not preempted by 15 U.S.C. § 7901, 18 U.S.C. chapter 44, or the Federal Firearms Act, and that the Ordinance does not violate the Dormant Commerce Clause. [60-1 at 10-15.]

The Court need not go beyond Defendants' Rule 10(b) argument. Federal Rule of Civil Procedure 10(b) provides that "each claim founded a separate transaction or occurrence * * * must be stated in a separate count or defense * * * [i]f doing so would promote clarity." Fed. R. Civ. P. 10(b); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] court may require that allegations be grouped into logical counts that are 'founded on' separate transactions or occurrences."). Requiring separate counts serves two purposes: (1) it gives fair notice to the defendants of the claims against them; and (2) it enables the court to grant relief on an entire count, not just part of a count. See *Livingston v. Vill. of Dolton*, No. 02 C 6003, 2003 WL 1463635, at *6 (N.D. Ill. Mar. 20, 2003). As another court in this district has recently explained,

"The [lode]star of Rule 10 is intelligibility, good organization, and basic coherence." *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, at *10 (N.D. Ill. Apr. 9, 2012).

The Second Amended Complaint currently before the Court is in fact the fourth iteration of Plaintiffs' allegations. See [1], [4], [6], [51]. Before the Second Amended Complaint was filed, the Court explicitly instructed Plaintiffs to clarify their allegations by separating their claims into individual counts. Despite the assertion in their brief that "They have done so," [73-1 at 12], Plaintiffs have failed to heed this instruction with respect to Count IX, which by its caption purports to assert a Commerce Clause claim but in fact includes a litany of unrelated claims. Plaintiffs were specifically instructed to avoid "lumping ostensibly separate claims * * * into a single claim," *Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2010 3940694, at *3 (N.D. Ill. Oct. 6, 2010), and their belief that "[p]leading separate claims for each section of the Ordinance * * * would * * * unnecessarily lengthen the Complaint," [73-1 at 12], is an insufficient justification for their disregard of the Court's instruction. As the Seventh Circuit has explained, there is a difference between a lengthy yet intelligible complaint and one whose sprawling nature obfuscates its essence. See *United States ex rel Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("A concise statement of the claim illustrated by 400 concrete examples of fraud would be one thing, but 400 variations on the kind of paragraph we have quoted are quite another.").

The Court recognizes that there is a fine line separating the rule that "[o]ne set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate," from the practical reality that "two legal theories sufficiently distinct that they call for proof of substantially different facts may be separate 'claims.'" *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992). The pleading waters have only been muddied further in recent

years as a result of *Twombly* and *Iqbal*. In light of the Court's previous instructions, however, the proper pleading path for Plaintiffs to take with regard to Count IX—and all others in the Second Amended Complaint—should have been plainly illuminated. The Court therefore grants Defendants' motion to dismiss Count IX in its entirety. Again, Plaintiffs will be given one additional attempt to clarify Count IX if they believe that they can do so.

### G. Count X: "Monell Claim (42 U.S.C. § 1983)"

In Count X, Plaintiffs assert the following in addition to incorporating all of their factual allegations: (1) that "the Mayor, City Clerk, and Superintendent were, by operation of law and as a matter of fact, the final decision makers with regard to actions and decisions that they made and/or participated in by them as hereinabove alleged"; and (2) "That said acts and decisions administering and enforcing sai[d] policies, practices, and customs directly and proximately caused the constitutional violations of Plaintiff's rights, deprivation of Second Amendment Arms' full use of the FFL, lost profits, loss of good will, and other injuries and damages as hereinabove alleged which are therefore directly chargeable to the City." [51 ¶¶ 85-86]. Defendants move to dismiss Count X under Rule 12(b)(6) on the grounds that *Monell* does not create an independent cause of action.

