IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

AUG 0 1 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| SECOND AMENDMENT ARMS (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a SECOND AMENDMENT ARMS, ROBERT M. ZIEMAN, SR., ICARRY, an unincorporated Association (and d/b/a of Shaun Kranish), SHAUN KRANISH, individually and d/b/a ICARRY, and TONY KOLE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO, a municipal corporation, RAHM EMANUEL, in his official capacity as Mayor of the City of Chicago, GARRY McCARTHY, Superintendent of Police of the City of Chicago, and SUSANA MENDOZA, City Clerk of the City of Chicago,<br><br>Defendants. | Case No: 1:10-CV-4257<br>10-CV-4257<br><br>Hon. Robert M. Dow, Jr.<br>U.S. District Court Judge<br><br>Hon. Sheila M. Finnegan<br>U.S. Magistrate Judge |

## THIRD AMENDED COMPLAINT

Plaintiffs, Second Amendment Arms (a d/b/a of R. Joseph Franzese), R. Joseph Franzese,

individually and d/b/a Second Amendment Arms, Robert M. Zieman, Sr., ICarry, an

unincorporated Association (and d/b/a of Shaun Kranish), Shaun Kranish and d/b/a ICarry, and

Tony Kole, by and through undersigned counsel, and complaining of the Defendants, City of

Chicago, a municipal corporation (hereinafter "the City"), Rahm Emanuel, in his official

capacity as Mayor of the City of Chicago, Garry McCarthy, Superintendent of Police of the City

of Chicago, and Susana Mendoza, City Clerk of the City of Chicago, allege as follows:

## INTRODUCTION

1.      In this action Plaintiffs bring their claims against the Defendant seeking the recovery of their lost profits and damages, as well as equitable, declaratory, and other relief under, *inter alia*, 42 U.S.C. § 1983, 42 U.S.C. § 1988, *et. seq.*, the Second, Fifth and Fourteenth Amendments to the United States Constitution, and the Illinois Constitution, as the result of various sections of the Municipal Code of Chicago, as well as the Chicago Zoning Ordinance. The complained-of laws deprive Plaintiffs of their constitutional rights to keep, bear and sell arms for lawful purposes including self-defense, as well as directly causing Plaintiffs to suffer monetary damages. Additionally, Plaintiffs seek restitution for infringements of their rights stemming from the wrongful enforcement of, and penalties for, previous unconstitutional City ordinances.

## THE PARTIES

2.      R. Joseph Franzese, individually and d/b/a Second Amendment Arms (hereinafter "Franzese" or collectively as "Second Amendment Arms"), is a citizen of the United States who resides and does business as Second Amendment Arms in Lake Villa, Illinois, as a firearms dealer pursuant to a federal firearms license ("FFL").

3.      Plaintiff Robert M. Zieman, Sr. (hereinafter "Zieman") is a citizen of the United States, and a life-long resident and long-time employee of the City of Chicago. He also has five minor children who live in his residence. As a City employee, he is legally required by its ordinances to reside in the City. He is an honorably discharged veteran of the United States Marine Corps, who is extensively trained and experienced in the safety and use of various firearms, including but not limited to side-arms, and has also been trained and designated by the Marine Corps in special weapons safety and usage.

2

4.     Plaintiff Shaun Kranish is a citizen of the United States who resides and does business in Rockford, Illinois (hereinafter "Kranish").

5.     Plaintiff ICarry is an unincorporated Second Amendment rights education, advocacy and membership association, and is a d/b/a of Kranish who is its founder and chief executive manager, and a member thereof (hereinafter "ICarry").

6.     Plaintiff Kole (hereinafter "Kole") is a natural person and a citizen of the United States residing in Chicago, Illinois. Kole currently owns and possesses several firearms at his Chicago residence, pursuant to a Chicago firearms permit ("CFP") and firearm registration certificates ("FRC") for which has paid the City of Chicago's required fees. He also is the President, Manager, and sole owner of Ghost Industries LLC, which is a federally licensed firearms dealer with its principal place of business in Norridge, Illinois. At all times relevant Kole possessed a valid State of Illinois Firearms Owner Identification Card (the "FOID Card") and is trained and experienced in the safety and use of various firearms or ammunition products.

7.     Defendant City of Chicago (hereinafter "City") is a municipal entity organized under the Constitution and laws of the State of Illinois.

8.     Defendant Rahm Emanuel (hereinafter "Emanuel") is the City's Mayor and as such is responsible for executing, and administering its laws, customs, practices, and policies. In that capacity, he also presently enforces the laws, customs, practices and policies complained of in this action. He is sued in official capacity as Mayor.

9.     Defendant Garry McCarthy ("McCarthy") is the City's Superintendent of Police, and as such is responsible for executing, and administering its laws, customs, practices, and policies. In that capacity, he also presently enforces the laws, customs, practices and policies complained of in this action. Among other duties, he is responsible for determining what

3

constitutes an "unsafe handgun," and promulgating the roster of "unsafe handguns,"

administering the firearms registration and permitting system in the City, and enforcing City

ordinances relating to possession, sale, transfer, transportation, and carrying of firearms. He is

sued in his official capacity as Superintendent.

      10.     Defendant Susana Mendoza (hereinafter "Mendoza") is the City's Clerk, and as

such is responsible for executing, and administering its laws, customs, practices, and policies. In

that capacity, she is responsible for the issuance of business licenses and enforcing the laws,

customs, practices and policies complained of in this action in connection therewith. She is sued

in her official capacity as City Clerk.

## JURISDICTION AND VENUE

      11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983. The Court has jurisdiction over pendant state

law claims pursuant to 28 U.S.C. § 1367.

      12.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

      13.     On or about March 19, 1982, the CITY enacted an ordinance that banned

possession of handguns within CHICAGO, and imposed restrictive requirements on firearms

ownership, possession, and use within the City ("Old Gun Ban Ordinance"), a copy of which is

attached as "Exhibit A."

      14.     Owing to certain Supreme Court decisions, the Chicago City Council passed a

revised ordinance on July 2, 2010 (the "New Gun Ban Ordinance"), which removed the ban on

possessing handguns in City residents' homes, and replaced the ban with a number of restrictions

4

and requirements for home firearms possession. A copy of the New Gun Ban Ordinance is attached as "Exhibit B."

15.     More specifically, the New Gun Ban Ordinance, which became effective on July 12, 2010, removed the complete ban on possession of handguns, but limited possession to one operable firearm, and only in the home. It also imposed or continued numerous restrictions that severely burden or eliminate the Second Amendment rights of law-abiding City residents to acquire, own, possess, transport, and transfer firearms and associated lawful products, such as laser sight accessories, within the City.

