**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SECOND AMENDMENT ARMS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10 CV 4257** |
| | ) | **Hon. Robert M. Dow, Jr.** |
| **CITY OF CHICAGO, et al.,** | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFFS' THIRD AMENDED COMPLAINT**

Defendants City of Chicago, Mayor Rahm Emanuel, Superintendent of Police Garry McCarthy, and City Clerk Susana Mendoza, by their attorney, Stephen R. Patton, Corporation Counsel for the City of Chicago, hereby submit their answer and affirmative defenses to Plaintiffs' Third Amended Complaint.

**ANSWER**

**INTRODUCTION**

1.      In this action Plaintiffs bring their claims against the Defendant seeking the recovery of their lost profits and damages, as well as equitable, declaratory, and other relief under, *inter alia*, 42 U.S. §1983, 42 U.S.C. § 1988, *et. Seq.*, the Second Fifth and Fourteenth Amendments to the United States Constitution, and the Illinois Constitution, as the result of various sections of the Municipal Code of Chicago, as well as the Chicago Zoning Ordinance.  The complained of laws deprive Plaintiffs of their constitutional rights to keep, bear and sell arms for lawful purposes including self-defense, as well as directly causing Plaintiffs to suffer monetary damages. Additionally, Plaintiffs seek restitution for infringements of their rights stemming from the wrongful enforcement of, and penalties for, previous unconstitutional City ordinances.

**Answer:** Defendants admit that Plaintiffs have sued Defendants for "recovery of their lost profits and damages, as well as equitable, declaratory, and other relief under, *inter alia*, 42 U.S. §1983, 42 U.S.C. § 1988, *et seq.*, the Second Fifth and Fourteenth Amendments to the United States Constitution, and the Illinois Constitution, as the result of various sections of the Municipal Code

of Chicago, as well as the Chicago Zoning Ordinance." Defendants further admit that Plaintiffs

"seek restitution for infringements of their rights stemming from the wrongful enforcement of, and

penalties for, previous unconstitutional City ordinances." Defendants deny the remaining allegations

contained in Paragraph 1 and deny any liability for any claims asserted by Plaintiffs in their Third

Amended Complaint.

## THE PARTIES

2.      R. Joseph Franzese, individually and d/b/a Second Amendment Arms (hereinafter "Franzese" or collectively as "Second Amendment Arms"), is a citizen of the United States who resides and does business as Second Amendment Arms in Lake Villa, Illinois, as a firearms dealer pursuant to a federal firearms license ("FFL").

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 2.

3.      Plaintiff Robert M. Zieman, Sr. (hereinafter "Zieman") is a citizen of the United States, and a life-long resident and long-time employee of the City of Chicago. He also has five minor children who live in his residence. As a City employee, he is legally required by its ordinances to reside in the City. He is an honorably discharged veteran of the United States Marine Corps. who is extensively trained and experienced in the safety and use of various firearms, including but not limited to side-arms, and has also been trained and designated by the Marine Corps in special weapons safety and usage.

**Answer:** Defendants deny that Zieman is currently an employee of the City but admit that

Zieman is a former employee of the City and that MCC § 2-152-050 required, as a condition of his

employment, that he reside within the City. Defendants lack knowledge or information sufficient

to form a belief as to the truth of the remaining allegations contained in Paragraph 3.

4.      Plaintiff Shaun Kranish is a citizen of the United States who resides and does business in Rockford, Illinois (hereinafter "Kranish").

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 4.

5.     Plaintiff ICarry is an unincorporated Second Amendment rights education, advocacy and membership association, and is a d/b/a of Kranish who is its founder and chief executive manager, and a member thereof (hereinafter "ICarry").

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5.

6.     Plaintiff Kole (hereinafter "Kole") is a natural person and a citizen of the United States residing in Chicago, Illinois. Kole currently owns and possesses several firearms at his Chicago residence, pursuant to a Chicago firearms permit ("CFP") and firearm registration certificates ("FRC") for which has paid the City of Chicago's required fees. He also is the President, Manager, and sole owner of Ghost Industries LLC, which is federally licensed firearms dealer with its principal place of business in Norridge, Illinois. At all times relevant Kole possessed a valid State of Illinois Firearms Owner Identification Card (the 'FOID Card") and is trained and experienced in the safety and use of various firearms or ammunition products.

**Answer:** Defendants admit that Kole obtained a CFP from the City and registered several firearms with the City, both of which required Kole to pay a fee. Further answering, Defendants state that neither a CFP nor a City-issued firearm registration certificate are currently required to possess a firearm in the City of Chicago. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6.

7.     Defendant City of Chicago (hereinafter "City") is a municipal entity organized under the Constitution and laws of the State of Illinois.

**Answer:** Defendants admit the allegations contained in Paragraph 7.

8.     Defendant Rahm Emanuel (hereinafter "Emanuel") is the City's Mayor and as such is responsible for executing, and administering its laws, customs, practices, and policies. In that capacity, he also presently enforces the laws, customs, practices and policies complained of in this action. He is sued in official capacity as Mayor.

**Answer:** Defendants admit that Rahm Emanuel is the Mayor of the City of Chicago, is responsible for enforcement of its laws, and has all other powers granted to him by the State of Illinois and the Chicago City Council. Defendants admit that Plaintiffs purport to sue Mayor

Emanuel in his official capacity but deny, pursuant to the Court's Memorandum Opinion and Order

dated September 25, 2012, that Plaintiffs can sue Mayor Emanuel in his official capacity for the

claims brought pursuant to 42 U.S.C. § 1983 in Counts I-XXII.  Defendants deny the remaining

allegations contained in Paragraph 8.

9.      Defendant Garry McCarthy ("McCarthy") is the City's Superintendent of Police, and
as such is responsible for executing, and administering its law, customs, practices, and policies.  In
that capacity, he also presently enforces the laws, customs, practices and policies complained of in
this action.  Among other duties, he is responsible for determining what constitutes an "unsafe
handgun," and promulgating the roster of "unsafe handguns," administering the firearms registration
and permitting system in the City, and enforcing City ordinances relating to possession, sale, transfer,
transportation, and carrying of firearms.  He is sued in his official capacity as Superintendent.

**Answer:** Defendants admit that Garry McCarthy is the City of Chicago's Superintendent of

Police and that he is responsible for enforcement of its laws, including those related to possession,

sale, transfer, transportation, and carrying of firearms to the extent the City has such laws, and has

all other powers granted to him by the City of Chicago.  Defendants deny that he is responsible for

determining what constitutes an "unsafe handgun" and promulgating a roster of "unsafe handguns,"

or administering a firearms registration and permitting system. Defendants admit that Plaintiffs

purport to sue Superintendent McCarthy in his official capacity but deny, pursuant to the Court's

Memorandum Opinion and Order dated September 25, 2012, that Plaintiffs can sue Superintendent

McCarthy in his official capacity for the claims brought pursuant to 42 U.S.C. § 1983 in Counts I-

XXII.  Defendants deny the remaining allegations contained in Paragraph 9.

10.     Defendant Susana Mendoza (hereinafter "Mendoza") is the City's Clerk, and as such
is responsible for executing, and administering its laws, customs, practices, and policies.  In that
capacity, she is responsible for the issuance of business licenses and enforcing the laws, customs,
practices and policies complained of in this action is connection therewith.  She is sued in her official
capacity as City Clerk.

**Answer:** Defendants admit that Susana Mendoza is the Clerk of the City of Chicago and that

4

she is responsible for enforcement of its laws, and has all other powers granted to her by the City of

Chicago. Defendants admit that Plaintiffs purport to sue Mendoza in her official capacity but deny,

pursuant to the Court's Memorandum Opinion and Order dated September 25, 2012, that Plaintiffs

can sue Mendoza in her official capacity for the claims brought pursuant to 42 U.S.C. § 1983 in

Counts I-XXII. Defendants deny the remaining allegations contained in Paragraph 10.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§
1331, 1343, 2201, 2202 and 42 U.S.C. §1983. The Court has jurisdiction over pendant state law
claims pursuant to 28 U.S.C. § 1367.

