**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SECOND AMENDMENT ARMS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-CV-4257** |
| | ) | **Judge Robert M. Dow, Jr.** |
| **CITY OF CHICAGO, et al.,** | ) | **Magistrate Judge Sheila M. Finnegan** |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS COUNTS I-VI OF PLAINTIFFS' FOURTH AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT ....................................................................................................................... 3

I.      Count I Fails To Allege Violations Of The First And Second Amendments....................... 3

A.      Plaintiffs Do Not State a Challenge to the Zoning of Gun Stores Under the Second Amendment.................................................................................................................... 3

B.      The Prohibition on the Display of Firearms in Windows Does Not Violate the First Amendment. ......................................................................................................... 5

C.      SAA Cannot Base a Damages Claim on the Infringement of Its Purported "Right to Sell" Firearms. ........................................................................................................ 8

II.     Count II Does Not State A Substantive Due Process Claim. .................................................. 9

III.    Count III Fails Because Laser Sight Accessories Are Not Protected By The Second Amendment. ................................................................................................................ 11

IV.     Count IV Fails To State A Violation Of The Second Amendment..................................... 13

V.      Kole's Second Amendment Claim For Restitution Should Be Dismissed (Count V). ....... 15

VI.     Kole's State Law Claim For Restitution Should Be Dismissed (Count VI). ..................... 16

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Archuleta v. McShan*, 897 F.2d 495 (10th Cir. 1990).....................................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................. 3, 5, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 3, 11

*Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564 (1972) ......................................................... 10

*Cain v. Larson*, 879 F.2d 1424 (7th Cir. 1989)............................................................................ 10

*Carey v. Piphus*, 435 U.S. 247 (1978) ...........................................................................................8

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)......... 5, 6, 7

*Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000) ..................................................................8

*Cole v. Milwaukee Area Technical Coll. Dist.*, 634 F.3d 901 (7th Cir. 2011) ............................ 10

*Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) ...................................................... 4, 8, 9, 12, 16

*Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003).................................................................................. 10

*Dunn v. Fairfield Cnty. High Sch. Dist. No. 225*, 158 F.3d 962 (7th Cir. 1998)......................... 10

*Edenfield v. Fane*, 507 U.S. 761 (1993); ......................................................................................6

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ................................................ 4, 9, 12, 16

*Friedman v. City of Highland Park*, No. 1:13–cv–9073, __ F. Supp. 3d ___, 2014 WL
    4684944 (N.D. Ill. 2014) .................................................................................................... 7, 12

*Graham v. Connor*, 490 U.S. 386 (1989) .................................................................................... 10

*Heller v. Dist. of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) ......................................... 15, 16, 17

*Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928 (N.D. Ill. 2014)
.................................................................................................................................... 4, 5, 9, 14

*Jackson v. City and Cnty. of San Francisco*, 746 F.3d 953, 962-63 (9th Cir. 2014).............. 13, 14

*Justice v. Town of Cicero*, 577 F.3d 768 (7th Cir. 2009)............................................................ 16

*Justice v. Town of Cicero*, 827 F. Supp. 2d 835 (N.D. Ill. 2011) ........................................... 15, 16

*Kwong v. Bloomberg*, 723 F.3d 160 (2d Cir. 2013) ........................................................... 15

*Lorillard Tobacco Company v. Reilly*, 533 U.S. 525 (2001) ................................................. 6, 7, 8

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994) ................................................. 7

*Munson v. Gaetz*, 673 F.3d 630 (7th Cir. 2012) ............................................................... 3

*Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656 (1989) ........................................... 7

*Ray v. Maher*, 662 F.3d 770 (7th Cir. 2011) ................................................................. 8

*See Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564 (1972) .......................................... 10

*Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ........................................... 3

*Teixeira v. Cnty. of Alameda*, No. 12-cv-3288-WHO, 2013 WL 4804756 (N.D. Cal. Sept. 9, 2013) ................................................................................................................. 5, 9

*United States v. Lanier*, 520 U.S. 259 (1997) ................................................................ 10

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ................................................. 15

*Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) ..................................................... 3

## Statutes

MCC § 17-3-0207 ................................................................................................... 1

MCC § 17-4-0207 ................................................................................................... 1

MCC § 4-144-720 ................................................................................................. 11

MCC § 4-144-750 ................................................................................................... 1

MCC § 4-144-790(g) ........................................................................................ 1, 5, 6, 7, 8

