**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SECOND AMENDMENT ARMS (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a SECOND AMENDMENT ARMS, ROBERT M. ZIEMAN, SR., and TONY KOLE, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No: 1:10-CV-4257 Hon. Robert M. Dow, Jr. |
| v. | ) ) | U.S. District Court Judge |
| CITY OF CHICAGO, a municipal corporation, RAHM EMANUEL, in his official capacity as Mayor of the City of Chicago, GARRY McCARTHY, Superintendent of Police of the City of Chicago, and SUSANA MENDOZA, City Clerk of the City of Chicago, | ) ) ) ) ) ) ) ) | Hon. Sheila M. Finnegan U.S. Magistrate Judge |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNTS I – VI
OF PLAINTIFFS' FOURTH AMENDED COMPLAINT**

Plaintiffs, Second Amendment Arms (a d/b/a of R. Joseph Franzese), R. Joseph Franzese, individually and d/b/a Second Amendment Arms, Robert M. Zieman, Sr., and Tony Kole, by and through undersigned counsel, and for their Response to Defendant's Motion to Dismiss Counts I through VI of Plaintiffs' Fourth Amended Complaint, state the following:

**INTRODUCTION**

After changes to Chicago's firearms laws in mid-2014 following the Northern District of Illinois's decision in *Illinois Association of Firearms Retailers v. City of Chicago*, 961 F.Supp.2d 928 (N.D.Ill. 2014), Plaintiffs filed their pending Fourth Amended Complaint. Defendant challenges all six of the Counts in said Complaint: Count I (Second Amendment rights to sell and purchase firearms), Count II (Substantive Due Process), Count III (Ban on Sale and

Possession of Laser Sighting Devices), Count IV (Storage and Trigger-Lock Requirements), and Counts V and VI (federal and state class action for restitution and unjust enrichment under the City's previous registration scheme, repealed following the Seventh Circuit's decision in *Moore v. Madigan*, 130 F.3d (2012).

## ARGUMENT

F.R.Civ.P. 12(b)(6) Standard

"[W]hen considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the Court takes the allegations in the complaint as true, viewing all facts -- as well as any inferences reasonably drawn therefrom -- in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Bell Atlantic Corp.*, 127 S.Ct. at 1955 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1 [ ] (2002)). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 127 S.Ct. at 1965. Nevertheless, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp.*, 127 S.Ct. at 1973-74 & n.14." *Manuel v. Lyles*, 2008 U.S. Dist. LEXIS 51433, 5-6 (N.D.Ill. June 30, 2008).

**Plaintiffs' claim in Count I under the Second Amendment states a cause of action.**

Count I approaches the purchase/sale discussion of firearms from both angles: Plaintiff Second Amendment Arms/Franzese seeks to vindicate the Second Amendment right to sell firearms in a retail establishment, while it also seeks the right to purchase said firearms on behalf of its customers. Plaintiffs Kole and Zieman also seek the enforce the right to purchase firearms from a retail location in the City. Because it should be considered well-settled by now that these

2

rights exist, but also because at a bare minimum the claims state a cause of action, Defendant's Motion to Dismiss Count I should be denied.

"[T]he Court has acknowledged that certain unarticulated rights are implicit in enumerated guarantees. . . fundamental rights, even though not expressly guaranteed, have been recognized by the Court as indispensable to the enjoyment of rights explicitly defined." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 579-80 (1980). While the Supreme Court has noted that "laws imposing conditions and qualifications on the commercial sale of arms" are presumably acceptable (*See Heller*, 128 S.Ct. at 2817), which Plaintiffs do not contest, it is the outright ban of the sale of arms that it unconstitutional. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Heller*, 128 S.Ct. 2781, 2821 (2008).

As far as the Founders, Thomas Jefferson said "Our citizens have always been free to make, vend, and export arms. It is the constant occupation and livelihood of some of them." Thomas Jefferson, 6 *Writings* 252-53 (P. Ford ed. 1895).[1]

There is no doubt the purchase of firearms for self-defense implicates the Second Amendment, especially after the *Ill. Ass'n of Firearms Retailers* decision. And assuming the Court employs means-ends scrutiny in its analysis, *Ezell* mandates that either strict scrutiny or near-strict scrutiny be employed, as "a severe burden on the core Second Amendment right of

---

[1] See also CURWEN, SOME CONSIDERATIONS ON THE GAME LAWS 54 (1796) ("What law forbids the veriest pauper, *if he can raise a sum sufficient for the purchase of it*, from mounting his Gun on his Chimney Piece, with which he may not only defend his Personal Property from the Ruffian, but his Personal Rights, from the invader of them& .") (emphasis added) (quoted in *Heller*, 554 U.S. at 583 n.7); Laws of Virginia, February, 1676-77, VA. STAT. AT LARGE, 2 HENING 403 (1823) ("It is ordered that all persons have hereby liberty to sell armes and ammunition to any of his majesties loyall subjects inhabiting this colony ....").

