No. 14-704

### In The
# Supreme Court of the United States

————————◆————————

ESPANOLA JACKSON; PAUL COLVIN;
THOMAS BOYER; LARRY BARSETTI; DAVID GOLDEN;
NOEMI MARGARET ROBINSON; NATIONAL RIFLE
ASSOCIATION OF AMERICA, INC.; SAN FRANCISCO
VETERAN POLICE OFFICERS ASSOCIATION,

*Petitioners,*

v.

CITY AND COUNTY OF SAN FRANCISCO;
EDWIN M. LEE, MAYOR FOR THE CITY AND
COUNTY OF SAN FRANCISCO; GREG SUHR,
SAN FRANCISCO POLICE CHIEF,

*Respondents.*

————————◆————————

**On Petition For A Writ Of Certiorari
To The United States Court Of Appeals
For The Ninth Circuit**

————————◆————————

**BRIEF OF THE STATES OF NEBRASKA,
ET AL., AS *AMICI CURIAE* IN SUPPORT
OF THE PETITIONERS**

————————◆————————

JON BRUNING
Nebraska Attorney General
KATHERINE J. SPOHN
Deputy Attorney General
RYAN S. POST
Assistant Attorney General
*Counsel of Record*
2115 State Capitol Building
P.O. Box 98920
Lincoln, NE 68509
Tel.: (402) 471-2682
Fax: (402) 471-3297
katie.spohn@nebraska.gov
ryan.post@nebraska.gov
*Attorneys for Amici Curiae*

January 2015

[Additional States Listed On Inside Cover]

## Attorneys General of *Amici Curiae* States

LUTHER STRANGE
State of Alabama

CRAIG W. RICHARDS
State of Alaska

MARK BRNOVICH
State of Arizona

DUSTIN MCDANIEL
State of Arkansas

PAM BONDI
State of Florida

SAMUEL S. OLENS
State of Georgia

LAWRENCE G. WASDEN
State of Idaho

GREGORY F. ZOELLER
State of Indiana

DEREK SCHMIDT
State of Kansas

JACK CONWAY
State of Kentucky

JAMES D. "BUDDY" CALDWELL
State of Louisiana

BILL SCHUETTE
State of Michigan

LORI SWANSON
State of Minnesota

CHRIS KOSTER
State of Missouri

TIMOTHY C. FOX
State of Montana

ADAM PAUL LAXALT
State of Nevada

WAYNE STENEHJEM
State of North Dakota

E. SCOTT PRUITT
State of Oklahoma

ALAN WILSON
State of South Carolina

MARTY J. JACKLEY
State of South Dakota

KEN PAXTON
State of Texas

SEAN D. REYES
State of Utah

PATRICK MORRISEY
State of West Virginia

BRAD D. SCHIMEL
State of Wisconsin

PETER K. MICHAEL
State of Wyoming

i

## QUESTION PRESENTED

Is San Francisco's attempt to deprive law-abiding individuals of immediate access to operable handguns in their own homes any more constitutional than the District of Columbia's invalidated effort to do the same?

ii

## TABLE OF CONTENTS

Page

QUESTION PRESENTED.................................... i

TABLE OF CONTENTS ...................................... ii

TABLE OF AUTHORITIES................................. iii

INTEREST OF *AMICI CURIAE* ......................... 1

SUMMARY OF ARGUMENT ............................. 2

ARGUMENT....................................................... 3

    I.   San Francisco's Locked Storage Requirement Does Not Differ From The Law In *Heller* In Any Material Way And Does Not Pass Any Level Of Scrutiny ....... 4

    II.  Even Under Intermediate Scrutiny, The Ordinance Is Not Tailored To Achieve The Public Safety Purposes Advanced By San Francisco.................................................... 8

CONCLUSION.................................................... 11

iii

## TABLE OF AUTHORITIES

Page

CASES

*Board of Trustees of State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989)....................................................8

*District of Columbia v. Heller*, 554 U.S. 570
(2008)..............................................................*passim*

*Jackson v. City & County of San Francisco*, 746
F.3d 953 (9th Cir. 2014) ................................5, 6, 7, 9

*McCutcheon v. FEC*, 134 S. Ct. 1434 (2014)...............8

*McDonald v. City of Chicago*, 561 U.S. 742
(2010)..........................................................2, 3, 6, 7

