**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SECOND AMENDMENT ARMS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-CV-4257** |
| | ) | **Judge Robert M. Dow, Jr.** |
| **CITY OF CHICAGO, et al.,** | ) | **Magistrate Judge Sheila M. Finnegan** |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
COUNTS I-VI OF PLAINTIFFS' FOURTH AMENDED COMPLAINT**

Defendants City of Chicago (the "City"), Mayor Rahm Emanuel, Superintendent of Police Garry McCarthy, and City Clerk Susana Mendoza (collectively, "Defendants"), by their counsel, Stephen R. Patton, Corporation Counsel of the City of Chicago, hereby file this reply in support of their motion to dismiss Counts I-VI of the Fourth Amended Complaint ("Complaint" or "Compl.") filed by Plaintiffs Second Amendment Arms ("SAA"), R. Joseph Franzese, Robert M. Zieman, and Tony Kole (collectively, "Plaintiffs").

**INTRODUCTION**

In their Response to Defendants' Motion to Dismiss Counts I-VI of Plaintiffs' Fourth Amended Complaint ("Response" or "Resp."), Plaintiffs fail to show that Counts I-VI state plausible claims. With respect to Plaintiffs' challenge in Count I to the City's zoning of gun stores, Plaintiffs ignore Defendants' argument that they do not allege any facts demonstrating that the zoning regulations violate the Second Amendment or impose any burden on the right to acquire a firearm in Chicago. They likewise fail to address a Supreme Court case that precludes their First Amendment challenge in Count I to the City's ordinance prohibiting the display of firearms in store windows. And in none of the cases Plaintiffs cite in response to Defendants'

motion to dismiss SAA's claim in Count I for lost profits based on the City's prior ban on gun stores did the court address whether gun stores could recoup lost profits for a purported Second Amendment violation, much less rule that such damages were available.

Plaintiffs' defense of their substantive due process claim in Count II fares no better, as Plaintiffs fail to demonstrate that Plaintiff Franzese has a constitutionally protected interest in a firearms business license. Count III, in which Plaintiffs challenge the City's prohibition on laser sight accessories, fails to state a claim because the Supreme Court has held that the Second Amendment governs only weapons, not accessories. Plaintiffs again decline to address the merits of Defendants' arguments in their Response, choosing instead to describe the history of such accessories and inexplicably criticizing Defendants for not offering governmental rationales supporting the prohibition on laser sight accessories even though such rationales are irrelevant to Defendants' argument. With respect to Count IV, which is Plaintiffs' challenge to the City's storage requirements for guns in homes with minors, Plaintiffs fail to show how those regulations run afoul of the Second Amendment or to distinguish Ninth Circuit law which upheld a more stringent storage requirement against a Second Amendment challenge. Finally, Plaintiffs still fail to provide anything more than conclusory allegations in support of their claims in Counts V and VI challenging the now-repealed firearm permit and registration requirements, which have never been held unconstitutional.

For these reasons, set forth more fully below and in Defendants' Memorandum in Support of their Motion to Dismiss Counts I-VI ("Memorandum" or "Mem."), this Court should dismiss Counts I-VI pursuant to Rule 12(b)(6).

**ARGUMENT**

I.      **Count I Fails To State A Claim.**

      A.      **The City's Zoning of Firearms Retailers Is Not an "Effective Ban."**

In Count I, Plaintiffs allege that three sections of the Municipal Code of Chicago ("MCC") governing zoning of firearms dealers, MCC §§ 4-144-750, 17-3-0207, and 17-4-0207, violate the Second Amendment because they "effectively prohibit gun stores from opening and operating" in Chicago. Compl. ¶ 20. Defendants showed in their Memorandum that Plaintiffs' allegations are conclusory and that Plaintiffs plead no facts whatsoever demonstrating that the City's zoning requirements for gun stores violate the Second Amendment. *See* Mem. at 4. Moreover, Defendants showed that Plaintiffs fail to allege any actual burden on the right to acquire firearms resulting from the zoning regulations. *See id.* And Defendants pointed out that Plaintiffs do not allege that SAA, or any other Plaintiff, has even attempted to secure a retail location or apply for a permit to open a gun store under the new zoning provisions. *See id.*

