**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SECOND AMENDMENT ARMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 10-CV-4257 |
| | ) | Judge Robert M. Dow, Jr. |
| CITY OF CHICAGO, et al., | ) | Magistrate Judge Sheila M. Finnegan |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR LEAVE TO CITE ADDITIONAL AUTHORITY
IN SUPPORT OF THEIR MOTION TO DISMISS
COUNTS I-VI OF PLAINTIFFS' FOURTH AMENDED COMPLAINT**

Defendants City of Chicago (the "City"), Mayor Rahm Emanuel, Superintendent of Police Garry McCarthy, and City Clerk Susana Mendoza (collectively, "Defendants"), by their counsel, Stephen R. Patton, Corporation Counsel of the City of Chicago, respectfully move this Court for leave to cite the Seventh Circuit's recent decision in *Friedman v. City of Highland Park*, __ F.3d __, 2015 WL 1883498 (7th Cir. Apr. 27, 2015), attached hereto, as additional authority in support of their Motion to Dismiss Counts I-VI of Plaintiffs' Fourth Amended Complaint. In support of this motion, Defendants state as follows:

1. Plaintiffs' Fourth Amended Complaint raises various Second Amendment challenges to the City's regulation of firearms, including challenges to the City's zoning of gun stores, restriction on the display of firearms in store windows, restriction on the sale or possession of laser sight accessories, storage requirements for firearms in homes with minor children, and now-repealed firearm registration requirements.

2. Defendants filed a motion to dismiss Counts I-VI of the Fourth Amended Complaint on January 8, 2015. The motion was fully briefed on April 6, 2015. In their motion,

Defendants argue, *inter alia*, that the City's regulations are permissible under the Second Amendment because they serve substantial government interests in preserving public safety and reducing firearms-related injuries and fatalities and because they leave open ample alternative channels for self-defense.

3. On April 27, 2015, the Seventh Circuit issued the *Friedman* decision, which rejected a Second Amendment challenge to the City of Highland Park's ban on the possession of assault weapons and large-capacity magazines.

4. *Friedman* makes it clear that, under the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010), local governments retain broad authority to regulate firearm possession and use, even inside the home. As Judge Easterbrook explained:

> *Heller* and *McDonald* set limits on the regulation of firearms; but within those limits, they leave matters open. The best way to evaluate the relation among assault weapons, crime, and self-defense is through the political process and scholarly debate, not by parsing ambiguous passages in the Supreme Court's opinions. The central role of representative democracy is no less part of the Constitution than is the Second Amendment: when there is no definitive constitutional rule, matters are left to the legislative process.

2015 WL 1883498, at *6. The Seventh Circuit warned against readings of *Heller* that "go beyond the scope of *Heller*'s holding that 'the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense.'" *Id.* at *3 (quoting *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc)).

5. In upholding Highland Park's prohibition of particular types of firearms and magazines, the Seventh Circuit explained that the city "leaves residents with many self-defense options" aside from the prohibited weapons. *Id.* at *4. Further, the court emphasized that even

2

if the prohibition did not actually reduce gun violence, it could nonetheless "make[] the public feel safer," which was in itself a "substantial benefit" of the regulation. *Id.* at *5.

6. The reasoning of *Friedman* is directly applicable to the case at hand. First, the opinion undermines Plaintiffs' contentions that the City's regulations are "categorically unconstitutional" under *Heller*. *See* Pls.' Resp. to Mot. to Dismiss at 4 (Dkt. No. 169). It strongly supports Defendants' arguments that the City's regulations survive Second Amendment scrutiny because they serve the City's substantial interests and preserve options for armed self-defense.

7. Second, and more specifically, *Friedman* demonstrates that the Second Amendment does not prohibit the City from requiring safe storage practices for firearms in homes with minor children, regulations Plaintiffs challenge in Count IV. As Defendants demonstrated in their motion to dismiss, these gun storage requirements serve a substantial interest in protecting children. And under *Friedman*, even the public perception that the regulations will promote safety constitutes a substantial benefit. *See* 2015 WL 1883498, at *5. The requirements also clearly allow "many self-defense options," *id.* at *4, such as carrying a firearm on one's person. Under *Friedman*, the City's firearm storage requirements fall comfortably within the scope of regulations a municipality may permissibly enact.

8. Third, *Friedman* likewise undercuts Plaintiffs' challenge to the City's prohibition on laser sight accessories in Count III. As Defendants previously explained, such accessories are not "weapons" at all and therefore enjoy no Second Amendment protection. *See* Defs.' Mem. in Support of Mot. to Dismiss at 11-12 (Dkt. No. 160). And *Friedman* makes clear that, even if considered a weapon or an important feature of a weapon, a laser sight is not protected. The Seventh Circuit explained that the relevant inquiry is "whether a regulation bans weapons that

3

were common at the time of ratification or those that have 'some reasonable relationship to the preservation or efficiency of a well regulated militia,' . . . and whether law-abiding citizens retain adequate means of self-defense." 2015 WL 1883498, at *3 (internal citation omitted). The City's prohibition on laser sight accessories satisfies this analysis. Like the "features" prohibited by Highland Park's ordinance, such as barrel shrouds and muzzle brakes, laser sights "were not common in 1791." *See id.* at *4. Further, even if laser sights could be said to bear a relation to the "effectiveness of state militias," state and local governments retain the authority to "decide when civilians can possess military-grade firearms." *Id.* And finally, like Highland Park's ban on weapons having certain features, the City's prohibition on laser sights "leaves residents with many self-defense options," such as "most long guns plus pistols and revolvers." *Id.* In short, if a city may lawfully prohibit firearms bearing features such as a pistol grip without a stock; a folding, telescoping, or thumbhole stock; a grip for the non-trigger hand; a barrel shroud; or a muzzle brake (as did Highland Park's assault weapon ban), so too may a city prohibit a laser sight accessory.

**WHEREFORE**, for the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Leave to Cite Additional Authority in Support of Their Motion to Dismiss Counts I-VI of Plaintiffs' Fourth Amended Complaint.

Date: May 14, 2015

Respectfully submitted,

William Macy Aguiar
David M. Baron
Ellen W. McLaughlin
City of Chicago, Department of Law
Constitutional and Commercial
  Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-7686 / 744-9018 / 742-5147

STEPHEN R. PATTON,
Corporation Counsel for the City of Chicago

By: /s/ Ellen McLaughlin
      Assistant Corporation Counsel