**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SECOND AMENDMENT ARMS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10 CV 4257** |
| | ) | **Hon. Robert M. Dow, Jr.** |
| **CITY OF CHICAGO, et al.,** | ) | |
| **Defendants.** | ) | |

### DEFENDANTS' ANSWER TO PLAINTIFFS' FOURTH AMENDED COMPLAINT

Defendants City of Chicago, Mayor Rahm Emanuel, Acting Superintendent of Police John J. Escalante, and City Clerk Susana Mendoza, by their attorney, Stephen R. Patton, Corporation Counsel for the City of Chicago, hereby submit their answer to Plaintiffs' Fourth Amended Complaint.

### INTRODUCTION

1. In this action Plaintiffs bring their claims against the Defendant seeking the recovery of their lost profits and damages, as well as equitable, declaratory, and other relief under, *inter alia*, 42 U.S. §1983, 42 U.S.C. § 1988, *et. seq.*, the Second Fifth and Fourteenth Amendments to the United States Constitution, and the Illinois Constitution, as the result of various sections of the Municipal Code of Chicago, as well as the Chicago Zoning Ordinance. The complained of laws deprive Plaintiffs of their constitutional rights to keep, bear and sell arms for lawful purposes including self-defense, as well as directly causing Plaintiffs to suffer monetary damages. Additionally, Plaintiffs seek restitution for infringements of their rights stemming from the wrongful enforcement of, and penalties for, previous unconstitutional City ordinances.

**Answer:** Defendants admit that Plaintiffs have sued Defendants for "recovery of their lost profits and damages, as well as equitable, declaratory, and other relief under, *inter alia*, 42 U.S. §1983, 42 U.S.C. § 1988, *et seq.*, the Second Fifth and Fourteenth Amendments to the United States Constitution, and the Illinois Constitution, as the result of various sections of the Municipal Code of Chicago, as well as the Chicago Zoning Ordinance." Defendants further

admit that Plaintiffs "seek restitution for infringements of their rights stemming from the wrongful enforcement of, and penalties for, previous unconstitutional City ordinances." Defendants deny the remaining allegations contained in Paragraph 1 and deny any liability for any claims asserted by Plaintiffs in their Fourth Amended Complaint.

## THE PARTIES

2.      R. Joseph Franzese, individually and d/b/a Second Amendment Arms (hereinafter "Franzese" or collectively as "Second Amendment Arms"), is a citizen of the United States who resides and does business as Second Amendment Arms in Lake Villa, Illinois, as a firearms dealer pursuant to a federal firearms license ("FFL").

**Answer:**  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2.

3.      Plaintiff Robert M. Zieman, Sr. (hereinafter "Zieman") is a citizen of the United States, and a life-long resident and long-time employee of the City of Chicago.  He also has a minor child who lives in his residence.  He is an honorably discharged veteran of the United States Marine Corps, who is extensively trained and experienced in the safety and use of various firearms, including but not limited to side-arms, and has also been trained and designated by the Marine Corps in special weapons safety and usage.

**Answer:**  Defendants admit that Zieman is a former employee of the City.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3.

4.      Plaintiff Kole (hereinafter "Kole") is a natural person and a citizen of the United States residing in Chicago, Illinois.  Kole currently owns and possesses several firearms at his Chicago residence, pursuant to a Chicago firearms permit ("CFP") and firearm registration certificates ("FRC") for which has paid the City of Chicago's required fees.  He also is the President, Manager, and sole owner of Ghost Industries LLC, which is a federally licensed firearms dealer with its principal place of business in Norridge, Illinois.  At all times relevant Kole possessed a valid State of Illinois Firearms Owner Identification Card (the 'FOID Card") and is trained and experienced in the safety and use of various firearms or ammunition products.

**Answer:**  Defendants admit that Kole obtained a CFP from the City and registered several firearms with the City, both of which required Kole to pay a fee.  Further answering, Defendants state that neither a CFP nor a City-issued firearm registration certificate are currently

required to possess a firearm in Chicago. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4.

5.       Defendant City of Chicago (hereinafter "City") is a municipal entity organized under the Constitution and laws of the State of Illinois.

**Answer:** Defendants admit the allegations contained in Paragraph 5.

6.       Defendant Rahm Emanuel (hereinafter "Emanuel") is the City's Mayor and as such is responsible for executing, and administering its laws, customs, practices, and policies. In that capacity, he also presently enforces the laws, customs, practices and policies complained of in this action. He is sued in official capacity as Mayor.

**Answer:** Defendants admit that Rahm Emanuel is the Mayor of the City of Chicago, is responsible for enforcement of its laws, and has all other powers granted to him by the State of Illinois and the Chicago City Council. Defendants admit that Plaintiffs purport to sue Mayor Emanuel in his official capacity but deny, pursuant to the Court's Memorandum Opinion and Order dated September 25, 2012, that Plaintiffs can sue Mayor Emanuel in his official capacity for the claims brought pursuant to 42 U.S.C. § 1983. Defendants deny the remaining allegations contained in Paragraph 6.

7.       Defendant Garry McCarthy ("McCarthy") is the City's Superintendent of Police, and as such is responsible for executing, and administering its law, customs, practices, and policies. In that capacity, he also presently enforces the laws, customs, practices and policies complained of in this action. Among other duties, he was and/or is responsible for administering the now-defunct firearms registration and permitting system in the City, and enforcing previous and current City ordinances relating to possession, sale, transfer, transportation, and carrying of firearms. He is sued in his official capacity as Superintendent.

