# **SOF EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SECOND AMENDMENT ARMS (a d/b/a of | ) | |
| R. Joseph Franzese), R. JOSEPH FRANZESE, | ) | |
| individually and d/b/a SECOND AMENDMENT | ) | |
| ARMS, ROBERT M. ZIEMAN, SR., ICARRY, | ) | |
| an unincorporated Association (and d/b/a of Shaun | ) | Case No: 1:10-CV-4257 |
| Kranish), SHAUN KRANISH, individually and | ) | |
| d/b/a ICARRY, and TONY KOLE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Hon. Robert M. Dow, Jr. |
| v. | ) | U.S. District Court Judge |
| | ) | |
| CITY OF CHICAGO, a municipal corporation, | ) | |
| RAHM EMANUEL, in his official capacity as | ) | |
| Mayor of the City of Chicago, GARRY | ) | Hon. Sheila M. Finnegan |
| McCARTHY, Superintendent of Police of the City | ) | U.S. Magistrate Judge |
| of Chicago, and SUSANA MENDOZA, City Clerk | ) | |
| of the City of Chicago, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' ANSWERS TO DEFENDANTS' THIRD SET OF INTERROGATORIES TO PLAINTIFFS**

TO:     William Aguiar, Esq.
        City of Chicago Department of Law
        30 North LaSalle Street, Suite 1230
        Chicago, IL 60602

        Plaintiffs, by and through their attorneys, and for their Answers to the Third Set of

Interrogatories to Plaintiffs, state as follows:


        1.      Identify all persons who answered, or assisted in answering, these

interrogatories.

**ANSWER:**     Joseph R. Franzese, 561 N. Triumph Court, Hainesville, IL 60073.

2.      Identify all persons who have knowledge of the facts alleged in the Complaint, and specifically, identify which facts each person has knowledge of.

**ANSWER:**      Joseph R. Franzese, facts relating to all Counts; Tony Kole, facts relating to all Counts; Joseph LaJoy, 123 Christopher Way, Fox Lake, IL 60020, facts related to all Counts; Roman Tapkowski, P.O. 951, Antioch, Illinois, facts relating to all Counts.

As-yet unidentified persons from BAFTE and the City of Chicago who sent the e-mails, and had the communications referenced in said e-mails, that were previously-disclosed to Defendant, have facts regarding Franzese/SAA's efforts to obtain a Chicago business license and an FFL.

3.      Identify all witnesses, including any expert witnesses, you will or may call at the trial in this matter, and describe the substance of the testimony.

**ANSWER:**

1.      R. Joseph Franzese, 561 N. Triumph Ct., Hainesville, IL 60073, Desire to open gun store in Chicago and sell firearms and firearm accessories (including laser sights), as well as offering gunsmithing and classes (per Franzese's business plan), experiences with laser sights, experience in the gun store business;

2.      Tony Kole, 1232 South Candlestick Way, Waukegan, IL 60085, desire to purchase laser sight in Chicago, experiences with laser sights, experience in the gun store business;

3.      Joseph LaJoy, 123 Christopher Way, Fox Lake, IL 60020, experience with firearms, in gun sales and smithing business, experience working with Franzese and planned involvement with SAA, knowledge regarding laser sights;

4.      Roman Tapkowski, P.O. 951, Antioch, Illinois; experience with firearms, in firearm education and training, experience working with Franzese and planned involvement with SAA, knowledge regarding laser sights;

5.      Harry L. McCabe, III, of BAFTE, Industry Operations, 525 West Van Buren Street, 6th Floor, Chicago, IL 60607 and/or at Downers Grove Field Office;

6.      Christy Cernkovic of BAFTE, Industry Operations, 525 West Van Buren Street, 6th Floor, Chicago, IL 60607 and/or at Downers Grove Field Office;

7.      Denise _____ of BAFTE, Industry Operations, 525 West Van Buren Street, 6th Floor, Chicago, IL 60607 and/or at Downers Grove Field Office;

8.      Nick Scouffas formerly of BAFTE, now at the National Shooting Sports Foundation, 11 Mile Hill Road, Newtown, CT 06470.

9.      The as-yet unidentified person (Industry Operations Investigator, Downers Grove III Field Office) who wrote the previously-disclosed September 9, 2010 e-mail from BAFTE to City of Chicago, and who also took the previously-disclosed photos attached to said e-mail.

10.     The as-yet unidentified Director of Industry Operations (during the relevant time period) from the BAFTE Chicago Field Division at 525 West Van Buren Street, Suite 600, Chicago, IL 60607.

11.     W.J. Fitzgerald, DIO of BAFTE;

12.     The person most knowledgeable at BAFTE about Franzese's efforts to obtain an FFL and approval of a Chicago business license for his planned gun store.

13.     The person most knowledgeable at the City of Chicago regarding Franzese's application and efforts to obtain a Chicago business license and BAFTE issuance of an FFL for his planned gun store.

Witnesses 5-13 are expected to testify regarding communications with Franzese and with the City of Chicago regarding Franzese's application for, and efforts to obtain, a Chicago business license for a gun store and an FFL, including the reasons for the denial of said application.

14.     Any person who communicated from either the City of Chicago or BAFTE in the previously-disclosed FOIA-released e-mail disclosures, previously sent to Defendant's attorneys, may testify regarding the contents of said e-mails.

15.     The person most knowledgeable from the National Shooting Sports Foundation who wrote the Customized Market Report will testify regarding all facts and opinions contained in said Report.

Further expert witnesses will be timely disclosed at a future date.

4.     Identify and describe all stores selling or vending firearms or firearms accessories operated in whole or in part by any Plaintiff, any entity in which any Plaintiff has or had an interest, or any entity that is or was a member of any Plaintiff, including the name of each store, its location, and the length of time in operation.

**ANSWER:**     Objection, vagueness and ambiguity as to undefined term "vending" of firearms, and how said term differs from "selling" firearms.  Over said objection, and without waiving same:

R. Jospeh Franzese – owner of Second Amendment Arms, approximately 2009-2013, Lake Villa, IL, previously in unincorporated Deerfield.

R. Jospeh Franzese – independent contractor at LaJoy Precision, Inc., 123 Christopher Way, Fox Lake, IL 60020, from 2014 - present.

Tony Kole – Ghost Industries, LLC, located at 7601 W. Montrose Ave, Ste. 2, Norridge, IL 60706, from 2011-2015.

5.     Identify and describe all firearms vending activities offered by any Plaintiff, or any entity that is or was owned by any Plaintiff, including the location(s) where such activities have been offered or taken place, the business or other name under which the activities have been offered, and the length of time such activities have been offered.

**ANSWER:**     Objection, vagueness and ambiguity as to the undefined "firearm vending activities."  Over said objection, and without waiving same, the above-referenced persons sold firearms and firearm accessories, from their businesses.  LaJoy also performs gunsmithing services and has multiple certifications in this field.

6.     Identify all damages or lost profits you have suffered or continue to suffer from your inability to open a gun store in the City or otherwise sell firearms under the City's now-

repealed 2010 Ordinance restricting the sales of firearms within the City and describe how such damages or lost profits were calculated.

**ANSWER:**     Plaintiff Franzese/SAA projected, for the first six months of business beginning from the attempted opening in 2010, $20,000.00-30,000.00/week in gross revenue from sales, classes, gunsmithing, and range fees.  For the following six months, Franzese/SAA projected $40,000.00/week in gross revenue for the next six months by adding classes.  Over the following four years, through 2015, gross revenues were projected to increase to $100,000.00/week.  This projected incremental growth through the end of 2015 would have resulted in $29,420,000.00 in gross revenues during that timeframe.


7.     Identify all facts related to your allegation that laser sighting devices are typically possessed by law-abiding citizens for lawful purposes.

**ANSWER:**     They are useful for improving aim, and also for intimidation that can defuse the need to actually fire a firearm.  According to one source, Crimson Trace has sold more than two million laser sights as of January, 2015, and at that time it was estimated that between 10-15% of all handguns had laser sights.  *See* http://www.cnbc.com/2015/01/22/gun-accessory-maker-lazy-retail-holds-us-back.html.  Some handguns come with Crimson Trace laser sights pre-installed (*e.g.* the Smith & Wesson "Bodyguard Series .380s and .38s, as well as some Browning Buckmark series, and the Highpoint rifle series 9mm and .40 caliber rifles).  They are also federally regulated (21 C.F.R. 1040.10).  In contrast, Plaintiffs are aware of no statistics that show any significant increase in crime attributable to laser sights.

8.      Identify all laser sight accessories that are used, are usable, or have been used on a firearm owned or possessed by any Plaintiff.

**ANSWER:**      Plaintiff Franzese possesses a LaserMax laser sight as part of his Glock .40 pistol, and LaserPro laser sight bolted onto his AR-15 rifle.  Plaintiff Kole has a Sig Sauer P220 combat pistol, a Sig Sauer P220 carry pistol and a Sig Sauer P226 combat pistol which have all at various times had a Streamlight TLR-2 Tactical Illuminator laser sight mounted on them.

9.      Identify all facts supporting your allegation that laser sighting devices are designed to, and actually do, increase the practical accuracy of a firearm for defensive use.

**ANSWER:**      *See* Plaintiff's Answer to Interrogatory No. 7.

10.     Identify every trigger lock, barrel lock, or other mechanism (other than a firearm safety mechanism) designed to render a firearm temporarily inoperable that is used, is usable, or has been used on a firearm owned or possessed by any Plaintiff.

**ANSWER:**      Objection as irrelevant, given the dismissal of Count IV from the pending Fourth Amended Complaint.

11.     Identify every firearm case, locked box, or other container that is used, is usable, or has been used on a firearm owned or possessed by any Plaintiff.

**ANSWER:**     Objection as irrelevant, given the dismissal of Count IV from the pending Fourth

Amended Complaint.


12.     Identify all facts supporting your allegation that the requirements of MCC 8-20-

050 make it impracticable and/or impossible for Zieman and/or other citizens to use a firearm

for self-defense purposes.

**ANSWER:**     Objection as irrelevant, given the dismissal of Count IV from the pending Fourth

Amended Complaint and the dismissal of Robert Zieman as a Plaintiff in this matter.



13.     Identify any studies, reports, articles, or other written works related to the

claims contained in Counts I, III, IV, and VI.

**ANSWER:**     Objection as irrelevant insofar as the Interrogatory is directed at Count IV, which

has been dismissed form the pending Fourth Amended Complaint.


_____
Attorney for Plaintiffs


David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

**VERIFICATION BY CERTIFICATION**

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the _20_ day of August, 2016, at _____Hainesville_____, Illinois.

R. Joseph Franzese

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

# SOF EXHIBIT B

License Application System

**CITY OF CHICAGO**
**BUSINESS AFFAIRS &**
**CONSUMER PROTECTION**

Norma I. Reyes, Commissioner

My Overview     User Guide     FAQ     Contact Us

Welcome back, **franzeserj1**. [ Edit User Profile , Log Out ]

1. Part I - Location & Activity     2. Part I - Questions & Answers     3. Part I - Ownership     4. Part I - Summary & Review

## Application # 7270 has been successfully submitted

Congratulations on completing "Part I" of the City of Chicago online business license application.

**Please print this page for your records.** A confirmation notice will be sent to you, via e-mail, shortly.

**Application Information**

| | |
|---|---|
| User Profile Name: | reid j franzese |
| Application/Confirmation Number: | 7270 |
| Legal Business Name: | reid j franzese |
| Doing Business As (DBA) Name: | second amendment arms |
| Business Location Address: | 415 W. ARMITAGE AVE, Floor 1, Chicago, IL 60614 |

**At Your Service**



**What Happens Next**

1   The application has been submitted for Zoning Classification Review as of 07/02/2010 at 06:50 AM. Please remember that changes to the application are no longer permissible.

2   Once the Zoning Classification Review and listed business owner(s) verification have been completed, and, if applicable, all of the required documents have been submitted as well, then a "Business Location Review Complete" e-mail will be sent to you with instructions to proceed with "Part II" of the application.

3   The review and verification process may take several hours during a business day, or up to seven business days if further review is required. To find out the status of the application, at any time, please visit your My Overview page.

Should you have any questions, please feel free to Contact Us. Thank you for using the City of Chicago Online License Application System.

- Department of Business Affairs and Consumer Protection

License Application System



Norma I. Reyes, Commissioner

My Overview    User Guide    FAQ    Contact Us

Welcome back, **franzeserj1**. [ Edit User Profile , Log Out ]

1. Part I - Location & Activity    2. Part I - Questions & Answers    3. Part I - Ownership    4. Part I - Summary & Review

## Application # 7270 has been successfully submitted

Congratulations on completing "Part I" of the City of Chicago online business license application.

At Your Service

Please print this page for your records. A confirmation notice will be sent to you, via e-mail.

# SOF EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SECOND AMENDMENT ARMS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 10-CV-4257** |
| | ) | |
| **v.** | ) | **Judge Robert M. Dow, Jr.** |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | **Magistrate Judge Sheila M. Finnegan** |
| | ) | |
| **Defendants.** | ) | |

**DECLARATION OF PATTI SCUDIERO**

I, Patricia A. Scudiero, do solemnly affirm and certify under the penalties of perjury that the following facts are true and correct to the best of my knowledge and belief and that they are based on my personal knowledge.

1.      I am the City of Chicago's Zoning Administrator and have served in that role since 2006.

2.      In addition to being the City's Zoning Administrator, I am also the head of the Bureau of Planning and Zoning within the City's Department of Planning and Development ("DPD"), a position I have held since January 1, 2011.  From 2006 to December 31, 2010, I served  jointly as the Zoning Administrator and the Commissioner of the City's then Department of Zoning and Land Use Planning, the functions of which were assumed by DPD (then known as the Department of Housing and Economic Development) as of January 1, 2011.

3.      From 2004 to 2006, I was an assistant commissioner and projects administrator in the City's Department of Planning and Development.  From 1989-2004, I was the assistant director for the Chicago City Council's Committee on Zoning.

4.      In my role as the City's Zoning Administrator, I enforce the City's Zoning

Ordinance through review and recommendation of all zoning amendments including, but not limited to, planned developments, maintain and update the City's official zoning maps, and develop and implement the City's land use plans and policies that protect the character, harmony, and stability of its neighborhoods and its business and industrial communities.

5.      The City's Zoning Ordinance was first adopted by the Chicago City Council on May 29, 1957, and it is amended from time to time by the City Council. The Zoning Ordinance regulates the use of all property within Chicago, whether public or private, unless otherwise exempted or provided in the Zoning Ordinance.

6.      The Zoning Ordinance creates general classifications into which properties in the City are placed by the City Council. Those general classifications are residential, business, commercial, manufacturing, and industrial.      There are sub-classifications within each classification. The Zoning Ordinance specifies the uses that are allowed in each classification. If a use is not expressly permitted by the Zoning Ordinance, it is prohibited.

7.      It is within my responsibilities as the Zoning Administrator to ascertain what zoning classification has been applied to a particular property by the City Council. I do so by examining the relevant zoning maps which I maintain in my capacity as the City's Zoning Administrator.

8.      I have reviewed the zoning for the property located at 415 W. Armitage Avenue, Chicago, Illinois.

9.      On August 4, 2010, when the City Council adopted a comprehensive amendment to the Chicago Zoning Ordinance, the property at 415 W. Armitage Avenue was zoned RM-5 pursuant to section 17-1-1406 of the Zoning Ordinance.

10.      I have reviewed the zoning of 415 W. Armitage Avenue since August 4, 2010,

2

and it had been zoned RM-5 from August 4, 2010 to today.

11.    On August 18, 2010, I caused to be produced, from the City's on-line zoning mapping system, a Parcel Detail Report for 415 W. Armitage Avenue, and it demonstrated that the zoning for 415 W. Armitage Avenue as of that date was RM-5. A copy of the Parcel Detail Report dated August 18, 2010 is attached as Exhibit 1.

12.    On September 14, 2016, I again caused to be produced, from the City's on-line zoning mapping system, a Parcel Detail Report for 415 W. Armitage Avenue, and it demonstrated that the zoning for 415 W. Armitage Avenue as of that date was RM-5. A copy of the Parcel Detail Report dated September 14, 2016 is attached as Exhibit 2.

Patricia A. Scudiero

Date:   September 15, 2016

3

# SCUDIERO DECL. EXHIBIT 1

## Parcel Detail 14-33-307-004

### Assessor

PIN: **1433307004**
Tax Address: **415 W Armitage Ave**
Land Area: **2,200** (Sq.Ft.)
City Owned: **No**

### Addresses

Building Addresses
**415 W Armitage Ave**

## Chicago Geography

### Political

Ward: 43
Illinois House: **12**
Illinois Senate: **6**

### Boundaries

Zoning: RM-5
Planning District: North
Community Area: Lincoln Park (7)
Neighborhood: **Lincoln Park**
Census Tract: **071600**
Census Block: **071600 1000**

### Incentive Programs

TIF: *No TIF*
Redevelopment Area: *No Redev. Area*
Enterprise Zone: *No Enterprise Zone*
Empowerment Zone: *No Empowerment Zone*
Enterprise Community: **No Enterprise Comm.**



| Unit | Taxpayer | Taxpayer Address | Ownership |
|------|----------|------------------|-----------|
| 0000 | Danell Drazek | 415 W Armitage  Chicago Il  60614 | Title Search |



# Zoning Map

Created on: 8/18/2010 4:14 P.M.

Zoning
- Business
- Commercial
- Manufacturing
- Residential
- Planned Development
- Planned Manufacturing
- Downtown Core
- Downtown Service
- Downtown Mixed
- Downtown Residential
- Transportation
- Parks & Open Space
- Zoning Boundaries

Historic Preservation

CHICAGO LANDMARKS
- Chicago Landmarks
- Landmark Districts

Chicago Historic Resources Survey - Buildings subject to Demolition-Delay Ordinance
- Red
- Orange

- Curbs
- Forest Preserve
- Text Street Names
- Municipalities

- Lakefront
- Pedestrian Streets
- Special Districts
- Central Business Dist.
- Buildings
- Parcels
- Streets
- Water
- Cemetery
- City Boundary

Information provided on the City of Chicago web site should not be used as a substitute for legal, accounting, real estate, business, tax, or other professional advice. The City of Chicago assumes no liability for any damages or loss of any kind that might arise from the use of, misuse of, or the inability to use the City web site and-or the materials contained on the web site. The City of Chicago also assumes no liability for improper or incorrect use of materials or information contained on its web site. All materials that appear on the City of Chicago web site are distributed and transmitted as is, without warranties of any kind, either express or implied, and subject to the terms and conditions stated in this disclaimer.

# SCUDIERO DECL. EXHIBIT 2

9/14/2016 — Map Output

## Zoning Map

Created on: 9/14/2016 11:03 A.M.

430
434

2016
2014

PD-95

LINCOLN AVE

ARMITAGE AVE

HUDSON AVE

425

423

421

419

415

B1-2

1954

433

1952

1953

RM-5

1950

1950

1948

1951
1949

1947

1946 1945 1945 1945

1944

Zoning data reflects all ordinances passed
in the most recent City Council meeting.
Copyright (c) 2011. City of Chicago

1943 1943

54ft

1942

**Address**

415 W ARMITAGE AVE

| Zoning | Historic Preservation | Lakefront |
|---|---|---|
| Business | CHICAGO LANDMARKS | Pedestrian Streets |
| Commercial | Chicago Landmarks | Special Districts |
| Manufacturing | Landmark Districts | Central Business Dist. |
| Residential | Chicago Historic Resources Survey - Buildings subject to Demolition-Delay Ordinance | Buildings |
| Planned Development | Red | Parcels |
| Planned Manufacturing | Orange | Curbs |
| Downtown Core | Streets | Forest Preserve |
| Downtown Service | Water | City Boundary |
| Downtown Mixed | Cemetery | |
| Downtown Residential | Municipalities | |
| Transportation | | |
| Parks & Open Space | | |
| Zoning Boundaries | | |

Information provided on the City of Chicago web site should not be used as a substitute for legal, accounting, real estate, business, tax, or other professional advice. The City of Chicago assumes no liability for any damages or loss of any kind that might arise from the use of, misuse of, or the inability to use the City web site and-or the materials contained on the web site. The City of Chicago also assumes no liability for improper or incorrect use of materials or information contained on its web site. All materials that appear on the City of Chicago web site are distributed and transmitted as is, without warranties of any kind, either express or implied, and subject to the terms and conditions stated in this disclaimer.

9/14/2016                                           Query/Selection Results

| ZONE Classification | Ordinance Number | Ordinance Date |
|---|---|---|
| RM-5 | | |

| Building Id | From Add | To Add | Dir | Street | Type | Stories | Units | Built | Sq.Ft. | Condition | Vacancy |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 283803 | 415 | 415 | W | ARMITAGE AVE | 2 | 2 | | 1891 | 2517 | SOUND | |

| Map Index | Page Number |
|---|---|
| 5-F | 77B |

| PIN | From Address | To Address | Dir | Street | Type | Suffix |
|---|---|---|---|---|---|---|
| 1433307004 | 415 | 415 | W | ARMITAGE | AVE | |

| Lot Number |
|---|
| 5 |

| Ward | Alderman | Phone | Address |
|---|---|---|---|
| 43 | Smith, Michele | 773-348-9500 | 2523 North Halsted Street |

Close Window

## Parcel Detail 14-33-307-004

### Assessor

PIN: **1433307004**
Tax Address: **415 W Armitage Ave**
Land Area: **2,200** (Sq.Ft.)
City Owned: ----

### Addresses

Building Addresses
**415 W Armitage Ave**

## Chicago Geography

### Political

Ward: 43
Illinois House: **12**
Illinois Senate: **6**

### Incentive Programs

TIF: _No TIF_
Redevelopment Area: _No Redev. Area_
Enterprise Zone: _No Enterprise Zone_
Empowerment Zone: _No Empowerment Zone_
Enterprise Community: **No Enterprise Comm.**

### Boundaries

Zoning: RM-5
Planning District: North
Community Area: Lincoln Park (7)
Neighborhood: **Old Town**
Census Tract: **071600**
Census Block: **071600 1000**

## Detailed Map

Show Aerial



Click the box to bring up the image.

