IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECOND AMENDMENT ARMS (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a SECOND AMENDMENT ARMS, and TONY KOLE, | ) ) ) ) | |
| | ) | Case No: 1:10-CV-4257 |
| Plaintiffs, | ) | |
| | ) | Hon. Robert M. Dow, Jr. |
| v. | ) | U.S. District Court Judge |
| | ) | |
| CITY OF CHICAGO, a municipal corporation, RAHM EMANUEL, in his official capacity as Mayor of the City of Chicago, GARRY McCARTHY, Superintendent of Police of the City of Chicago, and SUSANA MENDOZA, City Clerk of the City of Chicago, | ) ) ) ) ) ) | Hon. Sheila M. Finnegan U.S. Magistrate Judge |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COME the Plaintiffs, SECOND AMENDMENT ARMS (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a Second Amendment Arms, and TONY KOLE, by and through undersigned counsel, and submits the following Response to Defendant's F.R.Civ.P. 56(a) Motion for Summary Judgment.

Dated: May 19, 2017　　　　Respectfully submitted,


By:　　　　/s/ David G. Sigale
　　　　　　David G. Sigale

1

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

## TABLE OF CONTENTS

Table of Authorities  …………………………………………………………………… iv

Introduction ..................................................................................................... 1

Summary Judgment Standard ……………………………………………….. 2

Argument.......................................................................................................... 2

    I.    THE DEFENDANTS CANNOT RELY ON A ZONING TECHNICALITY WHEN THEY NEVER TOLD FRANZESE ABOUT IT, DENYING HIM THE OPPORTUNITY TO AMEND HIS APPLICATION ....................... 4

    II.    THE DEFENDANTS CANNOT RELY ON A ZONING TECHNICALITY WHEN THEIR EQUIATABLE ESTOPPEL, LACHES, AND UNCLEAN HANDS PREVENTED FRANZESE FROM CORRECTING IT………….. 9

Conclusion ………………………………………..…………………………………… 14

# <u>TABLE OF AUTHORITIES</u>

*Cases*

*A.C. Aukerman Co. v. R.I. Chaides Const. Co.*,
960 F.2d 1020 (Fed. Cir. 1992) ................................................................... 9

*Andrews v. State*,
50 Tenn. 165 (1871) ................................................................................. 3

*Covenant Media of Ill., L.L.C. v. City of Des Plaines*,
476 F. Supp. 2d 967 (N.D.Ill. 2007) .......................................................... 7

*District of Columbia v. Heller*,
128 S. Ct. 2783 (2008) .......................................................................... 1, 3

*Fitzsimmons v. Best*,
528 F.2d 692, 694 (7th Cir. 1976) ............................................................. 2

*HBB Ltd. Pshp. v. Ford Motor Co.*,
1995 U.S. Dist. LEXIS 14400 (N.D.Ill. 1995) ............................................. 9

*Harp Advertising Ill. v. Village of Chicago Ridge*,
9 F.3d 1290 (7th Cir. 1993) ............................................................ 5, 6, 8, 11

*Hollingsworth v. Perry*,
133 S. Ct. 2652 (2013) ............................................................................. 4

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
191 F.3d 813 (7th Cir. 1999) .................................................................. 10

*Illinois Ass'n of Firearms Retailers v. City of Chicago*,
961 F. Supp. 2d 928 (N.D. Ill. 2014) ......................................................... 3

*KH Outdoor, L.L.C. v. Clay County*,
482 F.3d 1299 (11th Cir. 2007) ................................................................. 6

*King v. Preferred Technical Group*,
166 F.3d 887 (7th Cir. 1999) .................................................................... 2

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................. 4

4

*Martin v. Harrington & Richardson, Inc.*,
743 F.2d 1200 (7th Cir. 1984) ...................................................................... 3

*McDonald v. City of Chicago*,
130 S. Ct. 3020 (2010) ................................................................................. 3

*Midwest Media Prop., LLC v. Symmes Twp.*,
503 F.2d 456 (6th Cir. 2006) ...................................................................... 5

