# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SECOND AMENDMENT ARMS, *et al.*, | ) |
| Plaintiffs, | ) Case No. 10-cv-4257 |
| v. | ) Judge Robert M. Dow, Jr. |
| CITY OF CHICAGO, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants City of Chicago, Mayor Rahm Emanuel, Superintendent of Police Eddie Johnson, and City Clerk Anna Valencia's motion for summary judgment [204]. For the reasons set forth below, Defendants' motion [204] is denied. This case is set for further status on September 28, 2017, at 9:30 a.m.

## I. Background

The Court takes the relevant facts from the parties' Local Rule 56.1 statements [204-2; 215-1; 215-10; 217]. The Court construes the facts in the light most favorable to the nonmoving party—Plaintiffs. On July 2, 2010, the City of Chicago enacted a new handgun ordinance that effectively banned the sale of firearms within the city limits (the "2010 Ordinance"). [215-10, ¶ 13.] That same day, Plaintiff R. Joseph Franzese, the sole proprietor of Plaintiff Second Amendment Arms ("SAA"), submitted a business license application to sell firearms at 415 West Armitage Avenue in Chicago. *Id.* ¶ 10; [217, ¶ 1]. There is no dispute that retail firearm sales were prohibited in the City of Chicago on July 2. [215-10, ¶ 13.] There is also no dispute that 415 West Armitage Avenue is the only location for which Plaintiffs Franzese or SAA submitted a business license application to open a retail firearm store between January 1, 2010 and June 25, 2014—the date on which the 2010 Ordinance was repealed. *Id.* ¶¶ 13, 14.

At the time that Plaintiffs submitted their business license application, 415 West Armitage Avenue was advertised as a "commercial space for lease." [215-4; 217, ¶ 5.] That was not accurate. 415 West Armitage was (and has been through the filing of the instant motion) zoned RM-5 under Chicago's zoning ordinance. [215-10, ¶ 11.] The "R" denotes "*residential districts* [that] are intended to create, maintain and promote a variety of housing opportunities for individual *households* and to maintain the desired physical character of the city's existing neighborhoods." Municipal Code of Chicago § 17-2-0101 (emphasis in original). Districts zoned RM-5 "are intended to accommodate multi-unit residential buildings." *Id.* § 17-2-0104-C (emphasis omitted). Municipal Code Section 17-2-0207 describes the permitted uses of properties zoned RM-5. Plaintiffs admit that this "residential zoning classification does not permit business or retail uses, either as of right or as a special use." [215-10, ¶ 12.]

Plaintiffs' application for a business license was denied, although the content of that denial is disputed. There is no written record of the denial, but both parties agree that Plaintiffs were informed that their license was being denied because of Chicago's gun sale ordinance. [217, ¶ 10.] Defendants maintain that Plaintiffs were *also* told their application was being denied because of the residential zoning restriction, but Plaintiffs dispute this. *Id.* ¶¶ 9–10. Plaintiffs submit documents showing that Defendants knew about and had discussed denying the application based on the residential zoning obstacle in addition to the 2010 Ordinance. [215-5, at 1–4.] An email between Defendants and officials at the Department of Justice states that "Mr. Franzese was advised that that location was not zoned for business use and the license application did not meet the zoning approval requirement." [215-9, at 14.]

Plaintiffs contend that had they been informed that the application was denied because the location was not zoned for retail uses, they "would have immediately amended the

2

application with a new location or simply filed a new location." [217, ¶ 11.] They argue that the "only reason" they did not do so was "(A.) no one told [them] the Armitage location was not zoned commercial; (B.) the choice of location was not cited to [them] as a reason for denial of [the] Application; and (C.) given the City gun ban Ordinance, it would not have matter what location [they] had chosen to list on [the] Application, as the Application would have been denied because of gun ban store." *Id.* ¶ 12. Defendants dispute that Plaintiffs would have ever filed a new or amended application. *Id.* However, "even if SAA had submitted an application that complied with the requirements of the Chicago Zoning Ordinance at or about the same time it submitted its application for a gun store at 415 West Armitage, the City would not have issued a business license to SAA for a gun store because [the 2010 Ordinance] prohibited gun stores in Chicago." [215-8, at 4.]

