**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SECOND AMENDMENT ARMS (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a SECOND AMENDMENT ARMS, ROBERT M. ZIEMAN, SR., ICARRY, an unincorporated Association (and d/b/a of Shaun Kranish), SHAUN KRANISH, individually and d/b/a ICARRY, and TONY KOLE, | ) | Case No: 1:10-CV-4257 |
| Plaintiffs, | ) | |
| v. | ) | Hon. Robert M. Dow, Jr.<br>U.S. District Court Judge |
| CITY OF CHICAGO, a municipal corporation, RAHM EMANUEL, in his official capacity as Mayor of the City of Chicago, GARRY McCARTHY, Superintendent of Police of the City of Chicago, and SUSANA MENDOZA, City Clerk of the City of Chicago, | ) | Hon. Sheila M. Finnegan<br>U.S. Magistrate Judge |
| Defendants. | ) | |

**PLAINTIFFS' SUPPLEMENTAL BRIEFING TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME the Plaintiffs, SECOND AMENDMENT ARMS (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a Second Amendment Arms, and TONY KOLE, by and through undersigned counsel, and submits the following Supplemental Briefing to Defendants' F.R. Civ. P. 56(a) Motion for Summary Judgment.

## I. NOMINAL DAMAGES ARE AN ACCEPTED AND COMMONPLACE REMEDY FOR CONSTITUTIONAL VIOLATIONS.

This Court requested further briefing on the question of whether Plaintiffs may still prevail on the merits in this matter with an award of nominal damages. The answer is they can. In light of the relevant case law, the denial of Plaintiff's business license application to open a gun store was blatantly unconstitutional and a violation of Plaintiff's Second Amendment rights. Defendants do not even argue to the contrary. There must be a remedy, and the Courts have addressed this in the form of nominal damages.

In addition to the arguments presented in Dkt. # 274, Plaintiffs assert the following:

The United States Supreme Court just addressed the issue of nominal damages in a Second Amendment action. In *New York State Rifle & Pistol Ass'n. v. City of New York*, 140 S. Ct. 1525 (2020), the plaintiffs challenged certain city firearm transport restrictions which, by the time the matter reached oral argument at the Supreme Court, has been repealed by the city and preempted by a change in state law. *Id.* at 1526. The Court therefore declared the matter moot, but remanded the case back to the District Court to "consider whether petitioners may still add a claim for damages in this lawsuit with respect to New York City's old rule," since they had not asked for damages up until that point. *Id.* at 1527.

In dissent, Justice Alito opposed dismissing the case as moot, because, in relevant part, "if we reversed on the merits, the District Court on remand could

award damages to remedy the constitutional violation that petitioners suffered." *Id.* at 1528 (Alito, J., dissenting). Justice Alito correctly noted that "[p]etitioners brought their claims under 42 U. S. C. § 1983, which permits the recovery of damages. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 695-701, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). And while the amended complaint does not expressly seek damages, it is enough that it requests '[a]ny other such further relief as the [c]ourt deems just and proper.' App. 48. Under modern pleading standards, that suffices." *N.Y. State Rifle & Pistol Ass'n.*, 140 S. Ct. at 1535 (2020) (Alito, J., dissenting).

In this case, Plaintiffs' pending Complaint requests actual damages to compensate for the lost business due to the deprivations of their civil rights, as well as "such other and further relief as this Court may deem just and proper in the premises." *See* p.10-11 of Fourth Amended Complaint. Further, at the outset Plaintiffs requested "general, compensatory, and punitive damages as the proofs will show at trial (*See* p.25 of Dkt. # 1). Plaintiff's pending Complaint thus covers both possibilities, and, though the phrasing has changed, Plaintiffs have sought such a remedy since the initial filing of this suit.

