IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECOND AMENDMENT ARMS, </br> R. JOSEPH FRANZESE, individually </br> and d/b/a SECOND AMENDMENT </br> ARMS, and TONY KOLE, </br> </br> Plaintiffs, </br> </br> v. </br> </br> CITY OF CHICAGO, </br> LORI LIGHTFOOT, </br> EDDIE JOHNSON, </br> and ANNA VALENCIA, </br> </br> Defendants. | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) | </br> </br> </br> </br> </br> </br> </br> Case No. 10 C 4257 </br> </br> Judge Robert M. Dow, Jr. |

**DEFENDANTS' SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT PURSUANT TO COURT'S MARCH 10, 2020
<u>MEMORANDUM OPINION AND ORDER</u>**

**INTRODUCTION**

Defendants submit this supplemental reply brief to address the following issues in support of their earlier motion and briefing on summary judgment: (1) whether Plaintiffs have a claim for nominal damages arising from the City's prior ban on firearm stores; (2) the applicable law governing Plaintiffs' challenge to the Laser Sight Ordinance, which bans the possession or sale of laser sight accessories, as well as the Court's consideration of evidentiary materials submitted by the parties on that claim.

On the first issue, Defendants' Supplemental Brief established that Plaintiffs waived any claim for nominal damages and, in any event, such relief would not save Plaintiffs' challenge to the prior ban on gun sales from being moot, because all other forms of relief as to that count have been dismissed, and nominal damages are duplicative of the dismissed declaratory relief. (Dkt. 291, at 2-8.) Plaintiffs' Supplemental Brief (Dkt. 292) does not address any of this. Instead, Plaintiffs justify their eleventh-hour claim for nominal damages by invoking the Supreme Court's recent *per curiam* opinion in *New York State Rifle & Pistol Ass'n v. City of New York*, 140 S.Ct. 1525 (2020). That case, which did not address the propriety of nominal damages at all, much less under circumstances like those here, is inapposite.

On the second issue, Plaintiffs continue to insist that the 2011 decision in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), controls the analysis for their challenge to the City's Laser Sight ordinance, but they do nothing to refute the City's showing that the Seventh Circuit's later decision in *Friedman v. Highland Park*, 784 F.3d 406 (7th Cir. 2015), rather than *Ezell*, provides the appropriate framework. Nor do they undermine Defendants' showing that *Friedman* (as well as Plaintiffs' prior concessions) permits consideration of the news articles submitted by Defendants in support of the Laser Sight Ordinance. Those articles support the

1

proposition that a ban on laser sights improves the public's sense of safety, and do not need to meet the standards of traditional evidentiary admissibility to be considered here. (Dkt. 291 at 12-13.) Plaintiffs instead devote much of their brief to arguing that various articles and publications discussing the history of iron sights on firearms – articles that they did not submit previously on summary judgment – are not barred by the hearsay rule. They fail in that regard, and, in any event, the articles are not relevant. For these reasons, as more fully explained below, the Court should enter judgment for Defendants on Plaintiffs' gun store ban and Laser Sight Ordinance claims.

I. **The Court Should Not Allow Plaintiffs To Pursue Nominal Damages At This Late Stage in the Litigation, And Nominal Damages Do Not Save Plaintiffs' Gun Sale Claim From Mootness.**

As Defendants explained in their supplemental brief in support of summary judgment (Dkt. 291), Plaintiffs Second Amendment Arms ("SAA") and Franzese are not entitled to nominal damages based on the City's prior ban on firearm stores, for two reasons. First, any claim for nominal damages is waived, as Plaintiffs never sought nominal damages at any prior point in the litigation and it is too late to inject them into the case now. Second, even if nominal damages were properly asserted, they would not save Plaintiffs' claims from being moot. There is therefore no reason to delay this case further so that nominal damages can be litigated. (Dkt. 291 at 2-8.)

