IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECOND AMENDMENT ARMS (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a SECOND AMENDMENT ARMS, ROBERT M. ZIEMAN, SR., ICARRY, an unincorporated Association (and d/b/a of Shaun Kranish), SHAUN KRANISH, individually and d/b/a ICARRY, and TONY KOLE, | ) ) ) ) ) ) ) ) ) | Case No: 1:10-CV-4257 |
| Plaintiffs, | ) ) | Hon. Robert M. Dow, Jr. |
| v. | ) ) | U.S. District Court Judge |
| CITY OF CHICAGO, a municipal corporation, RAHM EMANUEL, in his official capacity as Mayor of the City of Chicago, GARRY McCARTHY, Superintendent of Police of the City of Chicago, and SUSANA MENDOZA, City Clerk of the City of Chicago, | ) ) ) ) ) ) ) ) | Hon. Sheila M. Finnegan U.S. Magistrate Judge |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEFING TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME the Plaintiffs, SECOND AMENDMENT ARMS (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a Second Amendment Arms, and TONY KOLE, by and through undersigned counsel, and, for their Response to Defendants' Supplemental Briefing to Defendants' F.R. Civ. P. 56(a) Motion for Summary Judgment, states as follows:

Plaintiffs incorporate their Supplemental Brief (Dkt. # 292) as if fully restated herein. However, Plaintiffs also reiterate and/or assert the points below.

1

## I. NOMINAL DAMAGES ARE AN ACCEPTED AND COMMONPLACE REMEDY FOR CONSTITUTIONAL VIOLATIONS.

This Court requested further briefing on the question of whether Plaintiffs may still prevail on the merits in this matter with an award of nominal damages. The answer is they can. In light of the relevant case law, the denial of Plaintiff's business license application to open a gun store was blatantly unconstitutional and a violation of Plaintiff's Second Amendment rights. Defendants do not even argue to the contrary. There must be a remedy, and the Courts have addressed this in the form of nominal damages.

In addition to the arguments presented in Dkt. # 274, Plaintiffs assert the following:

Federal Rule of Civil Procedure 54 states, in relevant part:

> (c) Demand for Judgment; Relief to Be Granted. A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. **Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.**

(Emphasis added); *See also New York State Rifle & Pistol Ass'n. v. City of New York*, 140 S. Ct. 1525, 1535 (2020) (Alito, J., dissenting).

Here, Plaintiffs are requesting, in addition to actual damages to compensate for the lost business due to the deprivations of their civil rights, "such other and further relief as this Court may deem just and proper in the premises." *See* p.10-11 of Fourth Amended Complaint. Further, at the outset Plaintiffs requested "general, compensatory, and punitive damages as the proofs will show at trial (*See* p.25 of

Dkt. # 1). Plaintiff's pending Complaint (and all previous Complaints) thus covers all potential remedies, and has waived nothing.

Further, it is not even necessary that monetary damages be requested in order for a Court to award them. *See Illinois Physician's Union v. Miller*, 675 F.2d 151, 158 (7th Cir. 1982) ("the court may grant 'the relief to which the party in whose favor … (judgment) … is rendered is entitled, even if the party has not demanded such a relief in his pleadings'"). "A plaintiff is not required to itemize his damages claims in his complaint. On the contrary, the rules entitle him to a judgment that grants him the relief to which he is entitled even if the complaint failed to ask for that relief." *Avitia v. Metropolitan Club*, 49 F.3d 1219, 1226 (7th Cir. 1995).

Justice Alito noted this principle in his dissent in *NYSRPA*, but it is not the first time the Supreme Court has addressed the issue. *See, e.g. Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 66 (1978) ("[A]lthough the prayer for relief may be looked to for illumination when there is doubt as to the substantive theory under which a plaintiff is proceeding, its omissions are not in and of themselves a barrier to redress of a meritorious claim"). Further, Defendants are neither surprised nor prejudiced by Plaintiffs' request, as even the explicit citation to *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795 (7th Cir. 2016) was made a year ago (Dkt. # 260-1).

That Defendants, and not Plaintiffs, have moved for summary judgment does not change the analysis: "[W]here one party has invoked the power of the court to render a summary judgment against his adversary, it is reasonable that this

3

invocation gives the court power to render a summary judgment for his adversary if it is clear that the case warrants that result." *Hooker v. New York Life Ins. Co.*, 66 F. Supp. 313, 318 (N.D. Ill. 1946), *rev'd on other grounds*, 161 F.2d 852 (7th Cir. 1947).

