IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECOND AMENDMENT ARMS (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a SECOND AMENDMENT ARMS, ROBERT M. ZIEMAN, SR., ICARRY, an unincorporated Association (and d/b/a of Shaun Kranish), SHAUN KRANISH, individually and d/b/a ICARRY, and TONY KOLE, | ) ) ) ) ) ) ) ) | Case No: 1:10-CV-4257 |
| Plaintiffs, | ) ) ) | Hon. Robert M. Dow, Jr. |
| v. | ) ) | U.S. District Court Judge |
| CITY OF CHICAGO, a municipal corporation, RAHM EMANUEL, in his official capacity as Mayor of the City of Chicago, GARRY McCARTHY, Superintendent of Police of the City of Chicago, and SUSANA MENDOZA, City Clerk of the City of Chicago, | ) ) ) ) ) ) ) ) | Hon. Sheila M. Finnegan U.S. Magistrate Judge |
| Defendants. | ) | |

### PLAINTIFFS' SUPPLEMENTAL *BRUEN* BRIEF

NOW COME the Plaintiffs, SECOND AMENDMENT ARMS (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a Second Amendment Arms, and TONY KOLE, by and through undersigned counsel, and, for their Supplemental Briefing regarding the impact on this case of the U.S. Supreme Court's ruling in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), states as follows:

1

Plaintiffs incorporate their previous Supplemental Briefs (Dkt. ## 292, 300) as if fully restated herein. However, Plaintiffs also reiterate and/or assert the points below.

I. *BRUEN* ALTERED THE ANALYSIS AS TO SECOND AMENDMENT CHALLENGES.

In June, 2022, the Supreme Court decided *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), which was a challenge to New York's "good cause" requirement for obtaining a concealed carry permit in that state. While the Court held that there is a fundamental right to the public carry of firearms, and struck down the licensing regime (*Id.* at 2122, 2156), it was the manner in which the Court did so that is of relevance to this case.

In *Bruen*, the Second District applied the two-step test also discussed in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011). *Ezell* employed what was, until two months ago, a fairly standard two step approach in Second Amendment cases. First, the Court determined whether the activity being regulated falls outside the terms of the Second Amendment right to keep and bear arms as it was "publicly understood" at the time of ratification of the Bill of Rights (in the case of a federal law) or at the time of ratification of the Fourteenth Amendment (for state proceedings). *Id.* at 703.

Per *Ezell*, "[i]f the government cannot establish this—if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected—then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second

Amendment rights." *Id.* This was commonly-referred to as means-end scrutiny.

However, the second step is no longer part of the equation. In reversing the Second Circuit, the *Bruen* Court eliminated the second step.

> Despite the popularity of this two-step approach, it is one step too many. Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history. But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

*Bruen*, 142 S. Ct. at 2127.

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."" *Id.* at 2129-30 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

The *Bruen* Court also held that 1791 is the correct date for determining the public understanding of the scope of the Second Amendment right, *Bruen*, 142 S. Ct. at 2137, which confirms this Court's holding in *Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012).

The *Bruen* Court discussed how it found in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that the Second Amendment right is not unlimited, but reiterated that in *Heller* the Court was not "undertak[ing] an exhaustive historical analysis today of the full scope of the Second Amendment." *Bruen*, 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 627). Notably, *Heller* did not involve either of the issues of which this Court requested briefing.

## II.   *BRUEN* DOES NOT SPEAK TO THE NOMINAL DAMAGES ISSUE.

While *Bruen* speaks to the historical analysis for determining whether a particular regulation or restriction is an unconstitutional infringement of the Second Amendment, *Bruen* does not speak to the issues of damages for when a violation occurs. Therefore, *Bruen* has no impact on this issue.

Plaintiffs assert that this Court should not look to *Bruen* for instruction or guidance as to this issue, but to the Supreme Court's earlier statements on the issue in *New York State Rifle & Pistol Ass'n. v. City of New York*, 140 S. Ct. 1525, 1535 (2020), which make clear that nominal damages are an available remedy for Plaintiffs in this matter, as the denial of Plaintiff's business license application to open a gun store was unconstitutional and a violation of Plaintiff's Second Amendment rights. *See New York State Rifle & Pistol Ass'n. v. City of New York*, 140 S. Ct. 1525, 1535 (2020) (Alito, J., dissenting).

Plaintiffs also previously cited to *Illinois Physician's Union v. Miller*, 675 F.2d 151, 158 (7th Cir. 1982) ("the court may grant 'the relief to which the party in

4

whose favor … (judgment) … is entitled, even if the party has not demanded such a relief in his pleadings'"). *See also Avitia v. Metropolitan Club*, 49 F.3d 1219, 1226 (7th Cir. 1995).

Nominal damages were specifically discussed and allowed in *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795 (7th Cir. 2016).

While Judge Posner questioned the concept of nominal damages in *Moore v. Liszewski*, 838 F.3d 877 (7th Cir. 2016), the Court nonetheless held that "[a]t present, the nominal-damages rule is entrenched." *Id.* at 879. The Court noted three important reasons for nominal damages, and held:

> By making the deprivation of such rights [procedural due process, in *Carey*] actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights. Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury" (citations omitted).

*Moore*, 838 F.3d at 879-880 (citing *Carey v. Piphus*, 435 U.S. 237 (1978)).

Defendants have argued that nominal damages are not a meaningful remedy, or "tangible," and not enough to make a "live controversy." But the case law, notably *Moore*, *supra*, states otherwise. *Bruen* does not speak to this issue, and definitely does not speak to the contrary.

