**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **SECOND AMENDMENT ARMS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-CV-4257** |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | **Hon. Charles P. Kocoras** |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR RULE 12(B)(1)
MOTION TO DISMISS COUNT I AND SUPPLEMENTAL AUTHORITY
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Two claims remain in this long-standing dispute: (1) Plaintiffs R. Joseph Franzese and

Second Amendment Arms (collectively, "SAA") challenge the City's former gun store ban, in

effect until 2014 (Count I); and (2) Plaintiff Tony Kole challenges the City's ban on laser sight

accessories (Count III).

As to the first claim, the Court has already held that the gun store ban caused SAA no

actual damages. *See* Dkt. 278 at 26-29. And because, as the City has explained, SAA has waived

any claim for nominal damages, the City is entitled to judgment in its favor on this claim. *See*

Dkt. 291 at 2-3, 6-8; Dkt. 302; Dkt 309 at 4. The City now additionally moves for dismissal of

this claim pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing. Having suffered no concrete,

non-speculative injury caused by the ban, SAA has no standing to challenge it.[1]

Defendants also supplement their arguments in favor of summary judgment on the second

claim—Kole's challenge to the City's ban on laser sight accessories, *see* Dkts. 251, 254-56,

---

[1] The City previously moved to dismiss SAA's claim for lack of standing on different grounds—because the City's zoning ordinance would have prevented SAA from opening a firearms store at the location for which it submitted a business license application, even absent the gun-store ban. *See* Dkt. 204; Dkt. 205. The subsequent development of the record has now revealed additional reasons that SAA lacks standing.

309—with recent Seventh Circuit authority in *Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023). *Bevis* instructs that, as the plaintiff, Kole has the burden to show that laser sight accessories fall within the scope of the Second Amendment's protections. He has not made that showing, so the Second Amendment does not bear on the City's regulation of these accessories.

## BACKGROUND

### A. SAA's Efforts To Open A Gun Store In Chicago.

████████████████████████. Dkt. 254 ("SUMF") ¶ 12. █████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████
███████████████████████████████████████. *Id.* ¶ 13. *Id.* ███████
████████████████████████████████. *Id.*
████████████████████████████████████. *Id.* ████████████████
██████████████████████████████████████. *Id.* ██
████████████████████████████████████████████████
████████████████████████████████████████████████
████. *Id.* ████████████████████████████████████
████████████████████████████████. *Id.* ¶ 15. ████████
████████████████████████████████████████████
████████. *Id.* ████████████████████████████████████
██████████████████████████████████████████████. *Id.*

The tax returns produced in connection with this lawsuit were not even for the entire time span that he operated the business: he produced records only for 2011 and 2010 and the last two months of 2009. *Id.* ¶ 16. ████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████. *Id.*

On July 2, 2010, the day the City Council enacted the 2010 Ordinance, Franzese submitted an application on behalf of SAA to obtain a business license at 415 West Armitage in Chicago for a firearms store. *Id.* ¶ 10. The zoning classification for that address, however, does not permit business or retail uses. *Id.* ████████████████████████████

██████████████████████████████████████████████

███████████████████████████. *Id.* ¶ 11. ████████████████████

███████████████████████. *Id.* Franzese submitted no subsequent applications for a business license to operate a gun store in Chicago. *Id.* ¶ 10.

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████.

*Id.* ¶ 18. ████████████████████████████████████████████

██████████████████████. *Id.*

████████████████████████. *Id.* ¶ 23.

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████. *Id.* ¶ 18. ████████████████████████

████████████████████████████████████████████████████

████████████████████████. *Id.*

██████████████████████████████████████████. *Id.* ¶ 22.

████████████████████████████████████████████████



[redacted]. *Id.* ¶ 20. [redacted]. *Id.* [redacted]. *Id.* [redacted]. *Id.* ¶ 21. [redacted]. *Id.*

[redacted]. *Id.* ¶ 24. [redacted]. *Id.* [redacted]. *Id.* [redacted]. *Id.* [redacted]. *Id.* ¶ 25.

Following the repeal of the City's gun store ban in 2014, neither Franzese nor SAA applied for a business license to operate a gun store in Chicago. *Id.* ¶ 10.