Plaintiffs label Count X as "Monell Claim (42 U.S.C. § 1983)." Defendants are correct, however, that *Monell* does not provide a cause of action but instead provides the theory under which a municipality might be liable for its employees' constitutional violations. *Monell v. Department of Social Services of City of New York* holds that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. 658, 691 (1978). Rather, "[a] municipality can be held liable under § 1983 only if its officers acted pursuant to (1) an official policy; (2) a practice or custom that although not officially authorized, was widespread and well

settled; or (3) instructions from a city official with final policy-making authority." *Gonzalez v. Vill. of W. Milwaukee*, 671 F.3d 649, 664 (7th Cir. 2012). Municipal legislation can be considered an official municipal policy. See *Benedix v. Vill. of Hanover Park, Ill.*, 677 F.3d 317, 318 (7th Cir. 2012); see also *Monell*, 436 U.S. at 690; *Gernetzke v. Kenosha United Sch. Dist. No. 1*, 274 F.3d 464, 468-69 (7th Cir. 2001) ("It doesn't matter what *form* the action of the responsible autority that injures the plaintiff takes. It might be an ordinance, a regulation, an executive policy, or an executive act.").

Here, Plaintiffs have alleged – in other counts – that the City, by way of the Ordinance, has violated their constitutional rights. The Court is thus puzzled by what this separate *Monell* claim adds to Plaintiffs' case. Count X either duplicates the surviving § 1983 claims brought in Counts I-VIII or states only a theory under which Plaintiffs might recover for other constitutional violations but does not present a viable claim in and of itself. Either way, it does not currently state an independent claim upon which relief may be granted. The Court grants the motion to dismiss Count X but does so without prejudice. Plaintiffs may clarify what independent claims, if any, they assert in Count X by filing an amended complaint within 21 days.

### H.    Count XI: "Plaintiffs' Anti-Trust Restraint of Trade Claim (15 U.S.C. § 1, et. seq.)"

In Count XI, Plaintiffs claim that the Defendants, "by unconstitutional economic regulation," have unreasonably restrained competition and trade in violation of the Sherman Act, 15 U.S.C. § 1. [51 ¶ 89.] Defendants argue that Count XI should be dismissed both because Plaintiffs failed to identify which provisions of the Ordinance violate the Sherman Act—a Rule

8(a)(2) deficiency—and because Plaintiffs have failed to state a substantive claim under section 1 of the Sherman Act.[4]

To state a claim under 15 U.S.C. § 1, Plaintiffs must allege (1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012). Defendants argue that Plaintiffs falter at the first step by neglecting to identify "any 'contract, combination, or conspiracy' or any other agreement entered into or engaged in by Defendants which resulted in an unreasonable restraint of trade." [60-1 at 16]. The Court agrees. Plaintiffs allege only that Defendants "have and continue to unreasonably restrain competition and trade that affects interstate commerce," [51 ¶ 89], and that unspecified "acts and decisions constitute a scheme that through concerted action, combination, and/or conspiracy in restraint of trade and commerce among the several States by produced [sic] and imposing the New Gun Ban Ordinance on the Plaintiffs that constituted and continue to constitute ongoing violations of the Sherman Antitrust Act that directly interfered with and continue to interfere [with] Second Amendment Arms' full lawful FFL rights and privileges and has caused and continues to cause lost profits, loss of good will, loss of freedom and liberty and other injuries and damages as hereinabove alleged and deny the other Plaintiffs herein to engage in trade and commerce as above stated." [51 ¶ 90].

The Court is unable to discern from these allegations which of the Defendants allegedly conspired, or how they did so. The Supreme Court has made clear that enactment and compliance with a local ordinance does not alone amount to a conspiracy for Sherman Act

---

[4] The Court notes that although it is not entirely clear from the Second Amended Complaint that Count XI sounds only under Section 1 of the Sherman Act, Plaintiffs' brief opposing the motion to dismiss seems to accept Defendants' assumption that it does. See [73-1 at 17 ("Count XI alleges that the City's Ordinance violates the Sherman Antitrust Act (15 U.S.C. § 1).")]. The Court therefore construes the claim accordingly.

purposes, see *Fisher v. City of Berkeley, Cal.*, 475 U.S. 260, 267 (1986), and Plaintiffs have not

alleged more here.  There can be no liability under Section 1 of the Sherman Act in the absence

of a conspiracy, agreement, or other concerted action by separate entities to restrain trade, so the

Court grants Defendants' motion to dismiss Count XI.