16.     The New Gun Ban Ordinance prohibits the operation of any firearm stores or dealers in the City. Section 4-144-010 of the Municipal Code of Chicago (MCC § 4-144-010) requires that any person who engages in the business of selling certain weapons, including any "deadly weapon which can be carried or concealed on the person," which would include any ordinary firearm, must obtain a "weapons dealer license." *See* Exhibit B at p. 3. Under the prior version of MCC § 4-144-010, a person who obtained a weapons dealer license could sell firearms. Title 4, Businesses, Occupations and Consumer Protection, Chapter 4-144, Weapons (the "Weapons Dealer Ordinance"), a copy of which is attached hereto as "Exhibit C." Under the revised § 4-144-010, it is unlawful for persons licensed as weapons dealers to "engage in the business of selling, or to sell, give away or otherwise transfer, any firearm...." *See* Exhibit B at p.3. Thus, it is now impossible to sell firearms at wholesale or retail in the City.

17.     Furthermore, MCC § 8-20-100 provides that "no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm." *See* Exhibit B, generally, for text of §§ 8-10-010 *et seq*. There are exceptions for transfers to police officers, which much take place at police department facilities, and for officers to sell firearms to each

5

other.  MCC § 8-20-100(e); MCC § 2-84-075.  There are also limited exceptions involving licensees and patrons of licensed shooting range facilities while on the premises (*See* MCC § 4-151-070), but they are not applicable to this suit.  In short, MCC § 8-20-100 operates as a ban on gun stores, but also operates to ban all sales, acquisitions, and transfers of firearms between law-abiding citizens outside of commercial channels as well.

18.  Taken together, these provisions operate as a complete ban on gun stores within the City; as a complete ban on firearms dealers operating within the City; and as a complete ban on the sale, gift, purchase, acquisition, or other transfer of any firearm by any person within the City (except to police or by inheritance, or for limited use in licensed shooting range facilities).  In short, firearms cannot legally be sold or obtained within City.

19.  It is not apparent that City's zoning ordinance specifically allows or forbids gun shops, except that "the sale of firearms or ammunition" is forbidden as a "home occupation" pursuant to § 17-9-0202-C(11)(q).  On information and belief, City will not issue a zoning permit for any use it deems may violate the City's penal ordinances, including MCC § 8-20-100.

20.  Section 8-20-020 of the New Gun Ban Ordinance states that "[i]t is unlawful for any person to carry or possess a handgun, except within the person's home."  There are a number of extremely narrow exceptions, mostly for government employees and security personnel.  There is no provision for the ordinary, law-abiding citizen to possess, carry, or transport a functioning handgun any place outside the home.  Subject to basically the same exceptions, long guns may only be possessed in the home or in the person's "fixed place of business." MCC § 8-20-030.

21.  In addition, § 8-20-140(a) makes it "unlawful for any person to carry or possess a firearm without a firearm registration certificate."  The application for a registration certificate

6

must state "the address at which the firearm will be located." MCC § 8-20-140(c)(1)(E).

Pursuant to MCC § 8-20-180(c), a "registration certificate shall only be valid for the address on the registration certificate. Except in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate."

22.     The only exception to MCC § 8-20-020, § 8-20-030 (except for hunting inside the City with long guns) and § 8-20-180(c) that applies to the ordinary citizen is for "a person while engaged in the lawful transportation of a firearm." See MCC § 8-20-020(b)(17). "Lawful transportation" is defined in MCC § 8-20-010 as transportation by a person (1.) in compliance with MCC § 8-20-090 (which references a federal statute, 18 U.S.C. §926A), or (2.) "who has a valid FOID card, a CFP and firearm registration certificate, if applicable, and the firearm is (i) broken down in a non-functioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case."

23.     18 U.S.C. §926A, which is referenced in MCC § 8-20-090, allows any person, who is not prohibited by federal law from transporting, shipping or receiving a firearm, to transport a firearm from any place that he may lawfully possess and carry it, to any other place he may lawfully possess and carry it, provided it is unloaded and not readily accessible as specifically described in that statute.

24.     MCC § 8-20-090 adds two additional requirements to the federal statute: (1.) that the person must be "engaged in interstate travel;" and (2.) that there is a presumption that "any person within the city for more than 24 hours is not engaged in interstate travel...."

25.     "Firearm case" is defined in MCC § 8-20-010 as "any firearm case, carrying box, shipping box or other similar container that is designed for the safe transportation of the

7

firearm." It is unclear from this definition whether the container must be hard-sided or can be soft-sided; whether the container must be locked, or be capable of being locked, or whether an unlocked case is sufficient; whether the case must be specifically designed only for transportation of firearms, or whether any secure box or container that is adequate for transportation of firearms will suffice; and whether "safe" means safe for the person transporting it, safe insofar as the firearm cannot be quickly accessed, or safe in the sense of protecting the firearm from damage. Many cases specifically designed for firearms are designed to carry an intact, assembled firearm rather than a one that is "broken down" into multiple parts.

26.     Many firearms cannot be "broken down in a nonfunctioning state" without specialized tools, skills, and/or knowledge. The cylinders for most revolvers, for example, cannot be removed and replaced without the services of a gunsmith or a highly skilled individual using tools. Removal of slides on semi-automatic handguns may require specialized tools, and/or considerable knowledge, hand-strength or dexterity, depending on make and model. Some rifles can be easily broken down (removal of bolt on some bolt actions) but others cannot (*e.g.*, most lever actions). The same is true of shotguns.

27.     Thus, depending on the firearm and the skills, tools, knowledge, and strength possessed by a firearm owner, it may be literally impossible for the individual to "break down" the firearm into a nonfunctioning state before transporting it, and in most cases even more difficult to properly reassemble it.

28.     MCC § 8-20-040 mandates that "every person who keeps or possesses a firearm in his home shall keep no more than one firearm in his home assembled and operable." Each person in the home with a valid CFP may keep one assembled and operable firearm. All other firearms "shall be broken down in a nonfunctioning state or shall have a trigger lock or other

8

mechanism, other than the firearm safety mechanism, designed to render the firearm temporarily inoperable."

29.     As described above, MCC § 8-20-020 and § 8-20-030, with extremely limited exceptions, ban possession of handguns and long guns outside the home. MCC § 8-20-010 defines "home" restrictively, to include only the inside of a person's dwelling unit, and to exclude "(i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas; or (iii) any dormitory, hotel, or group living, as that term is defined in MCC § 17-17-0102-A."

30.     Pursuant to MCC § 8-20-170, "no registration certificate shall be approved for any of the following types of firearms... (b) an unsafe handgun[.]" MCC § 8-20-010 declares that "unsafe handgun" means "any handgun that is listed on the superintendent's roster of unsafe handguns because, in the determination of the superintendent, the handgun is unsafe due to its size, ability to be concealed, detectability, quality of manufacturing, quality of materials, ballistic accuracy, weight, reliability, caliber, or other factors which makes [sic] the design or operation of the handgun otherwise inappropriate for lawful use." McCarthy has promulgated a roster pursuant to this section, a copy of which is attached as Exhibit D.