**Answer:**   Defendants admit that this Court has jurisdiction over Plaintiffs' federal

constitutional claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4), but Defendants deny that

28 U.S.C. §§ 2201 and 2202 confer jurisdiction. Defendants admit that Plaintiffs ask this Court to

exercise jurisdiction over their claims under Illinois law pursuant to 28 U.S.C. § 1367 but deny that

the exercise of jurisdiction is appropriate.

12.     Venue lies in this Court pursuant to 28 U.S.C. §1391.

**Answer:** Defendants admit the allegations contained in Paragraph 12.

## STATEMENT OF FACTS

13.     On or about March 19, 1982, the City enacted an ordinance that banned possession
of handguns within Chicago, and imposed restrictive requirements on firearms ownership,
possession, and use within the City ("Old Gun Ban Ordinance"), a copy of which is attached as
"Exhibit A."

**Answer:** Defendants admit that on or about March 19, 1982, the City enacted an ordinance

that, with certain enumerated exceptions, banned possession of handguns within the City and

imposed other requirements on firearms ownership, possession, and use within the City. Defendants

lack knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegation that

the aforementioned ordinance imposed "restrictive requirements" as that phrase is too subjective to

frame a response. To the extent an answer is required, Defendants deny the allegation. Defendants

admit that Plaintiffs have attached as Exhibit A to their Third Amended Complaint a copy of the

ordinance passed on March 19, 1982.

14.     Owing to certain Supreme Court decisions, the Chicago City Council passed a revised
ordinance on July 2, 2010 ( the "New Gun Ban Ordinance"), which removed the ban on possessing
handguns in City residents' homes, and replaced the ban with a number of restrictions and
requirements for home firearms possession. A copy of the New Gun Ban Ordinance is attached as
"Exhibit B."

**Answer:** Defendants admit that on July 2, 2010, the Chicago City Council passed an

ordinance which repealed the prior ban on handgun possession in the home but regulated handgun

possession in the home. Defendants admit that Plaintiffs have attached as Exhibit B to their Third

Amended Complaint a copy of the ordinance passed by the Chicago City Council on July 2, 2010.

Defendants deny the remaining allegations contained in Paragraph 14.

15.     More specifically, the New Gun Ban Ordinance, which became effective on July 12,
2010, removed the complete ban on possession of handguns, but limited possession to one operable
firearm, and only in the home. It also imposed or continued numerous restrictions that severely
burden or eliminate the Second Amendment rights of law-abiding City residents to acquire, own,
possess, transport, and transfer firearms and associated lawful products, such as laser sight
accessories, within the City.

**Answer:** Defendants admit that the ordinance passed by the Chicago City Council on July 2,

2010 became effective on July 12, 2010. Defendants admit that the July 2, 2010 ordinance repealed

the total ban on handgun possession in the home. Defendants admit that the July 2, 2010 ordinance

allowed Chicago residents to possess handguns in the home but deny that the ordinance limited

Chicago residents to possess only one handgun in the home. Defendants admit that although the

July 2, 2010 ordinance did not limit the number of handguns a Chicago resident could possess in the

6

home, the ordinance provided that only one handgun per qualified user, as defined in the ordinance, could be operable.  Defendants admit that the July 2, 2010 ordinance contained firearm regulations but deny that such regulations burdened law-abiding citizens' Second Amendment rights. Defendants deny the remaining allegations contained in Paragraph 15.

16.    The New Gun Ban Ordinance prohibits the operation of any firearm stores or dealers in the City.  Section 4-144-010 of the Municipal Code of Chicago (MCC §4-144-010) requires that any person who engages in the business of selling certain weapons, including any "deadly weapon which can be carried or concealed on the person," which would include any ordinary firearm, must obtain a "weapons dealer license."  *See* Exhibit B at p.3.  Under the prior version of MCC §4-144-010, a person who obtained a weapons dealer license could sell firearms.  Title 4, Businesses, Occupations and Consumer Protection, Chapter 4-144, Weapons (the "Weapons Dealer Ordinance"), a copy of which is attached hereto as "Exhibit C."  Under the revised §4-144-010, it is unlawful for persons licensed as weapons dealers to "engage in the business of selling, or to sell, give away or otherwise transfer, any firearm..."  *See* Exhibit B, at page 3.  Thus, it is now impossible to sell firearms at wholesale or retail in the City.

**Answer:**  Defendants admit that MCC § 4-144-010 formerly stated that "[it shall be unlawful for any person to engage in the business of selling, or to sell, give away, or otherwise transfer, any . . . deadly weapon which can be carried or concealed on the person, or any ammunition, as that term is defined in Section 8-20-010, without securing a weapons dealer licence."  Further answering, Defendants state that MCC § 4-144-010 was amended by the Chicago City Council on September 11, 2013 and now provides that "[it shall be unlawful for any person to engage in the business of selling or otherwise transferring any ammunition without securing a weapons dealer license to do so."  Defendants therefore deny that MCC § 4-144-010 prohibits the sale of firearms but admit that MCC § 8-20-100(a) bans the sale, acquisition, or transfer of firearms in the City, unless through inheritance or as provided in MCC §§ 2-84-075, 8-20-100(c), 8-20-100(d), or 4-151-170.  Defendants deny the remaining allegations contained in Paragraph 16.

17.    Furthermore, MCC § 8-20-100 provides that  "No firearm may be sold, acquired or otherwise transferred within the City, except through inheritance of the firearm."  *See* Exhibit B,

generally, for text of §§ 8-10-010 *et seq.* There are exceptions for transfers to police officers, which much [sic] take place at police department facilities, and for officers to sell firearms to each other. MCC §8-20-100(e); MCC § 2-84-075. There are also limited exceptions involving licenses and patrons of licensed shooting range facilities while on the premises (*See* MCC §4-151-070), but they are not applicable to this suit. In short, MCC §8-20-010 operates as a ban on gun stores, but also operates to ban all sales, acquisitions, and transfers of firearms between law-abiding citizens outside of commercial channels as well.

**Answer:** Defendants admit that MCC § 8-20-100(a) provides that "[e]xcept as authorized by section 2-84-075, nor firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm." Defendants admit that MCC § 8-20-100(c) states that "[n]otwithstanding subsection (a), a peace officer may sell or transfer any lawfully held firearm or ammunition to another peace officer in accordance with the other provisions of this chapter." Defendants admit that MCC § 2-84-075 states that "[n]otwithstanding any other provision of this code to the contrary, the superintendent [of police] may authorize the sale of firearms or ammunition by a person issued a federal firearms license to a member of the police department, if that member is authorized to carry such firearm or ammunition. Such sales shall be conducted at department of police facilities." Defendants deny that MCC § 4-151-070 contains "limited exceptions involving licenses and patrons of licensed shooting range facilities while on the premises," but state instead that MCC § 4-151-170 states that "[a] licensee, manager, ranger master or employee [of a shooting range facility] may provide a firearm for use at a shooting range facility to a shooting range patron for the patron's use at the shooting range; provided that no firearm shall be provided to a shooting range patron if the shooting range patron does not have a valid FOID card or valid CCL, if required to have one." Defendants admit that MCC § 8-20-100(a) bans the sale, acquisition, or transfer of firearms in the City, unless through inheritance or as provided in MCC §§ 2-84-075, 8-20-100(c), 8-20-100(d), or 4-151-170. Defendants deny the remaining allegations contained in Paragraph 17.

8

18.     Taken together, these provisions operate as a complete ban on gun stores within the City, as a complete ban on firearms dealers operating within the City; and as a complete ban on the sale, gift, purchase, acquisition, or other transfer of any firearm by any person with the City (except to police or by inheritance, or for limited use in licensed shooting range facilities).  In short, firearms cannot legally be sold or obtained within City.

**Answer:**  Defendants admit that MCC § 8-20-100(a) bans the sale, acquisition, or transfer

of firearms in the City, unless through inheritance or as provided in MCC §§ 2-84-075, 8-20-100(c),

8-20-100(d), or 4-151-170.  Defendants deny the remaining allegations contained in Paragraph 18.