MCC § 4-144-795(a)(2) ............................................................................................ 8

MCC § 8-20-050 ............................................................................................. 2, 13, 15

MCC § 8-20-060(a) .............................................................................................. 2, 11

MCC § 8-20-060(c) ............................................................................................... 11

MCC § 8-20-070 ................................................................................................................ 11

MCC § 8-20-140 ............................................................................................................ 15, 17

MCC § 8-20-150 ............................................................................................................ 15, 17

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 3, 17

Fed. R. Civ. P. 8(a)(2) ........................................................................................................ 3

Defendants City of Chicago (the "City"), Mayor Rahm Emanuel, Superintendent of Police Garry McCarthy, and City Clerk Susana Mendoza (collectively, "Defendants"), by their attorney, Stephen R. Patton, Corporation Counsel of the City of Chicago, hereby file this memorandum in support of their Motion to Dismiss Counts I-VI of the Fourth Amended Complaint ("Complaint" or "Compl.") filed by Plaintiffs Second Amendment Arms ("SAA"), R. Joseph Franzese, Robert M. Zieman, and Tony Kole (collectively, "Plaintiffs").[1]

## INTRODUCTION

Plaintiffs Zieman and Kole are Chicago residents who own or wish to purchase firearms and laser sight accessories in the City, while SAA is a firearms dealer that wishes to operate a firearms store in Chicago. Compl. ¶¶ 22, 24, 25. In Count I of their Complaint, Plaintiffs challenge three ordinances that apply to firearms dealers: (i) Section 4-144-750 of the Municipal Code of Chicago ("MCC"),which provides that "[n]o license shall be issued for a location that is within 500 feet from any pre-existing primary or secondary school or any park owned or leased by any unit of local, state or federal government"; (ii) Sections 17-3-0207 and 17-4-0207, which allow firearms dealers to operate, with special use approval, in Chicago's Commercial 2, Commercial 3, and Downtown Service zoning districts; and (iii) Section 4-144-790(g), which prohibits a gun store from displaying "firearms or ammunition in any window." Plaintiffs assert that the zoning provisions violate the Second Amendment because they "effectively prohibit gun stores from opening and operating," Compl. ¶ 20, and that the limitation on the display of firearms in store windows violates the First Amendment, *id.* ¶ 32. Count I also seeks damages allegedly suffered by SAA as a result of the City's previous but now-repealed ban on gun stores.

---

[1] Consistent with the Court's September 25, 2012 Order, Defendants do not move to dismiss Count VII of the Complaint.

*Id.* ¶ 33.  In Count II, Franzese alleges that the Fourteenth Amendment protects his rights to a business license to sell firearms and to earn a living in "any lawful manner in which he chooses," and that the City's treatment of gun stores deprives him of those rights.  *Id.* ¶¶ 35-38.  Plaintiffs challenge in Count III the constitutionality of Chicago's ban on the possession and sale of laser sight accessories, codified in MCC §§ 8-20-060(a), (c).  *Id.* ¶¶ 40-42.  Count IV is a Second Amendment challenge to MCC § 8-20-050, which mandates storage requirements for firearms in homes with minor children.  *Id.* ¶¶ 44-45.  Kole claims in Count V that the City's firearm registration requirements, now repealed, were unconstitutional under the Second Amendment and seeks restitution on behalf of himself and a putative class of all citizens who paid the registration fees.  *Id.* ¶¶ 47-50.  And Count VI is Kole's state law equivalent of Count V.  *Id.* ¶¶ 51-52.

These claims fail as a matter of law and should be dismissed.  Plaintiffs fail in Count I to plead any facts demonstrating that the City's zoning requirements for gun stores violate the Second Amendment, and they have no First Amendment right to display firearms in gun store windows.  Likewise, the Second Amendment does not entitle SAA to seek lost profits as damages for the City's purportedly unconstitutional treatment of gun stores.  Franzese's substantive due process claim in Count II should be dismissed because the claim is already covered by the Second Amendment and, in any event, he fails to allege a property interest protected by due process.  Count III's challenge to Chicago's ban on laser sight accessories under the Second Amendment fails because laser sight accessories are outside its established scope.  Plaintiffs fail to state a claim in Count IV against the storage requirements of MCC § 8-20-050 because those requirements do not violate the Second Amendment.  Likewise, Kole's attempt in Counts V and VI to recoup firearm registration fees, on his behalf and that of a

putative class, cannot survive under Second Amendment jurisprudence.