3

armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end." *Ezell*, 651 F.3d at 708.

"The right to keep arms, necessarily involves the right to purchase them . . ." *Andrews v. State*, 50 Tenn. 165, 178 (1871). Further, the Defendant's effective ban infringes on Plaintiffs' customers' right to keep and bear arms, much like Action Target, Inc.'s firing range customers were infringed by the City of Chicago' firing range ban in *Ezell* (S*ee also Dearth v. Holder*, 893 F.Supp.2d 59, 69 (D.D.C. 2012) (right to purchase firearm is a corollary to right to possess firearm for self-defense)). Defendant's argument that its gun store restrictions do not impair peoples' ability to purchase guns is disingenuous at best, and the claim that Plaintiffs do not allege facts to Defendant's desired degree of specificity is irrelevant because the gun store ban is unconstitutional on its face. "In a facial constitutional challenge, individual application facts do not matter. Once standing is established, the plaintiff's personal situation becomes irrelevant. It is enough that "[w]e have only the [statute] itself" and the "statement of basis and purpose that accompanied its promulgation." *Ezell*, 651 F.3d at 697 (citing *Reno v. Flores*, 507 U.S. 292, 300-01, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993)).

Indeed, the Seventh Circuit has already provided the framework for analyzing this issue: "Both *Heller* and *McDonald* suggest that broadly prohibitory laws restricting the core Second Amendment right—like the handgun bans at issue in those cases, which prohibited handgun possession even in the home—are categorically unconstitutional. *Heller*, 554 U.S. at 628-35 ("We know of no other enumerated constitutional right whose core protection has been subjected to a free-standing 'interest-balancing' approach.'); *McDonald*, 130 S. Ct. at 3047-48." *Ezell*, 651 F.3d at 703.

4

*Ezell* is not alone. "In order to uphold the constitutionality of a law imposing a condition on the commercial sale of firearms, a court necessarily must examine the nature and extent of the imposed condition. If there were somehow a categorical exception for these restrictions, it would follow that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*." *United States v. Marzzarella*, 614 F.3d 85, 92, fn 8 (3rd Cir. 2010).

The Defendant cites to the wrongly decided case of *Teixeira v. County of Alameda*, 2013 U.S. Dist. LEXIS 128435 (N.D.CA 2013). Though the District Court upheld a 500 foot distance from "sensitive areas" requirement for gun stores, the errors that went into that decision show why the claim in this case is valid. The plaintiffs in *Teixeira* attempted to compare their case to *Ezell*, but the Court stated: "*Ezell* is inapposite because, as the Seventh Circuit noted, '[t]he City's firing-range ban is not merely regulatory; it prohibits the law-abiding, responsible citizens of Chicago from engaging in target practice.' *Ezell*, 651 F.3d at 708. *Ezell* recognized the difference between a ban and 'laws that merely regulate rather than restrict, and modest burdens . . . may be more easily justified.' *Id*." *Teixeira*, 2013 U.S. Dist. LEXIS 128435 at 21-22. Here, like the firing range void described in *Ezell*, there are still no gun stores in the City. In *Teixeira*, the Court specifically noted there were already gun stores in Alameda County where prospective customers could exercise Second Amendment rights. *Teixeira*, 2013 U.S. Dist. LEXIS 128435 at *29. This is a crucial distinction.

Further, *Teixeira* is premised on the mistaken notion that just because people have a Second Amendment right to possess firearms, they do not have a right to buy them, and stores do not have a right to sell them. *Id.* at *20. *Teixeira* misstated the Third Circuit's holding in *Marzzarella* as having declared that there is no right to purchase handguns. As shown above,

5

*Marzzarella* came to the exact opposite conclusion. 614 F.3d at 92 n.8. Further, *Illinois Retailers* shows that the first half of that notion is incorrect, and cases such as *Mance v. Holder*, 2015 U.S. Dist. LEXIS 16679 (N.D.TX 2015) show the incorrectness of the other half. In *Mance*, cited *Marzzarella*'s holding that banning the commercial sales of firearms in unconstitutional (614 F.3d 85, 92 n.8) and held:

> Accordingly, the Court finds that operating a business that provides Second Amendment services is generally protected by the Second Amendment, and prohibitions on firearms sales are subject to similar scrutiny.