*Perry Educ. Ass'n v. Perry Local Educators'
Ass'n*, 460 U.S. 37 (1983) ..........................................7

*United States v. Chovan*, 735 F.3d 1127 (9th
Cir. 2013) ..................................................................9


CONSTITUTION

U.S. Const., Amendment II ...............................*passim*

U.S. Const., Amendment XIV ......................................7


STATUTES AND ORDINANCES

D.C. Code § 7-2507.02 .................................................4

S.F., Cal., Police Code art. 45, § 4511........................10

S.F., Cal., Police Code art. 45, § 4512 ....................5, 6

## INTEREST OF *AMICI CURIAE*[1]

The States of Nebraska, Alabama, Alaska, Arizona, Arkansas, Florida, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Michigan, Minnesota, Missouri, Montana, Nevada, North Dakota, Oklahoma, South Carolina, South Dakota, Texas, Utah, West Virginia, Wisconsin, and Wyoming file this brief in support of petitioners. The *Amici* States have a profound interest in protecting the fundamental constitutional rights of their citizens. Among these fundamental rights is the Second Amendment right to keep and bear arms. The *Amici* States believe that the fundamental rights of their citizens and others should receive the highest protection, particularly when the right of law-abiding citizens to possess operable firearms essential to self-defense within their own home is directly infringed. Unless the Court grants review, the law in the Ninth Circuit will remain that law-abiding, responsible citizens will be unable to possess operable firearms in defense of hearth and home. A decision that such a law passes constitutional muster would undermine the core right protected by the Second Amendment.

———————◆———————

---

[1] Counsel of record for all parties received notice, at least ten days prior to the due date of this brief, of *Amici*'s intention to file.

## SUMMARY OF ARGUMENT

San Francisco passed an ordinance which, among other things, requires that firearms be stored in a locked container, or with a trigger lock, at all times inside the home, except when the owner of the home is actually carrying the firearm on his or her person. This requirement to keep the firearm inoperable exists even if you are sleeping or bathing or the sole occupant of your home.

This ordinance violates the right to keep and bear arms protected by the Second Amendment to the United States Constitution. The Second Amendment protects an individual's right to weapons typically possessed by law-abiding, responsible citizens for lawful purposes. As this Court confirmed in *Heller*, "citizens must be permitted 'to use [handguns] for the core lawful purpose of self-defense.'" *McDonald v. City of Chicago*, 561 U.S. 742, 768 (2010), quoting *District of Columbia v. Heller*, 554 U.S. 570, 630 (2008).

San Francisco's locked storage requirement violates this protection and should be analyzed under strict scrutiny, if the Court must apply any level of scrutiny here. But even under the Ninth Circuit's application of intermediate scrutiny, the ordinance cannot pass constitutional muster. The ordinance is similar to the law the Supreme Court in *Heller* found to be invalid and San Francisco has failed to ensure the ordinance is tailored to advance its stated interests. San Francisco relies only on speculative assertions,

which this Court has made clear do not satisfy either strict or intermediate scrutiny.

———————◆———————

## ARGUMENT

The Ninth Circuit upheld San Francisco's locked storage requirement, despite this Court's confirmation in *Heller* that "citizens must be permitted 'to use [handguns] for the core lawful purpose of self-defense.'" *McDonald v. City of Chicago*, 561 U.S. 742, 768 (2010), quoting *District of Columbia v. Heller*, 554 U.S. 570, 630 (2008).

The Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). Indeed, "individual self-defense is 'the *central component*' of the Second Amendment right." *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010). And because it is a right "fundamental to *our* scheme of ordered liberty," it applies equally to states and municipalities. *Id*. at 767 (emphasis in original).

San Francisco's locked storage requirement is substantially similar to the law the Supreme Court in *Heller* found to be invalid. Such blatant infringement on *Amici* State citizens' rights warrants review by this Court.

## I. San Francisco's Locked Storage Requirement Does Not Differ From The Law In *Heller* In Any Material Way And Does Not Pass Any Level Of Scrutiny.

Under this Court's precedent, San Francisco's ordinance must be stricken because its restrictions extend to possession of a firearm by a law-abiding, responsible citizen for self-defense in the home.