In their Response, Plaintiffs fail to substantively address any of Defendants' arguments. They maintain instead that an "outright ban of the sales of arms" is unconstitutional, Resp. at 3, and that the City's "effective ban" is "unconstitutional on its face," *id.* at 4. At the outset, the City does not ban gun stores. Indeed, the City's Weapons Dealer Ordinance, MCC § 4-144-700 *et seq.*, explicitly contemplates that weapons dealer licenses will be issued to qualified applicants, and the City's Zoning Ordinance expressly permits gun stores to locate in the City. *Id.* § 17-4-0207. Thus, Plaintiffs' suggestion that the City has imposed a ban on gun stores is belied by the plain language of the City's ordinances and therefore lacks any merit.

With respect to Plaintiffs' claim that the City's zoning regulations amount to an effective ban on gun stores, Defendants contended that the Complaint lacks any factual basis for them to

make such a claim. *See* Mem. at 4. In their Response, Plaintiffs offer no argument other than to assert that they do not need to allege any facts concerning the zoning provision's actual effects on a would-be retailer's ability to open a gun store "because the gun store ban is unconstitutional on its face." Resp. at 4. But, as discussed above, the City does not ban gun stores; to the contrary, it expressly allows them to operate in Chicago. Moreover, Plaintiffs contradict their own position. For example, they admit that they cannot "claim that gun stores are beyond regulation," *id.* at 7, and that, to evaluate "a law imposing a condition on the commercial sale of firearms, a court necessarily must examine the nature and extent of the imposed condition." *Id.* at 5 (quoting *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3rd Cir. 2010)). Despite these statements, Plaintiffs offer no facts to support their claim that the City's zoning ordinance effectively amounts to a ban on gun stores.[1] At bottom, Plaintiffs' conclusory allegations are simply insufficient to state a claim that is plausible on its face.

Finally, Plaintiffs improperly devote considerable space in their Response arguing the merits of their claim. For example, they contend that gun stores have no adverse secondary effects and that the City has no substantial interest in regulating them.[2] *See* Resp. at 4-7. Plaintiffs are putting the cart before the horse, however. Their arguments are for another day, as Defendants contend in their motion that Plaintiffs are first obligated to plead sufficient facts demonstrating that the City's zoning regulations effectively prohibit gun stores from opening

---

[1] The sole fact Plaintiffs plead is that, as of the date of their Response, gun stores have yet to open in the City. But the amendments to the zoning ordinance allowing gun stores are recent, and there is no allegation in the Complaint that any Plaintiff—or any other applicant—has attempted to secure a gun store permit and failed to do so. Moreover, there are myriad reasons why a gun store has yet to locate in the City that have nothing to do with the zoning requirements, such as financing.

[2] In particular, Plaintiffs explain at length why they believe *Teixeira v. County of Alameda*, No. 12-cv-3288-WHO, 2013 WL 4804756 (N.D. Cal. Sept. 9, 2013), was wrongly decided. But *Teixeira* is directly on point in that the district court dismissed a challenge to 500 foot buffer between gun stores and "sensitive areas."

before the Court conducts any evaluation of the merits of the City's zoning regulations.[3] Because Plaintiffs have not satisfied the pleading threshold, Count I does not state a claim that is plausible on its face and should be dismissed.