**Answer:** Defendants deny that Garry McCarthy is the City of Chicago's Superintendent of Police. Defendants admit that former Superintendent McCarthy previously administered the City's firearms registration and permitting system and that such system was repealed by the City Council. Defendants admit that Plaintiffs purport to sue the Superintendent of Police in his official capacity but deny, pursuant to the Court's Memorandum Opinion and Order dated

September 25, 2012, that Plaintiffs can sue the Superintendent in his official capacity for the claims brought pursuant to 42 U.S.C. § 1983. Defendants deny the remaining allegations contained in Paragraph 7.

8. Defendant Susana Mendoza (hereinafter "Mendoza") is the City's Clerk, and as such is responsible for executing, and administering its laws, customs, practices, and policies. In that capacity, she is responsible for the issuance of business licenses and enforcing the laws, customs, practices and policies complained of in this action is connection therewith. She is sued in her official capacity as City Clerk.

**Answer:** Defendants admit that Susana Mendoza is the Clerk of the City of Chicago and that she is responsible for enforcement of its laws, and has all other powers granted to her by the City of Chicago. Defendants admit that Plaintiffs purport to sue Mendoza in her official capacity but deny, pursuant to the Court's Memorandum Opinion and Order dated September 25, 2012, that Plaintiffs can sue Mendoza in her official capacity for the claims brought pursuant to 42 U.S.C. § 1983. Defendants deny the remaining allegations contained in Paragraph 8.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983. The Court has jurisdiction over pendant state law claims pursuant to 28 U.S.C. § 1367.

**Answer:** Defendants admit that this Court has jurisdiction over Plaintiffs' federal constitutional claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4), but Defendants deny that 28 U.S.C. §§ 2201 and 2202 confer jurisdiction. Defendants admit that Plaintiffs ask this Court to exercise jurisdiction over their claims under Illinois law pursuant to 28 U.S.C. § 1367 but deny that the exercise of jurisdiction is appropriate.

10. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

**Answer:** Defendants admit the allegations contained in Paragraph 10.

## STATEMENT OF FACTS

11.     On or about March 19, 1982, the City enacted an ordinance that banned possession of handguns within its municipal limits, and imposed restrictive requirements on firearms ownership, possession, and use within the City ("Old Gun Ban Ordinance").

**Answer:** Defendants admit that on or about March 19, 1982, the City enacted an ordinance that, with certain enumerated exceptions, banned possession of handguns within the City and imposed other requirements on firearms ownership, possession, and use within the City. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegation that the aforementioned ordinance imposed "restrictive requirements," as that phrase is too subjective to frame a response.  To the extent an answer is required, Defendants deny the allegation.

12.     Owing to certain Supreme Court decisions, the Chicago City Council passed a revised ordinance on July 2, 2010 ( the "New Gun Ban Ordinance"), which removed the ban on possessing handguns in City residents' homes, and replaced the ban with a number of restrictions and requirements for home firearms possession.

**Answer:** Defendants admit that on July 2, 2010, the Chicago City Council passed an ordinance that repealed the prior ban on handgun possession in the home but regulated handgun possession in the home.  Defendants deny the remaining allegations contained in Paragraph 12.

13.     More specifically, the New Gun Ban Ordinance, which became effective on July 12, 2010, removed the complete ban on possession of handguns, but limited possession to one operable firearm, and only in the home.  It also imposed or continued numerous restrictions that severely burdens/burdened or eliminates/eliminated the Second Amendment rights of law-abiding City residents to acquire, own, possess, transport, and transfer firearms and associated lawful products, such as laser sight accessories, within the City.

**Answer:** Defendants admit that the ordinance passed by the Chicago City Council on July 2, 2010 became effective on July 12, 2010.  Defendants admit that the July 2, 2010 ordinance repealed the prior ban on handgun possession in the home.  Defendants admit that the July 2, 2010 ordinance allowed Chicago residents to possess handguns in the home but deny that

5

the ordinance limited Chicago residents to the possession of only one handgun in the home.

Defendants admit that although the July 2, 2010 ordinance did not limit the number of handguns

a Chicago resident could possess in the home, the ordinance provided that only one handgun per

qualified user, as defined in the ordinance, could be operable at a given time. Further answering,

Defendants state that MCC § 8-20-40, which provided that Chicago residents could keep no

more than one firearm in the home assembled and operable, was repealed by the Chicago City

Council on September 11, 2013. Defendants admit that the July 2, 2010 ordinance contained

firearm regulations but deny that such regulations burdened law-abiding citizens' Second

Amendment rights. Defendants deny the remaining allegations contained in Paragraph 13.

14. The New Gun Ban Ordinance prohibited the operation of any firearm stores or dealers in the City. Section 4-144-010 of the Municipal Code of Chicago (MCC §4-144-010) required that any person who engages in the business of selling certain weapons, including any "deadly weapon which can be carried or concealed on the person," which would include any ordinary firearm, must obtain a "weapons dealer license." Under the prior version of MCC § 4-144-010, a person who obtained a weapons dealer license could sell firearms. Title 4, Businesses, Occupations and Consumer Protection, Chapter 4-144, Weapons (the "Weapons Dealer Ordinance"). Under the revised § 4-144-010, it is unlawful for persons licensed as weapons dealers to "engage in the business of selling, or to sell, give away or otherwise transfer, any firearm..." Thus, it was impossible to sell firearms at wholesale or retail in the City.

**Answer:** Defendants admit that MCC § 4-144-010 formerly stated that "[i]t shall be

unlawful for any person to engage in the business of selling, or to sell, give away, or otherwise

transfer, any . . . deadly weapon which can be carried or concealed on the person, or any

ammunition, as that term is defined in Section 8-20-010, without securing a weapons dealer

license." Defendants admit that MCC § 4-144-010 also formerly stated that "[i]t shall be

unlawful for any person licensed under this chapter to engage in the business of selling, or to

sell, give away or otherwise transfer, any firearm as that term is defined in Section 8-20-010."