Assessor Photo

## Units (Buildings and Condominiums)

| Unit | Taxpayer | Taxpayer Address | Ownership |
|------|----------|------------------|-----------|

Parcel Report Results for 1433307004

| 0000 | Chad C Emoghoiz | 5612 Prairie Ridge Rd  Crystal Lake Il  60014 | Title Search |
| --- | --- | --- | --- |

# SOF EXHIBIT D

**TITLE 17 CHICAGO ZONING ORDINANCE**
**CHAPTER 17-2 RESIDENTIAL DISTRICTS**

**17-2-0100  District descriptions.**

    17-2-0101 Generally. The "R", residential districts are intended to create, maintain and promote a variety of housing opportunities for individual households and to maintain the desired physical character of the city's existing neighborhoods. While the districts primarily accommodate residential use types, nonresidential uses that are compatible with residential neighborhoods are also allowed.

…

    17-2-0104-C RM5 and RM5.5. The RM5 and RM5.5 districts are intended to accommodate multi-unit residential buildings. The RM5 district differs from the RM5.5 district only in terms of the maximum building height allowed. Applicable height limits in RM5 generally limit buildings to a maximum of 3 1/2 to 4 stories, whereas larger lots in the RM5.5 district could contain 5-story structures. RM5.5 zoning is intended to be applied only in areas where the established neighborhood character is defined by buildings taller than 4 stories or in areas where there is no established neighborhood character, due to a lack of buildings.

…

(Added Coun. J. 5-26-04, p. 25275; Amend Coun. J. 3-9-05, p. 44391)

**17-2-0200  Allowed uses.**

**17-2-0207 Use Table and Standards.**

| USE GROUP | | Zoning Districts | | | | | | | | Use Standard | Parking Standard |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Use Category | | RS | RS | RS | RT | RT | RM | RM | RM | | |
| | Specific Use Type | 1 | 2 | 3 | 3.5 | 4 | 4.5 | 5-5.5 | 6-6.5 | | |
| P= permitted by-right   S = special use approval req'd   PD = planned development approval req'd   - = Not allowed | | | | | | | | | | | |
| RESIDENTIAL | | | | | | | | | | | |
| A. Household Living | | | | | | | | | | | |
| 1. | Detached House | P | P | P | P | P | P | P | P | | § 17-10-0207-A |
| 2. | Elderly Housing | - | - | - | P | P | P | P | P | | § 17-10-0207-A |
| 3. | Two-Flat | - | - | P | P | P | P | P | P | | § 17-10-0207-A |
| 4. | Townhouse | - | - | - | P | P | P | P | P | § 17-2-0500 | § 17-10-0207-A |
| 5. | Multi-Unit (3+ units) Residential | - | - | - | P | P | P | P | P | | § 17-10-0207-C |
| 6. | Single-Room Occupancy | - | - | - | - | P | P | P | P | | § 17-10-0207-B |
| B. Group Living | | | | | | | | | | | |
| 1. | Assist. Living (Elderly Custodial Care) | - | - | - | - | P | P | P | P | | § 17-10-0207-Q |
| 2. | Convents and Monasteries | P | P | P | P | P | P | P | P | | § 17-10-0207-Q |
| 3. | Community Home, Family | P | P | P | P | P | P | P | P | | § 17-10-0207-Q |
| 4. | Community Home, Group | S | S | S | S | P | P | P | P | | § 17-10-0207-Q |
| 5. | Domestic Violence Residence, Family | S | S | S | P | P | P | P | P | | § 17-10-0207-Q |
| 6. | Domestic Violence Residence, Group | - | - | S | S | P | P | P | P | | § 17-10-0207-Q |
| 7. | Domestic Violence Shelter | - | - | - | - | S | S | S | S | | § 17-10-0207-Q |
| 8. | Nursing Home (Skilled Nursing Care) | - | - | - | - | S | S | S | S | | § 17-10-0207-Q |
| *10. | Temporary Overnight Shelter | - | - | S | S | S | S | S | S | § 17-9-0115 | § 17-10-0207-Q |
| * **Editor's note** – Coun. J. 9-13-06, p. 84870, did not provided and entry for "B.9." | | | | | | | | | | | |
| 11. | Transitional Residences | S | S | S | S | S | S | S | S | § 17-9-0115 | § 17-10-0207-Q |
| 12. | Transitional Shelters | - | - | S | S | S | S | S | S | § 17-9-0115 | § 17-10-0207-Q |
| 13. | Group Living Not Otherwise Classified | - | - | - | - | S | S | S | S | | § 17-10-0207-Q |
| PUBLIC AND CIVIC | | | | | | | | | | | |
| C. Colleges and Universities | | - | - | - | - | P | P | P | P | § 17-10-0207-E | |
| D. Cultural Exhibits and Libraries | | P | P | P | P | P | P | P | P | | § 17-10-0207-F |
| E. Day Care | | P | P | P | P | P | P | P | P | | § 17-10-0207-E |

§ 17-2-0207                **Chicago Municipal Code – Chicago Zoning Ordinance**

| USE GROUP | | Zoning Districts | | | | | | | | Use Standard | Parking Standard |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Use Category | | RS | RS | RS | RT | RT | RM | RM | RM | | |
| | Specific Use Type | 1 | 2 | 3 | 3.5 | 4 | 4.5 | 5-5.5 | 6-6.5 | | |
| P= permitted by-right   S = special use approval req'd   PD = planned development approval req'd   - = Not allowed | | | | | | | | | | | |
| **PUBLIC AND CIVIC** (continued) | | | | | | | | | | | |
| F. Hospital | | - | - | - | - | P | P | P | P | | § 17-10-0207-G |
| G. Lodge or Private Club | | - | - | - | - | S | S | S | S | § 17-9-0111 | § 17-10-0207-H |
| H. Parks and Recreation (except as more specifically regulated) | | P | P | P | P | P | P | P | P | | § 17-10-0207-E |
| | 1. Community Centers, Recreation Buildings and Similar Assembly Use | S | S | S | S | S | S | S | S | | § 17-10-0207-E |
| | 2. Community Garden | P | P | P | P | P | P | P | P | § 17-9-0103.5 | § 17-10-0207-E |
| I. Public Safety Services | | | | | | | | | | | |
| | 1. Police Station | S | S | S | S | S | S | S | S | | § 17-10-0207-E |
| | 2. Fire Station | P | P | P | P | P | P | P | P | | § 17-10-0207-E |
| J. Religious Assembly | | P | P | P | P | P | P | P | P | | § 17-10-0207-I |
| K. School | | P | P | P | P | P | P | P | P | | § 17-10-0207-E |
| L. Utilities and Services, Minor | | P | P | P | P | P | P | P | P | | § 17-10-0207-E |
| M. Utilities and Services, Major | | S | S | S | S | S | S | S | S | | § 17-10-0207-E |
| **COMMERCIAL** | | | | | | | | | | | |
| *O. Funeral and Interment Service | | | | | | | | | | | |
| * **Editor's note** – Coun. J. 9-13-06, p. 84870, did not provide an entry for "N." | | | | | | | | | | | |
| | 1. Cemetery / Mausoleum / Columbarium | P | P | P | P | P | P | P | P | | § 17-10-0207-Q |
| | 2. Cremating | S | S | S | S | S | S | S | S | | § 17-10-0207-Q |
| P. Lodging | | | | | | | | | | | |
| | 1. Bed and Breakfast | - | - | - | - | P | P | P | P | § 17-9-0103 | § 17-10-0207-S |
| | 2. Vacation Rental | - | - | - | - | - | S | S | S | | |
| Q. Medical Service | | | | | | | | | | | |
| | 1. Government-operated Health Center | - | - | - | - | S | S | S | S | | § 17-10-0207-T |
| R. Office | | | | | | | | | | | |
| | 1. Foreign Consulates | - | - | - | - | P | P | P | P | § 17-9-0108 | § 17-10-0207-Q |
| | 2. Philanthropic and Eleemosynary Institutions | - | - | - | - | P | P | P | P | § 17-9-0113 | § 17-10-0207-Q |
| S. Parking, Non-Accessory | | - | - | - | - | P/S | P/S | P/S | P/S | § 17-9-0111.5 | None Req'd |
| T. Residential Support Service | | - | - | - | - | - | - | P | P | § 17-9-0114 | None Req'd |

**Residential Districts**                                               § 17-2-0302-A

| USE GROUP | | Zoning Districts | | | | | | | | Use Standard | Parking Standard |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Use Category** | | **RS** | **RS** | **RS** | **RT** | **RT** | **RM** | **RM** | **RM** | | |
| | Specific Use Type | 1 | 2 | 3 | 3.5 | 4 | 4.5 | 5-5.5 | 6-6.5 | | |
| P= permitted by-right   S = special use approval req'd   PD = planned development approval req'd   - = Not allowed | | | | | | | | | | | |
| **OTHER USES** | | | | | | | | | | | |
| U. Wireless Communication Facilities | | | | | | | | | | | |
| 1. | Co-located | P | P | P | P | P | P | P | P | § 17-9-0118 | None Req'd |
| 2. | Freestanding (Tower) | S | S | S | S | S | S | S | S | § 17-9-0118 | None Req'd |
| **ACCESSORY** | | | | | | | | | | | |
| V. Accessory Uses | | P | P | P | P | P | P | P | P | § 17-9-0200 | None Req'd |
| W. Coke & Coal Bulk Material | | - | - | - | - | - | - | - | - | § 17-9-0117-B | None Req'd |

(Added Coun. J. 5-26-04, p. 25275; Amend Coun. J. 9-1-04, p. 30490; Amend Coun. J. 3-9-05, p. 44391; Amend Coun. J. 9-13-06, p. 84870, § 2; Amend Coun. J. 6-30-10, p. 96060, § 4; Amend Coun. J. 11-3-10, p. 104527; Amend Coun. J. 9-8-11, p. 7541, § 1; Amend Coun. J. 4-20-14, p. 80394, § 1)

# SOF EXHIBIT E

(Published by the Authority of the City Council of the City of Chicago)

**COPY**



# JOURNAL of the PROCEEDINGS
## of the
# CITY COUNCIL
## of the
# CITY of CHICAGO, ILLINOIS

---

Special Meeting -- Friday, July 2, 2010

at 10:00 A.M.

(Council Chambers -- City Hall -- Chicago, Illinois)

---

**OFFICIAL RECORD.**

**RICHARD M. DALEY**
**Mayor**

**MIGUEL DEL VALLE**
**City Clerk**

7/2/2010                          SPECIAL MEETING                          96233

## Attendance At Meeting.

*Present* -- The Honorable Richard M. Daley, Mayor, and Aldermen Moreno, Fioretti, Dowell, Preckwinkle, Hairston, Lyle, Jackson, Harris, Beale, Pope, Balcer, Cárdenas, Olivo, Burke, Foulkes, Thompson, Thomas, Lane, Rugai, Cochran, Brookins, Muñoz, Zalewski, Dixon, Solis, Maldonado, Burnett, E. Smith, Graham, Reboyras, Suarez, Austin, Colón, Rice, Mitts, Allen, O'Connor, Reilly, Daley, Tunney, Levar, Shiller, Schulter, M. Smith, Moore.

*Absent* -- Aldermen Waguespack, Mell, Laurino, Doherty, Stone.

––––––––––––––

## Call To Order.

On Friday, July 2, 2010 at 10:00 A.M., the Honorable Richard M. Daley, Mayor, called the City Council to order. The Honorable Miguel del Valle, City Clerk, called the roll of members and it was found that there were present at that time: Aldermen Moreno, Fioretti, Dowell, Hairston, Lyle, Jackson, Harris, Beale, Pope, Balcer, Cárdenas, Olivo, Burke, Foulkes, Thompson, Thomas, Lane, Rugai, Cochran, Brookins, Muñoz, Zalewski, Dixon, Solis, Maldonado, Burnett, E. Smith, Graham, Reboyras, Suarez, Austin, Colón, Rice, Mitts, Allen, O'Connor, Reilly, Daley, Tunney, Levar, Shiller, Schulter, M. Smith, Moore -- 44.

Quorum present.

––––––––––––––

## Pledge Of Allegiance.

Alderman Beale led the City Council and assembled guests in the Pledge of Allegiance to the Flag of the United States of America.

––––––––––––––

## Invocation.

Rabbi Meir Chai Benhiyoun of Chabad Center for Jewish Life of Downtown Chicago, accompanied by his daughter, Ruth Shaina who read a passage from Isaiah 4:2, opened the meeting with prayer.

96234          JOURNAL--CITY  COUNCIL--CHICAGO          7/2/2010

*Placed On File* -- CALL FOR SPECIAL MEETING.

[F2010-213]

The Honorable Miguel del Valle, City Clerk, informed the City Council that the following call for a special meeting was filed in his office on June 30, 2010 at 8:53 A.M.:

OFFICE OF THE MAYOR
CITY OF CHICAGO

June 30, 2010.

Honorable Miguel del Valle
City Clerk
City Hall, Room 107
121 North LaSalle Street
Chicago, Illinois 60602

DEAR MR. DEL VALLE -- I hereby call a special meeting of the City Council of the City of Chicago, to be convened at 10:00 A.M. on Friday, July 2, 2010 in the City Council Chambers in City Hall, for the sole purpose of considering and voting on an ordinance regulating firearms.

Very truly yours,

(Signed)    RICHARD  M.  DALEY,
*Mayor.*

---

COMMITTEE  ON  POLICE  AND  FIRE.

---

AMENDMENT OF TITLES 2, 4 AND 8 OF MUNICIPAL CODE ESTABLISHING NEW REGULATIONS GOVERNING FIREARMS.

[O2010-3644]

The Committee on Police and Fire submitted the following report:

7/2/2010                    SPECIAL  MEETING                    96235

CHICAGO, July 1, 2010.

*To the President and Members of the City Council:*

Your Committee on Police and Fire held its meeting on June 28, 2010 which reconvened June 29 and July 1, 2010 to consider an ordinance (direct introduction) introduced by the Honorable Mayor Richard M. Daley, at the request of the Corporation Counsel, concerning firearm regulation, and having had the same under advisement, begs leave to report and recommend that your Honorable Body *Pass* the proposed item transmitted herewith.

Respectfully submitted,

(Signed)   ANTHONY A. BEALE,
*Chairman.*

On motion of Alderman Beale, the said proposed ordinance transmitted with the foregoing committee report was *Passed* by yeas and nays as follows:

*Yeas* -- Aldermen Moreno, Fioretti, Dowell, Preckwinkle, Hairston, Lyle, Jackson, Harris, Beale, Pope, Balcer, Cárdenas, Olivo, Burke, Foulkes, Thompson, Thomas, Lane, Rugai, Cochran, Brookins, Muñoz, Zalewski, Dixon, Solis, Maldonado, Burnett, E. Smith, Graham, Reboyras, Suarez, Austin, Colón, Rice, Mitts, Allen, O'Connor, Reilly, Daley, Tunney, Levar, Shiller, Schulter, M. Smith, Moore -- 45.

*Nays* -- None.

Alderman Pope moved to reconsider the foregoing vote.  The motion was lost.

The following is said ordinance as passed:

**WHEREAS**, A recent study by the Centers for Disease Control and Prevention found that in the United States there were 30,896 deaths from firearms in 2006, making firearms one of the top ten causes of death in the country; and

**WHEREAS**, Annually, more than 100,000 people in our nation are shot or killed with a firearm, with more than 3,000 of these victims being children or teenagers; and

**WHEREAS**, The United States is one of the few remaining developed nations that places only a minimal restrictions on the sale or possession of firearms; and

**WHEREAS**, Firearm-related injuries and deaths are the cause of significant social and economic costs to the City and our communities and have a severe impact on our criminal justice and health care systems; and

**WHEREAS**, In 2009, in the City there were 1,815 aggravated batteries with a firearm, of which 83 were shootings inside a residence, and there were 379 murders with a firearm, of which 34 were murders involving a firearm inside a home; and

**WHEREAS**, Between the beginning of this year and June, 15, 2010, there were 742 aggravated batteries with a firearm, of which 36 took place inside a residence, and 152 murders with a firearm, of which 19 were inside a residence; and

**WHEREAS**, Given the dangerous and deadly nature of handguns, in 1982 the City of Chicago enacted a ban on registering handguns as a method to protect public safety and the health and welfare of its residents; and

**WHEREAS**, In 2008, the Supreme Court of the United States decided the case of *District of Columbia v. Heller*, which held that the Second Amendment to the United States Constitution protects an individual right to possess a firearm unconnected with service in the militia; and

**WHEREAS**, After the *Heller* decision, the City's handgun registration ban was challenged in the case of *McDonald v. the City of Chicago*; and

**WHEREAS**, On June 28, 2010, the Supreme Court issued its opinion in the *McDonald* case and ruled that the Second Amendment's right to possess a handgun for self-defense in the home also applied to the states; and

**WHEREAS**, Although the State of Illinois has already enacted several laws to regulate the sale and possession of firearms, these laws are not sufficient to protect the City from the unique and heightened risk of firearm violence, especially handgun violence, endemic in densely populated urban areas, and

**WHEREAS**, In order to provide for the ongoing protection of the public welfare and safety, it is essential for the City Council of the City of Chicago to promptly pass an ordinance that provides for reasonable regulation of firearms in compliance with the rulings of the United States Supreme Court, but still is effective in protecting the public from the potentially deadly consequences of gun violence in our City; and

**WHEREAS**, When a gun is registered with the City, certain personal identifying information, such as the registrant's address, is obtained so that a first responder can be advised that a gun is present in that home. In order to protect the privacy and safety of people registering guns, any information provided in the registration procedure should not be available to the public. The City is requesting that Illinois Attorney General Lisa Madigan issue an opinion, as expeditiously as possible, on whether the information provided to the City for gun registration is exempt from disclosure under the Illinois Freedom of Information Act, 5 ILCS 140, et seq.; and

**WHEREAS**, As a consequence of the United States Supreme Court decisions in *Heller* and *McDonald*, it is anticipated that gun ownership in many communities, including large urban areas, will increase. To ensure public safety and the welfare of a community, it is essential that local law enforcement agencies be made aware of any gun brought into their jurisdictions. Therefore, the United States Congress must pass a law mandating that the Bureau of Alcohol, Tobacco, Firearms and Explosives timely notify a local law enforcement agency of any purchase or sale of a firearm by a resident of that community; and

**WHEREAS**, In addition, the ability to have handguns in a home will expose taxpayers to greater costs and expenses associated with the increased number of incidents involving a first responder entering a home where a gun is present. In order to minimize the impact of these costs to the taxpayers, the United States Congress and the State of Illinois must pass laws that grant immunity for the City and its first responders from any civil liability for any accidental or lawfully intentional actions by the first responders in responding to a situation in a home where a gun is present and the first responder perceives a danger caused by the presence of the gun; now, therefore,

### BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF CHICAGO:

**SECTION 1.** Chapter 2-14 of the Municipal Code of Chicago is hereby amended by deleting the language struck through, and by adding the language underscored, as follows:

**2-14-132 Impoundment.**
    (1)    Whenever the owner of a vehicle seized and impounded pursuant to Sections 3-46-076, 3-56-155, 4-68-195, 9-80-220 or 9-112-555 of this Code (for purposes of this section, the "status-related offense sections"), or Sections 7-24-225, 7-24-226, 7-28-390, 7-28-440, 7-38-115(c-5), 8-4-130, 8-8-060, 8-20-015, 8-20-070, 9-12-090, 9-76-145, 9-80-240, 9-92-035, 11-4-1410, 11-4-1500 or 15-20-270 of this Code (for purposes of this section, the "use-related offense sections") requests a preliminary hearing in person and in writing at the department of administrative hearings, within 15 days after the vehicle is seized and impounded, an administrative law officer of the department of administrative hearings shall conduct such preliminary hearing within 48 hours of request, excluding Saturdays, Sundays and legal holidays, unless the vehicle was seized and impounded pursuant to Section 7-24-225 and the department of police determines that it must retain custody of the vehicle under the applicable state or federal forfeiture law. If, after the hearing, the administrative law officer determines that there is probable cause to believe that the vehicle was used in a violation of this Code for which seizure and impoundment applies, or, if

the impoundment is pursuant to Section 9-92-035, that the subject vehicle is eligible for impoundment under that section, the administrative law officer shall order the continued impoundment of the vehicle as provided in this section unless the owner of the vehicle pays to the city the amount of the administrative penalty prescribed for the code violation plus fees for towing and storing the vehicle. If the vehicle is also subject to immobilization for unpaid parking and/or compliance violations, the owner of the vehicle must also pay the amounts due for all such outstanding violations prior to the release of the vehicle. If the administrative law officer determines there is no such probable cause, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle has previously been determined not to be eligible for impoundment under that section, the vehicle will be returned without penalty or other fees.

*(omitted text is unaffected by this ordinance)*

### 2-14-190  Municipal hearings division – Jurisdiction.

(a)        The department of administrative hearings is authorized to establish a system of administrative adjudication for the enforcement of all provisions of the Municipal Code that are not adjudicated by the vehicle, buildings, environmental safety or consumer affairs hearings divisions, except that it shall not adjudicate violations of the following chapters and sections: chapter 4-92 (Massage Establishments and Massage Services); chapter 4-144 (Weapons); and Section 7-28-190 (Health Nuisances – Throwing Objects into Roadways); chapter 8-20 (Weapons), other than Section 8-20-015 (Unlawful Firearm in Motor Vehicle – Impoundment); and chapter 8-24 (Firearms and Other Weapons).

*(omitted text is unaffected by this ordinance)*

**SECTION 2.** Chapter 2-84 of the Municipal Code of Chicago is hereby amended by adding a new section 2-84-075, as follows:

### 2-84-075 Sale of firearms and ammunition authorized by the superintendent.

Notwithstanding any other provision of this code to the contrary, the superintendent may authorize the sale of firearms or ammunition by a person issued a federal firearms license to a member of the police department, if that member is authorized to carry such firearm or ammunition. Such sales shall be conducted at department of police facilities.

**SECTION 3.** Title 4 of the Municipal Code of Chicago is hereby amended by adding a new section 4-144-065, by adding the language underscored, and by deleting the language struck through, as follows:

### 4-144-010  License – Required.

It shall be unlawful for any person to engage in the business of selling, or to sell, or give away or otherwise transfer, any pistol, revolver or other firearm, dagger, stiletto, billie, derringer, bowie knife, dirk, stun gun or taser, as defined in Section 24-1 of the Illinois Criminal Code, 720 ILCS 5/24-1, or other deadly weapon which can be carried or concealed on the person, or any ammunition, as that term is defined in Section 8-20-010, without securing a weapons dealer license. The license required by this chapter shall be in addition to any other license required by law. It shall be unlawful for any person licensed under this chapter to engage in the business of selling, or to sell, give away or otherwise transfer, any firearm as that term is defined in Section 8-20-010.