*Mintz v. Mathers Fund, Inc.*,
463 F.2d 495 (7th Cir. 1972) ...................................................................... 2

*Moore v. East Cleveland*,
431 U.S. 494 (1977) .................................................................................... 4

*Pace v. DiGuglielmo*,
544 U.S. 408 (2005) .................................................................................. 10

*Poller v. Columbia Broadcasting System*,
368 U.S. 464 (1962) .................................................................................... 2

*Reliable Consultants, Inc. v. Earle*,
517 F.3d 738 (5th Cir. 2008) ...................................................................... 3

*Schad v. Borough of Mt. Ephraim*,
452 U.S. 61 (1981) ...................................................................................... 4

*Six Star Holdings, LLC v. City of Milwaukee*,
821 F.3d 795 (7th Cir. 2016) ...................................................................... 4

*Winter v. Minn. Mut. Life Ins. Co.*,
199 F.3d 399 (7th Cir. 1999) ...................................................................... 2


*Statutes, Rules, and Ordinances*

F.R.Civ.P. 56(c) ......................................................................................... 2

## *Other Sources*

Curwen, *Some Considerations on the Game Laws* 54 (1796) ............................... 1

Thomas Jefferson, 6 *Writings* 252-53 (P. Ford ed. 1895) ................................... 1

Laws of Virginia, February, 1676-77, *VA. STAT. AT LARGE*,
2 HENING 403 (1823) ................................................................................. 1

## INTRODUCTION

Thomas Jefferson said "Our citizens have always been free to make, vend, and export arms. It is the constant occupation and livelihood of some of them." Thomas Jefferson, 6 *Writings* 252-53 (P. Ford ed. 1895).[1]

In 2010, Plaintiffs wished to open a lawful, constitutionally-protected business in Chicago. Because that business, firearms sales, is politically controversial, especially in the Chicago area, Defendants did their very best to keep Plaintiffs from opening. In fact, Defendants have done such a good job in these efforts, there are *still* no firearms stores in Chicago.

Defendants' 2010 gun store ban violated the Plaintiffs' Second Amendment right to sell firearms, and caused Plaintiffs to suffer monetary damages from being unable to open what would have been the first firearms store in Chicago following Chicago's repeal of its home handgun ban. The zoning issue on which Defendants rely is a red herring, because Franzese could and would have corrected this, if anyone had notified him the issue existed. Therefore, Defendants' Motion for summary judgment should be denied, because Plaintiffs suffered injuries and damages as a result of Defendants' actions.

---

[1] See also CURWEN, SOME CONSIDERATIONS ON THE GAME LAWS 54 (1796) ("What law forbids the veriest pauper, *if he can raise a sum sufficient for the purchase of it*, from mounting his Gun on his Chimney Piece, with which he may not only defend his Personal Property from the Ruffian, but his Personal Rights, from the invader of them& .") (emphasis added) (quoted in *Heller*, 554 U.S. at 583 n.7); Laws of Virginia, February, 1676-77, VA. STAT. AT LARGE, 2 HENING 403 (1823) ("It is ordered that all persons have hereby liberty to sell armes and ammunition to any of his majesties loyall subjects inhabiting this colony ....").

1

## SUMMARY JUDGMENT STANDARD

". . . [S]ummary judgment is appropriate only if it appears that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir. 1976) (citing F.R.Civ.P. 56(c); quoting *Poller v. Columbia Broadcasting System*, 368 U.S. 464 (1962)).

"As a procedural matter, granting summary judgment, while a drastic remedy, is a wholesome one where applicable to the circumstances. It is never warranted except on a clear showing that no genuine issue as to any material fact remains for trial. If the pleadings and proof in the form of depositions, affidavits and admissions on file disclose that no real cause of action or defense exists, the court may determine there is no issue to be tried and may grant a summary judgment." *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972).

In evaluating a summary judgment motion, the court focuses on whether any material dispute of fact exists that would require a trial. *Winter v. Minn. Mut. Life Ins. Co.*, 199 F.3d 399, 408 (7th Cir. 1999). In making this determination, the court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *King v. Preferred Technical Group*, 166 F.3d 887, 890 (7th Cir. 1999).