In 2015, this Court allowed SAA to pursue its challenge to the 2010 Ordinance based on its claim for monetary damages caused by the gun store prohibition—specifically, lost business. [182, at 28.] Defendants have now moved for summary judgment on that claim [204].

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To establish that a material fact is undisputed, the movant "must support the assertion by * * * citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations * * *, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). In determining whether summary judgment is appropriate, the Court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. See *Carter v. City of Milwaukee*, 743 F.3d 540, 543 (7th Cir. 2014). Rule 56(a) "mandates the entry of summary judgment, after adequate

3

time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Put another way, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

### III. Analysis

Defendants advance one argument in favor of summary judgment: standing. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). For that reason, "[s]tanding is a threshold question in every federal case." *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988). To show standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The part[ies] invoking federal jurisdiction"—here, Plaintiffs—"bear[] the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

The SAA's claim for monetary damages related to its lost business is an as-applied challenge. See *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016) ("[A] facial challenge usually invites prospective relief, such as an injunction, whereas an as-applied challenge invites narrower, retrospective relief, such as damages."). But "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). "As a general matter, a plaintiff who wishes to engage in conduct arguably protected by the Constitution, but proscribed by a statute, successfully demonstrates an immediate risk of injury." *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012). Thus, "when a plaintiff expresses a credible intention to disobey a statute, a sufficient likelihood of injury exists, and a pre-enforcement challenge is appropriate." *Id.* In the as-applied context, a court "examine[s] only the facts of the case before [it] and not any set of hypothetical facts under which the statute might be unconstitutional." *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

Defendants contend that "a party lacks standing to challenge the denial of its administrative application where the application was also denied, or could have been denied, based on a separate unchallenged regulation." [204-1, at 5.] For this proposition, Defendants rely principally on *Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, Illinois*, 9 F.3d 1290 (7th Cir. 1993). In *Harp*, the plaintiff sought to erect a 1,200 square foot billboard, but there were two regulatory obstacles in the way: sign and zoning ordinances that prohibited "off-premises signs" and an unrelated ordinance limiting the face of any sign to no larger than 200 square feet. *Id.* at 1291. The Seventh Circuit concluded that the plaintiff lacked standing "to challenge either the sign code or the zoning code, because it could not put up its sign even if it

5

achieved total victory in this litigation." *Id.* The Seventh Circuit explained that "[a]n injunction against the portions of the sign and zoning codes that [the plaintiff] has challenged would not let it erect the proposed sign; the village could block the sign simply by enforcing another, valid, ordinance already on the books" (namely, the ordinance limiting sign sizes). *Id.* at 1292.

The Seventh Circuit then cautioned that the case would be different "if [the plaintiff] wanted to post a smaller sign in the event it could clear away the regulatory obstacles other than [the off-premises sign ordinance]. But [the plaintiff] did not make such a representation in the district court, and its lawyer refrained from doing so in this court despite an invitation during oral argument." *Id.* at 1291. The Seventh Circuit went further:

> [Plaintiff] might use the cases recognizing this principle to say that there is *some* probability that it will eventually want to erect a sign of 200 square feet or less in Chicago Ridge. But it does not make such an argument, and even if it did we would have to ask: how likely is it that a judgment will do the victor any good? One may debate—judges *do* debate, vigorously—the appropriate threshold. Holding such an inquest in the absence of the plaintiff's assertion that the probability is significant would be an arid exercise. [Plaintiff] wanted to put up a 1,200 square foot sign; for all we can tell, it has no interest in erecting anything smaller anywhere in the United States, let alone a sign of 199 square feet in Chicago Ridge, Illinois. It therefore lacks standing.

*Id.* at 1292–93 (internal citation omitted).