In *N.Y. State Rifle & Pistol Ass'n.*, Justice Alito further stated that:

> At a minimum, if petitioners succeeded on their challenge to the travel restrictions, they would be eligible for nominal damages. When a plaintiff's constitutional rights have been violated, nominal damages may be awarded without proof of any additional injury. See *Carey v. Piphus, 435 U. S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978)*; *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249

> (1986). Nominal damages are "the appropriate means of vindicating rights whose deprivation has not caused actual, provable injury." *Id.*, at 308, n. 11 (internal quotation marks omitted); *see also Carey*, 435 U.S., at 266, 98 S. Ct. 1042, 55 L. Ed. 2d 252. And they are particularly important in vindicating constitutional interests. *See Riverside v. Rivera*, 477 U. S. 561, 574, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986) (plurality opinion). Consequently, courts routinely award nominal damages for constitutional violations. *See*, *e.g.*, *Stoedter v. Gates*, 704 Fed. Appx. 748, 762 (CA10 2017) (Fourth Amendment); *Klein v. Laguna Beach*, 810 F. 3d 693, 697 (CA9 2016) (free speech); *Project Vote/Voting for America, Inc. v. Dickerson*, 444 Fed. Appx. 660, 661 (CA4 2011) (*per curiam*) (free speech); *Price v. Charlotte*, 93 F. 3d 1241, 1257 (CA4 1996) (equal protection).

*N.Y. State Rifle & Pistol Ass'n.*, 140 S. Ct. at 1535-36 (2020) (Alito, J., dissenting).

The Seventh Circuit has squarely ruled in favor of nominal damages for constitutional violations. Plaintiff previously cited to *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795 (7th Cir. 2016), but did not then note the Court's ruling:

> Last, we turn to the question of the nominal damages the district court awarded to Six Star. The City fights this because, it argues, Six Star suffered only *de minimis* harm. But it overlooks the fact that this is exactly the situation for which nominal damages are designed. And in civil rights cases, nominal damages are appropriate when a plaintiff's rights are violated but there is no monetary injury. *See Carey v. Piphus*, 435 U.S. 247, 266-67, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978).
>
> The City protests that Six Star could not have opened Silk East at 130 North Old World Third Street because another tenant occupied that space. Whether that is true is disputed: Six Star offered evidence that it leased the space to a tenant with the caveat that Six Star could displace the tenant immediately upon obtaining a theater license. Moreover, this fact is irrelevant to the legal issue, which relates to the First Amendment implications of the lack of clear licensing standards binding the City, not how quickly Six Star could have moved if the City had issued a license. The City is not defending these repealed ordinances. At most, the presence of the tenant might have been

> relevant to Six Star's damages, but given the award of nominal damages, even that point drops out.

*Six Star Holdings*, 821 F.3d at 805. The similarities between *Six Star* and this case are striking. And it was *Ezell* that compared the analysis of Second Amendment claims to First Amendment claims. 651 F.3d at 702.

Plaintiffs strongly disagree with the Court's ruling regarding its expert witness and compensatory damages, but at a minimum the Defendants should be liable for violating Franzese's and Second Amendment Arms' constitutional rights. They have established that their request for a business license was denied because the Defendants did not allow firearms dealers within the City limits, and that Plaintiffs could not obtain an FFL without the license. All of Plaintiffs' troubles stemmed from Defendant's wrongful refusal to allow a constitutionally-protected business to open. The Court in *Illinois Association of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928 (N.D. Ill. 2014) has already ruled to that effect. Plaintiff Franzese and his team have worked in the firearms industry for decades. Due to *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and the passage of the Firearms Concealed Carry Act, 430 ILCS 66/1, *et seq.*, it was the optimal moment to open a firearms store in Chicago, and Defendants prevented it. Plaintiffs should be compensated for the Defendants' wrongful actions, even if nominal damages are the only way to do that. The Motion for Summary Judgment as to Count I should be denied.

## II. THE LASER SIGHT BAN IS UNCONSTITUTIONAL, AND WHILE THE PLAINTIFFS' PROFERRED EVIDENCE IS ADMISSIBLE, THE DEFENDANTS' IS NOT.

In addition to the arguments presented in Dkt. # 274, pp. 24-29, Plaintiffs assert the following:

In *Illinois Association of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928 (N.D. Ill. 2014), the Court found, as pertaining to the City's ban on gun stores, that "the City's lack of compelling justifications for why it banned all gun stores in Chicago is sufficient in and of itself to render MCC § 8-20-100 unconstitutional." *Id.* at 945. Similar to that case, the Defendants have offered no evidence or witnesses to support the laser sight ban, even as they help law-abiding persons use their firearms more safely, and even though there are already laws that, if followed by criminals, would prevent laser sights from being used during illegal activity.