Plaintiffs admit in their supplemental brief (Dkt. 292) that they never explicitly claimed nominal damages in any pleading or briefing in the ten-year history of this case, and that they rest instead on their Fourth Amended Complaint's prayer for "such other and further relief as this Court may deem just and proper," (Dkt. 146 at 10), or perhaps their original Complaint's prayer for "general, compensatory, and punitive damages," (Dkt. 1 at 25). (*See* Dkt. 292 at 3.)

However, as Defendants explained, (Dkt. 291 at 2-3), a claim for nominal damages should not be read into such generalized prayers for relief, particularly when a party attempts to avoid mootness based on a claim for nominal damages extracted "late in the day" after all other claims have been dismissed, as is the case here. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997); *see also Fox v. Bd. of Trustees*, 42 F.3d 135, 141-42 (2d Cir. 1994).

In arguing that nominal damages should now be taken up in this case, Plaintiffs rely primarily on *New York State Rifle & Pistol Ass'n*, but that decision does not help them. The Supreme Court did not hold that nominal damages could be read into a generalized prayer for relief or that they could otherwise be asserted so late in a case's lifespan as Plaintiffs seek here. Indeed, the majority opinion does not even mention nominal damages. The Court held only that, after New York City repealed the challenged firearm law while the case was pending in the Supreme Court, the petitioners' challenge to the law, which sought only injunctive and declaratory relief, became moot. 140 S.Ct. at 1526. The Court then remanded the case so that the lower courts could consider whether the petitioners had a valid claim against the new law that replaced the repealed law.

To be sure, the Court added that, as a component of the remand, the lower courts could also consider whether the petitioners could bring a claim for damages as to the former, repealed law. *Id*. But the Court did not hold or even suggest that such damages would be appropriate, whether actual or nominal. Moreover, the repeal of the challenged law occurred while the case was pending on appeal in the Supreme Court, and, under those circumstances, it may be appropriate for a trial court to take up the issue of damages on remand if damages had not been previously aired in the trial court. But here, the challenged law was repealed 6 years ago (in 2014) and the case has been in the trial court for all of its ten years. Plaintiffs have had a full and

3

complete opportunity to develop their damages case, both before and long after the repeal of Chicago's gun shop ordinance, and the parties in fact conducted extensive fact and expert witness discovery and summary judgment motion practice on the issue of lost profits and compensatory damages. Plaintiffs chose to pursue compensatory damages only, and lost when the Court disqualified plaintiffs' damages expert, rejected his opinion on lost profits, and found the plaintiffs' lost profits/damages claim entirely speculative. (Dkt. 278 at 17-29.) Nothing in *New York State Rifle & Pistol Ass'n* calls into question the well-established principles indicating that, under these circumstances, Plaintiffs have waived a claim for nominal damages. (*See* Dkt. 291 at 5-8.)

Plaintiffs also note that, in dissent, Justice Alito believed that a request for damages could be read into the generalized prayer for relief in that case, (*see* Dkt. 292, at 3), but his opinion, of course, was not adopted by the majority. And his dissent actually supports the City. In Justice Alito's view, "the critical factor" for whether a plaintiff should be allowed to request a form of relief not expressly demanded in a complaint is whether doing so will prejudice the defendant. 140 S. Ct. 1525 at n.9. Justice Alito felt that New York City would not be prejudiced by an assertion of nominal damages because "there is no suggestion that the City would have litigated the case any differently if it had been on express notice" that petitioners were seeking nominal damages. *Id*. Here, in contrast, Defendants may have litigated the case much differently had they been on express notice that Plaintiffs were seeking nominal damages. As Defendants explained, nominal damages cannot be awarded unless the Court were to first find, on the merits, that the City's prior gun store ban violated the Second Amendment, a finding this Court has never made. *Id.* Contrary to Plaintiffs' suggestion, (*see* Dkt. 292 at 5), Judge Chang's ruling in *Illinois Association of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928 (N.D. Ill.