It is unsurprising that the Defendants would interpret *Moore v. Liszewski*, 838 F.3d 877 (7th Cir. 2016) to say that nominal damages are not damages at all, that is not what *Moore* holds. Indeed, while Judge Posner questioned the concept of nominal damages, the Court held that "[a]t present, the nominal-damages rule is entrenched." *Id.* at 879. The Court noted three important reasons for nominal damages, and held:

> By making the deprivation of such rights [procedural due process, in *Carey*] actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights. Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury" (citations omitted).

*Moore*, 838 F.3d at 879-880 (citing *Carey v. Piphus*, 435 U.S. 237 (1978)). Though *Moore* involved a due process claim, the rationale is in no limited to the Fifth or Fourteenth Amendment. The Court further noted that "this could be read as limiting nominal damages to cases in which the plaintiff had been deprived of a

4

constitutional right though with no resulting harm to him, but no such limitation can be found in the case law after *Carey*." *Moore*, 838 F.3d at 880.

While Plaintiff prefers that he be allowed to proceed with his claim for actual damages, the fact their constitutional rights were violated deserves a remedy. Defendants argue that *Moore* demonstrates that nominal damages are no remedy, but that case actually reinforces both their viability and importance.

Likewise, Defendants argue that nominal damages are not a meaningful remedy, or "tangible," and not enough to make a "live controversy." But the case law, notably *Moore* cited by Defendants, states otherwise. Defendant cites to *Flanigan's Enterprises, Inc. of Ga. v. Sandy Springs*, 868 F. 3d 1248 (11th Cir. 2017), but Justice Alito in *NYSRPA* noted that is the only Circuit to hold that nominal damages do not maintain a live dispute, citing to:

> 13C C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* §3533.3, n. 47 (3d ed. Supp. 2019) (collecting cases); *see also, e.g.*, *Central Radio Co. v. Norfolk*, 811 F. 3d 625, 631-632 (CA4 2016); *Morgan v. Plano Independent School Dist.*, 589 F. 3d 740, 748, n.32 (CA5 2009); *Bernhardt v. County of Los Angeles*, 279 F. 3d 862, 872 (CA9 2002); *Amato v. Saratoga Springs*, 170 F. 3d 311, 317 (CA2 1999) (Sand, J., joined by Sotomayor, J.); *Committee for First Amendment v. Campbell*, 962 F. 2d 1517, 1526-1527 (CA10 1992); *Henson v. Honor Committee of U. Va.*, 719 F. 2d 69, 72, n. 5 (CA4 1983).

*NYSRPA*, 140 S. Ct. at 1536 and n.6. Justice Alito also cited to *Carey v. Piphus*, 435 U.S. 247, (1978) and *Memphis Community School Dist. v. Stachura*, 477 U.S. 299 (1986) that nominal damages are an appropriate constitutional remedy, and they are still good law. *See NYSRPA*, 140 S. Ct. at

5

1535 (Alito, J., dissenting). Further, as described herein, Seventh Circuit precedent cuts against *Flanigan's* as well.

Plaintiff seeks a ruling that his constitutional rights were violated by the Defendants' actions, with whatever remedy the Court can provide. This is one such remedy, especially since, for whatever reason, there are still no gun stores in Chicago, despite Defendants' claim there is no live controversy, and the situation that has led us here is highly capable of repetition. Further, Defendant's erroneous claim of mootness is by no means a ground for granting the Defendant summary judgment.

As an example, Defendant cites to the concurrence in *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248 (10th Cir. 2004), but does not mention the main holding, which states:

> It may seem odd that a complaint for nominal damages could satisfy Article III's case or controversy requirements, when a functionally identical claim for declaratory relief will not. But this Court has squarely so held. *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1526 (10th Cir. 1992) (finding that while adoption of a new policy mooted claims for injunctive relief, "the district court erred in dismissing the nominal damages claim which relates to past (not future) conduct") (emphasis in original); *O'Connor v. City & County of Denver*, 894 F.2d 1210, 1215-16 (10th Cir. 1990) (same). Thus, although the conduct at issue is long past and will not be repeated, the Ordinance under challenge has been amended to correct its alleged constitutional flaw, and Plaintiff concedes that it suffered no compensable injury, under our precedents this panel is required to determine on the merits whether Defendant's past conduct and no-longer-operative Ordinance comported with the First Amendment.