5

### III. *BRUEN* CONFIRMS THE LASER SIGHT BAN IS UNCONSTITUTIONAL.

> The Second Amendment "is the very product of an interest balancing by the people" and it "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms" for self-defense. *Heller*, 554 U. S., at 635, 128 S. Ct. 2783, 171 L. Ed. 2d 637. It is this balance—struck by the traditions of the American people—that demands our unqualified deference.

*Bruen*, 142 S. Ct. at 2131.

"[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Id.*

"[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '"central"' considerations when engaging in an analogical inquiry." *Id.* at 2133 (citing *McDonald*, 561 U.S., at 767; quoting *Heller*, 554 U. S., at 599).

As Plaintiffs have previously shown, laser sights are not assault weapons. Defendants continue to cite to *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015), and have cited to *Wilson v. Cook County*, 937 F.3d 1028 (7th Cir. 2019), but the analyses employed in both cases have been rejected by *Bruen*. Further, those cases were limited to assault weapons, which a laser sight is not. They may be

6

a modern iteration of something that has been a firearm component for centuries, but they do not make firearms more dangerous. They improve aim and can even deescalate a situation before firing the weapon is even necessary. Defendants have no evidence to the contrary.

As the *Bruen* test is similar to the first step of *Ezell*, which has been in existence for all but the first year of this 12-year-old case, the Defendants have had ample time to submit evidence regarding the historical nature of firearm sights. They have not done so. All they have offered is inapt comparisons to assault weapons, and conclusory statements that laser sights are scary. Besides being irrelevant under *Bruen*, there is *no* evidentiary support for their arguments.

Plaintiffs previously described how laser sights are protected by the Second Amendment, as a modern version of something that has been a part of safe firearm usage for hundreds of years, *i.e.* firearm sights (*See, e.g., United States v. Jones*, 132 S. Ct. 945 (2012)). Defendants' attempt to compare laser sights to silencers (*see United States v. Cox*, 906 F.3d 1170 (10th Cir. 2018) is unavailing. The former has a discernible lawful purpose and is often built into the firearm itself, and the latter is not used for lawful purposes, and is not often a part of the firearm itself.

Further, because sights have been used as a part of firearms for centuries, Defendants' argument that laser sights (a modern version of a centuries-old firearm component) are not themselves "arms" misses the point. A trigger, by itself, is also not an "arm" or "weapon." It is the trigger's use as a *part* of a bearable arm that renders it protected under the Second Amendment. If the Defendants banned

7

triggers, and argued they were not Second Amendment-protected arms, such a ban would immediately be struck down. A laser sight separate from a firearm has no Second Amendment value, but with a firearm it is part of a tradition that shooters have been using for hundreds of years. The technology is different, but *Bruen* covered that, too:

> We have already recognized in *Heller* at least one way in which the Second Amendment's historically fixed meaning applies to new circumstances: Its reference to "arms" does not apply "only [to] those arms in existence in the 18th century." 554 U. S., at 582, 128 S. Ct. 2783, 171 L. Ed. 2d 637. "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Ibid*. (citations omitted).

"Thus, even though the Second Amendment's definition of "arms" is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense. *Cf. Caetano v. Massachusetts*, 577 U. S. 411, 411-412, 136 S. Ct. 1027, 194 L. Ed. 2d 99 (2016) (*per curiam*) (stun guns)." *Bruen*, 142 S. Ct. at 2132.

The text, history, and tradition test of *Heller* and *Bruen* is controlling, and the Defendants have offered no historical evidence or witnesses to support the laser sight ban, beyond a few irrelevant and random articles that amount to unsubstantiated anecdotes. The Plaintiffs, in contrast, offered much testimony to their historical and traditional use as an aid to safer and more accurate shooting in

8

a self-defense situation. Therefore, the Defendants' ban on laser sights cannot be upheld on constitutional grounds.

The *Bruen* decision also obviates the discussion regarding Defendants' proffered newspaper articles. Beyond Plaintiffs' earlier objections to them, it is clear these articles were being offered to support the Defendants' means-end scrutiny (*Ezell*'s Step 2) argument, which is an argument that is no longer relevant under *Bruen*.

In contrast, the information Plaintiff provided to the Court during these summary judgment briefings (original and supplemental) is probative to the issue of which *Bruen* requires review - whether the use of sights for improved firearm use were historically regulated is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. Otherwise, the use of sights for aiding firearm aim and accuracy are protected by the Second Amendment, which is what the evidence supports.

Plaintiffs provided facts and testimony to prove their assertions concerning sights and laser sights; Defendants provided no relevant evidence under *Bruen*. Plaintiffs have shown that firearm sights are long-standing, and it was Defendants' burden to show that the ban met constitutional standards. It has failed to do so. The Motion for Summary Judgment as to Count III should be denied.

## CONCLUSION

WHEREFORE, the Plaintiffs, SECOND AMENDMENT ARMS (a d/b/a of R. Joseph Franzese), R. JOSEPH FRANZESE, individually and d/b/a Second Amendment Arms, and TONY KOLE, requests this Honorable Court to deny Defendant's F.R.Civ.P. 56(a) Motion for Summary Judgment in its entirety, and to grant Plaintiffs any and all further relief as this Court deems just and proper.

Dated: August 22, 2022　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　By:　　　/s/ David G. Sigale　　　
　　　　　　　　　　　　　　　　　　　Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com

## CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

    1.    On August 22, 2022, the foregoing document was electronically filed with the District Court Clerk via CM/ECF filing system;

    2.    Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.


                                                    /s/ David G. Sigale
                                                    Attorney for Plaintiffs


David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com