**B. The Seventh Circuit's *Bevis* Decision.**

*Bevis* consolidated three actions that challenged and sought to enjoin certain weapons regulations in Illinois as unconstitutional under the Second Amendment. The regulations at issue—including those in Illinois's Protect Illinois Communities Act ("PICA"), Cook County Ordinances No. 54-210 to 54-215, City of Chicago Municipal Code sections 8-20-010 to 8-20-

100, and City of Naperville Ordinances No. 3-19-1 to 3-19-3, *see* 85 F.4th at 1182-83—instituted a near-ban on "assault weapons" and large-capacity magazines. *Id.* Two appeals arose from denials of injunctive relief; the other arose from an order granting an injunction. *Id.* at 1184-87.

In November 2023, the Seventh Circuit affirmed the denials of injunctive relief and reversed the grant of injunctive relief, concluding that the state and local government entities had a strong likelihood of success on the merits. *Id.* at 1195-97. Applying the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the appellate court held that because the regulated weapons and feeding devices at issue were much more like machine guns and military-grade weaponry used by the military than firearms used for individual self-defense, such devices did not constitute "Arms" protected by the Second Amendment. *Id.* at 1195-97. It also concluded that the laws were consistent with the history and tradition of firearms regulation in the United States. *Id.* at 1197-1202.

## LEGAL STANDARDS

A Rule 12(b)(1) motion to dismiss challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden to establish that requirements for jurisdiction are met. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). "Jurisdictional bars . . . may be raised at any time and courts have a duty to consider them *sua sponte*." *Wilkins v. United States*, 598 U.S. 152 (2023) (quotation marks omitted).

## ARGUMENT

### I.    SAA Lacks Standing To Challenge The City's Former Ban On Gun Stores.

The undisputed facts demonstrate that SAA lacks standing to challenge the City's prior gun store ban. As the party invoking the Court's jurisdiction, SAA has the burden to establish its standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). That requires it to show that

(1) it suffered a concrete and particularized injury in fact (2) fairly traceable to the challenged conduct that is (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). These "are not mere pleading requirements" but instead comprise "an indispensable part of the plaintiff's case." *Id*. at 561. Moreover, these requirements must be proved "with the manner and degree of evidence required at the successive stages of the litigation," *id.*, and courts have "an independent obligation to assure that standing exists" at each stage, *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). That means that here, at the summary judgment stage, SAA's "burden increases," *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 667 (7th Cir. 2021), and it "can no longer rest on . . . 'mere allegations'" to establish standing, *Lujan*, 504 U.S. at 561. Instead, "[t]he standard for demonstrating the jurisdictional facts at summary judgment is whether the plaintiffs have supplied evidence of 'specific facts' that, taken as true, show each element of standing." *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 286 (7th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561).[2]

The first requirement—injury in fact—is "the '[f]irst and foremost' of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (alteration in original and citation omitted). A plaintiff must demonstrate that he "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548

---

[2] Standing arguments, which reach the Court's subject-matter jurisdiction, fall "under Rule 12(b)(1), not Rule 56." *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 814 (7th Cir. 2018). But because "a defendant challenging jurisdiction need not accept as true the allegations in the complaint and may ask the court to decide the jurisdictional issue by considering additional documents and affidavits," a jurisdictional challenge under Rule 12(b)(1) at the summary judgment stage "makes the motion look a lot like a summary judgment motion." *Id.*; *see also Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 729 (7th Cir. 2020) ("Defendants' jurisdictional challenge at this stage borrows the evidentiary requirements and procedures from summary judgment procedure under Rule 56. Thus, Defendants assert that there is no genuine issue of material fact as to the Coalition's standing to bring this lawsuit, such that the Court should dismiss this matter for lack of subject-matter jurisdiction.").

(quoting *Lujan*, 504 U.S. at 560). As the Supreme Court has emphasized: "No concrete harm, no

standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021). And that concrete harm must

have "in fact occurred." *Dinerstein v. Google, LLC*, 73 F.4th 502, 511 (7th Cir. 2023); *see also*

*Spokeo*, 578 U.S. at 341 (rejecting Article III standing based on "bare procedural violation[s],

divorced from any concrete harm"). "Because a claimant has the burden to prove standing, that

party must be prepared to present specific facts evidencing a concrete injury," *Big Shoulders*

*Cap. LLC v. San Luis & Rio Grande R.R.*, 13 F.4th 560, 569 (7th Cir. 2021), and the court must

"look to evidence in the record to evaluate whether [the plaintiff] has suffered an injury in fact,"

*Wadsworth*, 12 F.4th at 667.