I.    **Count XII: "Plaintiff Koles's [sic] Individual and Class Action Claim for Restitution Under the New Gun Ban Ordinance (U.S. Const., Amends. II & XIV, 42 U.S.C. § 1983)" & Count XVII: "Plaintiff Kole's Pendant [sic] Individual and Class Action State Law Claim for Restitution – Unjust Enrichment"**

In Counts XII and XVII, Plaintiff Kole (and the putative classes that he seeks to

represent) challenges the Ordinance's registration requirements.  He contends that by collecting

fees from him and other law-abiding Chicagoans who are required to register their firearms, the

Defendants under color of law wrongfully deprived them of monies, were unjustly enriched

thereby, and violated their Second and Fourteenth Amendment rights, as well as the rights

guaranteed them by various provisions of the Illinois state constitution.  [51 ¶¶ 93, 114-15].

Defendants move to dismiss Counts XII and XVII for failure to comply with Federal Rule of

Civil Procedure 8(a)(2).  They claim that Count XII "fails to identify what provisions of the

ordinance are being challenged and what relation those provisions have to the payment of the

aforementioned registration fees."  [60-1 at 17].  Defendants incorporate this argument into their

challenge of Count XVII. [60-1 at 22].

Defendants' own briefing belies their claim. In the very next sentence, they note that the

Ordinance provisions governing firearm registration and registration fees are, respectively,

sections 8-20-140 and 8-20-150.  [60-1 at 17].  Defendants clearly are not "left guessing as to

which provision of the Ordinance forms the basis of Kole's claim for restitution of firearm

registration fees."  [60-1 at 17].  Even if they were, however, Plaintiffs' failure to identify the

specific section of the Ordinance would not warrant dismissal of Count XII. "A complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); see also *Smith v. Med. Benefit Adm'rs Group, Inc.*, 639 F.3d 277, 283 n.2 (7th Cir. 2011) ("The fact that Smith cited section 502(a)(2) alone and not section 502(a)(3) in his complaint is not fatal to his complaint, as the federal rules do not require him to plead legal theories in his complaint."). Plaintiff Kole's failure to precisely map his allegations concerning the registration portions of the Ordinance onto specific provisions of the Illinois Constitution likewise is not fatal to Count XVII; unlike Count IX, Count XVII purports to assert only one legal claim, and its clarity would not be significantly improved by requiring Kole to subdivide it into additional numbered paragraphs or counts. Defendants' motion to dismiss Counts XII and XVII is denied.

     **J.**    **Count XIII: "Plaintiff Zieman's Individual and Class Action Claim for Restitution Under Unconstitutional Old Gun Ban Ordinance (U.S. Const., Amends. II & XIV, 42 U.S.C. § 1983)" & Count XVIII: "Plaintiff Zieman's Pendant [sic] Individual and Class Action State Law Claim for Restitution – Unjust Enrichment"**

Counts XIII and XVIII set forth essentially the same claims, to which Defendants raise virtually identical challenges. In these counts, Plaintiff Zieman alleges that the Chicago Police, acting pursuant to the 1982 ordinance, raided his home and confiscated "numerous valuable handguns and rifles that he possessed therein and maintained in a safe as FOID Card holder." [51 ¶ 98]. Zieman was "thereafter found guilty and fined for failing to register" the guns. [51 ¶ 98]. Plaintiff Zieman contends that since the 1982 ordinance was unconstitutional, he and the members of the class identified in ¶ 101, are "entitled to the return and restitution of his said firearms in kind or the fair market value thereof, vacation and expungement of his conviction for failure to register his weapons, a refund of any fines, court costs, expenses, legal fees incurred as

a result thereof, damages, declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices along with his reasonable attorneys fees and costs pursuant to 42 U.S.C. § 1988." [51 ¶ 99]. Defendants argue that Counts XIII and XVIII should be dismissed because Zieman's claims "could be time-barred." [60-1 at 18]. In the alternative, they contend that the claims should be dismissed because they concern a moot issue. [60-1 at 18]. They also argue that Count XVIII should be dismissed for failure to comply with Rule 10(b). [60-1 at 23].