31.     MCC § 8-20-060(a) makes it "unlawful for any person to carry, possess, display for sale, or otherwise transfer any laser sight accessory...." Laser sight accessory is defined by MCC § 8-20-010 to mean "a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm." Laser sight accessories are declared contraband, and "shall be seized by and forfeited to the city" pursuant to MCC § 8-20-060(c). The owner of record of any vehicle containing a laser sight accessory is subject to a penalty of $2,000.00-

9

3,000.00 plus towing and storage fees, and the vehicle is subject to seizure and impoundment. *See* MCC § 8-20-070.

32.     On or about June 30, 2010, and July 2, 2010, Second Amendment Arms caused to be filed and submitted two applications with Mendoza's office in accordance with and pursuant the Weapons Dealer Ordinance and paid the required fees therefore. The applications sought to obtain weapons dealer business licenses to permit Franzese, as a licensed federal firearms dealer, to open and operate two gun shops at two separate locations within the City. The City accepted and retained the fees paid for said applications, but rejected and refused to process or grant them because of the prohibition on gun shops in the New Gun Ban Ordinance. Franzese has suffered damages and lost profits as a result and still desires, plans and intends to submit additional applications to open gun shops at locations within the City, and would open such shops, except that he, like all other ordinary citizens, is barred from selling firearms within the City by the provisions of the New Gun Ban Ordinance.

33.     Even if Plaintiff Franzese was permitted by the terms of the Weapons Dealer Ordinance to open a gun shop in the City, establishment of such a shop would be obstructed or made impossible by the provisions of MCC §§ 8-20-020, 8-20-30, 8-20-180(c), and the definition of "lawful transportation" of a firearm in MCC § 8-20-010, which make it illegal to possess a firearm outside the home (or fixed place of business, in the case of long guns), limit possession of firearms to the address listed on the registration certificate, and contain a restrictive and vague definition of "lawful transportation." Such provisions, as written, would prohibit Franzese from possessing handguns, at least, at his gun shop. They would also prevent prospective customers from having firearms in their possession at his gun shop, and in many cases would make it difficult and perhaps impossible for customers who wish to purchase from,

10

or sell firearms to, Second Amendment Arms to transport firearms to and from the shop, due to the "lawful transportation" provision requiring guns to be transported in a "broken down" condition.

34.     Plaintiffs Zieman and Kole desire to purchase firearms within the City where they are residents, but are prohibited from doing so by the ban on the selling of firearms by weapons dealers imposed by MCC § 4-144-010, and the complete ban on selling, acquiring, or transferring firearms within the City imposed by MCC § 8-20-100.

35.     If firearms stores and transfers were legal in the City, Plaintiffs Zieman and Kole would travel to and from a firearms store in the City to purchase a firearm, and thus possess firearms outside the home, either at the store, on the way to or from the store or gun ranges, *etc.*, or both, were they not prohibited from doing so by the provisions of MCC §§ 8-20-020, 8-20-030, 8-20-180(c) and/or the definition of "lawful transportation" of a firearm in MCC § 8-20-010.

36.     Plaintiff ICarry regularly gifts handguns to qualified, law abiding Illinois citizens and desires and plans to gift a handgun to Mr. Otis McDonald in the City to honor, commemorate and acknowledge his commitment, efforts and stand for fundamental Second Amendment rights that led to the U.S. Supreme Court landmark ruling in *McDonald v. City of Chicago* in 2010. ICarry regularly gifts handguns to other qualified, law-abiding citizens, especially, minorities, the poor, infirm, disabled and elderly who are often the most vulnerable targets of urban crime, but cannot afford or have difficulty obtaining handguns for the protect their homes, person, family and property. Plaintiff Kranish d/b/a ICarry fears prosecution under the New Gun Ban Ordinance by the Defendants should they undertake such conduct in the City

11

or with respect to its residents, particularly, but not limited to, prosecution under MCC § 8-20-100.

37.     Plaintiff Kole wishes to maintain more than one operable firearm in his residence in the City for purposes of self-defense, and would do so were it not for the provisions of MCC § 8-20-040. Plaintiff Kole lives in a four room apartment that has two entrances and windows in every room. An intruder could therefore attack Plaintiff Kole in his home without Kole having access to an operable firearm, thereby depriving him of his Second Amendment right to defend himself with a firearm within the home.

38.     Plaintiff Kole desires to exercise his right to use a firearm to defend himself on property and structures that are on the lot on which is apartment is situated, including stairs, porches, back, side, or front yard space, and/or common areas. He would do so except that he is prohibited from possessing an operable firearm for purposes of defense in those areas by MCC §§ 8-20-010, 8-20-020, and 8-20-030.

39.     Plaintiff Kole rents a garage on private property approximately a block from his apartment. Like many Chicagoans, he does not live in a dwelling that has an attached garage. He has spent many hundreds of hours working on his vehicle or the vehicles of friends within that garage. Most of the time, weather conditions require that he work with the garage door open, thereby exposing to view valuable tools, which are a popular item for thieves. For this reason, Plaintiff Kole believes that he may be targeted for robbery while within his rented garage. His garage has been burglarized and a 50 gallon air compressor stolen. Further, a home for troubled teenage girls is located on the same block that attracts gangs of male youths, who have threatened him with bodily harm on one occasion. Plaintiff Kole wishes to be able to legally possess a firearm at his private rented garage for purposes of defense, and would do so were such

12

conduct not made illegal by MCC §§ 8-20- 10, 8-20-020, and 8-20-030, prohibiting possession outside the home.

40.     As part of his proposed gun shop, Franzese as Second Amendment Arms intends to possess and offer for sale in the City handguns that are listed on McCarthy's roster of unsafe handguns, and laser sighting devices, but is prohibited from doing so by MCC §§ 8-20-060, 8-20-170, the definitions of "unsafe handgun" and "laser sighting device" in MCC § 8-20-010, and the arbitrary inclusion of certain handguns on the roster.

41.     Plaintiffs Zieman and Kole desire to purchase within the City a laser sighting device, either separately or as an integral part of a firearm, and would do so but for the prohibitions in MCC § 8-20-060.

42.     Plaintiffs Zieman and Kole desire to purchase one or more firearms from the so-called "unsafe gun roster," and would do so absent the prohibitions imposed by MCC § 8-20-170, the definition of "unsafe gun" in MCC § 8-20-010, and the inclusion of such firearms on the roster.

43.     Plaintiffs have a fundamental constitutional right under the Second Amendment to the United States Constitution to keep and bear arms, and Defendants have infringed on those rights, or burdened or prevented the exercise of those rights, under color of the City's laws, ordinances, regulations, customs and usages, by enacting, enforcing and threatening to enforce the ordinance provisions described above. Said ordinance provisions, and the enforcement or threatened enforcement of them, are a proximate cause of injury to Plaintiffs, and have caused and will continue to cause Plaintiffs to suffer irreparable harm.