19.     It is not apparent that City's zoning ordinance specifically allows or forbids gun shops, except that "the sale of firearms or ammunition" is forbidden as a "home occupation" pursuant to §17-9-0202-C(11)(q).  On information and belief, City will not issue a zoning permit for any use it deems may violate the City's penal ordinances, including MCC§8-20-100.

**Answer:**  Defendants admit that MCC § 17-9-0202-C(11)(q) prohibits "the sale of firearms

or ammunition" as a "home occupation."  Defendants deny that the City issues zoning permits and

denies the remaining allegations contained in Paragraph 19.

20.     Section 8-20-020 of the New Gun Ban Ordinance states that "[it is unlawful for any person to carry or possess a handgun, except within the person's home."  There are a number of extremely narrow exceptions, mostly for government employees and security personnel.  There is no provision for the ordinary, law-abiding citizen to possess, carry, or transport a functioning handgun any place outside the home.  Subject to basically the same exceptions, long guns may only be possessed in the home or in the person's "fixed place of business."  MCC §8-20-030.

**Answer:** Defendants admit that MCC § 8-20-020(a) formerly stated that "[it is unlawful for

any person to carry or possess a handgun, except within the person's home" and that MCC § 8-20-

020(b) listed exceptions to MCC § 8-20-020(a).  Defendants admit that MCC § 8-20-030 formerly

stated that "[it is unlawful for any person to carry or possess a long gun, except when in the person's

home or fixed place of business," and that MCC § 8-20-030(b) provided exceptions to MCC § 8-20-

030(a).  Further answering, Defendants state that the Chicago City Council repealed MCC §§ 8-20-

020 and 8-20-030 in their entirety on September 11, 2013, and therefore deny that those sections

have any legal effect.  Defendants deny the remaining allegations contained in Paragraph 20.

21.    In addition, §8-020-140(a) makes it "unlawful for any person to carry or possess a firearm without a firearm registration certificate."  The application for a registration certificate must state "the address at which the firearm will be located."  MCC § 8-20-140(c)(1)(E).  Pursuant to MCC § 8-20-180(c), a "registration certificate shall only be valid for the address on the registration certificate.  Except in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate."

**Answer:** Defendants admit that MCC § 8-20-140(a) formerly stated that "[s]ubject to subsection (d), it is unlawful for any person to carry or possess a firearm without a firearm registration certificate."  Defendants admit that MCC § 8-20-140(c)(1)(E) formerly stated that an application for a firearm registration certificate "shall include . . . the address at which the firearm will be located."  Defendants admit that MCC § 8-20-180(c) formerly stated that "[a] registration certificate shall only be valid for the address on the registration certificate.  A person shall not carry or possess a firearm at any location other than that authorized by the registration certificate; provided this provision shall not apply to: (1) the lawful transportation of a firearm," but deny that Plaintiffs have accurately quoted it in Paragraph 21.  Further answering, Defendants state that the Chicago City Council repealed MCC §§ 8-20-140(a), 8-20-140(c)(1)(E), and 8-20-180(c) on September 11, 2013, and therefore deny that those sections have any legal effect.

22.    The only exception to MCC § 8-20-020, § 8-20-030 (except for hunting inside the City with long guns) and §8-20-180(c) that applies to the ordinary citizen is for "a person while engaged in the lawful transportation of a firearm.  See MCC §8-20-020(b)(17).  "Lawful transportation" is defined in MCC § 8-20-010 as transportation by a person (1.) in compliance with MCC § 8-20-090 (which references a federal statute, 18 U.S.C. §926A), or (2.) "who has a valid FOID card, a CFP and firearm registration certificate, if applicable, and the firearm is (i) broken down in a non-functioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case."

**Answer:** Defendants state that the Chicago City Council repealed MCC §§ 8-20-020, 8-20-030 and the definition of "lawful transportation" contained in MCC § 8-20-010 on September 11,

2013, and therefore deny that those sections have any legal effect. Defendants lack knowledge or

information sufficient to form a belief as to truth of the allegation that the "only exception" to the

former MCC §§ 8-20-020 and 8-20-030 "that applies to the ordinary citizen is for a person while

engaged in the lawful transportation of a firearm," because "ordinary citizen" is too vague to permit

Defendants to frame a response.

23.     18 U.S.C. §926A, which is referenced in MCC § 8-20-090, allows any person, who
is not prohibited by federal law from transporting, shipping or receiving a firearm, to transport a
firearm from any place that he may lawfully possess and carry it, to any other place he may lawfully
possess and carry it, provided it is unloaded and not readily accessible as specifically described in
that statute.

**Answer:** Defendants state that the Chicago City Council repealed MCC § 8-20-090 on

September 11, 2013, and therefore deny that it has any legal effect. Defendants admit that the former

MCC § 8-20-090 referenced 18 U.S.C.A. § 926A, which provides, in part: "Notwithstanding any

other provision of any law or any rule or regulation of a State or any political subdivision thereof,

any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving

a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may

lawfully possess and carry such firearm to any other place where he may lawfully possess and carry

such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any

ammunition being transported is readily accessible or is directly accessible from the passenger

compartment of such transporting vehicle:  Provided, That in the case of a vehicle without a

compartment separate from the driver's compartment the firearm or ammunition shall be contained

in a locked container other than the glove compartment or console." Defendants deny the remaining

allegations contained in Paragraph 23.

24.     MCC § 8-20-090 adds two additional requirements to the federal statute: (1.) that the
person must be "engaged in interstate travel": and (2.) that there is a presumption that "any person

within the city for more than 24 hours is not engaged in interstate travel...."

**Answer:** Defendants state that the Chicago City Council repealed MCC § 8-20-090 on September 11, 2013, and therefore deny that it has any legal effect. Defendants admit that the former MCC § 8-20-090 states: "It shall not be a violation of this chapter if a person transporting a firearm or ammunition while engaged in interstate travel is in compliance with 18 U.S.C.A § 926A. There shall be a rebuttable presumption that any person within the city for more than 24 hours is not engaged in interstate travel, and is subject to the provisions of this chapter." Defendants deny any allegation contained in Paragraph 24 that is contrary to the plain language of the former MCC § 8-20-090.

25.     "Firearm case" is defined in MCC § 8-20-010 as "any firearm case, carrying box, shipping box or other similar container that is designed for the safe transportation of the firearm." It is unclear from this definition whether the container must be hard-sided or can be soft-sided; whether the container must be locked, or be capable of being locked, or whether an unlocked case is sufficient; whether the case must be specifically designed only for transportation of firearms, or whether any secure box or container that is adequate for transportation of firearms will suffice; and whether "safe" means safe for the person transporting it, safe insofar as the firearm cannot be quickly accessed, or safe in the sense of protecting the firearm from damage. Many cases specifically designed for firearms are designed to carry an intact, assembled firearm rather than a one that is "broken down" into multiple parts.

**Answer:** Defendants admit that MCC § 8-20-010 defines "firearm case" as "any firearm case, carrying box, shipping box or other similar container that is designed for the safe transportation of the firearm." Defendants deny that the definition of "firearm case" in MCC § 8-20-010 is unclear. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegation that "[m]any cases specifically designed for firearms are designed to carry an intact, assembled firearm rather than a one that is 'broken down' into multiple parts."

26.     Many firearms cannot be "broken down in a nonfunctioning state" without specialized tools, skills and/or knowledge. The cylinders for most revolvers, for example, cannot be removed and replaced without the services of a gunsmith or a highly skilled individual using tools. Removal

of slides on semi-automatic handguns may require specialized tools, and/or considerable knowledge, hand-strength or dexterity, depending on make and model. Some rifles can be easily broken down (removal of bolt on some bolt actions) but others cannot (e.g., most lever actions). The same is true of shotguns.

**Answer:** Defendants state that the Chicago City Council repealed MCC §§ 8-20-020, 8-20-030 and the definition of "lawful transportation" contained in MCC § 8-20-010 on September 11, 2013, and therefore deny that those sections have any legal effect. Defendants deny the remaining allegations contained in Paragraph 26.