For these reasons, discussed below, Counts I-VI fail and should be dismissed pursuant to Rule 12(b)(6).

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). Well-pleaded factual allegations are presumed true for purposes of a motion to dismiss, *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012), but conclusory allegations that merely recite the elements of a claim are not entitled to a presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). *See also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together.").

## ARGUMENT

**I.    Count I Fails To Allege Violations Of The First And Second Amendments.**

**A.    Plaintiffs Do Not State a Challenge to the Zoning of Gun Stores Under the Second Amendment.**

In Count I, Plaintiffs allege that SAA "intends to submit . . . applications to open gun stores at locations within the City," Compl. ¶ 22, but that the City's zoning regulations have prevented SAA from selling its products and "inhibit[ed] the ability" of its customers to purchase firearms, *id.* ¶ 30. These conclusory allegations fail to state a Second Amendment violation.

The City does not contest, for purposes of this motion, that a regulation of firearms sales can conceivably impact Second Amendment rights, because the acquisition of a firearm is a necessary antecedent to the right to keep and bear arms for self-defense. *See Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 938 (N.D. Ill. 2014). *See also Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011) (the right to possess a handgun for self-defense implies a corollary right to train to use it). But the Supreme Court has remarked that "conditions and qualifications on the commercial sale of arms" are "presumptively lawful" under the Second Amendment. *Dist. of Columbia v. Heller*, 554 U.S. 570, 627 n.26 (2008). In the face of this presumption of validity, Plaintiffs must allege at least a colorable basis for supposing that the City's gun store zoning laws impair the right to acquire firearms. They fail to do this.

Here, the Complaint alleges no facts demonstrating that the City's gun store zoning laws impose any meaningful burden on a right to acquire firearms. As Plaintiffs acknowledge, the July 2014 amendments to the MCC allow gun stores to open and operate in the City; they merely must be located in one of three types of commercial districts and may not be within 500 feet of a school or park. *See* Compl. ¶ 20 & Ex. A. These provisions regulate only *where* firearms may be purchased in the City; they do not ban their sale. Although Plaintiffs allege, in entirely conclusory fashion, that these provisions "work to effectively prohibit gun stores from opening and operating," *id.*, nowhere in the Complaint do they allege any facts that show that the amendments to the MCC actually make it difficult, let alone impermissibly burdensome, to open a gun store. And more importantly, Plaintiffs allege no facts demonstrating that would-be gun purchasers will experience any difficulty or inconvenience in buying a firearm within City limits.

Since Plaintiffs fail to allege any basis for finding that the City's gun store zoning laws burden Second Amendment rights, they fail to allege a claim that is "plausible on its face," *Iqbal*,

4

556 U.S. at 678, and their Second Amendment challenge to the City's gun store regulations should be dismissed. *See Teixeira v. Cnty. of Alameda*, No. 12-cv-3288-WHO, 2013 WL 4804756, *7 (N.D. Cal. Sept. 9, 2013) (rejecting, on a motion to dismiss, challenge to ordinance restricting gun stores from locations "within 500 feet of sensitive places"). *See also Ill. Ass'n of Retailers*, 961 F. Supp. 2d at 947 ("[N]othing in this opinion prevents the City from considering other regulations—short of the complete ban—on sales and transfers of firearms.").[2]

### B. The Prohibition on the Display of Firearms in Windows Does Not Violate the First Amendment.

Plaintiffs also challenge MCC § 4-144-790(g), which provides that gun retailers shall "not display firearms or ammunition in any window," because it purportedly "deprives individuals and businesses, including the Plaintiffs, of their right to display arms and ammunition for sale, in violation of the First and Fourteenth Amendments." Compl. ¶ 32. At the outset, Plaintiffs' claim fails because the plain language of the Ordinance belies their allegation that retailers are prohibited from displaying guns and ammunition for sale—the Ordinance bars only the display of firearms and ammunition in *store windows*.