*Mance*, 2015 U.S. Dist. LEXIS at *25, fn.8.

"[R]estricting the ability to purchase an item is tantamount to restricting that item's use." *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 743 (5th Cir. 2008) (footnote omitted); *accord Carey v. Population Serv., Int'l*, 431 U.S. 678, 687-88 (1977) ("A total prohibition against the sale of contraceptives . . . would intrude upon individual decisions in matters of procreation and contraception as harshly as a direct ban on their use."). Indeed, in *Martin v. Harrington & Richardson, Inc.*, 743 F.2d 1200 (7th Cir. 1984), the Seventh Circuit confronted the issue of strict tort liability for firearms manufacturers when a criminal caused injury with a handgun. The Court said "[i]mposing liability for the sale of handguns, which would in practice drive manufacturers out of business, would produce a handgun ban by judicial fiat in the face of the decision by Illinois to allow its citizens to possess handguns." *Id.* at 1204.

But it would not be a serious argument to claim that because some "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful," *Heller*, 554 U.S. at 626-27 & n.26, all such regulations are constitutional. Some limiting

principles must apply, as the Third Circuit explained in *Marzzarella* and as was recently reinforced in *Illinois Retailers* and *Mance*.

*Teixeira* also failed to acknowledge that gun stores have no adverse secondary effects. In the adult bookstore context, for example, the stores are regulated not for their content but for adverse secondary effects. The same is true in the Second Amendment context. Contrary to Defendant's general arguments, baseless fear of speculative harm is not an adverse secondary effect. Guns are sold all over the United States, at hardware stores, sporting goods stores, Wal-Mart, and many other places. Gun stores do not pollute or otherwise degrade a neighborhood, and it is one of the few businesses where both the buyer and seller undergo stringent background checks.

Therefore, Defendant has no interest, let alone an important or substantial one, in restricting all gun stores as it does. Indeed, the governmental interest here is precisely the suppression of gun ownership as the manifestation of political fear and dislike of firearms.

Law-abiding people are severely limited in their ability to exercise their core Second Amendment right to self-defense if they are unable to purchase firearms. Likewise, said people are severely limited in their ability to exercise their fundamental Second Amendment right to train with a firearm for the purpose of acquiring and maintaining proficiency in order to be able to engage in self-defense (*See Ezell*, 651 F.3d at 704), if they are unable to purchase a firearm. Despite the Defendant's argument about the minimal effect of its restrictions, Plaintiffs are unaware of any retail firearm stores in the City, even after *Illinois Retailers* and the new ordinances purportedly allowing them.

Plaintiffs do not claim that gun stores are beyond regulation. Churches and bookstores, too, must be built to code, and comply with constitutionally-adequate zoning requirements. They

can be regulated for the adverse secondary effects of noise, pollution, traffic, etc…. But the restrictions at issue here, which have the effect of banning gun stores entirely, is beyond constitutional limitations. Under *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54 (1986), Plaintiffs must be given the reasonable opportunity to open and operate somewhere within the City limits. The Defendant's restriction fails this standard. The Motion to Dismiss this claims should be denied.

**Second Amendment Arms should be allowed to pursue its damages claim.**

Second Amendment Arms has been attempting to open a shop in Chicago, but was consistently rebuffed due to the ban, and now due to the restrictions that amount to a ban, Plaintiff has suffered injury as a result. In *Mance*, in describing the gun-seller Plaintiff's standing, the Court ruled that: "Mance was unable to consummate the sale of handguns to the Hansons because of § 922(b)(3). The loss of a sale is clearly an injury to Mance in his own right, and a distributor such as Mance also has standing to assert the rights of third parties seeking access to his goods. *Carey v. Population Servs. Int'l*, 431 U.S. 678, 682-83, 97 S. Ct. 2010, 52 L. Ed. 2d 675 (1977); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386, 188 L. Ed. 2d 392 (2014) (holding that lost sales and damage to business reputation provide standing).