At its core, the Second Amendment protects the right to keep a "lawful firearm in the home operable for the purpose of immediate self-defense," and the ordinance makes it impractical, if not impossible, for a law-abiding citizen to exercise his or her right. *Heller,* 554 U.S. at 635.

San Francisco's locked storage requirement and the District of Columbia's unconstitutional law are nearly indistinguishable. The unconstitutional District of Columbia law in *Heller* provided that:

> Except for law enforcement personnel . . . , each registrant shall keep any firearm in his possession unloaded and disassembled or bound by a trigger lock or similar device unless such firearm is kept at his place of business, or while being used for lawful recreational purposes within the District of Columbia.

D.C. Code § 7-2507.02. San Francisco's ordinance provides that:

> No person shall keep a handgun within a residence owned or controlled by that person

unless the handgun is stored in a locked container or disabled with a trigger lock that has been approved by the California Department of Justice.

. . .

This Section shall not apply in the following circumstances:

(1)   The handgun is carried on the person of an individual over the age of 18.

(2)   The handgun is under the control of a person who is a peace officer under Penal Code Section 830.

S.F., Cal., Police Code art. 45, § 4512(a), (c).

Faced with strikingly similar firearm prohibitions, the Ninth Circuit found the San Francisco ordinance "burdens the core of the Second Amendment right," yet somehow found the ordinance does not impose a severe burden. *Jackson v. City & County of San Francisco*, 746 F.3d 953, 964 (9th Cir. 2014).

The Ninth Circuit did correctly find that the ordinance "constitutes a flat prohibition on keeping unsecured handguns in the home," which "burdens rights protected by the Second Amendment." *Id.* at 962-63. But then the Ninth Circuit attempted to distinguish *Heller* in a way that is quite simply inaccurate:

Section 4512 does not impose the sort of severe burden imposed by the handgun ban at issue in *Heller* that rendered it unconstitutional. Unlike the challenged regulation in

*Heller*, section 4512 does not substantially prevent law-abiding citizens from using firearms to defend themselves in the home. Rather, section 4512 regulates how San Franciscans must store their handguns when not carrying them on their persons.

*Id.* at 964. This view defies logic and disregards *Heller*, which confirmed "citizens must be permitted 'to use [handguns] for the core lawful purpose of self-defense.'" *McDonald v. City of Chicago*, 561 U.S. 742, 768 (2010), quoting *District of Columbia v. Heller*, 554 U.S. 570, 630 (2008). This is particularly true where, in an emergency, every second counts.

The court reasoned that "a modern gun safe may be opened quickly. Thus, even when a handgun is secured, it may be readily accessed in case of an emergency." *Jackson*, 746 F.3d at 964. However, the court failed to consider that modern gun safes have a variety of available locking mechanisms. Such mechanisms include keys, combination dials, digital keypads, access codes, fingerprint readers, etc.

Common sense dictates that in high stress, emergency situations, the ease and speed with which a person can utilize one of these mechanisms to unlock a safe drastically decreases. It is common to fumble with keys while trying to hurriedly unlock a door, to forget a series of numbers when under pressure, or to struggle with hand-eye coordination when subjected to stressors. These scenarios are amplified when faced with a life or death, self-defense situation.

This same logic also applies to trigger locks, some of which require a handgun to be unloaded before the lock can properly be installed. These types of trigger locks create an added burden – not only does the lock make it difficult to access the firearm in an emergency, but once the lock is removed the user must then load it, causing further delay.

In an emergency, where every second counts, the Ninth Circuit would have potential victims fumbling, likely in the dark, for keys and/or access codes specifically designed to prevent immediate access. For the Ninth Circuit, a delay of, at minimum, a few seconds means nothing, *Jackson*, 746 F.3d at 966; for the potential victim, a few seconds could mean everything.

This Court has not explained precisely which standard of scrutiny applies to laws that burden the Second Amendment right to bear arms, although it has rejected the rational basis standard in this context. *Amici* States submit strict scrutiny, if the Court must apply any level of scrutiny here, is appropriate because the ordinance extends to possession of firearms by law-abiding citizens for immediate self-defense *in the home*. As this Court recognized, "it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *McDonald*, 561 U.S. at 778. If the Second Amendment does indeed protect a fundamental right, then, strict scrutiny applies when government action infringes upon that right. *Perry*

*Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983).