**B.** **Plaintiffs Have No First Amendment Right to Display Firearms in Windows.**

Plaintiffs also challenge MCC § 4-144-790(g), which prohibits a gun store from displaying "firearms or ammunition in any window," alleging that this regulation violates the First Amendment. As demonstrated by Defendants in their Memorandum, this claim fails because section 4-144-790(g) allows Plaintiffs to display guns and ammunition for sale in a variety of other ways, including by posting pictures of firearms in store windows and showcasing actual firearms in secure display cases in the store. The ordinance clearly does not, as Plaintiffs claim, forbid a retailer "from displaying its products," Resp. at 10, or "ban[] Plaintiffs from promoting their business," *id.* at 12.

A similar restriction on the display of a highly regulated product was upheld by the Supreme Court in *Lorillard Tobacco Company v. Reilly*, 533 U.S. 525, 556 (2001). As Defendants explained in their Memorandum, the Supreme Court held in *Lorillard* that Massachusetts could prohibit open displays of tobacco products because tobacco retailers "have other means of exercising any cognizable speech interest in the presentation of their products." *Id.* at 569-70. Despite Defendants' reliance on *Lorillard*, Plaintiffs do not even mention—much less distinguish—the case in their Response. Plaintiffs also do not address Defendants' argument that displaying guns in store windows can promote theft, despite proliferating news reports of

---

[3] Defendants dispute Plaintiffs' merits arguments and will address them should the claim proceed to the next stage of litigation.

"smash and grab" robberies of valuables, including firearms, in window displays.[4]  Given the City's substantial interest in reducing opportunities for the theft of firearms and ammunition, and the many alternative avenues available for retailers to convey information about firearms to would-be customers other than by placing firearms and ammunition in store windows, Plaintiffs cannot reasonably allege that section 4-144-790(g) fails the test set out in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980).  *See* Mem. at 6.  Plaintiffs' First Amendment claim in Count I should therefore be dismissed.

### C.    SAA Is Not Entitled to Lost Profits Allegedly Caused by the City's Previous Gun Store Regulations.

Plaintiffs' final claim in Count I is that SAA is entitled to lost profits resulting from the City's previous ban on gun stores.  Compl. ¶¶ 22, 33.  Defendants explained in their Memorandum that lost profits for gun sales are not a compensable Second Amendment injury because the holders of Second Amendment Rights are *individuals*, not gun retailers such as SAA. *See Dist. of Columbia v. Heller*, 554 U.S. 570, 581, 592 (2008).

In their Response, Plaintiffs confuse SAA's *standing* to bring suit to vindicate an alleged infringement on the rights of its customers with its right to compensation for a constitutional deprivation.  They cite a Texas district court case, *Mance v. Holder*, __ F. Supp. 3d ___, 2015 WL 567302 (N.D. Tex. Feb. 11, 2015), for the proposition that a loss of sales is an injury sufficient to permit recovery of damages.  *See* Resp. at 8.  But their reliance on *Mance* is misplaced. There, the court concluded that a firearm distributor had *standing* to challenge the

---

[4] *See, e.g.*, "Police recover guns and arrest 5 teens after 'smash and grab' incident," Dec. 8, 2014, at http://fox59.com/2014/12/08/police-recover-guns-and-arrest-5-teens-after-smash-and-grab-incident/; "Smash-and-grab thieves get away with dozens of guns," Nov. 9, 2012, at http://www.cbs46.com/story/19809553/smash-and-grab-theives-get-away-with-dozens-of-guns; "Gun shop loses $70K in goods after smash-and-grab," Jan. 26, 2014, at http://www.wsbtv.com/news/news/local/gun-shop-loses-70k-merchandise-after-smash-and-gra/nc3Xd/; "Smash and grab:  Police search for suspects in Gun Theft," Sept. 8, 2014, at http://fox8.com/2014/09/08/smash-and-grab-police-search-for-suspects-in-gun-theft/.

federal interstate handgun transfer ban, but it did not address whether the distributor was entitled to damages because it sought only injunctive and declaratory relief. *See Mance*, 2015 WL 567302, at *2, *5. *Mance* therefore provides no support for SAA's claim to entitlement to lost profits. The same is true for Plaintiffs' reliance on *Ezell v. City of Chicago*, which held that a firing-range supplier could claim an injury resulting from the City's firing-range ban sufficient to establish standing. 651 F.3d 684, 696 (7th Cir. 2011). Like the plaintiffs in *Mance*, however, the supplier in *Ezell* sought injunctive relief, not damages, and the Seventh Circuit therefore never addressed whether the supplier could recover damages. *Id.* at 690.