Further answering, Defendants state that MCC § 4-144-010 was amended by the Chicago City

Council on September 11, 2013 to provide that "[i]t shall be unlawful for any person to engage in

6

the business of selling or otherwise transferring any ammunition without securing a weapons

dealer license to do so," and again in 2014 to state currently that "[i]t shall be unlawful for any

person to engage in the business of selling or otherwise transferring, at retail, any stun gun or

taser without securing a weapons dealer-stun gun dealer license to do so." Defendants deny the

remaining allegations contained in Paragraph 14.

15.    Furthermore, MCC § 8-20-100 provides that "no firearm may be sold, acquired or otherwise transferred within the City, except through inheritance of the firearm." There were exceptions for transfers to police officers, which much [sic] take place at police department facilities, and for officers to sell firearms to each other. MCC § 8-20-100(e); MCC § 2-84-075. There were also limited exceptions involving licenses and patrons of licensed shooting range facilities while on the premises (*See* MCC § 4-151-070), but they are not applicable to this suit. In short, MCC § 8-20-010 operated as a ban on gun stores, but also operated to ban all sales, acquisitions, and transfers of firearms between law-abiding citizens outside of commercial channels as well.

**Answer:** Defendants admit that MCC § 8-20-100(a) formerly provided that "[e]xcept as

authorized by section 2-84-075, nor firearm may be sold, acquired or otherwise transferred

within the city, except through inheritance of the firearm." Defendants admit that MCC § 8-20-

100(c) formerly stated that "[n]otwithstanding subsection (a), a peace officer may sell or transfer

any lawfully held firearm or ammunition to another peace officer in accordance with the other

provisions of this chapter." Further answering, Defendants state that MCC §§ 8-20-100(a) and

(c) were repealed by the City Council and that MCC § 8-20-100 currently provides that "[n]o

firearm shall be sold or otherwise transferred by any person at a gun show. For purposes of this

subsection, 'gun show' means a temporary exhibit or gathering where firearms or ammunition

are sold, leased, otherwise transferred."

Defendants admit that MCC § 2-84-075 states that "[n]otwithstanding any other

provision of this code to the contrary, the superintendent [of police] may authorize the sale of

firearms or ammunition by a person issued a federal firearms license to a member of the police

department, if that member is authorized to carry such firearm or ammunition. Such sales shall be conducted at department of police facilities." Defendants admit that MCC § 4-151-070(a) states that "[a] licensee, manager, ranger master or employee [of a shooting range facility] may supply a firearm to a shooting range patron for the purpose of practicing shooting at targets at the shooting range; provided that no firearm shall be provided to a shooting range patron if the shooting range patron does not have a valid FOID card or valid CCL, if required to have one." Further answering, Defendants state that MCC § 4-151-170(b) permits the sale of firearms and ammunition at a shooting range facility as set forth in the ordinance. Defendants deny the remaining allegations contained in Paragraph 15.

16. Taken together, these provisions operated as a complete ban on gun stores within the City, as a complete ban on firearms dealers operating within the City; and as a complete ban on the sale, gift, purchase, acquisition, or other transfer of any firearm by any person with the City (except to police or by inheritance, or for limited use in licensed shooting range facilities). In short, firearms could not legally be sold or obtained within City.

**Answer:** Defendants admit that MCC § 8-20-100(a) formerly banned the sale, acquisition, or transfer of firearms in the City, unless through inheritance or as provided in MCC §§ 2-84-075, 8-20-100(c), 8-20-100(d), or 4-151-170. Defendants deny the remaining allegations contained in Paragraph 16.

17. It was not apparent whether City's zoning ordinance specifically allowed or forbade gun stores, except that "the sale of firearms or ammunition" was (and still is) forbidden as a "home occupation" pursuant to § 17-9-0202-C(11)(q). On information and belief, City will not have issued a zoning permit for any use it deems may violate the City's penal ordinances, including MCC § 8-20-100.

**Answer:** Defendants admit that MCC § 17-9-0202-C(11)(q) prohibits "the sale of firearms or ammunition" as a "home occupation." Defendants deny that the City issues zoning permits and deny the remaining allegations contained in Paragraph 17.

18. MCC § 8-20-060(a) made, and still makes, it "unlawful for any person to carry, possess, display for sale, or otherwise transfer any laser sight accessory...." Laser sight

accessory is defined by MCC § 8-20-010 to mean "a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm." Laser sight accessories are declared contraband, and "shall be seized and forfeited to the city" pursuant to MCC § 8-20-060(c). The owner of record of any vehicle containing a laser sight accessory is subject to a penalty of $2,000.00-3,000.00 plus towing and storage fees, and the vehicle is subject to seizure and impoundment. *See* MCC § 8-20-070.

**Answer:** Defendants admit that MCC § 8-20-060(a) makes it "unlawful for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory . . . ." Defendants further admit that MCC § 8-20-010 defines "laser sight accessory" as "a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm," that MCC § 8-20-060(c) provides that any laser sight accessory "carried, possessed, displayed or sold in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city," and that MCC § 8-20-070 provides that a vehicle containing a laser sight accessory "shall be subject to seizure and impoundment" and that the owner of record of the vehicle "shall be liable to the city for an administrative penalty of $2,000 plus any [applicable] towing and storage fees." Defendants deny the remaining allegations in Paragraph 18.