7/2/2010                                SPECIAL MEETING                                96239

**4-144-061  Sale of certain handgun ammunition prohibited.**
        Except as allowed by <u>section 8-20-100(e)</u> ~~subsection (e) of Section 8-20-170 of this Code~~, it shall be unlawful for any person to sell, offer for sale, expose for sale, barter or give away to any person within the city, any <u>armor piercing or .50 caliber</u> ammunition ~~of the following calibers and types:~~

> ~~.45 automatic~~
> ~~.380 automatic~~
> ~~.38 special~~
> ~~.357 magnum~~
> ~~.25 caliber~~
> ~~.22 caliber, including .22 long~~
> ~~9 millimeter~~

        ~~Any other ammunition, regardless of the designation by the manufacturer, distributor or seller, that is capable of being used as a substitute for any of the foregoing.~~

**4-144-062  Sale of <u>ammunition to minors-prohibited.</u> ~~handguns without childproofing or safety devices prohibited.~~**
        <u>No person licensed under this chapter shall sell or otherwise transfer any ammunition to a person who is under the age of 18.</u>

        ~~Except as allowed by subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, barter or give away to any person any handgun which does not contain:~~
                ~~(1)       A safety mechanism to hinder the use of the handgun by unauthorized users. Such devices shall include, but shall not be limited to, trigger locks, combination handle locks, and solenoid use-limitation devices, and~~
                ~~(2)       A load indicator device that provides reasonable warning to potential users such that users even unfamiliar with the weapon would be forewarned and would understand the nature of the warning.~~

        ~~Safety mechanism means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun by other than the owner of the handgun and those specifically authorized by the owner to use the handgun.~~

        ~~A trigger lock means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the handgun without first removing the trigger lock by use of the trigger lock's key.~~

        ~~A combination handle lock means a device that is part of the handgun which precludes the use of the handgun unless the combination tumblers are properly aligned.~~

        ~~A solenoid use-limitation device means a device which precludes, by use of a solenoid, the firing of the handgun unless a magnet of the appropriate strength is placed in proximity to the handle of the weapon.~~

        ~~A load indicator means a device which plainly indicates that a bullet is placed in the handgun in a way that pulling the trigger or otherwise handling the handgun may result in detonation.~~

**4-144-065 Sale of metal piercing bullets.**
    No person licensed under this chapter shall sell, offer for sale, expose for sale, barter, give away or otherwise transfer any metal piercing bullets, as that term is defined in section 8-20-010.

    **SECTION 4.** Chapter 8-20, Articles I and II, section 8-20-010 through and including section 8-20-260 of the Municipal Code of Chicago are deleted in their entirety and replaced with the following language;

## ARTICLE I. DEFINITIONS.

**8-20-010 Definitions:**
    For purposes of this chapter the following terms shall apply:

    "The Act" means the Illinois Firearm Owners Identification Card Act, 430 ILCS 65/1 et seq., as amended.

    "Ammunition" means any self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable to use in a firearm; excluding however;
        (1) any ammunition used exclusively for line-throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or
        (2) any ammunition designed exclusively for use with a stud or rivet driver or other similar industrial ammunition.

    "Antique firearm" has the same meaning ascribed to that term in 18 U.S.C. § 921(a)(16).

    "Assault weapon" means:
    (1) A semiautomatic rifle that has the ability to accept a detachable magazine and has one or more of the following:
        (i)  a folding or telescoping stock
        (ii) a handgun grip which protrudes conspicuously beneath the action
        (iii) a bayonet mount
        (iv) a flash suppressor or a barrel having a threaded muzzle
        (v) a grenade launcher; or

    (2) A semiautomatic shotgun that has one or more of the following:
        (i)  a folding or telescoping stock
        (ii) a handgun grip which protrudes conspicuously beneath the action
        (iii) a fixed magazine capacity in excess of 5 rounds
        (iv) an ability to accept a detachable magazine; or

    (3) A semiautomatic handgun that has an ability to accept a detachable magazine and has one or more of the following:
        (i) an ammunition magazine that attaches to thehandgun outside thehandgun grip
        (ii) a barrel having a threaded muzzle
        (iii) a shroud that is attached to, or partially or completely encircles the barrel, and permits the shooter to hold the firearm with the non-trigger hand without being burned;
        (iv) a manufactured weight of 50 ounces or more when the handgun is unloaded
        (v) a semiautomatic version of an automatic firearm.

Case: 1:10-cv-04257 Document #: 204-3 Filed: 11/29/16 Page 42 of 110 PageID #:1589

"Chicago Firearm Permit" or "CFP" means the permit issued by the City which allows a person to possess a firearm.

"Corrections officer" means wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of an offense.

"Department" means the department of police.

"Dwelling unit" has the same meaning ascribed to that term in section 17-17-0248.

"Duty-related firearm" shall mean any firearm which is authorized by any law enforcement agency or employer to be utilized by their personnel in the performance of their official duties.

"Firearm" means any device, by whatever name known, which is designed or restored to expel a projectile or projectiles by the action of any explosive, expansion of gas or escape of gas. Provided, that such term shall not include:

> (1) any pneumatic gun, spring gun, paint ball gun or B-B gun which either expels a single globular projectile not exceeding .18 inch in diameter and which has a maximum muzzle velocity of less than 700 feet per second or breakable paint balls containing washable marking colors;
> (2) any device used exclusively for line-throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or
> (3) any device used exclusively for firing explosives, rivets, stud cartridges, or any similar industrial ammunition.

"Firearm case" means any firearm case, carrying box, shipping box or other similar container that is designed for the safe transportation of the firearm.

"FOID" means the Firearm Owner's Identification Card issued pursuant to the Act.

"Handgun" means a firearm designed to be held and fired by the use of a single hand, and includes a combination of parts from which such firearm can be assembled.

"High capacity magazine" means any ammunition magazine having a capacity of more than 12 rounds of ammunition.

"Home" means the inside of a person's dwelling unit which is traditionally used for living purposes, including the basement and attic. A "home" does not include: (i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas; or (iii) any dormitory, hotel, or group living, as that term is defined in section 17-17-0102-A.

"Laser sight accessory" means a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm.

"Lawful transportation" means the transportation of a firearm by a person:
  (1) in compliance with section 8-20-090; or
  (2) who has a valid FOID card, a CFP and firearm registration certificate, if applicable, and the firearm is: (i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case.

"Long gun" means any firearm, other than a handgun.

"Machine gun" means any firearm which can fire multiple rounds of ammunition by a single function of the firing device or one press of the trigger.

"Metal piercing bullet" means any bullet that is manufactured with other than a lead or lead alloy core, or ammunition of which the bullet itself is wholly composed of, or machined from, a metal or metal alloy other than lead, or any other bullet that is manufactured to defeat or penetrate bullet resistant properties of soft body armor or any other type of bullet resistant clothing which meets the minimum requirements of the current National Institute for Justice Standards for "Ballistic Resistance of Police Body Armor."

"Organization" means partnership, company, corporation or other business entity, or any group or association of two or more persons united for a common purpose.

"Peace officer" means any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses.

"Retired department police officer" means a person who is retired from the department in good standing and without any disciplinary charges pending, and who is, or is eligible to become, an annuitant of the Policemen's Annuity and Benefit Fund of the City of Chicago.

"Sawed-off shotgun" means a shotgun having one or more barrels less than18 inches in length and any weapon made from a shotgun, whether by alteration, modification or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Security personnel" means special agents employed by a railroad or public utility to perform police functions, guards of armored car companies, watchmen, security guards or persons regularly employed in a commercial or industrial operation for the protection of persons employed by, or property related to, such commercial or industrial operation; and watchmen while in the performance of the duties of their employment.

"Short-barreled rifle" means a rifle having one or more barrels less than 16 inches in length, and any weapon made from a rifle, whether by alteration, modification, or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Superintendent" means the superintendent of the department or his designated representative.

"Safety mechanism" means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun.

"Trigger lock" means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the firearm without first removing the trigger lock by use of the trigger lock's key.

"Unregisterable firearm" means any firearm listed in section 8-20-170.

"Unsafe handgun" means any handgun that is listed on the superintendent's roster of unsafe handguns because, in the determination of the superintendent, the handgun is unsafe due to its size, ability to be concealed, detectability, quality of manufacturing, quality of materials, ballistic accuracy, weight, reliability, caliber, or other factors which makes the design or operation of the handgun otherwise inappropriate for lawful use.

"Violent crime" has the same meaning ascribed to that term in the Rights of Crime Victims and Witnesses Act, 725 ILCS 120/1, et seq., as amended.

## ARTICLE II. POSSESSION OF FIREARMS

### 8-20-020 Unlawful possession of handguns.

(a) It is unlawful for any person to carry or possess a handgun, except when in the person's home.

(b) The provisions of this section shall not apply to:

(1) peace officers, and any person summoned by a peace officer to assist in making arrests or preserving the peace, while assisting such officer;

(2) corrections officers while in the performance of their official duty, or while commuting between their homes and places of employment;

(3) members of the Armed Services or Reserve Forces of the United States or the Illinois National Guard or the Reserve Officers Training Corps, while in the performance of their official duty;

(4) security personnel;

(5) persons licensed as private security contractors, private detectives, or private alarm contractors, or employed by an agency certified by the Illinois Department of Professional Regulation;

(6) persons regularly employed in a commercial or industrial operation as a security guard for the protection of persons employed and private property related to such commercial or industrial operation, while in the performance of their duties or traveling between sites or properties belonging to the employer, and who, as a security guard, is registered with the Illinois Department of Professional Regulation;

(7) persons employed by a financial institution for the protection of other employees and property related to such financial institution, while in the performance of their duties, commuting between their homes and places of employment, or traveling between sites or properties owned or operated by such financial institution;

(8) persons employed by an armored car company to drive an armored car, while in the performance of their duties;

(9) persons who have been classified as peace officers pursuant to the Peace Officer Fire Investigation Act;

(10) investigators of the Office of the State's Attorneys Appellate Prosecutor authorized by the board of governors of the Office of the State's Attorneys Appellate Prosecutor to carry weapons pursuant to Section 7.06 of the State's Attorneys Appellate Prosecutor's Act;

(11) special investigators appointed by a State's Attorney under Section 3-9005 of the Counties Code;

(12) probation officers while in the performance of their duties, or while commuting between their homes, places of employment or specific locations that are part of their assigned duties, with the consent of the chief judge of the circuit for which they are employed;

(13) court security officers while in the performance of their official duties, or while commuting between their homes and places of employment, with the consent of the sheriff;

(14) persons employed as an armed security guard at a nuclear energy, storage, weapons or development site or facility regulated by the Nuclear Regulatory Commission who have completed the background screening and training mandated by the rules and regulations of the Nuclear Regulatory Commission;

(15) duly authorized military or civil organizations while parading, with the special permission of the Governor;

(16) persons engaged in the manufacture, transportation, or sale of firearms to persons authorized under this subsection to possess those firearms;

(17) a person while engaged in the lawful transportation of a firearm.

**8-20-030 Unlawful possession of long guns.**
(a) It is unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business.

(b) The provisions of this section shall not apply to:
(1) any person listed in section 8-20-020(b); or
(2) any duly licensed hunter who has a valid FOID card, a CFP and firearm registration certificate, while engaged in hunting in an area where hunting is permitted.

**8-20-035 Unlawful possession of unregisterable firearms.**
(a) It is unlawful for any person to carry or posses any unregisterable firearm.

(b)  The provisions of this section shall not apply to corrections officers, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers, to the extent that any such person is otherwise authorized to acquire or possess assault weapons, and is acting within the scope of his duties, or to any person while engaged in the manufacturing, transportation or sale of assault weapons to people authorized to possess them under this section.

(c) Notwithstanding the provisions of subsection (a), those firearms listed in section 8-20-170(a) may be possessed and used by the department for training and tactical operation, as authorized by the superintendent.

(d) Any firearm carried or possessed in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-040 Firearms kept or maintained in a home.**
Subject to section 8-20-050, every person who keeps or possesses a firearm in his home shall keep no more than one firearm in his home assembled and operable.  If more than one person in the home has a valid CFP and registration certificate, each person with a valid CFP and registration certificate is entitled to have one such firearm assembled and operable in the home. All other firearms kept or possessed by that person in his home shall be broken down in a nonfunctioning state or shall have a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render the firearm temporarily inoperable.

The provisions of this section shall not apply to peace officers.

**8-20-050 Firearms- Protection of minors.**
(a) It is unlawful for any person to keep or possess any firearm or ammunition in his home if the person knows or has reason to believe that a minor under the age of 18 years is likely to gain access to the firearm or ammunition, unless:

(1) the person is physically present in the home and the firearm is either being held by the person or is physically secured on the person's body;

(2) the firearm is secured by a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render a firearm temporarily inoperable; or

(3) the firearm and ammunition are placed in a securely locked box or container.

(b) No person shall be punished for a violation of this section under the following circumstances:

(1) if the minor gains access to the firearm and uses it in a lawful act of self-defense or defense of another; or

(2) if the minor gains access to the firearm because of an unlawful entry of the premises by the minor or another person.

The provisions of this section shall not apply to peace officers.

Case: 1:10-cv-04257 Document #: 204-3 Filed: 11/29/16 Page 47 of 110 PageID #:1594

**8-20-060  Possession of a laser sight accessory, firearm silencer or muffler.**
(a) It is unlawful for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory, or a firearm silencer or muffler.

(b) The provisions of this section shall not apply to any members of the armed forces of the United States, or the organized militia of this or any other state, or peace officers, to the extent that any such person is otherwise authorized to acquire or possess a laser sight accessory, or firearm silencer or muffler, and is acting within the scope of his duties.

(c) Any laser sight accessory, or firearm silencer or muffler, carried, possessed, displayed or sold in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-070  Unlawful firearm, laser sight accessory, or firearm silencer or muffler in a motor vehicle – Impoundment.**
(a)  The owner of record of any motor vehicle that contains a firearm registered to a person who is not the driver or occupant of the vehicle, an unregistered firearm, a firearm that is not being lawfully transported, an unregisterable firearm, a laser sight accessory, or a firearm silencer or muffler, shall be liable to the city for an administrative penalty of $1,000.00 plus any towing and storage fees applicable under Section 9-92-080. Any such vehicle shall be subject to seizure and impoundment pursuant to this section.

(b)  Whenever a police officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the police officer shall provide for the towing of the vehicle to a facility controlled by the city or its agents. Before or at the time the vehicle is towed, the police officer shall notify any person identifying himself as the owner of the vehicle at the time of the alleged violation, of the fact of the seizure and of the vehicle owner's right to request a vehicle impoundment hearing to be conducted under Section 2-14-132 of this Code.

(c)  The provisions of Section 2-14-132 shall apply whenever a motor vehicle is seized and impounded pursuant to this section.

**8-20-080 Possession of ammunition.**
(a) It is unlawful for any person to carry or possess any ammunition in the city, unless the person:

> (1)  has a valid CFP and registration certificate for a firearm of the same gauge or caliber as the ammunition possessed, and while in possession of the ammunition, has the CFP and registration certificate in his possession when he is not in his home, or, when he is in his home, has the CFP and registration certificate readily available in his home; or

> (2) is a licensed weapons dealer; or

> (3) is a person listed in section 8-20-020(b).

(b) Any ammunition carried or possessed in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

7/2/2010 SPECIAL MEETING 96247

**8-20-085 High capacity magazines and metal piercing bullets – Sale and possession prohibited – Exceptions.**

(a) It is unlawful for any person to carry, possess, sell, offer or display for sale, or otherwise transfer any high capacity magazine or metal piercing bullets. This section shall not apply to corrections officers, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers, to the extent that any such person is otherwise authorized to acquire or possess metal piercing bullets, and is acting within the scope of his duties, or to any person while in the manufacturing, transportation or sale of high capacity magazines or metal piercing bullets to people authorized to possess them under this section.

(b) Any high capacity magazine or metal piercing bullets carried, possessed, displayed, sold or otherwise transferred in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-090 Interstate transportation of firearms.**

It shall not be a violation of this chapter if a person transporting a firearm or ammunition while engaged in interstate travel is in compliance with 18 U.S.C.A. §926A. There shall be a rebuttable presumption that any person within the city for more than 24 hours is not engaged in interstate travel, and is subject to the provisions of this chapter.

**8-20-100 Permissible sales and transfers of firearms and ammunition.**

(a) Except as authorized by subsection (e) and section 2-84-075, no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm.

(b) No ammunition may be sold or otherwise transferred within the city, except through a licensed weapons dealer, or as otherwise allowed by this code.

(c) No firearm or ammunition shall be security for, or be taken or received by way of any mortgage, deposit, pledge or pawn.

(d) No person may loan, borrow, give or rent to or from another person, any firearm or ammunition except in accordance with this chapter.

(e) Notwithstanding any other provision of this section, a peace officer may sell or transfer any lawfully held firearm or ammunition to another peace officer in accordance with the other provisions of this chapter.

**ARTICLE III. PERMITS FOR AND REGISTRATION OF FIREARMS.**

**8-20-110 CFP-Required**

(a) Subject to subsection (d), it is unlawful for any person to carry or possess a firearm without a CFP.

(b) No CFP application shall be approved unless the applicant:

(1) is 21 years of age or older; provided that an application of a person 18 years or older but less than 21 may be approved if the person has the written consent of his parent or legal guardian to possess and acquire a firearm or firearm ammunition and that he has never been convicted of a misdemeanor, other than a traffic offense or adjudged a delinquent; provided that such parent or legal guardian is not an

individual prohibited from having a FOID or CFP, and that the parent files an affidavit with the department attesting that the parent is not an individual prohibited from having a FOID or CFP;

(2) possesses a valid Illinois FOID;

(3) has not been convicted by a court in any jurisdiction of:
    (i)  a violent crime,
    (ii)  two or more offenses for driving under the influence of alcohol or other drugs; or
    (iii) an unlawful use of a weapon that is a firearm;

(4) has vision better than or equal to that required to obtain a valid driver's license under the standards established by the Illinois Vehicle Code;

(5) is not otherwise ineligible to possess a firearm under any federal, state or local law, statute or ordinance; and

(6) has not been convicted, adjudicated, admitted to, or found liable for a violation of section 8-20-060 or 8-20-100.

(c)  Each CFP issued shall be accompanied by a copy of this ordinance.

(d)  Any person who has a valid firearm registration certificate issued before the effective date of this 2010 ordinance shall be exempted from acquiring a CFP until the expiration of the registration certificate; provided that upon the expiration of the registration certificate, the person shall be required to obtain a CFP.  Any such person who has submitted an application for a CFP prior to or on the date of the expiration of his current registration certificate shall be deemed to be in compliance with the requirement for a CFP while his application is pending.

(e)  The provisions of this section shall not apply to any person listed in section 8-20-020(b)(1)-(16) or a person engaged in interstate travel in compliance with section 8-20-100.

**8-20-120  CFP-application**
(a)  An applicant for a CFP shall submit an application to the superintendent on a form or in a manner prescribed by the superintendent. The application shall include the following:

(1)  name, residential address and telephone number of the applicant;

(2)  the applicant's date of birth and sex;

(3)  the applicant's Illinois firearm owner's identification number and a copy of the applicant's FOID card;

(4)  evidence that the applicant meets the criteria of section 8-20-110;

(5)  two identical photographs of the applicant taken within 30 days immediately prior to the date of filing the application, equivalent to passport size, showing the full face, head and shoulders of the applicant in a clear and distinguishing manner;

(6) the applicant's Illinois driver's license number and a copy of the applicant's driver's license or Illinois identification card;

(7) an affidavit signed by a firearm instructor certified by the State of Illinois to provide firearm training courses attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training and four hours of classroom instruction that is in compliance with the requirements of the classroom instruction course, as established in rules and regulations; and

(8) any other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination as to whether the terms of this chapter have been complied with.

The superintendent shall be the custodian of all applications for CFPs under this chapter.

(b) The applicant shall submit to fingerprinting in accordance with procedures established in rules and regulations promulgated by the superintendent.

(c) For an application for a CFP submitted within 180 days of the effective date of this 2010 ordinance, the superintendent shall either approve or deny such application no later than 120 days after the date the application is submitted, unless good cause is shown. For an application for a CFP submitted thereafter, the superintendent shall either approve or deny an application within 45 days from the date the application is submitted, unless good cause is shown. An application shall not be deemed submitted until the applicant provides all the required information or documentation.

(d) All CFPs issued by the superintendent shall contain the applicant's name, date of birth, sex, and signature. Each CFP shall have the expiration date boldly and conspicuously displayed on the face of the CFP.

**8-20-130   CFP card-fee and expiration.**
(a) A CFP card shall expire 3 years after the date of issuance.

(b) The fee shall be $100.00.

(c) The CFP fee shall not be applicable to any resident of the city who is a retired department police officer.

**8-20-140   Firearm registration certificate-required**
(a) Subject to subsection (d), it is unlawful for any person to carry or possess a firearm without a firearm registration certificate.

(b) No application for a registration certificate shall be approved unless the applicant has been issued a valid CFP; provided no CFP shall be required for the issuance of a registration certificate if the person is an exempt person pursuant to section 8-20-110(e).

(c) An applicant for a registration certificate shall submit an application to the superintendent on a form or in a manner prescribed by the superintendent. The application shall include the following:

(1) name, telephone number and the address at which the firearm shall be located;

(2) a copy of the applicant's CFP and Illinois FOID card;

(3) the name of the manufacturer, the caliber or gauge, the model, type and the serial number identification of the firearm to be registered;

(4) the source from which the firearm was obtained;

(5) the address at which the firearm will be located;

(6) if an antique firearm, the year of manufacture of the firearm;

(7) the date the firearm was acquired; and

(8) any other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination as to whether the terms of this chapter have been complied with.

The superintendent shall be the custodian of all applications for registration certificates under this chapter.

(d)      (1) Subject to subsection (d)(2), an application for a registration certificate shall be submitted no later than 5 business days after a person takes possession within the city of a firearm from any source; provided that any applicant who has submitted a complete application within the required 5 business days shall be considered in compliance with this subsection until his registration certificate is either approved or denied.

(2) Notwithstanding any provision of this chapter to the contrary, a person has 90 days after the effective date of this 2010 ordinance to register a firearm, including a handgun, which had not been previously registered; provided that the person and firearm meet all the requirements of this ordinance.

(e)   For an application for a firearm registration certificate submitted within 180 days after the effective date of this 2010 ordinance, the superintendent shall either approve or deny such application no later than 45 days after the date the application is submitted.  For an application for a firearm registration certificate submitted thereafter, the superintendent shall either approve or deny the application within 21 days of the submission of the application, unless good cause is shown. An application shall not be deemed submitted until the applicant provides all the required information or documentation.