## ARGUMENT[2]

Defendant's residents, like most Americans and people residing in this country,

---

[2] Plaintiffs incorporate their Statement of Additional Undisputed Facts ("SAUF"), as well as their Summary Judgment Exhibits A-G, listed in *Plaintiffs' List of L.R.56.1(b)(1) Exhibits*, filed simultaneously to this document, as if fully restated herein.

enjoy a fundamental right to keep and bear arms. *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). "[T]he inherent right of self-defense has been central to the Second Amendment right." *District of Columbia v. Heller*, 128 S. Ct. 2783, 2817 (2008). The Second Amendment right is incorporated against the Defendant *via* the Fourteenth Amendment. *See McDonald*.

"The right to keep arms, necessarily involves the right to purchase them . . ." *Andrews v. State*, 50 Tenn. 165, 178 (1871). Further, the Courts have held that ". . . restricting the ability to purchase an item is tantamount to restricting that item's use." *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 743 (5th Cir. 2008). Indeed, in *Martin v. Harrington & Richardson, Inc.*, 743 F.2d 1200 (7th Cir. 1984), the Seventh Circuit confronted the issue of strict tort liability for firearms manufacturers when a criminal caused injury with a handgun. The Court said "[i]mposing liability for the sale of handguns, which would in practice drive manufacturers out of business, would produce a handgun ban by judicial fiat in the face of the decision by Illinois to allow its citizens to possess handguns." *Id.* at 1204.

Though Defendants no longer seem to be disputing this basic legal point, especially following *Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F.Supp.2d 928 (N.D.Ill. 2014), Defendant's 2010 gun store ban unquestionably violated the constitutional guarantees of purchasing arms for self-defense and lawful purposes.

With the constitutional argument no longer practically available to Defendants, they are attempting to fall back on a technicality, claiming that

3

Plaintiffs had a zoning issue with their business license application. Unfortunately, because nobody told Franzese of that issue, and because it could have and would have been easily corrected had Franzese known of it (Exh. "F" at pp.3-4; SAUF 11), the Defendants' argument fails.

I.  **THE DEFENDANTS CANNOT RELY ON A ZONING TECHNICALITY WHEN THEY NEVER TOLD FRANZESE ABOUT IT, DENYING HIM THE OPPORTUNITY TO AMEND HIS APPLICATION.**

It is true "Article III standing 'requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.'" *Six Star Holdings,* 821 F.3d at 801 (quoting *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs meet these three elements, and Defendants' cited case law does not change this.

Plaintiffs note that "[t]he power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities. But the zoning power is not infinite and unchallengeable; it 'must be exercised within constitutional limits.'" *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61. 68 (1981) (quoting *Moore v. East Cleveland*, 431 U.S. 494, 514 (1977) (Stevens, J., concurring)). "[W]hen a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest." *Schad*, 452 U.S. at 68. Whatever location Defendant put in his application, whether

4

residential, commercial, industrial or barren wasteland, as long as it was in Chicago, Defendants' weapons dealer business license application would have been denied since, due to the gun store ban, there was no place to actually locate a gun store. And while Franzese could easily have found a commercial location to list in its application (*See* Exh. "F" at pp.3-4), as he thought he had done (SAUF 5, 10), it is obvious it would not have mattered.

In *Harp Advertising Ill. v. Village of Chicago Ridge*, 9 F.3d 1290 (7th Cir. Ill. 1993), the plaintiff wanted to erect a 1200 square foot billboard in Chicago Ridge, which ran afoul of both the zoning code and sign code, which allowed signs of no more than 200 square feet. A challenge to the zoning ordinance was dismissed for standing, because "Harp Advertising wanted to put up a 1,200 square foot sign; for all we can tell, it has no interest in erecting anything smaller anywhere in the United States, let alone a sign of 199 square feet in Chicago Ridge, Illinois." *Id.* at 1292-93. The plaintiff was not even making the argument that even with the zoning ordinance removed it would want to comply with the sign ordinance. *See also Midwest Media Prop., LLC v. Symmes Twp.*, 503 F.2d 456, 462-63 (6th Cir. 2006) (same).