Extrapolating from *Harp*, Defendants argue that Plaintiffs' "sole application for a City business license" to operate a retail gun store was at 415 West Armitage, this location was zoned for residential use, and thus even if they could show that the City's gun store ban violated the Second Amendment, Plaintiffs "still would have been prohibited from conducting firearm sales at" the request location due to a valid, unchallenged ordinance. [204-1, at 5–7.] As a result, Defendants contend that Plaintiffs suffered no redressible injury and lack standing. Plaintiffs respond that they "would easily have picked a different location" had they been told that this location was not available as a commercial space and "[e]veryone knows, however, this would

6

not have mattered, because the gun store ban would have blocked [their] efforts no matter where [they] chose." [215, at 11.] Putting aside the parties' dispute about what Plaintiffs were told about their application's denial, Plaintiffs' submission of a business license application listing 415 West Armitage as the location for their gun store does not defeat standing.

Plaintiffs' representations and Defendants' admissions distinguish this case from *Harp*. No one suggests that there was anything special about operating a gun shop at 415 West Armitage. Plaintiff simply picked a location advertised as a commercial space. Had that location been unavailable, it is *highly* probable that Plaintiffs would have chosen (and been able to find) a different commercial location to apply for a business license to operate a gun store. The fact that the particular address that Plaintiff listed on their gun store application was zoned for residential use even though it was advertised as a commercial space is simply a fortuity.

Indeed, this case would be more analogous to *Harp* if SAA's claim was that it *wanted* to operate gun shop out of a residential space. In that circumstance, the residential zoning ordinance would be an independent "valid, unchallenged ordinance" that would preclude SAA from ever operating its desired home-retail gun store, much like the sign-size ordinance independently precluded Harp Advertising from constructing a 1,200 foot off-premises sign. But that is not SAA's claim. It is undisputed that Plaintiffs wanted to, and thought they were, applying to open a gun store in a commercial space. That is sufficient to rebut Defendants' argument that it would be entirely "speculative" to conclude that Plaintiffs intended to operate a gun store from a commercially zoned location. [216, at 6.] Unlike the sign's size in *Harp*, Plaintiffs' contention is the particular location for the store was fungible and Defendants offer nothing to rebut that contention beyond the fact that Plaintiffs did not submit another application

7

after being told it would be futile to do so because of the 2010 Ordinance.[1] Thus, a judgment that SAA was improperly precluded from opening a gun store at *any* commercial location in Chicago solely because of the gun store ban is substantially likely to redress its injuries—whatever their size.[2]

The zoning billboard cases that the parties rely on fit this pattern. In some of these cases, the permit applications violated a host of unchallenged zoning prohibitions and there was no reasonable prospect that the plaintiff had any intention of rectifying these problems. See, *e.g.*, *KH Outdoor, L.L.C. v. Clay Cty., Fla.*, 482 F.3d 1299, 1304 (11th Cir. 2007) (holding there was no standing where plaintiff was not a licensed building contractor in Florida, which mean its sign permit application was inconsistent with independent regulations regarding contracting); *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 461–63 (6th Cir. 2007) ("Even if plaintiffs could show that the township's original off-premises advertising ban (or its sign-approval process) violated the First Amendment, each of [plaintiffs'] nine sign applications sought permission to post signs that plainly violated the township's size and height regulations. * * * We need not decide whether plaintiffs could resolve this standing defect by alleging that they wish to post signs that would satisfy the township's size and height restrictions. Nothing in their complaint offers any indication that they have any such plans—and if the nine past applications (none of which satisfied the size and height restrictions) are precedent, there is no reason to think that they will file any such application in the future."); *Lockridge v. Vill. of Alsip,*

---

[1] The premise underlying SAA's claim is that it wanted to be "first" gun store [215, at 7], which makes Plaintiffs' conduct following repeal of the 2010 Ordinance in 2014—almost four years after this suit was initially filed—less relevant to their intent in 2010.

[2] That being said, the fact that SAA could not have opened a gun store at 415 West Armitage may significantly curtail any "lost profits" it could hope to recover from being the first gun store in Chicago. Indeed, it may be an insurmountable hurdle for Plaintiff to establish a viable, non-speculative damages theory. But that goes to the merits, not standing.