In addition to deposition testimony on the subject, both parties submitted documentary evidence. While the documentation the Plaintiff has submitted has the aura of trustworthiness and veracity for the information Plaintiffs have provided, the Defendants have only offered inflammatory and overly-prejudicial anecdotes in the form of newspaper stories, which are hearsay and not probative of the issues at hand.

Federal Rule of Evidence 1001(a) states that "[a] 'writing' consists of letters, words, numbers, or their equivalent set down in any form," while FRE 1001(d) states, in relevant part, that "[a]n 'original' of a writing or recording means the

writing or recording itself or any counterpart intended to have the same effect by the person who executed or issued it. For electronically stored information, 'original' means any printout—or other output readable by sight—if it accurately reflects the information."

So even if FRE 1002 requires an original writing to prove its content, for content produced electronically, any printed version or even a link to the information where it can be accurately read, satisfies the Rule. Further, FRE 1003 allows that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Though there are circumstances where an Internet posting can be suspect, such as when someone claims her social media page was "hacked," there is no such issue in this case.

The next question is the reliability of the information. In *Sua v. Tilton*, 2010 U.S. Dist. LEXIS 117850 (S.D. Cal. 2010), the Court found that the proffered Internet articles did not prove what the plaintiff hoped, but besides that the Court noted that: "it is not clear that they are valid, accurate or admissible as they come from sources such as Wikipedia (a free online encyclopedia that can be edited by anyone), Yahoo! Answers (a public online community in which participants ask and answer questions on a wide range of topics) and absoluteastronomy.com (which states that the source of the article is Wikipedia)." *Id.* at *21.

And while this problem certainly exists for purported medical evidence from the Internet (*See*, *e.g.*, *Combs v. Washington*, 2014 U.S. Dist. LEXIS 121320, **4-5

(W.D. Wash. 2014), that is not the case with the proposition Plaintiffs are supporting – that sights on firearms have been in use for centuries. There is no situation where the Court should be concerned with the trustworthiness of the source or the method of information. *See United States v. Jackson*, 208 F.3d 633, 638 (7th Cir. 2000) (citing *United States v. Croft*, 750 F.2d 1354, 1367 (7th Cir. 1984)). For example, to say that:

> The first gunsights appeared as early as 1450. They consisted of a bead front sight and a notched standing rear sight. Since then, other designs have allowed great accuracy in situations in which the shooter can take his time in preparing to fire. Yet others, *e.g.*, the open rear sight, allow for aiming and shooting quickly. Special telescopic sights appeared in the 1600s. In 1737, King Frederick the Great of Prussia told of a target shoot in which he used telescopic sights. Snipers' rifles with telescopic sights were used in the U.S. Civil War and World War I. Optical advances in the 20th century led to hugely varied telescopic or "scope" sights in varying powers and often varying ranges of magnification.

https://www.britannica.com/technology/gunsight#ref87005 (last checked July 16, 2020)

is suspect is untrue. There is no public editing of the Encyclopaedia Britannica. There is no motivation for Britannica to provide false information, especially about something as mundane as the history of a gunsight. Nor, for that matter, is there any such motivation for the NRA, which published *Back to Basics: Telescopic Sights* on April 2, 2019 (https://www.americanrifleman.org/articles/2019/4/2/back-to-basics-telescopic-sights/ (last checked July 16, 2020)), which states that:

> In the 1830s, a civil engineer named John Chapman and another man, Morgan James, developed the first operational—if not practical—telescopic sight. Later, around 1855, a William Malcolm of Syracuse, N.Y., produced a telescopic sight featuring

> achromatic lenses like those used in telescopes and an improved design for windage and elevation adjustments. Quite a few of these sights saw service during the War Between the States on both sides.

The proposition Plaintiffs seek to establish, that sights on firearms have been in use in various forms for hundreds of years (certainly pre-dating the Fourteenth Amendment, *see A Complete Guide To Riflescopes*, https://www.fieldandstream.com/articles/guns/rifles/2014/06/complete-guide-riflescopes/) (last checked July 16, 2020) is not provocative. There is no allegation by Defendants that the information is incorrect, and there is no reason why Encyclopaedia Britannica, Field & Stream, or even the NRA, would put out false information on such a topic. Nor, for different reasons, would Scopes Guide in publishing *The Malcolm Scope* (https://www.scopesguide.com/malcolm-scope.html) (last checked July 16, 2020). If that site wishes to be known as a reputable dealer of scopes, then it cannot be putting out false information to its consumers. This is why, even though www.shotmade.com apparently disappeared since Plaintiffs cited to it in October, 2019, the same information is also on Scopes Guide in *History of the Telescopic Sight* (https://www.scopesguide.com/rifle-scope-history.html) (last checked July 16, 2020).