2014), is not controlling here because it is the ruling of one District Judge, and Defendants are thus entitled to litigate the merits of the City's prior firearm sales ban anew in this case. That said, it was previously unnecessary to litigate the merits on summary judgment because Plaintiffs could not prevail on the only relief that the Court had found available to Plaintiffs: compensatory damages. (Dkt. 182 at 28 ("Plaintiff [SAA] may proceed on its claim for monetary damages based on alleged loss of business… Plaintiffs' remaining claims under Count I are dismissed.")). But if the Court were to allow a claim of nominal damages to now proceed at this point, the merits would be back on the table, and litigating the merits would cause significant additional delay and expense.

Plaintiffs also cite Justice Alito's belief that the petitioners in *New York State Rifle & Pistol Ass'n* would be entitled to nominal damages if they prevailed on the merits. (*See* Dkt. 292, at 3-4.) But, as Justice Alito explained, nominal damages are "the appropriate means of vindicating rights whose deprivation has not caused actual, provable injury." 140 S.Ct. at 1535-36. This case, in contrast, is not one where actual injury is not provable. It was theoretically possible for Plaintiffs to sufficiently prove an amount of lost profits resulting from the firearms sale ban, and seek compensatory damages in that amount. Plaintiff simply failed to do so after having 10 years to work up a case. (Dkt. 278 at 17-29.) A pursuit of nominal damages is therefore not needed here to vindicate a right that otherwise is uncompensable.

Next, Plaintiffs cite a block quote from *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795 (7th Cir. 2016), and argue in entirely conclusory fashion that "[t]he similarities between *Six Star* and this case are striking." (Dkt. 292 at 5.) However, Defendants' have already explained why *Six Star* is distinguishable from this case, and why nominal damages were appropriate in *Six Star* but not here. (Dkt. 291 at 6-7.) Importantly, *Six Star* did not involve an

5

eleventh-hour assertion of nominal damages as an effort to salvage an otherwise moot claim. Rather, nominal damages were asserted alongside a claim for compensatory damages, and the plaintiff in *Six Star* thus maintained a real personal stake in the outcome of the lawsuit throughout its duration, including through the trial of the case. *Id*.

Finally, Plaintiffs argue that they "should be *compensated* for the Defendants' wrongful actions, *even if nominal damages are the only way to do that*." (Dkt. 292 at 5 (emphasis added.)) However, as Defendants have explained, nominal damages are not a substitute for compensatory damages. Indeed, nominal damages are not really damages at all but a trivial sum awarded for symbolic, rather than compensatory, purposes. (*See* Dkt. 291 at 2, 4.) Plaintiffs' argument for "compensation" in the form of nominal damages should thus be disregarded – especially when Plaintiffs already had a full and fair chance to pursue, and the parties and the Court already spent considerable time and resources litigating and deciding, actual compensatory damages. The prudential concerns that Defendants highlighted in their Supplemental Brief militate in favor of holding Plaintiffs to the consequence of their decision. (Dkt. 291 at 6-8.)

For all the reasons set forth in Defendants' Supplemental Brief and above, the Court should not allow Plaintiffs to proceed on a nominal damages claim and should grant summary judgment to Defendants on Count I in full.

**II. THE LASER SIGHT ORDINANCE IS CONSTITUTIONAL.**

    **A.**    *Friedman* **provides the governing framework for addressing the merits of Plaintiffs' challenge to the laser sight restriction.**

Plaintiffs assert, with almost no analysis, that their challenge to the Laser Sight Ordinance is controlled by *Ezell*, rather than *Friedman* and *Wilson*. Plaintiffs argue that *Friedman* and *Wilson* do not provide the proper framework for resolving this case because those

cases addressed assault weapons bans, and that a laser sight accessory is not an assault weapon. (Dkt. 291 at 13.) But that is hardly a basis for ignoring *Friedman* and *Wilson*; indeed, Plaintiffs' point applies just as equally to *Ezell*, which did not address laser sights, either. The critical question is which of those precedents properly applies here. And Plaintiffs offer no valid basis for why *Ezell* should control. In contrast, Defendants have explained at length why *Friedman* and *Wilson* are the more apt precedents: They are the more recently-decided decisions and reflect the Seventh Circuit's finely-tuned approach for addressing bans on particular forms of modern firearm technology (assault weapons and large capacity magazines) that render conventional firearms more dangerous, just as laser sights also do. (Dkt. 291 at 10.)