*Id.* at 1257-1258. Plaintiff does not concede either that the matter is moot or that the issue is beyond the scope of being capable of repetition yet evading review, but the above case proves Plaintiff's point that nominal damages are an appropriate constitutional remedy. Defendant claims that the issue is an "11th hour" claim, but it is part and parcel of the Second Amendment claim – the one, not for nothing, that Defendants have so far not even bothered to defend except as to damages.

And while Plaintiff testified his plan was to open five stores, his initial application was for one. And it was only to be with the success of the first that others would follow, presumably like other new businesses. That the fact pattern of this case differs from *Six Star Holdings* does not change that nominal damages are sought and appropriate.

Defendants also twist the holding of *Ollie v. Atchison*, 753 Fed. App'x. 406 (7th Cir. 2019) until it is unrecognizable. In *Ollie*, a prisoner sued under the Prison Litigation Reform Act (42 U.S.C. § 1997(e)), alleging that his placement in segregation and resulting prohibition on participating in congregational religious worship violated his First Amendment free exercise rights. *Id.* Summary judgment was entered against him and he appealed. The Seventh Circuit held that he could not sue the defendants for damages in their official capacity, and could not sue for damages in the defendants' individual capacities because he suffered no physical injury, which is a requirement under the PLRA. *Id.* at 407. The Court further found that a punitive damages claim was not proven by the facts, and a declaratory

judgment action would be moot because the plaintiff had been released from the restrictions and was not attending services. *Id.* at 407-08.

Finally, the Court noted that "while it is true that § 1997e(e) permits nominal damages, Ollie did not request this relief in his amended complaint (filed while represented by counsel), and therefore it was never before the district court. Nor, for that matter, does he mention such relief in his brief on appeal." *Id.* at 408 (citing *Calhoun v. DeTella*, 319 F.3d 936, 943 (7th Cir. 2003)).

The situation in *Ollie* is completely different from the situation here, as Plaintiffs have been referencing nominal damages specifically (though obviously not the preferred remedy) for more than a year. Judgment has not been entered, and this matter is certainly not on appeal.

Likewise, *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) does not help the Defendants. In *AOE*, the plaintiff sued over a state constitutional amendment that made English the official language of Arizona. At the time of filing, plaintiff was a state employee, and sought, pursuant to the First and Fourteenth Amendments and Title VI of the Civil Rights Act of 1964, "injunctive and declaratory relief, counsel fees, and 'all other relief that the Court deems just and proper under the circumstances.'" *Id.* at 50-51. The District Court struck the statute down as unconstitutionally overbroad. *Id.* at 54. Neither the plaintiff nor the defendant Governor wished to appeal.

However, the Attorney General and two outside parties (the principal sponsors of the originating ballot initiative) wished to intervene for the purposes of

appeal. The District Court denied these requests. *Id.* at 56-57. The Ninth Circuit reversed that denial and allowed the intervenors to pursue the appeal. However, the plaintiff left the State's employ to take a private sector position prior to that reversal. *Id.* at 59. There was a suggestion of mootness that the case may lack a viable plaintiff, but the Ninth Circuit ruled the plaintiff may still be entitled to nominal damages, even though she had not asked for them. *Id.* at 60. After remand and cross-appeals on the issue, the Ninth Circuit again (panel and *en banc*) declared the amendment unconstitutional and awarded the plaintiff nominal damages. *Id.* at 61, 63.

After granting *certiorari*, the Supreme Court ruled the private intervenors lacked standing, and that plaintiff had no claim for nominal damages, because at that time the only named defendant was the State, from which plaintiff was prohibited from seeking damages. *Id.* at 68. Further, the Court found the State was not even a true party in the case. *Id.* at 69-70. The reason the Court noted the nominal damage claim "bore close inspection," *Id.* at 71, was because the entire proceeding was a "friendly or feigned proceeding[]" between the plaintiff and the Attorney General which could not revive the case. *Id.* (citing *Fox v. Board of Trustees of State Univ. of N. Y.*, 42 F.3d 135, 141-142 (2d Cir. 1994) (rejecting claim for nominal damages proffered to save case from mootness years after litigation began where defendants could have asserted qualified immunity had plaintiffs' complaint specifically requested monetary relief)). In short, the Court found the matter moot as soon as plaintiff stopped being a state employee. *Id.* at 72. The

9

Court did **not** hold that nominal damages claims, in actual contested litigation where the parties have standing, are at all improper or prohibited.