 Applying that injury-in-fact requirement to cases challenging zoning laws, licensing

requirements, and application procedures, courts require plaintiffs to show that they were

concretely injured by the challenged rule by showing that absent the rule, they would have

actually engaged in the prohibited activity. In *Warth v. Seldin*, 422 U.S. 490 (1975), the Supreme

Court explained that a plaintiff challenging "restrictive zoning practices" must demonstrate "a

substantial probability that," absent those practices, "they would have been able to purchase or

lease in" their desired location. *Id.* at 504. Similarly, in cases challenging a zoning or licensing

law, courts have required plaintiffs to show that they took concrete steps to get a business going.

The Eleventh Circuit held that a plaintiff failed to establish an injury in fact where it failed to

allege that it took any concrete steps to found a methadone clinic, "such as selecting a clinic

location, securing a lease option, consulting with relevant government officials, applying for the

necessary permits or certifications, or associating with potential clients." *Aaron Priv. Clinic*

*Mgmt. LLC v. Berry*, 912 F.3d 1330, 1337 (11th Cir. 2019); *see also RHJ Med. Ctr., Inc. v. City of*

*DuBois*, 754 F. Supp. 2d 723, 742 (W.D. Pa. 2010) (explaining that in the absence of steps to

sign a lease or obtain the proper licenses to open a clinic, the court could not reasonably assume it would have opened). Similarly, the Third Circuit found a plaintiff's alleged injury from the defendant's refusal to let him complete a medical certification exam "conjectural rather than concrete and imminent" where the plaintiff failed to demonstrate he was "able and ready" to apply for medical staff privileges because he "ha[d] neither applied for medical staff privileges nor . . . taken any specific steps that would otherwise position him to practice at those hospitals, such as obtaining a license to practice medicine in New Jersey." *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 207 (3d Cir. 2021).

In a similar vein, a plaintiff who claims that he was deterred from applying for a benefit by wrongful practices bears the "burden of proving that he would have applied . . . had it not been for those practices." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 368-69 (1977); *see also Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1161 (8th Cir. 2008) ("[I]f a plaintiff is required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit and fails to attempt to do so, that plaintiff lacks standing to sue because he or she should have at least taken steps to attempt to satisfy the precondition."). For example, in *Carney v. Adams*, 141 S. Ct. 493 (2020), the Supreme Court held that a plaintiff lacked standing where his statement that he would apply for a judgeship "[stood] alone without any actual past injury, without reference to an anticipated timeframe, without prior judgeship applications, without prior relevant conversations, without efforts to determine likely openings, without other preparations or investigations, and without any other supporting evidence." *Id.* at 501. And in *Carroll v. Nakatani*, 342 F.3d 934, 942 (9th Cir. 2003), the Ninth Circuit concluded that the plaintiff "failed to demonstrate he was 'able and ready' to compete on an equal basis for" a small business loan where he submitted a "symbolic, incomplete application," "did not seek alternative

sources of financing," "failed to formulate even a basic business plan, ha[d] no work history for the past 25 years, ha[d] not researched necessary business expenses such as rent or equipment, and ha[d] only a vague sense about the cost of paper." *Id.* at 942.

Applying this precedent here, the undisputed facts show that SAA suffered no concrete harm that resulted from the City's gun store ban. SAA claims that it was not allowed to establish a gun store. But SAA has not offered evidence showing that it would have been able to open or operate a gun store were it not for the ban; to the contrary, the undisputed facts show Franzese had no realistic intent or plan to open any store in Chicago and took no concrete steps to do so. His small-scale back-room gun business hardly prepared him to open a gun store in the City, where he had never operated any sort of business. As this Court has already found, during his deposition, Franzese admitted that he had "never showed the business plan to any bank or other potential investor"; "never talked to any banks about financing a Chicago firearm business"; never "looked into the cost of construction, insurance, or real estate in connection with opening a firearms store within the City of Chicago"; never "calculated what SAA's weekly payroll would be"; never "contacted any suppliers to discuss providing inventory for a firearms store in the City of Chicago"; never "entered into contracts to purchase inventory for any Chicago stores"; never "engaged in any negotiations with firearms vendors to provide inventory for any Chicago stores"; and never created "a specific plan for how he would implement" a marketing strategy. Dkt. 278 at 6-7 (citing Franzese Dep., Dkt. 255-1 at 12, 18-23). Other than "the address on Armitage Avenue listed on SAA's initial application for a City business license," Franzese never "identified any specific addresses for the stores Franzese says SAA would open," and he was not even "sure where he would live if he were to operate firearms stores in Chicago." *Id.* Based on this testimony, Judge Dow concluded that "whether or not Franzese could have even started his

business . . . is a matter of speculation," noting that "Plaintiffs did so little of the work required to open and begin operating a business that the business's mere existence remains wildly speculative." *Id.* at 28-29.