Defendants' statute of limitations argument is a non-starter. Although they are quite correct that Plaintiff Zieman fails to allege when his firearms were allegedly seized, "[t]he mere presence of a potential affirmative defense does not render the claim for relief invalid." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Dismissal on statute of limitations grounds is only appropriate where a plaintiff pleads himself out of court by establishing that a defendant is entitled to a limitations defense. See *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009) (dismissal appropriate where it is "clear from the face of the amended complaint that it [was] hopelessly time-barred"); *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.2d 623, 626 (7th Cir. 2003) ("A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense."). Had Zieman fully "set forth everything necessary to satisfy the affirmative defense," *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005), *i.e.*, alleged a date outside the applicable statute of limitations, Defendants' argument could have carried the day. Defendants may find that it eventually does; it just cannot at this juncture.

Defendants' argument regarding mootness fares better. To the extent that Plaintiff Zieman seeks "permanent injunctive relief against continued enforcement and maintenance" of

the 1982 ordinance, [51 ¶ 99], or "temporary, preliminary and permanent injunctive relief" from its now defunct provisions, [51 ¶¶ 103(D), 117(D)], the Court agrees that this request has been mooted by the repeal of the 1982 ordinance. See *Rembert v. Sheahan*, 62 F.3d 937, 940-41 (7th Cir. 1995) ("The complete repeal of a challenged statute naturally renders a request for an injunction against application of that statute moot."). Similarly, "[a] declaratory judgment on the validity of a repealed ordinance is a textbook example of advising what the law would be upon a hypothetical set of facts." *Nat'l Advertising Co. v. City and Cnty. of Denver*, 912 F.2d 405, 412 (10th Cir. 1990) (quotation omitted). The Court therefore lacks jurisdiction over Counts XIII and XVIII to the extent that they seek injunctive and declaratory relief, and these claims are accordingly dismissed to that extent.

Yet Plaintiff Zieman also seeks other forms of relief – damages and restitution. And "repeal of a law will not render a claim moot if the plaintiff is seeking relief from alleged past rather than future unconstitutional action." *Clarkson v. Town of Florence*, 198 F. Supp. 2d 997, 1003 (E.D. Wis. 2002) (citing *Mumford v. Basinski*, 105 F.3d 264, 273-74 (6th Cir. 1997)). Here, Defendants repealed the 1982 ordinance but did not in so doing necessarily rectify Zieman's alleged injuries. The Court therefore denies Defendants' motion to dismiss Counts XIII and XVIII to the extent that Plaintiff Zieman and the putative class seek restitution and damages.[5]

**K.    Count XIV: "Pendant [sic] State Claim for Declaratory Judgment (735 ILCS 5/2-701)"**

---

[5] The Court is not persuaded that Count XVIII should be dismissed for failure to comply with Rule 10(b). Plaintiff Zieman's claim—that the City was unjustly enriched by his guns and the fines and other fees that he paid in connection with their confiscation—is sufficiently clear to survive the motion to dismiss.

In Count XIV, Plaintiffs seek a declaratory judgment (under Illinois's declaratory judgment statute, 735 ILCS 5/2-701) that the Ordinance[6] violates Article I §§ 1, 2, 4, 6, 12, 22, and 24 of the Illinois Constitution, as well as its due process and takings clauses. See [51 ¶ 105]. Defendants seek to dismiss this count for failure to comply with Rule 10(b).

The Court denies Defendants' motion to dismiss Count XIV. The count states one claim—a claim for declaratory relief—and, so far as the parties have interpreted it, rests upon a "single set of circumstances," the Ordinance. Fed. R. Civ. P. 10(b). The Court notes that the federal rather than state declaratory judgment statute governs Count XIV; the Illinois declaratory judgment statute is a procedural rule that creates no substantive rights. *Household Fin. Servs., Inc. v. N. Trade Mortg. Corp.*, No. 99 C 2840, 1999 WL 782072, at *2 (N.D Ill. Sept. 27, 1999). The Court will construe this count accordingly.