## COUNT I
## RIGHT TO KEEP AND BEAR ARMS
### U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

44.     Paragraphs 1 through 43 are incorporated as though fully restated herein.

45.     The Second Amendment, which applies against Defendant City of Chicago by operation of the Fourteenth Amendment, secures the right to sell firearms through retail sales.

46.     The Second Amendment, which applies against Defendant City of Chicago by operation of the Fourteenth Amendment, also secures the right of Second Amendment Arms' would-be customers, such as Zieman and Kole, to purchase firearms through retail sales from locations within the City.

47.     City's laws effectively prohibit the operation of firearms dealers who wish to sell lawful firearms to the law-abiding public, both through its Municipal Code and Zoning Ordinance. The firearms retail sales ban and associated laws also impede gun ownership itself by barring permission to Second Amendment Arms to market and sell its products, and inhibit the ability of Second Amendment Arms' would-be customers, such as Zieman and Kole, to purchase lawful firearms inherently necessary to the exercise of Second Amendment rights.

48.     City currently under color of law deprives individuals and businesses, including the Plaintiffs, of their right to keep and bear and/or sell arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of City's unconstitutional customs, policies, and practices.

49.     City currently under color of law deprives individuals and businesses, including the Plaintiffs, of their right to keep and bear and/or sell arms, in violation of the Second and

14

Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in

violation of 42 U.S.C. § 1983. Second Amendment Arms is also entitled to its actual monetary

damages suffered as a result of City's continued enforcement and maintenance of its

unconstitutional customs, policies, and practices.

WHEREFORE, Plaintiffs request judgment be entered in their favor and against

Defendant City of Chicago as follows:

1. An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing all offending sections of the Municipal Code of Chicago and the Chicago Zoning Ordinance listed above, or any other law, as against the ordinary operation and use of retail firearms sales businesses;

2. Declaratory relief consistent with the requested injunction;

3. Monetary damages in an amount to fully compensate Franzese and Second Amendment Arms for the lost business due to the deprivation of their civil rights;

4. Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

5. Costs of suit; and

6. Any other further relief as the Court deems just and appropriate.

### COUNT II
### BAN ON TRANSFERS AND SALES
### U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

50. The allegations contained in paragraphs 1 through 49 are incorporated as if fully

restated herein.

51. MCC § 8-20-100, which provides that "no firearm may be sold, acquired or

otherwise transferred within the city, except through inheritance of the firearm," prevents

Plaintiffs Zieman and Kole from acquiring firearms for lawful uses within the City, either

15

commercially or in private transactions, and therefore unduly burdens, impedes, and infringes upon Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendments.

52.     MCC § 8-20-100 also prevents firearms dealers and gun shops from selling or transferring within the City any firearms ordinarily possessed by law abiding citizens, which is necessary for citizens to exercise their right to keep and bear arms, and therefore unduly burdens, impedes, and infringes upon the rights of Plaintiffs Franzese, Zieman and Kole under the Second and Fourteenth Amendments.

53.     MCC § 8-20-100 also prevents the transfer of firearms by gift within the City, and therefore unduly burdens, impedes, and infringes the Second Amendment rights of Plaintiff ICarry to make what would otherwise be lawful transfers of firearms to residents of the City, and of the proposed recipients of those gifts to receive them.

54.     Accordingly, MCC § 8-20-100 is unconstitutional and void *ab initio*.

WHEREFORE, Plaintiffs request judgment be entered in their favor and against Defendant City of Chicago as follows:

1.     An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing all offending sections of the Municipal Code of Chicago and the Chicago Zoning Ordinance listed above, or any other law, as against (A.) the lawful transfer, possession and use of firearms for self-defense inside and outside of Plaintiff's homes; and (B.) the ordinary operation and use of retail firearms sales businesses;

2.     Declaratory relief consistent with the requested injunction;

3.     Monetary damages in an amount to fully compensate Franzese and Second Amendment Arms for the lost business due to the deprivation of their civil rights;

4.     Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

16

5.    Costs of suit; and

6.    Any other further relief as the Court deems just and appropriate.

## COUNT III
## BAN ON POSSESSION OUTSIDE HOME
### U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

55.    The allegations contained in paragraphs 1 through 54 are incorporated as if fully restated herein.

56.    MCC §§ 8-20-10, 8-20-020, 8-20-030, and 8-20-180(c) make it unlawful for ordinary, law-abiding citizens to possess or carry a firearm outside the home or (in the case of long guns) fixed place of business, and further prohibit possession or carry at any place other than the address listed on the registration certificate.  Because the Second Amendment guarantees the right of the people to bear arms as well as keep them, and such right to keep and bear arms extends outside the home for lawful purposes such as self-defense and maintenance of proficiency in the use of arms, MCC §§ 8-20-020, 8-20-030, and 8-20-180(c) unduly burden, impede, and infringe upon the rights of Plaintiffs ZIEMAN and KOLE to keep and bear arms under the Second and Fourteenth Amendments.

57.    MCC §§ 8-20-020, 8-20-030, and 8-20-180(c) also unduly burden, impede, and infringe upon the Second Amendment rights of Plaintiffs Kranish and Franzese, as they do not contain any exceptions for lawful possession of a stock of firearms in a place of business for purposes of commercial sale and purchase of firearms, or for lawful possession by a non-resident who does not have a home within the City for purposes of making a gift or transfer of a firearm to a resident.

17

58.     The exception for "lawful transportation" pursuant to MCC § 8-20-020(b)(17) and

§ 8-20-30, as defined in § 8-20-010, unduly burdens, impedes, and infringes upon the Second

Amendment rights of Plaintiffs Franzese, Zieman, Kole, and Kranish because:

    a.     the requirement that the firearm be "broken down in a non-functioning

    state" will frequently be difficult or impossible to comply with, for many common

    makes and models of firearms;

    b.     the definition of "firearm case" in § 8-20-010 is vague, not narrowly

    tailored, and unsupported by any sufficient compelling governmental interest.

59.     Accordingly, the definitions referenced in this Count in MCC § 8-20-010, and the

provisions of MCC §§ 8-20-020, 8-20-020(b)(17), 8-20-030, 8-20-090 and 8-20-180(c), are

unconstitutional and void *ab initio*.