27.     Thus, depending on the firearm and the skills, tools, knowledge, and strength possessed by a firearm owner, it may be literally impossible for the individual to "break down" the firearm into a nonfunctioning state before transporting it, and in most cases even more difficult to properly reassemble it.

**Answer:** Defendants state that the Chicago City Council repealed MCC §§ 8-20-020, 8-20-030 and the definition of "lawful transportation" contained in MCC § 8-20-010 on September 11, 2013, and therefore deny that those sections have any legal effect. Defendants deny the remaining allegations contained in Paragraph 27.

28.     MCC § 8-20-040 mandates that "every person who keeps or possesses a firearm in his home shall keep no more than one firearm in his home assembled and operable." Each person in the home with a valid CFP may keep one assembled and operable firearm. All other firearms "shall be broken down in a nonfunctioning state or shall have a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render the firearm temporarily inoperable."

**Answer:** Defendants state that the Chicago City Council repealed MCC § 8-20-040 on September 11, 2013, and therefore deny that it has any legal effect. Defendants admit that the former MCC § 8-20-040 allowed each person in a home with a valid CFP to have one operable firearm at a time. Defendants admit that Plaintiffs have accurately quoted the former MCC § 8-20-040.

29.     As described above, MCC § 8-20-020 and § 8-20-030, with extremely limited exceptions, ban possession of handguns and long guns outside the home. MCC § 8-20-010 defines, "home" restrictively, to include only the inside of a person's dwelling unit, and to exclude "(i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including

any stairs, porches, back, side or front yard space, or common areas; or (iii) any dormitory, hotel, or group living, as that term is defined in MCC § 17-17-0102-A."

**Answer:** Defendants state that the Chicago City Council repealed MCC §§ 8-20-020, 8-20-030 and the definition of "home" contained in MCC § 8-20-010 on September 11, 2013, and therefore deny that those sections have any legal effect. Defendants admit that former MCC § 8-20-020(a) stated that "[it is unlawful for any person to carry or possess a handgun, except within the person's home" and that former MCC § 8-20-020(b) listed exceptions to MCC § 8-20-020(a). Defendants admit that former MCC § 8-20-030 stated that "[it is unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business," and that former MCC § 8-20-030(b) provided exceptions to MCC § 8-20-030(a). Defendants admit that Plaintiffs have accurately quoted the former definition of "home" contained in MCC § 8-20-010 but deny that their recitation of the former definition is complete. Defendants deny the remaining allegations contained in Paragraph 29.

30. Pursuant to MCC § 8-20-170, "no registration certificate shall be approved for any of the following types of firearms... (b) an unsafe handgun[.] MCC § 8-20-010 declares that "unsafe handgun" means "any handgun that is listed on the superintendent's roster of unsafe handguns because, in the determination of the superintendent, the handgun is unsafe due to its size, ability to be concealed, detectability, quality of manufacturing, quality of materials, ballistic accuracy, weight, reliability, caliber, or other factors which makes [sic] the design or operation of the handgun otherwise inappropriate for lawful use." McCarthy has promulgated a roster pursuant to this section, a copy of which is attached as Exhibit D.

**Answer:** Defendant state that the Chicago City Council repealed MCC § 8-20-170 on July 17, 2013, and the definition of "unsafe handgun" contained in MCC § 8-20-010 on September 11, 2013, and therefore deny that those sections have any legal effect. Defendants admit that former MCC § 8-20-170 provided, in part, that "no registration certificate shall be approved for any of the following types of firearms... (b) an unsafe handgun" and admit that MCC § 8-20-010 formerly

defined an "unsafe handgun" as "any handgun that is listed on the superintendent's roster of unsafe

handguns because, in the determination of the superintendent, the handgun is unsafe due to its size,

ability to be concealed, detectability, quality of manufacturing, quality of materials, ballistic

accuracy, weight, reliability, caliber, or other factors which makes the design or operation of the

handgun otherwise inappropriate for lawful use." Defendants admit that Superintendent McCarthy

promulgated a roster of unsafe handguns and that Plaintiffs attach it to their Third Amended

Complaint as Exhibit D, but deny that the Superintendent's former roster has any legal effect.

31.     MCC § 8-20-060(a) makes it "unlawful for any person to carry, possess, display for sale, or otherwise transfer any laser sight accessory...." Laser sight accessory is defined by MCC § 8-20-010 to mean "a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm." Laser sight accessories are declared contraband, and "shall be seized by and forfeited to the city" pursuant to MCC § 8-20-060(c). The owner of record of any vehicle containing a laser sight accessory is subject to a penalty of $2,000.00-3,000.00 plus towing and storage fees, and the vehicle is subject to seizure and impoundment. *See* MCC § 8-20-070.

**Answer:** Defendants admit that MCC § 8-20-060(a) provides that "[it is unlawful for any

person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory, or a

firearm silencer or muffler." Defendants admit that "laser sight accessory" is defined in MCC § 8-

20-010 as "a laser sighting device which is either integrated into a firearm or capable of being

attached to a firearm." Defendants admit that MCC § 8-20-060(c) provides that "any laser sight

accessory, or firearm silencer or muffler, carried, possessed, displayed or sold in violation of this

section is hereby declared to be contraband and shall be seized by and forfeited to the city."

Defendants admit that MCC § 8-20-070(a) provides that "the owner of record of any motor vehicle

that contains an assault weapon, a laser sight accessory, or a firearm silencer or muffler, shall be

liable to the city for an administrative penalty of $2,000 plus any towing and storage fees applicable

under Section 9-92-080. If the violation takes place within 500 feet of the boundary line of a public

15

park or elementary or secondary school, the penalty shall be $3,000 plus towing and storage fees.

Any such vehicle shall be subject to seizure and impoundment pursuant to this section."

32.     On or about June 30, 2010, and July 2, 2010, Second Amendment Arms caused to be filed and submitted two applications with Mendoza's office in accordance with and pursuant the Weapons Dealer Ordinance and paid the required fees therefore.  The applications sought to obtain weapons dealer business licenses to permit Franzese, as a licensed federal firearms dealer, to open and operate two gun shops at two separate locations within the City.  The City accepted and retained the fees paid for said applications, but rejected and refused to process or grant them because of the prohibition on gun shops in the New Gun Ban Ordinance.  Franzese has suffered damages and lost profits as a result and still desires, plans and intends to submit additional applications to open gun shops at locations within the City, and would open such shops, except that he, like all other ordinary citizens, is barred from selling firearms within the City by the provisions of the New Gun Ban Ordinance.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth

of the allegations regarding Franzese's desires, plans, and intentions to submit applications to  open

a gun store in the City.  Defendants admit that MCC § 8-20-100(a) bans the sale, acquisition, or

transfer of firearms in the City, unless through inheritance or as provided in 2-84-075, 8-20-100(c),

8-20-100(d), or 4-151-170.  Defendants deny the remaining allegations contained in Paragraph 32.

33.     Even if Plaintiff Franzese was permitted by the terms of the Weapons Dealer Ordinance to open a gun shop in the City, establishment of such a shop would be obstructed or made impossible by the provisions of MCC § 8-20-020, 8-20-030, 8-20-180(c), and the definition of "lawful transportation" of a firearm in MCC § 8-20-010, which make it illegal to possess a firearm outside the home (or fixed place of business, in the case of long guns), limit possession of firearms to the address listed on the registration certificate, and contain a restrictive and vague definition of "lawful transportation."  Such provisions, as written, would prohibit Franzese from possessing handguns, at least, at his gun shop.  They would also prevent  prospective customers from having firearms in their possession at his gun shop and in many cases would make it difficult and perhaps impossible for customers who wish to purchase from, or sell firearms to, Second Amendment Arms to transport firearms to and from the shop, due to the lawful transportation" provision requiring guns to be transported in a "broken down" condition.

**Answer:** Defendants admit that MCC § 8-20-100(a) bans the sale, acquisition, or transfer

of firearms in the City, unless through inheritance or as provided in 2-84-075, 8-20-100(c), 8-20-

100(d), or 4-151-170.  Defendants state that the Chicago City Council repealed MCC §§ 8-20-020,

8-20-030, 8-20-180(c), and the definition of "lawful transportation" in MCC § 8-20-010 on

September 11, 2013 and therefore deny that those sections have any legal effect. Defendants deny

the remaining allegations contained in Paragraph 33.