Furthermore, the City's prohibition on the display of firearms or ammunition in gun store windows does not violate the First Amendment. The display of a product for sale is a type of commercial speech. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562 (1980) (explaining that, at its core, commercial speech consists of "speech proposing a commercial transaction"). Although commercial speech enjoys some First Amendment

---

[2] Plaintiffs purport to challenge additional, unspecified sections of the MCC. *See* Compl. ¶ 20 (stating that "a variety" of provisions of the MCC "effectively prohibit gun stores from opening and operating" and that they "include" the three specified sections of the MCC). Similarly, in the prayer for relief in Count I, Plaintiffs seek to enjoin Defendants "from enforcing all offending sections of the [MCC] and the Chicago Zoning Ordinance listed above, *or any other law*, as against the ordinary operation and use of retail firearms sales businesses." *Id.* at 10 (emphasis added). Plaintiffs have not given Defendants notice of what other provisions may be at issue, and any references to such provisions should be stricken.

protection, it may be regulated to a greater extent than non-commercial speech. *Edenfield v. Fane*, 507 U.S. 761, 767 (1993); *Cent. Hudson*, 447 U.S. at 563. Under *Central Hudson*, when assessing the constitutionality of laws burdening commercial speech, courts ask whether: (1) the speech at issue is protected by the First Amendment; (2) the government's interest is substantial; (3) the challenged regulation directly advances the asserted interest; and (4) the regulation is no more extensive than necessary to further the government's interest. *Cent. Hudson*, 447 U.S. at 566. For purposes of this motion to dismiss only, Defendants assume that the display of a firearm in a retailer's window may constitute speech protected by the First Amendment. Section 4-144-790(g), however, easily meets the requirements of *Central Hudson*.

Plaintiffs' challenge to the ban on store window displays of firearms and ammunition is analogous to a suit brought by tobacco retailers against a Massachusetts law regulating the display of tobacco products. In *Lorillard Tobacco Company v. Reilly*, 533 U.S. 525, 556 (2001), the Supreme Court held that restrictions on the display of tobacco products withstood First Amendment scrutiny under *Central Hudson*. The Supreme Court explained,

> Massachusetts' sales practices provisions regulate conduct that may have a communicative component, but . . . for reasons unrelated to the communication of ideas. . . . It is clear that the regulations leave open ample channels of communication. . . . [R]etailers have other means of exercising any cognizable speech interest in the presentation of their products. We presume that vendors may place empty tobacco packaging on open display, and display actual tobacco products so long as that display is only accessible to sales personnel. . . . [T]here is no indication in the regulations that a customer is unable to examine a cigar prior to purchase, so long as that examination takes place through a salesperson. We conclude that the sales practices regulations withstand First Amendment scrutiny. The means chosen by the State are narrowly tailored to prevent access to tobacco products by minors, are unrelated to expression, and leave open alternative avenues for vendors to convey information about products and for would-be customers to inspect products before purchase.

*Id.* at 569-70 (internal citations omitted).

6

Like the Massachusetts law at issue in *Lorillard*, Section 4-144-790(g) satisfies the *Central Hudson* test. With respect to part two of the test, the City has a substantial—if not compelling—interest in protecting public safety by reducing opportunities for firearms theft. *See* Compl. Ex. A at 1 (finding that "[i]n 2012, more than 16,000 firearms were lost or stolen from licensed firearms dealers across the country"). Courts have routinely held that public safety is an important government interest. *See, e.g.*, *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 670-71 (1989) (compelling interest in public safety justified drug tests for border agents carrying firearms); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 768 (1994) ("The State . . . has a strong interest in ensuring the public safety and order."); *Friedman v. City of Highland Park*, No. 1:13–cv–9073, __ F. Supp. 3d ___, 2014 WL 4684944, at *9 (N.D. Ill. 2014) ("There can be little doubt that any government's interest in public safety is important.").

As to the third *Central Hudson* prong, preventing the display of guns and ammunition in retail windows is directly related to preventing the theft of these items: when guns and ammunition are on display in a store window, a criminal need only break the glass to take them. Indeed, the City's interest here is even stronger than that in *Lorillard* because the harm that can result from stolen firearms is far greater and more immediate than the harm from an improperly acquired cigarette. Finally, the provision sweeps no more broadly than necessary to accomplish the City's goal of reducing gun theft. *See Lorillard*, 533 U.S. at 556 (the law requires not "the least restrictive means" possible but only a reasonable "fit between the legislature's ends and the means chosen to accomplish those ends") (internal quotation marks omitted). The City allows gun retailers to advertise their products in a multitude of ways other than displaying them in store windows. In addition to conventional signage, retailers remain free to display signs or photographs of firearms in their store windows, to display actual firearms in locked display cases

inside the store, and to allow customers to handle firearms in the store. *See* MCC § 4-144-795(a)(2). The MCC thus "leave[s] open alternative avenues for vendors to convey information about products and for would-be customers to inspect products before purchase." *Lorillard*, 533 U.S. at 570. Because any alleged burden imposed on retailers' speech interests is minimal, and Section 4-144-790(g) is appropriately tailored to further the City's interest in preventing firearms theft from store windows, Plaintiffs' First Amendment claim should be dismissed.