"Damages in Sec. 1983 cases are designed to compensate a plaintiff for injuries caused by the constitutional deprivation at issue." *Cornelius v. La Croix*, 646 F. Supp. 1106, 1108 (E.D. Wis. 1986) (citing *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986); *Carey v. Piphus*, 435 U.S. 247, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978))). Further, "civil rights plaintiffs are not barred from an award of substantial, compensatory damages just because the monetary value of a particular injury is difficult to

ascertain." *Cornelius*, 646 F.Supp. at 1108 (citing *City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547, 1559 (7th Cir. 1986)). "Lost profits have been awarded and acknowledged as an appropriate measure of damages in section 1983 cases." *Cornelius*, 646 F. Supp. at 1109 (citing *Flores v. Pierce*, 617 F.2d 1386, 1392 (9th Cir.), *cert. denied*, 449 U.S. 875 (1980)).

Defendant argues that because there allegedly is no Second Amendment right to sell firearms, there are no damages, but Plaintiffs have already shown this right exists. In *Ezell*, in holding the plaintiff Action Target, Inc. had standing to pursue the claim against the Defendant's then-firing range ban, the Court held:

> **Action Target, as a supplier of firing-range facilities, is harmed by the firing-range ban** and is also permitted to "act[] as [an] advocate[] of the rights of third parties who seek access to" its services. *See Craig v. Boren*, 429 U.S. 190, 195, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976) (allowing beer vendor to challenge alcohol regulation based on its patrons' equal-protection rights); *see also Pierce v. Soc'y of Sisters*, 268 U.S. 510, 536, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (allowing private schools to assert parents' rights to direct the education of their children and citing "other cases where injunctions have issued to protect business enterprises against interference with the freedom of patrons or customers"); *Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 746-47 (7th Cir. 2007).

*Ezell*, 651 F.3d at 696 (boldface added).

Further, when adult-oriented businesses are unconstitutionally prohibited from opening and/or operating, it is common that they will seek damages, not on behalf of the customers whose right to view adult-oriented materials was frustrated, but for their lost profits, which is a valid injury for which to seek compensation (*See*, *e.g.*, *Clark v. City of Lakewood*, 259 F.3d 996 (9th Cir. 2001); *Young v. City of Simi Valley*, 216 F.3d 807 (9th Cir. 2000); *Doctor John's, Inc. v. City of Sioux City*, 438 F. Supp. 2d 1005 (N.D.Iowa 2006); *Schneider v. City of Ramsey*, 800 F. Supp. 815 (D.Minn. 1992)). Since Second

Amendment claims are now routinely analyzed using First Amendment-type analysis (*See, e.g.*, *Ezell*, 651 F.3d at 703), it is only proper that damages claims for constitutional violations be treated the same way.

**Plaintiffs state a cause of action for being denied the constitutional to display their products.**

"The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation. *Virginia Pharmacy Board [v. Virginia Citizens Consumer Council*, 425 U.S. 748, 761-762 (1976)]. Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information." *Central Hudson Gas & Electric Corporation v. Public Service Commission*, 447 U.S. 557, 561-562 (1980).

"'A government's restrictions on commercial speech may be no more broad or no more expansive than 'necessary' to serve its substantial interests.'" *Native Am. Arts, Inc. v. Waldron Corp.*, 2004 U.S. Dist. LEXIS 14289, 14-15 (N.D. Ill. July 22, 2004) (quoting *Virginia State Bd. of Pharmacy*, 425 U.S. at 764-766).

Because of the ordinance, Plaintiff Second Amendment Arms is forbidden from displaying its products, assuming it can open a store in the first place, which renders it nearly alone in such a restriction among commercial enterprises. This is a blatant violation of Plaintiffs' First Amendment rights, and their Fourteenth Amendment equal protection rights.

The Supreme Court has determined: "[i]n commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must

10

concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Central Hudson*, 447 U.S. at 566.

In *Central Hudson*, the State of New York passed a regulation banning promotional advertising by electrical utilities. At first it was due to an electrical shortage, but after that had passed the regulation remained in place in order to promote the conservation of energy. *Id.* at 559. The State's highest Court (N.Y. Court of Appeals) upheld the regulation but the Supreme Court reversed as the above test was not met by the State, since the advertising ban was not linked to the purported state interest. *Id.* at 599-602.