Because San Francisco's locked storage requirement cannot be distinguished from *Heller* in any material way, review by this Court is warranted to protect *Amici* State citizens' fundamental Second Amendment rights. The Ninth Circuit incorrectly applied intermediate scrutiny to an ordinance impacting self-defense in the home. Thus, certiorari should be granted.

## II. Even Under Intermediate Scrutiny, The Ordinance Is Not Tailored To Achieve The Public Safety Purposes Advanced By San Francisco.

Even under intermediate scrutiny, the ordinance is not tailored to achieve the public safety purposes advanced by San Francisco. Even when not applying strict scrutiny, this Court still requires restrictions to employ "not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective." *McCutcheon v. FEC*, 134 S. Ct. 1434, 1456-57 (2014), quoting *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989). A near blanket prohibition on operable firearms within one's own home can hardly be described as narrow.

As part of the Ninth Circuit's attempt to justify its decision, the court states that the ordinance:

> leaves open alternative channels for self-defense in the home, because San Franciscans

are not required to secure their handguns
while carrying them on their person. Provid-
ed San Franciscans comply with the storage
requirements, they are free to use handguns
to defend their home while carrying them on
their person.

*Jackson,* 746 F.3d at 964. Under this supposed tailor-
ing, it is a crime to set down an unlocked firearm for
even a moment. This presumably includes any time it
may take to retrieve a trigger lock to affix to the
firearm or to open a gun safe.

Recognizing that there are clearly times when it
is not only impractical, but impossible to carry a
firearm on your person while in the home, the court
attempts to minimize those situations by saying that
the ordinance "burdens only the 'manner in which
persons may exercise their Second Amendment
rights.'" *Id.* at 963, quoting *United States v. Chovan*,
735 F.3d 1127, 1138 (9th Cir. 2013).

Obviously, not only is carrying a firearm in the
shower or bathtub impractical, doing so could render
the firearm inoperable or destroy the ammunition,
thereby preventing its use in self-defense. Equally
absurd is the idea that carrying a firearm on your
person while sleeping is merely impractical. To do so
would be potentially unsafe for the person carrying
the firearm as well as others in the vicinity, as there
would exist a real possibility of an accidental dis-
charge. It is also impractical, if not impossible, to
carry a firearm on your person while engaging in any
number of household activities or chores, i.e., cleaning

house, holding a child, cooking, changing diapers, making home repairs, etc. Not only would carrying a firearm under such circumstances be impractical, such a requirement is irresponsible and could be dangerous to gun owners as well. But pursuant to the ordinance, failure to carry the firearm or lock it in these circumstances could subject the person to criminal penalties.

The reality is that the ordinance substantially restricts the rights of law-abiding citizens to defend themselves in a constitutional manner. Logic dictates that there are situations in which a citizen cannot or should not carry a firearm on their person, even within their own home. Some of those situations, i.e., sleeping, are when people are most susceptible to an attacker. As a result, the ordinance unconstitutionally prohibits law-abiding citizens from defending themselves when they are most vulnerable.

Finally, San Francisco claims this ordinance is, in part, designed as a deterrent to firearm theft. S.F., Cal., Police Code art. 45, § 4511(2)(d). However, most trigger locks don't secure the firearm to another object and trigger locks do not immunize firearm theft since the firearm can be taken to another location and the lock removed at the thief's leisure. It does not even appear the Ninth Circuit considered this possibility.

Here, San Francisco's broad speculation about the benefits of its chosen policy does not overcome its failure to attempt to tailor its near blanket prohibition. "The enshrinement of constitutional rights[,

such as the Second Amendment,] necessarily takes certain policy choices off the table." *Heller,* 554 U.S. at 636. The ordinance is not tailored to fit the government's interest, and it imposes a substantial burden on the right to self-defense.

———————◆———————

## CONCLUSION

*Amici* States respectfully request this Court grant certiorari.

Respectfully submitted,

JON BRUNING
Nebraska Attorney General
KATHERINE J. SPOHN
Deputy Attorney General
RYAN S. POST
Assistant Attorney General
*Counsel of Record*
2115 State Capitol Building
P.O. Box 98920
Lincoln, NE 68509
Tel.: (402) 471-2682
Fax: (402) 471-3297
katie.spohn@nebraska.gov
ryan.post@nebraska.gov
*Attorneys for Amici Curiae*

January 2015