These cases recognize that standing is available when the rights of third parties—in this case, SAA's would-be customers—are "inextricably bound up with the activity the litigant wishes to pursue," so as to make the litigant "as effective a proponent of the right" as the third party. *Singleton v. Wulff*, 428 U.S. 106, 114 (1976). When the litigant seeks declaratory or injunctive relief on behalf of third parties, the injuries suffered by those third parties may be redressed by such relief. In contrast, damages for SAA's lost sales would provide no redress for the alleged Second Amendment injuries suffered by its potential customers. And while Plaintiffs argue that adult-oriented businesses may seek lost profits for a First Amendment injury, Resp. at 9, their argument fails to appreciate a key distinction between the scope of First and Second Amendment rights. Whereas Second Amendment rights are held by individuals, adult-oriented businesses engage in "speech" and enjoy their own First Amendment rights. *See, e.g.*, *Annex Books, Inc. v. City of Indianapolis*, 581 F.3d 460, 463 (7th Cir. 2009) (explaining that defendant needed to "justify any curtailment of speech" by adult bookstores). For these reasons, SAA's lost profits claim should be dismissed.

## II.     Count II Does Not State A Substantive Due Process Claim.

Plaintiffs' attempts to save their substantive due process claim in Count II from dismissal likewise fail.  At the outset, Plaintiffs do not specify in either their Complaint or their Response which provisions of the City's firearms ordinance they purport to challenge in Count II, and the claim should be dismissed for that reason alone.  *See* Fed. R. Civ. P. 8(a)(2).  Even assuming Plaintiffs mean to contest the three provisions challenged in Count I—MCC §§ 4-144-750, 17-3-0207, and 17-4-0207—Plaintiffs' substantive due process claim still fails.

Count II is premised on Plaintiff Franzese's purported interests in a firearm business license and in pursuing his preferred livelihood by opening a firearms store.  But as Defendants explained in their Memorandum, his interests, as pled, are nothing more than general, abstract expectations that do not amount to a constitutionally protected interest to which due process attaches.  *See* Mem. at 10-11.  Indeed, Plaintiffs allege no facts suggesting that Franzese meets the criteria needed to obtain a firearms business license from the City or that he has even attempted to apply for a license.  *See id.* Plaintiffs appear to concede this point in their Response. *See* Resp. at 13 ("[T]here is no point to obtaining a perfectly useless business license, as if that were the only thing holding Franzese up from opening his shop.").  Moreover, rather than address Defendants' argument that Plaintiffs' conclusory allegations are insufficient to state a claim, Plaintiffs simply reiterate their refrain that the City's ordinance constitutes an "effective ban" on firearms stores.  *Id.* at 13-14.  Count II fails for this reason as well.

But even assuming that Franzese has a constitutionally protected interest in his purported right to a firearms business license or to pursue his chosen occupation of operating a firearms store, those interests must be evaluated according to the specific constitutional provisions that implicate them, not the "generalized notion of substantive due process."  *See Turner v. City of*