19. In January, 2014, the City's ban on gun sales was struck down as unconstitutional by Judge Chang in *Illinois Association of Firearms Retailers v. City of Chicago*, 1:10-CV-4184 (N.D. Ill. 2014). In response, the City amended its Ordinances that banned gun stores and now allows them under certain conditions. A copy of the July, 2014, Ordinance is attached hereto as Exhibit "A."

**Answer**: Defendants admit that on January 14, 2014, Judge Edmond Chang of the United States District Court for the Northern District of Illinois ruled that MCC § 8-20-100(a) and MCC § 17-16-0201, to the extent that they prohibited the construction and operation of businesses engaged in the sale of firearms, violated the Second Amendment. Defendants admit that in July, 2014, the Chicago City Council enacted an ordinance which, *inter alia*, allows gun stores to operate in Chicago. Defendants further admit that Plaintiffs have attached as Exhibit A

to their Fourth Amended Complaint a copy of the July, 2014 ordinance. Defendants deny the remaining allegations contained in Paragraph 19.

20.     The July 2014 Ordinance purports to allow gun stores to open and operate in the City, but a variety of its sections work effectively to prohibit gun stores from opening and operating by unjustifiably burdening their construction, operation, and use. In the alternative, to the extent gun stores might be technically feasible under the ordinance, their construction, operation and use is unjustifiably burdened by the challenged provisions. These include:

•     MCC § 4-144-750 prohibits gun stores from locating 500 feet from a pre-existing primary or secondary school, or a park owned or leased by any unit of local, state, or federal government.

•     MCC § 4-144-790(g) prohibits the display of firearms or ammunition in any window.

•     MCC § 17-9-0128 – Gun stores are only permitted in Commercial 2, Commercial 3 and Downtown Service Districts, with special use approval. This restriction is unduly burdensome with no governmental purpose.

**Answer**:  Defendants admit that the July, 2014 Ordinance allows gun stores to open and operate in Chicago. Defendants admit that MCC § 4-144-750 prohibits gun stores from locating 500 feet from a pre-existing primary or secondary school, or a park owned or leased by any unit of local, state, or federal government. Defendants admit that MCC § 17-9-0128 permits gun stores in Commercial 2, Commercial 3, and Downtown Service Districts, with special use approval. Defendants admit that MCC § 4-144-790(g) prohibits the display of firearms or ammunition in any window. Defendants deny, pursuant to the Court's Memorandum Opinion and Order dated September 28, 2015, that Plaintiffs can challenge any of the provisions of the MCC cited in Paragraph 20 and deny any remaining allegations contained in Paragraph 20.

21.     Plaintiffs have a fundamental constitutional right under the Second Amendment to the United States Constitution to sell, keep and bear arms, and a fundamental constitutional right under the First Amendment to display them for sale, and Defendants have infringed on those rights, or burdened or prevented the exercise of those rights, under color of the City's laws, ordinances, regulations, customs and usages, by enacting, enforcing or threatening to enforce the ordinance provisions described above. Said ordinance provisions, and the enforcement or threatened enforcement of them, are a proximate cause of injury to Plaintiffs, and have caused

and will continue to cause Plaintiffs to suffer irreparable harm.

**Answer**:  Defendants admit that the Second Amendment provides an individual right to keep and bear arms.  Defendants deny the remaining allegations contained in Paragraph 21.

22.     On or about June 30, 2010, and July 2, 2010, Second Amendment Arms caused to be filed and submitted two applications with Mendoza's office in accordance with and pursuant [sic] the Weapons Dealer Ordinance and paid the required fees therefore.  The applications sought to obtain weapons dealer business licenses to permit Franzese, as a licensed federal firearms dealer, to open and operate two gun stores at two separate locations within the City. The City accepted and retained the fees paid for said applications, but rejected and refused to process or grant them because of the prohibition on gun stores in the New Gun Ban Ordinance. Franzese has suffered damages and lost profits as a result and still desires, plans and intends to submit additional applications to open gun stores at locations within the City, and would have opened such shops prior to July 2014, except that he, like all other ordinary citizens, was barred from selling firearms within the City by the provisions of the New Gun Ban Ordinance.

**Answer:**  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Franzese's desires, plans, and intentions to submit applications to open a gun store in the City.  Defendants admit that MCC § 8-20-100(a) formerly banned the sale, acquisition, or transfer of firearms in the City, unless through inheritance or as provided in MCC §§ 2-84-075, 8-20-100(c), 8-20-100(d), or 4-151-170.  Defendants deny the remaining allegations contained in Paragraph 22.

23.     Even if Plaintiff Franzese had been permitted by the terms of the Weapons Dealer Ordinance to open a gun store in the City, establishment of such a store would have been obstructed or made impossible by the provisions of MCC § 8-20-020, 8-20-030, 8-20-180(c), and the definition of "lawful transportation" of a firearm in MCC § 8-20-010, which make it illegal to possess a firearm outside the home (or fixed place of business, in the case of long guns), limit possession of firearms to the address listed on the registration certificate, and contain a restrictive and vague definition of "lawful transportation."  Such provisions, as written, would have prohibited Franzese from possessing handguns, at least, at his gun store.  They would also have prevented prospective customers from having firearms in their possession at his gun store and in many cases would have made it difficult and perhaps impossible for customers who wished to purchase from, or sell firearms to, Second Amendment Arms to transport firearms to and from the store, due to the "lawful transportation" provision requiring guns to be transported in a "broken down" condition.