(f) The provisions of this section shall not apply to:
       (1)  firearms owned or under the direct control or custody of any federal, state or local governmental authority maintained in the course of its official duties;

(2)  duty-related firearms owned and possessed by peace officers who are not residents of the city;

(3) duty-related firearms owned or possessed by corrections officers and who are not residents of the city;

(4) firearms owned, manufactured or possessed by licensed manufacturers of firearms, bulk transporters or licensed sellers of firearms at wholesale or retail, provided that such persons have federal firearms license;

(5) any nonresident of the city participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided that such firearm shall be (i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case;

(6) persons licensed as private security contractors, security guards, private detectives, or private alarm contractors, or employed by an agency certified as such by the Department of Professional Regulation;

(7) duty-related firearms of investigators of the Office of the State's Attorneys Appellate Prosecutor authorized by the board of governors of the Office of the State's Attorneys Appellate Prosecutor to carry weapons pursuant to Section 7.06 of the State's Attorneys Appellate Prosecutor's Act;

(8) duty-related firearms of special investigators appointed by a State's Attorney under Section 3-9005 of the Counties Code;

(9) firearms being transported by a person engaged in interstate travel in compliance with section 8-20-100; or

(10) those persons summoned by a peace officer to assist in making an arrest or preserving the peace while actually engaged in assisting the peace officer.

(g) Each registration certificate issued shall contain a unique registration certificate number, the person's name, the address at which the firearm will be located, and any other information the superintendent deems necessary to identify the person and the firearm.

**8-20-145 Registration certificates- expiration.**
(a) A registration certificate issued prior to the effective date of this 2010 ordinance shall remain in effect until its expiration.

(b) For registration certificates issued after the effective date of this 2010 ordinance, a registration certificate shall expire on the same date as the date of the expiration of the CFP issued to that person.

(c) A person shall file an annual registration report with the superintendent on a form, and in a manner, prescribed by the superintendent. The annual registration report shall set forth such information as required by the superintendent in rules and regulations. If a person has multiple registration certificates, the superintendent may align the dates for the annual registration reports to the same reporting date and combine such annual registration reports into one report.

Failure to file an annual registration report may result in revocation of a person's CFP or registration certificate, and may cause that firearm to become unregisterable to that person.

**8-20-150 Application fees.**

(a) A nonrefundable application fee of $15.00 shall be payable for each firearm registered. The fee shall accompany each initial application for a registration certificate.

(b) Any person who files an annual registration report late shall pay a late filing fee of $60.00.

(c) The application fee shall not be applicable to: (1) any duty-related firearm of a peace officer domiciled in the city, or (2) any duty-related firearm that was registered to that retired department police officer at the time of the his separation from active duty in the department.

**8-20-160 Restrictions on issuance of registration certificates.**

(a) Subject to subsections(b) and (c), the superintendent shall issue no more than one firearm registration certificate to a person for a handgun during any 30-day period; provided that the superintendent may permit a person first becoming a city resident to register more than one handgun if those handguns were lawfully owned in another jurisdiction for a period of 6 months prior to the date of application.

(b) In addition to a registration certificate for a handgun pursuant to subsection (a), an applicant may be issued a registration certificate for:

(1) any firearm possessed by an applicant that was lawfully registered on the date of the enactment of this ordinance;

(2) any long gun which is eligible to be registered; or

(3) any antique firearm, including antique handguns.

The burden of proving that a firearm is an antique firearm shall be on the applicant.

(c) In addition to a registration certificate for a handgun pursuant to subsection (a), a retired department police officer may be issued a registration certificate for each duty-related handgun that was registered to that retired department police officer at the time of the his separation from active duty in the department.

**8-20-170 Unregisterable firearms.**

No registration certificate shall be approved for any of the following types of firearms:

(a) a sawed-off shotgun, .50 caliber rifle, machine gun, or short-barreled rifle;

(b) an unsafe handgun;

(c) a firearm that becomes unregisterable under the provisions of this chapter; provided that it shall only be unregistrerable for that person; or

(d) assault weapons, unless they are owned by a person who is entitled to carry or possess them pursuant to section 8-20-035.

**8-20-180 CFP and registration certificate-General provisions.**

(a)    After issuance of a CFP or a registration certificate to a person, the person shall examine the CFP or registration certificate to insure that the information thereon is correct. If the information is incorrect in any respect, the person shall return it to the superintendent with a signed statement showing the nature of the error. The superintendent shall correct the error if it occurred as a result of the superintendent's administrative process.

In the event that the error resulted from incorrect information contained in the application, the person shall submit an amended application setting forth the correct information and a statement explaining the error in the original application.

(b) A CFP and the registration certificate shall be valid only for the person to whom it was issued.

(c) A registration certificate shall only be valid for the address on the registration certificate. Except in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate.

(d) A CFP or registration certificate shall not be subject to sale, assignment, or transfer, voluntary or involuntary.

(e)  Any application for a CFP or a registration certificate shall be held in abeyance when there is a criminal proceeding for a violent crime, or an offense involving a weapon, or a proceeding to deny or revoke a CFP or firearm registration certificate pending against the person, until such proceeding has terminated.

**8-20-185 Additional duties.**

(a) Every person issued a CFP or a firearm registration certificate, in addition to any other requirements of this code, shall immediately notify the department in a manner prescribed by the superintendent of:

(1) the destruction of his firearm, or when the person knows, or should have known, that his firearm is lost, stolen or otherwise missing;

(2) the loss, theft or destruction of the CFP or registration certificate within 72 hours of the discovery of such loss, theft, or destruction;

(3) a change in any of the information appearing on the CFP or firearm registration certificate;

(4) the sale, transfer, inheritance, or other disposition of the firearm not less than 48 hours prior to delivery.

(b) Every person issued a CFP or a firearm registration certificate, in addition to any other requirements of this code, shall:

(1) immediately return to the superintendent his copy of the registration certificate for any firearm which is lost, stolen, destroyed or otherwise disposed of; and

(2) keep all information current. Any change in required information shall be reported, on a form and in manner prescribed by the superintendent, within 24 hours after the change.

**8-20-190 Denials and revocations.**

(a) An application for a CFP or a registration certificate shall be denied for any of the following reasons:

(1) any of the eligibility criteria of this chapter are not currently met;

(2) the firearm is an unregisterable firearm;

(3) the information furnished on or in connection with the application for a CFP or a registration certificate is false or misleading; or

(4) the person fails to respond to any additional information, or investigation inquiries, requested by the superintendent regarding any application.

(b) A registration certificate shall be revoked:

(1) when the firearm becomes an unregisterable firearm; or

(2) if the CFP of the person was revoked.

(c) A CFP shall be revoked if any of the eligibility criteria of this chapter are not currently met.

(d) A CFP or registration certificate may be denied or revoked for a violation of this chapter, or any rules or regulations promulgated hereunder.

(e) The CFP and all registration certificates of any person convicted of a felony after the issuance of a CFP or registration certificate to that person shall be automatically revoked by operation of law, without a further hearing. The person shall immediately dispose of all firearms by:

(i) peaceably surrendering to the department all firearms for which a registration certificate was issued;

(ii) removing such firearm from the city; or

(iii) otherwise lawfully disposing of his interest in such firearm.

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

**8-20-200 Procedure for denial.**

(a) If an application for a CFP or a registration certificate is denied by the superintendent, the superintendent shall notify the person making such application, in writing, of the denial. The notice of denial shall:

(1) set forth the basis of the denial;

(2) include a statement that within ten days of the notice of denial, the person is entitled to request a hearing, in person and in writing, at the department of administrative hearings;

(3) include a statement that the person is entitled to appear at the hearing to testify, present documents, including affidavits, and any other evidence to contest the denial;

(4) include a statement that if the person fails to request a hearing within ten days, the person is deemed to have conceded the validity of the reason stated in the notice and the denial shall become final;

(5) include a certificate of service; and

(6) include an oath or affirmation by the superintendent certifying the correctness of the facts set forth in the notice of denial.

(b) The person, within ten days after notice is sent of the denial, may file with the department of administrative hearings a request for a hearing. Such hearing request shall be made in person, and in writing, at the department of administrative hearings. An administrative law officer of the department of administrative hearings shall conduct such hearing within 72 hours of the request, excluding Saturdays, Sundays, and legal holidays.

(c) The department of administrative hearings shall conclude the hearing no later than 7 days after the commencement of the hearing.

(d) Based upon the evidence contained in the record, an administrative law officer of the department of administrative hearings shall, within 5 days of the conclusion of the hearing, issue written findings and enter an order granting or denying the application. A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

(e) If the person does not request a hearing within ten days after the notification of the denial is sent, the person shall be deemed to have conceded the validity of the reason stated in the notice and the denial shall become final.

(f) Within three days after all the time for hearings or appeals has expired, the person shall:
(1) peaceably surrender to the department the firearm for which the registration certificate was denied;

(2) remove such firearm from the city; or

(3) otherwise lawfully dispose of his interest in such firearm.

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

**8-20-205  Procedure for revocation.**

(a) Except in cases where a CFP or registration certificate is automatically revoked pursuant to section 8-20-190(e), if, in the determination of the superintendent, a CFP or a registration certificate should be revoked, he shall notify the person whose CFP or registration certificate is the subject of such revocation, in writing, of the proposed revocation. The notice shall:

(1) set forth the basis for the revocation;

(2) specify the location, date, and time for a hearing on the revocation;

(3 include a statement that the person is entitled to appear at the hearing to testify, present documents, including affidavits, and any other evidence to contest the proposed revocation;

(4) include a statement that failure of the person to appear at the hearing may include an entry of an order revoking the person's CFP or registration certificate;

(5) include a certificate of service; and

(6) include an oath or affirmation by the superintendent certifying the correctness of the facts set forth in the notice.

(b) The department of administrative hearings shall convene the hearing at the location and on the date and time specified in the revocation notice.

(c) Based upon the evidence contained in the record, an administrative law officer of the department of administrative hearings shall, within 5 days of the conclusion of the hearing, issue written findings and enter an order granting or denying the proposed revocation. A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

(d) Within three days after notification of a decision unfavorable to the person, and all time for appeals has expired, the person shall:

(1) for revocation of a registration certificate:
(i) peaceably surrender to the department the firearm for which the registration certificate was revoked;

(ii) remove such firearm from the city; or

(iii) otherwise lawfully dispose of his interest in such firearm.

(2) for revocation of a CFP, dispose of all firearms in accordance with subsection (d)(1).

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

(e) In cases where a CFP or registration certificate is automatically revoked pursuant to section 8-20-190(e), the superintendent shall notify the person of the automatic revocation of the person's CFP or registration certificate. Within three days after notification of the automatic revocation, the person may file with the department of administrative hearings a request, in writing, for a hearing on the sole issue of identity and whether he was the person so convicted. It shall be a rebuttable presumption that the person whose CFP or registration certificate was automatically revoked is the same person who was convicted of a felony.

An administrative law officer of the department of administrative hearings shall conduct such hearing within 5 days of the request for a hearing.

Based upon the evidence contained in the record, an administrative law officer of the department of hearings shall, within 5 days of the conclusion of the hearing, issue written findings as to sole issue of the identity of the person. A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

If the person does not request a hearing within three days after the notification, the person shall be deemed to have conceded the validity of the identification.

## 8-20-210 Automatic revocation of registration certificates.

If, after a hearing, a CFP issued to a person is revoked, all firearm registration certificates issued to that person shall automatically be revoked and the person shall comply with section 8-20-205(d) for disposition of the firearms.

## ARTICLE IV. Miscellaneous Provisions.

## 8-20-220 False information – Forgery – Alteration.

(a) It is unlawful for any person purchasing any firearm or ammunition, or applying for any CFP or registration certificate, or, in giving any information pursuant to the requirements of this chapter, to knowingly give false information or offer false information or evidence of identity.

(b) It is unlawful for any person to forge or materially alter any application for a CFP or firearm registration certificate.

(c) It is unlawful for any person to forge or materially alter a CFP or a firearm registration certificate.

(d) It is unlawful for any person to knowingly possess a forged or materially altered CFP or firearm registration certificate.

(f) It is unlawful for any person to knowingly make any false statement, submit any false information or misrepresent any information required in this chapter.

## 8-20-230 Notice.

For the purposes of this chapter, service of any notice, finding or decision upon a person shall be completed by any of the following methods by:

(a) personal delivery of a copy of such notice, finding or decision to the person;

(b) leaving a copy of such notice, finding or decision at the address identified on the application for a CFP or registration certificate; or

(c) mailing, by first class mail, a copy of the notice, finding or decision to the address identified on the application for a CFP or registration certificate, in which case service shall be complete as of the date the notice was mailed.

**8-20-240 Posting of unsafe handguns.**
(a) The superintendent shall post on the department's web site the roster of unsafe handguns.

(b) No less than 10 days prior to placing any handgun on the roster of unsafe handguns, the superintendent shall post on the department's web site the type or model of the handgun that will be placed on the roster.

**8-20-250 Seizure and forfeiture of firearms, ammunition, laser sight accessories and firearm silencers and mufflers-Authority and destruction.**
The superintendent has the authority to seize any firearm, assault weapon, ammunition, laser sight accessories, or firearm silencer or muffler carried or possessed in violation of this chapter or any applicable state or federal law. Such items are hereby declared contraband and shall be seized by and forfeited to the city.

Whenever any firearm, ammunition, laser sight accessories, or firearm silencer or muffler is surrendered or forfeited pursuant to the terms of this chapter, or any applicable state or federal law, the superintendent shall ascertain whether such firearm, ammunition, assault weapon, laser sight accessories, or firearm silencer or muffler is needed as evidence in any matter. All such items which are not required for evidence shall be destroyed at the direction of the superintendent; provided that those firearms and ammunition that the superintendent shall deem to be of use to the department may be retained for the use of the department. A record of the date and method of destruction and an inventory of the firearm or ammunition so destroyed shall be maintained.

**8-20-260 Rules and regulations.**
The superintendent has the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required. All rules and regulations promulgated by the superintendent pursuant to this chapter shall be posted on the department's web site.

**8-20-270 Acquisition or possession prohibited by law.**
Nothing in this chapter shall make lawful the acquisition or possession of firearms or ammunition which is otherwise prohibited by law.

**8-20-280 Prohibition on shooting galleries and target ranges.**
Shooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited; provided that this provision shall not apply to any governmental agency. The discharge of a firearm in an area where hunting is permitted shall not be a violation of this section.

**8-20-290 Severability.**
If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which reasonably can be given effect without the invalid provision or term for the application thereof.

7/2/2010                           SPECIAL MEETING                           96259

**ARTICLE V. VIOLATION OF CHAPTER PROVISIONS.**

**8-20-300  Violation – Penalty.**
         (a) Any person who violates section 8-20-020, 8-20-030, 8-20-035, 8-20-060, 8-20-080 or 8-20-110 shall upon conviction be fined not less than $1,000.00 nor more than $5000.00 and be incarcerated for a term not less than 20 days nor more than 90 days.  Each day that such violation exists shall constitute a separate and distinct offense.

         (b) Unless another fine or penalty is specifically provided, any person who violates any provision of this chapter, or any rule or regulation promulgated hereunder, shall upon conviction or a finding of liability for the first offense, be fined not less than $1,000.00, nor more than $5,000.00, or be incarcerated for not less than 20 days nor more than 90 days, or both.  Any subsequent conviction for a violation of this chapter shall be punishable by a fine of not less than $5,000.00 and not more than $10,000.00, and by incarceration for a term of not less than 30 days, nor more than six months.  Each day that such violation exists shall constitute a separate and distinct offense.

         (c) In addition to any other fine or penalty provided in this chapter, the CFP or registration certificate of any person who violates any provision of this chapter, or rule or regulation promulgated hereunder, may be revoked.  Any person whose CFP is revoked shall not be eligible for a CFP for 5 years from the date of the revocation; provided that the superintendent may waive this restriction if, in the determination of the superintendent, the applicant has demonstrated that the applicant has good reason to fear injury to his person or property.

         (d) Upon the determination that a person has violated any provision of this chapter or any rule or regulation promulgated hereunder, the superintendent may institute an administrative adjudication proceeding with the department of administrative hearings by forwarding a copy of a notice of violation or a notice of hearing, which has been properly served, to the department of administrative hearings.

         **SECTION 5.** The renumbering and amending of the sections in Chapter 8-20 are not intended to invalidate, alter, or otherwise affect in any way any action taken, or could have been taken, based upon those sections, nor shall it be construed to affect any offense or act committed, action or claim arising under those sections, penalty, forfeiture, or punishment incurred, except that any proceedings after the effective date of this 2010 ordinance shall conform, insofar as practicable, to the ordinance in effect at the time of the proceedings.

         **SECTION 6.** Title 8 of the Municipal Code of Chicago is hereby amended by adding a new section 8-24-005, by deleting sections 8-24-025 and 8-24-026, by deleting the language struck through, and by adding the language underscored, as follows:

**8-16-090  Firearms for minors.**
         No person shall sell, loan, or furnish to any minor any ~~gun, pistol or other firearm, or~~ any toy gun, toy pistol, or other toy firearm in which any explosive substance can be used~~, within the city; except that minors may be permitted, with the consent of their parents or guardians, to use firearms on the premises of a duly licensed shooting gallery, gun club, or rifle club, or to shoot game birds in accordance with the provisions of Section 8-24-050 of this Code~~.

**8-24-005 Definitions**
     For the purposes of this Chapter, the following definitions apply:

     "Corrections officers," "firearm" and "peace officer" have the meaning ascribed to those terms in section 8-20-010.

**8-24-010  Discharging firearms.**
     No person shall fire or discharge any ~~gun, pistol, or other~~ firearm within the city, except in the lawful self-defense or defense of another ~~upon premises used by a duly licensed shooting gallery, gun club, or rifle club~~, or in accordance with the provisions of Section 8-24-050 of this Code.

     No cannon or piece of artillery shall be discharged or fired off in any public way or other public place within the city, except upon the express permission of the city council.

     Any person violating any of the provisions of this section shall be fined not less than $~~250.00~~ 500.00 nor more than $~~500.00~~ 1,000.00 for each offense.

     The provisions of this section shall not apply to persons listed in section 8-20-020 (b)(1)-(15). ~~sheriffs, coroners, constables, members of the police force, or other peace officers engaged in the discharge of their official duties, or to any person summoned by any of such officers to assist in making arrests or preserving the peace while such person so summoned is engaged in assisting such officer.~~

**8-24-020  Carrying dangerous weapons.**
     (a) No person shall sell, offer for sale, keep, possess, loan or give to any person any knife, the blade of which is released by a spring mechanism, including knives known as "switch-blades", any blackjack, slingshot, sandclub, sandbag, metal knuckles or bludgeon. No person shall sell, offer for sale, loan or give to any person 18 years of age or under any type or kind of knife, any blade of which is two inches in length or longer.

     (b) [Reserved] ~~No person shall sell, manufacture, purchase, possess or carry any weapon from which eight or more shots or bullets may be discharged by a single function of the firing device.~~

     (c) No person shall carry or possess any knife, the blade of which is released by a spring mechanism, including knives known as "switch-blades", any blackjack, slingshot, sandclub, sandbag, metal knuckles or bludgeon. No person 18 years of age or under shall carry or possess any knife, the blade of which is two inches in length or longer.

     (d) No person shall carry or possess with intent to use same unlawfully against another a dagger, dirk, billy, dangerous knife, razor, stiletto or other dangerous or deadly weapon.

     (e) [Reserved] ~~No person shall carry concealed on or about his person a pistol, revolver, derringer or other firearm. Provided, however, that this provision shall not apply to the following officers while engaged in the discharge of their official duties: sheriffs, coroners, constables, policemen or other duly constituted police officers and wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime; nor to the following employees or agents while engaged in the discharge of the duties of their employment: conductors, baggagemen, messengers, drivers, watchmen, special agents and policemen employed by railroads or express companies; nor to persons lawfully summoned by an officer to assist in making arrests or preserving the peace, while so engaged in assisting such officer.~~

(f) No person shall carry concealed on or about his person a or dagger, dirk, stiletto, bowie knife, commando knife, any blade of which is released by a spring mechanism, including knives known as "switch-blades" or any other type or kind of knife, any blade of which is more than two and one-half inches in length, ordinary razor or other dangerous weapon except that no person 18 years of age or under shall carry concealed on or about his person, any knife, the blade of which is two inches in length or longer. Provided, however, that this provision shall not apply to the following officers while engaged in the discharge of their official duties: sheriffs, coroners, peace officers constables, policemen or other duly constituted police officers and corrections officers wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime; nor to the following employees or agents while engaged in the discharge of the duties of their employment: conductors, baggagemen, messengers, drivers, watchmen, special agents and policemen employed by railroads or express companies; nor to persons lawfully summoned by an officer to assist in making arrests or preserving the peace, while so engaged in assisting such officer.

(g) Any person violating the provisions of subsections (a), (c), (d) or (f) of this section shall be fined $200.00 for each offense, or shall be punished by imprisonment for a period not to exceed six months, or by both such fine and imprisonment. Any person violating the provisions of subsections (b) or (e) of this section shall be subject to a fine of $300.00 for each offense, and a mandatory minimum sentence of not less than five days imprisonment nor more than six months imprisonment for a first offense; a mandatory minimum sentence of not less than fifteen days imprisonment nor more than six months imprisonment for a second offense; and a mandatory minimum sentence of not less than thirty days imprisonment nor more than six months imprisonment for a third or subsequent offense.

(h) In addition to all other penalties, weapons Any weapons used in violation of this section are hereby declared contraband and shall be seized by and forfeited to, and confiscated by, the city.

### 8-24-021 Sale, display and use of utility knives.

(a) As used in this section, a "utility knife" is a knife consisting of a grip and single-edged sharp blade of the type typically used to cut such resistant surfaces as rugs, cardboard boxes, linoleum flooring and the like.

(b) No person shall display or offer for sale any utility knife except by placing the knife either (1) in an area immediately accessible only to an employee of the establishment, and beyond the reach of any customer less than seven feet tall; or (b 2) in a locked display cabinet, which can only be opened by an employee of the establishment.