Here, had someone told Franzese that there was an issue with his chosen location, he would easily have picked a different location (SAUF 11, 12). Everyone knows, however, this would not have mattered, because the gun store ban would have blocked his efforts no matter where he chose (Exh. "E"). The Defendants' argument here underscores how the Defendants' concern has been first and

foremost getting rid of Plaintiffs and anyone else who would actually try to open a gun store, and the secondary motivation (judging from the number of times the law has changed since this case began) has been not suffering adverse rulings in this litigation.

If standing is based on the effort, as *Harp* seems to say, then the Defendants bear responsibility for never bringing the issue to Franzese's attention. It is undisputed nothing was sent to him in writing (SAUF 10; Exh. "F"), and Franzese testifies that the only conversation with the Defendants involved the gun store ban. Defendants have unclean hands in this process; obviously, the Defendants did not want gun stores, and went out of their way to make sure Franzese's application could not be approved.

Similarly, in *KH Outdoor, L.L.C. v. Clay County*, 482 F.3d 1299 (11th Cir. 2007), the plaintiffs seeking to erect billboards challenged a sign prohibition. However, their application packages violated numerous other laws, including those requiring drawings from licensed engineers, having licensed a general contractor submitting the applications. *Id.* at 1304. Further, there was no mention that the plaintiff was willing or able to amend its applications, perhaps due to all the problems with them. And there was also no mention that the county defendant had misled the plaintiff as to the status or propriety of its application.

Here, though the Defendants were apparently aware of the location issue, they chose not to disclose it to Franzese, perhaps because the gun store ban was a much larger sword to wield against him. Had Defendant told him, Franzese could

easily have amended the application (*See* SAUF 10; Exh. "F" at pp.3-4), which defeats Defendant's lack-of-standing claim. *See Covenant Media of Ill., L.L.C. v. City of Des Plaines*, 496 F.Supp.2d 960 (N.D.Ill. 2007), where the Court held:

> Clearly, Covenant never completed its application for a permit at the 911 E. Touhy location. While **that fact was not sufficient to defeat Covenant's claim of standing, as there was evidence suggesting that it intended to complete the application** and that the completion of permit applications often took place in stages, it is nevertheless relevant to the measure of its damages. Accordingly, the City would be entitled at trial to again attempt to establish that Covenant never in fact intended to complete the application and therefore, that its damages are limited, at most, to the cost of preparing its application.

*Id.* at 963 (emphasis added).

Of course, Plaintiff had every intention of following through with his application. The Defendant had just lifted its 28-year home handgun ban, and there was (and still is) every expectation that being the first gun store in Chicago would be a successful enterprise. This, of course, is what the Defendants were trying so hard to prevent.

The City has manufactured the zoning issue in this case, after hiding it from Plaintiff at the time. The Court rejected the government's similar claim in *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 790 F. Supp. 2d 693 (N.D.Ill. 2011) when it held:

> The fact that Chicago Joe's original application may have been deficient in some respects is not dispositive. **As the Village itself notes, when a zoning application is denied, the applicant is not barred from resubmitting the same application for reconsideration.** *Hazelton v. Zoning Bd. of Appeals of City of Hickory Hills*, 48 Ill. App. 3d 348, 363 N.E.2d 44, 47, 6 Ill. Dec.

> 515 (Ill. App. Ct. 1977) ("[I]t is well established that a prior determination by an administrative body is not *res judicata* in subsequent proceedings before it."). The court sees no reason why Chicago Joe's cannot eventually comply with the parking and other regulations.

*Id.* at 696 (emphasis added).

This case is also much closer to the situation in *Lamar Adver. of Penn., LLC v. Town of Orchard Park*, 356 F.3d 365 (2d Cir. 2004), where the Court held:

> The plaintiff in *Harp Advertising* was exclusively interested in building a 1,200 square foot sign where no sign larger than 200 square feet was permitted, and "for all [the Seventh Circuit could] tell, [the plaintiff had] no interest in erecting anything smaller anywhere in the United States, let alone a sign of 199 square feet in Chicago Ridge, Illinois." *Id.* at 1292-93. Lamar, by contrast, clearly set out in its complaint that the permits it requested were part of a multi-phase plan to build signs of differing sizes throughout commercial and industrial zones in Orchard Park.