8

*Ill.*, 2005 WL 946880, at *2 (N.D. Ill. Apr. 18, 2005) (holding no standing where signs violated independent building and structure height regulations). In others, there was a sufficient showing that the plaintiff was likely to overcome the unchallenged, independent regulation and submit an application that complied with all but the putatively unconstitutional regulation. See *Lamar Advert. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 374–75 (2d Cir. 2004) (reversing the district court's holding denying standing where plaintiff had submitted a "multi-phase plan to build signs of differing sizes throughout commercial and industrial zones," and thus had an "intent to put up at least some signs that would comply with the ordinance's size restrictions," which meant its injuries were redressible); *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 790 F. Supp. 2d 693, 695–96 (N.D. Ill. 2011) ("[Defendant] has suddenly discovered a laundry list of regulations which, it contends, prevent [plaintiff] from ever operating its restaurant at the proposed location. * * * Unlike the plaintiff in *Harp,* [plaintiff] may be able to comply with other, valid regulations. * * * The fact that [plaintiff's] original application may have been deficient in some respects is not dispositive. * * * The court sees no reason why [plaintiff] cannot eventually comply with the parking and other regulations.").

In fact one of the cases that Defendants cite highlights this very distinction. In *Covenant Media of Illinois, L.L.C. v. City of Des Plaines, Illinois*, the defendant identified "two bodies of law independent of the Sign Ordinance" that it contended would have precluded the plaintiff's proposed twelve signs: the city's building code that purportedly required the applicant to file "boring tests and electrical plans certified by an Illinois engineer" and transportation regulations that prohibited signs more than 660 feet away from a highway. 476 F. Supp. 2d 967, 977–78 (N.D. Ill. 2007). The district court *rejected* the argument that the building code violations—

9

independent and unchallenged though they may have been—were sufficient to show that Plaintiff lacked standing. *Id.* at 978 n.10. It explained,

> Even if [plaintiff] was required to submit these items in order to obtain a permit under the City's building code, its submission of other items, such as construction engineering plans and computer-generated site plan sketches, as well as its expression of willingness to submit additional materials, is sufficient to demonstrate its intent to comply with the building code. As a consequence, the court cannot conclude that [plaintiff's] proposed billboards would have been precluded even if the City had not denied its applications based on putatively unconstitutional provisions of the Sign Ordinance.

*Id.* The court held that there was no standing, however, based on the separate highway-distance regulations because the plaintiff "presented no evidence that it could have satisfied the standards and conditions imposed by the Zoning Ordinance" to be exempted from this regulation for its twelve signs, nearly all of which were more than 600 feet from a highway. *Id.* at 980.

Consistent with *Harp*, the issue in *Covenant* was not simply the existence of some independent, unchallenged regulation that *could* have blocked the application, but the likelihood that the applicant was willing and able to comply with those other regulations yet still would have been blocked by the challenged ordinance. The fact that the plaintiff in *Covenant* submitted other items with its permit showed its intent to comply with the building code provisions. In contrast, eleven out of twelve of the billboards proposed by the plaintiff did not comply with the distance ordinance, which strongly suggested that the plaintiff did not intend to comply with this ordinance.[3] In the instant case, the fact that SAA submitted an application for a location advertised as a commercial space sufficiently establishes that it intended to comply with the residential and commercial zoning classification ordinances had its application not been denied on the basis of the city-wide ban on gun stores. That is enough for standing.

---

[3] The court in *Covenant* subsequently vacated the portion of its decision denying standing for the twelfth application for a sign located within 660 feet of the highway, concluding that the denial of this twelfth billboard was a redressible injury. See *Covenant Media of Ill., L.L.C. v. City of Des Plaines, Ill.*, 496 F. Supp. 2d 960, 962–64 (N.D. Ill. 2007).

Accordingly, based on the present record, Defendants' motion for summary judgment [204] is denied.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [204] is denied. This case is set for further status on September 28, 2017, at 9:30 a.m.

Dated: August 29, 2017

_____
Robert M. Dow, Jr.
United States District Judge