"Federal Rule of Evidence 901 'requires only a *prima facie* showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence.'" *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, 2004 U.S. Dist. LEXIS 20845, *17-18 (N.D. Ill. 2004) (quoting *U.S. v. Harvey*, 117 F.3d

1044, 1049 (7th Cir. 1997)). In *Telewijza Polska*, the Court found that where, in relevant part, the defendant did not "come forward with its own evidence challenging the veracity of the exhibit," it would be admitted. *Telewijza Polska*, 2204 U.S. Dist. LEXIS 20845 at *18. Plaintiffs point out that none of the information is in the manner of blog posts, or other individual postings. They are from respected sources and reputable dealers of the products in question. Further, as the information is simply pointing out historical information which is easily verifiable and cross-referenced, it should be admissible under the FRE.

However, while the proposition the Plaintiffs need to show to meet the first step of the two-part analysis mandated in *Ezell v. City of Chicago*, 651 F.3d 684, 702-03 (7th Cir. 2011) is clear and cannot be seriously doubted; namely, that the use of sights for improved firearm use is long-standing and is covered by the Second Amendment's protections, the information provided by the Defendants is not probative of the second-part.

Defendants cites to numerous newspaper and magazine articles, not for dictionary or atlas-type facts, but to assert that unknown and unnamed gang members back in 1996 were using laser sights, with no information besides that fear-inducing statement (Dkt. # 254-12). Defendants also cherry-picked a few shooting events in the span of 1999 – 2018, including the Fort Hood shooting in Texas, a police shooting in 1999, and a shooting in Jacksonville, Florida in 2018. This is offered, Plaintiff supposes, to assert that without a laser sight these shootings may not have happened. Unlike the Encyclopaedia Britannica article, the

newspaper articles are all hearsay, complete with quotes and opinions that have not been authenticated or verified for accuracy. *See Williams v. York*, 2010 U.S. Dist. LEXIS 106934, *8 (N.D. Ind. 2010) (a newspaper article is "clearly hearsay") (quoting *Cody v. Harris*, 409 F.3d 853, 860-61 (7th Cir. 2005)).

In *Williams*, the Court held:

> Mr. Williams argues that the article "does fall into Rule 803 and 804 hearsay exceptions", but he doesn't provide any analysis to support this assertion, and it isn't apparent how a newspaper article could meet any of the exceptions contained in those rules. *See* Fed. R. Evid. 803-804. To the extent Mr. Williams means the article is not hearsay because he is not relying on it for its truth, this argument is incorrect. Mr. Williams points to the article as proof that, based on a statement by the reporter (which in turn appears to have been based on the argument of his appellate counsel), Ms. Dickey's children didn't "name him as the perpetrator" the night of the beating. (DE 98 at 30.) His argument assumes the truth of what the reporter says. Because this document and the statements contained within it are hearsay, Mr. Williams can't rely on it to oppose the defendants' motion for summary judgment. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) ("[A] party may not rely upon inadmissible hearsay . . . to oppose a motion for summary judgment.").

*Williams*, 2010 U.S. Dist. LEXIS 106934, at *8-9.

There is simply no way, from reading the articles alone, to know if the interviewees were quoted correctly or in context, or if the later investigations revealed that early beliefs about the case were inaccurate. Especially in a case like that of Fort Hood, it is unknown if all relevant information made the newspapers, or if the authorities even gave misleading or incorrect information to the press for investigative purposes such as apprehending gang members or terrorists. This is

why newspaper articles are hearsay and are not a substitute for actual facts and supported data.

Further, though any criminal shooting resulting in death is tragic, there is no probative value of the newspaper articles as to the issue of laser sights. They are irrelevant to the issue. As an example, and taking all the details in the article as written, Dkt. # 254-18 describes a shooting in Chicago in 2018 where a child was killed by a gang member shooting at a crowd during a party. The shooter fired at least ten shots, hitting the child and the teenager carrying him. Though a laser sight was reportedly used, the shooter fired because his gang leader ordered him to do it, and the laser sight had nothing to do with it. It is obvious the shooter would have used whatever illegal firearm was handy at the time.