As the City has demonstrated previously, its ban on laser sights readily satisfies review under *Friedman's* two core inquiries. (*Id.* at 10-11.) A laser sight was not common at the time of the Second Amendment's ratification in 1791, and is not necessary for the preservation or efficiency of a well-regulated militia. (*Id.*) And Chicagoans still have ample other means of self-defense in the absence of laser sights – conventional long guns and pistols – as both *Friedman* and *Wilson* have held. Indeed, Plaintiffs' own witnesses have admitted the adequacy of non-laser sighted firearms. (Dkt. 256 at 29-30; Dkt. 269 at 13.) Plaintiffs make no effort in their supplemental brief to contend with, much less refute, this analysis.

Plaintiffs similarly have no answer for another factor that supports the validity of the City's restriction under *Friedman*: Banning laser sights advances important governmental interests by increasing the public's sense of safety. (*See* Dkt. 256 at 30-31; Dkt. 269 at 12; Dkt. 291 at 11.) A ban that "may increase the public's sense of safety" by reducing "perceived risk" is a "substantial benefit" weighing in favor of its validity, even if there is no empirical evidence showing that the ban in fact reduces gun violence. *Friedman*, 784 F. 3d at 411-12. *See also*

7

*Wilson,* 937 F. 3d at 1036. Just as *Friedman* recognized with respect to large capacity magazines and assault weapons, the regulation of laser sight accessories is a matter properly "left to the legislative process." *Friedman*, 784 F. 3d at 412.

Plaintiffs also cite Judge Chang's decision in *Illinois Association of Firearms Retailers v. City of Chicago*, 961 F.Supp.2d 928, (N.D. Ill. 2014), in support of their argument that the Laser Sight Ordinance is unconstitutional. (Dkt. 292 at 6.) However, the court in *Illinois Association of Firearms Retailers* analyzed the constitutionality of Chicago's former gun sales ban, MCC § 8-20-100, not its Laser Sight Ordinance, and the case is therefore inapposite. Moreover, Judge Chang's decision in *Illinois Association of Firearms Retailers* came before the Seventh Circuit decided *Friedman* in 2015, and thus before *Friedman* established the analytical framework applicable in this case. For all of these reasons, the Court should apply *Friedman* and *Wilson* in resolving Plaintiffs' challenge to the Laser Sight Ordinance.

> **B.     The Court should disregard newly submitted web articles in Plaintiffs' Supplemental Brief. And the Court can and should consider news articles reporting the use of laser sights in mass shootings and shootings of law enforcement officers as relevant evidence in support of the laser sight prohibition.**

As Defendants explained, the Court may properly consider the media articles submitted by Defendants documenting the use of laser sights in violent mass shootings and attacks on law enforcement. Such articles are, in this case, appropriate evidence supporting the City Council's legislative determination that laser sights are dangerous, and that the public's sense of safety is undermined by laser sights. (Dkt. 291 at 12-15.) Strictly speaking, however, the Court need not assess the permissibility of Defendants' articles, because Plaintiffs admitted the accuracy of Defendants' assertions of undisputed fact based on each of those articles. (*See* Dkt. 291 at 12; Dkt. 275, ¶¶ 28, 31, 35-36.)

8

In previously responding to Defendants' use of the articles, Plaintiffs objected on relevance grounds, not hearsay. (Dkt. 275, ¶¶ 28, 31, 35-36.) A relevance objection, however, does not take issue with the accuracy of the asserted fact. Now, in their supplemental brief, Plaintiffs raise, for the first time, a belated hearsay objection to Defendants' articles. (Dkt. 292 at 10-12). Not only is this objection too late, *see Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (plaintiff did not raise alleged hearsay defects in the Government's evidence before the district court's summary judgment ruling, and instead raised hearsay objections for first time in a motion to reconsider; "If a party fails to object before the district court to [ ] evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived…"); *Federal Deposit Ins. Corp. v. New Hampshire Ins. Co.*, 953 F.2d 478, 484-85 (9th Cir. 1991) (defects in opponent's evidence submitted on motion for summary judgment are waived absent a motion to strike or other objection), but a hearsay objection is also ill-founded, because Defendants' articles need not meet the standards for admissibility at trial. (See Dkt. 291 at 13.))[1] In addition, Defendants' articles go to an issue – the undermining of the public's sense of safety – that is not strictly required under *Friedman*. Rather, the two core inquires under *Friedman* are whether the banned item was common at the time of ratification, and whether it has a reasonable relationship to the preservation or efficiency of a well regulated militia. (Dkt. 291, at 8-9.) Therefore, even if Defendants' articles could not be considered here, the Laser