The lengthy analysis of *AOE* is necessary to show that, despite the misleading and dismissive arguments offered by Defendant about what the case stands for, a thorough review shows that *AOE* does not affect this matter at all.

Defendants claim they would have done defended the case differently had nominal damages been stressed, but even with that claim there is no new discovery to be had, and no new facts to derive. Defendant banned a business that is constitutionally protected. It may try to argue otherwise, but that does not require new discovery. Further, the Defendants are not prejudiced by the prospect of an additional brief, if that is what occurs, much less "severely." Plaintiff did not "sleep" on nominal damages; Rule 54(c) allows Plaintiff to seek them, and as proving them requires Plaintiff to prove the same Second Amendment claim that has been advanced all along, there was no reason to emphasize them as a form of relief while compensatory damages were obviously the larger issue as far as damages were concerned. That Defendants claim they would have defended the case differently had nominal damages been more emphasized strains belief.

Though F.R. Civ. P 54(c) does not require it, Plaintiffs will amend their Complaint *instanter* to explicitly state a request for relief of nominal damages should the Court require. As judgment has not been entered in this matter, Plaintiffs request leave to do so if the Court finds that is an impediment to receiving such a remedy, since they would be prejudiced unfairly should they not be allowed

10

to correct such a technicality. However, the Court rulings regarding Rule 54(c) state that such a step should not be necessary and that Plaintiffs' pleadings are sufficient.

In light of the above, and Plaintiff's supplemental brief (Dkt. #292), Defendants' Motion for Summary Judgment as to Count I should be denied.

## II. THE LASER SIGHT BAN IS UNCONSTITUTIONAL, AND WHILE THE PLAINTIFFS' PROFERRED EVIDENCE IS ADMISSIBLE, THE DEFENDANTS' IS NOT.

In addition to the arguments presented in Dkt. # 292 and 274, pp. 24-29, Plaintiffs assert the following:

As Plaintiffs have previously shown, laser sights are not assault weapons. The analyses of *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015), and *Wilson v. Cook County*, 937 F.3d 1028 (7th Cir. 2019) are not applicable here, as they are limited to assault weapons, which a laser sight is not. They may be a modern iteration of something that has been a firearm component for centuries, but they do not make firearms more dangerous. Quite the opposite. They improve aim and can even deescalate a situation before firing the weapon is even necessary. Defendants' argument that laser sights are equivalent to assault weapons and large capacity magazines because of their recency is a fallacious argument with *no* evidentiary support.

As is the idea that Defendants can skip over the public interest requirement by citing to *Friedman* and saying, without more, that people will feel safer. Besides

*Friedman* not being the correct analysis, Defendants are essentially asking for a rubber stamp, that they can cite to "feelings," with nothing to support it, and the Court will acquiesce. This does not even remotely pass muster under either *District of Columbia v. Heller*, 554 U.S. 570 (2008) or *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), and Plaintiffs assert that constitutional scrutiny should mean more than allowing the Defendants to provide no actual evidence and make vague arguments and references to "feelings." In essence, Defendants are asking for "rational basis" scrutiny, which is specifically prohibited under *Heller,* as noted in *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010).

Plaintiffs previously described how laser sights are protected by the Second Amendment, as a modern version of something that has been a part of safe firearm usage for hundreds of years, *i.e.* firearm sights (*See, e.g., United States v. Jones*, 132 S. Ct. 945 (2012)).

The two-part Second Amendment analysis of *Ezell* is controlling, if not the text, history, and tradition test of *Heller*, and the Defendants have offered no evidence or witnesses to support the laser sight ban, beyond a few random articles that amount to unsubstantiated anecdotes. The Plaintiffs, in contrast, offered much testimony as to their usefulness as an aid to safer and more accurate shooting in a self-defense situation, in addition to information from other sources. Therefore, whichever test is applied, it is clear that the Defendants' ban on laser sights cannot be upheld on constitutional grounds.

As for the newspaper articles offered by Defendant, they are not probative or relevant to proving that which is the Defendant's burden – that the laser sight ban is sufficiently tailored to meet any claimed public interest. They are certainly nothing like the studies offered to support the domestic violence misdemeanant ban in *Skoien*, 614 F.3d at 643-44.