That undisputed evidence shows that not only did Franzese fail to establish damages, as this Court has already held, *see id.* at 26-29, he failed to establish a concrete injury *at all*. As the cases discussed above make clear, at the summary judgment stage, a plaintiff who contends that a challenged law prevented him from establishing a business must show that he was able and ready to start the business and took concrete steps to do so. *E.g.*, *Ellison*, 11 F.4th at 207; *Aaron*, 912 F.3d at 1337. Because SAA took *no* meaningful steps to establish a gun store, SAA has not offered evidence sufficient to establish its standing to challenge the prior gun store ban.

At best, any harm SAA suffered is "wildly speculative," as the Court already found. Dkt. 278 at 29. That is plainly insufficient for standing. The Supreme Court has consistently rejected arguments suggesting that plaintiffs have standing based on speculative or attenuated chains of possibilities. *E.g.*, *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 (2013) (a "speculative chain of possibilities does not establish that injury . . . is certainly impending or is fairly traceable"); *Summers*, 555 U.S. at 496 ("Accepting an intention to visit the National Forests as adequate to confer standing to challenge any Government action affecting any portion of those forests would be tantamount to eliminating the requirement of concrete, particularized injury in fact."); *Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."). SAA's claims are no less speculative, as it provided no evidence that it would—or even could—have obtained financing or secured a location for its would-be gun store.

10

And of course, SAA's mere opposition to the gun store ban supplies no standing. Were simply objecting to a regulation or practice enough, "then everyone would have standing to litigate about everything." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068-69 (7th Cir. 2020) (plaintiff's "state of confusion," without any ensuing detriment, was not a concrete injury); *see also Wadsworth*, 12 F.4th at 668-69 (plaintiff's "stress and embarrassment" insufficient); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020) (insufficient that plaintiff was "annoyed" or "intimidated"). Ignoring these requirements would be tantamount to converting "the judicial process into 'no more than a vehicle for the vindication of the value interests of the concerned bystanders.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 473 (1982) (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).

As the Supreme Court has made clear, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 594 U.S. at 427 (citation omitted). SAA has not set forth evidence of specific facts demonstrating it suffered a concrete injury necessary for standing, as it is required to do at this stage of the proceedings. Its challenge to the City's gun store ban is therefore nonjusticiable and should be dismissed.

## II. *Bevis* Confirms That The City Is Entitled To Summary Judgment On Plaintiffs' Challenge To The City's Ban On Laser Sight Accessories.

As the Seventh Circuit explained in *Bevis*, courts addressing Second Amendment challenges to firearms laws must "begin by assessing whether the [items] described in those laws are Arms for purposes of the Second Amendment. If not, then the Second Amendment has nothing to say about these laws: units of government are free to permit them, or not to permit them, depending on the outcome of the democratic process." 85 F.4th at 1192. Importantly, *Bevis*

11

clarifies Kole's burden at this first step of the inquiry. It explains that plaintiffs "have the burden of showing that the weapons addressed in the pertinent legislation are Arms that ordinary people would keep at home for purposes of self-defense." *Id.* at 1194.

The implication of *Bevis* for this case is that it is not the City's burden to show that laser sight accessories are *not* "Arms" within the meaning of the Second Amendment. Rather, the question before this Court is whether Kole has established that the Second Amendment's plain text covers laser sight accessories. If he has not established that it does, the Second Amendment will not bear on the City's Laser Sight Ordinance.[3]

Kole has not made that necessary showing. As the City explained in its summary judgment briefing, it is undisputed that laser sights are merely accessories. *See* Dkt. 256 at 27-28; Dkt. 269 at 10-12; Dkt. 309 at 4, 5-8. Kole himself admitted under oath that a laser sight is "an accessory . . . not a fundamental part of the design of the firearm." SUMF ¶ 33. Based on that binding admission alone, Kole cannot establish that laser sights are "Arms." Indeed, numerous courts have held that "laws that regulate the use of firearm accessories or attachments do not generally implicate the Second Amendment." *Miller v. Garland*, No. 123CV195RDAJFA, 2023 WL 3692841, at *10 (E.D. Va. May 26, 2023). For example, *Miller* held that a stabilizing brace is not an "Arm" under the Second Amendment because "a stabilizing brace cannot cause harm