**L. Count XV: "Second Pendant [sic] State Claim by Second Amendment Arms for Mandamus"**

In Count XV, Plaintiff Second Amendment Arms seeks a writ of mandamus compelling Defendants to issue the weapons dealer licenses that it applied for. Defendants argue that the claim fails as a matter of law and should be dismissed.

The Court agrees and grants the motion to dismiss Count XV. The Illinois Supreme Court has explained that mandamus, "an extraordinary remedy used to compel a public official to perform a clearly ministerial duty where no exercise of discretion is involved," may be awarded "only when the petitioner establishes a clear right to the relief requested, a clear duty of the public official to act, and clear authority in the public official to comply." *People ex rel. Glasgow v. Kinney*, 970 N.E.2d 506, 507 (Ill. 2012). Plaintiffs have failed to allege facts supporting any of these elements; they have alleged only that Defendant Mendoza "is

---

[6] The plain text of Count XIV refers to "above referenced *ordinances*." [51 ¶ 105(A)] (emphasis added). The parties confine their arguments to the Ordinance. See [60-1 at 19]; [73-1 at 20-21].

responsible for the issuance of business licenses," [51 ¶ 8], and this is simply not enough to show a plausible entitlement to the requested "extraordinary" relief.

> **M.    Count XVI: "Pendant [sic] Claim by Second Amendment Arms or Tortious Interference with Prospective Economic Advantage"**

In Count XVI, Second Amendment Arms alleges that Defendants tortiously interfered with its prospective business relationships and economic advantages. [51 ¶¶ 109-13]. Defendants contend that Count XVI should be dismissed because it fails to state a claim. In the alternative, they argue that they are immune from liability pursuant to 745 ILCS 10/2-103 and 745 ILCS 10/2-205. [60-1 at 21-22].

The Court agrees that Count XVI fails to state a claim for tortuous interference with prospective business advantage. To prevail on a claim for tortious interference with prospective economic advantage, a plaintiff must prove: (1) a reasonable expectation of entering into a valid business relationship; (2) defendant's knowledge of the plaintiff's expectancy; (3) defendant's purposeful interference to defeat the expectancy; and (4) damages resulting from the interference. *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 641 N.E.2d 584, 590 (Ill. App. Ct. 1st Dist.1994) (citing *Eisenbach v. Esformes,* 582 N.E.2d 196, 199 (Ill. 1991)). Furthermore, Illinois courts long have held that the defendant's interference must be directed to a third party. *Id.*; *Eisenbach*, 582 N.E.2d at 199. "[T]he gravamen of the charge is interference with an existing relationship." *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 370 (Ill. 1998).

Here, Count XVI lacks any allegations of specific actions by the Defendants directed at third parties with an existing relationship to Second Amendment Arms – the allegations instead focus on Second Amendment Arms's and Defendants' conduct and assert only that but for the Ordinance, Second Amendment Arms would have entered into business relationships by selling firearms and firearm accessories to "qualified prospective customers in and around the City."

[51 ¶ 109].    Accordingly, Second Amendment Arms has failed to satisfy the pleading requirements for tortious interference, and Count XVI of the Second Amended Complaint is dismissed.  See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."); *Willcutts v. Galesburg Clinic Ass'n*, 560 N.E.2d 1, 4 (Ill. App. Ct. 3d Dist. 1990) (upholding trial court's finding that plaintiff's claim of tortious interference failed because the plaintiff "failed to allege specific actions by defendants directed at third parties, but rather has presented broad, conclusory allegations against defendants").

## IV.    Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [58].    Although Plaintiffs already have had multiple opportunities to frame their claims, the Court will allow one additional opportunity to file an amended complaint within 21 days if Plaintiffs believe that they can cure any of the pleading deficiencies identified above. Whether or not Plaintiffs choose to replead, this case should move forward with discovery immediately. This case is set for further status on October 18, 2012 at 9:30 a.m.  The parties are directed to meet and confer and to file a proposed discovery plan no later than October 16.


Dated: September 25, 2012                    _____
                                             Robert M. Dow, Jr.
                                             United States District Judge