    WHEREFORE, Plaintiffs request judgment be entered in their favor and against

Defendant City of Chicago as follows:

    1.     An order preliminarily and permanently enjoining Defendant, its officers,
    agents, servants, employees, and all persons in active concert or
    participation with them who receive actual notice of the injunction, from
    enforcing all offending sections of the Municipal Code of Chicago and the
    Chicago Zoning Ordinance listed above, or any other law, as against (A.)
    the lawful transfer, possession and use of firearms for self-defense inside
    and outside of Plaintiff's homes; and (B.) the ordinary operation and use
    of retail firearms sales businesses;

    2.     Declaratory relief consistent with the requested injunction;

    3.     Monetary damages in an amount to fully compensate Franzese and Second
    Amendment Arms for the lost business due to the deprivation of their civil
    rights;

    4.     Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

    5.     Costs of suit; and

6.    Any other further relief as the Court deems just and appropriate.

## COUNT IV
## BANS ON MORE THAN ONE OPERABLE FIREARM AND
## MORE THAN ONE FIREARM REGISTRATION PER MONTH
## U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

60.    The allegations contained in Paragraphs 1 through 59 are incorporated as if fully

restated herein.

61.    Since it protects "the right of the people to keep and bear arms," the Second

Amendment is not limited to possession of a single operable firearm, and there is no

constitutionally sufficient compelling governmental interest in arbitrarily rationing the number of

operable firearms a law-abiding citizen may acquire or possess in his own home for defense or

other lawful purposes.

62.    MCC § 8-20-040, which provides that a CFP holder is arbitrarily limited to

having only one operable firearm in the home, and MCC § 8-20-160 that arbitrarily makes it

unlawful to obtain more than one firearm registration certificate per person for a handgun during

any 30-day period therefore unduly burden, impede, and infringe upon the Second Amendment

rights of Plaintiffs Zieman and Kole as residents of City.

WHEREFORE, Plaintiffs request judgment be entered in their favor and against

Defendant City of Chicago as follows:

1.    An order preliminarily and permanently enjoining Defendant, its officers,
agents, servants, employees, and all persons in active concert or
participation with them who receive actual notice of the injunction, from
enforcing all offending sections of the Municipal Code of Chicago and the
Chicago Zoning Ordinance listed above, or any other law, as against (A.)
the lawful transfer, possession and use of firearms for self-defense inside
and outside of Plaintiff's homes; and (B.) the ordinary operation and use
of retail firearms sales businesses;

2.    Declaratory relief consistent with the requested injunction;

19

3. Monetary damages in an amount to fully compensate Franzese and Second Amendment Arms for the lost business due to the deprivation of their civil rights;

4. Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

5. Costs of suit; and

6. Any other further relief as the Court deems just and appropriate.

## COUNT V
## BAN ON POSSESSION IN PARTS OF HOME AND CURTILAGE
### U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

63. The allegations contained in Paragraphs 1 through 62 are realleged and incorporated by reference herein.

64. MCC §§ 8-20-020 and 8-20-030, with extremely limited exceptions, ban possession of handguns and long guns outside the home. MCC § 8-20-010 defines "home" to include only the inside of a person's dwelling unit, and to exclude, inter alia, curtilage, "(i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas...."

65. The Second Amendment guarantees the right of the people to bear arms as well as keep them, and such right to keep and bear arms extends both inside and outside the home for lawful purposes such as self-defense. Law abiding citizens have a Second Amendment right to keep, carry, or bear arms in their own garage, whether attached on the lot or rented nearby, and on their own property outside the walls of the dwelling unit, including stairs, porches, and back, side, or front yard space, and common areas, for such lawful purposes, regardless of whether those areas are considered inside or outside the home.

20

66.     The definition of "home" in MCC § 8-20-010, read together with the provisions

of §§ 8-20-020 and 8-20-030, therefore unduly burdens, impedes, and infringes upon the rights

of Plaintiffs Zieman and Kole to keep and bear arms under the Second and Fourteenth

Amendments, and is unconstitutional and void *ab initio*.

WHEREFORE, Plaintiffs request judgment be entered in their favor and against

Defendant City of Chicago as follows:

1.     An order preliminarily and permanently enjoining Defendant, its officers,
       agents, servants, employees, and all persons in active concert or
       participation with them who receive actual notice of the injunction, from
       enforcing all offending sections of the Municipal Code of Chicago and the
       Chicago Zoning Ordinance listed above, or any other law, as against the
       lawful possession and use of firearms for self-defense inside and outside
       of Plaintiff's homes;

2.     Declaratory relief consistent with the requested injunction;

3.     Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

4.     Costs of suit; and

5.     Any other further relief as the Court deems just and appropriate.

## COUNT VI
## BAN ON SALE AND POSSESSION OF ORDINARY HANDGUNS
## U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

67.     The allegations contained in Paragraphs 1 through 66 are incorporated as if fully

restated herein.

68.     The United States Supreme Court in *Heller* held that the Second Amendment

protects firearms that are "typically possessed by law-abiding citizens for lawful purposes...."

69.     MCC§ 8-20-170 provides that no registration certificate shall be approved for any

"unsafe handgun," and § 8-20-010 defines "unsafe handgun" as listed by McCarthy on a roster of

"unsafe handguns."

70.     Many if not all of the handguns on the roster (Exhibit D) are firearms that are typically possessed by law-abiding citizens for lawful purposes, and are therefore protected by the Second Amendment from being banned by the City. The "criteria" in MCC § 8-20-010 by which the Superintendent is supposed to compile the roster are also so vague, arbitrary, conflicting, irrational, and uncertain that they cannot conceivably be considered to be narrowly tailored and to survive heightened scrutiny under the Second Amendment.

71.     The roster includes firearms that Plaintiff Franzese wishes to offer for sale and to sell at his proposed gun stores, and that Plaintiffs Zieman and Kole wish to purchase. Accordingly, MCC § 8-20-170, the criteria for defining "unsafe handgun" under MCC § 8-20-010, and the roster as published unduly burden, impede, and infringe upon the rights of Plaintiffs Franzese, Zieman and Kole to keep and bear arms under the Second and Fourteenth Amendments, and are unconstitutional and void *ab initio*.

WHEREFORE, Plaintiffs request judgment be entered in their favor and against Defendant City of Chicago as follows:

1.     An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing all offending sections of the Municipal Code of Chicago and the Chicago Zoning Ordinance listed above, or any other law, as against (A.) the lawful transfer, possession and use of firearms for self-defense inside and outside of Plaintiff's homes; and (B.) the ordinary operation and use of retail firearms sales businesses;

2.     Declaratory relief consistent with the requested injunction;

3.     Monetary damages in an amount to fully compensate Franzese and Second Amendment Arms for the lost business due to the deprivation of their civil rights;

4.     Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

22

5.    Costs of suit; and

6.    Any other further relief as the Court deems just and appropriate.

## COUNT VII
## BAN ON SALE AND POSSESSION OF LASER SIGHTING DEVICES
### U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

72.    The allegations contained in paragraphs 1 through 71 are incorporated as if fully restated herein.

73.    Laser sighting devices as defined in MCC § 8-20-010 may either be "integrated into a firearm or capable of being attached to a firearm." Firearms equipped with laser sighting devices, either as part of the firearm itself, or added to a firearm, are "typically possessed by law-abiding citizens for lawful purposes," and are thus protected by the Second Amendment. Indeed, laser sighting devices are designed to facilitate the Second Amendment's core purpose of self-defense by increasing the practical accuracy of a firearm for defensive purposes, especially in low light conditions.