34.     Plaintiffs Zieman and Kole desire to purchase firearms within the City whether they are residents, but are prohibited from doing so by the ban on the selling of firearms by weapons dealers imposed by MCC § 4-144-010, and the complete ban on selling, acquiring, or transferring firearms within the City imposed by MCC § 8-20-100.

**Answer:** Defendants state that the Chicago City Council repealed MCC § 4-144-010 on

September 11, 2013 and therefore deny that it has any legal effect. Defendants admit that MCC § 8-

20-100(a) bans the sale, acquisition, or transfer of firearms in the City, unless through inheritance

or as provided in 2-84-075, 8-20-100(c), 8-20-100(d), or 4-151-170. Defendants lack knowledge

or information sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 34.

35.     If firearms store and transfers were legal in the City, Plaintiffs Zieman and Kole would travel to and from a firearms store in the City to purchase a firearm, and thus possess firearms outside the home, either at the store, on the way to or from the store gun ranges, etc., or both, were they not prohibited from doing so by the provisions of MCC §§ 8-20-020, 8-20-030, 8-20-180(c) and/or the definition of law "lawful transportation" of a firearm in MCC § 8-20-010.

**Answer:** Defendants state that the Chicago City Council repealed MCC §§ 8-20-020, 8-20-

030, 8-20-180(c), and the definition of "lawful transportation" in MCC § 8-20-010 on September 11,

2013, and therefore deny that those sections have any legal effect. Defendants lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 35.

36.     Plaintiff ICarry regularly gifts handguns to qualified, law-abiding Illinois citizens and desires and plans to gift a hand gun to Mr. Otis McDonald in the City to honor, commemorate and acknowledge his commitment, efforts and stand for fundamental Second Amendment rights that led to the U.S. Supreme Court landmark ruling in *McDonald v. City of Chicago* in 2010. ICarry regularly gifts handguns to other qualified, law-abiding citizens, especially, minorities, the poor,

infirm, disabled and elderly who are often the most vulnerable targets of urban crime, but cannot afford or have difficulty obtaining handguns for the protect their homes, person, family and property. Plaintiff Kranish d/b/a ICarry fears prosecution under the New Gun Ban Ordinance by the Defendants should they undertake such conduct in the City or with respect to its residents, particularly, but not limited to, prosecution under MCC § 8-20-100.

**Answer:** Defendants lack information or knowledge sufficient to form a belief as to the truth

of the allegations contained in Paragraph 36.

37.    Plaintiff Kole wishes to maintain more than one operable firearm in his residence in the City for purposes of self-defense, and would do so were it not for the provisions of MCC § 8-20-040. Plaintiff Kole lives in a four room apartment that has two entrances and windows in every room. An intruder could therefore attack Plaintiff Kole in his home without Kole having access to an operable firearm, thereby depriving him of his Second Amendment right to defend himself with a firearm within the home.

**Answer:**  Defendants state that the Chicago City Council repealed MCC § 8-20-040 on

September 11, 2013, and therefore deny that it has any legal effect.  Defendants lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 37.

38.    Plaintiff Kole desires to exercise his right to use a firearm to defend himself on property and structures that are on the lot on which is apartment is situated, including stairs, porches, back, side or front yard space, and/or common areas.  He would do so except that he is prohibited from possessing an operable firearm for purposes of defense in the those areas by MCC §§ 8-20-010, 8-20-020, and 8-20-030.

**Answer:** Defendants state that the Chicago City Council repealed the definition of "home"

contained in MCC §8-20-010 and MCC §§ 8-20-020 and 8-20-030 on September 11, 2013, and

therefore deny that those sections have any legal effect.  Defendants lack knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 38.

39.    Plaintiff Kole rents a garage on private property approximately a block from his apartment.  Like many Chicagoans, he does not live in a dwelling that has an attached garage.  He has spent many hundreds of hours working on his vehicle or the vehicles of friends within that garage. Most of the time, weather conditions require that he work with the garage door open, thereby exposing to view valuable tools, which are a popular item for thieves.  For this reason, Plaintiff Kole

believes that he may be targeted for robbery while within his rented garage. His garage has been burglarized and a 50-gallon air compressor stolen. Further, a home for troubled teenage girls located on the same block that attracts gangs of male youths, who have threatened him with bodily harm on one occasion. Plaintiff Kole wishes to be able to legally possess a firearm at his private rented garage for purposes of defense, and would do so were such conduct not made illegal by MCC §§ 8-20-010, 8-20-020, and 8-20-030, prohibiting possession outside the home.

**Answer:** Defendants state that the Chicago City Council repealed the definition of "home" contained in MCC §8-20-010 and MCC §§ 8-20-020 and 8-20-030 on September 11, 2013, and therefore deny that those sections have any legal effect. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 39.

40.     As part of his proposed gun shop, Franzese as Second Amendment Arms intends to possess and offer for sale in the City handguns that are listed on McCarthy's roster of unsafe handguns, and laser sighting devices, but is prohibited from doing so by MCC §§ 8-20-060, 8-20-170, the definitions of "unsafe handgun" and "laser sighting device" in MCC § 8-20-010, and the arbitrary inclusion of certain handguns on the roster.

**Answer:** Defendant state that on July 17, 2013, the Chicago City Council repealed MCC § 8-20-170, and that on September 11, 2013, the Chicago City Council repealed the definition of "unsafe handgun" contained in MCC § 8-20-010, and therefore deny that those sections have any legal effect. Defendants admit that MCC § 8-20-060(a) provides that "[it is unlawful for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory, or a firearm silencer or muffler." Defendants admit that "laser sight accessory" is defined in MCC § 8-20-010 as "a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm." Defendants deny that any roster of "unsafe handguns" promulgated by Superintendent McCarthy has any legal effect. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 40.

41.     Plaintiffs Zieman and Kole desire to purchase within the City a laser sighting device, either separately or as an integral part of a firearm, and would do so but for the prohibitions in MCC § 8-20-060.

**Answer:** Defendants admit that MCC § 8-20-060(a) provides that "[it is unlawful for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory, or a firearm silencer or muffler." Defendants admit that "laser sight accessory" is defined in MCC § 8-20-010 as "a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 41.

42. Plaintiffs Zieman and Kole desire to purchase one or more firearms from the so-called "unsafe gun roster" and would do so absent the prohibitions imposed by MCC § 8-20-170, the definition of "unsafe gun" in MCC § 8-20-010, and the inclusion of such firearms on the roster.

**Answer:** Defendants state that the Chicago City Council repealed MCC § 8-20-170 and the definition of "unsafe gun" in MCC § 8-20-010 on September 11, 2013, and therefore deny that those sections have any legal effect. Defendants deny that any roster of "unsafe guns" promulgated by Superintendent McCarthy has any legal effect. Defendants lack knowledge of information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 42.

43. Plaintiffs have a fundamental constitutional right under the Second Amendment to the United States Constitution to keep and bear arms, and Defendants have infringed on those rights, or burdened or prevented the exercise of those rights, under color of the City's laws, ordinances, regulations, customs and usages, by enacting, enforcing and threatening to enforce the ordinance provisions described above. Said ordinance provisions, and the enforcement or threatened enforcement of them, are proximate cause of injury to Plaintiffs, and have caused and will continue to cause Plaintiffs to suffer irreparable harm.

**Answer:** Defendants admit that the Second Amendment to the United States confers rights upon Plaintiffs. Defendants deny the remaining allegations contained in Paragraph 43.

**COUNT I**
**Right to Keep and Bear Arms**
**U.S. Const., Amends. II and XIV, 42 U.S.C. § 1983**

44.     Paragraphs 1 through 43 are incorporated as though fully restated herein.

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 43 as if set forth fully

herein.

45.     The Second Amendment, which applies against Defendant City of Chicago by
operation of the Fourteenth Amendment, secures the right to sell firearms through retail sales.