### C. SAA Cannot Base a Damages Claim on the Infringement of Its Purported "Right to Sell" Firearms.

SAA also claims in Count I that it is entitled to damages for lost profits resulting from the City's prior ban on gun stores. Compl. ¶¶ 22, 33. SAA is not entitled to damages, however, because it has not suffered a compensable injury under the Second Amendment. "[T]he rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Any damages must be claimed by an individual protected by the right at issue because "§ 1983 claims are personal to the injured party." *Ray v. Maher*, 662 F.3d 770, 773 (7th Cir. 2011). *See also Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (a § 1983 claim is "entirely personal to the direct victim of the alleged constitutional tort"); *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (it is a "well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else").

SAA has no damages claim here because the Second Amendment does not protect the right of a business entity to sell arms. This is so for two reasons. First, the holders of Second Amendment rights are individuals, not businesses. In exhaustively examining the amendment's history and text in *Heller*, the Supreme Court "start[ed] with a strong presumption that the Second Amendment right is exercised individually," and, after finishing its analysis, concluded

that the amendment protects the "individual" right to possess arms. *Heller*, 554 U.S. at 581, 592. *See also Ezell*, 651 F.3d at 700 (the Second Amendment is "an individual rights guarantee"). Second, the core substantive right protected by the Second Amendment is the right to possess arms for self-defense. *Ezell*, 651 F.3d at 700 (citing *Heller*, 554 U.S. at 595, 599-600). Indeed, the amendment's text protects the rights to "keep and bear" arms but does not mention a right to "sell" arms. To be sure, restrictions on firearms sales may implicate the Second Amendment, but this is because the restrictions may interfere with the right of the individual to acquire the firearm, which is a necessary predicate to the exercise of the right to self-defense; in such a case, it is the individual gun possessor, and not the seller, which has the Second Amendment claim. *See Ill. Ass'n of Retailers*, 961 F. Supp. 2d at 938-39; *id.* at 941 (ban on the sale of firearms is an "'encumbrance on individual Second Amendment rights'") (quoting *Ezell*, 651 F.3d at 708-09). *See also Teixeira*, 2013 WL 4804756 at *7 ("[P]ossessing a gun implicates a different interest than selling one."). Accordingly, any constitutional harm that results from a Second Amendment violation is to the individual who desires to use firearms for self-defense, not to the entity wishing to sell the firearm. A seller of firearms therefore cannot recover damages for lost profits because any damage resulting from the City's gun store regulations would be to the individual who desires to use a firearm for self-defense, not the seller. As a result, SAA's claim for loss profits fails and should be dismissed.

## II.     Count II Does Not State A Substantive Due Process Claim.

Count II alleges that Plaintiff Franzese has (1) "fundamental property rights to a business license to own a retail sales firearms establishment, which also includes the fundamental rights to sell firearms through retail sales, and to display those firearms and ammunition for sale," and (2) a "fundamental right to earn his livelihood in any lawful manner in which he chooses." Compl. ¶ 35. Count II further contends that because the City's ordinances allegedly kept Franzese from

commercially selling firearms and displaying his firearms for sale, these rights were violated as a matter of substantive due process. *Id.* ¶ 36. Franzese fails to state a due process claim.

Courts have repeatedly emphasized "how limited the scope of the substantive due process doctrine is," *Dunn v. Fairfield Cnty. High Sch. Dist. No. 225*, 158 F.3d 962, 965 (7th Cir. 1998), and further, "if a constitutional claim is covered by a specific constitutional provision[,] the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process," *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). *See also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[The particular] Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."); *Doe v. Heck*, 327 F.3d 492, 519 n.23 (7th Cir. 2003) ("[S]ubstantive due process may not be called upon when a specific constitutional provision . . . protects the right allegedly infringed upon."). Plaintiffs claim in Count I that Franzese's right to sell firearms is protected by the Second Amendment and that his right to display firearms for sale is protected by the First Amendment. Compl. ¶¶ 27, 29. Accordingly, substantive due process is an improper basis to evaluate these claims, and the Court should dismiss Count II for this reason alone.