In *Ballen v. City of Redmond*, 466 F.3d 736 (9th Cir. 2006), a city ordinance banned portable signs with ten exceptions, which did not included plaintiff's advertising of his bagel store. The city claimed the purposes of traffic safety and community aesthetics. *Id.* at 740. Using the *Central Hudson* test, the Court determined the regulation was more extensive than necessary to achieve its goals, and that the regulations were not sufficiently narrowly tailored. The city had the burden of proving the ordinance was narrowly tailored. *Id.* (citing *City of Cincinnati v. Discovery Network Inc.*, 507 U.S. 410, 416 (1993) (ban on commercial handbills on newsracks where non-commercial handbills not so banned was not narrowly tailored and was unconstitutional). The *Ballen* Court noted the portable sign ban and exceptions were completely content-based, and the city failed to show how the banned content affected the stated governmental goals any more than the exempted content. *Id.* at 743.

Here, the display ban forced upon Plaintiffs fails the four part test completely. Plaintiffs' business is legal, not to mention constitutionally protected. There is nothing misleading nor

11

harmful about letting the public see firearms where it is already obvious firearms would be sold. There are no secondary effects of seeing firearms, such as claimed in adult-oriented businesses (*See*, *e.g.*, *Excalibur Group, Inc. v. City of Minneapolis*, 116 F.3d 1216, 1221 (8th Cir. 1997). Outrageously, Defendant asks the Court to dismiss this claim based on an unsupported finding from the preamble of the challenged law itself. Defendant has no substantial interest (except for those assumed or imagined) in banning Plaintiffs from promoting their business, which means the ban cannot advance the non-existent government interest, and also means the ban is much more extensive than necessary to promote the non-existent interest (*See*, *e.g.*, *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988 (7th Cir. 2002) (ordinance that restricted adult-business signage to that only stating the name of the business was not constitutionally narrowly-tailored)). Therefore, the ban in the ordinance is clearly an unconstitutional restriction upon Plaintiffs and must be struck down. Defendant's Motion to Dismiss this claim must be denied.

**Plaintiffs' Substantive Due Process claim (Count II) states a proper cause of action.**

"A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). What's more, '[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.' Fed. R. Civ. P. 8(d)(2)." *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 597 (7th Cir. 2012). This Court has noted that "two legal theories sufficiently distinct that they call for proof of substantially different facts may be separate 'claims.'" *NAACP v. American Family Mutual Insurance Company*, 978 F.2d 287, 292 (7th Cir. 1992).

Defendant argues Count II should be dismissed since Plaintiffs also plead a Second Amendment claim. If Defendant is conceding the Second Amendment applies to Plaintiffs' right to sell firearms, and that the infringement on the sale of firearms should be analyzed under the Second Amendment, then its argument may have merit. Until that time, Plaintiffs are entitled to plead in the alternative should the Court rule there is no Second Amendment right to sell firearms. Therefore, in the absence of a specific finding or stipulation that the Second Amendment protects a right to sell firearms, and since Defendant has raised no other objection to the cause of action, Count II should not be dismissed.

Further, Plaintiff Franzese alleges he has a due process right to his lawful livelihood of choice, which is thwarted by the effective ban on opening a constitutionally-protected firearms store within the City limits. This is not abstract, and absent the ability to actually open a store, there is no point to obtaining a perfectly useless business license, as if that were the only thing holding Franzese up from opening his shop. That Defendant argues otherwise is meritless.

"A right is fundamental if it is 'sufficiently basic to the livelihood of the Nation.'" *McBurney v. Cuccinelli*, 780 F.Supp.2d 439, 447 (E.D. Va. 2011) (quoting *Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371, 388 (1978)) "The Supreme Court of the United States has held that certain rights are fundamental, including the rights to: (1) practice a trade or profession, . . ." *McBurney*, 780 F.Supp.2d at 447 (citing *Toomer v. Witsell*, 334 U.S. 385, 403 (1948)). "The right to pursue a lawful calling has long been recognized as a fundamental right . . . ." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 95 (2d Cir. 2003). This dates back more than one hundred years. *See Allgeyer v. Louisiana,* 165 U.S. 578, 589 (1897) ("The 'liberty' mentioned in [the Fourteenth Amendment] . . . is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to

live and work where he will; [and] to earn his livelihood by any lawful calling; to pursue any livelihood or avocation . . . ").