*Chicago*, 2013 WL 4052607, at *5 (N.D. Ill. Aug. 12, 2013). Although Defendants cite controlling cases affirming this rule, *see, e.g.*, *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Doe v. Heck*, 327 F.3d 492, 519 n.23 (7th Cir. 2003), Plaintiffs do not address them in their Response. Plaintiffs instead cite cases that do not address alleged violations of substantive due process and more specific constitutional provisions. For example, in *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594 (7th Cir. 2012), the court stated that a plaintiff may plead alternative *facts* in a complaint—in that case, facts that an individual actually knew of a fraud or was negligently unaware of the fraud, and in *N.A.A.C.P. v. American Family Mutual Insurance Company*, 978 F.2d 287 (7th Cir. 1992), the court considered the concurrent pleading of claims under state and federal anti-discrimination statutes. Thus, Plaintiffs' cases identify the general principle that a plaintiff may plead alternative theories of recovery in a complaint, but they do not address the specific rule that a substantive due process claim cannot lie when a more precise constitutional provision provides the appropriate rubric of analysis. *See McKinley v. Murphy*, 1992 WL 209368, at *2, 974 F.2d 1340, 1340 (7th Cir. 1992) (where a plaintiff challenges governmental action under both a specific constitutional provision and the substantive due process clause, the issue is "subsumed by the [claim under the constitutional provision] and [the plaintiff therefore cannot] state a claim of substantive due process"). For these reasons, Count II fails to state a claim and should be dismissed.

### III. Count III Fails Because Laser Sight Accessories Are Not Protected By The Second Amendment.

As Defendants argued in their Memorandum, Plaintiffs' challenge in Count III to the City's prohibition on laser sight accessories fails because laser sight devices are accessories, not weapons, and they therefore do not implicate the Second Amendment's guarantee of the right "to possess and carry *weapons*." *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis

added); Mem. at 11-12.  Plaintiffs do not argue in their Response that laser sight accessories are, in fact, weapons or that they should even be considered weapons.  *See* Resp. at 14-15.  To the contrary, they concede that such devices are merely "*used on* handguns and rifles."  Resp. at 14 (emphasis added).  Because laser sight accessories are not weapons, they are outside the scope of the Second Amendment, and "the analysis can stop there."  *Ezell*, 651 F.3d at 703.

Rather than address the substance of Defendants' argument, Plaintiffs choose instead to describe the history of these accessories and their technological predecessors.  *See* Resp. at 14-15.  Plaintiffs' discussion of the historical use of sighting accessories is irrelevant.  Defendants do not contest for purposes of this Motion that the Second Amendment protects modern versions of early American firearms, but again, this principle applies to weapons, not supplemental accessories like those at issue here.  And although a court may consider whether law-abiding citizens have typically possessed a particular weapon to determine whether it falls within the Second Amendment's ambit, that inquiry does not apply to accessories.  *See Heller*, 554 U.S. at 627 (("[T]he sorts of *weapons* protected were those 'in common use at the time.'") (emphasis added)).  Plaintiffs offer no authority to suggest otherwise.

Finally, Plaintiffs again attempt to distract the Court by asserting that Defendants failed to assert any justification for its prohibition on laser sighting devices in its Memorandum.  *See* Resp. at 14.  Defendants, however, only argued that accessories are outside the scope of the Second Amendment, and that argument does not require the Court to examine the rationales supporting the City's ordinance.  Because Plaintiffs' argument is irrelevant to the question posed by Defendants' motion, the Court should disregard it.

For these reasons, Count III fails to state a claim and should be dismissed.

**IV.     Count IV Fails To State A Claim**.

In Count IV, Plaintiffs challenge MCC § 8-20-050, which establishes firearm storage requirements for homes where minor children are likely to gain access to the firearm. Defendants contended that, accepting all of Plaintiffs' allegations as true, Count IV should be dismissed because the storage requirements do not violate the Second Amendment, given that the requirements allow ready access to firearms in the home and that the City has a substantial interest in preventing unintentional child gun deaths.  *See* Mem. at 13-14.  Defendants' position is fully supported by the Ninth Circuit's decision in *Jackson v. City and County of San Francisco*, 746 F.3d 953, 962-63 (9th Cir. 2014), which upheld even more restrictive storage requirements under intermediate scrutiny.  *See* Mem. at 13-14.