**Answer:** Defendants admit that MCC § 8-20-100(a) formerly banned the sale, acquisition, or transfer of firearms in the City, unless through inheritance or as provided in MCC §§ 2-84-075, 8-20-100(c), 8-20-100(d), or 4-151-170. Defendants state that the Chicago City Council repealed MCC §§ 8-20-020, 8-20-030, 8-20-180(c), and the definition of "lawful transportation" in MCC § 8-20-010 on September 11, 2013 and therefore deny that those sections have any legal effect. Defendants deny the remaining allegations contained in Paragraph 23.

24. As part of his proposed gun shop, Franzese as Second Amendment Arms intend to possess and offer for sale in the City laser sighting devices, but is prohibited from doing so by MCC §§ [sic] 8-20-060.

**Answer**: Defendants admit that MCC § 8-20-060(a) provides that "[i]t is unlawful for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory, or a firearm silencer or muffler." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 24.

25. Plaintiffs Zieman and Kole desire to purchase within the City a laser sighting device, either separately or as an integral part of a firearm, and would do so but for the prohibitions in MCC § 8-20-060.

**Answer:** Defendants admit that MCC § 8-20-060(a) provides that "[it is unlawful for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory, or a firearm silencer or muffler." Defendants admit that "laser sight accessory" is defined in MCC § 8-20-010 as "a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm." Defendants deny that a "laser sight accessory" is an integral part of a firearm. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 25.

## COUNT I
### Right to Sell, Display, Keep and Bear Arms
### U.S. Const., Amends. I, II and XIV, 42 U.S.C. § 1983

26.     Paragraphs 1 through 25 are incorporated as though fully restated herein.

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 25 as if set forth

fully herein.

27.     The Second Amendment, which applies against Defendant City of Chicago by

operation of the Fourteenth Amendment, secures the right to sell firearms through retail sales.

**Answer:** Defendants admit that the Second Amendment applies to the City by operation

of the Fourteenth Amendment.  The remaining allegations contained in Paragraph 27 constitute

legal conclusions to which no answers are required.

28.     The Second Amendment, which applies against Defendant City of Chicago by

operation of the Fourteenth Amendment, also secures the right of Second Amendment Arms'

would-be customers such as Zieman and Kole, to purchase firearms through retail sales from

locations within the City.

**Answer:**  Defendants admit that the Second Amendment applies to the City by operation

of the Fourteenth Amendment.  The remaining allegations contained in Paragraph 28 constitute

legal conclusions to which no answers are required.

29.     The First Amendment, which applies against Defendant City of Chicago by

operation of the Fourteenth Amendment, secures the right of Second Amendment Arms to

display firearms, ammunition and related products for sale.

**Answer:**  Defendants admit that the First Amendment applies to the City by operation of

the Fourteenth Amendment.  Defendants deny the remaining allegations contained in Paragraph

29 and deny, pursuant to the Court's Memorandum Opinion and Order dated September 28,

2015, that Plaintiffs can challenge the City's ban on the display of firearms or ammunition in

store windows.

30.     City's laws effectively prohibit the operations of firearms dealers who wish to sell

lawful firearms to the law-abiding public, both through its Municipal Code and Zoning

Ordinance. The functional firearms retail sales ban and associated laws also impede gun ownership itself by barring permission to Second Amendment Arms to market and sell its products, and inhibit the ability of Second Amendment Arms' would-be customers, such as Zieman and Kole, to purchase lawful firearms inherently necessary to the exercise of Second Amendment rights.

**Answer:** Defendants deny the allegations contained in Paragraph 30.

31. City currently under color of law deprives individuals and businesses, including the Plaintiffs, of their right to keep and bear and/or sell arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violations of 42 U.S.C. § 1983.

**Answer:** Defendants deny the allegations contained in Paragraph 31.

32. City currently under color of law deprives individuals and businesses, including the Plaintiffs, of their right to display arms and ammunition for sale, in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983.

**Answer:** Defendants deny the allegations contained in Paragraph 32 and deny, pursuant to the Court's Memorandum Opinion and Order dated September 28, 2015, that Plaintiffs can challenge the City's ban on the display of firearms or ammunition in store windows.

33. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of City's unconstitutional customs, policies, and practices. Second Amendment Arms is also entitled to its actual monetary damages suffered as a result of City's previous and continued enforcement and maintenance of its unconstitutional customs, policies, and practices.

**Answer:** Defendants deny that Plaintiffs are entitled to any of the relief requested in Paragraph 33.

**WHEREFORE**, Plaintiffs request judgment be entered in their favor and against Defendant City of Chicago as follows:

1. An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing all offending sections of the Municipal Code of Chicago and the Chicago Zoning Ordinance listed above, or any other law, as against the ordinary operation and use of retail firearms sales businesses;

2. Declaratory relief consistent with the requested injunction;

3.      Monetary damages in an amount to fully compensate Franzese and Second Amendment Arms for the lost business due to the deprivation of their civil rights under all previous and current versions of City ordinances;

4.      Attorney's Fees and Costs pursuant to 42 U.S.C. § 1988;

5.      Costs of suit; and

6.      Any other further relief as the Court deems just and appropriate.

**Answer:** Pursuant to the Court's order dated September 28, 2015, the only claim remaining in Count I is Franzese and Second Amendment Arms's claim that the 2010 Ordinance, as applied to them, violated their Second Amendment rights and resulted in lost profits. Defendants respectfully request that the Court enter judgment in their favor and against Plaintiffs on this sole remaining claim in Count I of Plaintiffs' Fourth Amended Complaint and grant Defendants such further relief as the Court deems just and appropriate.

### COUNT II
### Denial of Substantive Due Process
### U.S. Const., Amend. XIV, 42 U.S.C. § 1983

34.     Paragraphs 1 through 33 are incorporated as though fully stated herein.

**Answer:** The Court dismissed Count II on September 28, 2015. Defendants are therefore not required to answer Count II.