*(omitted text is unaffected by this ordinance)*

### 8-24-025 Assault weapons or ammunition – Sale prohibited – Exceptions.

(a) No person shall sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or assault ammunition, as those terms are defined in Chapter 8-20 of this Code. This section shall not apply to any officer, agent, or employee of this or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess an assault weapon or assault ammunition and is acting within the scope of his or her duties. In addition, this section shall not apply to the acquisition or possession of assault ammunition by persons employed to provide

security for armored carriers or mobile check cashing services while in the course of such duties, while commuting directly to or from the person's place of employment, and while at the person's home, if the assault ammunition (1) is acquired or possessed for use with a weapon that the person has been authorized to carry under Section 28 of the Illinois Private Detective, Private Alarm and Private Security Act of 1983; and (2) consists of an ammunition magazine that has a capacity of 15 or fewer rounds of ammunition.

(b)     Any assault weapon or assault ammunition possessed, sold or transferred in violation of subsection (a) is hereby declared to be contraband and shall be seized,and disposed of in accordance with the provisions of Section 8-20-220.

(c)  Any person found in violation of this section shall be subject to a fine of not less than $500.00 nor more than $1,000.00 for each offense, and a mandatory minimum sentence of not less than five days imprisonment nor more than six months imprisonment for a first offense;  a mandatory minimum sentence of not less than fifteen days imprisonment nor more than six months imprisonment for a second offense; and a mandatory minimum sentence of not less than thirty days imprisonment nor more than six months imprisonment for a third or subsequent offense.

(d)     Any person who, prior to the effective date of the ordinance codified in this section, was legally in possession of an assault weapon or assault ammunition prohibited by this section shall have 14 days from the effective date of the ordinance codified in this section to do any of the following without being subject to prosecution hereunder:
(1)  To remove the assault weapon or ammunition from within the limits of the City of Chicago; or
(2)  To modify the assault weapon either to render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon; or
(3)  To surrender the assault weapon or ammunition to the superintendent of police or his designee for disposal in accordance with Section 8-20-220.

**8-24-026  Fragmenting bullets and metal piercing bullets -- Sale prohibited -- Exceptions.**
(a) No person shall manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any fragmenting bullets, metal piercing bullets, or disc projectile ammunition. This section shall not apply to any officer, agent, or employee of this or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess fragmenting bullets, metal piercing bullets, or disc projectile ammunition and is acting within the scope of his or her duties.

(b)     Any fragmenting bullets, metal piercing bullets, or disc projectile ammunition manufactured, possessed, sold or transferred in violation of subsection (a) are hereby declared to be contraband and shall be seized and disposed of in accordance with the provisions of Section 8-20-220.

(c)  Any person found in violation of this section shall be sentenced to not more than six months imprisonment or fined $500.00, or both.

**8-24-027  Disguised firearms prohibited.**

(a)      No person shall purchase, acquire, sell, offer or expose for sale, or possess any firearm that is designed, constructed, modified or disguised to resemble any other object.

(b)      Any person who violates subsection (a) of this section ~~shall be guilty of a misdemeanor, and~~ shall be incarcerated ~~subject to incarceration~~ for not less than 30 days and not more than 180 days for each offense. Each day of a continuing violation, and each purchase, acquisition, sale, offering or exposing for sale, or possession of a different firearm described in subsection (a) shall constitute a separate and distinct offense.

(c)      Nothing in this section suspends, repeals or alters any other provision of this Code which limits, restricts or prohibits the purchase, acquisition, sale, offering or exposure for sale, or possession of a firearm.

SECTION 7. The Municipal Code of Chicago is hereby amended by adding a new chapter 8-26, as follows:

**Chapter 8-26 Gun Offender Registration Ordinance**

**8-26-010  Definitions:**

For purposes of this chapter, the following definitions apply:

"Corrections facility" has the same meaning ascribed to that term in 720 ILCS 5/3-1-2.

"Conviction" or "convicted" means an adjudication by a court of competent jurisdiction that a person is guilty, and includes the sentence by the court, of the gun offense.

"Gun offender" or "offender" means any person convicted of a gun offense that is subject to the provisions of this chapter.

"Gun offense" means a criminal conviction of an offense for an unlawful use of a weapon that included a firearm under 720 ILCS 5/24, or criminal possession of a firearm in violation of any federal, state or local law.

"Department," "firearm," and "superintendent" have the meaning ascribed to those terms in section 8-20-010.

**8-26-020 Duty to register and to verity.**

(a) A gun offender who resides within the city, or remains in the city to work or attend school, shall register with the superintendent within 48 hours of either: (1) release, if the gun offender receives a sentence of imprisonment; or (2) the time sentence is imposed, if the sentence does not include imprisonment.

(b) The form and manner of registration shall be as provided in rules and regulations.

(c) The registration shall include the following information;
        (1) the person's name, date of birth, and sex;
        (2) the address where the gun offender resides, works, or attends school;·
        (3) any other legal name;
        (4) copy of a driver's license or non-driver's photo identification card;

(5) a photograph of the gun offender;
(6) a description of the offense for which the offender was convicted;
(7) the name and address of the offender's place of work, or expected place of work, including the name and phone number of his supervisor;
(8) the name and address of any educational institution which the offender attends or expects to attend; and
(9) any other information that the superintendent shall find reasonably necessary to effect the purpose of this chapter.

The gun offender shall sign a statement under oath attesting to the accuracy of the information required in this subsection.

(d) The superintendent may photograph the gun offender and require the gun offender to provide such documentation as the superintendent considers acceptable to verify any information required pursuant to this chapter.

(d) The gun offender shall submit to fingerprinting in accordance with rules and regulations promulgated by the superintendent.

**8-26-030 Initial and annual registration.**
(a) For the initial registration, a gun offender shall personally appear to register at such office of the police that the superintendent may direct.

(b) No later than 20 days after the one-year anniversary of the gun offender's initial registration, the gun offender shall personally appear at such office of the police that the superintendent may direct for the purpose of verifying the information required in this chapter.

(c) If a gun offender required to register under this chapter is confined to any federal, state or local correctional center, residential treatment center, hospital, or institution throughout the 20-day period set forth in subsection (b), the gun offender shall personally appear as required by this subsection within 48 hours of release.

**8-26-040 Registration period.**
A gun offender shall comply with the requirements of this chapter for a period beginning when he is required to register and continuing until 4 years from the date of conviction, or 4 years after the expiration of any time being served on probation, parole, supervised release, or conditional release, or 4 years after the gun offender is unconditionally released from a correctional facility, prison, hospital or other place of confinement, whichever is last. The registration period is tolled any time the gun offender fails to register or otherwise fails to comply with the requirements of this chapter.

**8-26-050 Duty to report.**
A gun offender shall report any change in information required by this chapter with 48 hours of such change, in a manner and in a form prescribed by the superintendent.

**8-26-060 Creation of gun offender registry.**

(a) The superintendent is authorized to collect and maintain gun offender information obtained pursuant to this chapter.

(b) The superintendent shall create and maintain a registry of gun offenders registered pursuant to the provisions of this chapter.

(c) The superintendent is authorized to make the gun offender registry available to any other city sister agencies or any regional or national government-established gun offender registry and may accept files from such registries.

**8-26-070 Cooperation with other agencies.**

The superintendent is authorized to cooperate with the judiciary and state and other city sister agencies to facilitate the implementation of this chapter. Assistance and cooperation in the implementation of this chapter shall be provided by other city departments upon the request of the superintendent.

**8-26-080 Gun offender community notification.**

The superintendent shall post the gun offender registry on the department's web site, and must make the information contained in the registry database searchable with a mapping system which identifies registered gun offenders within 5 miles of an identified address. The information shall be updated as deemed necessary by the superintendent.

**8-26-090  Rules and regulations.**

The superintendent has the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required.

**8-26-100 Violation-Penalty.**

Any person who violates any provision of this chapter, or rule or regulation promulgated hereunder, shall, upon conviction, be fined not less than $300.00 nor more than $500.00 or be incarcerated for a term not to exceed six months, or both. Each day that such violation exists shall constitute a separate and distinct offense.

**8-26-110 Severability.**

If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which reasonably can be given effect without the invalid provision or term for the application thereof.

SECTION 8. This ordinance shall take effect 10 days after its passage and approval.

# SOF EXHIBIT F

(Published by the Authority of the City Council of the City of Chicago)

COPY



# JOURNAL of the PROCEEDINGS
## of the
# CITY COUNCIL
## of the
# CITY of CHICAGO, ILLINOIS

———————

Regular Meeting -- Wednesday, June 25, 2014

at 10:00 A.M.

(Council Chamber -- City Hall -- Chicago, Illinois)

————

OFFICIAL RECORD.

VOLUME II

RAHM EMANUEL
Mayor

SUSANA A. MENDOZA
City Clerk

Continued from Volume I
on page 83726

6/25/2014　　　　　REPORTS OF COMMITTEES　　　　83727

## COMMITTEE ON PUBLIC SAFETY.

————————

AMENDMENT OF TITLES 2, 4, 8, 13, 15 AND 17 OF MUNICIPAL CODE TO FURTHER REGULATE SALE AND TRANSFER OF FIREARMS.

[SO2014-4271]

The Committee on Public Safety submitted the following report:

CHICAGO, June 25, 2014.

*To the President and Members of the City Council:*

Your Committee on Public Safety begs leave to report and recommend that Your Honorable Body *Pass* the proposed substitute ordinance amending various provisions of the Municipal Code regarding firearms.

This recommendation was concurred in unanimously by a viva voce vote of the members of the committee, with no dissenting vote.

Respectfully submitted,

(Signed)　　JAMES A. BALCER,
*Chairman.*

On motion of Alderman Balcer, the said proposed substitute ordinance transmitted with the foregoing committee report was *Passed* by yeas and nays as follows:

*Yeas* -- Aldermen Moreno, Fioretti, Dowell, Burns, Hairston, Sawyer, Holmes, Harris, Beale, Pope, Balcer, Cárdenas, Quinn, Burke, Foulkes, Thompson, Lane, O'Shea, Cochran, Brookins, Muñoz, Zalewski, Chandler, Maldonado, Burnett, Ervin, Graham, Reboyras, Suarez, Waguespack, Mell, Austin, Colón, Sposato, Mitts, Cullerton, Laurino, P. O'Connor, M. O'Connor, Reilly, Smith, Tunney, Arena, Cappleman, Pawar, Osterman, Moore, Silverstein -- 48.

*Nays* -- None.

Alderman Pope moved to reconsider the foregoing vote. The motion was lost.

The following is said ordinance as passed:

83728        JOURNAL--CITY  COUNCIL--CHICAGO        6/25/2014

WHEREAS, In 2008, the Supreme Court of the United States decided the case *District of Columbia v. Heller*, and held that the Second Amendment to the United States Constitution protects an individual's right to possess a firearm unconnected with service in the militia; and

WHEREAS, In 2010, the Supreme Court issued its opinion in *McDonald v. City of Chicago*, and held that the Second Amendment's right to possess a handgun for self-defense in the home also applied to the states; and

WHEREAS, On January 6, 2014, in *Illinois Association of Firearms Retailers v. The City of Chicago*, the United States District Court for the Northern District of Illinois declared that the City of Chicago's (the "City") ban on the sale and transfer of firearms was unconstitutional under the Second Amendment; and

WHEREAS, Every year, more than 100,000 people in our nation are injured, maimed or killed with a firearm; and

WHEREAS, Firearm-related injuries and deaths are the cause of significant social and economic costs to the City and our communities and have a severe impact on our criminal justice and health care systems; and

WHEREAS, The majority of all firearms recovered in crimes were originally sold by licensed firearms dealers; and

WHEREAS, The Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") has reported that straw purchasing from licensed firearms dealers is the most common way in which firearms are diverted to the illegal gun market; and

WHEREAS, In 2012, more than 16,000 firearms were lost or stolen from licensed firearms dealers across the country: and

WHEREAS, The ATF licenses and regulates firearms dealers, but the State of Illinois does not require any such license; and

WHEREAS, Research has shown that state and local regulation of firearms dealers, coupled with regular compliance inspections, is associated with significantly less illegal gun trafficking, straw purchasing and firearm theft; and

WHEREAS, In order to provide for the ongoing protection of the public welfare and safety, it is essential for the City Council of the City of Chicago to promptly pass an ordinance that provides for reasonable regulation of the sale and transfer of firearms, including regulations for the effective licensing of firearm dealers; now, therefore,

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF CHICAGO:

SECTION 1. Section 2-14-190 of the Municipal Code of Chicago is hereby amended by deleting the language struck through, as follows:

**2-14-190  Municipal hearings division – Jurisdiction.**
(a) The department of administrative hearings is authorized to establish a system of administrative adjudication for the enforcement of all provisions of the Municipal Code, and similar matters pursuant to Section 2-14-030(6), that are not adjudicated by the vehicle, buildings, or environmental safety and consumer affairs hearings divisions, except that it shall not adjudicate violations of the following chapters and sections: chapter 4-92 (Massage Establishments and Massage Services); chapter 4-144 (Weapons); and Section 7-28-190 (Health Nuisances – Throwing Objects into Roadways).

**SECTION 2.** Section 4-5-010 of the Municipal Code of Chicago is hereby amended by adding the language underscored, as follows:

**4-5-010  Establishment of license fees.**
This chapter shall establish fees for various licenses created by this title unless otherwise provided. The following fees shall apply for the specified licenses. The chapter in which each fee requirement is created is also provided. Unless otherwise stated, fees shall be assessed every two years.  For every license application which includes fingerprinting of the applicant as part of the application process, a fingerprint fee sufficient to cover the cost of processing fingerprints will be assessed in addition to the below fees.  The fingerprint fee will be assessed regardless of whether the license applied for is issued or denied.  The amount of the fee will be set forth by regulation promulgated by the commissioner of business affairs and consumer protection.

*(Omitted text is unaffected by this ordinance)*

| | | |
|---|---|---|
| (31) | Weapons dealer (4-144)(unless otherwise specified) | $1,100.00 |
| | Firearms Dealers | $3,800.00 |
| | Professional Theatrical Armorers | $2,350.00 |
| | Professional Firearm Curators | $2,350.00 |

*(Omitted text is unaffected by this ordinance)*

**SECTION 3.** Section 4-6-270 of the Municipal Code of Chicago is hereby amended by adding the language underscored, as follows:

**4-6-270  Home occupations.**

*(Omitted text is unaffected by this ordinance)*

(e) Activities not subject to licensure as a home occupation.  The following activities shall not be licensed as home occupations under this section: any repair of motorized vehicles, including the painting or repair of automobiles, trucks, trailers, boats, and lawn equipment; animal hospitals; astrology, card reading, palm reading or fortune-telling in any form; kennels; stables; bird keeping facilities; dancing schools; restaurants; massage establishments; catering/food preparation businesses; funeral chapels or homes; crematoria; mausoleums; any facility where products are manufactured, produced or assembled when the home occupation licensee is not the retail point of sale for such products; public places of amusement; the sale of firearms, antique firearms as that term is defined in section 8-20-010, or ammunition; a weapons dealer; firearm training or instruction; caterers; construction businesses or landscaping businesses that provide the storage of goods and materials to be utilized in the operation of the business or use; warehousing; and welding or machine shops.  Provided, however, that nothing

in this subsection shall prohibit the performance of emergency medical services in a residential dwelling.

*(Omitted text is unaffected by this ordinance)*

SECTION 4. Chapter 4-144 of the Municipal Code of Chicago is hereby amended by deleting sections 4-144-100 through and including 4-144-130, by deleting Article IV sections 4-144-250 and 4-144-260, by adding new sections 4-144-005, 4-144-007, and 4-144-245, by adding a new Article VII, sections 4-144-700 though and including 4-144-840, by deleting the language struck through and by adding the language underscored, as follows:

**CHAPTER 4-144**
**WEAPONS DEALERS**

**ARTICLE I. DEADLY WEAPONS DEALERS**
**4-144-005 Weapons dealer license**
    (a) A weapons dealer license shall be required for the following business activities:
        (1) a stun gun dealer;
        (2) an air rifles and toy weapons dealer;
        (3) a firearms dealer;
        (4) a professional theatrical armorer; or
        (5) a professional firearms curator.

    (b) A separate license shall be required for each separate business location.

**ARTICLE II STUN GUN DEALERS**

**4-144-007 Definitions.**
    For purposes of this Article, the following definitions apply:

    "FOID" and "Superintendent" have the meaning ascribed to those terms in section 8-20-010.

    "Stun gun" and "Taser" have the meaning ascribed to those terms in 720 ILCS 5/24-1(a)(10).

**4-144-010 Stun Gun Dealer- License -Required.**
    It shall be unlawful for any person to engage in the business of selling or otherwise transferring, at retail, any ammunition, stun gun or taser without securing a weapons dealer-stun gun dealer license to do so. For purposes of this section "stun gun" and "taser" have the meaning ascribed to those terms in 720 ILCS 5/24-1(a)(10).

**4-144-020  License – Application.**
    In addition to the requirements set forth in Section 4-4-050, an application for, and, if requested, renewal of, a weapons dealer license issued under this Article shall be accompanied by the following information:

*(Omitted text is unaffected by this ordinance)*

(d) a copy of the applicant's federal firearm license, if required to have one;

6/25/2014                REPORTS OF COMMITTEES              83731

(e d) a copy of the applicant's FOID card, provided that if the applicant is not a natural person, no FOID card shall be required for the applicant or controlling persons; and, if required to have one;

(f) a safety plan approved by the superintendent; and

(g e) any other information that the commissioner or the superintendent may require to implement this Article.

**4-144-030 License – Fee Qualifications.**
The fee for a weapons dealer license shall be as set forth in Section 4-5-010. No license shall be issued under this Article if the applicant or any employee who handles or possesses a stun gun or taser:
(a) is under 21 years of age;

(b) has ever been convicted of a felony;

(c) has ever been convicted of a misdemeanor involving a stun gun or taser, or any other violation of law concerning the manufacture, use, possession or sale of stun guns or tasers; or

(d) has not been issued a FOID card; provided that if the applicant is not a natural person, no FOID card shall be required for the applicant or any controlling person.

**4-144-040 License issuance and renewal.**
A license or a renewal of a license issued under this Article shall be denied or revoked for any of the following reasons:
(a) The applicant's license under this Article, or any other license for the sale, manufacture, use or possession of stun guns or tasers firearms or ammunition, has been revoked for cause.

(b) A license issued under this Article for the location described in the application has been revoked for any cause within one year of the date of the application.

(c) The applicant or licensee makes any false, misleading or fraudulent statement or misrepresents any fact in the license application or renewal, or uses any scheme or subterfuge for the purpose of evading any provision of this Article chapter.

(d) The applicant or licensee at the time of application or renewal of any license issued pursuant to this Article would not be eligible for such license upon a first application.

**4-144-050 Department duties.**
(a) The commissioner shall forward any application for a weapons dealer stun gun dealer license under this Article to the police department and fire departments.

(b) The commissioner shall have the authority to promulgate rules and regulations necessary to implement this Article.

(c) The superintendent shall have the authority to promulgate rules and regulations necessary to implement this Article relating to the safety plan, the safe storage, display and handling of stun guns and tasers ammunition, and any other restriction.

**4-144-060  Legal duties.**

*(Omitted text is unaffected by this ordinance)*

(b) ~~Comply with a safety plan approved by the superintendent.  Such plan shall include provisions that address: (i) the installation and maintenance of adequate exterior lighting; (ii) the installation and maintenance of interior and exterior surveillance cameras installed at each building; (iii) the installation of an alarm system; (iv) protocols for the safe display of and storage of ammunition; and (v) the employment of adequately trained personnel; all in accordance with rules prescribed by the superintendent.  Recordings from the surveillance camera required by clause (ii) shall be maintained for not less than 30 days and shall be made available to members of the department of police. Notwithstanding any other ordinance to the contrary, the city shall not impose a fee for any surveillance camera installed pursuant to this subsection solely because the camera or its wiring is in any portion of the public way.~~

(~~e~~ b) The licensed premises shall be open at all reasonable times for inspection by the departments of buildings, police, business affairs and consumer protection, and fire.

(c)  The licensee shall not permit any employee to handle, sell or possess a stun gun or taser unless the employee :

> (1) has a valid FOID card;
> (2) is 21 years of age or older;
> (3) has never been convicted of a felony;
> (4) has never been convicted of a misdemeanor involving a stun gun or taser, or any other violation of law concerning the manufacture, use, possession or sale of stun guns, tasers or firearms.

(d) The licensee shall initiate a state and FBI fingerprint-based record search of every employee who will handle, sell or possess stun guns or tasers to verify the employee's background.  If a licensee acquires any subsequent or independent knowledge that an employee who handles, sells, or possesses stun guns or tasers does not meet the qualifications of subsection (c), the licensee shall take immediate steps to ensure that such employee does not have access to the stun guns or tasers.

(e) A licensee or employee shall not:

> (1) deliver a stun gun or taser, incidental to a sale or transfer, to a purchaser for at least 24 hours after the application for such purchase or transfer has been made;
> (2) display a stun gun or taser in any window; or
> (3) sell or otherwise transfer a stun gun or taser unless the purchaser:
>> (i) is at least 18 years of age;
>> (ii) has a valid FOID card; and
>> (iii) has presented a valid government issued photo identification card.

**4-144-061  Records  ~~Sale of certain ammunition prohibited.~~**

(a) In addition to any other applicable state and federal law requiring records and record retention, the licensee shall maintain the following records:

> (1) for the purchase of a stun gun or taser, a copy of the purchaser's FOID card and photo identification for a period of not less than 10 years from the date of purchase of the stun gun or taser;

(2) a copy of the fingerprints and FOID card of every employee who handles, sells, or possesses the stun guns or tasers for a period of not less than 5 years after the employee is no longer an employee; and

(3) a copy of the annual inventory required pursuant to section 4-144-062, for a period of not less than 10 years after the completion of the inventory.

(b) Unless otherwise preempted by state or federal law, such records shall at all times during the licensee's business hours be open for inspection by any member of the department or police department.

~~Except as allowed by section 8-20-100(c), it shall be unlawful for any person to sell, offer for sale, expose for sale, barter or give away to any person within the city, any armor piercing or .50 caliber ammunition.~~

**4-144-062  Inventory ~~Sale of ammunition to minors prohibited~~.**
Every licensee shall conduct, on an annual basis, a physical inventory audit, which shall include, at a minimum, a listing of each stun gun, taser and cartridges:
(a)  acquired or held by the licensee during the twelve-month period;

(b) sold or otherwise transferred during the twelve-month period; and

(c) stolen or lost during the twelve-month period.

~~No person licensed under this chapter shall sell or otherwise transfer any ammunition to a person who is under the age of 18.~~

**4-144-065 Sale of certain types of stun guns and tasers prohibited ~~metal piercing bullets~~.**
No licensee or employee shall sell or transfer any stun gun or taser which fires one or more barbs by the use of gunpowder, smokeless powder or black powder propellant.