*Id.* at 374.

Like in *Lamar*, Franzese clearly has testified that he would have submitted a different location had anyone notified him of the issue (SAUF 11). Therefore, on the facts this case is much more like *Lamar* than *Harp*.

In short, while *Harp* and its progeny work well for giant billboards, where the owners continually run afoul of size restrictions with no intent to comply, Franzese had the ability, and every intention, of complying with all applicable laws. Had the gun store ban not existed in 2010, Defendants would have been forced to play the zoning card for denying the application, and Franzese would easily have found another location. *Harp* is simply inapplicable to this situation.

8

II.  **THE DEFENDANTS ARE EQUITABLY ESTOPPED FROM RELYING ON A ZONING TECHNICALITY  WHEN THEIR LACHES, AND UNCLEAN HANDS PREVENTED FRANZESE FROM CORRECTING IT.**

The Defendants' Motion is premised that there was a second, zoning, reason why Franzese's application was denied.  However, that reason was never conveyed to Franzese (SAUF 9, 10), and thus there was never an opportunity to correct or amend the location, which Franzese believed was zoned correctly (Exh. "B"). Leaving aside the futility of amending the location, since Franzese's application would have been rejected in any Chicago location, it is obvious the Defendant sat on this information waiting to spring it during the instant Motion.  The three equitable bars to such a claim: equitable estoppel, laches, and unclean hands all apply to this situation.

<u>Equitable Estoppel</u>

When asserted by the defense, "[e]quitable estoppel, unlike laches, focuses on what the defendant has been led to reasonably believe based on the plaintiff's conduct.  *A. C. Aukerman Co. v. R.I. Chaides Const. Co.*, 960 F.2d 1020, 1034 (Fed. Cir. 1992).  Where equitable estoppel is established, all relief on a claim may be barred.  *Id.* at 1041. Equitable estoppel is a defense addressed to the sound discretion of the trial court.  *Id.* at 1034."  *HBB Ltd. Pshp. v. Ford Motor Co.*, 1995 U.S. Dist. LEXIS 14400 at *52 (N.D.Ill. 1995).

There cannot be a dispute that Franzese relied on the information supplied by the Defendants.  Franzese received nothing in writing about his application, for the simple reason that no one from the City sent anything (SUF 10, Exh. "F").

9

Franzese was therefore deprived of the opportunity to change the location on his application, or submit another application, even though it would have been completely worthless except for, apparently, this Motion. The Defendants should be estopped from raising the zoning issue based on its own bad conduct.

## Laches

Additionally, laches applies to this situation.

> The equitable doctrine of laches is derived from the maxim that those who sleep on their rights, lose them. Laches addresses delay in the pursuit of a right when a party must assert that right in order to benefit from it. For laches to apply in a particular case, the party asserting the defense must demonstrate: (1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). The doctrine is available and increasingly applied in law cases involving damages claims. *Id.* at 822. And just as "[e]quity always refuses to interfere where there has been gross *laches* in the prosecution of rights," *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005), so too should it apply when alleged defenses are hidden from the Plaintiffs.

Both of the elements of *laches* are met here. It is undisputed Defendant both knew about the zoning concern (SAUF 6) and never told Franzese about it (SAUF 9, 10) until the instant Motion. It is further undisputed that Defendants never denied Franzese's application in writing at all (SAUF 10).

It also cannot be disputed Franzese suffered prejudice. After all, it is because of the lack of knowledge that Franzese did not know to amend his application. It

can easily be figured, judging from the conversation that did take place, that even had the Defendants mentioned the zoning issue, Franzese would have asked "Does it matter if I change the location since there is a gun store ban everywhere in the City," and the Defendants would have replied "No, the denial will be the same regardless of where you put it." Therefore, due to the gun store ban Franzese did not suffer prejudice from the lack of zoning information in being able to open a gun store, because the zoning issue was irrelevant. However, Defendant is attempting to use the lack of knowledge (due to the lack of disclosure), and the holding of *Harp Advertising Ill. v. Village of Chicago Ridge*, 9 F.3d 1290 (7th Cir. Ill. 1993) against Franzese. It is for that reason that Defendants' hiding of information from Franzese has caused Franzese to suffer prejudice.