But it may be that the Defendants are trying to note the existence of a shooting by a criminal somewhere and sometime in America, and that the firearm used had a laser sight. That is exactly the sort of conclusory, unsupported, and unduly prejudicial statement prohibited by the FRE.

And it must be reiterated that the law-abiding people should not be punished for the actions of criminals committing violent crimes, and it is typical that the Defendants would try to paint the plaintiffs with the same broad brush as violent gang members. *Ezell* warned against this: "Here, in contrast, the plaintiffs are the 'law-abiding, responsible citizens' whose Second Amendment rights are entitled to full solicitude under *Heller*, and their claim comes much closer to implicating the core of the Second Amendment right." *Ezell*, 651 F.3d at 708.

It also bears noting that the laser sight ban was in place in 2018 (and since 1999), though if one is a gang member about to fire into a crowd at a child because his gang leader ordered him to do it (apparently, if the article is taken as accurate, because the gang leader felt disrespected about an argument at the party, even though he was not attending), whether or not the laser sight is legal under City ordinance is irrelevant.

In short, the laser sight ban has done nothing to improve public safety, even judging by the improper and irrelevant news stories offered by Defendant, and Defendant has not offered any witnesses or other evidence that the public would feel safer if such a prohibition was maintained, which was cited as justification in *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015), the holding in which was followed in *Wilson v. Cook County*, 937 F.3d 1028 (7th Cir. 2019).

It is for good reason that the Defendant cannot apply *Friedman* and *Wilson* to this case, as whatever debate one wishes to have about assault weapons, one thing not open to debate is that a laser sight is not an assault weapon. This is why *Friedman* and *Wilson* are not controlling in this case, as *Wilson* made very clear that its analysis applied specifically to assault weapons (*Wilson*, 937 F.3d at 1033, 1035). Plaintiff discussed *Friedman* in its initial Response Brief, and *Wilson* says nothing more about *Friedman* (beyond the assault weapon issue) except that the Court did not see a reason to revisit *Friedman*'s holding. *Wilson*, 937 F.3d at 1036.

However, *Wilson* also held that "We do not establish here a comprehensive approach to Second Amendment challenges, and we leave for other cases further

development and refinement of standards in this emerging area of the law." *Id.* at 1036-37. Therefore, in the case of a tool that is long-standing and aids the exercise of the Second Amendment right, the Court should employ the two-part test of *Ezell*, or the history and tradition test of *District of Columbia v. Heller*, 554 U.S. 570 (2008).

When either of those two tests is applied, it is clear that banning something which is simply a modern iteration of something that has necessarily been a part of safe firearm usage for hundreds of years, *i.e.* firearm sights (*See*, *e.g.*, *United States v. Jones*, 132 S. Ct. 945 (2012)), cannot be upheld on constitutional grounds.

Plaintiffs provided facts and testimony to prove this (and discussed this at length in their initial Response Brief); Defendants provided no evidence or witnesses other than non-probative and prejudicial hearsay stories from the newspapers. This sort of speculative argument, with no factual support, was specifically rejected in *Ezell*. 651 F.3d at 709, and should not be countenanced here. Plaintiffs have shown that firearm sights are long-standing, and it was Defendants' burden to show that the ban met constitutional scrutiny. It has completely failed to do so pursuant to the relevant Seventh Circuit precedent.

As noted previously, there is no constitutional basis to ban something that can better help a City resident in the effort of self-defense. The Motion for Summary Judgment as to Count III should be denied.

## CONCLUSION

WHEREFORE, the Plaintiffs, SECOND AMENDMENT ARMS (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a Second Amendment Arms, and TONY KOLE, requests this Honorable Court to deny Defendant's F.R.Civ.P. 56(a) Motion for Summary Judgment in its entirety, and to grant Plaintiffs any and all further relief as this Court deems just and proper.

Dated: July 16, 2020

Respectfully submitted,

By: /s/ David G. Sigale
Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com

**CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

1. On July 16, 2020, the foregoing document was electronically filed with the District Court Clerk via CM/ECF filing system;

2. Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CMJECF participants in this matter.

/s/ David G. Sigale
Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com