---

[1] Moreover, Defendants proffered the articles not for the strict truth of the matters asserted in them but rather for the effect of the articles on the public readership, including Chicago residents and City Council legislators, and the impact on those readers from the erosion of the public's sense of safety that results from reported episodes of violence like mass shootings and shootings of law enforcement officers involving use of laser sights. *See Friedman*, 784 F.3d at 411.

Sight Ordinance would still pass muster under *Friedman*, because the ordinance satisfies these two inquiries. *Friedman* addressed the "public sense of safety" factor as simply another reason why the bans at issue in that case were valid.

The articles submitted by Plaintiffs, however, should not be considered. Initially, Plaintiffs' Supplemental Brief submits three new website articles, one an entry from Encyclopaedia Britannica and two articles published by the NRA and Field & Stream magazine. (*Id*. at 8-10.) These submissions were never identified in Plaintiffs' Local Rule 56.1 materials previously, and new summary judgment record materials were not invited by the Court when it requested the parties to file supplemental briefs. (Dkt. 278 at 31 ("If, however, there is additional factual material *in the record* that the Court may appropriately consider at summary judgment, the parties may direct the Court to such material." (emphasis added)).

Moreover, the proposition for which Plaintiffs offer the new articles is irrelevant to the Court's analysis of the Laser Sight Ordinance under either *Friedman* or *Ezell*. Plaintiffs contend that the new articles are relevant to prove that "the use of sights for improved firearm use is long-standing." (Dkt. 292 at 10.) However, Plaintiffs' newly proffered articles all relate to the history of standard iron sights on firearms, and not to laser sights, the weapon technology at issue in this case. Defendants have previously demonstrated that laser sights are not analogous to iron sights that may have been on muskets in 1791, because a laser sight is a much more recently developed technology that projects a target onto the subject, while an iron sight does not project a target and requires a shooter to manually align the gun with the intended target using his or her own line of vision. (Dkt. 291 at 10.) Plaintiffs' effort to bootstrap historical materials about iron sight use to establish that laser sights were commonly possessed at the time of ratification is unavailing and should be rejected by the Court.

Plaintiffs also argue that their newly-submitted articles, as well as those previously submitted, are admissible under various rules of the Federal Rules of Evidence. (Dkt. 292 at 6-10). For instance, Plaintiffs assert that Encyclopaedia Britannica, Field & Stream, and the NRA have "no motivation [ ] to provide false information," and that "if a site wishes to be known as a reputable dealer of scopes, it cannot be putting out false information to its consumers." (Dkt. 291 at 8-9.) Plaintiffs also assert that the articles are "from respected sources and reputable dealers," and the articles "simply point[ ] out historical information that is easily verifiable and cross-referenced." (*Id.* at 10.) However, none of these arguments for trustworthiness constitutes a recognized exception to the hearsay rule, F.R. Evid. 801 *et seq*.

## CONCLUSION

For all the foregoing reasons, and those set forth in the Defendants' Supplemental Brief (Dkt. 291), the Court should grant Defendants' motion for summary judgment (Dkt. 251) and grant judgment to Defendants on Counts I and III.

Date: August 27, 2020          Respectfully submitted,

MARK A. FLESSNER
Corporation Counsel of the City of Chicago

By:    Thomas P. McNulty_____

Andrew Worseck
Thomas P. McNulty
Peter H. Cavanaugh
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 742-0307 / 744-4216
Attorneys for Defendants