Plaintiffs will reiterate the newspaper offerings of Defendants to demonstrate how they are not sufficient evidence to support the laser sight ban.

- unknown and unnamed gang members back in 1996 were using laser sights, with no information besides that fear-inducing statement (Dkt. # 254-12).
- A shooting in Chicago in 2018 where a child was killed by a gang member shooting at a crowd during a party (Dkt. # 254-18).
- During the span of 1999 – 2018, the following crimes occurred with a firearm that had a laser sight; the Fort Hood shooting in Texas, a police shooting in 1999, and a shooting in Jacksonville, Florida in 2018.

Perhaps these are offered to assert that without a laser sight these shootings may not have happened, but Defendants cannot possibly prove or even credibly assert that to be the case. Further, *see Williams v. York*, 2010 U.S. Dist. LEXIS 106934, *8 (N.D. Ind. 2010) (a newspaper article is "clearly hearsay"). Even if the events described in the article are accurate, they are not probative of the issue at hand. But we cannot even know they were accurate. The Fort Hood shooting alone

13

presumably had many investigative facts that were not released to the press, and there is no telling what in the articles was corrected in later articles, or if the witnesses were quoted correctly. Simply put, they cannot be authenticated or verified. *See Cody v. Harris*, 409 F.3d 853, 860-61 (7th Cir. 2005). If the Defendants wanted official records regarding occurrences that may have involved laser sights, including the ones listed in the articles, certainly the City of Chicago had access to better information. That the Defendants are trolling for newspaper articles underscores how they have no actual evidence to support their defense. They are conclusory, unsupported, and prejudicial, and do not qualify under the Federal Rules of Evidence. All the Defendants can do is appeal to the fear of a crime somewhere, sometime in America, and resort to "feelings." That does not pass constitutional scrutiny.

Law-abiding people should not be equated with, or punished for, the actions of violent criminals and terrorists, though the Defendants try to do exactly this, which violates *Ezell*, 651 F.3d at 708 ("Here, in contrast, the plaintiffs are the 'law-abiding, responsible citizens' whose Second Amendment rights are entitled to full solicitude under *Heller*, and their claim comes much closer to implicating the core of the Second Amendment right").

In contrast, the information provided to the Court during these summary judgment briefings (original and supplemental) is probative and trustworthy to the proposition asserted - that the use of sights for improved firearm use is long-standing and is covered by the Second Amendment's protections.

14

The Court need not be concerned with the trustworthiness of the source or the method of information offered by Plaintiffs. *See United States v. Jackson*, 208 F.3d 633, 638 (7th Cir. 2000) (citing *United States v. Croft*, 750 F.2d 1354, 1367 (7th Cir. 1984)). This is especially true since "Federal Rule of Evidence 901 'requires only a *prima facie* showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence.'" *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, 2004 U.S. Dist. LEXIS 20845, *17-18 (N.D. Ill. 2004) (quoting *U.S. v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997)). As the information is simply pointing out historical information which is easily verifiable and cross-referenced, it should be admissible under the FRE.

Plaintiffs provided facts and testimony to prove their assertions concerning sights and laser sights; Defendants provided no evidence or witnesses other than non-probative and prejudicial hearsay stories from the newspapers. Defendants' speculative and unsupported argument was specifically rejected in *Ezell*. 651 F.3d at 709. Plaintiffs have shown that firearm sights are long-standing, and it was Defendants' burden to show that the ban met constitutional scrutiny. It has failed to do so.

As noted previously, there is no constitutional basis to ban something that can better help a City resident in the effort of self-defense. The Motion for Summary Judgment as to Count III should be denied.

## CONCLUSION

WHEREFORE, the Plaintiffs, SECOND AMENDMENT ARMS (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a Second Amendment Arms, and TONY KOLE, requests this Honorable Court to deny Defendant's F.R.Civ.P. 56(a) Motion for Summary Judgment in its entirety, and to grant Plaintiffs any and all further relief as this Court deems just and proper.

Dated: August 27, 2020                  Respectfully submitted,

By:      /s/ David G. Sigale
         Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com

## CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

    1.    On August 27, 2020, the foregoing document was electronically filed with the District Court Clerk via CM/ECF filing system;

    2.    Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.


                                            /s/ David G. Sigale
                                              Attorney for Plaintiffs


David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com