---

[3] Other recent Second Amendment decisions also allocate the burden this way. *See, e.g.*, *United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309, *28 (S.D. Miss. June 28, 2023) (the burden starts with plaintiff demonstrating that "plain text of the Second Amendment covers" its conduct before shifting to the government to demonstrate an important interest consistent with the history of firearm regulation); *Miller v. Garland*, No. 123CV195RDAJFA, 2023 WL 3692841, *10 (E.D. Vir. 2023) (identifying the plaintiff's burden to show that the regulation implicates the Second Amendment); *Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*, 618 F. Supp. 3d 901, 909-10 (N.D. Cal. 2022) ("[T]he burdens at the preliminary injunction stage track the burdens at trial. . . . In cases where the government bears the burden as to the ultimate question of the challenged law's constitutionality, the moving party must make a colorable claim that its constitutional rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." (internal quotation marks and citations omitted.)).

on its own, is not useful independent of its attachment to a firearm, and a firearm remains an effective weapon without a brace." *Id.* Likewise, "courts have routinely held that a silencer is not a firearm." *Id.* (citing *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018); *United States v. Saleem*, 659 F. Supp. 3d 683, 697 (W.D.N.C. 2023); and *United States v. Hasson*, No. GJH-19-96, 2019 WL 4573424, at *4-5 (D. Md. Sept. 20, 2019), *aff'd* 26 F.4th 610 (4th Cir. 2022)). Like stabilizing braces, silencers "are not independently operable and do not serve any central self-defense purpose," and they therefore "are not firearms within the meaning of the Second Amendment but are instead firearm accessories that fall outside its protection." *Saleem*, 659 F. Supp. 3d at 697. All of this is true of laser sight accessories, too, and so they likewise are not "arms" under the Second Amendment.

Indeed, Kole testified that if the laser sight on his firearm were to break, he "absolutely" would still be able to defend himself if necessary. SUMF ¶ 33; *see also* Dkt. 256 at 29-30; Dkt. 269 at 13; Dkt. 309 at 7. Thus, by his own admissions—that firearms are fully functional without laser sights, and that firearm owners, including himself, can defend themselves without the use of laser sights—Kole concedes that a laser sight is *not* a firearm at all. Therefore, the City's Laser Sight Ordinance is not subject to scrutiny under the Second Amendment, and the Court should enter judgment in the City's favor on Kole's challenge to the ordinance.[4]

## CONCLUSION

The Court should grant Defendants' motion for summary judgment (Dkt. 251) and grant judgment to Defendants on Counts I and III.

---

[4] Although the Court need not address the second step of the *Bruen* analysis—which asks whether the City's Laser Sight Ordinance is consistent with the Nation's historical tradition of firearms regulation—the ordinance would also survive that step. As the City has explained, banning laser sight accessories is consistent with historical prohibitions on dangerous and unusual weapons, and it has a minimal burden on

Date:   January 23, 2024                          Respectfully submitted,

Ellen W. McLaughlin                               Corporation Counsel for the City of Chicago
ellen.mclaughlin@cityofchicago.org
City of Chicago, Department of Law                By:     /s/ Ellen W. McLaughlin
Constitutional and Commercial Litig. Div.                 Chief Assistant Corporation Counsel
2 North LaSalle Street, Suite 520
Chicago, Illinois 60602
(312) 742-5147
*Attorney for Defendants*

---

the right to self-defense. Dkt. 309 at 8-9. The Seventh Circuit emphasized in *Bevis* that "a broader restriction burdens the Second Amendment right more, and thus requires a closer analogical fit between the modern regulation and traditional ones; a narrower restriction with less impact on the constitutional right might survive with a looser fit." 85 F.4th at 1199 (citing *Bruen*, 142 S. Ct. at 2155). Because a restriction on laser sights has little impact on the right to individual self-defense, only a "looser fit" between the ordinance and historical prohibitions is required, and the historical analogues the City has identified demonstrate that the regulation survives scrutiny under *Bruen*'s second step.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 23, 2024, the foregoing document was served on all counsel of record via the Court's ECF system.

/s/ Ellen W. McLaughlin