74.    The ban in MCC § 8-20-060(a) on carrying, possessing, displaying for sale, or otherwise transferring any laser sight unduly burdens, impedes, and infringes upon the Second Amendment rights of Plaintiff Franzese, who wishes to display for sale, sell, and transfer such laser sighting devices. § 8-20-060(a), and the seizure, forfeiture, penalty, and impoundment provisions of § 8-20-060(c) and § 8-20-070, unduly burden, impede, and infringe upon the Second Amendment rights of Plaintiffs ZIEMAN and KOLE, who wish to purchase and possess laser sighting devices.

75.    Accordingly, MCC §§ 8-20-060(a), 8-20-060(c) and 8-20-070 are unconstitutional and void *ab initio*.

23

WHEREFORE, Plaintiffs request judgment be entered in their favor and against

Defendant City of Chicago as follows:

1.  An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing all offending sections of the Municipal Code of Chicago and the Chicago Zoning Ordinance listed above, or any other law, as against (A.) the lawful transfer, possession and use of firearms and laser sights for self-defense inside and outside of Plaintiff's homes; and (B.) the ordinary operation and use of retail firearms sales businesses;

2.  Declaratory relief consistent with the requested injunction;

3.  Monetary damages in an amount to fully compensate Franzese and Second Amendment Arms for the lost business due to the deprivation of their civil rights;

4.  Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

5.  Costs of suit; and

6.  Any other further relief as the Court deems just and appropriate.

## COUNT VIII
## PHYSICAL PRESENCE, SECURITY,
## TRIGGER LOCK AND LOCK BOX REQUIREMENTS
## U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

76.     The allegations contained in paragraphs 1 through 75 are incorporated as if fully

restated herein.

77.     The requirements of MCC § 8-20-050(1) that because Zieman has minors under

age 18 living in his residence he must be physically present in the home and the firearm is either

being held by him or is physically secured on his body; (2) that a firearm be secured by a trigger

lock or other mechanism, other than the firearm safety mechanism, designed to render a firearm

temporarily inoperable; or (3) the firearm and ammunition are placed in a securely locked box or

24

container makes it impractical and impossible for him or other citizens to use arms for the core

lawful purpose of self-defense.

78.     Accordingly, MCC § 8-20-050 is unconstitutional and void *ab initio*.

WHEREFORE, Plaintiffs request judgment be entered in their favor and against

Defendant City of Chicago as follows:

1.     An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing all offending sections of the Municipal Code of Chicago and the Chicago Zoning Ordinance listed above, or any other law, as against the lawful possession and use of firearms for self-defense inside and outside of Plaintiff's homes;

2.     Declaratory relief consistent with the requested injunction;

3.     Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

4.     Costs of suit; and

5.     Any other further relief as the Court deems just and appropriate.

## COUNT IX
## DENIAL OF SUBSTANTIVE DUE PROCESS
## U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983

79.     Paragraphs 1 through 78 are incorporated as though fully stated herein.

80.     The Fourteenth Amendment, which applies against the City, secures Franzese's

fundamental property rights to a business license to own a retail sales firearms establishment,

which also includes the fundamental rights to sell firearms through retail sales. The Fourteenth

Amendment also protects Plaintiffs' fundamental right to earn his livelihood in any lawful

manner in which he chooses.

81.     Through arbitrary and capricious action on the part of the City, Franzese is unable
to sell firearms through in-person sales. These City actions have resulted in a denial of
Plaintiffs' Fourteenth Amendment substantive due process rights.

82.     Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are
therefore entitled to declaratory and permanent injunctive relief against continued enforcement
and maintenance of Defendants' unconstitutional customs, policies, and practices.

83.     Franzese is also entitled to his actual monetary damages suffered as a result of
City's continued enforcement and maintenance of its unconstitutional customs, policies, and
practices.

WHEREFORE, Plaintiffs request judgment be entered in their favor and against

Defendants as follows:

1.      An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing all offending sections of the Municipal Code of Chicago and the Chicago Zoning Ordinance listed above, or any other law, as against (A.) the lawful transfer, possession and use of firearms for self-defense inside and outside of Plaintiff's homes; and (B.) the ordinary operation and use of retail firearms sales businesses;

2.      Declaratory relief consistent with the requested injunction;

3.      Monetary damages in an amount to fully compensate Franzese and Second Amendment Arms for the lost business due to the deprivation of their civil rights;

4.      Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

5.      Costs of suit; and

6.      Any other further relief as the Court deems just and appropriate.

## COUNT X
## DORMANT COMMERCE CLAUSE
## U.S. CONST., ART. I, SEC. 8

84.     Paragraphs 1 through 83 are incorporated as though fully restated herein.

85.     Franzese as Second Amendment Arms operates a reputable business whose product distributors and manufacturers are located in, *inter alia*, Illinois and many other states and even foreign counties.

86.     Even firearms that were manufactured in Illinois are often wholesaled by the manufacturer to out-of-state distributors, and thus have left the State of Illinois and then re-entered it before being acquired by Franzese and Second Amendment Arms.

87.     Many of the firearms that Franzese as Second Amendment Arms imports, has sold, and sells physically crossed state lines and are marked *via* the Internet, the U.S. Mail, and telephonically.

88.     Thus, much of Franzese and Second Amendment Arms' business comprises interstate commerce.

89.     The Commerce Clause, contained in Article I, Section 8 of the Constitution, as interpreted by the Supreme Court and other applicable Courts, prohibits local regulation that affects interstate commerce when the burden on such commerce is clearly excessive to any putative local benefits. This aspect of the Commerce Clause is commonly referred to as the "Dormant Commerce Clause."

90.     The City's restrictions in its Municipal Code and Zoning Ordinance as described above harm not only Plaintiffs, but also the out-of-state distributors and manufacturers of the Plaintiffs' products, as well as the consumers of said products who would have made purchases from Plaintiffs Franzese and Second Amendment Arms.

27

91. The City's restrictions burden interstate commerce in an excessively restrictive manner with no local benefits, and thus violate the Dormant Commerce Clause of the Constitution.

92. City currently under color of law deprives individuals and businesses, including the Plaintiffs, of their right to keep and bear and/or sell arms, in violation of the (Dormant) Commerce Clause to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of City's unconstitutional customs, policies, and practices.

93. City currently under color of law deprives individuals and businesses, including the Plaintiffs, of their right to keep and bear and/or sell arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs Franzese and Second Amendment Arms are also entitled to their actual monetary damages suffered as a result of City's continued enforcement and maintenance of its unconstitutional customs, policies, and practices.