**Answer:** Defendants admit that the United States Supreme Court ruled in *McDonald v. City*

*of Chicago*, ___ U.S. ___, 130 S. Ct. 3020 (2010), that the Second Amendment applies to the City

through the Fourteenth Amendment.  Defendants deny the remaining allegations contained in

Paragraph 45.

46.     The Second Amendment, which applies against Defendant City of Chicago by
operation of the Fourteenth Amendment, also secures the right of Second Amendment Arms' would
be customers such as Zieman and Kole, to purchase firearms through retail sales from locations
within the City.

**Answer:**  Defendants admit that the United States Supreme Court ruled in *McDonald v. City*

*of Chicago*, ___ U.S. ___, 130 S. Ct. 3020 (2010), that the Second Amendment applies to the City

through the Fourteenth Amendment.  Defendants deny the remaining allegations contained in

Paragraph 45.

47.     City's laws effectively prohibit the operations of firearms dealers who wish to sell
lawful firearms to the law-abiding public, both through its Municipal Code and Zoning Ordinance.
The firearms retail sales ban and associated laws also impede gun ownership itself by barring
permission to Second Amendment Arms to market and sell it products, and inhibit the ability of
Second Amendment Arms' would-be customers, such as Zieman and Kole, to purchase lawful
firearms inherently necessary to the exercise of Second Amendment rights.

**Answer:**  Defendants admit that MCC § 8-20-100(a) bans the sale, acquisition, or transfer

of firearms in the City, unless through inheritance or as provided in 2-84-075, 8-20-100(c), 8-20-

100(d), or 4-151-170. Defendants deny the remaining allegations of Paragraph 47.

48.     City currently under color of law deprives individuals and businesses, including the Plaintiffs, of their right to keep and bear and/or sell arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violations of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of City's unconstitutional customs, policies, and practices.

**Answer:** Defendants admit that MCC § 8-20-100(a) bans the sale, acquisition, or transfer

of firearms in the City, unless through inheritance or as provided in 2-84-075, 8-20-100(c), 8-20-

100(d), or 4-151-170. Defendants deny the remaining allegations of Paragraph 48.

49.     City currently under the color of law deprives individuals and businesses, including the Plaintiffs, of their right to keep and bear and/or sell arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Second Amendment Arms is also entitled to its actual monetary damages suffered as a result of City's continued enforcement and maintenance of its unconstitutional customs, policies and practices.

**Answer:** Defendants admit that MCC § 8-20-100(a) bans the sale, acquisition, or transfer

of firearms in the City, unless through inheritance or as provided in 2-84-075, 8-20-100(c), 8-20-

100(d), or 4-151-170. Defendants deny the remaining allegations of Paragraph 49.

## COUNT II
## Ban on Transfers and Sales
## U.S. Const., Amends. II and XIV, 42 U.S.C. § 1983

50.     The allegations contained in paragraphs 1 through 49 are incorporated as if fully restated herein.

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 49 as if set forth

fully herein.

51.     MCC § 8-20-100, which provides that "no firearm may be sold, acquired or otherwise transferred within the City, except through inheritance of the firearm," prevents Plaintiffs Zieman and Kole from acquiring firearms for lawful uses within the City, either commercially or in private transactions, and therefore unduly burdens, impedes, and infringes upon Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendments.

**Answer:** Defendants admit that MCC § 8-20-100(a) bans the sale, acquisition, or transfer of firearms in the City, unless through inheritance or as provided in 2-84-075, 8-20-100(c), 8-20-100(d), or 4-151-170. Defendants deny the remaining allegations of Paragraph 51.

52. MCC § 8-20-100 also prevents firearms dealers and gun shops from selling or transferring within the City any firearms ordinarily possessed by law-abiding citizens, which is necessary for citizens to exercise their right to keep and bear arms, and therefore unduly burdens, impedes, and infringes upon the rights of Plaintiffs Franzese, Zieman and Kole under the Second and Fourteenth Amendments.

**Answer:** Defendants admit that MCC § 8-20-100(a) bans the sale, acquisition, or transfer of firearms in the City, unless through inheritance or as provided in 2-84-075, 8-20-100(c), 8-20-100(d), or 4-151-170. Defendants deny the remaining allegations of Paragraph 52.

53. MCC § 8-20-100 also prevents the transfer of firearms by gift within the City, and therefore unduly burdens, impedes, and infringes the Second Amendment rights of Plaintiff ICarry to make what would otherwise be lawful transfers of firearms to residents of the City, and of the proposed recipients of those gifts to receive them.

**Answer:** Defendants admit that MCC § 8-20-100(a) bans the sale, acquisition, or transfer of firearms in the City, unless through inheritance or as provided in 2-84-075, 8-20-100(c), 8-20-100(d), or 4-151-170. Defendants deny the remaining allegations of Paragraph 53.

## COUNT III

On October 21, 2013, Plaintiffs filed a Statement of Voluntary Dismissal of Count III, and on October 23, 2013, the Court dismissed Count III. Defendants therefore are not required to answer the allegations contained in Count III.

## COUNT IV

On October 21, 2013, Plaintiffs filed a Statement of Voluntary Dismissal of Count IV, and on October 23, 2013, the Court dismissed Count IV. Defendants therefore are not required to answer the allegations contained in Count IV.

23

## COUNT V

On October 21, 2013, Plaintiffs filed a Statement of Voluntary Dismissal of Count V, and on October 23, 2013, the Court dismissed Count V. Defendants therefore are not required to answer the allegations contained in Count V.

## COUNT VI

On October 21, 2013, Plaintiffs filed a Statement of Voluntary Dismissal of Count VI, and on October 23, 2013, the Court dismissed Count VI. Defendants therefore are not required to answer the allegations contained in Count VI.

## COUNT VII
### Ban on Sale and Possession of Laser Sighting Devices
### U.S. Const., Amends. II and XIV, 42 U.S.C. § 1983

72.     The allegations contained in paragraphs 1 through 71 are incorporated as if fully restated herein.

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 71 as if set forth fully herein.

73.     Laser sighting devices as defined in MCC § 8-20-010 may either be "integrated into a firearm or capable of being attached to a firearm." Firearms equipped with laser sighting devices, either as part of the firearm itself, or added to a firearm, are "typically possessed by law-abiding citizens for lawful purposes," and are thus protected by the Second Amendment. Indeed, laser sighting devices are designed to facilitate the Second Amendment's core purpose of self-defense by increasing the practical accuracy of a firearm for defensive purposes, especially in low light conditions.

**Answer:** Defendants admit that "laser sight accessory" is defined in MCC § 8-20-010 as "a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm." Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegations that laser sighting accessories "increas[e] the practical accuracy of a firearm

for defensive purposes, especially in low light conditions." Defendants deny the remaining allegations contained in Paragraph 73.

74.     The ban MCC § 8-20-060(a) on carrying, possessing, displaying for sale, or otherwise transferring any laser sight unduly burdens, impedes, and infringes upon the Second Amendment rights of Plaintiff Franzese, who wishes to display for sale, sell, and transfer such laser sighting devices § 8-20-060(a), and the seizure, forfeiture, penalty, and impoundment provisions of § 8-20-060(c) and § 8-20-070, unduly burden, impede, and infringe upon the Second Amendment rights of Plaintiffs Zieman and Kole, who wish to purchase and possess laser sighting devices.

**Answer:** Defendants admit that MCC § 8-20-060(a) provides that "[it is unlawful for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory, or a firearm silencer or muffler." Defendants state that the Chicago City Council repealed MCC § 8-20-170 on July 17, 2013, and therefore deny that it has any legal effect. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegations concerning what Plaintiffs Franzese and Kole wish to do. Defendants deny the remaining allegations contained in Paragraph 74.

75.     Accordingly, MCC §§ 8-20-060(c) and 8-20-070 are unconstitutional and void *ab initio*.

**Answer:** Defendants state that the Chicago City Council repealed MCC § 8-20-170 on July 17, 2013, and therefore deny that it has any legal effect. Defendants deny the remaining allegations contained in Paragraph 75.

## COUNT VIII
### Physical Presence, Security, Trigger Lock and Lock Box Requirements
### U.S. Const., Amends, II and XIV, 42 U.S.C. § 1983

76.     The allegations contained in paragraphs 1 through 75 are incorporated as if fully restated herein.

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 75 as if set forth fully herein.