Moreover, Plaintiffs have not adequately alleged a property interest protected by the Due Process Clause, which is the threshold inquiry in any due process analysis. *See Cole v. Milwaukee Area Technical Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011). With respect to Franzese's purported "property interest" in a firearm business license, the Supreme Court has held that a valid property interest must arise from a legitimate claim of entitlement; an abstract need, desire, or unilateral expectation is not enough. *See Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972); *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989). Here, Franzese could only be entitled to a firearm dealer license if he satisfies the eligibility requirements

10

specified in the City's ordinance governing that license.  *See* MCC § 4-144-720 ("No original or renewal license shall be issued to any applicant or licensee unless all persons required to be disclosed as applicants meet the eligibility requirements.").  Plaintiffs do not allege in the Complaint that Franzese meets these criteria.  Additionally, Plaintiffs do not plead any facts showing that the City's ordinances have kept Franzese from obtaining a firearm business license.

This latter deficiency also invalidates Plaintiffs' claim based upon Franzese's purported fundamental right to earn his livelihood in any lawful manner.  The Complaint does not allege any facts demonstrating that the City's ordinances have deprived Franzese from pursuing his chosen occupation or how he was prevented from doing so.  It merely alleges, in a conclusory manner, that the ordinances "unjustifiably burden[]" the operation of gun stores.  Compl. ¶ 20.  Such allegations do not satisfy the federal pleading standard, which requires more than "labels and conclusions."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp*, 550 U.S. at 570).  For these reasons, Count II does not state a due process claim and should be dismissed.

## III.  Count III Fails Because Laser Sight Accessories Are Not Protected By The Second Amendment.

In Count III, Plaintiffs raise a facial challenge under the Second Amendment to the City's ban on laser sight accessories.  Compl. ¶¶ 39-42.  In particular, Plaintiffs seek to invalidate MCC § 8-20-060(a), which makes it "unlawful  for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory," MCC § 8-20-060(c), which subjects illegal laser sight accessories to seizure and forfeiture, and MCC § 8-20-070, which subjects the owners of a vehicle containing an illegal laser sight accessory to an administrative fine and impoundment of the vehicle.  Compl. ¶ 41.  Plaintiffs' challenge fails, however, because accessories like laser sight devices are not within the scope of Second Amendment protections.

11

The threshold inquiry to any Second Amendment claim is whether the restricted activity is protected by the Second Amendment. *Ezell*, 651 F.3d at 701. As courts have repeatedly emphasized, the scope of the Amendment is "not unlimited." *Heller*, 554 U.S. at 596, 627. *See also Friedman*, 2014 WL 4684944, at *5 ("[T]here are limitations on this right."). If a challenged restriction is outside that scope, "then the analysis can stop there" because "the law is not subject to further Second Amendment review." *Ezell*, 651 F.3d at 703.

When the Supreme Court held in *Heller* that the Second Amendment protects the individual right to possess a handgun for self-defense, the Court first analyzed the meaning of the term "arms" used in the Amendment's text. *Heller*, 554 U.S. at 581-83. According to the Court, "The 18th-century meaning is no different from the meaning today. . . . The term was applied, then as now, to *weapons* that were not specifically designed for military use and were not employed in a military capacity." *Id.* at 581-82 (emphasis added). Further, "the most natural reading of 'keep Arms' in the Second Amendment is to 'have *weapons*.'" *Id.* at 582 (emphasis added). And finally, "[p]utting all of these textual elements together, we find that they guarantee the individual right to possess and carry *weapons* in case of confrontation." *Id.* at 592 (emphasis added). The Court never stated or implied that "arms" refers to anything other than weapons.