In addition, as noted above, Plaintiffs maintain there are fundamental rights to purchase, and therefore commensurately to sell, firearms. Therefore, in either case Plaintiff has properly alleged that Defendant's ordinance unconstitutionally restricts (and effectively bans) Plaintiffs' and others' fundamental rights.

The Motion to Dismiss Count II must be denied.

**<u>Laser sighting devices are protected by the Second Amendment and cannot be prohibited.</u>**

Defendant filed an Answer to this claim in Plaintiffs' Third Amended Complaint (Dkt. #126, pp.24-25). Now, the Defendant has changed tack and is arguing that the identical allegations no longer state a claim. Defendant is taking the position that an accessory that makes one more accurate when needing to fire a gun in self-defense is a bad thing, and has banned them. Plaintiff Second Amendment Arms wishes to sell laser sights, and Plaintiffs Kole and Zieman wish to purchase and possess them. The question of the ban's constitutionality certainly should merit discovery and should not be dismissed on a 12(b)(6) Motion. Further, even at worst the Defendant will not be able to articulate a rational basis reason for enacting the ban, as none was offered in Defendant's Motion.

Sighting devices have been used on handguns and rifles for hundreds of years; only the technology has changed. Virtually all firearms include fixed iron sights, or little notches on the front and/or rear of the top of the forearm for aiming. Telescopic sights were invented between 1835 and 1840 by John Chapman and Morgan James. John R. Chapman, *The Improved American Rifle* (1844). The standard telescopic sights used during the Civil War were made by William Malcolm of Syracuse, NY in 1855 (http://www.scopesguide.com/malcolm-scope.html),

14

and L.M. Amidon of Vermont. The first effective and practical refracting telescopic sight was invented by August Fiedler, then the forestry commissioner in Austria (http://www.shotmade.com/history-of-long-range-shooting-telescopic-sights/)

Laser sights are simply a modern technological improvement to something that has been aiding the aim of shooters since colonial times, and certainly since the time of the ratification of the Fourteenth Amendment.

In *United States v. Jones*, 132 S.Ct.945 (2012), the Supreme Court confronted the issue of whether placing a GPS tracking device on a vehicle for the police to track constituted a search under the Fourth Amendment. In ruling that it was a search, notwithstanding the fact that GPS devices obviously did not exist at the time of the framers, the Court looked to eighteenth century analogues for the GPS device:

> But in fact it posits a situation that is not far afield--a constable's concealing himself in the target's coach in order to track its movements. *Ibid*. There is no doubt that the information gained by that trespassory activity would be the product of an unlawful search--whether that information consisted of the conversations occurring in the coach, or of the destinations to which the coach traveled.

*Jones*, 132 S.Ct. at 950, fn.3.

This acknowledgement by the Supreme Court that the law must sometimes catch up with technology comports with the holding in *Heller* that weapons in common use are constitutionally protected (as opposed to only muskets) (*See Heller*, 554 U.S. at 627 (citing *United States v. Miller*, 307 U.S. 174, 179 (1939)) while the First Amendment protects many more forms of communication than quill pens and town criers.

There is no reason, compelling, substantial, or otherwise, to ban something that can better help a City resident in the effort of self-defense. At a minimum, there is no reason Second

Amendment Arms cannot stock them to sell to non-Chicago residents, though that of course raises Fourteenth Amendment Equal Protection Clause concerns. In any circumstance, the Motion to dismiss Count III should be denied.

**<u>The storage and trigger lock requirements defeat the core Second Amendment purpose and must be struck down.</u>**

The Court has already addressed this issue, at least at this exact same stage of the litigation, and determined that Zieman states a cause of action (*See* Dkt. #86 at p.14). And while the City cites to *Jackson v. City and Cnty. of San Francisco*, 746 F.3d 953, 962-63 (9th Cir. 2014) to argue its restrictions are valid, the City (and the Ninth Circuit in *Jackson*) ignore that the restrictions upheld in *Jackson* are virtually identical to those struck down in *Heller*. This is why the plaintiffs filed a pending Petition for *Certiorari* (14-704), and why the Attorneys General of twenty-five states filed an *amicus* brief on January 7, 2015 supporting the petitioners (*See* attached). In fact, the *Jackson* decision is so at odds with not just the reasoning of *Heller*, but also *Heller's* explicit holding (while self-defense is at the core of the right, *Heller* articulated that the right is most acute in the home), and therefore cannot be relied upon as even persuasive authority.