In their Response, Plaintiffs conflate the storage requirements addressed in *Jackson* with the ban on handguns in the home invalidated in *Heller*, arguing that *Heller* controls the Court's analysis here.  But the restrictions upheld in *Jackson*—and those established by MCC § 8-20-050—are entirely distinguishable from the regulations addressed in *Heller*.  The District of Columbia law challenged in *Heller* imposed a complete ban on handgun possession in the home and further required "that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable."  554 U.S. at 628.  The Supreme Court concluded that "the District's requirement . . . that firearms in the home be rendered and kept inoperable at all times . . . makes it impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional."  *Id.* at 630.  The Court noted that the statute contained no exception for self-defense and that it forbade "residents to use firearms to stop intruders."  *Id.*  In contrast, the City's storage requirements, like the regulations upheld in *Jackson*, explicitly allow guns in homes with minors to be unsecured when carried by or physically secured on a person.

*See* MCC § 8-20-050(a)(1). The City thus permits firearms to be carried in the home and used for self-defense.

Plaintiffs also dismiss as "paternalistic" the City's interest in preventing the obvious risk of unintentional injuries and deaths of children caused by unsafe storage practices within the home. They offer no real argument, however, that this interest is not compelling. As *Jackson* is directly on point and does not conflict with *Heller*, this Court should follow the Ninth Circuit's persuasive reasoning, conclude that the City's storage requirements are permissible under the Second Amendment, and dismiss Count IV.

## V.     Counts V And VI Fail To State A Claim.

Counts V and VI seek restitution for Kole and a putative class of all citizens who paid registration fees under the City's firearm permit and registration requirements, MCC §§ 8-20-140 and -150, which have since been repealed. Count V contends that the requirements violated the Second Amendment, while Count VI claims that they violated Illinois law.

As Defendants explained in their Memorandum, Count V fails because the permit and registration requirements in question have never been held unconstitutional, similar requirements have regularly been upheld against Second Amendment challenges, and Plaintiffs offer no facts whatsoever to support their claim that these requirements violated the Second Amendment. *See* Mem. at 15-16. In response, Plaintiffs add nothing more to support their claim that the permit and registration requirement were invalid. They argue that they "should have the opportunity to show that this particular registration scheme was unconstitutional," Resp. at 17, without even offering a theory to explain *why* the registration requirements were allegedly unconstitutional. And the only case cited in Plaintiffs' Response that addressed firearm registration requirements, *Justice v. Town of Cicero*, rejected a similar bare-bones challenge to a registration requirement

on a motion to dismiss.  *See* 827 F. Supp. 2d 835, 846 (N.D. Ill. 2011) ("Justice does not contend in his complaint or his response brief that Cicero's registration requirement serves no valid purpose or that it fails in its goals.").  As Plaintiffs fail to allege a plausible claim that the City's previous permit and registration requirements were unconstitutional, Count V should be dismissed.

As to Count VI, Plaintiffs fail to respond to Defendants' argument that Plaintiffs have not explained how any provision of the Illinois Constitution was violated by the registration requirements.  They have thus abandoned their claim in Count VI.  *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court.  We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.") (citations omitted).  Plaintiffs' failure to respond to a Rule 12(b)(6) motion that gives plausible reasons for dismissal is sufficient grounds for granting the motion.  *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("In effect the plaintiff was defaulted for refusing to respond to the motion to dismiss.  And rightly so.").  Count VI should therefore be dismissed as well.

## CONCLUSION

For the foregoing reasons, and those stated in Defendants' Memorandum, Defendants respectfully request that this Court dismiss Counts I-VI of Plaintiffs' Fourth Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and grant Defendants such further relief as the Court deems just and proper.

Date: April 6, 2015              Respectfully submitted,


STEPHEN R. PATTON,
Corporation Counsel for the City of Chicago

By:    William Macy Aguiar
       Senior Counsel

William Macy Aguiar
David M. Baron
Ellen W. McLaughlin
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-7686 / 744-9018 / 742-5147

Attorneys for Defendants