35.     The Fourteenth Amendment, which applies against the City, secures Franzese's fundamental property rights to a business license to own a retail sales firearms establishment, which also includes the fundamental rights to sell firearms through retail sales. The Fourteenth Amendment also protects Plaintiffs' fundamental right to earn his livelihood in any lawful manner in which he chooses.

**Answer:** The Court dismissed Count II on September 28, 2015. Defendants are therefore not required to answer Count II.

36.     Through arbitrary and capricious action on the part of the City, Franzese is unable to sell firearms through in-person sales, or display them for sale. These City actions have resulted in a denial of Plaintiffs' Fourteenth Amendment substantive due process rights.

15

**Answer:** The Court dismissed Count II on September 28, 2015. Defendants are therefore not required to answer Count II.

37. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

**Answer:** The Court dismissed Count II on September 28, 2015. Defendants are therefore not required to answer Count II.

38. Franzese is also entitled to his actual monetary damages suffered as a result of City's previous and continued enforcement and maintenance of its unconstitutional customs, policies and practices.

**Answer:** The Court dismissed Count II on September 28, 2015. Defendants are therefore not required to answer Count II.

**WHEREFORE**, Plaintiffs request judgment be entered in their favor and against Defendant City of Chicago as follows:

1. An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing all offending sections of the Municipal Code of Chicago and the Chicago Zoning Ordinance listed above, or any other law, as against (A.) the lawful transfer, possession and use of firearms for self-defense inside and outside of Plaintiff's [sic] homes; and (B.) the ordinary operation and use of retail firearms sales and businesses;

2. Declaratory relief consistent with the requested injunction;

3. Monetary damages in an amount to fully compensate Franzese and Second Amendment Arms for the lost business due to the deprivation of their civil rights under all previous and current versions of City ordinances;

4. Attorney's Fees and Costs pursuant to 42 U.S.C. § 1988;

5. Costs of suit; and

6. Any other further relief as the Court deems just and appropriate.

**Answer:** The Court dismissed Count II on September 28, 2015, and Plaintiffs are therefore not entitled to any of the relief requested.

## COUNT III
### Ban on Sale and Possession of Laser Sighting Devices
### U.S. Const., Amends. II and XIV, 42 U.S.C. § 1983

39.     The allegations contained in paragraphs 1 through 38 are incorporated as if fully restated herein.

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 38 as if set forth fully herein.

40.     Laser sighting devices as defined in MCC § 8-20-010 may either be "integrated into a firearm or capable of being attached to a firearm." Firearms equipped with laser sighting devices, either as part of the firearm itself, or added to a firearm, are "typically possessed by law-abiding citizens for lawful purposes," and are thus protected by the Second Amendment. Indeed, laser sighting devices are designed to facilitate the Second Amendment's core purpose of self-defense by increasing the practical accuracy of a firearm for defensive purposes, especially in low light conditions.

**Answer:** Defendants admit that "laser sight accessory" is defined in MCC § 8-20-010 as "a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm." Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegations that laser sighting accessories "are designed to . . . increas[e] the practical accuracy of a firearm for defensive purposes, especially in low light conditions." Defendants deny the remaining allegations contained in Paragraph 40.

41.     The ban in MCC § 8-20-060(a) on carrying, possessing, displaying for sale, or otherwise transferring any laser sight unduly burdens, impedes, and infringes upon the Second Amendment rights of Plaintiff Franzese, who wishes to display for sale, sell, and transfer such laser sighting devices. § 8-20-060(a), and the seizure, forfeiture, penalty, and impoundment provisions of § 8-20-060(c) and § 8-20-070, unduly burden, impede, and infringe upon the Second Amendment rights of Plaintiffs Zieman and Kole, who wish to purchase and possess laser sighting devices.

**Answer:** Defendants admit that MCC § 8-20-060(a) provides that "[i]t is unlawful for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory, or a firearm silencer or muffler." Defendants further admit that MCC §§ 8-20-060(c) and 8-20-070 provide for the seizure of laser sighting devices, the impoundment of vehicles containing

such devices, and monetary penalties associated with violations of these sections of the Municipal Code. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegations concerning what Plaintiffs Franzese and Kole wish to do. Defendants deny the remaining allegations contained in Paragraph 41.

42. Accordingly, MCC §§ 8-20-060(a), 8-20-060(c) and 8-20-070 are unconstitutional facially and as applied to Plaintiffs, and void *ab initio*.

**Answer:** Defendants deny the allegations contained in Paragraph 42.

**WHEREFORE**, Plaintiffs request judgment be entered in their favor and against Defendant City of Chicago as follows:

1. An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing all offending sections of the Municipal Code of Chicago and the Chicago Zoning Ordinance listed above, or any other law, as against (A.) the lawful transfer, possession and use of firearms and laser sights for self-defense inside and outside of Plaintiff's [sic] homes; and (B.) the ordinary operation and use of retail firearms sales and businesses;

2. Declaratory relief consistent with the requested injunction;

3. Monetary damages in an amount to fully compensate Franzese and Second Amendment Arms for the lost business due to the deprivation of their civil rights under all previous and current versions of City ordinances;

4. Attorney's Fees and Costs pursuant to 42 U.S.C. § 1988;

5. Costs of suit; and

6. Any other further relief as the Court deems just and appropriate.

**Answer:** Defendants respectfully request that the Court enter judgment in their favor and against Plaintiffs on Count III of Plaintiffs' Fourth Amended Complaint and grant Defendants such further relief as the Court deems just and appropriate.