~~No person licensed under this chapter shall sell, offer for sale, expose for sale, barter, give away or otherwise transfer any metal piercing bullets. For purposes of this section "metal piercing bullet" means any bullet that is manufactured with other than a lead or lead alloy core, or ammunition of which the bullet itself is wholly composed of, or machined from, a metal or metal alloy other than lead, or any other bullet that is manufactured to defeat or penetrate bullet resistant properties of soft body armor or any other type of bullet resistant clothing which meets the minimum requirements of the current National Institute for Justice Standards for "Ballistic Resistance of Police Body Armor."~~

**4-144-070  Operating without a license.**
Any person who engages in the business of selling or otherwise transferring any stun gun or taser ~~ammunition~~ without first having obtained the required license shall be subject to a fine of not less than $3,000.00 nor more than $5,000.00, or incarceration for a period not to exceed six months, or both.  Each day that a violation continues shall constitute a separate and distinct offense.

**4-144-080  Penalty.**
(a) Unless another fine or penalty is specifically provided, any person who violates any provision of this Article, or any rule or regulation promulgated thereunder, shall be subject to a fine of not less than $1,500.00 nor more than $3,000.00 for each offense, or incarceration for a

period not to exceed six months, or both.  Each day that such violation exists shall constitute a separate and distinct offense.

(b) Every act or omission constituting a violation of this Article by any officer, director, manager, employee or agent of the licensee shall be deemed to be the act or omission of such licensee and such licensee shall be liable for all penalties and sanctions provided by this Article in the same manner as if such act or omission had been done or omitted by the licensee personally.

### ARTICLE II.  GUNSMITHS
**4-144-100  License – Required.**
It shall be unlawful for any person to engage in the business of repairing any pistol, revolver, derringer or other firearm which can be concealed on the person without securing a weapons dealer license so to do.

**4-144-110  Reserved.**

**4-144-120  Reserved.**

**4-144-130  Reserved.**

### ARTICLE III.  AIR RIFLES AND TOY WEAPONS DEALERS
**4-144-245 Violations.**
Unless another fine or penalty is specifically provided, any person violating any provision of this Article shall be fined not less than $250.00 nor more than $500.00 for a first offense and not less than $500.00 nor more than $1,000.00 for each subsequent offense.  Each day that such violation exists shall constitute a separate and distinct offense.

### ARTICLE IV. VIOLATION OF CHAPTER PROVISIONS
**4-144-250  Violation – Penalties.**
Unless another fine or penalty is specifically provided, any person violating any provision of this chapter shall be fined not less than $250.00 nor more than $500.00 for a first offense and not less than $500.00 nor more than $1,000.00 for each subsequent offense.  Each purchase, sale or gift of any weapon or article mentioned in this chapter shall be deemed a separate offense.

**4-144-260  License – Revocation.**
In case the mayor shall determine that a licensee has violated any provision of this chapter, he shall revoke the weapons dealer license issued to such person, and the money paid for such license shall be forfeited to the city. No other such license shall be issued to such licensee for a period of three years thereafter.

### ARTICLE V.  PROFESSIONAL THEATRICAL ARMORERS.
**4-144-310  License required.**
It shall be unlawful for any person to engage in the business of a professional theatrical armorer without securing a weapons dealer license to do so.

Notwithstanding any provision of the code to the contrary, a professional theatrical armorer may import, manufacture, possess, transfer, loan or rent theatrical props solely for a theatrical purpose.

The license granted under this Article does not authorize the licensee to engage in the business of selling or otherwise transferring firearms or ammunition, except as authorized in this Article.

**4-144-320  Application – Additional information required.**
In addition to the requirements set forth in Section 4-4-050, an application for, and, if requested, renewal of, a deadly weapons license to engage in the business of a professional armorer shall be accompanied by the following information:

*(Omitted text is unaffected by this ordinance)*

(e)      a copy of the applicant's FOID card, if required to have one; and
(f)      a safety plan approved by the superintendent; and
(g f)    any other information that the commissioner or the superintendent may require to implement this Article.

**4-144-330  License issuance and renewal.**
A license or a renewal of a license issued under this Article shall be denied or revoked for any of the following reasons:

*(Omitted text is unaffected by this ordinance)*

(e) The applicant or licensee at the time of application or renewal of any license under this Article does not have a safety plan that has been approved by the superintendent.

**4-144-350  Legal duties.**

*(Omitted text is unaffected by this ordinance)*

(b)      (1) At the same time an applicant submits an application for a license, the applicant shall submit a safety plan to the superintendent in a form and manner prescribed by the superintendent.  After review of the proposed safety plan, the superintendent, in consultation with the executive director of emergency management and communications, the fire commissioner, and any other appropriate department. shall either approve or deny the safety plan within 30 days of its submission.  During the 30-day review period, the superintendent may consult with the applicant to recommend amendments to the proposed plan.  If the superintendent denies a safety plan, he shall state, in writing, the basis for such denial.  The superintendent shall notify the commissioner of such approval or denial.  Every licensee shall comply with a safety plan, approved by the superintendent.  Such plan shall include provisions that address: (i) the installation and maintenance of adequate exterior lighting; (ii) the installation and maintenance of interior and exterior surveillance cameras installed at each building; (iii) the installation of an alarm system; (iv) protocols for the safe display of and storage of firearms and ammunition; and (v) the employment of adequately trained personnel; all in accordance with rules prescribed by the superintendent.  Recordings from the surveillance camera required by clause (ii) shall be maintained for not less than 30 days and shall be made available to members of the department of police.  Notwithstanding any other ordinance to the contrary, the city shall not impose a fee for any surveillance camera installed pursuant to this section solely because the camera or its wiring is in any portion of the public way

(2) Every safety plan shall include a floor plan of the proposed site and provisions that address: (i) the installation and maintenance of adequate exterior lighting; (ii) the installation

and maintenance of interior and exterior surveillance cameras installed at the licensed location; (iii) the installation of an alarm system; (iv) protocols for the safe display and storage of ammunition and firearms; and (v) the employment of adequately trained personnel, all in accordance with rules prescribed by the superintendent.  Recordings from the surveillance cameras required by this subsection shall be maintained for not less than 30 days and shall be made available upon request to members of the police department.

        The licensee shall obtain all necessary permits, including a public way use permit if applicable; provided that notwithstanding any other provision of the code to the contrary, no fee for a public way use permit will be imposed when the permit is for any surveillance camera installed pursuant to this subsection solely because the camera or its wiring is in any portion of the public way.

        (3) Any proposed change to the approved safety plan shall be submitted to the superintendent, in a form and manner prescribed by the superintendent, prior to the implementation of such change.  The superintendent shall approve or deny the proposed change within 30 days and notify the commissioner of such approval or denial.

        (4)  The licensee shall keep a copy of the approved safety plan at the licensed premises and make it available upon request for inspection by members of the department or the police department.

        (5) No license may be issued or renewed unless the superintendent approves the applicant's or licensee's safety plan.

        (6)  Every licensee shall comply with the safety plan, as approved by the superintendent.

        (7) The failure to adequately implement, maintain or adhere to the provisions of the approved safety plan under this section shall be grounds for suspension or revocation of the license and shall be grounds for the city to recover its costs resulting from such failure under Chapter 1-20.

                    *(Omitted text is unaffected by this ordinance)*

## ARTICLE VI.  PROFESSIONAL FIREARM CURATORS.
### 4-144-420  Application – Additional information required.
        (a) In addition to the requirements set forth in Section 4-4-050, an application for, or renewal of, a weapons dealer license to engage in the business of a professional firearm curator shall be accompanied by the following information:

        (1 a)    the length of time the applicant has been in business;

        (2 b)    the location and description of the proposed licensed premises;

        (3 c)    the name and address of the owner of the premises.  If the premises are leased, the name, address and telephone number of the owner of the premises;

        (4 d)    a copy of the applicant's federal firearm collector's license;

        (5 e)  a list of all employees and managers authorized to control, handle, store or otherwise possess the curio or relic firearms at the licensed premises and a copy of each person's FOID card; and

(6)      a safety plan approved by the superintendent; and

(7 f)  any other information that the commissioner or the superintendent may require to implement this article.

**4-144-430  License issuance and renewal.**
          A license or a renewal of a license issued under this article shall be denied or revoked for any of the following reasons:

*(Omitted text is unaffected by this ordinance)*

(e) The applicant or licensee at the time of application or renewal of any license under this Article does not have a safety plan that has been approved by the superintendent.

**4-144-450  Legal duties.**

*(Omitted text is unaffected by this ordinance)*

(b)      (1) At the same time an applicant submits an application for a license, the applicant shall submit a safety plan to the superintendent in a form and manner prescribed by the superintendent.  After review of the proposed safety plan, the superintendent, in consultation with the executive director of emergency management and communications, the fire commissioner, and any other appropriate department. shall either approve or deny the safety plan within 30 days of its submission.  During the 30-day review period, the superintendent may consult with the applicant to recommend amendments to the proposed plan.  If the superintendent denies a safety plan, he shall state, in writing, the basis for such denial. The superintendent shall notify the commissioner of such approval or denial.  Every licensee shall comply with a safety plan, approved by the superintendent.  Such plan shall include provisions that address: (i) the installation and maintenance of adequate exterior lighting; (ii) the installation and maintenance of interior and exterior surveillance cameras installed at each building; (iii) the installation of an alarm system; (iv) protocols for the safe display of and storage of firearms and ammunition; and (v) the employment of adequately trained personnel; all in accordance with rules prescribed by the superintendent.  Recordings from the surveillance camera required by clause (ii) shall be maintained for not less than 30 days and shall be made available to members of the department of police.  Notwithstanding any other ordinance to the contrary, the city shall not impose a fee for any surveillance camera installed pursuant to this section solely because the camera or its wiring is in any portion of the public way

          (2) Every safety plan shall include a floor plan of the proposed site and provisions that address: (i) the installation and maintenance of adequate exterior lighting; (ii) the installation and maintenance of interior and exterior surveillance cameras installed at the licensed location; (iii) the installation of an alarm system; (iv) protocols for the safe display and storage of ammunition and firearms;  and (v) the employment of adequately trained personnel, all in accordance with rules prescribed by the superintendent.  Recordings from the surveillance cameras required by this subsection shall be maintained for not less than 30 days and shall be made available upon request to members of the police department.

          The licensee shall obtain all necessary permits, including a public way use permit if applicable; provided that notwithstanding any other provision of the code to the contrary, no fee for a public way use permit will be imposed when the permit is for any surveillance camera

83738          JOURNAL--CITY  COUNCIL--CHICAGO          6/25/2014

installed pursuant to this subsection solely because the camera or its wiring is in any portion of the public way.

(3) Any proposed change to the approved safety plan shall be submitted to the superintendent, in a form and manner prescribed by the superintendent, prior to the implementation of such change.  The superintendent shall approve or deny the proposed change within 30 days and notify the commissioner of such approval or denial.

(4)  The licensee shall keep a copy of the approved safety plan at the licensed premises and make it available upon request for inspection by members of the department or the police department.

(5) No license may be issued or renewed unless the superintendent approves the applicant's or licensee's safety plan.

(6)  Every licensee shall comply with the safety plan, as approved by the superintendent.

(7) The failure to adequately implement, maintain, or adhere to the provisions of the approved safety plan under this section shall be grounds for suspension or revocation of the license and shall be grounds for the city to recover its costs resulting from such failure under Chapter 1-20.

*(Omitted text is unaffected by this ordinance)*

## ARTICLE VII FIREARMS DEALERS
### 4-144-700  Definitions.
For purposes of this Article, the following definitions apply:

"Antique firearm," "Assault Weapon," "FOID,"  "Peace Officer," and "Superintendent" have the same meaning ascribed to those terms in section 8-20-010.

"Authorized Employee" means a licensee's employee who:
(1) is 21 years old or older;
(2) has a valid FOID card;
(3) is located at the licensed premises; and
(4) is authorized by the licensee to control, handle, sell, store or otherwise possess firearms or ammunition.

"Collector" and "Curio or relic firearm" have the meaning ascribed to those terms in 27 CFR 478.11 or as listed on the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives' Firearms Curios or Relics List, ATF Publication 5300.11, as amended.

"Firearm" has the meaning ascribed to that term in section 8-20-010; provided that for purposes of this Article, a "firearm" does not include an antique firearm,

"Handgun" means a firearm designed to be held and fired by the use of a single hand, and includes a combination of parts from which such firearm can be assembled.

"Licensee" means a person issued a weapon dealer-firearms dealer license pursuant to this Article.

"Responsible person" means any person listed as a responsible person on the licensee's or applicant's federal firearm license.

"Store Manager" means a person who:
    (1) is 21 years old or older;
    (2) has a valid FOID card; and
    (3) is designated by the licensee for the responsibility of the on-site overall day-to-day operations of a firearms dealer licensed premises.

"Straw purchaser" means a person who acquires a firearm for another person who: (i) is prohibited by law from possessing a firearm, or (ii) does not want his name associated with the transaction.

**4-144-710  Firearms Dealer- License Required.**
    (a) It shall be unlawful for any person to engage in the business of: (1) selling or otherwise transferring, at retail, any ammunition or any new or previously owned firearm; or (2) repairing firearms or making or fitting special barrels, stocks or trigger mechanisms to firearms, without securing a weapons dealer-firearms dealer license to do so.

    (b) The license required under this Article shall be in addition to any other license required by this code or other applicable law; provided that:
        (1) no secondhand dealer license shall be required for a licensee to purchase from, sell to, or otherwise transfer a previously owned firearm to a customer at the licensed premises;
        (2) no weapons dealer-stun gun dealer license shall be required for a licensee to purchase from, sell to, or otherwise transfer to a customer a stun gun or taser at the licensed premises; or
        (3) no certificate of fitness or license issued pursuant to chapter 15-4 shall be required for the storage of ammunition at the licensed premises in compliance with this Article and section 15-4-985.

    (c) A license or renewal of a license issued under this Article shall expire two years after the date of issuance; provided that if after the effective date of this section, the licensee has an existing license issued under this Title 4 for the licensed premises, the commissioner is authorized to align the expiration date of the license issued under this Article to the expiration of any existing business license issued under this Title 4, and to prorate the fee for such license.

**4-144-720  License – Application.**
    (a) An application for a license pursuant to this Article shall be made in conformity with the provisions of this Article and the general requirements of Chapter 4-4 relating to applications for licenses.  No original or renewal license shall be issued to any applicant or licensee unless all persons required to be disclosed as applicants meet the eligibility requirements.

    (b) The application shall be in writing, signed by the applicant if an individual. If the applicant is a partnership or corporation, the application shall be signed by an officer or partner. If the applicant is a limited liability company managed by members, the application shall be signed by a manager.  If the applicant is a limited liability company managed by its members,

the application shall be signed by a member. The application shall be verified by oath or affidavit, and shall include the following statements and information:

(1) in the case of an individual: the name, date of birth, residence address, current telephone number and social security number of the applicant; in the case of a partnership, limited partnership, corporation, limited liability company or other legal entity: the date and state of its organization or incorporation; the objects for which it was organized or incorporated; and the name, residence address, date of birth and social security numbers of any applicant;

(2) the location and description of the premises which is to be operated under such license;

(3) the name, address and phone number of the owner of the premises, including the name and address of the beneficiary if title to the premises is held by a person as trustee and if known to the applicant. If the premises is leased, a copy of the lease, which must include a statement of the building owner indicating that the owner agrees to the use of the building for the operation of a firearms dealer;

(4) the name, date of birth, residence address and current telephone number of every store manager at the licensed premises;

(5) a copy of the applicant's and manager's FOID cards; provided that if the applicant is not a natural person no FOID card shall be required for the applicant or controlling persons;

(6) a copy of the applicant's federal firearm license;

(7) the name, date of birth, residence address and current telephone number of all responsible persons;

(8) a statement that the applicant is qualified to receive a license because the applicant, responsible person, store manager and all authorized employees meet all the requirements of: (i) any applicable provision of this Article; (ii) another applicable provision of this code; or (iii) any other applicable local, state or federal law;

(9) a statement that the applicant, responsible person, store manager or any authorized employee has not been convicted, or found liable in an administrative adjudication, of a felony, a misdemeanor involving a firearm, or any other law concerning the manufacture, possession, use or sale of firearms;

(10) a statement as to whether any previous license which authorized the sale of firearms issued by any jurisdiction to the applicant, responsible person, store manager or any authorized employee was revoked, the date of the revocation and the reasons for the revocation; and

(11) any other information that the commissioner or the superintendent may require to implement this Article.

(c) The commissioner shall forward the application to the departments of fire and police. Before a license shall be issued, the departments of buildings, fire and police shall inspect the premises for which the license is sought to determine whether the proposed licensed premises is in compliance with the provisions of this code and the rules and regulations promulgated thereunder relating to buildings, public safety and fire prevention.

(d) The applicant, store manager and all responsible persons shall submit to fingerprinting by the department.

**4-144-730  License  Qualifications.**
(a) No license shall be issued under this Article if the applicant, responsible person, store manager, or any authorized employee:

(1) is under 21 years of age;

(2) has ever been convicted of a felony;

(3) has ever been convicted of a misdemeanor involving a firearm, or any other violation of law concerning the manufacture, use, possession or sale of firearms.

(b)  In addition to the qualifications set forth in subsection (a), if the applicant is selling or otherwise transferring firearms, no license shall be issued if:
(1) the applicant has not been issued a valid federal firearm license for the proposed licensed premises; and
(2) the applicant, store manager and all authorized employees do not possess valid FOID cards; provided that if the applicant is not a natural person, no FOID card shall be required of the applicant or controlling persons.

**4-144-740  License issuance-restrictions.**
In addition to any other reason for revocation or denial of a license provided in this code, a license issued under this Article shall be denied or revoked for any of the following reasons:

(a) The applicant's license under this Article, or any other license for the sale, manufacture, use or possession of firearms or ammunition, has been revoked for cause.

(b) A license issued under this chapter for the location described in the application has been revoked for cause within three years of the date of the application.

(c)  An applicant or licensee makes any false, misleading or fraudulent statement or misrepresents any material fact in the license application or renewal of any license, or uses any scheme or subterfuge for the purpose of evading any provision of this Article.

(d)  An applicant or licensee at the time of application or renewal of a license would not be eligible for such license upon a first application.

(e) An applicant or licensee has been issued one of the following licenses for the same premises;
(1) secondhand dealer;
(2) pawnbroker;
(3) sale of alcoholic liquor;
(4) medical cannabis dispensing organization; or
(5) cultivation center.

(f) A responsible person or store manager was a responsible person or store manager for a person whose license for the sale, manufacture, use or possession of firearms or ammunition was revoked for cause within the previous three years.

(g) An applicant or licensee at the time of application or renewal of a license does not have a safety plan approved by the superintendent.

**4-144-750  Location restriction.**
No license shall be issued for a location that is within 500 feet from any pre-existing primary or secondary school or any park owned or leased by any unit of local, state or federal government, measured from property line to property line.

**4-144-760  License Issuance and Conditional Approval.**
(a) The commissioner shall approve or deny the application, or issue a conditional approval, no later than 45 days after payment of the license fee.

(b) Upon review of the application, if the commissioner determines that an applicant meets the requirements for the issuance of a license except that the applicant has not been issued a federal firearm license, the commissioner may conditionally approve such application to permit the applicant to apply for a federal firearm license. The conditional approval shall be for a period of no longer than 120 days. The conditional approval does not authorize the applicant to engage in any business requiring a license under this Article. If the applicant fails to obtain a federal firearm license during the 120-day period, the application shall be denied.

**4-144-770  Responsible sales of firearms training.**
(a) Within 30 days after issuance of a license under this Article, the licensee shall contact the superintendent, in a manner and form prescribed by the superintendent, to schedule an initial training session on the best practices for the responsible sale of firearms to be conducted by the police department. The current store manager and all current authorized employees shall complete the training program no later than 60 days after issuance of the license. Annually thereafter, the licensee shall contact the superintendent to schedule an initial training session for any store manager or authorized employee subsequently employed after the last initial training session conducted for that licensee.

(b) After completion of the initial training program by a store manager or authorized employee, such store manager or authorized employee shall complete a refresher training program once every three years.

**4-144-780  Department duties.**
(a) The commissioner has the authority to promulgate rules and regulations to implement those aspects of this Article which fall under the commissioner's jurisdiction.

(b)     (1) The superintendent shall develop training programs, consistent with section 4-144-770, on the responsible sale of firearms for store managers and authorized employees. At a minimum, the training programs shall instruct store managers and authorized employees on best practices for the detection and deterrence of illegal purchases of firearms.

(2) The superintendent has the authority to promulgate rules and regulations to implement those aspects of this Article, which fall under the superintendent's jurisdiction.

6/25/2014          REPORTS OF COMMITTEES          83743

including, but not limited to, the conducting of a physical inventory, training programs for licensees, the safety plan, and the safe storage and handling of firearms and ammunition.

**4-144-790  Legal duties.**
   A licensee shall:
   (a)  obtain and keep current at all times throughout the duration of the license period, liability insurance for the operation of the premises described in such application or license in the aggregate amount of $1,000,000.00, issued by an insurer authorized to insure in Illinois. The insurance policy required by this section shall be for a term of at least 12 months, and shall be co-extensive with the first 12 months of the applicable license period.  Thereafter, the licensee shall continue to maintain such insurance policy in full force and effect for the duration of the two-year license period.  The licensee shall keep proof of the required insurance at the licensed premises at all times and, upon demand, shall produce such proof for inspection by an authorized city official.  Each policy of insurance required under this section shall include a provision requiring 10 days advance notice to the commissioner prior to termination or lapse of the policy.

   (b) allow inspection of the licensed premises at all reasonable times by the department and the departments of buildings, police, and fire.

   (c)  except as provided in section 4-144-795(a), permit only the store manager or authorized employees who meet the qualification requirements of section 4-144-730 to handle, sell, or possess firearms or ammunition.

   (d) initiate a state and FBI fingerprint-based record search of every authorized employee to verify the person's criminal background.  If a licensee acquires any subsequent or independent knowledge that a store manager or authorized employee does not meet the qualifications, the licensee shall take immediate steps to ensure that such store manager or authorized employee does not have access to firearms.

   (e) conduct, no less than once per quarter, a physical inventory audit, which shall include, at a minimum, a listing of each firearm:
        (1)  acquired or held by the licensee during the quarter;
        (2) sold or otherwise transferred during the quarter; and
        (3) stolen or lost during the quarter.