## Unclean Hands

Further, the Defendants have unclean hands in this issue. Plaintiffs note that Defendants have violated:

> the equitable maxim that "he who comes into equity must come with clean hands." This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be "the abettor of iniquity." *Bein v. Heath*, 6 How. 228, 247. Thus while "equity does not demand that its suitors shall have led blameless lives," *Loughran v. Loughran*, 292 U.S. 216, 229, as to other matters, **it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue**. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245; *Johnson v. Yellow*

11

> *Cab Co.*, 321 U.S. 383, 387; 2 Pomeroy, *Equity Jurisprudence* (5th Ed.) §§ 379-399.

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 814-15

(1945) (emphasis added).

> This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Keystone Driller Co. v. General Excavator Co.*, *supra*, 245, 246 . . . Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor.

*Precision Instrument Mfg.*, 324 U.S. at 815.

This Court should not shy from enforcing equitable estoppel against the City.

For example,

> [I]n *TRW, Inc. v. Federal Trade Com.*, 647 F.2d 942 (9th Cir. 1981), the Ninth Circuit reaffirmed its prior decisions holding that equitable estoppel could be applied against the government "in proper circumstances," *United States v. Fox Lake State Bank*, 366 F.2d 962, 965 (7th Cir. 1966), and set forth five requirements for determining when such circumstances exist:
>
>> First, the party to be estopped must know the facts. Second, this party must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended. Third, the party asserting estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his substantial injury. 647 F.2d at 950-51 (citations omitted).
>
> In addition, the Ninth Circuit noted that "the government action upon which estoppel is to be based, must amount to affirmative misconduct," which that court defined as "something more than mere negligence." 647 F.2d at 951. *Accord United States v. Ruby*

12

*Co.*, 588 F.2d 697, 703-04 (9th Cir. 1978), *cert. denied*, 442 U.S. 917, 99 S. Ct. 2838, 61 L. Ed. 2d 284 (1979).

*Portmann v. United States*, 674 F.2d 1155, 1167 (7th Cir. 1982).

Every element has been proven. Defendants knew of the zoning issue (SAUF 6). Defendants clearly intended that when a female employee told Franzese over the phone that the gun store ban mandated the denial of his application, that he would rely on that. As for the zoning issue, Franzese testified he knew nothing about it, and relied on the explanation from the Defendants that the gun store ban was the reason for the denial (SAUF 11, 12). The instant Motion shows that said reliance was to Franzese's detriment. And finally, the keeping of the zoning issue from Franzese until it could be trotted out for this Motion amounts to affirmative misconduct, to a level that exceeds "mere negligence."[3]

For all these reasons, the Defendants' zoning argument should be equitably barred.

---

[3] Plaintiffs stress this is not an allegation against counsel, who presumably had nothing to do with the Defendants' actions in 2010. Plaintiffs understand they must attempt this Motion, even as the Defendants' past actions preclude it.

## CONCLUSION

WHEREFORE, the Plaintiffs, SECOND AMENDMENT ARMS (a d/b/a of R.

Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a Second

Amendment Arms, and TONY KOLE, requests this Honorable Court to deny

Defendant's F.R.Civ.P. 56(a) Motion for Summary Judgment in its entirety, and to

grant Plaintiffs any and all further relief as this Court deems just and proper.


Dated: May 19, 2017                          Respectfully submitted,


                                   By:         /s/ David G. Sigale
                                         Attorney for Plaintiffs


David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

14

## CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

      1.     On May 19, 2017, the foregoing document was electronically filed with the District Court Clerk via CM/ECF filing system;

      2.     Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CMJECF participants in this matter.


                                        _____/s/ David G. Sigale_____
                                         Attorney for Plaintiffs


David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

15