WHEREFORE, Plaintiffs request judgment be entered in their favor and against Defendant City of Chicago as follows:

    1. An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing all offending sections of the Municipal Code of Chicago and the Chicago Zoning Ordinance listed above, or any other law, as against the ordinary operation and use of retail firearms sales businesses;

    2. Declaratory relief consistent with the requested injunction;

3. Monetary damages in an amount to fully compensate Franzese and Second Amendment Arms for the lost business due to the deprivation of their civil rights;

4. Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

5. Costs of suit; and

6. Any other further relief as the Court deems just and appropriate.

## COUNT XI
## PLAINTIFF KOLE'S INDIVIDUAL AND CLASS ACTION CLAIM FOR RESTITUTION UNDER THE NEW GUN BAN ORDINANCE U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

94. Plaintiff Kole, individually and as class representative, incorporates Paragraphs 1 through 93 as if fully restated herein and states individually and as class representative:

95. By requiring law-abiding citizens and residents, including Kole and his fellow class members, to register all firearms prior to their acquisition under the unconstitutional New Gun Ban Ordinance, Defendants under color of law have unlawfully deprived them monies by having and continuing to wrongfully charge and collect fees thereunder to obtain firearms permits and firearm registration certificates in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiff and the class are thus damaged and are therefore entitled to declaratory relief and restitution of all such fees.

96. The class on whose behalf this action is brought on behalf of Kole individually, and all other citizens and residents and other entities who have paid the City fees to obtain firearms permits and firearm registration certificates under the New Gun Ban Ordinance since the date of its adoption.

97. Kole, as class representative, will adequately represent the claims of each of these natural citizens.

98.    A class action may be maintained in this action because:

(a)    the class is so numerous that joinder of all members is impractical. While the exact number and identities of the class members are unknown at this time, Kole believes the number to be substantial and that they can be determine through discovery and full disclosure and accounting of Defendants and their legal counsel's records, that are within their possession and control;

(b)    there are questions of fact or law, including but not limited to the above issues of constitutionality of said ordinances that are common to the class. Such questions predominate over any questions affecting only individual class members.

(c)    Kole is best situated to, and will, fairly and adequately represent the interest of the class and other members, who like them, have been intimidated, and may, like them, be fearful of retaliation so as to step forward to vindicate and protect their right.

(d)    a class action is an appropriate method for the fair and efficient adjudication of the controversy and will serve the interests of judicial economy.

WHEREFORE, Plaintiff Kole, individually and as class representative, prays for

judgment against the Defendan City of Chicago:

1.    certifying the class and declaring that the upon the City's above-referenced ordinances be found, declared, adjudged, an decreed to be unconstitutional and null and void, *ab initio*;

2.    ordering Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to account for, refund and pay over any and all moneys and fees paid or collected by the City to obtain firearms permits and firearm registration certificates under the New Gun Ban Ordinance since its date of adoption to Kole and the Class;

3.    awarding KOLE, as class representative, and the class damages against said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, for their unlawful enforcement and application and prosecution of New Gun Ban Ordinance;

4.    awarding the class representative and the class equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, declaring all said

30

sums to be accounted for, disgorged and refunded to the class
representative and class with prejudgment interest thereon;

5.    awarding the class representative and the class civil and equitable
appropriate remedies including an equitable accounting;

6.    awarding the class representative, fair and appropriate other compensation
for serving as class representative, class costs, disbursements and
reasonable attorney's fees; and

7.    awarding the class representative and the class any and all further relief, as
this Court deems just and proper.

## COUNT XII
## PLAINTIFF ZIEMAN'S INDIVIDUAL AND CLASS ACTION CLAIM FOR RESTITUTION UNDER UNCONSTITUTIONAL OLD GUN BAN ORDINANCE U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

99.    Plaintiff Zieman, individually and as call representative, and complaining of all

Defendants, incorporates Paragraphs 1 through 98 as though fully stated herein.

100.    Pursuant to City's unconstitutional Old Gun Ban Ordinance, Zieman's home was

invaded and searched by the City Police and numerous valuable handguns and rifles that he

possessed therein and maintained in a safe as a valid FOID Card holder were seized, confiscated

and/or destroyed, and he was thereafter found guilty and fined for failing to register them

thereunder.

101.    Zieman maintains that he is thus entitled to the return and restitution of his said

firearms in kind or the fair market value thereof, vacation and expungement of his conviction for

failure to register his weapons, a refund of any fines, court costs, expenses, legal fees incurred as

a result thereof, damages, Defendants' unconstitutional customs, policies, and practices along

with his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

102.    Zieman also seeks to represent others similarly situated and aggrieved as their

class representative.

103.    The class on whose behalf his action is brought on behalf of Zieman individually,

and all natural citizens and corporations and other entities having lived in, living in, having done

business in, doing business in the City, including all those persons who have been charged and/or

prosecuted under or who have plead or been found guilty under City's Old Gun Ban Ordinance

that have had any of their firearms confiscated and or destroyed, incurred or paid fines, penalties,

court costs as a result of any plea or conviction under said unconstitutional ordinance, or incurred

or paid any witness, expert, attorneys or other fees in connection with the defense of any such

charge or prosecution by the City, its attorneys, officers, agents or employees, over and during

the 28 year period that said unconstitutional ordinance has been enacted and in force, *i.e.*, since

March 19, 1982, and thereafter.

104.    Zieman, as class representative, will adequately represent the claims of each of

these natural citizens.

105.    A class action may be maintained in this action because:

(a)     the class is so numerous that joinder of all members is impractical. While
the exact number and identities of the class members are unknown at this time,
Zieman believes the number to be substantial and that they can be determine
through discovery and full disclosure and accounting of Defendants and their
legal counsel's records, that are within their possession and control.

(b)     there are questions of fact or law, including but not limited to the above
issues of constitutionality of said ordinances that are common to the class. Such
questions predominate over any questions affecting only individual class
members.

(c)     Zieman is best situated to, and will, fairly and adequately represent the
interest of the class and other members, who like them, have been intimidated,
and may, like them, be fearful of retaliation so as to step forward to vindicate and
protect their rights.

(d)     a class action is an appropriate method for the fair and efficient
adjudication of the controversy and will serve the interests of judicial economy.

32

WHEREFORE, Plaintiff Zieman, individually and as class representative, prays for

judgment against the Defendant City of Chicago as follows:

1. certifying the class and declaring the City's Old Gun Ban Ordinance unconstitutional and null and void, *ab initio*;

2. ordering Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to account for, refund and pay over and back to them any and all moneys, fines, penalties, payments, costs, expenses and fees found due, paid, owing or recovered thereunder by or on their behalf or as a result of the actions of any of the turnover and refund to Zieman and the Class;

3. awarding Zieman, as class representative, and the class damages against said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, for their unlawful enforcement and application and prosecution of said ordinances.