77.     The requirements of MCC §§ 8-20-050(1) that because Zieman has minors under age 18 living in his residence he must be physically present in the home and the firearm is either being held by him or is physically secured on his body; (2) that a firearm be secured by a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render a firearm temporarily inoperable; or (3) the firearm and ammunition are placed in a securely locked box or container makes it impractical and impossible for him or other citizens to use arms for the core lawful purpose of self-defense.

**Answer:** Defendants lack information or knowledge as to the truth of the allegation that Zieman has minors under the age of 18 living in his residence.  Defendants admit that MCC § 8-20-050(a) provides: "It is unlawful for any person to keep or possess any firearm or ammunition in his home if the person knows or has reason to believe that a minor under the age of 18 years is likely to gain access to the firearm or ammunition, unless: (1) the person is physically present in the home and the firearm is either being held by the person or is physically secured on the person's body; (2) the firearm is secured by a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render a firearm temporarily inoperable; or (3) the firearm and ammunition are placed in a securely locked box or container."  Defendants deny the remaining allegations contained in Paragraph 77.

78.     Accordingly, MCC § 8-20-050 is unconstitutional and void *ab initio.*

**Answer:** Defendants deny the allegations contained in Paragraph 78.

### COUNT IX
### Denial of Substantive Due Process
### U.S. Const., Amend. XIV, 42 U.S.C. § 1983

79.     Paragraphs 1 through 78 are incorporated as though fully stated herein.

**Answer:**  Defendants incorporate their answers to Paragraphs 1 through 78 as if set forth fully herein.

80.     The Fourteenth Amendment, which applies against the City, secures Franzese's fundamental property rights to a business license to own a retail sales firearms establishment, which

also includes the fundamental rights to sell firearms through retail sales. The Fourteenth Amendment also protects Plaintiffs' fundamental right to earn his livelihood in any lawful manner in which he chooses.

**Answer:** Defendants have moved to dismiss Count IX pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count IX at this time.

81.     Through arbitrary and capricious action the part of the City, Franzese is unable to sell firearms through in-person sales. These City actions have resulted in a denial of Plaintiffs' Fourteenth Amendment substantive due process rights.

**Answer:** Defendants have moved to dismiss Count IX pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count IX at this time.

82.     Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**Answer:** Defendants have moved to dismiss Count IX pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count IX at this time.

83.     Franzese is also entitled to his actual monetary damages suffered as a result of City's continued enforcement and maintenance of its unconstitutional customs, policies and practices.

**Answer:** Defendants have moved to dismiss Count IX pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count IX at this time.

**COUNT X**
**Dormant Commerce Clause**
**U.S. Const., Art. 1, Sec. 8**

84.     Paragraphs 1 through 83 are incorporated as though fully restated herein.

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 83 as if set forth

fully herein.

85.     Franzese as Second Amendment Arms operates a reputable business whose product distributors and manufacturers are located in, *inter alia*, Illinois and many other states and even foreign counties.

27

**Answer:** Defendants have moved to dismiss Count X pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count X at this time.

86.     Even firearms that were manufactured in Illinois are often wholesaled by manufacturer to out-of-state distributors, and thus have left the State of Illinois and then re-entered it before being acquired by Franzese and Second Amendment Arms.

**Answer:** Defendants have moved to dismiss Count X pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count X at this time.

87.     Many of the firearms that Franzese's Second Amendment Arms imports, has sold, and sells physically crossed state lines and are marked *via* the Internet, the U.S. Mail, and telephonically.

**Answer:** Defendants have moved to dismiss Count X pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count X at this time.

88.     Thus, much of Franzese and Second Amendment Arms' business comprises interstate commerce.

**Answer:** Defendants have moved to dismiss Count X pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count X at this time.

89.     The Commerce Clause, contained in Article I, Section 8 of the Constitution, as interpreted by the Supreme Court and other applicable Courts, prohibits local regulation that affects interstate commerce when the burden on such commerce is clearly excessive to any putative local benefits.  This aspect of the Commerce Clause is commonly referred to as the "Dormant Commerce Clause."

**Answer:** Defendants have moved to dismiss Count X pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count X at this time.

90.     The City's restrictions in its Municipal Code and Zoning Ordinance as described above harm not only Plaintiffs, but also the out-of-state distributors and manufacturers of the Plaintiffs' products, as well as the consumers of said products who would have made purchases from Plaintiffs Franzese and Second Amendment Arms.

**Answer:** Defendants have moved to dismiss Count X pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count X at this time.

91.     The City's restrictions burden interstate commerce in an excessively restrictive manner with no local benefits, and thus violate the Dormant Commerce Clause of the Constitution.

**Answer:** Defendants have moved to dismiss Count X pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count X at this time.

92.     City currently under color of law deprives individuals and businesses, including the Plaintiffs, of their right to keep and bear and /or sell arms, in violation of the (Dormant) Commerce Clause to the United States Constitution.  Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983.  Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of City's unconstitutional customs, policies, and practices.

**Answer:** Defendants have moved to dismiss Count X pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count X at this time.

93.     City currently under color of law deprives individuals and businesses, including the Plaintiffs, of their right to keep and bear and/or sell arms, in violation of the Second and Fourteenth Amendments to the United States Constitution.  Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983.  Plaintiffs Franzese and Second Amendment Arms are also entitled to their actual monetary damages suffered as a result of City's continued enforcement and maintenance of its unconstitutional customs, policies, and practices.

**Answer:** Defendants have moved to dismiss Count X pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count X at this time.

### COUNT XI
### Plaintiff Kole's Individual and Class Action Claim for
### Restitution Under the New Gun Ban Ordinance
### U.S. Const., Amends, II and XIV, 42 U.S.C. § 1983

94.     Plaintiff Kole, individually and as class representative, incorporates Paragraphs 1 through 93 as if fully restated herein and states individually and as class representative.

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 93 as if set forth

fully herein.

95.     By requiring law-abiding citizens and residents, including Kole and his fellow class

members, to register all firearms prior to their acquisition under the unconstitutional New Gun Ban Ordinance, Defendants under color of law have unlawfully deprived them monies by having and continuing to wrongfully charge and collect fees thereunder to obtain firearms permits and firearm registration certificates in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiff and the class are thus damaged and are therefore entitled to declaratory relief and restitution of all such fees.

**Answer:** Defendants admit that MCC § 8-20-140 formerly provided that "it is unlawful for any person to carry or possess a firearm without a firearm registration certificate," and that MCC § 8-20-150 formerly provided for a $15 non refundable application fee for each firearm registered. Defendants state that the Chicago City Council repealed MCC §§ 8-20-140 and 8-20-150 on September 11, 2013, and that those sections therefore have no legal effect. Defendants deny the remaining allegations contained in Paragraph 95.

96.     The class on whose behalf this action is brought on behalf of Kole individually, and all other citizens and residents and other entities who have paid the City fees to obtain firearms permits and firearm registration certificates under the New Gun Ban Ordinance since the date of its adoption.

**Answer:** Defendants admit that Plaintiff Kole purports to bring Count XI on his behalf and that of a putative class. Defendants deny the remaining allegations contained in Paragraph 96.

97.     Kole, as class representative, will adequately represent the claims of each of these natural citizens.

**Answer:** Defendants deny the allegations contained in Paragraph 97.

98.     A class action may be maintained in this action because:

(a)     the class is so numerous that joinder of all members is impractical. While the exact number and identities of the class members are unknown at this time, Kole believes the number to be substantial and that they can be determine through discovery and full disclosure and accounting of Defendants and their legal counsel's records, that are within their possession and control;

(b)     there are questions of fact or law, including but not limited to the above issues of constitutionally of said ordinances that are common to the class. Such questions predominate over any questions affecting only individual class members.

    (c)      Kole is best situated to, and will, fairly and adequately represent the interest of the class and other members, who like them, have been intimidated, and may, like them, be fearful of retaliation so as to step forward to vindicate and protect their right.