Laser sight accessories are not weapons. They are, by definition, supplemental sighting "accessories" that are attached to a firearm. *See* MCC § 8-20-010. Neither *Heller* nor cases interpreting it have held that laser sight accessories fall within the scope of the Second Amendment. Accordingly, Count III should be dismissed.[3]

_____

[3] Plaintiffs' allegation that laser light accessories are "typically possessed by law-abiding citizens" is irrelevant. *See* Compl. ¶ 40. This "common use" test has been used to evaluate whether a weapon is protected under the Second Amendment. *See, e.g.*, *Heller*, 554 U.S. at 627 ("[T]he sorts of *weapons* protected were those 'in common use at the time.'") (emphasis added); *Friedman*, 2014 WL 4684944, at *6 ("When a particular class of *weapon* is at issue, the threshold question is whether those

**IV.     Count IV Fails To State A Violation Of The Second Amendment.**

In Count IV, Plaintiffs allege that, "because Zieman has a minor under age 18 living in his residence," his core Second Amendment right is unconstitutionally burdened by MCC § 8-20-050(a), which requires firearms in the home to be secured with trigger locks or in a locked box when the owner "knows or has reason to believe that a minor under the age of 18 years is likely to gain access to the firearm or ammunition."   Defendants assume, for purposes of this motion only, that gun storage requirements fall within the scope of Second Amendment.   *See Jackson v. City and Cnty. of San Francisco*, 746 F.3d 953, 962-63 (9th Cir. 2014).   Plaintiffs' challenge to the storage requirements should nonetheless be dismissed because, accepting all allegations in the Complaint as true, they fail to allege facts that demonstrate that these requirements are impermissible under the Second Amendment.

The only appellate court to have evaluated trigger lock and lock box requirements has held them constitutional.   In *Jackson*, the Ninth Circuit evaluated a gun storage law imposed under the San Francisco Police Code "provid[ing] that: '[n]o person shall keep a handgun within a residence owned or controlled by that person unless' (1) 'the handgun is stored in a locked container or disabled with a trigger lock that has been approved by the California Department of Justice,' or (2) '[t]he handgun is carried on the person of an individual over the age of 18.'"   746 F.3d. at 958 (quoting S.F., Cal., Police Code art. 45, § 4512(a), (c)(1)).   Applying a two-step analysis similar to that set out in *Ezell*, the Ninth Circuit concluded that San Francisco's lock box and trigger lock requirements did "not substantially prevent law-abiding citizens from using firearms to defend themselves in the home," but rather restricted only the "manner" in which

---

*weapons* are commonly used for lawful purposes.") (emphasis added).   This standard has no bearing on the accessories challenged here.

they exercised that core Second Amendment right. *Id.* at 964. The restrictions allowed ready access to firearms, and left "open alternative channels for self-defense in the home, because San Franciscans are not required to secure their handguns while carrying them on their person." *Id.* For these reasons, the requirements did not substantially burden Second Amendment rights. *Id.* at 965. Applying intermediate scrutiny, the *Jackson* court then considered whether the government's interest was "substantial" and the regulations were "substantially related" to that interest." *Id.* at 965-66. The court held that the requirements survived intermediate scrutiny because they served "a significant government interest by reducing the number of gun-related injuries and deaths from having an unlocked handgun in the home," and that it was reasonable for the city to infer "that mandating that guns be kept locked when not being carried will increase public safety and reduce firearm casualties." *Id.* at 966.

Chicago's gun storage requirements are even more narrowly tailored than those upheld in *Jackson*. The San Francisco law applied to all homes, while MCC § 8-20-050(a) applies only in homes where a "person knows or has reason to believe that a minor under the age of 18 years is likely to gain access to the firearm." Furthermore, a trigger lock requirement has been cited by a court in this district as an example of a narrowly tailored regulation. *See Ill. Ass'n of Firearms Retailers*, 961 F. Supp. 2d at 945 ("[T]he City can pass more targeted ordinances aimed at making gun stores more secure—for example, by requiring that stores install . . . trigger locks."). And here, Chicago's regulation serves the substantial interest of protecting children from firearm related injuries and death caused by unsecured weapons in the home. *See* Journal of Proceedings of the Chicago City Council dated July 2, 2010, attached hereto as Exhibit 1, at 96236 (finding that over 3,000 children and teenagers are shot with firearms each year in the United States).

Plaintiffs therefore fail to plausibly allege that the trigger lock and lock box requirements in MCC § 8-20-050 violate the Second Amendment, and Count IV should be dismissed.

## V.     Kole's Second Amendment Claim For Restitution Should Be Dismissed (Count V).

In Count V, Plaintiff Kole seeks restitution on behalf of himself and a putative class for fees collected by the City pursuant to its firearm permit and registration requirements under now-repealed sections of the MCC.  Compl. ¶¶ 47-48.  Although the Complaint does not identify the challenged ordinances, the City assumes for purposes of this motion that they are MCC § 8-20-140, which required a firearm registration certificate, and § 8-20-150, which required an application fee of $15.00 to obtain a registration certificate.