Instead, this Court should follow *Heller*, and hold these infringements on the core Second Amendment right, when viewed under the lens of strict scrutiny, do not meet the required burden. Despite the Defendant's paternalistic viewpoint that city residents with minors in their house are apparently incapable of responsibly storing firearms, the Defendant will not be able to offer any reason approaching compelling why those persons are less-deserving of the Second Amendment freedom of having an operable firearm immediately available for self-defense. But just like the District's unconstitutional law, the challenged restrictions forces a resident, with a

16

family to protect, no less, should an emergency arise in the dark of night, to first "turn on the lamp next to [his] bed," "pick up [his] reading glasses," and hope to recall and successfully enter the code in order to gain access to an operable firearm. Tr. of Oral Argument at 83-84, *Heller*, 554 U.S. 570 (No. 07-290). When split seconds count, it is not cliché to point out this could mean the difference between life and death.

Further, the Court's speculation about trigger locks on [firearm] merchandise in gun stores in *Illinois Retailers* is so obviously different from a trigger lock requirement on operable firearms used for self-defense in the home that Plaintiffs should not need to dwell on the subject. One goes to the core of the Second Amendment right (self-defense, most notably in defense of hearth and home) and one is a commercial regulation.

In light of the above, Count IV states a cause of action, and the Defendant's Motion to Dismiss Count IV should be denied.

**The Plaintiffs should be given the opportunity to prove the City's prior registration scheme unconstitutional, and thus subject to compensatory damages.**

That the registration scheme was repealed after the Defendant collected large sums of money, but before the matter of its constitutionality could be adjudicated, does not mean the scheme was constitutional. In *Justice v. Town of Cicero*, 827 F.Supp.2d 835 (2011), the Court noted that a firearms-registration requirement is not automatically valid. *Id.* at 842. Therefore, while the Defendant's prior scheme may not be unconstitutional merely because of its existence as a regulation (*Id.*), Plaintiffs should have the opportunity to show that this particular registration scheme was unconstitutional, just as part of it was already declared unconstitutional in *Ezell*, 651 F.3d at 710 (firing range training requirement while banning firing ranges within City limits was unconstitutional).

Further, that other Circuit Courts besides the Seventh Circuit have upheld registration schemes does not mean that is law in our Circuit. Even in *Heller II*, in ruling the handgun registration scheme of Washington, D.C. was longstanding and presumed constitutional because "the basic requirement to register a handgun is longstanding in American law, accepted for a century in diverse states and cities and now applicable to more than one fourth of the Nation by population." (*Heller v. District of Columbia*, 670 F.3d 1244, 1254 (D.C. Cir. 2011) (*Heller II)*. However, the Court in *Mance*, in rejecting this reasoning, held that:

> While two-hundred years from now, restrictions from 1909 may seem longstanding, looking back only to 1909, today, omits more than half of America's history and belies the purpose of the inquiry. *See Heller*, 554 U.S. at 634-35 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad."); *Peruta v. Cnty. of San Diego*, 742 F.3d 1144, 1175 n.21 (9th Cir. 2014) (*Heller* and *McDonald* made clear "the scope of the Second Amendment right depends not on post-twentieth century developments, but instead on the understanding of the right that predominated from the time of ratification through the nineteenth century.")

*Mance*, 2015 U.S. Dist. LEXIS 16679 at *18-19.

In Chicago, gun registration was required only since 1968, when Mayor Richard J. Daley set up the City's gun registry. This is hardly long-standing, and no presumption ought to be given to it. Absent evidence that gun registration schemes have been in place since 1791, they should not be deemed "presumptively lawful" under the Second Amendment. In short, Plaintiffs should have the opportunity to prove their claim as to this particular registration scheme, and the Motion to dismiss should be denied.

## **CONCLUSION**

In light of the above, Plaintiffs request this Honorable Court to deny Defendant's Motion in its entirety, and order Defendant to answer the subject Counts of Plaintiffs' Fourth Amended

Complaint within a time certain. Plaintiffs also request any and all further relief as this Court deems just and proper.

Dated: March 3, 2015                    Respectfully submitted,

                                        By:     /s/ David G. Sigale
                                                Attorney for Plaintiff

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

## CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

1. On March 3, 2015, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

2. Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

                                                             /s/ David G. Sigale
                                                                 Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547/Fax 630.596.4445
dsigale@sigalelaw.com