## COUNT IV
### Physical Presence, Security, Trigger Lock and Lock Box Requirements
### U.S. Const., Amends, II and XIV, 42 U.S.C. § 1983

43.     The allegations contained in paragraphs 1 through 42 are incorporated as if fully restated herein.

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 42 as if set forth fully herein.

44.     The requirements of MCC §§ 8-20-050(1) that because Zieman has minors under age 18 living in his residence he must be physically present in the home and the firearm is either being held by him or is physically secured on his body; (2) that a firearm be secured by a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render a firearm temporarily inoperable; or (3) the firearm and ammunition are placed in a securely locked box or container makes it impractical and impossible for him or other citizens to use arms for the core lawful purpose of self-defense.

**Answer:** Defendants lack information or knowledge as to the truth of the allegation that Zieman has minors under the age of 18 living in his residence. Defendants admit that MCC § 8-20-050(a) provides: "It is unlawful for any person to keep or possess any firearm or ammunition in his home if the person knows or has reason to believe that a minor under the age of 18 years is likely to gain access to the firearm or ammunition, unless: (1) the person is physically present in the home and the firearm is either being held by the person or is physically secured on the person's body; (2) the firearm is secured by a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render a firearm temporarily inoperable; or (3) the firearm and ammunition are placed in a securely locked box or container." Defendants deny the remaining allegations contained in Paragraph 44.

45.     Accordingly, MCC § 8-20-050 is unconstitutional facially and as applied to Plaintiffs, and void *ab initio.*

**Answer:** Defendants deny the allegations contained in Paragraph 45.

**WHEREFORE**, Plaintiffs request judgment be entered in their favor and against Defendant City of Chicago as follows:

1.  An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing all offending sections of the Municipal Code of Chicago and the Chicago Zoning Ordinance listed above, or any other law, as against the lawful possession and use of firearms for self-defense inside and outside of Plaintiff's [sic] homes;

2.  Declaratory relief consistent with the requested injunction;

3.  Attorney's Fees and Costs pursuant to 42 U.S.C. § 1988;

4.  Costs of suit; and

5.  Any other further relief as the Court deems just and appropriate.

**Answer:** Defendants respectfully request that the Court enter judgment in their favor and against Plaintiffs on Count IV of Plaintiffs' Fourth Amended Complaint and grant Defendants such further relief as the Court deems just and appropriate.

### COUNT V
### Plaintiff Kole's Individual and Class Action Claim for
### Restitution Under the New Gun Ban Ordinance
### U.S. Const., Amends, II and XIV, 42 U.S.C. § 1983

46.  Plaintiff Kole, individually and as class representative, incorporates Paragraphs 1 through 45 as if fully restated herein and states individually and as class representative.

**Answer:** The Court dismissed Count V on September 28, 2015. Defendants are therefore not required to answer Count V.

47.  By requiring law-abiding citizens and residents, including Kole and his fellow class members, to register all firearms prior to their acquisition under the unconstitutional New Gun Ban Ordinance, Defendants under color of law unlawfully deprived them of monies by wrongfully charging and collecting fees thereunder to obtain firearms permits and firearm registration certificates in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiff and the class have thus been damaged and are therefore entitled to declaratory relief and restitution of all such fees.

**Answer:** The Court dismissed Count V on September 28, 2015. Defendants are therefore not required to answer Count V.

48.     The class on whose behalf this action is brought on behalf of Kole individually, and all other citizens and residents and other entities who paid the City fees to obtain firearms permits and firearm registration certificates under the New Gun Ban Ordinance since the date of its adoption.

**Answer:**   The Court dismissed Count V on September 28, 2015.   Defendants are therefore not required to answer Count V.

49.     Kole, as class representative, will adequately represent the claims of each of these natural citizens.

**Answer:**   The Court dismissed Count V on September 28, 2015.   Defendants are therefore not required to answer Count V.

50.     A class action may be maintained in this action because:

(a)     the class is so numerous that joinder of all members is impractical.   While the exact number and identities of the class members are unknown at this time, Kole believes the number to be substantial and that they can be determine through discovery and full disclosure and accounting of Defendants and their legal counsel's records, that are within their possession and control;

(b)     there are questions of fact or law, including but not limited to the above issues of constitutionally of said ordinances that are common to the class.   Such questions predominate over any questions affecting only individual class members.

(c)     Kole is best situated to, and will, fairly and adequately represent the interest of the class and other members, who like them, have been intimidated, and may, like them, be fearful of retaliation so as to step forward to vindicate and protect their right.

(d)     a class action is an appropriate method for the fair and efficient adjudication of the controversy and will serve the interests of judicial economy.

**Answer:**   The Court dismissed Count V on September 28, 2015.   Defendants are therefore not required to answer Count V.

**WHEREFORE**, Plaintiff Kole, individually and as class representative, prays for judgment against Defendant City of Chicago:

1.     certifying the class and declaring that the upon [sic] the City's above-referenced ordinances be found, declared, adjudged an [sic] decreed to be unconstitutional and null and void, *ab initio*;

2.      ordering Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to account for, refund and pay over any and all moneys and fees paid or collected by the City to obtain firearms permits and firearm registration certificates under the New Gun Ban Ordinance since its date of adoption to Kole and the Class;

3.      awarding Kole, as class representative, and the class damages against said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, for their unlawful enforcement and application and prosecution of New Gun Ban Ordinance;

4.      awarding the class representative and the class equitable relief against each Defendants [sic], jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, declaring all said sums to be accounted for, disgorged and refunded to the class representative and class with prejudgment interest thereon;

5.      awarding the class representative and the class civil and equitable appropriate remedies including an equitable accounting;

6.      awarding the class representative, [sic] fair and appropriate other compensation for serving as class representative, class costs, disbursements and reasonable attorney's fees; and

7.      awarding the class representative and the class any and all further relief, as this Court deems just and proper.