   Each listing shall include the make, model and serial number of each firearm.

   (f) store firearms separately from ammunition.  Storage of firearms and ammunition shall comply with the approved safety plan, section 15-4-985, and any other applicable rule or regulation.

   (g) not display firearms or ammunition in any window.

   (h) post in a conspicuous place at each entrance to the licensed premises a sign that clearly states:  THESE PREMISES ARE UNDER VIDEO SURVEILLANCE.  YOUR IMAGE MAY BE RECORDED.

   (i) record every sale or transfer of a firearm or ammunition by video surveillance in such a manner as to clearly capture the facial features of the purchaser or transferee.  The video

surveillance recording must produce retrievable and identifiable images and video recordings in compliance with the approved safety plan and any rule promulgated by the superintendent.

(j) notify, in writing, the superintendent and commissioner within 5 business days of receiving a notice of violation of any firearm licensing law issued by the federal government and the disposition of such violation, if known at the time.

(k)  have on-site at all times the licensed premises is open for business, a store manager or authorized employee who has completed the mandatory responsible firearm sales training program in compliance with section 4-144-770.

**4-144-795  Additional legal duties for the responsible sale of firearms and ammunition.**
No licensee, store manager or authorized employee shall:
(a) permit a customer to handle:
(1) a firearm if the customer does not have a valid FOID card;
(2) more than one firearm at a time.  Prior to permitting a customer to handle a second firearm, the first firearm shall be returned to a locked display case or other secure storage location;
(3) a firearm unless the firearm is unloaded and secured with a trigger lock or plastic tie; and
(4) a firearm unless the store manager or authorized employee is present and attending to the customer.

(b) sell or transfer any firearm to a person he knows to be intoxicated.

(c) possess any black powder at the licensed premises.

(d)  deliver a firearm, incidental to a sale or transfer, to a purchaser until 24  hours after the application for such purchase or transfer has been made; provided that if the application is for a handgun, the delivery of such handgun shall be withheld for 72 hours after such application has been made.

(e) sell or otherwise transfer:
(1) any ammunition or long gun to a person under the age of 18: or
(2) any handgun to a person under the age of 21.

(f) sell or otherwise transfer to any person a firearm unless:
(1) a background check is conducted to ensure that the person is not prohibited under state or federal law from possessing such firearm:
(2) the person has a valid FOID card; and
(3) the person has presented a valid government-issued photo identification card.

(g) sell or otherwise transfer a handgun, unless the handgun bears the manufacturer's name, manufacturer's mark or model, and manufacturer's serial number assigned to that handgun.

(h) sell or otherwise transfer a handgun if the licensee, store manager, or authorized employee knows that the person purchased a handgun within the previous 30 days; provided that this subsection shall not apply to a purchase of a handgun by:

(1) peace officers;
(2) a collector issued a federal firearm collector's license who is purchasing an antique, curio or relic firearm;
(3) a person whose handgun was stolen or lost and the person reported the theft or loss to the appropriate local law enforcement official; or
(4) a person returning a handgun purchased within the previous thirty days because the handgun is defective or damaged and the person is seeking a replacement handgun.

(i) sell, possess, or otherwise transfer any assault weapon.

(j) sell or otherwise transfer a firearm to any person who the licensee, store manager or authorized employee knows or reasonably should have known:
(1) is not qualified, either under state or federal law, to possess a firearm; or
(2) is a straw purchaser.

(k) sell or otherwise transfer any ammunition unless:
(1) the person has a valid FOID card, unless otherwise exempt by state or federal law; and
(2) the person has presented a valid government-issued photo identification card.

(l) permit any alcoholic liquor to be consumed at the licensed premises.

**4-144-800 Sale of certain ammunition prohibited.**
It shall be unlawful for any licensee, store manager or authorized employee to possess, sell, offer for sale, expose for sale, barter or give away to any person within the city, any metal piercing bullet or 50BMG ammunition. For purposes of this section "metal piercing bullet" means any bullet that is manufactured with other than a lead or lead alloy core, or ammunition of which the bullet itself is wholly composed of, or machined from, a metal or metal alloy other than lead, or any other bullet that is manufactured to defeat or penetrate bullet-resistant properties of soft body armor or any other type of bullet-resistant clothing which meets the minimum requirements of the current National Institute for Justice Standards for "Ballistic Resistance of Police Body Armor." A "metal piercing bullet" shall not include shot shells containing pellets of less than .22 inches in diameter or frangible ammunition composed of powdered metal designed to completely disintegrate upon impact with an object.

**4-144-810 Safety Plan.**
(a) At the same time an applicant submits an application for a license, the applicant must submit a safety plan to the superintendent in a form and manner prescribed by the superintendent. After review of the proposed safety plan, the superintendent, in consultation with the executive director of emergency management and communications, the fire commissioner, and any other appropriate department. shall either approve or deny the safety plan within 30 days of its submission. During the 30-day review period, the superintendent may consult with the applicant to recommend amendments to the proposed plan. If the superintendent denies a safety plan, he shall state, in writing, the basis for such denial. The superintendent shall notify the commissioner of such approval or denial.

(b) Every safety plan shall include a floor plan of the proposed site and provisions that address: (i) the installation and maintenance of adequate exterior lighting; (ii) the installation and maintenance of interior and exterior surveillance cameras installed at the licensed location; (iii)

83746          JOURNAL--CITY COUNCIL--CHICAGO          6/25/2014

the installation of an alarm system; (iv) protocols for the safe display and storage of ammunition and firearms; (v) the employment of adequately trained personnel; (vi) procedures for inventory audits; and (vii) procedures for the detection and deterrence of straw purchasing; all in accordance with rules prescribed by the superintendent. Recordings from the surveillance cameras required by clause (ii) shall be maintained for not less than 30 days and shall be made available upon request to members of the police department.

The licensee shall obtain all necessary permits, including a public way use permit if applicable; provided that notwithstanding any other provision of the code to the contrary, no fee for a public way use permit will be imposed when the permit is for any surveillance camera installed pursuant to this subsection solely because the camera or its wiring is in any portion of the public way.

(c) Any proposed change to the approved safety plan shall be submitted to the superintendent, in a form and manner prescribed by the superintendent, prior to the implementation of such change. The superintendent shall approve or deny the proposed change within 30 days.

(d) The licensee shall keep a copy of the approved safety plan at the licensed premises and make it available upon request for inspection by members of the department or the police department.

(e) No license may be issued or renewed unless the superintendent approves the applicant's or licensee's safety plan.

(f) Every licensee shall comply with the safety plan, as approved by the superintendent.

(g) The failure to adequately implement, maintain, or adhere to the provisions of the approved safety plan under this section shall be grounds for suspension or revocation of the license and shall be grounds for the city to recover its costs resulting from such failure under Chapter 1-20.

**4-144-820 Records.**
(a) In addition to any other applicable state and federal law requiring records and record retention, the licensee shall maintain the following records:

(1) for the purchase of a firearm , a copy of the purchaser's FOID card and photo identification for a period of not less than 10 years from the date of purchase of the firearm;

(2) for the purchase of ammunition, a copy of the purchaser's FOID card, if required to have one, and photo identification, as provided in rules and regulations promulgated by the superintendent;

(3) a copy of the fingerprints and FOID card of every authorized employee for a period of not less than 5 years after an authorized employee is no longer designated as an authorized employee;

(4) a copy of a police report for every firearm reported lost or stolen by the licensee for a period of not less than 20 years after the report was made;

(5) a copy of the quarterly inventory required pursuant to section 4-144-790(e) for a period of not less than 10 years after the completion of the inventory; and

(6) a recovered firearm log. For purposes of this subsection a "recovered firearm log" is a record of all requests received from the Bureau of Alcohol, Tobacco, Firearms and Explosives for a Firearms Transaction Record form.

(b) Unless otherwise preempted by state or federal law, such records shall at all times during the licensee's business hours be open to inspection by any member of the police department or the department.

**4-144-830 Operating without a license.**
Any person who engages in the business of selling or otherwise transferring any firearm or ammunition without first having obtained the required license shall be subject to a fine of not less than $3,000.00 nor more than $5,000.00, or incarceration for a period not to exceed six months, or both. Each day that a violation continues shall constitute a separate and distinct offense.

**4-144-840  Penalty.**
(a) Any person who violates section 4-144-795(e); 4-144-795(f); 4-144-795(g);  4-144-795(h); 4-144-795(i); 4-144-795(j);  or 4-144-800 shall be fined not less than $3,000.00 nor more than $5,000.00, or incarcerated for a period not to exceed six months, or both. Any person who violates section 4-144-820 shall be fined not less than $1,500.00 nor more than $5,000.00, or incarcerated for a period not to exceed six months, or both. For all other violations, unless another fine or penalty is specifically provided, any person who violates any provision of this Article, or any rule or regulation promulgated thereunder, shall be subject to a fine of not less than $1,500.00 nor more than $3,000.00 for each offense, or incarceration for a period not to exceed six months, or both. Each day that such violation exists shall constitute a separate and distinct offense.

(b) Every act or omission constituting a violation of this Article by any officer, director, manager, employee or agent of the licensee shall be deemed to be the act or omission of such licensee and such licensee shall be liable for all penalties and sanctions provided by this Article in the same manner as if such act or omission had been done or omitted by the licensee personally.

**SECTION 5.** Chapter 4-151 of the Municipal Code ("Shooting Range Facility License") is hereby amended by adding the language underscored and by deleting the language struck through, as follows:

**4-151-010  Definitions.**
As used in this Chapter, unless the context requires otherwise:

*(Omitted text is unaffected by this ordinance)*

"Applicant" means any person applying for a license issued under this chapter and any person who: (1) is an officer, director, manager, managing member, partner, general partner or limited partner of an entity seeking a license issued under this chapter; or (2) owns directly, or indirectly through one or more independent ownership entities, 5% or more of the interest or voting shares in an entity seeking a license issued under this chapter; or (3) is among the top

three persons holding the highest percentage of ownership in an entity seeking a license issued under this chapter.

*(Omitted text is unaffected by this ordinance)*

**4-151-030  License – Application and issuance procedures.**

*(Omitted text is unaffected by this ordinance)*

(e)  At the time an application is originally filed for a shooting range facility license, the applicant shall pay the license fee required by Section 4-5-010 and, no later than 30 days after payment of the license fee, shall submit to the department all required documentation, as prescribed by the rules and regulations of the department, necessary to complete the license application.

If the applicant submits all required documentation in a timely manner, the commissioner shall review the application materials and shall approve or deny the application within 60 days after all required documentation has been submitted.

If the applicant fails to submit all required documentation within 30 days after payment of the license fee, the application shall be deemed incomplete and no further action shall be taken on the application, unless the applicant reactivates the application within six months after the original application is filed by: (i) submitting all required documentation necessary to complete the application process: and (ii) paying a $100.00 application reactivation fee.  If the applicant reactivates the license application in accordance with the requirements of this subsection, the commissioner shall review the application materials and shall approve or deny the application within 60 days after all required documentation has been submitted and the application reactivation is fee paid.

If the commissioner deems the license application to be incomplete and the applicant fails to reactivate the application in accordance with the requirements of this subsection, or, if the applicant withdraws the application, the application shall expire and the applicant shall forfeit the license fee and, if applicable, the license application reactivation fee.  If the license application expires or is withdrawn, a new application for a license, accompanied by the license fee and all required documentation prescribed by the rules and regulations of the department, shall be required to obtain a license under this chapter.

(f)  The commissioner may deny an application for a shooting range facility license if the issuance or renewal of such license would have a deleterious impact on the health, safety or welfare of the community in which the shooting range facility is or will be located. A deleterious impact is presumed to exist whenever there have been a substantial number of arrests within 500 feet of the applicant's premises (measured from the nearest exterior wall of the premises) within the previous two years, unless the applicant has adopted a plan of operation that will provide reasonable assurance that the issuance of the license will not have a deleterious impact.

If the applicant is seeking a shooting range facility license for a premises and the commissioner finds that, for the subject premises identified in the application within the previous two years, a license application has been denied under this subsection (f) because the commissioner has determined that issuance of the license would have a deleterious impact on the health, safety or welfare of the community, the application shall be denied unless the

6/25/2014                REPORTS  OF  COMMITTEES                83749

applicant can prove to the commissioner by clear and convincing evidence that applicant has devised a plan of operation that will provide reasonable assurance that the issuance of the license will not have a deleterious impact.

In any case in which the commissioner finds that an application must be denied under this subsection (f), the commissioner shall notify the applicant of that finding and afford the applicant 20 days in which to submit a plan of operation, and the time for a final ruling on the application shall be stayed until 35 days after the period in which the plan may be submitted has expired. The plan may include conditions upon the applicant's operation of the premises that are useful or necessary to mitigate a deleterious impact, including but not limited to providing security personnel, restricted hours of operation, providing outdoor lighting, the display of signs, or any other reasonable restrictions. An applicant's failure to adhere to a written plan of operation approved by the commissioner pursuant to this subsection shall constitute a basis to impose a fine and to suspend or revoke any shooting range facility license subsequently issued, as appropriate.

For purpose of this subsection (f), "deleterious impact" has the same meaning ascribed to that term in Section 4-60-010.

(g e) At the time an application for a license is originally filed or subsequently renewed, the applicant or licensee shall provide proof to the department that the applicant or licensee has obtained the insurance required pursuant to Section 4-151-070.

(h) No original or renewal license shall be issued to any applicant or licensee if any person owning, either directly or indirectly, more than five percent of the interest in the applicant or licensee owes a debt within the meaning of Section 4-4-150(a) of this Code.

(i f) Within five days of the payment of the license fees pursuant to this chapter, the commissioner shall notify the alderman of the ward in which the premises described in such license is located.

(j) Except as otherwise provided in this section, if a change in any information required in subsection (b) of this section occurs at any time during a license period, the licensee shall file a statement, executed in the same manner as an application, indicating the nature and effective date of the change. The supplemental statement shall be filed within 30 days after the change takes effect.

(k) Whenever any changes occur in the officers of the licensee, the licensee shall notify the department in accordance with the procedures set forth in this subsection. For purposes of this subsection, the term "officer of the licensee" or "officers of the licensee" means the members of a partnership, the officers, directors, managers or shareholders of a corporation, orthe managers or managing members of a limited liability company or other legal entity licensed pursuant to this chapter.
(1) if any officer of the licensee is removed from office in accordance with the bylaws, operating agreement, partnership agreement for the licensee, pursuant to law or court order, by reason of death, or for any other reason, and such officer is not replaced, then the licensee shall notify the department of the change by notarized letter within 30 days of the effective date of the change; provided, however, that if the person removed from office but not replaced owned five percent or more of the interest in the licensee at the time of his or her removal from office, the licensee shall comply with item (3) of this subsection. The licensee

shall submit any additional information pertaining to the removal of any officer requested by the commissioner within 10 days of such request.

(2) if any officer of the licensee is removed from office in accordance with the bylaws, operating agreement or partnership agreement for the licensee, pursuant to law or court order, by reason of death or for any other reason, and the person removed from office is replaced by a person who has no ownership interest in the licensee or who owns less than five percent of the ownership interest in the licensee, then the licensee shall notify the department of the change by filing with the department a change of officer form provided by the department within 30 days of the effective date of the change. The person replacing the removed officer shall be fingerprinted as required by subsection (d), and the licensee shall submit to the department of business affairs and consumer protection, along with the change of officer form, the following: (i) proof that the person replacing the removed officer has been fingerprinted; (ii) a fee of $100.00 which the commissioner is authorized to assess; and (iii) any other supplementary materials prescribed by the rules and regulations of the department.

(3) if any officer of the licensee owning directly or beneficially more than five percent of the interest in the licensee is removed from office in accordance with the bylaws, operating agreement or partnership agreement for the licensee, pursuant to law or court order, by reason of death or for any other reason, and such officer is replaced, or if five percent or more of the ownership interest in the licensee changes hands or is transferred to a non-licensee, the licensee shall notify the department by submitting to the department within 30 days of the effective date of the change: (i) a change of officers/shareholders application in conformity with the requirements of this chapter; and (ii) a fee of $250.00 which the commissioner is authorized to assess. All new partners, officers, directors, managers, managing members, shareholders or any other person owning directly or beneficially more than five percent of the interest in a licensee shall satisfy all of the eligibility requirements for a licensee as provided in this chapter. Failure to comply with the requirements of this subsection shall be grounds for revocation of any shooting range facility license held by such licensee.

(4) if a change in the officers of the licensee of the type described in items (1) or (2) of this subsection takes place at the same time that a change in the officers of the licensee of the type described in item (3) of subsection occurs, the licensee shall be required to comply with the requirements of item (3) of this subsection (k) only.

**4-151-040  Qualifications for licenses.**
No license shall be issued under this chapter if the applicant, the manager, range master, or any employee:

*(Omitted text is unaffected by this ordinance)*

(d)     Does not possess a valid FOID card; provided that if the applicant is not a natural person, no FOID card shall be required of the applicant or a controlling person;

*(Omitted text is unaffected by this ordinance)*

**4-151-050  License denial or renewal.**
A license or a renewal of a license shall be denied or revoked for any of the following reasons:

*(Omitted text is unaffected by this ordinance)*

(f) The applicant or licensee at the time of application or renewal of any license under this Article does not have a safety plan that has been approved by the superintendent.

**4-151-100  Standards of operation.**

*(Omitted text is unaffected by this ordinance)*

(j) No ammunition shall be reloaded at the shooting range facility.

(k j) A manager must be in charge of the shooting range facility at all times other than those times when an individual licensee is in charge.

(l k) Reserved. Every shooting range facility shall be in compliance with the applicable building, environmental and fire code requirements, including any rule or regulations promulgated thereunder.

(m) Every shooting range facility shall be in compliance with the applicable building, environmental and fire code requirements, including any rule or regulations promulgated thereunder.

**4-151-110  Safety plan.**
(a) Every application for a license under this chapter must be accompanied by a safety plan meeting the requirements of this section.  The safety plan must be approved by the superintendent, in consultation with the executive director of emergency management and communications and the fire commissioner. At the same time an applicant submits an application for a license, the applicant shall submit a safety plan to the superintendent in a form and manner prescribed by the superintendent. After review of the proposed safety plan, the superintendent, in consultation with the executive director of emergency management and communications, the fire commissioner, and any other appropriate department, shall either approve or deny the safety plan within 30 days of its submission.  During the 30-day review period, the superintendent may consult with the applicant to recommend amendments to the proposed plan.  If the superintendent denies a safety plan, he shall state, in writing, the basis for such denial. The superintendent shall notify the commissioner of such approval or denial.

(b)  The plan shall provide evidence satisfactory to the superintendent of: Every safety plan shall include a floor plan of the proposed site and provisions that address: (i) the installation and maintenance of adequate exterior lighting; (ii) the installation and maintenance of interior and exterior surveillance cameras installed at each building; (iii) the installation of an alarm system; (iv) protocols for the safe display of and storage of firearms and ammunition; and (v) the employment of adequately trained personnel and qualifications of the range masters; all in accordance with rules prescribed by the superintendent. Recordings from the surveillance camera required by clause (ii) shall be maintained for not less than 30 days and shall be made available to members of the department of police.  The failure to submit an approved safety plan as required by this section shall be grounds to deny an application for a license under this chapter or renewal thereof.  The failure to adequately implement or maintain an approved safety plan under this section shall be grounds for suspension or revocation of the license and shall be grounds for the city to recover its costs resulting from such failure under Chapter 1-20. Notwithstanding any other ordinance to the contrary, the city shall not impose a fee for any surveillance camera installed pursuant to this section solely because the camera or its wiring is in any portion of the public way.

83752          JOURNAL--CITY  COUNCIL--CHICAGO          6/25/2014

The licensee shall obtain all necessary permits, including a public way use permit if applicable; provided that notwithstanding any other provision of the code to the contrary, no fee for a public way use permit will be imposed when the permit is for any surveillance camera installed pursuant to this subsection solely because the camera or its wiring is in any portion of the public way.

(c) Any proposed change to the approved safety plan shall be submitted to the superintendent, in a form and manner prescribed by the superintendent, prior to the implementation of such change. The superintendent shall approve or deny the proposed change within 30 days.

(d) The licensee shall keep a copy of the approved safety plan at the licensed premises and make it available upon request for inspection by members of the department or the police department.

(e) No license may be issued or renewed unless the superintendent approves the applicant's or licensee's safety plan.

(f) Every licensee shall comply with the safety plan, as approved by the superintendent.

(g) The failure to adequately implement, maintain, or adhere to the provisions of the approved safety plan under this section shall be grounds for suspension or revocation of the license and shall be grounds for the city to recover its costs resulting from such failure under Chapter 1-20.

**4-151-170 Use and repair of firearms and sale of ammunition and firearms.**
(a) Notwithstanding any provision of this code to the contrary, a ~~A~~ licensee, manager, range master or employee may ~~provide~~ supply a firearm ~~for use at a shooting range facility~~ to a shooting range patron for the purpose of practicing shooting at targets ~~patron's use~~ at the shooting range; provided that no firearm shall be provided to a shooting range patron if the shooting range patron does not have a valid FOID card or valid CCL, if required to have one.

(b)     (1) ~~A licensee may sell ammunition to a shooting range patron only for use at the shooting range. The licensee shall ensure that no shooting range patron leaves the shooting range facility with any ammunition purchased from the licensee~~. A licensee may engage in the retail sale of ammunition or firearms when the licensee obtains a firearms dealer license pursuant to chapter 4-144; provided that no more than 20% of the total floor area shall be used for the retail sale of firearms and ammunition.

(2) Notwithstanding any provision of this code to the contrary, a licensee is exempt from obtaining a firearms dealer license pursuant to chapter 4-144 when:
(A) supplying a firearm to a shooting range facility patron for the purpose of practicing shooting at targets at the shooting range facility in compliance with subsection (a); or
(B) repairing on-site at the shooting range facility, a firearm owned by the shooting range facility or a shooting range facility patron.

~~(c) A licensee is exempt from obtaining a weapons dealer license under Chapter 4-144 when:~~

6/25/2014          REPORTS OF COMMITTEES          83753

~~(1) providing a firearm or ammunition in compliance with this section; except that the licensee shall be subject to the same provisions that are applicable to a licensee under sections 4-144-061, 4-144-062 and 4-144-065; or~~

~~(2) repairing a firearm that is owned by a shooting range patron and the firearm is repaired on-site at the shooting range facility.~~

**4-151-190 Violation – Penalty.**
    (a) Except where otherwise specifically provided, any person violating any of the provisions of this chapter, or any rule or regulation promulgated thereunder, shall be fined not less than $500.00 nor more than $5,000.00 for each offense, or may be incarcerated for a term not to exceed 180 days, or both fined and incarcerated. A separate and distinct offense shall be held to have been committed each day any person continues to violate any of the provisions hereof.