4. awarding the class representative and the class equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, declaring their pleas and convictions under said unconstitutional ordinances void and expunged and removed all related government records and files, that this Court declare all said sums to be accounted for, disgorged and refunded to the class representative and class with prejudgment interest thereon;

5. ordering said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to turnover and return all weapons any other property seized, impounded or confiscated by them from Zieman and the Class members under its said unconstitutional Code Sections and Ordinances, or in the alternative, if such weapons or other property have been destroyed, damaged or cannot be found or located, the fair market value thereof be determined and order paid them plus prejudgment interest;

6. awarding the class representative and the class civil and equitable appropriate remedies including an equitable accounting;

7. awarding the class representative, fair and appropriate other compensation for serving as class representative, class costs, disbursements and reasonable attorney's fees; and

8.     awarding the class representative and the class any and all further relief, as this Court deems just and proper.

## COUNT XIII
## DECLARATORY JUDGMENT
## 28 U.S.C. § 2201

106.    Paragraphs 1 through 105 are incorporated as though fully restated herein.

107.    The complained-of sections of the Municipal Code of Chicago and the Chicago Zoning Ordinance are against public policy and violative of Article I. §§ 1, 2, 4, 6, 12, 15, 22, 24, and Due Process, Equal Protection and takings clauses of the Illinois Constitution, thus rendering them unconstitutional, null and void *ab initio*, and unenforceable.

108.    The Defendants should be enjoined *pendent lite* and permanently, as well as all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the complained-of provisions of the Municipal Code of Chicago and Chicago Zoning Ordinance;

109.    That by reason of the foregoing an actual controversy exists and Plaintiffs are therefore entitled to a judicial declaration of their rights and declaratory relief pursuant to 28 U.S.C. § 2201 in connection therewith because said Code Sections and Ordinances are oppressive, illegal as violating Plaintiffs' fundamental constitutional rights, are against public policy, forced on Plaintiffs and adopted by Defendants in bad faith and are therefore null and void *ab initio*, and therefore unenforceable.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a declaratory judgment in their favor against all Defendants pursuant to 28 U.S.C § 2201, as follows:

1.    declaring that City's above referenced Code Sections and Ordinances be adjudged and decreed, inter alia, not to constitute reasonable or permissible regulations, but rather, violate Article I. §§ 1, 2, 4, 6, 12, 22,

24, and Due Process and takings clauses of the Illinois Constitution, thus rendering them unconstitutional, null and void *ab initio*, and unenforceable;

2. awarding them damages as the proofs will show at trial;

3. awarding them reasonable attorney fees and costs; and

4. granting them such other and further relief as this Court may deem just and proper in the premises.

## COUNT XIV
## PLAINTIFF KOLE'S PENDANT
## INDIVIDUAL AND CLASS ACTION STATE LAW
## CLAIM FOR RESTITUTION - UNJUST ENRICHMENT

110. Plaintiff Kole, individually and as class representative, and complaining of City,

incorporates Paragraphs 1 through 109 as if fully restated herein.

111. That as a result of the foregoing and said ordinances violating the Illinois

Constitution, Article I. §§ 1, 2, 4, 6, 12, 22 and 24, City has been unjustly enriched and therefore

Kole and the Class are entitled to restitution.

WHEREFORE, Plaintiff KOLE, individually and as class representative, prays for

judgment against the City of Chicago:

1. certifying the class and declaring that the City's above-referenced Code Sections and Ordinances be found, declared, adjudged, an decreed to be unconstitutional and null and void, *ab initio*;

2. ordering Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to account for, refund and pay over any and all moneys and fees paid or collected by the City to obtain firearms permits and firearm registration certificates under the New Gun Ban Ordinance since its date of adoption to Kole and the Class;

3. awarding Kole, as class representative, and the class damages against said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, for their unlawful

35

enforcement and application and prosecution of the New Gun Ban
Ordinance;

4.     awarding the class representative and the class equitable relief against
each Defendants, jointly and severally, including but not limited to
temporary, preliminary and permanent injunctive relief, declaring all said
sums to be accounted for, disgorged and refunded to the class
representative and class with prejudgment interest thereon;

5.     awarding the class representative and the class civil and equitable
appropriate remedies including an equitable accounting;

6.     awarding the class representative, fair and appropriate other compensation
for serving as class representative, class costs, disbursements and
reasonable attorneys fees; and

7.     awarded the class representative and the class such other and further relief,
as may be appropriate, necessary, just and proper in the premises.

## COUNT XV
### PLAINTIFF ZIEMAN'S PENDANT
### INDIVIDUAL AND CLASS ACTION STATE LAW CLAIM FOR
### RESTITUTION - UNJUST ENRICHMENT

112.    Plaintiff Zieman, individually and as class representative, and complaining of

City, incorporates Paragraphs 1 through 111 as if fully restated herein.

113.    As a result of the foregoing, the Old Handgun Ban Ordinance violated the Illinois

Constitution, Article I. § 1, 2, 4, 6, 12, 22 and 24, and City has been unjustly enriched and

therefore Zieman is entitled to restitution.

WHEREFORE, Plaintiff Zieman, individually and as class representative, prays for

judgment against the City of Chicago:

1.     certifying the class and declaring the City's Old Gun Ban Ordinance
unconstitutional and null and void *ab initio*;

2.     ordering Defendants, their officers, agents, servants, employees, attorneys
and assigns, and all persons having acted or acting in active concert or
participation with them, jointly and severally, to account for, refund and
pay over and back to them any and all moneys, fines, penalties, payments,
costs, expenses and fees found due, paid, owing or recovered thereunder

by or on their behalf or as a result of the actions of any of the turnover and refund to Zieman and the Class;

3.    awarding Zieman, as class representative, and the class damages against said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, for their unlawful enforcement and application and prosecution of said ordinances;

4.    awarding the class representative and the class equitable relief against each Defendant, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, declaring their pleas and convictions under said unconstitutional ordinances void and expunged and removed all related government records and files, that this Court declare all said sums to be accounted for, disgorged and refunded to the class representative and class with prejudgment interest thereon;

5.    ordering said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to turnover and return all weapons any other property seized, impounded or confiscated by them from Zieman and the Class members under its said unconstitutional ordinances, or in the alternative, if such weapons or other property have been destroyed, damaged or cannot be found or located, the fair market value thereof be determined and order paid them plus prejudgment interest;

6.    awarding the class representative and the class civil and equitable appropriate remedies including an equitable accounting;

7.    awarding the class representative, fair and appropriate other compensation for serving as class representative, class costs, disbursements and reasonable attorney's fees; and

8.    awarding the class representative and the class any and all further relief as this Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY PURSUANT TO F.R.CIV.P. 38(b).**

Dated: July 30, 2013

Respectfully submitted,

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547/Fax 630.596.4445


By: ___ /s/ David G. Sigale ___
       David G. Sigale