    (d)      a class action is an appropriate method for the fair and efficient adjudication of the controversy and will serve the interests of judicial economy.

**Answer:** Defendants deny the allegations contained in Paragraph 97.

### COUNT XII
### Plaintiff Zieman's Individual and Class Action Claim for
### Restitution Under Unconstitutional Old Gun Ban Ordinance
### U.S. Const., Amends, II and XIV, 42 U.S.C. § 1983

99.    Plaintiff Zieman, individually and as call representatI've, and complaining of all Defendants, incorporates Paragraphs 1 through 98 as though fully stated herein.

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 98 as if set forth

fully herein.

100.    Pursuant to City's unconstitutional Old Gun Ban Ordinance, Zieman's home was invaded and searched by the City Police and numerous valuable handguns and rifles that he possessed therein maintained in a safe as a valid FOID Card holder were seized, confiscated and/or destroyed, and he was thereafter found guilty and fined for failing to register them thereunder.

**Answer:** Defendants have moved to dismiss Count XII pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count XII at this time.

101.    Zieman maintains that he is thus entitled to the return and restitution of his said firearms in kind or the fair market value thereof, vacation and expungement of his conviction for failure to register his weapons, a refund of any fines, court costs, expenses, legal fees incurred as a result thereof, damages, Defendants' unconstitutional customs, policies, and practices along with his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**Answer:** Defendants have moved to dismiss Count XII pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count XII at this time.

102.    Zieman also seeks to represent others similarly situated and aggrieved as their class representative.

**Answer:** Defendants have moved to dismiss Count XII pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count XII at this time.

103.    The class on whose behalf his action is brought on behalf of Zieman individually, and all natural citizens and corporations and other entities having lived in, living, having done business in, doing business in the City, including all those persons who have been charged and/or prosecuted under or who have plead or been found guilty under City's Old Gun Ban Ordinance that have had any of their firearms confiscated and or destroyed, incurred or paid fines, penalties, court costs as a result of any plea or conviction under said unconstitutional ordinance, or incurred or paid any witness, expert, attorneys or other fees in connection with the defense of any such charge or prosecution by the City, its attorneys, officers, agents or employees, over and during the 28 year period that said unconstitutional ordinance has been enacted and in force, *i.e.*, since March 19, 1982, and thereafter.

**Answer:**  Defendants have moved to dismiss Count XII pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count XII at this time.

104.    Zieman, as class representative, will adequately represent the claims of each of these natural citizens.

**Answer:**  Defendants have moved to dismiss Count XII pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count XII at this time.

105.    A class action may be maintained in this action because:

(a)    the class is so numerous that joinder of all members is impractical.  While the exact number and identities of te class members are unknown at this time, Zieman believes the number to be substantial and that they can be determine through discovery and full disclosure and accounting of Defendants and their legal counsel's records, that are within their possession and control.

(b)    these are questions of fact or law, including but not limited to the above issues of constitutionally of said ordinances that are common to the class. Such questions predominate over any questions affecting only individual class members.

(c)    Zieman is best situated to, and will, fairly and adequately represent the interest of the class and other members, who like them, have been intimidated, and may, like them, be fearful of retaliation so as to step forward to vindicate and protect their rights.

(d)    a class action is an appropriate method for the fair and efficient adjudication of the controversy and will serve the interests of judicial economy.

**Answer:** Defendants have moved to dismiss Count XII pursuant to Fed. R. Civ. P. 12(b)(6).

No answer is therefore required to Count XII at this time.

**COUNT XIII**
**Declaratory Judgment**
**28 U.S.C. § 2201**

106.    Paragraphs 1 through 105 incorporated as though fully restated herein.

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 105 as if set forth

fully herein.

107.    The complained-of sections of the Municipal Code of Chicago and the Chicago Zoning Ordinance are against public policy and violative of Article 1, §§ 1, 2, 4, 6, 12, 15, 22, 24, and Due Process, Equal Protection and takings clauses of the Illinois Constitution, thus rendering them unconstitutional, null and void *ab initio*, and unenforceable.

**Answer:** Defendants deny the allegations contained in Paragraph 107.

108.    The Defendants should be enjoined *pendent lite* and permanently, as well as all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecution all of the complained of provisions of the Municipal Code of Chicago and Chicago Zoning Ordinance.

**Answer:** Defendants deny the allegations contained in Paragraph 108.

109.    That by reason of the foregoing an actual controversy exists and Plaintiffs are therefore entitled to a judicial declaration of their rights and declaratory relief pursuant to 28 U.S.C. § 2201 in connection therewith because said Code Sections and Ordinances are oppressive, illegal as violating Plaintiffs' fundamental constitutional rights, are against public policy, forced on Plaintiffs and adopted by Defendants in bad faith and are therefore null and void *ab initio*, and therefore unenforceable.

**Answer:** Defendants deny the allegations contained in Paragraph 109.

**COUNT XIV**
**Plaintiff Kole's Pendant**
**Individual and Class Action State Law**
**Claim for Restitution - - Unjust Enrichment**

110.    Plaintiff Kole, individually and as class representative, and complaining of City, incorporates Paragraphs 1 through 109 as if fully restated herein.

33

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 109 as if set forth fully herein.

111. That as a result of the foregoing and said ordinances violating the Illinois Constitution, Article I §§ 1, 2, 4, 6, 12, 22, and 24, City has been unjustly enriched and therefore Kole and the Class are entitled to restitution.

**Answer:** Defendants deny the allegations contained in Paragraph 111.

## COUNT XV
### Plaintiff Zieman's Pendant
### Individual and Class Action State Law Claim for
### Restitution - - Unjust Enrichment

112. Plaintiff Zieman, individually and as class representative, and complaining of City, incorporates Paragraphs 1 through 111 as if fully restated herein.

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 111 as if set forth fully herein.

113. As a result of the foregoing, the Old Handgun Ban Ordinance violated the Illinois Constitution, Article § 1, 2, 4, 6, 12, 22 and 24, and City has been unjustly enriched and therefore Zieman is entitled to restitution.

**Answer:** Defendants have moved to dismiss Count XV pursuant to Fed. R. Civ. P. 12(b)(6). No answer is therefore required to Count XV at this time.

**WHEREFORE**, Defendants respectfully request that the Court enter judgment in their favor and against Plaintiffs on Plaintiffs' Third Amended Complaint and grant Defendants such further relief as the Court deems just and appropriate.

## DEFENSES

### First Defense - Statute of Limitations

1. Plaintiff Zieman's individual and class claims in Counts XII and XV are barred by the statute of limitations.

2.      In Count XII, Plaintiff Zieman, on behalf of himself and a putative class, claims under 42 U.S.C. § 1983 that the City's seizure of his firearms pursuant to the City's former firearms ordinance was unconstitutional and seeks restitution for the value of the firearms as well as compensation for any fines, court costs, or legal fees he incurred as a result thereof.  Count XV contains a corresponding state-law claim on behalf of Zieman and a putative class for unjust enrichment based on the seizure of Zieman's firearms by the City.

3.      The statute of limitations period for Zieman's section 1983 claims is two years.

4.      The statute of limitations period for Zieman's claim under Illinois law for unjust enrichment is five years.

5.      Zieman's firearms were seized by the Chicago Police Department on September 17, 2001.  His claims accrued that day because Zieman knew or should have known that day that his constitutional rights had been violated and that the City was being "unjustly enriched" by virtue of its seizure and possession of his firearms.

6.      Plaintiffs filed their action on July 9, 2010 – almost nine years after the seizure occurred. Thus, Zieman did not bring either his section 1983 claim or unjust enrichment claim within the applicable statute of limitations period.

**WHEREFORE**, Defendants respectfully request that the Court enter judgment in their favor and against Plaintiffs on Counts XII and XV of Plaintiffs' Third Amended Complaint.

Date: November 15, 2013                    Respectfully submitted,

                                           STEPHEN R. PATTON
                                           Corporation Counsel for the City of Chicago

                                           By:      /s/ William Macy Aguiar
                                                    Senior Counsel

35

Mardell Nereim
William Macy Aguiar
David M. Baron
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-6975 / 4216 / 3244

Attorneys for Defendants