Count V should be dismissed because the permit and registration requirements at issue did not violate Kole's Second Amendment rights, and he is therefore not entitled to restitution. These provisions have not, contrary to Kole's representations, been held unconstitutional, and the Complaint contains absolutely no allegations as to why these requirements violated the Second Amendment.  For this reason alone, Count V fails.  But moreover, registration permits and fees have been upheld as constitutional.  *See Kwong v. Bloomberg*, 723 F.3d 160, 168-69 (2d Cir. 2013) (holding that a $340 licensing fee "easily survives" scrutiny); *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1253-54 (D.C. Cir. 2011) (*Heller II*) (concluding that "basic registration of handguns is deeply enough rooted in our history to support the presumption that a registration requirement is constitutional"); *United States v. Marzzarella*, 614 F.3d 85, 97 (3d Cir. 2010) (upholding prohibition on possession of handgun with an obscured serial number because it served valuable government purposes, including keeping dangerous persons from obtaining weapons); *Justice v. Town of Cicero*, 827 F. Supp. 2d 835, 843-46 (N.D. Ill. 2011)

(granting motion to dismiss claim that Cicero's firearms-registration requirement and fee violated the Second Amendment).

Indeed, in *Justice v. Town of Cicero*, 577 F.3d 768, 774 (7th Cir. 2009), the Seventh Circuit remarked that registration requirements are permissible under *Heller*. On remand, considering a motion to dismiss a challenge to firearms registration requirements, the district court in *Justice* rejected the "threshold argument that a firearms registration requirement is automatically invalid." *Justice*, 827 F. Supp. 2d at 843. The court cited both *Heller II* and First Amendment jurisprudence upholding parade permits. *See id.* at 842-43. Engaging in the sliding-scale review prescribed by *Ezell*, the court then concluded that "registration requirements like the one Cicero has imposed do not severely burden the practical exercise of the right to possess firearms for self-defense," *id.* at 844, and that "[l]ogic and data . . . support the relationship of firearms registration to Cicero's goal of 'protecting the public and promoting community safety,'" *id*. at 845. The court thus held that registration requirements were permissible under the Second Amendment and granted the motion to dismiss. *Id.* at 846.

Given the general agreement among courts that permits and registration fees are constitutional, that the City's former firearm registration requirements served the substantial governmental purposes of alerting first responders to the presence of firearms in a home and protecting the public, *see* Exhibit 1 at 96237, and the absence of any allegations as to why the City's registration and fee requirements were impermissible, Count V should be dismissed.

## VI.    Kole's State Law Claim For Restitution Should Be Dismissed (Count VI).

In Count VI, Plaintiff Kole seeks restitution from the City, on behalf of himself and a putative class, based on "the foregoing and said ordinances violating the Illinois Constitution, Article I, §§ 1, 2, 4, 6, 12, 22 and 24." Compl. ¶ 52. Like Count V, this claim does not identify the provisions of the MCC at issue, but Defendants assume, based on Kole's demand for

"moneys and fees paid or collected by the City to obtain firearms permits and firearm registration," *id.* ¶ 52(2), that he seeks restitution for fees paid for firearm registration certificates under MCC §§ 8-20-140 and 8-20-150.

Kole's restitution claim fails for two reasons. First, Kole cites a string of sections of the Bill of Rights to the Illinois Constitution without explaining (in Count VI or elsewhere in the Complaint) how *any* of these sections were allegedly violated by the City's permit and registration requirements. Second, the claim fails for the same reason as Count V: firearm registration requirements are presumptively permissible, *Heller II*, 670 F.3d at 1253-54, and Kole has alleged no unconstitutional burden on his Illinois rights resulting from these provisions. The City was therefore not unjustly enriched by the permit and registration fees, and Count VI should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court dismiss Counts I-VI of Plaintiffs' Fourth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and grant Defendants such further relief as the Court deems just and appropriate.

Date: January 2, 2015

Respectfully submitted,

STEPHEN R. PATTON,
Corporation Counsel for the City of Chicago

William Macy Aguiar
David M. Baron
Ellen W. McLaughlin
City of Chicago, Department of Law
Constitutional and Commercial
  Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-7686 / 744-9018 / 742-5147

By:   /s/ William Macy Aguiar
      Senior Counsel

Attorneys for Defendants

17