**Answer:**   The Court dismissed Count V on September 28, 2015, and Plaintiffs are therefore not entitled to any of the relief requested.

### COUNT VI
### Plaintiff Kole's Pendant
### Individual and Class Action State Law
### Claim for Restitution - - Unjust Enrichment

51.     Plaintiff Kole, individually and as class representative, and complaining of City, incorporates Paragraphs 1 through 50 as if fully restated herein.

**Answer:**   The Court dismissed Count VI on September 28, 2015.  Defendants are therefore not required to answer Count VI.

52. That as a result of the foregoing and said ordinances violating the Illinois Constitution, Article I §§ 1, 2, 4, 6, 12, 22, and 24, City has been unjustly enriched and therefore Kole and the Class are entitled to restitution.

**Answer:** The Court dismissed Count VI on September 28, 2015. Defendants are therefore not required to answer Count VI.

**WHEREFORE**, Plaintiff Kole, individually and as class representative, prays for judgment against Defendant City of Chicago:

1. certifying the class and declaring that the City's above-referenced Code Sections and Ordinances be found, declared, adjudged an [sic] decreed to be unconstitutional and null and void, *ab initio*;

2. ordering Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, to account for, refund and pay over any and all moneys and fees paid or collected by the City to obtain firearms permits and firearm registration certificates under the New Gun Ban Ordinance since its date of adoption to Kole and the Class;

3. awarding Kole, as class representative, and the class damages against said Defendants, their officers, agents, servants, employees, attorneys and assigns, and all persons having acted or acting in active concert or participation with them, jointly and severally, for their unlawful enforcement and application and prosecution of New Gun Ban Ordinance;

4. awarding the class representative and the class equitable relief against each Defendants [sic], jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, declaring all said sums to be accounted for, disgorged and refunded to the class representative and class with prejudgment interest thereon;

5. awarding the class representative and the class civil and equitable appropriate remedies including an equitable accounting;

6. awarding the class representative, [sic] fair and appropriate other compensation for serving as class representative, class costs, disbursements and reasonable attorney's fees; and

7. awarded [sic] the class representative and the class such other and further relief, as may be appropriate, necessary, just and proper in the premises.

**Answer:** The Court dismissed Count VI on September 28, 2015, and Plaintiffs are therefore not entitled to any of the relief requested.

## COUNT VII
### Declaratory Judgment
### 28 U.S.C. § 2201

53.     Paragraphs 1 through 52 incorporated as though fully restated herein.

**Answer:** Defendants incorporate their answers to Paragraphs 1 through 52 as if set forth

fully herein.

54.     The complained-of sections of the Municipal Code of Chicago and the Chicago
Zoning Ordinance are against public policy and violative of Article 1, §§ 1, 2, 4, 6, 12, 15, 22,
24, and Due Process, Equal Protection and takings clauses of the Illinois Constitution, thus
rendering them unconstitutional, null and void *ab initio*, and unenforceable.

**Answer:** Defendants deny the allegations in Paragraph 54.    Further answering,

Defendants state that Plaintiffs agreed to limit their claims under the Illinois Constitution to those

provisions of the Municipal Code challenged under the U.S. Constitution, as set forth in Counts

I, III, and IV.  Plaintiffs have also limited the provisions of the Illinois Constitution under which

they bring their challenges to Article 1, §§ 2 and 22.

55.     The Defendants should be enjoined preliminarily and permanently, as well as all
persons in active concert or participation with them who receive actual notice of the injunction,
from directly or indirectly by any means enforcing or prosecution all of the complained of
provisions of the Municipal Code of Chicago and Chicago Zoning Ordinance.

**Answer:** Defendants deny the allegations in Paragraph 55.

56.     That by reason of the foregoing an actual controversy exists and Plaintiffs are
therefore entitled to a judicial declaration of their rights and declaratory relief pursuant to 28
U.S.C. § 2201 in connection therewith because said Code Sections and Ordinances are
oppressive, illegal as violating Plaintiffs' fundamental constitutional rights, are against public
policy, forced on Plaintiffs and adopted by Defendants in bad faith and are therefore null and
void *ab initio*, and therefore unenforceable.

**Answer:** Defendants deny the allegations in Paragraph 56.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a declaratory judgment in
their favor against all Defendants pursuant to 28 U.S.C § 2201, as follows:

1.      declaring that City's above referenced Code Sections and Ordinances be adjudged
        and decreed, inter alia, not to constitute reasonable or permissible regulations, but

rather, violate Article I. §§ 1, 2, 4, 6, 12, 22, 24, and Due Process and takings clauses of the Illinois Constitution, thus rendering them unconstitutional, null and void *ab initio*, and unenforceable;

2.     awarding them damages as the proofs will show at trial;

3.     awarding them reasonable attorney's fees and costs; and

4.     granting them such other and further relief as this Court may deem just and proper in the premises.

**Answer:** Defendants respectfully request that the Court enter judgment in their favor and against Plaintiffs on Count VII of Plaintiffs' Fourth Amended Complaint and grant Defendants such further relief as the Court deems just and appropriate.

Date: January 15, 2016         Respectfully submitted,

STEPHEN R. PATTON
Corporation Counsel for the City of Chicago

By:    /s/ Ellen Wight McLaughlin
       Assistant Corporation Counsel

William Macy Aguiar
David M. Baron
Ellen W. McLaughlin
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-6975 / 9018 / 5147

Attorneys for Defendants