    (b) Every act or omission constituting a violation of this chapter by any officer, director, manager, employee or agent of the licensee shall be deemed to be the act or omission of such licensee and such licensee shall be liable for all penalties and sanctions provided by this Article in the same manner as if such act or omission had been done or omitted by the licensee personally.

    **SECTION 6.**  Section 4-240-150 of the Municipal Code is hereby amended by adding the language underscored, as follows:

**4-240-150  Prohibited pledges or purchases.**
    No such licensee shall take or receive in pawn or pledge, for money loaned, or shall buy any property from a minor, or shall so take, receive or buy any such property, the ownership of which is in, or which is claimed by, any minor, or which may be in the possession or under the control of any minor.

    No such licensee shall take any article in pawn or buy from any person appearing to be intoxicated or under the influence of any drug, nor from any person known to be a thief or to have been convicted of theft or burglary, and when any person is found to be the owner of stolen property which has been pawned or bought, such property shall be returned to the owner thereof without the payment of the amount advanced by the pawnbroker thereon or any costs or charges of any kind which the pawnbroker may have placed upon the same.

    No such licensee shall take or receive in pawn or pledge, for money loaned, or shall buy or otherwise transfer or receive, any firearm, ammunition, stun gun or taser from any person.

    **SECTION 7.**  Section 4-264-100 of the Municipal Code is hereby amended by adding the language underscored and by deleting the language struck through, as follows:

**4-264-100  Prohibited businesses.**
    ~~No person licensed as a secondhand dealer shall, during the period of his license, receive or hold a license or permit to carry on the business of~~ At any premises for which a license has been issued under this chapter, the secondhand dealer licensee shall not be eligible to receive at that licensed premises a license for, or carry on the business of, the following:
                    (a)  a pawnbroker~~, or~~;
                    (b) a keeper of a junk facility; or
                    (c)  a weapons dealer under chapter 4-144.

83754          JOURNAL--CITY COUNCIL--CHICAGO          6/25/2014

SECTION 8. Chapter 8-20 of the Municipal Code is hereby amended by adding a new section 8-20-090, by adding the language underscored and by deleting the language struck through, as follows:

8-20-090 ~~Reserved~~ Limitation on purchase of handguns.
    (a) No person shall purchase more than one handgun within any 30-day period; provided that this section shall not apply to the purchase of a handgun by:
              (1) a peace officer;
              (2) a collector issued a federal firearm collector's license who is purchasing an antique, curio or relic firearm;
              (3) a person whose handgun was stolen or lost and the person timely reported the theft or loss to the appropriate local law enforcement official; or
              (4) a person returning a handgun purchased within the thirty-day period because the handgun is defective or damaged and the person is seeking a replacement handgun.

    (b) No person shall sell or transfer any firearm to a person he know to be intoxicated.

8-20-100 Sale or transfer of firearms ~~or ammunition~~ at gun shows prohibited.
    (a) No firearm shall be sold or otherwise transferred by any person at a gun show. For purposes of this subsection, "gun show" means a temporary exhibit or gathering where firearms or ammunition are sold, leased, or otherwise transferred. ~~Except as authorized by section 2-84-075, no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm.~~

    ~~No ammunition may be sold or otherwise transferred within the city, except through a licensed weapons dealer or as otherwise allowed by this code.~~

    ~~(c) Notwithstanding subsection (a), a peace officer may sell or transfer any lawfully held firearm or ammunition to another peace officer in accordance with the other provisions of this chapter.~~

    ~~(d) Notwithstanding any other provision of this section:~~
              ~~(1) a licensee, range master, manager or employee of a licensed shooting range facility may sell ammunition, or provide a firearm to, a shooting range patron in compliance with Section 4-151-170; or~~
              ~~(2) a shooting range patron may provide a firearm to another shooting range patron for use at the shooting range when both shooting range patrons have FOID cards or CCLs, if required.~~

SECTION 9. Chapter 13-96 of the Municipal Code is hereby amended by deleting the language struck through, as follows:

13-96-1190 Shooting range facility requirements.

*(Omitted text is unaffected by this ordinance)*

6/25/2014                    REPORTS OF COMMITTEES                    83755

          d) if ammunition or firearms are stored, a magazine or hazardous storage facility
appropriate for the type and amount of ammunition or firearms, as provided in rules and
regulations promulgated by the police or fire department;

                    *(Omitted text is unaffected by this ordinance)*

**13-96-1200 Shooting range requirements.**

                    *(Omitted text is unaffected by this ordinance)*

     (b) Every shooting range shall comply with the following:

                    *(Omitted text is unaffected by this ordinance)*

          (2) sound control – the noise emanating from the shooting range to areas outside
of the shooting range facility are is subject to Chapter 8-32, Sections 8-32-010 through and
including 8-32-170, Noise and Vibration Control. The maximum noise emanating from the
shooting range facility shall not be more than 55 dB when measured from a distance of 100 feet
or more from the source, or 70 dB when measured from a distance of 10 feet or more from the
source. The shooting range shall conform to the requirements of The Occupational Noise
Exposure Standard Section 1910.95 of 29 C.F.R. Part 1910 and shall be designed and
constructed to contain noise generated from the discharge of firearms. The shooting range
shall be provided with air-borne and structure-borne sound absorbing materials. Surface
applied or suspended acoustical materials shall comply with Section 15-8-420. The materials
shall be designed to permit easy cleaning and access for periodic replacement;

                    *(Omitted text is unaffected by this ordinance)*

          (7) floors, ceilings, and walls– the floors, ceilings, and walls of every shooting
range shall be constructed of smooth non-porous materials to facilitate effective maintenance
and cleaning and removal of lead particulate. The floors of the shooting range shall be
constructed to slope at a minimum of one-fourth inch (1/4) per foot from the firing line toward the
backstop/bullet trap;

          (8) shooting booths– where shooting booth separations are provided, the
shooting booth panels shall be constructed of permanently fixed, cleanable, non- porous
materials. The shooting booths shall be constructed to provide an impenetrable protective
barrier between people at the shooting booths and to protect against the effects of ejected bullet
casings and muzzle blast; and

          (9) range master booth– where a range master booth is provided, the shooting
range shall be limited in size to the area that can be directly visible to the range master at all
times. The range master booth shall be constructed to provide:
                         (i)     protection from any projectiles straying from the shooting range;
                         (ii)    clear visibility of all firing positions at the shooting range;
                         (iii)   ready access to the shooting range;
                         (iv)    acoustical protection and separation for the range master;
                         (v)     protection from exposure to lead particulate from the shooting
                                 range, as provided for in rules and regulations promulgated by the
                                 department of health; and

83756          JOURNAL--CITY  COUNCIL--CHICAGO          6/25/2014

        (vi)     immediate access to and use of the shooting range
                communication system.;

      (10) removal of lead particulate-the shooting range facility shall be equipped with a lead particulate removal system, such as HEPA vacuum or other such system approved by the commissioner of public health, or a lead particulate removal system that removes the lead particulate using water; and

      (11) if the shooting range facility uses a lead particulate removal system that removes the lead particulate using water, the shooting range facility shall have a floor drain at the backstop/bullet trap that collects lead and other hazardous waste material in a separate drainage system to an approved collection device or treatment system that complies with all applicable local, state or federal laws and standards.

**13-96-1220  Plumbing requirements.**

*(Omitted text is unaffected by this ordinance)*

      (b) ~~The shooting range shall have a hose bibb installed with backflow protection that complies with the rules and regulations promulgated by the department of water management.~~ The discharge of any waste from the shooting range shall be in compliance with all applicable local, state or federal laws or standards, and shall comply with the requirements of Articles 7, 8 and 11 of Chapter 18-29 to prevent the discharge of any prohibited waste from entering into any sewer, watercourse, natural outlet or waters.

      ~~(c) Floor drains installed at the backstop/bullet trap shall collect lead and other hazardous waste materials in a separate drainage system to an approved collection device or treatment system that is in compliance with all applicable local, state or federal laws or standards.~~

      ~~(d~~ c) Interceptors or separators shall be installed to recover solids from metal particles, metal chips, shavings, plaster, stone, clay, sand, cinder, ashes, glass, gravel, oily or greasy residual waste and similar materials in separating lighter than water waste from heavier than water waste or waste from soiled water to prevent such matter from entering the drain line. The size, type, location and construction material of each interceptor and of each separator shall be designed and installed in accordance with the manufacturer's instruction, the rules and regulations promulgated by the departments of water management and health, and the requirements of Section 18-29-1003 based on the anticipated conditions of use. <u>All interceptors and all separators shall be installed in an accessible location to permit the convenient removal of the lid and internal contents and to permit service and maintenance. Unless otherwise approved, all interceptors and separators shall have an inspection manhole located outside on private property to permit observation, measurement and sampling downstream of the interceptors or separators.</u>

      (e <u>d</u>) Waste that does not require treatment or separation need not be discharged into any interceptor or separator and may be in a separate line until after the interceptor or separator but must connect to the building sewer before the public way. Waste from the shooting range facility which does not have a lead contamination level of more than 0.5 mg/L is not required to discharge into an interceptor or separator. ~~All interceptors and all separators shall be installed in an accessible location to permit the convenient removal of the lid and internal contents and to permit service and maintenance. Unless otherwise approved, all interceptors and separators~~

~~shall have an inspection manhole located outside on private property to permit observation, measurement and sampling downstream of the interceptors or separators.~~

(f e) Grease traps approved by the department of buildings shall have the waste retention capacity indicated in Table 18-29-1003.3.6 for the flow-through rated indicated.

**SECTION 10.** Section 15-4-985 of the Municipal Code is hereby amended by adding the language underscored and by deleting the language struck through, as follows:

**15-4-985  Storage of ammunition at firearms dealers and shooting range facility licensed premises.**

(a) For purpose of this section, the following definitions apply:

(1) the terms "ammunition" and "shooting range facility" have the meaning ascribed to those terms in Section 4-151-010.

(2) A "firearms dealer premises" means the premises for which a person was issued a weapons dealer-firearms dealer license pursuant to Article VII of chapter 4-144.

(b)     (1) No certificate of fitness or license issued under this chapter shall be required for the storage of ammunition at a licensed shooting range facility or firearms dealer premises.

(2) Ammunition stored by a firearms dealer or shooting range facility licensee at the licensed premises shall comply with rules and regulations promulgated by the fire commissioner.

(3) The fire commissioner ~~is authorized to~~ shall promulgate rules and regulations for the storage of ammunition at shooting range facilities and firearms dealers.  At a minimum, the rules shall require that the storage of ammunition at the licensed premises of firearms dealer or shooting range facility shall be stored in a separate enclosed area that is secure and equipped with an automatic sprinkler system.

(c) Any person who violates a rule and regulation promulgated pursuant to this section shall be fined not less than $~~200.00~~ 1,500.00 nor more than $~~500.00~~ 3,000.00.  A separate and distinct offense shall be deemed to have been committed each day any person continues to violate any of the provisions hereof.

**SECTION 11.** Chapter 17-3 of the Municipal Code is hereby amended by adding the language underscored and by deleting the language struck through, as follows:

**17-3-0207 Use Table and Standards.**

| USE GROUP | | | Zoning Districts | | | | | Use Standard | Parking Standard |
|---|---|---|---|---|---|---|---|---|---|
| Use Category | | B1 | B2 | B3 | C1 | C2 | C3 | | |
| Specific Use Type | | | | | | | | | |
| P= permitted by-right  S = special use approval required  PD = planned development approval required  - = Not allowed | | | | | | | | | |
| RESIDENTIAL | | | | | | | | | |

83758          JOURNAL--CITY  COUNCIL--CHICAGO          6/25/2014

| A. Household Living | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1. | Artist Live/Work Space located above the ground floor | P | P | P | P | P | - | | § 17-10-0207-C |

*(Omitted text is unaffected by this ordinance)*

| OTHER | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| XX.  Wireless Communication Facilities | | | | | | | | | |
| 1. | Co-located | P | P | P | P | P | P | § 17-9-0118 | None required |
| 2. | Freestanding (Towers) | S | S | S | S | S | S | § 17-9-0118 | None required |
| YY. | Firearms dealer | = | = | = | = | S | S | §17-9-0128 | §17-10-0207-M |

*(Omitted text is unaffected by this ordinance)*

      SECTION 12. Chapter 17-4 of the Municipal Code is hereby amended by adding the language underscored and by deleting the language struck through, as follows:

**17-4-0207 Use Table and Standards.**

| USE GROUP | | Zoning Districts | | | | Use Standard | Parking Standard |
|---|---|---|---|---|---|---|---|
| Use Category | | DC | DX | DR | DS | | |
| | Specific Use Type | | | | | | |
| P= permitted by-right   S = special use approval required   PD = planned development approval required   - = Not allowed | | | | | | | |
| RESIDENTIAL | | | | | | | |
| A. | Household Living | | | | | | |
| 1. | Artist Live/Work Space located above the ground floor | P | P | P | - | | § 17-10-0208 |

*(Omitted text is unaffected by this ordinance)*

| OTHER | | | | | | | |
|---|---|---|---|---|---|---|---|
| XX.  Wireless Communication Facilities | | | | | | | |
| 1. | Co-located | P | P | P | P | § 17-9-0118 | None required |
| 2. | Freestanding (Towers) | S | S | S | S | § 17-9-0118 | None required |
| YY.  Firearms Dealer | | = | = | = | S | §17-9-0128 | §17-10-0207-M |

*(Omitted text is unaffected by this ordinance)*

6/25/2014          REPORTS  OF  COMMITTEES          83759

SECTION 13. Chapter 17-5 of the Municipal Code is hereby amended by adding the language underscored, as follows:

**17-5-0207 Use Table and Standards.**

| USE GROUP | District | | | Use | Parking |
|---|---|---|---|---|---|
| **Use Category** | M1 | M2 | M3 | Standard | Standard |
| Specific Use Type | | | | | |
| P= permitted by-right   S = special use approval required   PD = planned development approval required   - = Not allowed | | | | | |
| RESIDENTIAL | | | | | |
| A. Group Living | | | | | |
| 1. | Temporary Overnight Shelter | S | S | | § 17-9-0115 | § 17-10-0207-Q |
| 2. | Transitional Shelters | S | S | | § 17-9-0115 | § 17-10-0207-Q |

*(Omitted text is unaffected by this ordinance)*

| CC.  Sports and Recreation, Participant | S | S | S | | § 17-10-0207-M |
|---|---|---|---|---|---|
| 1. | Shooting range facility | S | S | S | § 17-9-0120 Accessory sales of firearms and ammunition: not to exceed 20% of total floor area | § 17-10-0207-M |

*(Omitted text is unaffected by this ordinance)*

SECTION 14. Chapter 17-9 of the Municipal Code is hereby amended by adding a new section 17-9-0128, as follows:

**17-9-0100  Use standards.**

*(Omitted text is unaffected by this ordinance)*

**17-9-0128**  Firearms Dealer.  A firearms dealer may not be located within 500 feet of any primary or secondary school or any park owned or leased by any unit of local, state or federal government, measured from property line to property line.

SECTION 15. Section 17-13-0908 of the Municipal Code is hereby amended by adding the language underscored, as follows:

**17-13-0908 Inaction by Zoning Board of Appeals.** If the Zoning Board of Appeals does not render a final decision on a special use application for an adult use, firearms dealer, or religious assembly use within 120 days after a complete application is filed, the application will be

83760          JOURNAL--CITY  COUNCIL--CHICAGO          6/25/2014

considered approved, provided that this limitation does not apply to periods of time during which consideration of the application has been delayed at the request or cause of the applicant.

SECTION 16. Chapter 17-17 of the Municipal Code is hereby amended by adding a new section 17-17-0254.5, as follows:

*(Omitted text is unaffected by this ordinance)*

**17-17-0254 FAR.** An abbreviation for "floor area ratio". See "floor area ratio" definition.

**17-17-0245.5  Firearms Dealer.**  A firearms dealer means a person issued a weapons dealer-firearms dealer license pursuant to Article VII of chapter 4-144.

**17-17-0255 Flag.** A sign made of fabric or other similar non-rigid material supported or anchored along only one edge or supported or anchored at only two corners. If any dimension of a flag is more than 3 times as long as any other dimension, it is classified and regulated as a banner regardless of how it is anchored or supported. See also "banner".

*(Omitted text is unaffected by this ordinance)*

SECTION 17. In light of the urgent need to ensure the proper regulation of the sale of firearms, pursuant to 65 ILCS 5/1-2-4, this ordinance shall take effect immediately upon its passage and approval, if such passage is by a vote of at least two-thirds of the members of this Council. In the event this ordinance passes by a majority vote of less than two-thirds of the members of this Council, it shall take effect ten days after passage and publication.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECOND AMENDMENT ARMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 10-CV-4257 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Magistrate Judge Sheila M. Finnegan |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION TO
## PLAINTIFFS SECOND AMENDMENT ARMS AND R. JOSEPH FRANZESE

Defendants, by their counsel, Stephen R. Patton, Corporation Counsel of the City of Chicago, hereby request, pursuant to Federal Rule of Civil Procedure 36, that Plaintiffs Second Amendment Arms ("SAA") and R. Joseph Franzese respond to the following request for admission within 30 days of service. If you fail to serve the response required by Rule 36 within 30 days after you are served with this request, all the facts set forth in the requests will be deemed true.

## REQUEST FOR ADMISSION

1.     Admit that, during the period from January 1, 2010 to June 25, 2014, the only location for which Plaintiffs SAA and/or Franzese submitted an application to the City of Chicago for a business license to open a retail establishment at which firearms would be sold was 415 W. Armitage, Chicago, Illinois.

Date: October 14, 2016

Respectfully submitted,

STEPHEN R. PATTON
Corporation Counsel for the City of Chicago

By: _____

David M. Baron

William Macy Aguiar
David M. Baron
Ellen McLaughlin
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-7686 / 744-9018 / 742-5147
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, David M. Baron, an attorney for Defendants, hereby certify that on October 14, 2016, I

caused copies of the foregoing Defendants' First Set of Requests for Admission to Plaintiffs

Second Amendment Arms and R. Joseph Franzese to be served by email and FedEx delivery

upon:

David G. Sigale, Esq.
Law Firm of David G. Sigale, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
(630) 452-4547
Attorney for Plaintiffs

By: _____

David M. Baron

## Baron, David

| | |
|---|---|
| **From:** | Baron, David |
| **Sent:** | Friday, October 14, 2016 11:18 AM |
| **To:** | 'dsigale@sigalelaw.com' |
| **Cc:** | Aguiar, William; McLaughlin, Ellen |
| **Subject:** | Second Amendment Arms v. City of Chicago, No. 10-cv-4257 |
| **Attachments:** | 2016.10.14 - Defs First RFAs.pdf |

David:

Please see attached.

Best,
Dave Baron

---

**David M. Baron**
Assistant Corporation Counsel
City of Chicago Department of Law
Constitutional & Commercial Litigation Division
30 N. LaSalle St., Suite 1230
Chicago, Illinois 60602
(312) 744-9018

1



## City Of Chicago Department
### DAVID M. BARON
### 30 North LaSalle Street
### CHICAGO, IL 60602

**86350**
10/14/2016
12:23:32 PM
1 of 1

Shipped Via: **Mercury Business Services, Inc.**    (312)853-3500

| | |
|---|---|
| **Recipient:** | David G. Sigale, Esq.<br>Law Firm of David G. Sigale, P.C.<br>799 Roosevelt Road<br>Suite 207<br>Glen Ellyn, IL 60137 |

**Sender's Name:** DAVID M. BARON
**Sender's Phone:** 312-744-5111
**Declared Value:**
**PO #:**
**Invoice #:**

**Recipient Phone:** 630-452-4547
**Reference:** 2nd Amendment Arms

**Dept. #:**

**Service Level: Next Business Day AM**     **Tracking #:** C8635020161014122332135

Instructions:





Liability of Mercury Business Services, Inc. is limited to $100.00 unless otherwise agreed to in writing.



**Hello, Staff!**    Preferences    Log Out    Email Us

Ship    History/Track    Address Book    Groups    Pricing    Commodities

## Search History

| Keyword | Start Date | End Date | |
|---------|-----------|----------|---|
| | 10/14/2016 | 11/15/2016 | Search |

\* Keyword searches by Recipient, Company, Reference, and Mercury Tracking #

\*\* Make a selection below for the option to track your package.

| | Date | Name | Company | City | State | Country |
|---|------|------|---------|------|-------|---------|
| Select | 10/14/2016 | David G. Sigale, Esq. | Law Firm of David G. Sigale, P.C. | Glen Ellyn | IL | United States |
| Select | 10/14/2016 | David G. Sigale, Esq. | Law Firm of David G. Sigale, P.C. | Glen Ellyn | IL | United States |
| Select | | | | | | |
| Select | | | | | | |
| Select | | | | | | |
| Select | | | | | | |
| Select | | | | | | |
| Select | | | | | | |
| Select | | | | | | |

| | | | |
|---|---|---|---|
| Recipient | David G. Sigale, Esq. | Ship Date | 10/14/2016 |
| Company | Law Firm of David G. Sigale, P.C. | Piece Count | 1 |
| Address | 799 Roosevelt Road | Declared Value | |
| | Suite 207 | Customs Value | 0.00 |
| | | Service Level | Next Business Day AM |
| | | No Signature Required | ☑ |
| City | Glen Ellyn | Delivery Duty Paid | ☐ |

**State:**IL

---

**Date:**10-17-2016 - 06:32 AM

**Status:**Out For Delivery

**Location:**ADDISON

**State:**IL

---

**Date:**10-17-2016 - 03:19 AM

**Status:**Arrival Scan

**Location:**ADDISON

**State:**IL

---

**Date:**10-17-2016 - 02:37 AM

**Status:**Departure Scan

**Location:**CHICAGO

**State:**IL

---

**Date:**10-14-2016 - 09:03 PM

**Status:**Origin Scan

**Location:**CHICAGO

**State:**IL

---

**Date:**10-14-2016 - 08:22 PM

**Status:**Pickup Scan

**Location:**CHICAGO

**State:**IL

---

**Date:**10-14-2016 - 09:26 PM

**Status:**Order Processed: Ready for UPS

---

© 2016 - Mercury Business Services